# UNITED STATES DISTRICT COURT

## FOR

## THE DISTRICT OF COLUMBIA

BRENT KIDECKEL

      Plaintiff/Petitioner,

**v.**

THE FOREIGN NATION OF CANADA,    )

DOUG DOWNEY as Attorney General of Ontario,    )

THE PROVINCE OF ONTARIO CANADA,    )

THE CITY OF TORONTO CANADA,    )

DAVID J.N. WILSON, DAVID KIDECKEL,    )

DAHLIA SAIBIL, ARAM SIMOVONIAN,    )

GARY CAPLAN, IAN SINKE, JOHN DOE 1-15,    )

UNITED STATES CITIZENSHIP    )

 & IMMIGRATION SERVICES "USCIS",    )

      Defendants/Respondent.    )

_____ )

Case: 1:24−cv−02907 JURY DEMAND
Assigned To : Nichols, Carl J.
Assign. Date : 10/15/2024
Description: Pro Se Gen. Civ. (F−DECK)

**JURY TRIAL DEMANDED**

## COMPLAINT FOR FALSE IMPRISONMENT, INTRUSION UPON SECLUSION,

## MISAPPROPRIATION, DEFAMATION, MALICIOUS PROSECUTION, FRAUD,

RECEIVED

OCT 15 2024

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>TELECOMMUNICATIONS HARASSMENT, COMPLICITY, GROSS NEGLIGENCE, NEGLIGENT HIRING, NEGLIGENT SUPERVISION, CIVIL CONSPIRACY, ABUSE OF PROCESS, AIDING AND ABETTING, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND</u>

<u>PETITION FOR EMERGENCY MANDAMUS</u>

<u>In re BRENT KIDECKEL</u>

## <u>NATURE OF ACTION</u>

1. Plaintiff dishearteningly, disappointingly, and out of sheer desperation, brings this action against his country of birth, his estranged brother, and his brother's wife and representatives, for the root issue of having false arrest warrants issued in Ontario.

2. This action is grounded in a harassment campaign, including malicious prosecution by David Kideckel, Dahlia Saibil, and false arrest warrants issued by The Province of Ontario, at the direction of the City of Toronto's policing agency.

3. Prior to these actions, on January 22, 2024, in audio recording at Sarasota, Florida, when prompted, Mr. David Kideckel verbalized "I know Brent is somewhere in the United States" with

all actions and subsequent actions taken by him, his wife, and his representatives wittingly and knowingly directed at the United States.

4. Defendant David Kideckel, who has a history of violent behavior, attending various anger-management trainings throughout his life, and his wife, Dahlia Saibil, evidently equally toxic, conspired with Saibil's employer, the Attorney General of Ontario, to advance their personal goals of fraud via David Kideckel's misappropriation of Plaintiff's identity.

5. David Kideckel obtained Canadian phone numbers (204) and (646) from "Bristol" telecommunications provider, and then used them at first to resolve disputes with his employers; he had seven in 2023, and then escalating to sending himself death threats, taking those texts to The Plainly Incompetent Toronto Police, with he and Dahlia Saibil engaged in public mischief filing a false police report.

6. David Kideckel used phone numbers that Plaintiff has never heard of- there's as great a likeliness these phone numbers belong to Anna Delvey or Justin Trudeau as Plaintiff, except that they belong to David Kideckel only.

7. The Plainly Incompetent Toronto Police and Attorney General of Ontario's Office (Canadian courts are *NOT* a separate branch of government, with the justice issuing the arrest warrants completely integrated within government in the AGO's office) failed to do due diligence,

because if they did, they would see that not only is there no probably cause- Plaintiff does not

own, lease, or control any Canadian phone number and that David Kideckel and Dahlia Saibil

missed public resources for personal gain and engaged in public mischief.

8. Unbeknownst to Plaintiff until now, Canada subjects its citizens to arbitrary arrest and

detention, actions of a third-world nation.

9. At time of filing this filing, the government has disregarded a formal claim (complaint) and

has not engaged with Plaintiff, therefore commanding that Plaintiff bring forth this action as the

only available recourse.

10. Aram Simovonian has been terminated from his employer as a direct result of his actionable

behavior, and both he and his attorney, Ian Sinke have continued to conspire to deny Plaintiff his

rights for due process, abuse the court process to engage in fraud and obstruct justice for the

Plaintiff, as it relates to clients that aren't his own.

## **EMERGENCY MANDAMUS**

11. Plaintiff asks this court for the extraordinary, albeit **_not_** unprecedented, relief of ordering the

USCIS to grant Plaintiff United States Citizenship of which he is entitled, so he may revoke his

Canadian citizenship as an immediate and appropriate remedy by this court.

12.  The factual allegations set forth herein are so extreme and outrageous (Kg v. Rtr 918 S.W.2d 795 (1996) that the extreme and extraordinary remedy of granting citizenship is required.

13. Plaintiff *could* wait for an expected dispositive motion from Canada under the FSIA's immunity to then file a Writ of Mandamus with the Court of Appeals, however given the anticipated multi-year appeal process, and Plaintiff's medical state with an upcoming surgical intervention in Manhattan that will require six-eight months of rehabilitation and recovery- and a Continuance for same, Plaintiff solemnly, humbly, and respectfully, requests this extraordinary relief *now*.

## THE FEDERAL QUESTION

**Does 28 U.S.C. 1605 (a)(5)(b), *as applied*, offend Plaintiff's rights under the United States Constitution?**

14.  While this court retains subject-matter, personal and supplementary jurisdiction over the parties,  in the *spirit* of *The Motley Rule (*Louisville & Nashville R.R. v. Mottley *211 U.S. 149 (1908)*) Plaintiff anticipates the Foreign Nation of Canada, its sub political divisions, and its employees, will assert a defense of immunity under the FSIA on Plaintiff's pleading giving rise to The Federal Question aforementioned.

15. *"Sovereign immunity s an anachronistic relic and the entire doctrine should be eliminated from American Law. The Principle of sovereign immunity is derived from English law, which assumes that "The King can do no wrong". Since the time of Edward the First, the Crown of England has not been suable unless it has specifically consented to suit. Throughout American history, United States courts have applied this principle, although they often have admitted that its justification in this country is unclear."* **(Erwin Chemerinsky, " Against Sovereign Immunity", Dean of Duke Law, for Stanford Law Review, 2001.)**

16. Canada, Ontario, Toronto, Downey, and Wilson must be held accountable in the United States, and subject to Discovery with the Power of Subpoena.

17. Plaintiff contends that shielding the Foreign Defendants amounts to a violation of Plaintiff's rights afforded under the United States Constitution, including under the Due Process Clause of the Fourteenth Amendment and the Fifth Amendments protections against the depravation of life and liberty.

18. Plaintiff does not contend the United States has violated his Constitutional rights.

19. Plaintiff argues that the aforementioned law established by Congress, granting Canada, Ontario, Toronto, Downey, and Wilson, immunity directly offends Plaintiff's rights.

