# UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF COLUMBIA

BRENT KIDECKEL                                    )

        Plaintiff,                              )  **CASE NO.:   1:24-cv-02907-CJN**

        V.                                      )

                                                )

THE FOREIGN NATION OF CANADA,  et al.             )

        Defendants.                             )

_____ _)


## MOTION FOR SUMMARY (OR DEFAULT)  JUDGEMENT

## AGAINST DAVID KIDECKEL


## DECLARATION

I, Brent Kideckel, declare as follows:

 I am the plaintiff in this action.

The defendant, Dr. David Kideckel, was properly served with the summons and complaint on

October 18, 2024, in response to his email request to be Served electronically.

Defendant has not filed a response within the time allowed by law and there are no undisputed

material facts.

RECEIVED

JAN 21 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

I have suffered damages as detailed in the foregoing and attached exhibits.

I request that the court grant Summary Judgement in my favor.

I declare under penalty of perjury under the laws of the State of California and the United States of America  that the foregoing is true and correct.


## <u>BACKGROUND</u>


This Complaint was filed by Plaintiff aghast his long-estranged brother in Toronto, Canada, who, by and through his counsel, along with his wife Dahlia Saibil, engaged in a campaign of reckless disregard for Plaintiff's livelihood with the sole goal to cause emotional distress.


Defendant created an elaborate campaign of using (Canadian) phone numbers that he controls to send harassing messages, secure separation agreements with employers, and in the most disgusting and shocking move, used them to have the Toronto Police falsely and negligently issue arrest warrants in Ontario, Canada.


As outlined according to Plaintiff's experience of the events that transpired, if there is any question as to the merit or veracity of Plaintiff's assertions, that can be reconciled simply through the disclosure of the identity of the Canadian phone numbers used by Defendant.


In addition to making defamatory statements in writing and in audio recording, Defendant, with the assistance of rogue and unethical counsel, has continued to maliciously prosecute a

fraudulent, meritless, and frivolous lawsuit in Canada, to a foreign Defendant, relying on *that* court's ignorance to personal jurisdiction over foreign defendants.

Defendant has stated that his wife is a lawyer, thereby cementing their ability to abuse the judicial system in Canada to their benefit.

For added emphasis, this includes making a false police report to the Toronto Police Service, who failed to do any due diligence given the multitude of red flags, and obtain Probable Cause, that which is apparently not required in Canada.

## **CHRONOLOGY OF EVENTS**

1.  Beginning sometime after November 15, 2023, David Kideckel, began an ongoing harassment, defamation, intrusion, and criminal campaign against Plaintiff.[1]

2.  After November 15, 2023, a lawyer, Ms. Mara Koven, known to both Plaintiff and Defendant was introduced to Plaintiff's cousin and friend, Mrs. Lynn Burton, in Mrs. Burton's apartment social room in Sarasota wherein the mutual knowing of Plaintiff and Defendant was realized.[2]

---

[1] The date Mrs. Lynn Burton departed Toronto for Sarasota for the winter, predating the triggering event.

[2] Ms.Koven subsequently contacted Defendant on social media to inform of the interaction and meeting *(See Exhibit .)*

3.  Defendant took extreme personal offense that a) Mrs. Burton maintained a relationship with Plaintiff, and b) Mrs. Burton described Defendant as "serious."

4.  From then until the middle of January, 2024, Defendant seems to have created a series of text-message "VoIP" accounts with Iristel, Inc. [34]

5.  Defendant continued to falsely, intentionally, and without solicitation, contact Mrs. Burton ["Plaintiff's close friend" *see Exhibit D*] advising of fake text messages to he, and his employer from these Canadian phone numbers. [5]

6.  **Plaintiff has no ownership, control, or association with any telephone number issued by the Canadian Numbering Administrator,  with (917)634-0637 his sole longstanding phone number.**

7.  Defendant, according to Mrs. Burton, continued to send copies of text messages to Mrs. Burton and others, **falsely** purporting to be from Plaintiff.

8.  Plaintiff contacted his uncle, who advised this Mrs. Burton should **"just block him."** (Exhibit A)

9.  On January 22, 2024, Plaintiff was present in Sarasota, when Mrs. Burton continued to receive unsolicited text messages from Defendant, who he claimed came from Plaintiff,

---

[3] Per Defendant's own admission, there are "seven to 10" phone numbers which Defendant used for this campaign; two numbers known to Plaintiff have both been confirmed by the Canadian Numbering Administrator to be owned by "Iristel, Inc."

[4] All of these numbers are listed on Defendant's malicious Statement of Claim.

[5] In audio recording, Defendant states messages sent to a boss named "Rob", cross-referenced with Defendant's LinkedIn to be concluded as Rob Steen of "Pharmadrug."

solely to defame and inflict emotional distress on Plaintiff, to shed Plaintiff in a false light with Mrs. Burton. [6] (Exhibit B)

10.  While out for dinner on January 22 in Sarasota, Defendant began incessantly calling Plaintiff' true phone number both from a "416" number and calls from a blocked/ unidentifiable number. (Exhibit C)

11.  Plaintiff inquired in to the sender's identity in written message, wherein the responder, presumed to be Defendant, advised of his own mental health issues, in an odd and third-person format. (Exhibit D) [7]

12.  Mrs. Burton requested a phone call with Defendant that evening, while Plaintiff was present.[8] (Exhibit E)

13.  **This phone call, recorded and transcribed, concluded with Mrs. Burton "blocking" David Kideckel from text, phone, and social media contact. (Exhibit F)**

14.  On January 23, 2024, Plaintiff advised his Aunt and Uncle, *again*, that Defendant had been harassing both he and Mrs. Burton. [9] [10](Exhibit G)

---

[6] Mrs. Burton, not sure what to make of it, as per her own words "[Plaintiff] never talks about [Defendant]" advised Plaintiff of these messages she had been receiving from. Defendant. ( See Exhibit F, poor quality to be sure, but nonetheless can be deducted.)

[7] Plaintiff keeps his phone in "Dark Mode" and the text messages with a black background originated from Plaintiff's phone, with Plaintiff's writings being in a "blue" chat bubble.

[8] Heavily emphasized in court filings, this transcribed phone call provides for numerous torts, and easily identifiable facts (ie. who owns the 204 phone number referenced.)

[9] Prior to going after Plaintiff, Defendant went on a smear campaign against this mutual Aunt and Uncle, as a result of Defendant's mother requiring Bone Marrow for Cancer Treatment, and Defendant unable to reach his Uncle (a Professor.)

[10] In reviewing Defendant's fraudulent Statement of Claim filed in Canada, a clear timeline oof January 23 can be plotted, wherein Plaintiff advised Defendant to **STOP** but he instead escalated.

15. **Plaintiff's Uncle advised "He's [David Kideckel] very sick. We all blocked him years ago. (Exhibit G)**

16. It was further stated that **"No one seems able to reign him [David Kideckel] in."**

17. <u>**This court must reign David Kideckel in.**</u>

18. Plaintiff's Uncle [name withheld] suggested Plaintiff contact the Toronto Police Service to perform a welfare check on his children, and to inform his ex-wife, Dr. Sari Herman, of Defendant's mental state at the time. (Exhibit G)

19. After receiving endless phone calls from blocked, and unknown calls, as well as from David Kideckel's newly informed phone number, Plaintiff warned Defendant on January 23 to "Cease and Desist" and to stop bothering Plaintiff, (Exhibit H)

20. With there being nobody whom both Plaintiff and Defendant maintain a relationship with, Plaintiff reached out to Ms. Koven requesting she advise Defendant to knock it off (read: Cease and Desist) the defamation and harassment campaign as Plaintiff and Mrs. Burton wish to live peacefully **without** David Kideckel. Exhibit I)

21. **Ms. Koven advised that she too blocked David Kideckel from all contact after being harassed by him. (Exhibit J).** e

22. **On January 26, 2024, Plaintiff received a "Cease and Desist letter" that was [believed to be** *just*] part of the harassment and intrusion. [11] [12]

---

[11] It was in fact a preface to a malicious and fraudulent lawsuit that was filed.

[12] Plaintiff filed a complaint with the Law Society of Ontario (State Bar equivalent) believing this letter to be a form of telecommunications harassment, as it contained missing, ambiguous, implausible, and indiscernible demands. This letter (or the lawsuit that followed that Plaintiff was not aware of) **lead to Defendant's counsel, Mr, Aram Simovonian, being terminated from Scalzi Caplan LLP.**

23. Perhaps feeling instigated by Mrs. Burton's challenge to pursue legal claim, Defendant filed a lawsuit in the Ontario Superior Court of Justice, on February 1, 2024.[13]

24. Attached in Plaintiff's Motion Record for Ontario, Defendant, by and through [subsequently terminated] counsel, makes a series of false statements, including that Plaintiff contacted his employer(s), and others, from various phone numbers originating in Canada.[14]

25. Defendant attempted Service of Process of this malicious prosecution, with Plaintiff not being made aware of this until c. December, 2024, with Plaintiff's doorbell camera's record not consistent with this. (See Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default.) [15]

26. Experiencing narcissist rage, and having been unable to Serve Plaintiff [*Brent, Defendant in David Kideckel's Statement of Claim dated Feb 1, 2024*], Defendant escalated. [16]

27. David Kideckel increased the severity of his fraud by sending text messages containing "threats of bodily harm" from these Canadian phone numbers to himself and his wife,

---

[13] Plaintiff was first made aware of this on May 8, 2024,  by Defendant himself, when advised of commenced litigation in Canada.

[14] As shown under the "Fraud" Cause of Action, these so-called text messages couldn't possibly have originated from Plaintiff as he was on an airplane at the time states.

[15] Plaintiff verified both with the Process Server and the Notary Public, Mr. Omar Kanan at PostalAnnex (7710 Hazard Center Drive, San Diego) in January, 2025, that this "Affidavit of Non-Service/attempted Service" is a true and authentic document.

[16] https://www.psychologytoday.com/intl/blog/understanding-narcissism/201710/how-de-escalate-fight-narcissist#:~:text=Many%20Narcissists%20say%20provocative%20and,taking%20it%20out%20on%20you.

Dahlia Saibil, and subsequently filing a false police report with the Toronto Police Service

claiming under oath they originated from Plaintiff .[17] [18]

28. The Toronto Police Service issued arrest warrants based on Defendants' sworn affidavits,

    failing to consider a) Plaintiff resides in the United States with no affiliation to Canada and

    with no reasonable person believing "seven to 10 *Canadian* phone numbers" belonged to a

    10+ year American resident,  b) Plaintiff [19]made a call to that same Agency *from* the United

    States expressing concern for the welfare of Defendant's children, a full month prior, c)

    Defendant went to the police **after** filing a civil suit; a curious sequence of events.

29. Defendant David Wilson advised Plaintiff over the phone "I am calling to inform you you

    will be arrested when you set foot in Canada."[20] [21] (Exhibit K)

30. Plaintiff, in shock and disbelief, spoke to the Toronto Police Service, as well as friends with

    the Winnipeg Police Service, to confirm if this was a prank, or true,

31. Plaintiff received written confirmation from the Staff Sergeant giving validation to this

    revelation. (Exhibit L)

---

[17] It is unknown to Plaintiff when this began, when it concluded, and at what point David Kideckel and Dahlia Saibil made a false police report with Toronto Police Service.

[18] The entirety of the Canadian justice it would seem relies on Affidavits with no probably cause required.

[19]. "Qualified Immunity protects all but the Plainly Incompetent." Marvin v. Briggs 475 US 335 (1986)

[20] Plaintiff offered to assist in any way, with Mr. Wilson disinterested, emphasizing he had no interest in Plaintiff's commentary on the matter, with his sole objective to inform of a [wrongful] detention.

[21] Plaintiff's later-retained counsel, Mr. Daniel Freudman, remarked "so you get arrested for ten minutes, what's the big deal?", emphasizing Canada's complicated relationship with individual freedoms, that which they had no problem to infringe upon of Plaintiff's."

32. Plaintiff subsequently made inquiry with various Law Enforcement Departments, including filing a report with the FBI, an incident report with the San Diego County Sheriff, and the Sarasota Police Department.[22] (Exhibit M)

33. Plaintiff believed this to be the height of the conspiracy, believing that Defendant's counsel being terminated, numerous governmental complaints filed, and Defendant's action towards his Process Server, but it in fact continued with Defendants Malicious Prosecution, as it was days after Plaintiff initiated litigation that Defendant moved forward with his suit in Canada.[23]

34. Defendant and his counsel, either ignorant to Ontario's own laws on service of foreign defendants, **lied under oath** to the Ontario Superior Court regarding the knowledge of Plaintiff's whereabouts.[24](Exhibit N)

35. Plaintiff subsequently made efforts with the Province of Ontario having filed a claim, and included the Foreign Nation of Canada.[25]

36. It became clear months later when Defendant's counsel attempted to use his malicious and fraudulent Statement of Claim as leverage to settle all claims.[26] (Exhibit O)

---

[22] Plaintiff wasn't certain the extent of the fraud and deceit undertaken by Defendant when making these reports, having believed it to be harassment and identity theft, when in fact was misappropriation and malicious protection,

[23] It was five days after Plaintiff initiated his suit that Defendant then sought Service by email from the OSCJ, counter to The Hague Convention.

[24] The affidavit attached outlines numerous instances of Defendant's counsel misleading Plaintiff's counsel and lying to the court, in addition to the lack of adherence to The Hague Convention.

[25] The Province of Ontario requires sixty days for a claim; after 90 days and having never heard a response, Plaintiff had no choice but to file a Statement of Claim, and when Plaintiff inquired with the Province as to why it wasn't answered/approved/rejected, no answer was given

[26] Through the unlicensed practicing of law, Defendant's counsel sought to negotiate a solution to the US suit via collective dismissals.

