IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL | ) |
|     Plaintiff | ) CASE NO.:   1:24-cv-02907-CJN |
| V. | ) |
| | ) |
| THE FOREIGN NATION OF CANADA, et al. | ) |
|     Defendants. | ) |
| _____ | ) |

# **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DAVID WILSON AND THE CITY OF TORONTO'S MOTION TO DISMISS UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

## INTRODUCTION

Defendant City of Toronto seeks dismissal under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, asserting immunity as a foreign political subdivision. While FSIA generally presumes immunity, this presumption does not apply where a statutory exception exists — nor where the foreign sovereign has waived its immunity by appearing and participating on the merits.

Plaintiff invokes the **noncommercial tort exception** under **28 U.S.C. § 1605(a)(5)**, which eliminates immunity when a foreign state or its agents commit torts causing personal injury within the United States. Plaintiff, a U.S. citizen and resident, has suffered ongoing harm from a retaliatory scheme orchestrated by Toronto actors, including Detective David Wilson, David Kideckel, and AGO employee Dahlia Saibil.

In the alternative, to the extent that any representative of the City of Toronto has participated in this case on the merits — including by opposing Plaintiff's motion for a temporary restraining order (TRO) — such conduct constitutes a waiver of sovereign immunity under 28 U.S.C. § 1605(a)(1).

RECEIVED
MAR 22 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Finally, the City's conduct falls far below any defensible standard of good faith or sovereign discretion. The Supreme Court has made clear that even U.S. officials are shielded only when their conduct does not violate clearly established law or when they are not "**plainly incompetent**." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Toronto's actions in this case reflect **plain incompetence and knowing abuse**, and thus cannot be protected under a more expansive foreign immunity doctrine.

## LEGAL STANDARD

FSIA provides foreign states immunity unless a statutory exception applies. See *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). The plaintiff bears the initial burden to allege facts supporting the exception; the burden then shifts to the sovereign to rebut jurisdiction. See *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

Waiver of FSIA immunity may be express or implied under 28 U.S.C. § 1605(a)(1). Participation in a lawsuit without raising FSIA immunity promptly or litigating the merits of a claim (e.g., opposing a TRO) may result in waiver. See *Feldman v. FBI*, 797 F. Supp. 2d 29, 38 (D.D.C. 2011); *Sequi v. Republic of Iraq*, 425 F. Supp. 2d 1, 16 (D.D.C. 2006).

Additionally, where jurisdictional facts are disputed or lie within the sovereign's control, courts permit limited jurisdictional discovery. See *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990).

## ARGUMENT

### I. The FSIA Tort Exception Applies to the City of Toronto's Misconduct

Plaintiff invokes the tort exception under **28 U.S.C. § 1605(a)(5)**, which removes immunity where a foreign state or its agents commit a tort that causes personal injury in the United States.

Plaintiff has alleged that:

- Detective David Wilson initiated a criminal process grounded in a fraudulent affidavit;

- The supporting evidence — "Brent alias" text messages — was fabricated, implausibly timed, and falsely attributed;
- Wilson failed to investigate for over a year and accepted all claims from David Kideckel, who is captured on audio declaring a clear retaliatory motive;
- AGO employee Dahlia Saibil conspired with Wilson while abusing her position, violating the boundary between private vendetta and public prosecution.

This misconduct caused Plaintiff — a Canadian Citizen (pending revocation pursuant to Naturalization) residing in the U.S. — ongoing and severe:

- Emotional distress,
- Reputational harm,
- Inability to return to Canada to defend himself or pursue justice,
- Interference with U.S. federal litigation.

This is a textbook example of a foreign tort causing personal injury in the U.S. See *Falbo v. United States*, 2020 WL 3411527 (D.D.C. 2020) (tortious acts abroad triggering injury in U.S. sufficient); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 20 (D.D.C. 2003).

## II. The City's Conduct Was Plainly Incompetent and Malicious — Not Sovereign

The Supreme Court has long held that qualified immunity protects public officials unless they are "plainly incompetent or knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If U.S. officials cannot claim immunity for such conduct, foreign actors cannot be entitled to greater protection.

The facts here demonstrate plain incompetence:

- Detective Wilson failed to conduct even basic due diligence.
- The sole evidence was unverified, technologically implausible, and internally inconsistent.
- No prosecutor reviewed or authorized the process.
- The affidavit was accepted despite clear indicia of fraud.
- The resulting non-prosecutorial warrant continues to cause extrajudicial harm.

Even under the deferential framework of FSIA, immunity cannot be used to shield conduct that reflects a total abdication of professional responsibility. This case involves not good-faith discretion, but state-sanctioned abuse.