20. The Foreign Sovereign enjoys procedural rights in United States court but does not enjoy any protection under the United States Constitution *(Professor Ingrid Wuerth, "The Due Process and other Constitutional Rights of Foreign Nations," (88 Fordham Law Review, 633)*

21. In *The Schooner Exchange V. McFaddon 11 U.S. (7 Cranch) 116 (1812),* Chief Justice Marshall declared he would never infer that the United States would grant International immunity.

22. "For more than a century and a half the United States generally granted foreign sovereigns complete immunity from suit" but concluded that this practice reflected voluntary comity rather than a constitutional requirement *(Verlinden B.V. V. Central Bank of Nigeria, 461 U.S. 480, 486 (1983)),*

23. "The Framers included "Controversies" involving "foreign states" in Article III to achieve the overarching goal of guaranteeing them an impartial decision maker." *(Robert J. Pushaw, Jr., "Do Foreign Nations have Constitutional Rights", Fordham Law Review, 2019)*

24. Sovereign Immunity cannot be found in the United States Constitution from an originalist perspective, with Justice Antonin Scalia stating "Sovereign Immunity cannot be based on historical understanding" *(Antonin Scalia, Historical Anomalies in Administrative Law, 1985).*

## JURISDICTION AND VENUE

25. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1330(a).

26. This Court has personal jurisdiction over the parties pursuant to 28 U.S,C §1330(b), 18 U.S.C. §2334(a), 18 U.S.C. §2334(d).

27. This action cannot be adequately resolved, prosecuted to completion, or otherwise be redressed in Canada and shall not be dismissed by this court under 18 U.S.C. §2334(d) per the following:

a) Defendants and their representatives have informed the Plaintiff that the causes of action herein are "unknown to Canadian law."

b) Ontario Superior Court requires the Plaintiff to appear in person at trial, inherently impossible, making the Canadian Courts inherently inaccessible to the Plaintiff.

c) Given Canada's arbitrary arrest and detentions, it would amount to cruel and unusual punishment for Plaintiff to be forced to return to Canada, pursuant to the allegations laid out herein.

d) The Canada Federal Court requires a party to have a mailing address in Canada for which Plaintiff does not have.

e) Plaintiff has not left the jurisdiction of the United States since Nov 3, 2012, being a Canadian only by virtue of birthright Citizenship, that he now must revoke.

f) The Ontario Superior Court is fully integrated with the Government of Ontario, with the justice-of-the-peace that signed arrest warrants, Defendants Downey and Saibil, and the

Ontario Superior Court all part of the same Department; the Attorney General of Ontario's office, as allegations of conspiracy set forth herein detail.

28. This Court has Supplementary Jurisdiction pursuant to 28 U.S.C. § 1367.

29. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

30. Venue lies in this district under 28 U.S.C § 1391(f)(4).

## PARTIES

**A.  Plaintiff**

31. Brent Kideckel, is an individual of Canadian origin, domiciled in the United States since 2012. Plaintiff has been married to a birthright United States Citizen for seven years, whose family is a victim of violent crime (Oregon V. Guzek.)

**B. Defendants**

32.. Defendant, **The Foreign Nation of Canada**, is a quasi-sovereign nation, member of the Commonwealth, subject to Royal assent, sharing the longest undefended international border in the world, with the United States of America. Canada is a signatory to The Hague Convention,

while it is NOT a signatory to the Inter-America Convention. Canada is regarded as a first-world developed country; this pleading illustrates otherwise.

33. Defendant **The Province of Ontario** is a sub-political jurisdiction, akin to, but vastly different, from a State in the Union.

34. The largest of Canada's 12 anglophone sub-political jurisdictions, the Province of Ontario is home to the seat of the federal government, Ottawa, Canada.

35. Defendant **Doug Downey** is the Chief Executive of the Attorney General of Ontario's office (herein "AGO") as the Attorney General of Ontario.

36. Defendant Doug Downey is responsible for the justice-of-the-peace that engaged in gross negligence, and as the employer of Defendant Dahlia Saibil.

37. Defendant Doug Downey also oversees the Ontario Superior Court, a non-independent judicial branch of the provincial government, even overseeing judges and their adjudication in the most under-addressed example of governmental conspiracy and conflict of interest.

38. Defendant the **City of Toronto** is Canada's largest city, located in the Province of Ontario, once led by the most famous crack user in the world; Rob Ford.

39. These Causes of Action are brought against Toronto for actions taken by its agency, the Plainly Incompetent "Toronto Police Service."

40. Defendant **David Wilson,** an individual, held the position of Detective at the City Of Toronto Police Service in 2023 and received an annual salary of $142,813.62 in 2023.

41. Wilson is employed at the 13 Division, covering the wealthiest postal codes in Canada, with Plain Incompetence.

42. Wilson is presumed to be a Canadian citizen.

43. Defendant **David Kideckel** is a Canadian citizen, of Canadian origin, residing in the 13th division of the City of Toronto's Police Service; Plaintiff's estranged older biological brother.

44. Defendant **Dahlia Saibil** is the spouse of David Kideckel, current marital status unknown, employed by the Attorney General of Ontario as an attorney, ironically, in international human rights, residing in Toronto, Canada.

45. Dahlia Saibil is presumed to be a Canadian citizen.

46. Terminated from his employment at Scalzi Caplan LLP as a direct result of the causes of action against him herein, Defendant **Aram Simovonian** is a twenty-something year old

unemployed individual who has been called to the bar in Ontario, Canada. Mr. Simovonian,

according to information received by the Plaintiff, acted as the mortgage attorney (US escrow

officer equivalent) for Defendants David Kideckel and Dahlia Saibil's $2.3 Million dollar home

purchase in Toronto's exclusive Forest Hill neighborhood, from Defendant David Kideckel's

mother's *current* husband, Kenneth Norwich.

47. Defendant **Gary Caplan** is an attorney in Ontario, Canada, principal to Scalzi Caplan LLP,

his third law firm in as many decades.

48. Mr. Caplan's notoriety includes, ironically, establishing Ontario's common-law on online

harassment, as well as defending a violent murderer on criminal charges.

49. In the twilight years of his career, Mr. Caplan is now the equivalent of an escrow-officer,

closing mortgages, a noticeable distinction of Canadian law.

50. Defendant **Ian Sinke** is a twenty-something year old home-based part-time attorney; his

second career in only a few years. Mr. Sinke is believed to be a personal friend of Defendant

Aram Simovonain, and practices law in the area of Professional Malpractice.

51. It is unknown if Defendant Ian Sinke is acting in the interests of an insurance carrier, or as

Plaintiff alleges, abusing the court process and aiding and abetting his clients, on their sole

direction.

52. Plaintiff reserves the right to substitute John Doe 1 with Scalzi Caplan LLP if its warranted and appropriate, pursuant to Rule 21, pending the Ontario Superior Court's ruling on whether Plaintiff has brought forth a claim for which Canadian law can provide adequate and equitable relief.