**CAUSES OF ACTION**

**False Imprisonment**

In filing a false police report, as exemplified in the Petition for Mandamus from the United States, Defendant falsely imprisoned Plaintiff in the United States. [27]

Defendant did this with explicit intention, with the assistance of his wife, Dahlia Saibil, lawyer and employee of the Office of the Attorney General for the Province of Ontario. [28]

As a shock to all persons Plaintiff spoke with, Plaintiff was advised both by text message at his "917"[29] phone number, and by email by the Staff Sargent of the relevant District (Precinct) of the presence of [false] arrest warrants.[30]

---

[27] Plaintiff spoke with a Criminal Defense Attorney in Canada (Louis Dallas) who advised that absent appearing for the charges, I would be unable to advance my immigration in the United States. Further he advised that Plaintiff must appear in Canada and an attorney could not answer for the "more-than-likely" to be withdrawn Charges.

[28] David Kideckel had first-hand knowledge of the way to ensure Plaintiff would get charged by the Toronto Police Service. The entirety of the Canadian system relies on Sworn Affidavits, and as this court has seen, David Kideckel feels free to commit perjury. Plaintiff's Canadian counsel advises that "rarely, if ever" do the Ontario Provincial Police prosecute, let alone investigate, perjury, and public mischief, likely due to a perpetual lack of resources.

[29] Like Mel Brooks, or George Washington, Plaintiff's 917 telephone number is "one and only."

[30] Even the Consulate General of Canada in New York expressed shock that the Toronto Police would advise that "you would be arrested when you set foot in Canada, as opposed to just….arresting you when you go to Canada. Unheard of"

**Intrusion upon Seclusion**

David Kideckel, with assistance from his wife Dahlia Saibil, and his rogue co-counsel, Aram Simovonian, has Intruded on the most sacred aspect of Plaintiff's Seclusion; freedom.[31] [32]

Plaintiff has a reasonable expectation of privacy, and Defendant's actions were beyond unreasonable; they were extreme, egregious and extraordinary. Defendant's conduct is behavior that exceeds all bounds of decency and is utterly intolerable in a civilized society.[33]

Defendant's actions were inherently intentional, albeit from a foreign nation, directed at the jurisdiction of the United States. [34]

Defendant had one goal and that was to Intrude Upon Plaintiff's Seclusion in the most egregious, extreme, and outrageous manner. [35]

---

[31] As shown, every party to have interacted with David Kideckel has blocked him from communication. From Mara Koven, to family members Dr. And Mrs. [redacted], Mrs. Lynn Burton, Plaintiff, and all of Defendant's previous employers, of which Plaintiff was advised there are seven, in calendar years 2023/24 alone. Plaintiff has gone to great lengths, albeit in vein, to insulate himself and distance from David Kideckel, and his unmitigated narcissism and violence.

[32] "Intrusion upon seclusion is actionable if there is an intentional invasion of a person's private affairs." Galella v. Onassis, 487 F.2d 986 (2d Cir. 1973)

[33] Wilkinson v. United States, 564 F.3d 927 (8th Cir. 2009):

[34] "A person's privacy can be invaded without physical trespass if their reasonable expectation of privacy is violated." Katz v. United States, 389 U.S. 347 (1967)

[35] This behavior would be shocking to the most reasonable person, but it should give this court and the United States strong consideration to defendant's exclusion from the United States, as, he says himself, he is mentally unwell, and Canada does not have the resources or willingness to mitigate Defendant's threat to the public.

## Misappropriation

Deendant [apparently] sent text messages to his employers, himself, and who knows whoever

else without full Discovery[36]

Defendant sent text messages misappropriating the Plaintiff from accounts with "Iristel", with

phone numbers issued from the Canadian Numbering Administrator.[37]

Defendant states himself that he separated from his employers with Non-Disclosure Agreements,

seemingly using Plaintiff's identity for his own financial gain. [38]

Defendant sent these messages, purporting to be from Plaintiff, without Plaintiff's permission. [39]

[40] [41]

---

[36] Plaintiff has submitted Subpoenas to this court for issuance, which will firmly conclude that David Kideckel impersonated Plaintiff for his personal gain. At present, Plaintiff only knows these messages did not originate from him, however David Kideckel's Default and subsequent actions strongly infer acknowledgement and recognition of his own guilt.

[37] The Canadian Numbering Administrator (CNA) is responsible for administering and managing telecommunications numbering resources in Canada. This includes overseeing area codes, phone number allocations, and ensuring compliance with relevant regulations. The CNA operates under the guidelines set by the Canadian Radio-television and Telecommunications Commission (CRTC).

[38] "Misappropriation for commercial purposes without consent is actionable."  Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562 (1977)

[39] "Even if the likeness isn't a direct photograph, it can still be actionable if it evokes the person's identity." White v. Samsung Electronics America, Inc., 971 F.2d 1395 (9th Cir. 1992)

[40] "The court recognized protection of a celebrity's persona beyond just their name or likeness." Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831 (6th Cir. 1983)

[41] United States v. Blixt, 548 F.3d 882 (9th Cir. 2008)

**Defamation**

In a phone call recorded on January 22, 2024, Defendant defamed Plaintiff. Defendant falsely stated Plaintiff had sent text messages to "people in his orbit" to Mrs. Lynn Burton, done with Actual Malice, a standard *not* required against private persons. [42] [43]

David Kideckel disseminated these falsehoods to numerous persons, including his employers, Plaintiff's father, and family members.

Defendant's defamatory statements were made by Libel and Slander, with David Kideckel disseminating falsehoods of his own creating through written and verbal means. Even if the text messages were sent by a third party and not from Defendant purporting to be from Plaintiff, they were asserted as objective fact.[44]

Defendant published these statements, and asserted, falsely, that Plaintiff had committed criminal acts.[45]

---

[42] "Actual malice" means the statement was made with knowledge of its falsity or with reckless disregard for the truth. New York Times Co. v. Sullivan, 376 U.S. 254 (1964)

[43] "Private individuals have a lower burden of proof in defamation cases than public figures." Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)

[44] "Statements of opinion can be actionable as defamation if they imply an assertion of objective fact." Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990)

[45] "Damages must be proven unless the slander falls into specific categories like accusations of a crime, having a contagious disease, or professional incompetence." Smith v. Maldonado, 72 Cal. App. 4th 637 (1999)

**Malicious Prosecution**

Filing a false police report is inherently malicious, and a violation of every State's Penal Law/ Criminal Code.[46]

While the false police reports were made in Canada, it is quite clear the Ontario Judicial System relies entirely on sworn statements, with no repercussions. Defendant's Malicious Prosecution was directed, willfully and wittingly, at the United States. [47]

**Telecommunications Harassment**

Dr. David Kideckel has engaged in the unlawful act of telecommunications harassment, through the telephone, email, and social media, to harass Plaintiff. [48] [49]

Between incessant calls beginning January 22, 2024, the creation of internet text-based phone numbers, and the frauds associated, Defendant has used all means of Telecommunications with the sole intention of harassing Plaintiff.

---

[46] California Penal Code § 148.5 PC, New York Penal Law § 240.50.

[47] "Knowingly making a false report to the police can result in penalties including fines and possible imprisonment". D.C. Code § 22-1319

[48] California Penal Code § 653m, which makes it illegal to use electronic communication to harass or annoy someone. This includes phone calls, emails, and text messages.

[49] New York Penal Law § 240.30 makes it illegal to communicate with someone in a manner likely to cause annoyance or alarm.

Defendant's actions were repetitive and intended solely to harass.[50]

**Dr. David Kideckel has a history of violence and uncontrolled anger, causing reasonable belief of harm to the Plaintiff.** [51] [52]

## Civil Conspiracy

Dr. David Kideckel continues to engage in a Civl Conspiracy with his wife, and co-counsel to pursue fraudulent claims in Canada.[53]

David Kideckel and his co-conspirators have caused harm to Plaintiff through their overt acts through the various tortious and unlawful acts. [54]

This continues to be carried out with explicit knowledge of, and agreement of David Kideckel and his co-conspirators. [55]

---

[50] Plaintiff finally added himself to the long list of persons who have "blocked" David Kideckel from being able to contact them, with the most recent incident in November, 2024. Plaintiff refrained from this act given they share a father on the precipice of death, and no other family members still in communication with David Kideckel; all cutting him off.

[51] Defendant was in Anger Management for most of his youth, has shown his violent nature to Plaintiff's Process Server, and Plaintiff's father expressed witnessing David Kideckel verbally and physically intimidating his ex-wife, Dr. Sari Herman, who Plaintiff understands also will not communicate with the father of her child without lawyers.

[52] California Civil Code § 527.6.

[53] Plaintiff is not requesting relief for the Malicious Prosecution of David Kideckel's originating suit, unknown to Plaintiff at time of filing Complaint. If Default is not Entered, Plaintiff will Supplement the Initial Complaint with newly uncovered torts.

[54] Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994)

[55] Kidron v. Movie Acquisition Corp. (1995)

**Fraud**

David Kideckel and his counsel made numerous false statements to the Ontario Superior Court of Justice to defraud Plaintiff. [56]

In Defendant's Statement of Claim (Exhibit Q), he **falsely** states that Plaintiff controls the following phone numbers: [57] [58]

   i) (204) 674-5452

   ii) (647) 497-4429

   iii) (365)-440-4340

   iv) (647) 559-5515

   v) (647) 691-7411

   vi) (289) 497-1538

   vII) (204) 818-6743

---

[56] This also includes the fraudulent and extortion demand for $1,000 in the flawed Cease and Desist letter.

[57] Should the court issue subpoenas Plaintiff has requested, it will be shown that the one, only, and true phone number of Plaintiff was only known to Defendant after January 22, 2024, and all messages prior to were from the fraudulent Canadian phone numbers.

[58] Plaintiff does not have the evidentiary support to reflect that Defendant is the one who sent the messages, an answer that can be resolved easily in Discovery, however as repeated throughout, they are not Plaintiff's. Defendant's default is an admission of his ownership of these phone numbers.

According to Defendant's own words, he used these fake phone numbers to harass or intimidate his employers, presumably as part of his exit-strategy.[59]

Defendant's counsel is aware that he is pursuing fraudulent causes of action but continues to pursue them, and seeks to force Plaintiff to abandon his meritorious claims for relief.[60]

**Abuse of Process**

While Plaintiff was never served with the suit (Lines 206 and 207 of Complaint) Defendant continues to Abuse Process; attempting to compel in-person testimony in Canada, over his co-counsel's failure to Serve Plaintiff in accordance with The Hague Convention Service Protocols. [61] [62]

Plaintiff has, as partially exemplified in the attached exhibits, spent over $15,000 USD to defend against this Abuse of Process, with total expenditures on Prosecution exceeding $30,000 USD.

---

[59] Defendant states himself that once employers discover his character they seek to dismiss him, and given Canada's lack of Right to Work laws, Defendant uses this to "sign NDAs". Defendant fraudulently claimed these messages came from Plaintiff.(Plaintiff cannot confirm if texts were ever even sent to Steen/Cohen, or solely a fabrication in his Statement of Claim, by and through counsel

[60] If this court does not enter default judgement, it is a further example of why this court should appoint Plaintiff's counsel to ensure an advocate who can navigate the FRCP and Local Rules effectively

[61] The Province of Ontario provides guidance for parties suing foreign Defendants. David Kideckel and his co-counsel cared not about the Rule of Law, and are continuing to seek Default, when Service was never Effected. Shockingly, the Ontario Superior Court of Justice allowed for Entry of Default, in contradiction to their own international obligations as a signatory to The Hague Service Convention.

[62] Plaintiff will bring forth a Supplemental Complaint in light of these new revelations, seeking greater relief from Defendant's co-counsel, Aram Simovonian and his newly created Law firm of Lima Lee Simovonian.

Occurring past the date of this Complaint, but to further highlight the Abuse of Process,

Defendant has demanded a two-day cross-examination on Plaintiff's [Defendant] Motion to Set

Aside Default.[63]  (Exhibit Q)

Plaintiff has incurred actual damages as a result. [64]

## Intentional Infliction of Emotional Distress

Defendant's tortious actions are inherently and unquestionably, intentional. David Kideckel, as

outlined in the Complaint, the audio recording, and the evidence attached, sought to cause as

much emotional distress as possible to Plaintiff.[65]

Defendant not only acted with complete recklessness and disregard, but the conduct was so

extreme and outrageous as to have the sole intent of causing severe emotional distress. [66] [67] [68]

---

[63] The subpoenas requested from this court for emails to Plaintiff from any "Aram" are to show not only that Defendant and his counsel **lied** to the court and never sent an email purporting to be Service of Process, but also that Defendant is either ignorant to, or blatantly disregarding of, Canada's inclusion in The Hague Convention of 1965 on Service Abroad.

[64] Defendant sought and secured a $2,500 "costs thrown away" order for reasons Plaintiff's counsel couldn't explain, however at its core, Defendant, in his malicious prosecution, failed to consider both Canada and US's participation in The Hague Convention, but continuing to demand Plaintiff incur costs nonetheless.

[65] David Kideckel's campaign of intentional infliction of emotional distress remains ongoing in his frivolous, and malicious Statement of Claim. Plaintiff was not Served with this when the Initial Pleading was filed and knew it to exist in filing status only, and didn't voluntarily submit to exposure, having now spent over $30,000 once being Served by a third party with a Motion for Default.

[66] Hughes v. Pair (2009):

[67] Atchison, Topeka & Santa Fe Railway Co. v. Buell (1987)

[68] Twyman v. Twyman (1993)

## **Proposed Judgement**

Plaintiff respectfully requests this court grant the relief from his Complaint as recited herein.

1. Compensatory damages in an amount to be determined by this honorable court, not less than $75,000. Given the extreme, egregious, and reckless nature of Dr. David Kideckel's actions, both previously and ongoing, it is imperative that this court send a message that criminal acts, committing perjury, and fraud directed at the jurisdiction of the United States cannot be permitted. Plaintiff requests that this court enter Summary or Default Judgement commensurate with the egregiousness and the inherently intentional nature. Plaintiff believes this to be in the range of $2,000,000 to $4,000,000. however leaves it to this court to determine if that is sufficient. [69]

2. Punitive damages in accordance with SCOTUS guidance of a maximum of four times Compensatory Damages.

3. Injunctive relief of a public apology in the newspapers of record for Canada and the United States (Toronto Star, and New York Times, respectively), 1/8 page broadsheet ad in the Sunday Editions, not later than 180 days after Final Judgement Order issued by this court.