Plaintiff not only submitted evidence to TPSB and the courts — he also filed a complaint with the relevant provincial regulatory body, requesting an investigation into the conduct of Detective Wilson and those complicit in the prosecution. That regulatory agency — bound to serve as a safeguard against governmental overreach — summarily dismissed the complaint as "frivolous," citing only the existence of an open warrant and the pendency of a civil suit as its reasoning.

This reveals a disturbing truth: the incompetence, indifference, or collusion spans all levels of the Canadian system:

- Federal: No oversight over unlawful and retaliatory law enforcement conduct;

- Provincial: Regulatory bodies refuse to investigate when challenged;

- Municipal: TPSB enables malicious prosecutions without due process.

Such a systemwide breakdown strips away any veneer of legitimacy. **This is not sovereign discretion — it is state-enabled abuse.**


### III. Participation in Merits Briefing or TRO Opposition Waives Immunity

Even if FSIA immunity were initially available, any participation by the City of Toronto in opposition to Plaintiff's TRO or other merits-based filings constitutes a waiver under § 1605(a)(1).

"A foreign state waives its immunity either explicitly or by implication... where it participates in litigation without timely asserting immunity."
— *In re Papandreou*, 139 F.3d 247, 256 (D.C. Cir. 1998)

Participation in a TRO hearing or filing on substantive legal issues, without simultaneously raising FSIA, is treated as conduct inconsistent with a sovereign immunity defense. See *Cabiri v. Republic of Ghana*, 165 F.3d 193, 202 (2d Cir. 1999); *Feldman*, 797 F. Supp. 2d at 38.

To the extent any Toronto actors have appeared, filed pleadings, or opposed Plaintiff's motions without raising FSIA, the Court should find that immunity has been waived.


### IV. In the Alternative, Jurisdictional Discovery Is Required

Even if the Court finds the record incomplete, Plaintiff has more than satisfied the low threshold for **jurisdictional discovery**. See *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007); *Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998).

Plaintiff seeks discovery to obtain:

- Internal TPSB and AGO communications,
- Confirmation of lack of prosecutorial oversight,
- Evidence of collaboration between Wilson, Saibil, and Kideckel,
- Records showing knowledge or disregard of the fraudulent nature of the evidence.

## CONCLUSION

The City of Toronto is not entitled to immunity under FSIA. The tort exception applies because foreign municipal actors caused deliberate and foreseeable injury to a U.S. resident through fraudulent and retaliatory conduct. Alternatively, the City has waived immunity through participation in the merits. At minimum, Plaintiff is entitled to jurisdictional discovery.

**The motion to dismiss must be denied.**


Respectfully submitted,

*[signature]*

Brent Kideckel
Plaintiff, Pro Se
PO Box 20901
Floral Park, NY 11002
Phone: (917) 634-0637
Email: brentkideckel@gmail.com
Dated: March 21, 2025

# EXHIBIT "A"

# COURT OF APPEAL FOR ONTARIO

[Court File No.: CV-24-0179990]

**BETWEEN:**
**BRENT KIDECKEL**

*Appellant*

-and-

**TORONTO POLICE SERVICES BOARD, DAVID KIDECKEL, DAHLIA SAIBIL, et al.**
*Respondents*

# NOTICE OF APPEAL

**TO THE HONOURABLE JUSTICES OF THE COURT OF APPEAL FOR ONTARIO:**

TAKE NOTICE that the Appellant, Brent Kideckel, hereby appeals to the Court of Appeal for Ontario from the order of Justice Akazaki, issued on February 6, 2025, and served on February 27, 2025, which wrongfully struck the Appellant's claim against the Toronto Police Services Board (TPSB).

# RELIEF SOUGHT

The Appellant demands the following relief from the Court of Appeal for Ontario:

1. Immediate reversal of the motion judge's order striking the Appellant's claim. The motion judge failed to properly consider constitutional violations, rendering the decision legally flawed and unjust.

2. A declaration that Sections 496 and 504 of the *Criminal Code of Canada* are unconstitutional, as they violate the Charter of Rights and Freedoms by allowing police to lay criminal charges and obtain warrants without prosecutorial oversight. The absence of Crown pre-charge screening creates an arbitrary and unjust system that deprives

individuals of their Section 7, 9, 10, and 11(d) rights under the *Charter*.

3. Reinstatement of the Appellant's claim against TPSB, ensuring that the case is heard on its substantive merits, addressing serious allegations of negligence, misconduct, and abuse of power by TPSB.

4. Significant indemnity costs against TPSB and its lawyer, Graham Thomson, for misconduct, abuse of process, and deliberate procedural delays designed to silence the Appellant and obstruct justice.

5. A full public investigation into the issuance of the arrest warrant and sworn affidavit used to obtain it, including:

    ○ An independent review to determine whether the warrant was issued based on false or perjured statements.
    ○ Mandatory involvement of the Crown prosecutor to ensure due process was followed.