### BACKGROUND

53. *"Unexpressed emotions will never die. They are buried alive, and will come forth later, in uglier ways."* -Sigmund Freud

54. In 2009-10 (almost 15 years ago!) Plaintiff began seeking assets held in my name that I could consolidate, and possibly liquidate; Hope Springman (Plaintiff's biological mother) wouldn't provide the documents so Plaintiff went to BMO Nesbitt Burns and uncovered that the funds had been fraudulently withdrawn.

55. Plaintiff's cousin, Lynn Burton, and her late husband Ricky (Richard) suggested to Plaintiff that he seek redress in the Ontario Superior Court against Springman and BMO.

56. Plaintiff commenced legal action, however given Canada's unique, possibly unconstitutional requirement that a Prosecution be done *in-person,* denying Plaintiff the ability to be made whole; Plaintiff had to abandon that extremely meritorious lawsuit, Plaintiff's first.

*57.* Since permanently domiciling in the United States in 2012, Plaintiff has had no contact with Defendant David Kideckel and has never met Defendant Dahlia Saibil.

58. Plaintiff has not set foot on Canadian soil since September 3, 2012 having no ties to the country; an online checking account with approximately three dollars in it, notwithstanding.

59. At a time unknown, but after November 2023 when the "snowbirds" fly South to Sarasota, an individual named Mara Koven, a lawyer who both Plaintiff and Defendant David Kideckel know from their podunk hometown of Winnipeg, Canada, was brought by her employer to his winter residence at The Tower Residences at The Ritz-Carlton, Sarasota, Florida.

60. While a guest in this building, home to extremely wealthy and powerful individuals, this attorney had the **distinct** pleasure of meeting Plaintiff's cousin, Mrs. Lynn Burton of Toronto, Canada, who winters in the same building.

61. During a brief interaction in the breakfast room in which Ms. Koven and Mrs. Burton were introduced, the latter mentioned to the former that she was "very close with [Plaintiff] Brent" and while barely knows Defendant David Kideckel, she recalls him as "a serious person."

62. . **This interaction has single-handedly upended, uprooted, and irreparably harmed Plaintiff, in a way that could only be done by someone with severely untreated mental health disorders, surrounded by people unwilling to get him help (read: don't like him) in a socialist country that does not (and cannot, due to a perpetual lack of resources) provide mental health care.**

63. The small-town lawyer brought in to meet the "big kids" at The Ritz, perhaps to feel comity in a world she'll never be, sent an unsolicited message to Defendant David Kideckel on Facebook to inform him that;

    a) she's been invited to The Ritz Residences;

    b) she met Mrs. Lynn Burton;

    c) that Mrs. Burton said "she's close with [Plaintiff] Brent, and you [Defendant David] are "very serious."

64. Plaintiff was not made aware of this interaction until months later.

65. Plaintiff does not know how or when the fraud and misappropriation began.

66. Some time in November 2023, Mrs. Burton posited a query with the Plaintiff "are you texting your brother?"

67. Plaintiff, in shock and disgust at the suggestion, responded "eww god no, why?"

68. Defendant David Kideckel was on a mission to destroy Plaintiff's personal relationships with family, relationships that are irreversibly harmed snd now non-existent.

69. Defendant David Kideckel seemingly advised various persons that Plaintiff was sending harassing messages to his employer, as only a narcissistic would think somebody would do.



Message from David Kideckel to Lynn Burton notating the phone number used for this fraud

70. Spoiler alert: David Kideckel opened VoIP text-only accounts with Iristel, Inc., and was sending messages purporting to be from Plaintiff in an elaborate, albeit criminal and ill-thought out plot of misappropriation and defamation.

| NPA | CO Code (NXX) | Status | Exchange Area | Province | Map Link | Company | OCN | Remarks |
|-----|------|--------|----------|----------|----------|---------|-----|---------|
| 647 | 691 | In Service | Toronto | ON |  | Iristel Inc. | 154E | |

Canadian Numbering Administrator's website showing the phone number used is owned by Iristel, as confirmed by its CEO, Samer Bishar

| NPA | CO Code (NXX) | Status | Exchange Area | Province | Map Link | Company | OCN | Remarks |
|-----|------|--------|----------|----------|----------|---------|-----|---------|
| 204 | 818 | In Service | Oakbank | MB | | Iristel Inc. | 154E | |

The 204 phone number used by David Kideckel

71. With Defendant advising Mrs. Burton that these messages were directed at his employer du jour, and being used as part NDAs/separation agreements presumably from their discovery of his

untreated mental health issues, when Plaintiff was informed of this, his thought was "not my circus, not my moneys' and will mot get dragged in to this.

72. More spoiler alert: it was too late.

73. Apparently not satisfied with the level of harm he was causing to Plaintiff Defendant, with the assistance of his wife, Defendant Dahlia Saibil broadened their campaign from the ludicrous and criminal behavior of present to the most extreme and outrageous of frauds.

74. David Kideckel started sending himself threats of bodily harm, from the same Canadian phone numbers that he had used for his racket to (allegedly) extort his past employers, as Plaintiff later uncovered.

75. . *(Plaintiff was not made aware of these until February of 2024, when Defendant David Wilson, the Plainly Incompetent Detective sent a text message to Plaintiff in the United States at (917)634-0637 requesting a return-call.)*

76. In January of 2024, in the most extreme act of betrayal, someone furnished Defendant David Kideckel with Plaintiff's one and only phone number, 917-634-0637.

77. While out for burgers with Mrs. Burton at Patrick's in Sarasota, Plaintiff's cell phone started ringing from an unknown 416 phone number.



78. At the exact same time Defendant David Kideckel was sending Mrs. Burton messages on Facebook, supposedly from one of his employers, "Rob" while the fact context and meaning of this message is indiscernible.



79. Defendant David Kideckel was sending harassing messages to both Plaintiff and Mrs.

Burton, completely unaware they were sitting at a table together in Downtown Sarasota.



80. This of course prompted Plaintiff to respond to these unsolicited messages with "Think long

and hard where I could be right now [you stupid idiot] knock it off."

81. After six unanswered calls and a text message that makes absolutely no sense, Plaintiff

exclaimed at the dinner table "Oh shit I think that's David bothering me what the actual fuck"

82. Mrs. Burton quickly confirmed that the phone number, (416) 587-2549 belonged to

Defendant David Kideckel.

83. Knowing the importance of keeping records, Plaintiff preserved these messaged in screen

shots.

84. Defendant David Kideckel does, in a text directly to Plaintiff on January 22, 2024, speaks in the third person about himself having mental health issues. (Above)

85.Perhaps a cry for help, it only emphasizes how little Defendant David Kideckel's orbit thinks of him, and cares about his welfare.

86. Having had enough, Mrs. Burton requested a telephone call with Defendant David Kideckel, later that evening.

87. Still tring to find humor in Defendant's psychotic actions, Plaintiff figured it would be of great interest to record this telephone call.

88. This call was recorded in Sarasota, Florida, lawfully, with the consent and knowledge of Mrs. Burton and Plaintiff, both parties to the call, Defendant David Kideckel unaware of Plaintiff's presence.