_____

[69] Defendant's fraudulent Statement of Claim in Canada seeks $180,000, plus $200,000 for "punitive" damages, and Plaintiff believes this to be appropriate as the base with a 10X multiple.

January 20, 2025

Brent Kideckel

Plaintif, pro se

PO Box 20901

Floral Park, NY 11002

(917) 634-0637

BrentKideckel@gmail.com

# EXHIBIT "A"



**"EXHIBIT B"**



**EXHIBIT "C"**



# EXHIBIT "D"



# EXHIBIT "E"



# EXHIBIT "F"

**TRANSCRIPT OF TELEPHONE CALL
BETWEEN DAVID KIDECKEL AND LYNN BURTON
RECORDED AT THE RESIDENCE OF MRS.LYNN BURTON,
THE TOWER RESIDENCES AT THE RITZ-CARLTON
35 WATERGATE DRIVE, SARASOTA, FLORIDA**


**JANUARY 22, 2024 approx. 8:00 PM LOCAL TIME**


**DAVID KIDECKEL: I don't know who you mean by my family, but like, let's get into things Lynn. So what's happening with Brent? Like, honestly I I know you're close with him, and he's nothing short of a menace, threatening me and my family and others with texts. And ummm uh I'm bringing you in because you're the only one that I know that actually speaks with him.**

Lynn Burton: Well, you gave me a number that you said he was texting you from and I hadn't seen that number before because...

**David: I have probably seven to ten numbers that he changes or it's called VoIP. He often deletes his numbers and then changes them. He's texting, he just texted me 30
seconds before you called. But anyway, I'm sorry for cutting you off.
Go ahead.**

Lynn: Well, I called that number that you gave me that you said he texted from and it said to leave a message that the, it was like a text number or something? Like, it was only a text number. It wasn't like a a person number, kind of. I didn't know that existed.

**It's called VOIP.**

Okay.

**Voice Over Internet Protocol. Look, I don't know...
I'm not trying to
be a prick here, Lynn. Like, let me just be clear.
All I know is that you and him speak and are I think
close and nobody else in my entire family even
speaks with Brent. And so you're the only person I
have something against you personally. I just don't
know who else to go to. He just texted me again
threatening me from a 917 number. So I don't
know what to do. I mean, you tell me.**

*∗∗Plaintiff's commentary: this text was upon Defendant David
Kideckel sending unsolicited messages to Plaintiff at his true and
only phone number. Plaintiff asked David "to think where he could
be right now" as Plaintiff was recording this interaction∗∗*

Well, a 9 1 7 number.

**I'll tell you. Hang on.**

**Here it is. 9 1 7 6 3 4 0 6 3 7.**

BRENT KIDECKEL (to Lynn in background): Ask him to
read the message.

Lynn: Okay. Can you read the message?

—long pause—

**Ummmmmmm Well, I just texted him ……the text he sent
the CEO again. I sent you and he says, "do you know
where I am right now?" I said, "tell me" and he**

**said, "I don't know who this is, but think long and hard where I might be at this minute." And that's typically Brent being passive aggressive and very aggressive. And ummm and there's much more, like he's texting saying, I'm a, you are, this is him texting, from 204-818-6743, "you are such a loser in life, fired, divorced twice, no family, you've hit the trifecta, bro." What else do I have?**

There's there's many others. The point, Lynn, is, um... Oh, here's another. Here's a gem. "You have little man syndrome. Let's pray mommy Dearest will die this yea."

*heavy impatient breathing in background—a frustrated Lynn Burton*

**"…wifey too will kick your asap [indiscernible talking] … If you took twice the bills, failure in marriage, work, and life, you hit your train wreck."**

*long pause*

Okay, anything you want, or are you, like... I mean, I don't know what to tell you. I'm honestly, I'm not asking for you to do much. It's just more to, because I think you're a sensible person. Even though we might have our differences based on, you know, the past here, seems.

**Um, but just, I'm going to back off where I will be filing a criminal complaint. My wife's a lawyer, a criminal lawyer at that. So it's moreof a warning to him.**

Well, do you even know where he is?

**I have no idea. I haven't spoken to him.**

So how?

**He changes his number. He changes his number every time he texts me.**

So how are you going to file a criminal?

**Exactly.**

How are you going to do that if you don't even know where he is?

*David talking over Lynn*

Pardon me?

**Lynn, do you know where he is?**

No, I don't know where he is.

**When was the last time you spoke with him?**

Well, I've spoken to him, but I don't...

**When?**

I speak to him, but I don't really know where he is.

**When was the last time you spoke with him?**

Oh, maybe a couple of months ago.

**And where was he?**

  I don't know. I think he was in San Diego.

# I know he's in the US. **He uses the Winnipeg or Toronto phone number. 917 is a New York phone number. Um, you're right. I'm just going to go to the local authorities and...**

In Toronto?

**I, I, look, I'm going to be careful in what I tell you because I don't know what you're going to tell him. So I am going to go to the authorities, whether it's federal or provincial or local. I'm in the process of getting legal advice on that exact question, so I don't know. And I probably wouldn't tell you anyway, but I will be pressing something against him. Would you not agree? I don't know what he's told you. You probably have this whole perception of me that is entirely false, based on what he's told you.**

Actually, to tell you the truth, he never even mentions you. I, you know, and to tell you the truth, I found that your text to me about not speaking to your father or writing him about surgery, I found it very offensive and I asked your father to tell you that you owed me an apology because there's no need for you to write me like that because you probably, I'm your father's first cousin, I'll bet you a hundred bucks you couldn't name all your father's first cousins. You only know me. You don't even know them and I'm supposed to keep phoning your father when he's never called me? That's not a relationship. And I don't, I don't, when did I see you last? Maybe I saw you at your grandmother's funeral. I don't remember. And I saw you at your first wedding and before that I think we went out, your grandmother and Marla and

me, maybe 20 years ago. Like I don't I don't understand why, you know,  why you're you're you're at me because I'm not speaking to your dad. Your dad never calls.

**I don't care about my dad. For you to not care about my dad, I don't care. To be honest with you Lynn, I spoke with my dad. I did my due diligence before sending you my texts today. I asked him directly, did Lynn say anything about me? He said "no". Okay? I don't care that you didn't call my dad. It wasn't actually about my dad. It was more about when I was taking care of my dad in Winnipeg. I'm getting hateful texts from Brent. And I know you've attempted to sue my mother with Brent. So I just assume you're on his side. Maybe I'm wrong, but tell me I'm wrong. Like, am I wrong in saying this? Like, honestly.**

There's no side. There's no side. And that was—

**DID YOU SUE MY, DID YOU HELP MY BROTHER SUE MY MOTHER?**

You know what? Maybe my husband did. May he rest in peace. But he died 10 years ago. So I don't even know when that was. I did nothing. Okay. And I don't, I don't.

**You're a party to it. You just stood there while my brother sues his mother for not, for what?**

I don't know. I, my husband might have, might have. [Indiscernible cross-talk]

**And you don't know?**

**Like, come on. That's really what I'm getting at. So I assume you're very close with Brent and for Mara Koven, who I speak with, I don't even speak with, to tell me that you tell her, all I, David Kideckel, is serious, but you're very close with Brent? How does a person I don't even speak with, and now I have no relationship with, make something like that up?**

No, she didn't make it up. You called me senile, but she didn't even sit down. She came through my social room in my apartment. I was introduced to her. I didn't even remember her name after you mentioned it. And she said she was from Winnipeg. And I didn't...

**And then you talked shit about me in the process.**

No, I didn't talk shit about you. I said you were a serious person. Would you rather I had said you're a clown? It's nothing wrong with being a serious person. You are a serious person. It's not a bad thing.

**You don't know me, Lynn. Lynn, with all due respect, you don't know me. Nobody... This is the beef I have with you. You don't actually know me. To lay any description about me...**

But that's not a bad word. I mean, that's how I remember you.

Okay, but you obviously meant it negatively because...

No, I didn't

**For your husband, Richard, sued my mother with my brother. You're telling me you never saw the court documents? Like, tell me the truth.**

No, I didn't. No, I didn't. How long ago was that?

I don't even know. I mean, it's just, honestly, I wasn't even going to bring it up. But the fact that now Brent uses you as almost like an alibi for some ways, do you understand, Lynn, nobody in our family, whether it's Kideckel's, at least not the Kideckel that I know, and you're right. I don't speak with any of my dad's first cousins, because you know what? He's never introduced me to any of them. I don't even know who they are. But from on my mom's side, nobody speaks with Brent.

Brent to Lynn, a Kideckel family member: "Ask about Alan" [mother's brother]

**Do you understand? So you're the only, the only reason why I'm coming to you is not because I have any issue with you. Even my mom, lawsuit aside, it's only because you're the only person I know that speaks with Brent the only person**

and you speak to everybody in Hope's family?

**Uhh no I don't**

You don't?

They haven't been particularly uhh nice to my mom either. And I, I really side with my mom.

So if you knew anything about what's going on,
you've probably heard that we don't speak because
David's been a prick. That's probably what you
hear from Brent. You don't know the other three
quarters of everything, which is David Hope's son
being extremely loyal to Hope. That's what you don't
hear.

I don't hear anything. I'm telling you, the only
time I heard from you
was when you gave me shit for not calling your
father. Yes, yes you
did. More than once you said that you'd be
appreciative of my paying
more attention or something to your father. And I
called your, yes,
yes I called your father and he said I didn't tell
anybody I had
prostate surgery. You don't go around telling people
you had prostate
surgery. And the last time he was in the hospital I
called him several
times you told me to call him because he had
prostate I called him
several times has he ever called me? Never. Ever.
That's not a relationship. It's not.

**well he rarely calls, look I'm not mad about that. I
actually don't even care about that.**

you wrote it like you were mad, that I should be,
you know, I should care more or be...

**Lynn, I know what kind of man my dad is, okay? I'm
not stupid. I know he….his relationship with me
is... I make all the effort, okay? So, I don't**

**know. Like, let's call it spade to spade. I know the kind of man my dad is, okay? I know. I'm not trying to be [indiscernible], okay? If that's what you think, then it clearly did not come across appropriately.**

Well that's the same thing, it does't always come across appropriately. And that's what happened with Mara. I dod not say anything negative about you, you took the whole thing negatively, I don't know, I didn't even know who Mara was, then I couldn't, I was introduced to her in passing. She didn't even sit down. And then you called me senile because I didn't remember her. I have it here on my phone. You called me senile.

Lynn…

I'm not senile.

I don't think you are.

Well, you said so. Why did you write it? It's in writing. I have it in black and white. That I should pay more attention to your dad and that I'm senile. That's what you wrote me.

**If that's what you're mad about,I mean I**

No, I'm not.

I'm not mad, but that's it, but but you're asking I don't have

**You sued my mother for Christ's sake. Like come on your husband. Your, your, husband. Who's unfortunately, who I liked a lot. Richard?  Like**

**what do you have to say about that? You tell me you
didn't know anything that's going on? Bullshit! And
that's not even why I care. That's not why I'm
texting you.**

Okay, what would you like? Tell me what you'd like,
what would you like from me?

**I'd like you..to the point where, you know, we don't
clearly see eye to eye, tell Brent to settle the
fuck down. Because he is fucking crazy.**

Brent Kideckel: Hi David.


**…I will pursue criminal charges.**

*mute sound*

Lynn to Brent: Don't do that. Get out of here.

**Hello?**

Yeah, sorry. (*unmute sound*) Sorry, my phone is
crazy here.


**Hello?**

Yeah. Hello? Can you hear me? Hello?

**Hello?**

Oh, sorry. Okay. I don't know. I
have another call coming in. But it's okay. I'll
just leave it.

Um, you're going to… Okay.

It's about Brent. I don't care about my dad or my mom right now in the sense of your past and your husband's past with this.

**It's abouT Brent threat threatening me and my family. And now calling a workplace where I'm chairman of the board and me having to explain myself to the chairman and other people to walk them off a cliff to tell them my brother is psycho. This is out of bounds.**

Okay, so what would you like me to do?

What do you, I, what I'd like you to do versus what you will do, I dob't know. You just said you spoke with him two months ago. Is that true, or?

What would you like me to do? You want me to call him and tell him to leave you alone, okay? Is that what you want?

**No, Lynn I don't want you to call him and do anything.**

What would you like me to do?

**I would like you to explain to him how it's morally incorrect to do what he did. I will continue to send you texts that he sends to people within my orbit. Verbatim orbit. If he does anything again, I will be filing criminal charges against him.**

Okay, then do if you feel that.

**Your name will be included,**

good,

**do you understand,**

good,

**I know where you live.**

Good, I'm glad you know where I live. You can come visit me. I've never visited you and you've never visited me. It's time. We're cousins.

**I'm at 23 Peveril Hill South. My door is always open.**

Good.

**I'm in Toronto, at Bathurst and Eglinton.**

Good. Okay. I know where that is. Okay. I'll come and visit you. You come and visit me. We'll be nice cousins. Okay.

**Ok, So with that naivety out of the way, are you done now? Like, can you actually talk like an adult?**

*long pause*

—Lynn terminates phone call.

Finished. I'm finished.
Transcribed with Cockatoo

# EXHIBIT "G"

Tue, Jan 23, 4:19 PM

So your nephew David has been harassing my cousin Lynn and me for the last couple days. Luckily I recorded the phone conversation. But both Lynn and Me have told

Howard he needs to do something and he of course doesn't answer. I think you need to cease communication with him.... This is getting pretty serious if not dangerous. I don't know what he said to you but he needs some serious mental health care. Not sure what to do other than block anyone that has a connection to them.

(Which, by the way, is why I removed your girls from my social media. They're friends with Jenna and I want no part of that.)