6. An order compelling TPSB to lay charges of public mischief against David Kideckel and Dahlia Saibil if it is found that they knowingly filed a false police report, thus abusing the justice system.

7. Cost consequences against TPSB and Graham Thomson under Rule 57.07 of the Ontario Rules of Civil Procedure, for failure to file a timely response, misleading the court, and engaging in abuse of process.

8. Order granting Plaintiff leave to disseminate court transcripts to the United States District Court.

9. Any additional relief this Honourable Court deems just, necessary, and appropriate.

## GROUNDS OF APPEAL

The Appellant submits that the motion judge's decision is legally flawed for the following reasons:

## 1. Failure to Recognize the Constitutional Crisis Created by Sections 496 and 504 of the *Criminal Code*

- Section 496 and 504 allow police to lay criminal charges and obtain warrants without Crown oversight, violating fundamental Charter rights.
- These provisions allow arrest warrants to be issued based on unverified statements, creating a system where police act as judge, jury, and executioner, without independent legal scrutiny.
- The motion judge failed to recognize how this violates procedural fairness and access to justice, as enshrined in Section 7 of the *Charter*.

## 2. TPSB's Abuse of Power and Neglect of Charter Rights

The Appellant's arrest warrant was based on a perjured affidavit, yet the motion judge ignored these severe breaches of Charter rights, including:

- Section 7 – Right to Liberty and Security of the Person

    - The Appellant faced arbitrary detention and irreparable harm due to an arrest warrant based on false evidence.

- Section 9 – Protection from Arbitrary Detention

    - The warrant was issued without judicial review and solely on uncorroborated police statements, leading to unjustified restrictions on the Appellant's freedom.

- Section 10 – Rights on Arrest

    - The Appellant was denied timely disclosure and subjected to procedural unfairness.

- Section 11(d) – Presumption of Innocence

    - The flawed charge-laying system undermined the Appellant's presumption of innocence by allowing police to weaponize criminal charges for retaliatory purposes.

## 3. Conflict Created by the Arbitrary Geographic Limitation of the Arrest Warrant

- The arrest warrant issued under Sections 496 and 504 is only valid within 80 km of Toronto, creating a forced jurisdictional conflict.
- This effectively traps the Appellant in the jurisdiction of the very police service they are suing (TPSB), violating the principles of impartiality and fairness in judicial proceedings.
- This irreconcilable conflict of interest renders the warrant an abuse of process.

## 4. The Investigating Officer's Demotion Highlights TPSB's Procedural Failures

- The investigating officer was demoted and disciplined, demonstrating serious doubt about the validity of the charges.
- Despite this, the charges remain, proving TPSB's negligence and refusal to correct their own misconduct.

## 5. TPSB's Systemic Negligence and Incompetence

TPSB has a documented history of misconduct, including:

- Reckless policies (e.g., advising the public to leave their keys by the door to avoid police confrontations).
- Obstruction of investigations to protect officers from accountability.
- Failure to properly investigate allegations before taking drastic legal action.
- Allowing police to lay charges unchecked, leading to systemic rights violations.

## 6. Ontario's System is Out of Step with Other Provinces

- Unlike British Columbia, Quebec, and New Brunswick, where Crown pre-charge screening is required, Ontario's system allows police to lay charges unchecked.
- This creates inconsistency in legal protections across Canada, leading to inequitable treatment under the law.
- The failure to require prosecutorial oversight in Ontario violates Section 15 of the *Charter* (Equality Rights), as it subjects Ontario residents to an inferior system compared to other provinces.

# CONSTITUTIONAL QUESTION & SERVICE

## Constitutional Question under Section 109 of the Courts of Justice Act

The Appellant raises the following constitutional question:

**Do Sections 496 and 504 of the *Criminal Code of Canada* violate Sections 7, 9, 10, and 11(d) of the *Canadian Charter of Rights and Freedoms* by allowing police to lay criminal charges and obtain warrants without prosecutorial oversight, thereby exposing individuals to wrongful prosecution, arbitrary detention, and abuse of process?**

This notice will be served on:

**Attorney General of Ontario**
Constitutional Law Branch
720 Bay Street, 4th Floor
Toronto, ON M7A 2S9
Email: clbsupport@ontario.ca

**Attorney General of Canada**
Department of Justice Canada
120 Adelaide Street West, Suite 400
Toronto, ON M5H 1T1
Email: NCQ-ACQ.Toronto@justice.gc.ca

**DATED at San Marcos, California, this 14th day of March 2025.**


**Respectfully submitted,**

*[signature]*

**Brent Kideckel**
Self-Represented Litigant
PO Box 20901
Floral Park, NY 11002
Email: **BrentKideckel@gmail.com**
Phone: **917-634-0637**