89. *In Rathburn V United States 355 U.S. 107 (1957), the Supreme Court stated "the clear inference is that one entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Section 605 [of the Federal Communication Act] that either party may record the conversation and publish it."*

90. The transcript of this call, which outlines the intent behind various torts committed by Defendant David Kideckel is appended herein as Appendix Two, wherein Defendant makes clear he seeks revenge against Plaintiff for seeking redress against Hope Springman and Bank of Montreal .

91. Four days later, Plaintiff received a letter from Aram Simovonian and Scalzi Caplan LLP, with sole purpose of harassing, Plaintiff and inflicting emotional distress.

92. Appended herein (Appendix One), this letter;

    a) has no merit; there was nothing for Plaintiff to cease or desist;

    b) included multiple demands, including for payment of $1,000 CAD (approx $600 USD) to a place unknown, in a manner unknown, with **EIGHT BUSINESS HOURS** to perform;

    c) demanded Plaintiff publish an apology to Defendant, in a publication unspecified, by date unspecified for what unspecified, in a size unspecified.

93. This telecommunication harassment was responded with a "hahaha" as Plaintiff assumed this to be part of Defendant David Kideckel's fraud.

94. Plaintiff did not feel it was necessary then to involve himself; "not my circus, not my monkeys."

95. Plaintiff forwarded the letter to various family members, all wealthy professionals, who did their own Google work to inform Plaintiff that the sender was "some kid in Toronto doing mortgages. Probably Dahlia's friend."

96. Plaintiff filed a complaint with the Law Society of Ontario knowing that this definitely violated their Rules of Professional Conduct.

97. The Law Society of Ontario, the equivalent of a State Bar, agreed.

98. **Defendant Aram Simovonian was terminated from Scalzi Caplan LLP as a result.**

99. Gary Caplan, Aram's employer terminated him, overlooking his career of malpractice and negligence, and only acting once brought to the attention of regulatory bodies.

100. Having many close friends in Toronto, Plaintiff did what any reasonable person would do when contacted by any Police; especially since it could be of severe importance pertaining to an individual there, Plaintiff returned the call.



101. In this call, Defendant David Wilson stated "I'm calling to inform you will be arrested when you set foot in Canada."

102. Not knowing what on earth he was talking about, Plaintiff requested information.

Defendant Wilson went further to state "I don't care what you have to say. I'm only calling to tell you you are going to be arrested in Canada."

103. Plaintiff advised Defendant Wilson that he was "perpetuating David Kideckel's harassment" which elicited a nervous laugh from Defendant Wilson.

104. In hindsight, it can be deduced that Defendant Wilson dod not know the meaning of the word "perpetuate".

105. Scary!

106. **Cambridge Dictionary defines "perpetuate" as "*to cause something to continue.*"**

107. Plaintiff is unaware if these calls were recorded by the Toronto Police Service but certainly hopes they were.

108. **DEFENDANTS DAVID KIDECKEL AND DAHLIA SAIBIL USED FRAUDULENTLY CREATED TEXT MESSAGES MISAPPROPRIATING PLAINTIFF'S IDENTITY TO SECURE FALSE ARREST WARRANTS AGAINST PLAINTIFF IN-CONCERT WITH, AND WILLFUL PARTICIPATION OF, DEFENDANT DAVID WILSON, A CITY OF TORONTO EMPLOYEE.**

109. Advised of their content, and the vitriolic, unhinged, nature of same, Plaintiff has **not** reviewed these messages and are being appended herein in their original format as received by Plaintiff from Mrs. Lynn Burton.

110. These fake text messages written by Defendant David Kideckel are appended herein as Appendix Three.

111. ***Plaintiff believes the United States, on mandamus from this court, should permanently exclude Defendants David Kideckel and Dahlia Saibil from the United States as being a threat and lacking the necessary moral character required.***

112. Conferring with Mrs. Burton who subsequently spoke to various legal professionals in Sarasota and Toronto, as well as a friend in Law Enforcement in another sub-political division of Canada, all persons deemed this to be a scam or fraud of some sorts, with no credibility warranted.

113. Plaintiff contacted the Toronto Police Service on a few occasions in the days that followed. The first call, Plaintiff was informed that were *no* arrest warrants and to call the Supervisor at that division.

114. Plaintiff called a second time to file a complaint for identity theft with the Toronto Police Service as done by someone in their jurisdiction.

115. Plaintiff was advised that because he is in the United States they cannot take a report; "we need a victim" she says.

116. Apparently in "Neverland "Toronto,  victimless crimes don't exist, never mind that there was a real victim here.

On Mar 4, 2024, at 9:11AM, Dave Lim <Dave.Lim@torontopolice.on.ca> wrote:

Hello Mr. Kideckel,

After looking into your complaint, I did not find any wrong doing by either Det. Wilson or his colleagues.

Your brother reported an on-going harassment to 13 Division, which was properly investigated by Det. Wilson and Detective Constable. D'Souza.

Your brother's family expressed safety concerns and wished to pursue criminal charges to prevent you from making any type of unannounced visit.

So to answer your question, Det. Wilson's voicemail is a legitimate and there is a warrant for your arrest at this time for "harassment and uttering death threat."

117. Perpetually underfunded and painfully lazy, the Toronto Police was not interested in assisting me whatsoever.

118. Knowing the importance of documentation, again, Plaintiff requested the Supervisor's email address, which yielded this response to Plaintiff's inquiry:

119. Plaintiff further retained a Criminal Defense Attorney in Toronto who was able to confirm the accuracy of these fraudulent charges.

120. Unfortunately Defendant Wilson and Toronto's Plain Incompetence won over, because doing due diligence and securing Probable Cause is too much work.

121. Cornell Law School's Legal Information Institute defines probable cause as follows;

*Probable cause refers to a reasonable basis for believing that a crime may have been committed (for an arrest) or that evidence of a crime is present in the place to be searched (for a search).*

*Probable cause is a Fourth Amendment requirement that usually must be met before the police make an arrest, conduct a search, or receive a warrant. The Fourth Amendment also requires that any arrest be based on probable cause, even when the arrest is made pursuant to an arrest warrant.*

122. Plaintiff was advised on a fourth call to the Toronto Police Service to "think of the rape victim who burns all the evidence but presses charges; we go and arrest the guy."

123. Plaintiff retorted "that's a poor comparison, what about the disgruntled and bitter ex-girlfriend who falsely accuses her ex of rape merely as retaliation?"

124. The Toronto Police Service officer responded deadpan, "we'd arrest him too."

125. Wow.

126. This should give this court, the United States and the parties, long pause about the nature of the judicial process of Canada, or lack thereof.

127. Since then Plaintiff has filed complaints with various oversight boards in Canada, a Claim with the Province of Ontario and the Government of Canada, in hopes to avoid this litigation.

128. The Province of Ontario, when prompted 30 days past the 60 days they require under Canadian law to process claims, advised that no claim existed because Defendant Dahlia Saibil was acting in her personal capacity.