Howard wouldn't say or do anything for risk of David holding back Ora and Harrison and refusing to let Howard see them. He's very sick. We all blocked him 4 years ago

He's scared of David I hear

I am too now

That's because you never know what David is capable of. We all went through that with him a few years ago

No one seems able to reign him in

Something must be triggering all this

I don't know what though

With mental heath problems, it could be just about anything

I just got off the phone with Toronto police. They're going to do a welfare check on the kids given his history with physical abuse

Both Ora and Harrison
Maybe Sati too?

I gave them saris and dahlias names. I called saris office today and left a message expressing my concern for her daughter's welfare. I didn't hear back but I was also on a plane for that last five hours

They have the record of his previous abuse of sari

He's on a downward spiral trajectory

Yes. Lynn said he's going to explode and someone may get hurt and won't end well. Glad I'm in the US

# EXHIBIT "H"



# EXHIBIT "I"

 Gmail

**Brent K <brentkideckel@gmail.com>**

---

## David Kideckel

**Mara Koven-Lapointe** <MKoven-Lapointe@ltglc.ca>                    Wed, Jan 24, 2024 at 12:31 PM
To: Brent K <brentkideckel@gmail.com>
Cc: "larry.vickar@vickar.com" <larry.vickar@vickar.com>

Brent,
I have no contact with David. He made contact with me very randomly over Messenger several months ago. I had not spoken to him before that conversation in many many years. I casually mentioned that I met his cousin in Sarasota. I couldn't even remember her name, so I was trying to give him context. I told him that she was close to you (Brent) but didn't have much to say about David other than that he is serious. That was the extent of that conversation.

He then later made contact with me and was harassing me about a Facebook post I made about the war in Gaza. I blocked him from my Facebook and have had no further contact with him.

I have no knowledge whatsoever of your family dynamics. My comment to him was so insignificant, I certainly did not intend to cause any issues - and not sure how I could have.

I was with Larry on a social visit and was not there in any legal capacity.

I don't know how I can be of help to you in this matter but certainly don't want to interact with your brother further. If your cousin wishes to hear from me, I can certainly contact her, but again, I am not sure what I can do to assist her.

Mara


Sent from my iPhone

> On Jan 24, 2024, at 2:20 PM, Brent K <brentkideckel@gmail.com> wrote:
>
> [Some people who received this message don't often get email from brentkideckel@gmail.com. Learn why this is important at https://aka.ms/LearnAboutSenderIdentification ]
>
> [CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe]
[Quoted text hidden]

# EXHIBIT "J"

 **SCALZI CAPLAN**

20 Caldari Road, Unit 2
Vaughan, ON, L4K 4N8

January 26, 2024

**BRENT KIDECKEL: brentkideckel@gmail.com**

Mr. Kideckel:

| Re: | David Kideckel v Brent Kideckel |
|---|---|
| Our File No.: | 02370 |

We are litigation counsel to Dr. David Kideckel.

It is our understanding that you have chosen to defame and harass our client in an effort to cause them serious economic, and psychological harm, by way of unfounded, bad faith, harassing, and defamatory statements.

Your malicious and defamatory statements have caused and continue to cause irreparable harm to our client's reputation. Your conduct amounts to an unlawful interference with our client's economic interest.

We have instructions to commence legal proceedings against you with respect to your forgoing conduct, unless you:

1. immediately cease and desist from making further oral or written statements or threats of similar nature or kind and immediately cease and desist from contacting our client's family members and/or colleagues, directly or indirectly;
2. execute an APOLOGY, RETRACTION and UNDERTAKING, that may be published in any manner or form of our client's choosing; and
3. remove any and all statements you published or caused to have published, immediately;
4. pay the sum of ONE THOUSAND DOLLARS ($1,000) by certified cheque, money order or wire transfer, to Scalzi Professional Corporation, in Trust, such funds to be used to defray our client's legal fees.

If you fail to perform the foregoing terms by no later than January 29, 2024, legal proceedings will be commenced against you without further notice.

Regards,

Aram Simovonian

# EXHIBIT "K"



# EXHIBIT "L"

Hello,

Thank you for your email.

I do not understand any of this as I have not been harassing anyone!

I have not sent any harassing texts. I want nothing to do with Mr Kideckel or his family.

I'm not understanding how there could he probable cause when I haven't sent any texts and haven't had a Canadian phone number in over a decade.

Could you please clarify and provide a case # as this just does not make any sense.
Brent Kideckel

> On Mar 4, 2024, at 9:11 AM, Dave Lim <Dave.Lim@torontopolice.on.ca> wrote:
>
> Hello Mr. Kideckel,
>
> After looking into your complaint, I did not find any wrong doing by either Det. Wilson or his colleagues.
>
> Your brother reported an on-going harassment to 13 Division, which was properly investigated by Det. Wilson and Detective Constable. D'Souza.
>
> Your brother's family expressed safety concerns and wished to pursue criminal charges to prevent you from making any type of unannounced visit.
>
> So to answer your question, Det. Wilson's voicemail is a legitimate and there is a warrant for your arrest at this time for "harassment and uttering death threat."
>
> It is within your right to pursue any type of civil proceedings on your end, but there will be no further action taken by myself or anyone within our service.

# EXHIBIT "M"



**FEDERAL BUREAU OF INVESTIGATION**

HOME    FILE A COMPLAINT    CONSUMER ALERTS    INDUSTRY ALERTS    BEC    RANSOMWARE    ELDER FRAUD    COMMON SCAMS

## Victim Information

| | |
|---|---|
| Name: | Brent Kideckel |
| Are you reporting on behalf of a business? | No |
| Business Name: | |
| Is the incident currently impacting business operations? | |
| Age: | 40 - 49 |
| Is the victim aged 17 or under? | |
| Address: | |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| City: | |
| County: | |
| Country: | |
| State: | |
| Zip Code/Route: | |
| Phone Number: | 9176340637 |
| Email Address: | Brentkideckel@gmail.com |
| Business IT POC, if applicable: | |
| Other Business POC, if applicable: | |

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

IDENTITY THEFT- escalated to threatening statements to third parties in Canada

Beginning in December 2023, my long-estranged brother in Toronto, Canada, began contacting cousins etc that are close to me, to (falsely) claim I have been sending text messages to him, his family, and his employers. These messages are being sent from Canadian phone numbers I once had, however I've only had one phone number- my US #- for over a decade.

David Kideckel, my brother, sent messages at first that were incomprehensible, however the commentary to family was that it was to portray him poorly while also making me look bad to our cousins.

Receiving no reaction from me, David escalated the rhetoric of his messages purporting to be of a harassing and threatening nature. Again- I want nothing to do with him, and I have gone to great lengths to insulate myself from him and Hope Springnan, my "mother."

David has either assumed, or mimicked phone numbers that are not mine, however uttering threats to create a manufactured threat to himself.  I have not seen any of these messages- David however has used it to seek harm on me if I were to travel to Canada.

I'll be taking civil action against David for all this, however -- I'm concerned that he may escalate, as he is a known via,ent person. While hearsay, it is my understanding that he was physically abusive to his ex-wife, Dr. Sari Herman of Toronto, Canada. The harassment and bullying of persons did not start with me-- David had been harassing and bullying other family members (all of whom would be happy to be contacted about the matter) and while they just blocked him on their devices, he has escalated in his attack towards me.

On January 21, 2024, I was in Sarasota, Florida at my cousin's condo at 35 Watergate. During a call between David and Mrs. Lynn Burton, he was explicitly clear that he seeks revenge on me for suing Hope Springman 15 years ago (!!) for fraudulently withdrawing the contents of my Bar Mitzvah trust account. I have a recording of this call.

David has also had a long history of violence including anger management for many years, albeit clearly ineffective  My husband is a victim of violent crime-- his grandparents Rod and Lois Houser were brutally murdered in Central Oregon in 1he 1980s. Their killer, Kuzyk, is still on death row in Oregon and the family is forever dealing with the matter- parole hearings, victim impact statements, etc. We have a genuine and real fear for our physically safety.

I've filed a report for harassment and stalking with the                                                                    and I've attempted multiple times to file with the Toronto Police but they will not take my complaint and require that US Law Enforcement engage with them directly. Officer Cook of the Sarasota Police Department, whom I've spoken with on a couple of occasions, advised to file here, directly with the FBI.

PLEASE HELP!!

## Information About The Subject(s) Who Victimized You

| | |
|---|---|
| Name: | David Michael Kideckel |
| Business Name: | |
| Address: | 23 Peveril Hill South |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| City: | Toronto |
| Country: | Canada |
| State: | |
| Zip Code/Route: | M6C 3A7 |
| Phone Number: | 4165872549 |
| Email Address: | kideckeldavid@gmail.com |
| Website: | |
| IP Address: | |

## Other Information

If an email was used in this incident, please provide a copy of the entire email including full email headers.

[No response provided]

Are there any other witnesses or victims to this incident?

Yes--



If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

Sarasota Police Department, Officer Cook (941)263-6773

Ive spoken to both on multiple occasions over the past five weeks.

Check here if this an update to a previously filed complaint: ☐

## Who Filed the Complaint

Were you the victim in the incident described above? Yes
Name:
Business Name:
Phone Number:
Email Address:

## Digital Signature

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S.Code, Section 1001)

Digital Signature: Brent R. Kideckel

# EXHIBIT "N"

Court File No. CV-24-00713955-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

**DAVID KIDECKEL**

Plaintiff

and

**BRENT RICHARD KIDECKEL**

Defendant

**SUPPLEMENTARY AFFIDAVIT OF BRENT RICHARD KIDECKEL**

I, Brent Richard Kideckel, of the City of San Marcos, State of California, USA, MAKE OATH AND SAY:

1. I am the Defendant in this action, and as such have knowledge of the matters hereinafter deposed to.

2. Where the information I attest to has come from a third party, I have listed the source of such information, and verily believe same to be true.

3. On December 23, 2024, my counsel served my Motion Record and draft Factum on Plaintiff's counsel via email. That same day, Plaintiff's counsel responded advising that my Factum is erroneous. Specifically, Plaintiff's counsel provided an Affidavit of Non-Service ("AONS") indicating that personal service was attempted upon me in the USA (as opposed to solely being attempted via e-mail, as was my previous understanding based on earlier communications / materials).

    ***Attached as Exhibit "A" to this Supplementary Affidavit is the Affidavit of Non-Service, sworn March 4, 2024***

4. I had previously never seen this AONS, and am uncertain as to why this AONS was omitted from the Plaintiff's motion record (for default judgment). Similarly, it was not provided or even mentioned when my counsel Daniel Freudman first inquired about the issue with Plaintiff's counsel.

5. In particular, as stated in my first Affidavit on this Motion (at para. 11), after being retained my counsel Daniel Freudman requested **all relevant affidavit(s) of service, including any affidavit(s) of attempted service**. This request was made via email on December 10, 2024, as at that time my counsel advised he only had the affidavit of service in respect of the email service pursuant to the Order for substituted service. The very next day, in response, Plaintiff's counsel advised: "*We did not know the whereabouts of your client, and I inquired many times, if he would accept service by e-mail. I was ignored. In light of this, I had to proceed with the motion for sub-service. In other words, there is no other affidavit of service.*".

    *See Exhibit "F" to my first Affidavit on this motion, the attached relevant email correspondence between counsel*

6. According to the above, the Plaintiff / his counsel "did not know [my] whereabouts". Similarly, in the Affidavit of David Kideckel sworn May 10, 2024 (contained within their motion record), the Plaintiff swears at paragraph 16: "*I do not know where [the Defendant] resides…*".

    *See Exhibit "G" to my first Affidavit on this motion, the Plaintiff's Affidavit as extracted from his Motion Record (for substituted service)*

7. As stated in my first Affidavit, the above averments are confounding, as the Statement of Claim was issued on February 1, 2024 (i.e. some three (3) months prior to the swearing of that Plaintiff's Affidavit). On the second page of the Statement of Claim, it clearly lists my address of 1528 Rock Springs Rd., San Marcos, CA 92069, USA.

8. Enhancing this palpable inconsistency is the aforementioned AONS provided by Plaintiff's counsel (as attached hereto as Exhibit A). The AONS indicates that not only did the Plaintiff know my address in February 2024, but they even received confirmation as to its validity. In particular, the Affiant process server swears, on March 4, 2024: "I looked up the address [1528 Rock Springs Rd., San Marcos, CA 92069] to see if I could find out if the defendant lived there.

3

**The report I got back said that he did live there**". Nevertheless, the Plaintiff shortly thereafter swears and affirms that he does not know where I live.

9.  Even ignoring the above glaring inconsistency, two critical facts remain:

> (i)  I never received the Claim at the time of the purported attempted personal service (hence the Affidavit of *Non-Service*); and

> (ii)  The Claim was never served in accordance with the *Convention*, notwithstanding the "personal service" effort.

10.    It therefore remains my position that I was never properly or personally served with the Claim, and such only came to my attention on or about November 29, 2024 following receipt of the email from Julian Attisano.

11.    I make this Supplementary Affidavit in support of a Motion to set aside the noting in default (and any default judgment) and for no other or improper purpose.

SWORN BEFORE ME by video conference          )

From the City of San Marcos, State of California, USA)    _____

To the City of Toronto,  Province of Ontario        )          Brent Richard Kideckel

This _____ day of December, 2024          )

_____

A Commissioner, etc.

Daniel Freudman

**EXHIBIT "O"**

Court File No.  CV-24-00713955-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

**DAVID KIDECKEL**

Plaintiff

and

**BRENT RICHARD KIDECKEL**

Defendant

# MOTION RECORD

Dated at Toronto this 17th day of December, 2024.