129. "What about the justice-of-the-peace who works for the AGO issuing false arrest warrants at the behest of the Plainly Incompetent Toronto Police Service; they're an employee of the Province of Ontario?"

130. Plaintiff never received a response; two weeks prior to this United States District Court filing.

### CANADA'S PLAIN INCOMPETENCE

## Toronto police slammed for advising residents to leave car keys within easy reach for thieves to avoid violence

By Alyssa Guzman

Published March 15, 2024, 5:50 p.m. ET



New York Post headline on March 15, 2024

*https://nypost.com/2024/03/15/world-news/toronto-police-slammed-for-advising-residents-to-*

*leave-car-keys-within-easy-reach-for-thieves/*

131. The Plain Incompetence of Canada's and its sub political divisions knows no limits.

132. In addition to multiple layers of government failing at their core duty to protect their citizens, the Plain Incompetence transcends departments and levels of government.

133. Around the time that Defendants David Kideckel and Dahlia Saibil were committing malicious prosecution, the Toronto Police advised their population to "leave their car keys by the door to avoid an altercation with a would be robber."

134. The Ontario Superior Court uses emojis in formal court communications



**Civil Judges Motions**
To: Ian & 2 more... >          7/2/24

**FW: Scalzi Caplan et al ats Kideckel // Court file no.: CV-24-00719990-0000 // Our file no.: 8888-398**

Here you go
This is an endorsement to Case Conference, French VERSION TO FOLLOW 🙏

135. The supposed attorney for the Province of Ontario, in attempting to obstruct justice with false legal advice, does not know the meaning or the word "jurisdiction."

2. US Claim:
   - You do not have jurisdiction to commence a lawsuit against the Crown in the United States.
   - See https://www.justia.com/trials-litigation/lawsuits-and-the-court-process/jurisdiction-and-venue/ confirming same. Please also        provide confirmation that you will not commence a lawsuit against the Crown in the United States.

Thanks,
Taskeen

Taskeen Ahluwalia (she/her)
Counsel
Ministry of the Attorney General, Crown Law Office – Civil
720 Bay Street, 8th Floor | Toronto, ON | M7A 2S9
Tel: 647-535-7529 | Fax: 416-326-4181
Taskeen.ahluwalia1@ontario.ca

## $2M of taxpayer money already spent investigating alleged Durham police corruption

**Questions raised about costs and the chance of police accountability after 5 years**

 Julie Ireton · CBC News · Posted: Jul 08, 2024 1:00 AM PDT | Last Updated: July 8

CBC headline of July 18, 2024

*https://www.cbc.ca/news/canada/ottawa/investigation-durham-police-cost-money-1.7253075*

136. A Court Supervisor for the Ontario Superior Court, upon formal query, advised Plaintiff that court employees are permitted to use their personal electronic devices for official court business, explaining the use of "emoji" further outlining the lack of competency and capability of the Ontario Superior Court.

137  According to Canada's Public taxpayer funded broadcaster, the Canadian Broadcasting Corporation (CBC), there is unrelenting and costly corruption in the Durham Regional Police Department.

134. The Toronto Police Service would lose its authority if it were an organization in the United States, with the former Law Enforcement of Rajneeshpuram, Oregon, showing greater competency, efficacy, and trust of the public.

## Toronto police suspensions have cost public $1.3M so far in 2024

New provincial rules around suspensions with pay kicked in April 1; some say they don't go far enough

 Clara Pasieka · CBC News · Posted: Apr 12, 2024 1:00 AM PDT | Last Updated: April 12

CBC News headline, April 12, 2024

*https://www.cbc.ca/news/canada/toronto/toronto-police-suspensions-have-cost-taxpayers-1-3m-so-far-in-2024-1.7170161*

135. Plaintiff believes David Wilson, employee of the Toronto Police Service, was suspended for three weeks in May as a result of an investigation by the Oversight Police Director, however given Canada's lack of "right to work" laws and unworthy and unjustified employment protections through state-sanctioned collective bargaining agreements, David Wilson is likely still an employee of the City of Toronto.

136. Occurring in the same precinct/division in which Defendants Kideckel and Saibil reside, and Wilson is charged to protect, the most notorious and prolific murders in Canada's 42 year history as an independent nation, that of Barry and Honey Sherman, remains unsolved

137. Murdered in 2017 in the tony Forest Hill neighborhood of Cedarvale, the 13 division still has not solved the murders of Billionaires, of which Canada counts maybe five.

138. Seven years later this is all they've come up with;

## New warrant in Barry and Honey Sherman murders focuses on business deals

The latest search warrant in the nearly six-year-old murder probe zeroed in on investments made through Barry Sherman's personal holding company.

Toronto Star headline, November, 2023

*https://www.thestar.com/news/canada/new-warrant-in-barry-and-honey-sherman-murders-focuses-on-business-deals/article_2555d98b-3bd9-5529-b702-38b31600be31.html*

**Toronto mom Cindy Ali sues police in $10M lawsuit over 'negligent investigation and false imprisonment' in disabled daughter's death**

Toronto mom Cindy Ali spent four years imprisoned before her conviction was quashed. In a new lawsuit, she alleges Toronto police investigators became "determined to convict" and did not properly investigate her daughter Cynara's 2011 death.

Updated Oct. 11, 2024 at 1:10 p.m.    Oct. 10, 2024    5 min read

October 11, 2024 in The Toronto Star

https://www.thestar.com/news/gta/toronto-mom-cindy-ali-sues-police-in-10m-lawsuit-over-negligent-investigation-and-false-imprisonment/article_29b8f0c4-857e-11ef-8452-f3d38d8ede0a.html

## PARALLEL, NON=DUPLICATIVE LITIGATION

(Ontario Superior Court-Toronto Courthouse, **CV-24-00719990-0000**, Kideckel V Kideckel,

Saibil, Scalzi Caplan LLP)

139. In May 2024, Plaintiff initiated legal action in Ontario Superior Court for Canadian Causes of Action.

140. While this action is similar and rooted in the same actions, Canadian law does not provide for equitable relief and this action will be discontinued.

141. Plaintiff requires the Canadian court process to obtain subpoenas for the telecommunications provider, as the Plainly Incompetent Toronto Police failed to do.

142.  As an abuse of process and to further advance is fraudulent goals in his bi-monthly separation agreements with his employers, David Kideckel initiated an action against Plaintiff in Ontario Superior Court in February, 2024.

143. Plaintiff was not made aware of this action until cited in a two sentence defense filed by David Kideckel and Dahlia Saibil.

144. Presumably filed pro se, at the time of this filing Plaintiff has not been served with, formally advised of or otherwise seen said complaint.

145. Eight months since being filed, David Kideckel's action in Canada would have been dismissed in the United States for non-prosecution.

146. Plaintiff has requested service and is moving the Canadian court to consolidate the actions so he may have it stricken as frivolous, vexatious, and an abuse of process.

147. Defendant Ian Sinke, in a severely untimely court filing that the torts listed herein are not recognized by Canadian law.