_____

**Daniel Freudman**
**FREUDMAN LAW PC**
603.5 Parliament Street
Toronto, ON M4X 1P9

Tel: 647-771-2416
Fax: 416-483-4867

Daniel S. Freudman
LSUC No. 62181C

Lawyer for the Defendant,
Brent Richard Kideckel

TO:        Aram Simovonian
              LIMA LEE SIMOVONIAN LLP
              320 Bay St., Suite 454
              Toronto, ON  M5H 4A6
              Tel: 647.677.8009
              E: asimovonian@limalaw.ca

              Lawyers for the Plaintiff

Court File No. CV-24-00713955-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N :

**DAVID KIDECKEL**

Plaintiff

and

**BRENT RICHARD KIDECKEL**

Defendant

# TABLE OF CONTENTS

TAB

1.  Notice of Motion

2.  Affidavit of Brent Richard Kideckel, sworn December     , 2024

    A.  Exhibit A – Statement of Claim, issued February 1, 2024

    B.  Exhibit B – Email from Julian Attisano, dated November 29, 2024

    C.  Exhibit C – Order for Substituted Service of Justice L. La Horey, dated May 22, 2024

    D.  Exhibit D – Affidavit of Service of Aram Simovorian, sworn July 25, 2024

    E.  Exhibit E – Requisition, dated July 25, 2024

    F.  Exhibit F – Email correspondence between counsel

    G.  Exhibit G – Plaintiff's Affidavit as extracted from his Motion Record (for substituted service)

    H.  Exhibit H – (Draft) Statement of Defence

# TAB 1

Court File No.  CV-24-00713955-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

**DAVID KIDECKEL**

Plaintiff

and

**BRENT RICHARD KIDECKEL**

Defendant

**NOTICE OF MOTION**

   The lawyer for the Defendant will make a motion to the court on _____
the _____ day of _____, 2025, at 10:00 a.m., or soon after that time as
the motion can be heard, at 393 University Avenue, Toronto, Ontario.

   PROPOSED METHOD OF HEARING: The motion is to be heard

[ ]  in writing under subrule 37.12.1;

[ ]  in writing as an opposed motion under subrule 37.12.1 (4);

[x]  orally.

   THE MOTION IS FOR:

1. An Order setting aside the noting in default of the Defendant, as well as any
   subsequent judgment.

2. An Order ceasing any and all enforcement actions and/or procedures currently or
   in the process of execution.

3. An Order allowing the Defendant to deliver the proposed Statement of Defence,
   as contained with this Motion Record.

4. An Order, should such be necessary, allowing the Defendant to deliver a Counterclaim in the within proceedings.

5. Costs of this motion, if opposed.

6. Such further and other relief as to this Honourable Court may seem just.

THE GROUNDS FOR THE MOTION ARE:

1. This action arises from allegations by the Plaintiff (being the Defendant's estranged brother) that the Defendant has been defaming and intimidating the Plaintiff and other parties related to him. Specifically, the Plaintiff claims that the Defendant has been engaging in a campaign of unlawful and vindictive behaviour that has caused the Plaintiff to suffer an assortment of damages.

2. On or about February 1, 2024, the Plaintiff through his legal counsel issued a Statement of Claim (the "Claim") in this regard at the Toronto, Ontario Superior Court of Justice (Court File Number CV-24-00713955-0000). In the Claim, damages are sought in the amount of $180,000, plus $20,000 in punitive damages.

3. For reasons outlined in the Affidavit of Brent Richard Kideckel, the Defendant was never personally served with the Claim, nor did he have any knowledge of the proceedings until November 29, 2024, long after the noting in default had already occurred.

4. Forthwith upon learning of the Claim and corresponding noting in default, the Defendant retained legal counsel to bring the herein motion to set aside the said noting in default and any related enforcement proceedings.

5. The Defendant has a meritorious defence to the Claim, as he asserts that he did not make the defamatory / threatening comments in question. The Plaintiff states that the

Defendant used various phone numbers to execute his campaign of malice. However, there is no evidence to support the Defendant's ownership or affiliation with any such phone number(s). To the contrary, at all material times, the Defendant only had one single phone number, and none of the communications in questions came from that number. Additionally, several of the remarks in question do not amount to defamation as such were not disseminated to any third party.

6. The prejudice to the Defendant from allowing the Judgment to stand would be very significant, as it would prevent the case from being adjudicated on its merits and cause the Defendant significant financial hardship. Conversely, the prejudice to the Plaintiff in setting aside the Judgment would be very minimal, particularly as their evidence is largely documentary, well-preserved via written correspondences, and not subject to loss or deterioration over time.

7. In addition, the Claim was served outside of Ontario, in a manner that does not accord with Rule 17 nor the corresponding *Convention*.

8. Granting of an Order to set aside the judgment would not adversely affect the overall integrity of the administration of justice.

9. Rules 17.06, 19.08 and 37 of the *Rules of Civil Procedure*.

10. Such further and other grounds as counsel may advise and this Honourable Court permit.

        THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

    1.    Affidavit of Brent Kideckel, sworn December     , 2024.
    2.    Exhibits appended to the Affidavit of Brent Richard Kideckel

Dated at Toronto this 17th day of December, 2024.

_____

**Daniel Freudman**
**FREUDMAN LAW PC**
603.5 Parliament Street
Toronto, ON M4X 1P9

Tel: 647-771-2416
Fax: 416-483-4867

Daniel S. Freudman
LSUC No. 62181C

Lawyer for the Moving Party,
Brent Richard Kideckel

Court File No.  CV-24-00713955-0000

**DAVID KIDECKEL**                    **- AND -**                    **BRENT RICHARD KIDECKEL**

**PLAINTIFF**                                                                    **DEFENDANT**

---

***ONTARIO***

**SUPERIOR COURT OF JUSTICE**

Proceeding Commenced at Toronto

_____

**NOTICE OF MOTION**

_____

**FREUDMAN LAW PC**
603.5 Parliament Street
Toronto, ON M4X 1P9

Tel: 647-771-2416
Fax: 416-483-4867

Daniel S. Freudman
LSUC No. 62181C

Lawyer for the Defendant / Moving Party,
Brent Richard Kideckel

# TAB 2

Court File No. CV-24-00713955-0000

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N:

### DAVID KIDECKEL

Plaintiff

and

### BRENT RICHARD KIDECKEL

Defendant

### AFFIDAVIT OF BRENT RICHARD KIDECKEL

I, Brent Richard Kideckel, of the City of San Marcos, State of California, USA, MAKE OATH AND SAY:

1. I am the Defendant in this action, and as such have knowledge of the matters hereinafter deposed to.

2. Where the information I attest to has come from a third party, I have listed the source of such information, and verily believe same to be true.

#### *Chronology Leading to Noting in Default*

3. This action arises from allegations by my estranged brother that I have been defaming and intimidating him and other parties related to him. Specifically, the Plaintiff claims that I have been engaging in a campaign of unlawful and vindictive behaviour that has caused him to suffer an assortment of damages. I categorically deny all such allegations.

4. On or about February 1, 2024, the Plaintiff through his legal counsel issued a Statement of Claim (the "Claim") in this regard at the Toronto, Ontario Superior Court of Justice (Court File Number

CV-24-00713955-0000). In the Claim, damages are sought in the amount of $180,000, plus $20,000 in punitive damages.

*Attached hereto as Exhibit "A" is the Statement of Claim, issued February 1, 2024*

5. While I am now aware of the Claim, such only became known to me recently since I was never personally served with same. In fact, I never received the Claim nor had substantive knowledge of these proceedings until November 29, 2024, when I received an email from Julian Attisano of KAP Litigation Services, advising that the matter was returning for a default judgment motion, to be heard on January 17, 2025. Only at such time did I become aware of the Plaintiff's service efforts.

*Attached hereto as Exhibit "B" is the Email from Julian Attisano, dated November 29, 2024*

6. Mr. Attisano's email also contained a Motion Record (for default judgment), which indicates the following chronology apropos service and subsequent pursuance of the Claim:

a) Sometime after February 1, 2024, the Plaintiff purportedly made efforts to serve me with the Statement of Claim. As said Motion Record contains no Affidavit(s) of Attempted Service, nor any other such record particularizing those efforts, I am uncertain as to specifically how, when and where the Plaintiff attempted to serve me with the Claim. In any event, I never received service of the Claim nor was I in any way made aware of it at the time;

b) Based on an evidentiary record I am not privy to, The Honourable Justice L. La Horey granted an Order for substituted service on or about May 22, 2024;

*Attached hereto as Exhibit "C" is the Order for Substituted Service of Justice L. La Horey, dated May 22, 2024*

c) According to Affidavit of Service of counsel for the Plaintiff (Aram Simovonian), on May 27, 2024, Mr. Simovonian served me with the Claim via email (pursuant to the abovementioned substituted service Order) at brentkideckel@gmail.com and kideckelsaibilspringmanlawsuit@gmail.com, with such service to be deemed effective the 5th day after e-mailing. I never received such email(s), nor was I in any way made aware of their delivery at the time;

3

*Attached hereto as Exhibit "D" is the Affidavit of Service of Aram Simovorian, sworn July 25, 2024*

d) On or about July 25, 2024, the Plaintiff filed a Requisition to have me noted in default for failing to deliver a Statement of Defence. Thereafter, based on the Plaintiff's motion materials for default judgment, it appears the Court in fact noted me in default on August 1, 2024, and the Plaintiff has since moved for default judgment.

*Attached hereto as Exhibit "E" is the Requisition, dated July 25, 2024*

7. Though I understand the above service efforts were ostensibly made in accordance with the *Rules of Civil Procedure*, unfortunately they did not result in my actual receipt of the Claim.

8. I reside in the State of California, in the United States of America. At no point did any process server or other such agent or representative of the Plaintiff ever attend my residence here in an effort to serve me with the Claim.

9. Furthermore, apropos the service via email, I never received same. While I am not alleging the Mr. Simovorian swore a false affidavit of service, it is distinctly possible that the said email was automatically diverted into my Spam/Junk folder, unbeknownst to me. In any event, despite regularly checking the relevant email addresses, I never received the Claim.

10.    In summary, notwithstanding the aforesaid service efforts and such, the Claim was only first brought to my attention on November 29, 2024, when I received the email from Julian Attisano. At such time, I acted hastily- within less than a week- by contacting counsel Daniel Freudman and retaining him to bring the herein Motion.

11.    I was advised by Daniel Freudman that, after being retained, he reached out to counsel for the Plaintiff (Aram Simovonian) to inquire as to the (unsuccessful) initial service efforts that necessitated the Plaintiff's substituted service motion; Mr. Freudman also requested all relevant affidavit(s) of (attempted) service. In response, Mr. Simovonian advised: "*We did not know the whereabouts of your client, and I inquired many times, if he would accept service by e-mail. I was ignored. In light of this, I had to proceed with the motion for sub-service. In other words,*

4

*there is no other affidavit of service.*". I am under no obligation to accept service via e-mail, and in any event, I deny having received such emails from Mr. Simovonian.

*Attached hereto as Exhibit "F" is the email correspondence between counsel*

12.    In the same email, Mr. Simovonian also provided a copy of the Plaintiff's motion record in support of the motion for substituted service. In the Affidavit of David Kideckel sworn May 10, 2024 (contained within that motion record), the Plaintiff swears at paragraph 16: "*I do not know where [the Defendant] resides…*". This averment is confounding, as the Statement of Claim, issued some three (3) months prior, clearly lists the Defendant's address of 1528 Rock Springs Rd., San Marcos, CA 92069, USA.

*Attached hereto as Exhibit "G" is the Plaintiff's Affidavit as extracted from his Motion Record (for substituted service)*

13.    For reasons set out below, I verily believe that it would be equitable and just for the judgment to be set aside.

### *Test for Setting Aside (Default) Judgment*

#### *(i) Motion brought promptly after Defendant learned of the default judgment*

14.    I have acted reasonably and promptly under the circumstances in bringing this motion. In particular, as stated above, **within only minutes of learning of the noting in default / default judgment motion, I contacted counsel and forthwith thereafter retained them to bring the herein Motion**.

15.    At all material times, I was diligent to ensure this matter was given the attention it requires. Had I known of the default any sooner, I would have acted at such time without delay as well.

#### *(ii) Reasonable explanation for Defendant's default in complying with the Rules*

16.    As per my evidence herein, I never personally received a copy of the Claim or judgment, or notice thereof, until November 29, 2024. While I do not deny that it appears the Plaintiff served me in accordance with the *Rules of Civil Procedure* and Order for substituted service, that does not derogate from the fact that, in actuality, I did not myself receive the Claim on any of those instances.

17.    For over a decade, I have been residing in the State of California in the United States of America; this fact appears to be conceded based on the Plaintiff's materials. At no point did anyone attend my residence here to serve me with the Claim. Moreover, it is not uncommon for e-mail communications to inadvertently be directed into a Junk/Spam folder.

18.    I am adamant on fighting this action, and therefore would certainly have filed a Statement of Defence had I received notification of the Claim. Any suggestion to the contrary conflicts with my sworn averments herein, and in fact, is contradictory to the Plaintiff's own assertions. Specifically, the Plaintiff in their materials asserts that I am a vexatious litigant (despite the fact I have not been declared such in the Province of Ontario). If such were the case, presumably I would zealously partake in legal proceedings at the first opportunity. To suggest that I readily engage in frivolous litigation but would not respond to a lawsuit against myself conflicts with common sense.

19.    In short, while I acknowledge I did not file a Statement of Defence in accordance with the *Rules*, such was caused by my honest unawareness of the action, up until being expressly notified. At such time, I retained counsel without delay to bring this Motion. At no time did I intentionally delay this matter or act in bad faith to shirk my obligations under the *Rules*; to the contrary, it was and remains my desire to deal with this matter on its merits in the ordinary course.

### (iii) Arguable defence on the merits

20.    The Claim arises from an alleged campaign of defamation, harassment and intimidation perpetrated by myself against the Plaintiff. I categorically deny all such allegations.

21.    First and foremost, I did not send the defamatory / threatening messages in question. The Plaintiff states that I used various phone numbers to execute my campaign of malice. However, there is no evidence to support my ownership or affiliation with any such phone number(s). To the contrary, at all material times, I have only had one single phone number, and none of the communications in questions came from that number.