148. Sinke also asserted that there is no duty of care to Plaintiff in Canada, suggesting Canadian law allows for attorneys to send harassing and intruding communications at their own leisure and pleasure, without any repercussions.

149. The Ontario Superior Court seemingly does not respect its own deadlines, rules of civil procedure and rules of professional conduct.

## CAUSES OF ACTION

### Count I

### False Imprisonment

150. Plaintiff recites and affirms the allegations above as if set forth herein, against Canada, Ontario, City of Toronto, David Wilson, David Kideckel, and Dahlia Saibil.

151. Plaintiff is effectively a prisoner and with having outstanding arrest warrants is unable to leave the United States, even if it's the greatest country in the world.

152. Defendants David Kideckel and Dahlia Saibil acted willingly to restrain the Plaintiff. Plaintiff advised Defendants Canada, Ontario, David Wilson, David Kideckel and Dahlia Saibil that their actions, collectively, were effectively a willful restraint on Plaintiff's movements. Defendants had no factual or lawful reasoning for Falsely Imrpisoning the Plaintiff.

153.

    a) New York Penal Law § 135

    b) 25 CFR §11.404

### Count II

### Intrusion Upon Seclusion

154. Plaintiff recites and affirms the allegations above as if set forth herein, against Canada, Ontario, Toronto, Wilson, David Kideckel, Dahlia Saibil, Aram Simovonian, Gary Caplan.

155. Defendants Caplan and Simovonian intruded on Plaintiff's seclusion with an unjustified "formal" correspondence whose soul purpose was to annoy, harass, intimidate and frighten the Plaintiff.

156. Defendants Canada, Ontario, Toronto, David Wilson, David Kideckel and Dahlia Saibil intruded on Plaintiff's seclusion in the most offensive way possible; malicious prosecution. David Kideckel and Dahlia Saibil's actions are so egregious, appalling, and untoward, that not only would a reasonable person be offended, even an unreasonable person would suffer in shock from the extreme actions by such reckless individuals.

157 .The actions affect Plaintiff's Citizenship and freedom of movement, meant only to embarrass, intruded on the most private of Plaintiff's personal affairs.

158. Defendants' actions were intrinsically intentional.

159.         a) Restatement of the Law, Second, Torts, §652

            (The American Law Institute's 1977's Summary of Torts)

b) "*Duncan v. Peterson*, 835 N.E.2d 411, 422 (Ill. App. Ct. 2005)" *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009)

c) *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009) ("835 N.E.2d 411, 422 ")

d) " *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004);"

e) Bullard *v.* MRA Holding, LLC, 41 Media L. Rep. (BNA) 2708 (Ga. 2013)

## Count III

### Misappropriation

160. Plaintiff recites and affirms the allegations above as if set forth herein, against David Kideckel.

161. Defendant David Kideckel took out online phone number accounts with Iristel and its resellers/wholesalers, as confirmed by the CEO and Founder, Samer Bishar.

162. David Kideckel sent these text messages, claiming to be from Plaintiff, to his former employer(s) and used to secure fraudulently obtained arrest warrants, using to his advantage the Plain Incompetence of the Toronto Police Service.

163. Lacking consent, at no time was David Kideckel permitted to send text messages to himself and engage in fraud while purporting to be the Plaintiff.

164. As part of the ruse, Defendants David Kideckel and Aram Simovonian used this misappropriation for financial gain and an attempt for financial gain through extortion.

165. Defendant David Kideckel used the misappropriation for personal benefit, seeking to have Plaintiff removed from his father's Last Will and Testament as a result of these fraudulently conscripted messages.

166. Defendant David Kideckel used this misappropriation for personal benefit, seeking retaliation against Plaintiff for suing their biological mother, Hope Rochelle Springman, of Toronto, Canada, for fraudulently withdrawing the contents of Plaintiff's Bar Mitzvah trust account with the conspiratorial and unlawful assistance of BMO (Bank of Montreal's) now deceased employee Brian Katz of Winnipeg, Canada. (approx 2024 value never recovered, $250,000 USD) (*BMO Nesbitt Burns/Bank of Montreal, authorized to participate in the regulated banking industry in the United States, has never reimbursed or otherwise compensated Plaintiff for the monies they failed to protect **in trust**) (Canada's financial watchdog has never investigated BMO for fraud likely due to Plain Incompetence.*)

167.    a) New York Penal Law § 190.78

b) 18 U.S.C. 81028

c)  U.S.C. § 1253, 1306 and 1321

d) 15 § U.S.C. 6823

e) 18 U.S.C. § 1028, 1028, 3553 and 641 Chapter 47

f) 28 U.S.C. 994 42

g) U.S.C. 1011, 1307, 1320a-7b, 1383a and 408

h) Identity Theft Penalty Enhancement Act

i) Bullard *v.* MRA Holding, LLC, 41 Media L. Rep. (BNA) 2708 (Ga. 2013)


## Count IV

### Defamation (Libel and Slander)


168. Plaintiff recites and affirms the allegations above as if set forth herein, against David Kideckel and Dahlia Saibil.


169. In a recorded phone call to Mrs. Lynn Burton at Sarasota, Florida, on January 22, 2024 (Appendix Two)  Defendant falsely stated Plaintiff was sending him, his employer, and his "family" harassing text messages; a lie.

Defendants David Kideckel and Dahlia Saibil sought to show Plaintiff in a false light in the most extreme, egregious, outrageous, and offensive manner possible; malicious prosecution.


170. Defendant David Kideckel verbalized to Mrs. Burton (and Plaintiff) that Plaintiff is "sending his bosses harassing messages", a false statement to be sure, highlighting David Kideckel's extreme narcissism.

171. Plaintiff's father (who he now doesn't speak to as a direct result of Defendant's actions) informed Plaintiff that Defendant David Kideckel stated that Plaintiff is sending harassing and threatening messages to him; a lie.

172.

    a) New York Consolidated Laws, Article 7, Chapter 6,  Sec. 70

    b) 18 U.S.C. §2511(2)(d)

    c) 28 U.S.C. §4101

    d) United States V. Polakoff 112 F.2d 888 (2d Cir. 1940)

    e) New York Times V. Sullivan 376 U.S.254

    f) Heslin et al V. Jones et al 22-33553 ADVERSARY No. 23-03035

    g) Mueller V. Swift 15-cv-01974-WJM-KLM

    h) Carroll V. Trump 22-cv-10016 (LAK)

    i) Depp V. Heard CL-2019-2911

    j) Gibsons V. Oberlin 2022 Ohio, 1079

    k) Garrison V. Louisiana 379 US 64 (1964)

    l) Rosenbloom V. Metromedia, Inc. 403 US 29 (1971)

## Count V

### Malicious/False Prosecution

173. Plaintiff recites and affirms the allegations above as if set forth herein, against Canada, Downey Ontario, Toronto, Wilson, David Kideckel, Dahlia Saibil.

174. The Government of the Foreign Nation of Canada states that they are responsible for all criminal matters in the country.