22.    Additionally, several of the purportedly libelous comments (for which the Plaintiff seeks damages) do not amount to defamation at law. For example, many of the alleged defamatory

6

comments (as set out in at paragraph 6 of the Claim) are text messages sent directly to the Plaintiff; they pertain to the Plaintiff and are not disseminated to any third party. As such, even if these were sent by me- an allegation I vehemently deny- they would not constitute defamation as they were not delivered to any third party. As for the balance of the alleged defamatory comments that were disseminated (which again I specifically deny having sent), any damages for same would certainly not warrant the $200,000 amount being claimed by the Plaintiff; such damages are remote, excessive and unsubstantiated.

23.    There may also be a jurisdictional defence, in that Rule 17.02 sets out the various claims that can be brought against a party outside of Ontario. Of note, the provision that allowed for claims "in respect of damage sustained in Ontario arising from a tort, …wherever committed" was revoked in 2013. In any event, I cannot be certain of the provision under which the Plaintiff brings this Action, on account of their failure to comply with Rule 17.04(1)).

24.    I therefore verily believe there exists a meritorious defence to the Claim, as articulated in the attached (Draft) Statement of Defence, which I intend to file should this Honourable Court set aside the judgment and permit same.

*Attached hereto as Exhibit "H" is the (Draft) Statement of Defence*

*(iv) Other considerations*

25.    I respectfully do not believe that setting aside the default judgment would cause the Plaintiff much if any prejudice. While costs are generally sufficient to remedy certain prejudice, even that may be unnecessary in light of the minimal time that has elapsed since the issuance of the Claim, and corresponding lack of delay in my bringing this Motion.

26.    Furthermore, this is not a matter that relies upon the memory of witnesses or other such first-hand evidence. Rather, all such evidence is readily preserved through written communications (i.e. the Plaintiff has copies of all text messages, emails, etc.). As such, the usual prejudice from delay (i.e. witnesses becoming unavailable, faded recollection over time, etc.) is not a significant issue in the present case.

27.    Any prejudice is further mitigated, if not entirely reduced, by the lack of delay in this matter. Witnesses will not have to thing back several years to recall relevant events since the matter is less than a year old, and would take years to pursue to finality in any event. Regardless, as the

majority (if not the entirety) of the evidence necessary for a trial judge to rule upon is preserved within the documentation the Plaintiff currently holds, all relevant evidence remains equally available today as it did several months ago. Witness recollection can therefore be readily refreshed if necessary, such that there is absolutely no prejudice or risk of diminished memories, or other such concerns that may in other cases militate against setting aside judgment.

28.    On the other hand, the prejudicial effect of dismissing this Motion and allowing the judgment to stand would be overwhelming. The result would be a failure to adjudicate the case on its merits, and a judgment debt against me for an indeterminate and perhaps unsupportable amount. This would cause tremendous hardship, which I may not be able to recover from.

29.    I respectfully submit that the prejudice to the Plaintiff from granting this motion is heavily outweighed by the prejudice to me if this Motion were to be dismissed. Furthermore, any such prejudice to the Plaintiff can be remedied with costs, whereas the same cannot be said for the prejudice I would suffer if the judgment were allowed to stand.

30.    Additionally, it is my understanding service of an originating process via e-mail is not permitted in the State of California. Such being the case, I verily believe that I was never properly served at the onset of this Action, and the later service via e-mail was equally invalid.

31.    Under all the circumstances, I verily believe that an Order setting aside the judgment and allowing me to defend this case on its merits would be just, and would protect and endorse the overall integrity of the administration of justice.

32.    I make this Affidavit in support of a Motion to set aside the noting in default (and any default judgment) and for no other or improper purpose.

| | |
|---|---|
| SWORN BEFORE ME by video conference | ) |
| From the City of San Marcos, State of California, USA) | _____ |
| To the City of Toronto,  Province of Ontario | )    Brent Richard Kideckel |
| This _____ day of December, 2024 | ) |

_____

A Commissioner, etc.

Daniel Freudman

# Exhibit A

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice   Court File No./N° du dossier du greffe : CV-24-00713955-0000



**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

## STATEMENT OF CLAIM

TO THE DEFENDANTS:

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the Plaintiffs. The Claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the Plaintiffs' lawyer or, where the Plaintiffs does not have a lawyer, serve it on the Plaintiffs, and file it, with proof of service in this court office, WITHIN TWENTY DAYS after this Statement of Claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your Statement of Defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your Statement of Defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

IF YOU PAY THE PLAINTIFFS' CLAIM, and $1,500 for costs, within the time for serving and filing your Statement of Defence you may move to have this proceeding dismissed by the Court. If you believe the amount claimed for costs is excessive, you may pay the Plaintiffs' Claim and $400 for costs and have the costs assessed by the Court.

TAKE NOTICE: THIS ACTION WILL AUTOMATICALLY BE DISMISSED if it has not been set down for trial or terminated by any means within five years after the action was commenced unless otherwise ordered by the court.

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-24-00713955-0000

Date: _____

Issued by: _____
                        Local Registrar

Address of          SUPERIOR COURT OF JUSTICE
court office:       393 University Ave.
                    Toronto  M5G 1E6

TO:        BRENT RICHARD KIDECKEL
           1528 Rock Spring Rd.
           San Marcos, CA, 92069

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de Justice

Court File No./N° du dossier du greffe : CV-24-00713955-0000

**THIS ACTION IS BROUGHT AGAINST YOU PURSUANT TO THE SIMPLIFIED PROCEDURE PROVIDED IN**

**RULE 76 OF THE RULES OF CIVIL PROCEDURE**

**CLAIM**

1.      The Plaintiff claims, as against the Defendant, the following:

   a.   general damages in the sum of $180,000, for defamation, intimidation, publicly placing a
        person in false light, and intentional infliction of mental suffering;

   b.   punitive, exemplary, and aggravated damages in the sum of $20,000;

   c.   an interlocutory and permanent injunction Order restraining the Defendant, and all
        persons who have knowledge or notice of this Order, from making, publishing, or causing
        to be published, any false or defamatory statements relating to the Plaintiff, whether oral,
        written, or published electronically, and distributed by way of internet, or otherwise;

   d.   pre- and post-judgment interest in accordance with the *Courts of Justice Act*;

   e.   all applicable taxes;

   f.   costs of this action on a substantial indemnity scale; and

   g.   such further and other relief as to this Court may deem just.

**CAST OF CHARACTERS**

2.      The Plaintiff is an individual and resides in the City of Toronto. The Plaintiff holds a PhD from the
Institute of Medical Science & Program in Neuroscience at the University of Toronto, and an MBA from
the Rotman School of Management. The Plaintiff is the Founder and Principal of Kideckel Advisory Group
Inc., a boutique firm providing expert financial and capital markets analysis and functions within
Healthcare & Life Sciences. The Plaintiff is also the Chairman of the Board of PharmaDrug, a publicly-listed
and specialized biotechnology company focused on research, development & commercialization of
natural-based medicines.

3.      The Defendant is an individual and resides in the United States of America. As of January 1, 2024,
the Defendant has been listed as a "vexatious litigant" in the States of California and Nevada.[1]

4.      The Plaintiff and the Defendant are estranged brothers, since approximately 2011.

---

[1] https://www.courts.ca.gov/documents/vexlit.pdf.

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice    Court File No./N° du dossier du greffe : CV-24-00713955-0000

**BACKGROUND**

5.      In or about August 2023 the Defendant, with the intent of inflicting anxiety and emotional and psychological upset upon the Plaintiff's mental and emotional state, embarked upon a campaign of harassment, intimidation, and defamation against the Plaintiff and his family. The Defendant uses the following phone numbers to execute his campaign: (i) 204-674-5452, (ii) 647-497-4428, (iii) 365-440-4340, (iv) 917-634-0637 (the Defendant's main phone number), (v) 647-559-5515, (vi) 647-691-7411, (vii) 289-497-1538, and (viii) 204-818-6743.

6.      On or about the below noted dates and times, the Defendant published, and/or caused to be published, the following defamatory and threatening statements:

      a.    on December 24, 2023, at 8:35 p.m., the Defendant texted the Plaintiff the following: "Not really How come you haven't divorced your cheating loser husband It was meant for your Cuntwife I'll send it to her. C U Next Tuesday";

      b.    on December 28, 2023, at 7:09 p.m., the Defendant texted the Plaintiff the following: "Maybe it's time for [Plaintiff's daughter] to know more about you. Not before you finish paying alimony for your 2. It's just a matter of time until Wifie #2 kicks you out. Lol I think I'll send all these to wifie. She's going to kick you out soon enough loser boy. C U Next Tuesday. Looooser!!!";

      c.    on December 28, 2023, at 7:09 p.m., the Defendant texted the Plaintiff the following: "Loser in jobs, Loser in marriage, Loser with life, Loser with [daughter] name omitted for privacy. Just ask your ex if you're a loser. Your ex wife was right about you. She regrets ever having known you and having a remnant of you. Wifie#2 will think the same after she kicks you out. CUNext Tuesday.";

      d.    on December 30, 2023, at 12:29 a.m., the Defendant texted Plaintiff the following: "...Let's pray mommy dearest will die this year. Wifie2 will kick you out ASAP. You'll be twice divorced. Failure in marriage, work and life. You hit the trifecta bro!!!!";

      e.    on January 18 and 19, 2024, the Defendant texted the Plaintiff the following: "How is the failure in life feeling??? You are such a lonesome loser n life. Fired. Divorced twice, no family. You've hit the trifecta bro.";

      f.    on January 22 and 23, 2024, at 6:57 p.m., the Defendant texted the Plaintiff the following: "Do you know where I am right now?.. think long and hard where I might be at this

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice

minute. I forwarded everything to Sari as we're concerned you may cause physical harm

to her daughter given your present manic state. I have a feeling you haven't been entirely

forthcoming with your current spouse (if she hasn't already left you) so when the Toronto

Police Service show up to 2 Peveril Hill South to do a welfare check on the physical safety

of the children, you understand why. Pardon me ~23 PH road. I know how to use google.

I misheard you when I was sitting beside Lynn last evening.";

g. on January 22, 2024, at 12:39 p.m., the Defendant texted the Plaintiff's CEO & Director at
   PharmaDrug, Robert Steen, the following: "1.Origin merchant partners 2.intelgenx. He
   gets fired and then sues them And settles out of court with NDA's That's his M.O. He
   lasted until they found out about him";

h. on January 22, 2024, at 6:49 p.m., the Defendant texted Mr. Steen the following: "DK [the
   Plaintiff] has mental health issues that percolate to the surface quite often His exwife was
   subjected to that all the time";

i. on January 23, 2024, at 8:19 a.m., the Defendant texted the Plaintiff the following: "David,
   If you call me but one more time I'm going to go to the FBI and report this harassment,
   backed up with a lawsuit against you that will see you barred for life from the United
   States. Is that what you want? My husband's uncle is Phil Knight, the founder of Nike-
   we're well connected. This stops now.";

j. on January 27, 2024, at 11:07 a.m., the Defendant texted the Plaintiff's spouse the
   following: "You are married to such a loser in life.";

k. on January 27, 2024, at 11:56 am, the Defendant texted the Mr. Steen, and Daniel Cohen
   (former CEO of PharmaDrug), the following: "Kideckel has been arrested charged and
   convicted of drunk driving and driving under the influence. Good for you for having such
   an upstanding person as your chairman and director"; and

l. on January 29, 2024, at 1:04 p.m., the Defendant texted Mr. Steen and Mr. Cohen the
   following: "He [the Plaintiff] has undiagnosed mental illness."

7.    The Defendant's statements were false, and defamatory of the Plaintiff in their natural and
ordinary meaning, including their implied meanings.

8.    The words complained of were meant and were intended to mean and were understood to mean
that the Plaintiff is a liar, is dishonourable, is deceitful, is a criminal, and is without morals.

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-24-00713955-0000

9.    The Defendant published the defamatory statements maliciously in that he had some improper or ulterior motive in publishing them.

10.    The particulars of the Defendant's malice include, *inter alia*:

    a.  The Defendant has no honest belief in the false and defamatory statements because he knew, or ought to have known, that the statements were false and fabricated;

    b.  The Defendant had reckless disregard for the truth in what he published in the defamatory statements because he took no steps to properly verify the truth of the contents of the statements; and

    c.  The Defendant had improper motives and purpose in posting the defamatory statements, specifically in that the Defendant sought to harass and assault the Plaintiff.

11.    The Plaintiff considers his reputation in the communicate to be of paramount importance. The Defendant's conduct has impugned the professional and personal reputation, integrity and character of the Plaintiff, and has resulted in loss and damage to his reputation, character, and standing in his community.

12.    The Plaintiff has suffered personal embarrassment, humiliation, anxiety, and distress, and financial loss. As a result, the Plaintiff has suffered damages for which the Defendant is liable.

13.    The Plaintiff has suffered physical harm in that the words have caused a deepening and furtherance of the Plaintiff's anxiety, and depression, which damage the Defendant intended.

14.    On January 26, 2024, the Plaintiff, through his lawyers, contacted the Defendant and demanded that the Defendant execute an Apology, Retraction and Undertaking. In response, the Defendant threated to report the Plaintiff's lawyer to the regulator. The Defendant further said the following: "I welcome the lawsuit. Please do it. [...] Don't forget you're an officer of the court. Be careful what kind of frivolous suits you bring. You have a reputation too."

15.    To date, the Defendant has not published any retraction or apology.

16.    The Plaintiff says and the fact is that the Defendant's false and defamatory statements paint the Plaintiff as a person who:

    a.  is a liar;

    b.  is immoral;



Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-24-00713955-0000

    c.  is deceitful;

    d.  is incompetent;

    e.  is unprofessional;

    f.  is dishonourable; and

    g.  is a criminal.

17.    The Plaintiff says, and the fact is that the Defendant has aggravated the damage caused to the Plaintiff by:

    a.  publishing the words complained of maliciously and in bad faith, with the knowledge that they were false, or with reckless disregard for their truth or falsity; and

    b.  took no steps prior to the publication of the words to contact the Plaintiff to provide him with an opportunity to respond to them.