175. The Province of Ontario's Department of Justice's Chief Executive, Doug Downey, and his employee, an unknown justice-of-the-peace, failed in their official duties.

176. As a conspiracy among David Kideckel, David Wilson, and Dahlia Saibil, and the Province of Ontario, a false arrest warrant was gobsmackingly allowed to materialize, with no consideration for facts or the law, as a matter of sheer and utter Plain Incompetence.

177. Filing a false police report, as David Kideckel and Dahlia Saibil have done, is inherently and intrinsically malicious and intrinsically intentional.

178.

      a) New York Consolidated Laws, Penal Law §240.50

      b) New York Consolidated Laws, Penal Law, §210.45

      c) 42 U.S.C. § 1983

      d) Mason V. Paul (SCOTUS 19-7790)

      e) Washington-Herrera V. Town of Greenburgh 101 A.D.3d 986

      f) Colon V. City of New York 245 A.D.2d 258

g) McDaniel V. City of New York 612 F 3d 149, 160-61

h) Metwally V City of New York et al (Index No. 703828/15)

i) Stewart V. Sonneborn 98 U.S. 187 (1878)

j) Engel V. CBS Inc, 961 F Supp. 660 (SDNY 1997)

## Count VI

### Fraud

179. Plaintiff recites and affirms the allegations above as if set forth herein, against David Kideckel, Dahlia Saibil, Aram Simovonian, Gary Caplan, and Ian Sinke.

180. Defendants sought financial gain in sending a fraudulent Cease-and-desist letter; a misrepresentation.

181. The sole intention of this letter was to induce Plaintiff to tender $1000, to places unknown, either to stop Defendants fraudulent representations -or- with no purpose other than to harass and cause emotional distress.

182. Plaintiff suffered economic loss through the single-item retention of a Civil attorney in Canada for consult and over $5,000 (to date) in litigation expenses.

183.

a) New York Penal Code §190.65

b) State v. Abandoned Funds Information Center, Inc., 129 Misc. 2d

614 (N.Y. Sup. Ct. 1985)

c) Lumber Village, Inc v. Siegler, 355 N.W.2d 654 (Mich. Ct. App. 1984)

d) Simms v. Seaman, 23 A.3d 1 (Conn. App. Ct. 2011)

e) Attorney Grievance Commission v. Hoang, 72 A.3d 548 (Md. 2013)

## Count VII

### Telecommunications harassment

184. Plaintiff recites and affirms the allegations above as if set forth herein, against David Kideckel, Dahlia Saibil, Aram Simovonian and Gary Caplan.

185. The actions of David Kideckel and Dahlia Saibil, harassment through telecommunication channels, rises to harassment.

186. Plaintiff has never met Dahlia Saibil not interacted with David Kideckel in over twelve years; Defendants created a situation from nothing with no purpose other than to harass Plaintiff.

187. Serving no purpose but to annoy and harass Plaintiff, as evidenced by the Law Society of Ontario's discipline, and Scalzi Caplan LLP's employment termination of, Aram Simovonian.

188. Gary Caplan has vicarious ability for the actions of his employee.


189.

      a) New York Consolidated Laws, Penal Law §240.30

      b) 47 U.S.C. §223

      c) Communications Decency Act

      d) State V Cooper111 Ariz. 332, 529 P.2d 231 (1974)

      e) People *v.* McCormick, 774 N.E.2d 392 (Ill. App. Ct. 2002)




**Count VIII**

**Complicity**


190. Plaintiff recites and affirms the allegations above as if set forth herein, against David Wilson, Dahlia Saibil, Aram Simovonian, Gary Caplan and Ian Sinke.


191. Aware of David Kideckel's mental health issues and history of anger and violence, and with reckless disregard to fact, the Defendants willfully and knowingly aided David Kideckel in the perpetuation of harassment, fraud, emotional distress, intrusion upon seclusion, and false imprisonment.

192. The actions by David Wilson, Dahlia Saibil, Aram Simovonian and Gary Caplan were intentional, and made with sound mind- at minimum their baseline of mental capacity, as handicapped as it may be.

193.

    a) New York Penal Law §20.00

    b) New York § CPL 60.22

    c) 18 U.S.C. § 371

    d) People *v.* Sheldon, 180 Misc. 2d 876 (N.Y. Sup. Ct. 1999)

    e) Rosemond V. United States 572 U.S. 65

    f) United States V. Peoni 100 F.2d 401 (1938)

    g) Standafor V. United States 447 U.S. 10

## Count VIIII

### Gross Negligence

194. Plaintiff recites and affirms the allegations above as if set forth herein, against Canada, Doug Downey, City of Toronto, Aram Sinovonian, and Gary Caplan.

195. With a duty of care to take reasonable care, acting in a manner that can only be accurately describe as "extreme and outrageous".

196. A perpetual failure to its subjects, Canada and its sub political division of Toronto are divorced from reality ,that one might even describe as a *failing state*.

197. Perhaps due to being an octogenarian forced to continue working, or perhaps due to dementia, and lack of competence, Gary Caplan's negligence was actionable.

198.

    a) Nicholson V. A. Anastasio & Sons Trucking Co. 77A.D. 3d 1330

    b) Dana V. Oak Park Marina, Inc. 230 A.D. 2d 204

    c) Wooden v. Raveling, 61 Cal.App.4th 1035, (Cal. Ct. App. 1998)

## Count X

### Negligent Hiring

199. Plaintiff recites and affirms the allegations above as if set forth herein, against the Province of Ontario, City of Toronto and Gary Caplan.

200..

    a) Doe V. Goldweber 112 A.D. 3d 446 (N.Y. App. Div. 2013)

b) Jackson V. New York University Downtown Hospital 69 A.D. 3d 801, 893 N.Y.S. 2d 235

c) Sheila C. V. Povich 11 A.D. 3d 120

## Count XI

### Negligent Supervision

201. Plaintiff recites and affirms the allegations above as if set forth herein, against the Province of Ontario, Toronto, and Gary Caplan

202.

a) Doe V. Goldweber 112 A.D. 3d 446 (N.Y. App. Div. 2013)

b) Jackson V. New York University Downtown Hospital 69 A.D. 3d 801, 893 N.Y.S. 2d 235

c) Sheila C. V. Povich 11 A.D. 3d 120

## Count XII

### Civil Conspiracy

203. Plaintiff recites and affirms the allegations above as if set forth herein against Ontario,

Toronto, David Wilson, David Kideckel, Dahlia Saibil, Aram Simovonian, Ian Sinke

204.

    a) New York CPLR §302

    b) 18 U.S.C. § 241

    c) 42 U.S.C. § 1985

    d) Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968 (1986)

    e) United States v. Northern Imp. Co., 814 F. 2d 540 (8th Cir. 1987)

    f) Beck II V. Prupis et al. No.98-1480

## Count XIII

### Abuse of Process

205. Plaintiff recites and affirms the allegations above as if set forth herein against David

Kideckel,  Dahlia Saibil, Aram Simovonian, Gary Caplan and Ian Sinke.