18.    Further, the malicious and high handed and arrogant conduct of the Defendant warrants an award of punitive damages and/or exemplary damages to ensure that the Defendant has appropriately been punished for his conduct and deterred from such conduct in the future.

**THREAT OF PERSONAL HARM**

19.    In addition, the Defendant's conduct has exposed the Plaintiff, and the Plaintiff's family, to personal risk and physical harm.

20.    On January 23, 2024, at approximately 9:15 p.m., two uniformed police officers attended at the Plaintiff's personal residence and informed the Plaintiff that the Defendant had called 911 and advised same that the Plaintiff's children are in danger. The allegations made by the Defendant to 911 were a fabrication and were done with the intent of causing the Plaintiff and/or his family anxiety, depression, and physical harm. The Plaintiff has reported the Defendant's intimidating and harassing behaviours to the police service.

21.    Unless properly restrained by this Honourable Court, the Defendant will continue his ongoing vicious attacks and further disparage the Plaintiff.

22.    As a result of the Defendant's actions and these publications, the Plaintiff has suffered and will in the future suffer damage to his reputation and feelings.

23.    In the circumstances, no undertaking as to damages should be mandated by this Court.

Electronically Issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice    Court File No./N° du dossier du greffe : CV-24-00713955-0000

24.    The balance of convenience favours the granting of an interim, interlocutory and permanent injunctive relief in the circumstances.

25.    The Plaintiff seeks the relief set out in paragraph 1.

26.    The Plaintiff relies on Rule 17 of the Rules of Civil Procedure.

February 1, 2024

**SCALZI CAPLAN LLP**
20 Caldari Road, Unit #2
Vaughan, ON  L4K 4N8
**Aram Simovonian (73974D)**
E: aram@sclawpartners.ca
T: 647.677.8009 (direct)

Lawyers for the Plaintiff

Electronically issued / Délivré par voie électronique : 01-Feb-2024
Toronto Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-24-00713955-0000

Court File No.:

DAVID KIDECKEL
Plaintiff

and

BRENT KIDECKEL
Defendant

*ONTARIO*
SUPERIOR COURT OF JUSTICE
PROCEEDING COMMENCED IN
TORONTO

STATEMENT OF CLAIM

SCALZI CAPLAN LLP
20 Caldari Road, Unit #2
Vaughan, ON  L4K 4N8
Aram Simovonian (73974D)
E: aram@sclawpartners.ca
T: 647.677.8009 (direct)

Lawyers for the Plaintiff

# Exhibit B

**From:** Julian Attisano <julian@kaplitigation.com>
**Date:** November 29, 2024 at 9:49:18 AM PST
**To:** brentkideckel@gmail.com, kideckelsaibilspringmanlawsuit@gmail.com
**Subject: RE: David Kideckel v Brent Kideckel (CV-24-00713955-0000)**

Good afternoon,

Please find attached Notice of Return of Motion, Factum of the Plaintiff (Returnable: January 17, 2025), Motion Record of the Plaintiff (Returnable: January 17, 2025) and Requisition to attend Civil Practice Court, of the Plaintiff David Kideckel, hereby being served upon you pursuant to the rules of Civil procedure.

**Regards,**

**Julian Attisano**

Head Office: 14-3650 Langstaff Road, Suite #281, Vaughan, Ontario L4L 9A8

Satellite Toronto office: 180 John St, Suite 323, Toronto, ON  M5T 1X5

T. (905) 264-1236

**julian@kaplitigation.com**

KAP Litigation Services

**Please note:** Our main phone number will be switching to: 905-264-1236.

Please continue to send all new requests and inquiries to kap@kaplitigation.com for processing.

 **New work disclaimer:** Please note that some submissions are time sensitive due to limitations or court orders. If this applies to your file, please ensure your request clearly specifies any deadlines. In addition, please note KAP Litigation is not responsible for failing to act on any submission if we have not confirmed receipt.

# Exhibit C

Court File No. CV-24-00713955-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

| ASSOCIATE JUSTICE LA HOREY | } | WEDNESDAY THE 22ND |
| | } | |
| | } | |
| | } | DAY OF MAY, 2024 |

B E T W E E N:

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

ORDER

THIS MOTION made by the Plaintiff, without notice and in writing, for an order validating service or in the alternative for substituted service was read this day at the Courthouse 393 University Ave., Toronto.

ON READING the Motion Record, Supplementary Motion Record, and Further Supplementary Motion Record of the Plaintiff, and the Plaintiff's Factum:

1.    THIS COURT ORDERS that the Plaintiff may serve the Statement of Claim on the Defendant by e-mail to brentkideckel@gmail.com and kideckelsaibilspringmanlawsuit@gmail.com along with a copy of this Order.

2.    THIS COURT FURTHER ORDERS that service of the Statement of Claim shall be deemed effected within five (5) business days after the Plaintiff has served the Statement of Claim and a copy of this Order on the Defendant by e-mail to brentkideckel@gmail.com and kideckelsaibilspringmanlawsuit@gmail.com.

3.    THIS COURT FURTHER ORDERS that the costs of the motion shall be in the cause.

Digitally signed by Lisa
D La Horey
Date: 2024.05.22
16:34:07 -04'00'

L. LA HOREY, A.J.

Court File No. CV-24-00713955-0000

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendants

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
TORONTO

**ORDER**

**LIMA LAW P.C.**
320 Bay St., Suite 454
Toronto, ON M5H 4A6
**Aram Simovonian (73974D)**
E: asimovonian@limalaw.ca
D: 647.677.8009

Lawyers for the Plaintiff

# **Exhibit D**

Court File No. CV-24-00713955-0000

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N:

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

### AFFIDAVIT OF ARAM SIMOVONIAN
### (sworn on July 25, 2024)

I, Aram Simovonian, of the City of Barrie, in the Province of Ontario, MAKE OATH AND SAY:

1.      I am a Partner of the Law firm Lima Law Professional Corporation, lawyers for the Plaintiff, and as such, have knowledge of the matters to which I hereinafter depose to.

2.      On May 27, 2024, I served the Defendant, Brent Richard Kideckel, with the Statement of Claim, by e-mail to brentkideckel@gmail.com and kideckelsabilspringmanlawsuite@gmail.com, pursuant to the Order of the Honourable Associate Justice L. La Horey, dated May 22, 2024. Attached and marked as Exhibit "A" is a copy of my e-mail dated May 27, 2024, and a copy of the Order.

3.      Pursuant to that Order, the service of the Statement of Claim is deemed effected within five (5) business days after service, that is June 3, 2024.

4.      The deadline for the Defendant to have delivered their pleading has expired.

5.      To date, the Defendant has failed to deliver a Defence.

**SWORN REMOTELY** by Aram Simovonian stated as being the City of Barrie, before me, in the City of Toronto, today, July 25 2024 , pursuant to O.Reg 431/20.

*Kimberley de Jaray*
_____
A Commission for Taking Affidavits

_____
Aram Simovonian

# **Exhibit E**

Court File No. CV-24-00713955-0000

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

# REQUISITION

**TO THE LOCAL REGISTRAR** at the Toronto Superior Court of Justice, 330 University Ave., Toronto, ON:

**I REQUIRE** you to note the Defendant, Brent Richard Kideckel, in default, pursuant to Rule 19.01(1), as this Defendant failed to deliver a Statement of Defence within the required time period (copy of Affidavit of Service, is attached).

July 25, 2024

**LIMA LAW P.C.**
320 Bay St., Suite 454
Toronto, ON M5H 4A6
**Aram Simovonian (73974D)**
E: asimovonian@limalaw.ca
D: 647.677.8009

Lawyers for the Plaintiff

Court File No. CV-24-00713955-0000

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
TORONTO

**REQUISITION**

**LIMA LAW P.C.**
320 Bay St., Suite 454
Toronto, ON M5H 4A6
**Aram Simovonian (73974D)**
E: asimovonian@limalaw.ca
D: 647.677.8009

Lawyers for the Plaintiff

# Exhibit F

**Daniel Freudman <daniel@freudmanlaw.com>**                              Dec 10, 2024,
                                                                          7:23 AM

to Aram, Sarah

Hi Aram,

We have the Affidavit of Service in respect of your service of the claim by email following / pursuant to the Sub Service Order.

However, we do not have any previous Affidavit(s) of Service in respect of initial service efforts of the claim (which presumably would have been contained within the motion record for the substituted service). Would you be so kind as to provide all such Affidavits of Service (including attempted service) on this matter?

Regards,

Daniel

---

**Aram Simovonian**                                                      Dec 11, 2024,
                                                                         11:21 AM

to me, Sarah

Hi, Daniel:

I am attaching the Further Sup. Motion Record re sub-service. I also attach the AOS re the requisition filing.

We did not know the whereabouts of your client, and I inquired, many times, if he would accept service by e-mail. I was ignored. In light of this, I had to proceed with the motion for sub-service. In other words, there is no other affidavit for service.

Your client had formal notice of the claim on May 27, 2024 – but, he knew of it well before that time.

I assume you have our motion for judgment materials?

When will your client submit to cross-examination?

# EXHIBIT G

Court File No. CV-24-00713955-0000

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N:

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

**AFFIDAVIT OF DAVID KIDECKEL**
**(sworn on May 10, 2024)**

I, David Kideckel, of the City of Toronto, in the Province of Ontario, MAKE OATH AND SAY:

1.      I am a Plaintiff in this action and as such have knowledge of the matters to which I hereinafter depose to. Where I rely on information received from others, I state the source of such information and verily believe such information to be true.

2.      This affidavit is made further to my affidavit sworn on March 12, 2024, and to my supplementary affidavit sworn on April 24, 2024. I seek leave from this Court to serve the Defendant by e-mail.

3.      On May 7, 2024, I, alongside various other individuals, including my lawyer, my mother, my father, and the Toronto Police, received various e-mails from Brent Kideckel. The e-mails are attached as **Exhibit "A".**

4.      The substance of the e-mails received on May 7, 2024, include threats of legal proceedings against me, my lawyers, my mother, and others, and defamatory and disparaging comments made against me.

5.      On May 8, 2024, the Defendant sent an e-mail to me, along with others, including individuals from the Toronto Police, stating that "[y]ou are being sued for One Million Dollars and my Canadian attorney, Daniel Freudman, will seek ALL costs and fees in our countersuit against you." Attached and marked as **Exhibit "B"** is a copy of this e-mail.

6.      On the same day, I e-mailed the Defendant and inquired whether he would accept service of the Statement of Claim by e-mail, and I also advised the Defendant that I would give to the Defendant the same courtesy of electronic service once he commences his lawsuit against me. The Defendant's reply e-mail to me noted that he has reported me to the FBI, and that will be blocking my e-mail. Attached and marked as **Exhibit "C"** are copies of these e-mail correspondence.

7.      At the same time, my lawyer, Aram Simovonian, contacted Mr. Daniel Freudman, and inquired whether Mr. Freudman is counsel to the Defendant. Mr. Freudman advised that he was retained "some time ago on a limited scope retainer but since have not been retained for any further services." Attached and marked as **Exhibit "D"** are copies of these e-mail communications. Clearly, Mr. Freudman is not counsel to the Defendant and the Defendant was not being truthful in his communications to me.

8.      Finally, and also on May 8, 2024, the Defendant, using a newly created e-mal address, specifically, kideckelsaibilspringmanlawsuit@gmail.com, e-mailed me, my wife, my young daughter, our parents, my lawyer, the Toronto Police, Doug Downey, and others, in an effort to serve what he thinks is a Court

To the direct recipients of this correspondence:

You have been sued in the Canadian Province of Ontario Superior Court of Justice for the following claims for relief:

*identity theft, defamation, harassment, stalking, public mischief, malicious prosecution, false prosecution, filing a false police report, fraud, and the negligent and intentional infliction of emotional distress.*

Mr. David Kideckel advised in writing on May 8, 2024 that he will accept service electronically. Are any other non-governmental Defendants, for judicial economy, willing to accept service electronically, once processed by the Court? (All costs and fees, including those for Service of Process, you will be demanded to pay at the conclusion of litigation.)

Miss Saibil, Ms. Springman, and Mr. Norwich, if I don't receive your approval for electronic service by end of business day Friday May 10, 2024, you will be served over the weekend in person at your homes, 23 Peveril Hill Road, and 2 Covington Road, respectively.

Mr. Simovonian: it appears, unsurprisingly, that you have been terminated from Scalzi Caplan, based on a cursory look at their website. It also appears you have not regained employment. I trust your former employer will ensure you can be appropriately served - they are lawyers, afterall.

Messrs Caplan and Scalzi: Do you have a forwarding address for your former employee, Aram Simovonian?

**ALL DEFENDANTS SHOULD NOTE THAT THIS IS ONE OF THREE LAWSUITS BEING BROUGHT AGAINST YOU, FOR VARIOUS CAUSES OF ACTION PURSUANT TO THE LAWS OF THE DIFFERING JURISDICTIONS. THE OTHERS, IN CANADA FEDERAL COURT, AND THE UNITED STATES DISTRICT COURT ARE TO FOLLOW.** (**Your willingness to be served electronically will be applied to all pending lawsuits against you.)

If you have been carbon copied (or CC'd)  on this email, you will be required to be deposed and/or answer document demands under subpoena. If you wish to participate in good faith in providing said documents, I will do my best to avoid issuing a subpoena for your relevant testimonies. All filings in US District Court are available by simple google search- in perpetuity.
I am mindful of this.

My friends who have been blind carbon copied (or BCC'd) on this email-- it is for your reference. I've told you my brother is an unstable abusive narcissist, and my mother is a golddigger.  Now you'll see why I want nothing to do with these disgusting humans.

document, specifically, a Statement of Claim. The e-mail reads as follows and is attached as **Exhibit "E"**:

9.      The above e-mail contained an attachment, a document titled "Plaintiff's Statement of Claim for the Causes of Action of Identity Theft, Defamation, Harassment, Stalking, Public Mischief, False Prosecution, Malicious Prosecution, Fraud, and Intentional Infliction of Emotional Distress." This alleged pleading is an action against me, my parents, my wife, my lawyer, my lawyers prior firm, Doug Downey, the Toronto Police, and others. I am advised by my lawyers and do verily believe that the document is not a Statement of Claim, nor is it a Court issued document. Attached and marked as **Exhibit "F"** is a copy of this document.