206. Defendants David Kideckel and his attorney Aram Simovonian filed a fraudulent, meritless

and frivolous lawsuit in Ontario Superior Court in February 2023 as part of their greater fraud on

the court and the Plaintiff.

207. Plaintiff has not been served or otherwise been informed of this suit except for in an untimely Defense filed by Aram Simovonian.

208. As part of the Canadian lawsuit for which Plaintiff requires to obtain Discovery, Ian Sinke has engaged in a concerted effort to deny Plaintiff justice through abuse of process and violations of the Rules of Professional Conduct, both in Canda and the United States.

209. Ian Sinke ,making false and fraudulent representations has made false and misleading statements, while failing to confer with Plaintiff on non-dispositive motions, as required by the court.

210. A lawyer representing a lawyer, Ian Sinke failed to file a defense timely while refusing to participate in Discovery, choosing instead to disregard Rules of Civil Procedure and Professional Conduct,

211. An officer of the court, Ian Sinke has not only peddled in lies and misinformation for his fraudulent gain, through excessive and unnecessary purported billing, he has communicated ex-parte with parties, against the direct instruction of the Ontario Superior Court and willfully and intentionally abused the court process.

212.

a) Caplan v. Fellheimer, Eichen, Braverman & Kaskey, 5 F. Supp. 2d 299 (E.D. Pa. 1998)

b) Nationwide Charters & Conventions, Inc. *v.* Garber, 254 F. Supp. 85 (D. Mass. 1966)

## Count XIIII

### Aiding and Abetting

213. Plaintiff recites and affirms the allegations above as if set forth herein against  Dahlia Saibil, Aram Simovonian, Gary Caplan, and Ian Sinke.

214. In abusing her role within the Attorney General's office, Dahlia Saibil not only directly engaged in tortious acts against Plaintiff, but further aided and abetted David Kideckel in additional tortious acts including telecommunications harassment, defamation,  abuse of process, and intentional infliction of emotional distress.

215. Gary Caplan being vicariously liable for the direct actions of his subordinate, as well as his former subordinate Aram Simovonian and representative Ian Sinke have all aided and abetted in tortious acts.

216. Aram Simovonian, working for and with David Kideckel, sought to exacerbate Plaintiff's emotional distress, and while he engaged in his own tortious acts, he further aided and abetted David Kideckel's actionable, inhuman, and outrageous behavior.

217. Ian Sinke, in making false statements to the court, engaging in conduct the Rules prohibit, has aided and abetted Aram Simovonian for the underlying torts of Abuse of Process, Gross Negligence, Negligent Infliction of Emotional Distress.

218.

a) Securities & Exchange Commission *v.* Slocum, Gordon, & Co., 334 F. Supp. 2d 144 (D.R.I. 2004)

b) United States *v.* Manuel Juan Alvarez, 610 F.2d 1250 (5th Cir. 1980)

c) United States *v.* Samuel Dewitt Crenshaw and David Allen Gordon, United States of America *v.* Dennis Leo Lehman, 698 F.2d 1060 (9th Cir. 1983)

d) Richard T. White *v.* United States, 366 F.2d 474 (10th Cir. 1966)

## **Count XV**

### **Negligent Infliction of Emotional Distress**

219. Plaintiff recites and affirms the allegations above as if set forth herein, against Canada, Ontario, Toronto, David Wilson, Aram Simovonian, Gary Caplan.

220. Defendants owed Plaintiff a Duty of Care, both under Canada's common law and the United States' under *The Neighbor Rule,* of which they breached.

221. Plaintiff continues to suffer loss from the emotional distress that ensued.

222. Plaintiff would not have suffered, and continue to suffer, if not for Defendants' actions.

223. Defendants actions were so extreme and outrageous there isn't a reasonable person in this country that would

224. Defendant Gary Caplan is vicariously liable for the actions of his employee, Aram Simovonian.

   a) Nicholson V. A. Anastasio & Sons Trucking Co. 77 A.D.3d 1330
   b) Dana V Oak Park Marina, Inc. 230 A.D.2d 204

## Count XVI

### Intentional Infliction of Emotional Distress

225. Plaintiff recites and affirms the allegations above as if set forth herein against David Kideckel and Dahlia Saibil.

226. Defendants' actions are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

227. Defendants' actions were intentional and willful; as filing a police report inherently is.

228. As noted in *plural* by Toronto Police, there was a pattern in these actions and remained ongoing, not an isolated incident.

229. Defendants were aware of Plaintiff being in the United States and not able to return to Canada, a de facto position of power.

230.

    a) Restatement (Second) of Torts section 46 cmt. h (1965)

    b) Truman V United States of America 1994.C05.41659

    c) White V. Monsanto 585 So. 2d 1205 (La. 1991)

    d) Hyatt V. Trans World Airlines, 943 S.W.2d at 297

    e) Howell V. New York Post Co. 81 N.Y. 2d 115 (1993)

    f) Harris V. Jones 380 A.2d 611, 281 Md. 560 (1977)

**REQUESTED RELIEF**

231. Through Joint and Several Liability, Plaintiff seeks compensatory damages from The Foreign Nation of Canada, The Province of Ontario Canada, The City of Toronto Canada, David Wilson, David Kideckel, and Dahlia Saibil, in an amount to be determined at trial, not less than $75,000.

232. Plaintiff seeks compensatory damages from Aram Simovonian in the amount of $2,000.

233. To protect his rights, and to affirm and restore his dignity, Plaintiff seeks nominal damages from Gary Caplan in the amount of One Dollar.

234. To protect his rights, and to affirm and restore his dignity, Plaintiff seeks nominal damages from Ian Sinke in the amount of One Dollar.

235. Punitive damages for the intentional torts committed by David Kideckel and Dahlia Saibil, in an amount to be determined at trial, not greater than four times the awarded compensatory damages.

236. Post-judgement interest at the statutory rate.

237. A public apology in the newspapers of record for Canada and the United States (Toronto Star, and New York Times, respectively); 1/8 page broadsheet ad in the Sunday Editions, either separately or jointly, from Doug Downey, Province of Ontario, City of Toronto, David Wilson, David Kideckel, Dahlia Saibil, Aram Simovonian, and Gary Caplan.

## WHEREFORE CLAUSE

WHEREFORE, Plaintiff respectfully requests this Honorable court grant any further and equitable relief it deems appropriate.

Not seeking this specific remedy, Plaintiff believes this court should strongly consider referring David Kideckel and Dahlia Saibil to the United States Department of Homeland Security to be Permanently Excluded from the United States.

Plaintiff also believes this court should consider referring The Foreign Nation of Canada to the United States Department of State to be given a higher Travel Advisory warning with there being a heightened risk of arbitrary arrest and detention, inconsistent with the rest of the developed world.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial of the claims asserted in this Complaint.

DATED: OCTOBER 15, 2024

AT WASHINGTON, DISTRICT OF COLUMBIA

Brent Kideckel

Plaintiff, *pro se*

P.O. Box 20901

Floral Park, NY 11002

(917)634-0637

brentkideckel@gmail.com