10.     The Defendant signed on page 10 of 70 on the purported pleading document and notes that he is signing from Las Vegas, Nevada. The Defendant puts his address as C/O 302-207 Watson St., Winnipeg,

MB R2P 2E1, and his e-mail as brentkideckel@gmail.com and his phone number as 917.634.0637. I can advise this Court that the Winnipeg address is my father's address and that is not where the Defendant resides. In fact, the Defendant, on page 10 of 70 of the document, states the following "**Plaintiff is withholding actual US address to protect the physical safety of his family** A PO Box in the United States will be provided to the Court." In that regard, I do not know the Defendant's whereabouts and am unable to serve him pursuant to the rules of the Hague Convention. One thing is for certain, the Defendant is an active user of the e-mail brentkideckel@gmail.com.

11.     Following through on his threat, the Defendant does appear to have reported me to the FBI. The report is found on page 44 of 70 of the purported pleading document. The Defendant blurred out his address but did not blur out his e-mail (brentkideckel@gmail.com) nor his telephone number, as provided below:

## Victim Information

| | |
|---|---|
| Name: | Brent Kideckel |
| Are you reporting on behalf of a business? | No |
| Business Name: | |
| Is the incident currently impacting business operations? | |
| Age: | 40 - 49 |
| Is the victim aged 17 or under? | |
| Address: |  |
| Address (continued): | |
| Suite/Apt./Mail Stop: | |
| City: | |
| County: | |
| Country: | |
| State: | |
| Zip Code/Route: | |
| Phone Number: | 9176340637 |
| Email Address: | Brentkideckel@gmail.com |
| Business IT POC, if applicable: | |
| Other Business POC, if applicable: | |

12.     The Defendant has caused me and my family harm and continues to harass and defame me, my wife, and my children. The Defendant's campaign is now extending to those assisting me, including my counsel.

13.     The Defendant went further: on May 9, 2024, at 2:57 p.m., in continuing his smear campaign the Defendant contacted my lawyer's mother, who is a realtor, and sent to her the following e-mail stating, among other things: "[A]re you related to Aram Simovonian? I am trying to locate him to serve him with

Court documents. He has been sued for fraud and harassment, along with his former employers, Gary Caplan and Carmine Scalzi". Attached and marked as **Exhibit "G"** is a copy of this e-mail.

14.     My lawyer contacted his mother's brokerage and advised that the Defendant has undertaken a campaign of harassment of everyone involved in the litigation I started against him. Attached and marked as **Exhibit "H"** are e-mails between my lawyer and the brokerage.

15.     I can advise this Court, with certainty, that the e-mail address of the Defendant of brentkideckel@gmail.com is active and the Defendant does receive and send out e-mail communications by way of this e-mail address. I can also advise that the Defendant has created the new e-mail address of kideckelsaibilspringmanlawsuit@gmail.com.

16.     The Defendant has made a mockery of me. I do not know where he resides, but I do know, with certainty, that he has at least two e-mail addresses which he actively uses. I ask this Honourable Court for an Order to serve the Defendant with the Statement of Claim by e-mail so that I may move the action forward.

17.     It is my opinion and I do verily believe that the Statement of Claim did come to the attention of the Defendant when it was delivered to the Defendant by my lawyers to the e-mail address of brentkideckel@gmail.com.

18.     I make this affidavit in support of the relief set forth in the Notice of Motion and for no other or improper purpose.

**SWORN REMOTELY** by David Kideckel stated as being the City of Toronto, before me, in the City of Toronto, today, May 10, 2024 , pursuant to O.Reg 431/20.

_____          _____

A Commission for Taking Affidavits                David Kideckel

Aram Simovonian (73974D)

# EXHIBIT H

Court File No. CV-24-00713955-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

**DAVID KIDECKEL**

Plaintiff

and

**BRENT RICHARD KIDECKEL**

Defendant

**STATEMENT OF DEFENCE**
**OF BRENT RICHARD KIDECKEL**

1.      Unless expressly admitted hereinafter, the Defendant, Brent Richard Kideckel, denies all allegations contained in the Statement of Claim, and puts the Plaintiff to strict proof thereof.

2.      The Defendant categorically denies engaging in any sort of unlawful, illicit or otherwise improper behaviour with the Plaintiff as alleged in the Statement of Claim, or at all.

3.      The Defendant pleads that the communications in question were not sent by the Defendant, nor anyone at his behest. Specifically, at no point did the Defendant, or anyone acting on his behalf, disseminate any defamatory or intimidating correspondences.

4.      If the Plaintiff in fact received such improper communications, the Defendant pleads that such were delivered by some other party, for whom the Defendant is not responsible at law.

5.    In addition, or in the alternative, the Defendant pleads that many of the allegedly defamatory comments as referenced in the Statement of Claim do not, at law, amount to defamation as they were ostensibly delivered directly to the Plaintiff, and not to any third party.

6.    The Defendant denies that the Plaintiff sustained any sort of loss or damage as claimed in the Statement of Claim, or at all, and puts the Plaintiff to strict proof thereof. Furthermore, the damages claimed by the Plaintiff are excessive, exaggerated and too remote to be recoverable at law.

7.    In the alternative, the Plaintiff failed to mitigate his damages, if any. Without limitation, the Plaintiff failed to act in a generally reasonable manner with respect to the impugned communications, and failed to take the appropriate action to ascertain the true promulgator of same.

8.    The Defendant pleads that the Plaintiff's alleged psychological impairments and other such damages, which are not admitted but expressly denied, were caused or contributed to by prior or subsequent incidents that do not have as their genesis the alleged misconduct referred to in the Statement of Claim.

9.    The Defendant pleads that the Statement of Claim fails refer to the specific provision of Rule 17.02 relied upon in support of service thereunder, and thus is not in compliance with the requirements of Rule 17.04. Consequently, the Defendant pleads that the Claim is deficient, and the Defendant does not attorn to the jurisdiction of the Ontario Court of Justice.

10.    In addition, or in the alternative, this Claim does not properly fall within any of the enumerated provisions of Rule 17.02, and thus the Claim should be struck for want of jurisdiction.

11.    The Defendant requests this action be dismissed with costs on a substantial indemnity basis.

December 17, 2024

**BRENT RICHARD KIDECKEL**
1528 Rock Spring Rd.
San Marcos, CA, USA 92069
E: brentkideckel@gmail.com
Tel: (917) 634-0637

TO:    LIMA LEE SIMOVONIAN LLP
320 Bay St., Suite 454
Toronto, ON M5H 4A6
**Aram Simovonian (73974D)**
E: asimovonian@limalaw.ca
T: 647.677.8009
Lawyers for the Plaintiff

Court File No. CV-24-00713955-0000

DAVID KIDECKEL                         - AND -                              BRENT RICHARD KIDECKEL

PLAINTIFF                                                                                        DEFENDANT

***ONTARIO***
**SUPERIOR COURT**

Proceeding Commenced at Toronto

**STATEMENT OF DEFENCE**

**OF THE DEFENDANT, BRENT RICHARD KIDECKEL**

**BRENT RICHARD KIDECKEL**
1528 Rock Spring Rd.
San Marcos, CA, USA 92069
E: brentkideckel@gmail.com
Tel: (917) 634-0637

# EXHIBIT "Q"

Court File No. CV-24-00713955-0000

*ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N:

DAVID KIDECKEL

Plaintiff

and

BRENT RICHARD KIDECKEL

Defendant

# NOTICE OF EXAMINATION

TO:   **BRENT RICHARD KIDECKEL**

YOU ARE REQUIRED TO ATTEND*:*

    ☐ In person

    ☐ By telephone conference

    ☒ By video conference

at the following location:

Victory Verbatim reporting Services Inc., 222 Bay St., Suite 900, Toronto, ON  M5K 1H6, which will proceed via virtual Zoom meeting on January 29, and 30, 2025, at 10:00 A.M. (EST) (Meeting ID 853    4061    1319,    Password    057158)    Join    Zoom    Meeting https://us02web.zoom.us/j/85340611319?pwd=a5rvgwjSL3wWw0Yt2c2xPckXjTjSi2.1 for:

    [X]    Cross-examination on your affidavit dated December 19, 2024, and December 26, 2024.

    [ ]    Examination for Discovery

    [ ]    Examination for discovery on behalf of or in place of

    [ ]    Examination in aid of execution

    [ ]    Examination in aid of execution on behalf of or in place of

YOU ARE REQUIRED TO PRODUCE at the examination the documents mentioned in subrule 30.04(4) of the *Rules of Civil Procedure*, and the following documents and things:

1.      All original documents including any sound recording, videotape, film, photograph, chart, graph, map, plan, survey, book of account and information recorded or stored by means on any device in your possession, control or power which are relevant to any matters in issue in this proceeding and a list of all documents over which you claim privilege.

January 17, 2025

**LIMA LEE SIMOVONIAN LLP**
5353 Dundas St. W., Suite 503
Etobicoke, ON  M9B 6H8
**Aram Simovonian (73974D)**
E: asimovonian@limalaw.ca
D: 647.677.8009

Lawyers for the Plaintiff

TO:     **FREUDMAN LAW PC**
603.5 Parliament St.
Toronto, ON  M4X 1P9
**Daniel Freudman (62181C)**
E: daniel@freudmanlaw.com

Lawyers for the Defendant

**CITATION:**

**ONTARIO SUPERIOR COURT OF JUSTICE  (TORONTO REGION)**
## CIVIL ENDORSEMENT FORM
*(Rule 59.02(2)(c)(i))*

| BEFORE | Judge/Associate Judge | Court File Number: |
|---|---|---|
| | **Associate Justice Frank** | **CV-24-00713955-0000** |

**Title of Proceeding**:

KIDECKEL, DAVID — Plaintiff(s)

-v-

KIDECKEL, BRENT RICHARD, et al — Defendant(s)

---

| Case Management: | ☐ Yes  If so, by whom: | **No** |
|---|---|---|

**Participants and Non-Participants:***(Rule 59.02(2)((vii))*

| | Party | Counsel | E-mail Address | Phone # | Participant (Y/N) |
|---|---|---|---|---|---|
| 1) | **Plaintiff** | **SIMOVONIAN, ARAM** | **asimovonian@limalaw.ca** | | |
| 2) | **Defendant** | **Daniel Freudman Lawyer for Brent Kideckel** | **Daniel@freudmanlaw.com** | | |
| 3) | **Defendant** | | | | |
| 4) | **Defendant** | | | | |

**Date Heard:** *(Rule 59.02(2)(c)(iii))*   **January 7, 2025**

---

**Nature of Hearing (mark with an "X"):** *(Rule 59.02(2)(c)(iv))*

☒ Motion    ☐ Appeal    ☐ Case Conference    ☐ Pre-Trial Conference    ☐ Application

---

**Format of Hearing (mark with an "X"):** *(Rule 59.02(2)(c)(iv))*

☐ In Writing    ☐ Telephone    ☒ Videoconference    ☐ In Person

If in person, indicate courthouse address:

---

**Relief Requested:** *(Rule. 59.02(2)(c)(v))*

**Motion to set aside noting in default (Rule 19.03).**

---

**Disposition made at hearing or conference (operative terms ordered):** *(Rule 59.02(2)(c)(vi))*

**See below under "Brief Reasons".**

---

**Costs:** On a                                         indemnity basis, fixed at $                    are payable

by                              to                          [when]

---

**Brief Reasons, if any:** *(Rule 59.02(2)(b))*

D. Freudman for the defendant/moving party
A. Simovonian for the plaintiff/responding party

This is a motion by the defendant for an order setting aside his noting in default. The plaintiff seeks an adjournment of the motion.

The motion was scheduled on an urgent basis as the defendant wanted to ensure that he acted without delay and because there is a motion by the plaintiff for default judgment that is currently returnable on January 17, 2025 before a judge. The defendant acknowledges that the scheduling of the motion for today provided very little time for the plaintiff to deliver responding materials and was insufficient to allow for cross-examinations. As such, although the defendant is prepared to proceed today, he does not oppose the requested adjournment.

There are a number of issues that will have to be sorted out before the motion is rescheduled, including: (1) whether cross-examinations will take place in person, or virtually; and (2) whether the motion will be heard by an associate judge, or by a judge together with the plaintiff's motion for judgment. There are other potentially complicating factors, including that the defendant has commenced separate actions in Ontario and in the United States that have some overlapping issues with this action and that name the plaintiff in this action as a defendant along with a number of other defendants. Counsel for the plaintiff advises that there is a pending Rule 21 motion to strike the related Ontario action (CV-24-00719990-0000). As well, at this time, the defendant's counsel, Mr. Freudman is retained on limited scope basis and solely with respect to this motion to set aside the noting in default.

In the result, in scheduling this motion, the parties will have to sort out whether it will be heard by an associate judge, or whether it will be heard together with another motion or other motions that are within the jurisdiction of a judge. Counsel advise that they will be seeking direction on these issues, and others, when they appear on January 17, 2025 for the plaintiff's motion for judgment, or through an attendance at CPC. Once the parties have direction from a judge as to whether this motion should proceed before an associate judge, the parties will determine whether the motion is a short or long motion, and whether a case conference before an associate judge is appropriate/necessary to deal with any timetabling and scheduling issues.

I order as follows:
1. The defendant's motion to set aside his noting in default is adjourned *sine die*.
2. Costs of today's attendance are reserved to the judicial officer who hears this motion.

**Additional pages attached:** ☐ Yes **X** No

**January 7, 2025** ,

Date of Endorsement *(Rule 59.02(2)(c)(ii))*

Digitally signed
by Robert I Frank
Date: 2025.01.07
11:41:39 -05'00'

**R. Frank Associate J.**