# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL,

            Plaintiff,

    v.

THE FOREIGN NATION OF CANADA,
DOUG DOWNEY as Attorney General of
Ontario, THE PROVINCE OF ONTARIO
CANADA, THE CITY OF TORONTO
CANADA, DAVID J.N. WILSON, DAVID
KIDECKEL, DAHLIA SAIBIL, ARAM
SIMOVONIAN, GARY CAPLAN, IAN SINKE,
JOHN DOE 1-15, UNITED STATES
CITIZENSIHP & IMMIGRATION SERVICES
"USCIS"

            Defendants.

No. 1:24-cv-02907-CJN

## DAVID KIDECKEL AND DAHLIA SAIBIL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY OPPOSING COUNSEL FOR CONFLICT OF INTEREST AND BAD FAITH LITIGATION TACTICS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................iii

PRELIMINARY STATEMENT ....................................................................................................1

    I.      BACKGROUND .................................................................................................2

    A.    Plaintiff's Conduct in the Canadian Proceedings.......................................................2

    B.    Plaintiff's Conduct in This Proceeding .....................................................................5

    C.    Plaintiff's Conduct in Past Proceedings....................................................................8

    II.    ARGUMENT .....................................................................................................9

    A.    Standard for Attorney Disqualification .....................................................................9

    B.    Plaintiff Fails to Allege Any Conflict of Interest that Warrants Disqualification. 10

    C.    Plaintiff Fails to Show Misconduct by Mr. Robinson ...........................................12

    III.   CONCLUSION..................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ambush v. Engelberg*,
   282 F.Supp.3d 58 (D.D.C. 2017) .................................................................9, 10, 12

*Cauderlier & Assocs., Inc. v. Zambrana*,
   No. CIVA 05-1653 ESHJMF, 2006 WL 3445493 (D.D.C. Oct. 6, 2006).............................12

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)...........................................................................................13, 14

*Como v. Commerce Oil Co., Inc.*,
   607 F. Supp. 335 (S.D.N.Y. 1985) ...........................................................................11

*Douglas v. United States*,
   488 A.2d 121 (D.C. 1985) ......................................................................................11

*Fort Myer Constr. Corp. v. Shrensky*,
   No. 1:23-cv-02275(CJN), 2024 WL 181075 (D.D.C. Jan. 17, 2024)......................................11

*In re Grand Jury Subpoena: Under Seal*,
   415 F.3d 333 (4th Cir. 2005) ..................................................................................13

*Hamilton v. Merrill Lynch*,
   645 F. Supp. 60 (E.D. Pa. 1986) ..............................................................................11

*Holloway v. Arkansas*,
   435 U.S. 475 (1978)..............................................................................................11

*Laker Airways Ltd. v. Pan Amer. World Airways*,
   103 F.R.D. 22 (D.D.C. 1984).....................................................................................12

*Pigford v. Veneman*,
   355 F.Supp.2d 148 (D.D.C. 2005) .............................................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   965 F.Supp.2d 104 (D.D.C. 2013) .........................................................................9, 10

*United States v. O'Keefe*,
   252 F.3d 626 (2d Cir. 2001).....................................................................................13

*Wheat v. United States*,
   486 U.S. 153 (1988)..............................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................1

Federal Rule of Civil Procedure 12(b)(2) .......................................................................1

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1

District of Columbia Professional Rule of Conduct 1.7(a)...........................................10

District of Columbia Professional Rule of Conduct 1.7(b)...........................................10

Defendants David Kideckel and Dahlia Saibil,[1] through undersigned counsel, submit this Opposition to the Emergency Motion to Disqualify Opposing Counsel for Conflict of Interest and Bad Faith Litigation Tactics ("Motion to Disqualify"). While counsel has withdrawn from the representation of Aram Simovonian for reasons unrelated to the merits of the Motion[2], this opposition is submitted to address the issues raised by Plaintiff,

## PRELIMINARY STATEMENT

The Motion to Disqualify is baseless. There is no legitimate basis to disqualify counsel for representing David Kideckel, Dahlia Saibil, and Aram Simovonian, as each has made or will make similar, non-conflicting arguments about the lack of subject matter and personal jurisdiction and Plaintiff's failure to state a claim against them. Similarly, none of the other actions asserted by Plaintiff constitute misconduct, much less conduct warranting the sanction of disqualification.

This action is one of three proceedings, to date, arising out of Brent Kideckel's ("Plaintiff") perceived grievances against his brother, David Kideckel ("D. Kideckel"). Two others, each pending in the Ontario Superior Court of Justice, precede this matter and provide insight into Plaintiff's actions here. In those matters, Plaintiff's ire expanded beyond the opposing party (his brother) to opposing counsel, Aram Simovonian. Plaintiff claims he reported Mr. Simovonian to the Law Society of Ontario and thereafter named him as a defendant in one of the proceedings. Later, Plaintiff

---

[1] David Kideckel opposes the entry of default against him, as he has not been properly served in this matter. ECF 23 (Memorandum in Opposition to Plaintiff's Motion for Entry of Default). He reserves the ability to contest the Court's jurisdiction over him and will contest the Court's lack of jurisdiction over the subject matter and Plaintiff's failure to state a claim. *Id*. Ms. Saibil will move to dismiss on April 16, 2025, reserves the ability to contest the Court's jurisdiction over her, and will assert similar arguments pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6).

[2] Should the Court wish to understand the reason for the change in counsel, David Kideckel will submit an explanation *ex parte*.

named Mr. Simovonian as a defendant in this matter, where he continues his attacks against D. Kideckel; his wife, Dahlia Saibil; Mr. Simovonian; and others on D. Kideckel's Canadian legal team.

Plaintiff is now taking the same approach in this matter. He threatened to report D. Kideckel and Ms. Saibil's attorney, Jeffrey Robinson, for purported ethical violations. When Mr. Robinson was also engaged to represent Mr. Simovonian, Plaintiff's threats to Mr. Robinson escalated, culminating in the Motion to Disqualify.

The Motion to Disqualify is Plaintiff's latest attempt to harass opposing counsel. Mr. Robinson did not, as Plaintiff argues, violate any rules of ethics, much less act in a way requiring his disqualification as D. Kideckel and Ms. Saibil's counsel. Accordingly, this Court should deny the Motion to Disqualify.

## **BACKGROUND**

The Motion to Disqualify should be viewed in the context of Plaintiff's conduct in this, as well as other related and unrelated, litigation. Plaintiff is no stranger to *pro se* litigation, and his conduct over the past few years reveals two consistent approaches: (1) attorneys who oppose him should be subject to disciplinary proceedings; and (2) everything that harms Plaintiff or his case is "false" or "fraudulent." These approaches are visible in Plaintiff's conduct in this case, the duplicative Canadian proceedings, and in previous unrelated proceedings described below.

### A. **Plaintiff's Conduct in the Canadian Proceedings**

The instant action follows (and, in many respects, duplicates) proceedings between Plaintiff and D. Kideckel in Canada. In August 2023, D. Kideckel, Ms. Saibil, and their family and colleagues began to receive harassing messages believed to be from D. Kideckel's estranged brother, Plaintiff. ECF 48-2 at 17-21 (Aram Simovonian's Motion to Dismiss). D. Kideckel repeatedly asked Plaintiff to stop these attacks on him and his family but was met with an escalated campaign—one in which

Plaintiff noted he "would absolutely be honored to battle [D. Kideckel] in court and embarrass [him] in front of [his] children." ECF 48-2 at 44.

When Plaintiff refused to stop his harassment, including causing the Toronto Police to conduct a welfare check on D. Kideckel's children, D. Kideckel engaged an attorney, Mr. Simovonian, to send Plaintiff a cease-and-desist letter. *Id.* at 11, 21. Plaintiff responded that he "welcome[d] a lawsuit." *Id.* at 48. Thereafter, on February 1, 2024, D. Kideckel, represented by Mr. Simovonian, commenced litigation in the Superior Court of Ontario to address Plaintiff's attacks. *Id.* Plaintiff almost immediately directed his aggression to Mr. Simovonian. As soon as he was served, Plaintiff began to threaten to report Mr. Simovonian to the Law Society of Ontario. Declaration of Aram Simovonian ("Simovonian Decl.") ¶ 5. Plaintiff now alleges that the lawsuit was filed with "fraudulent goals." ECF 1 at ¶¶ 142, 4 (Complaint). In early 2024, D. Kideckel, still plagued by harassing behavior from Plaintiff, filed a police report against Plaintiff for harassment and uttering a death threat. ECF 48-2 at 28-30.

In March of 2024, Plaintiff called the police report "false" and "fraudulent"—accusations that he has carried into the instant action[3] (ECF 1 at ¶¶ 1, 2, 5, 108, 113, 119)—and retaliated by filing a report against D. Kideckel with the FBI.[4] ECF 39 at 59-60 (Plaintiff's Motion for Summary (or Default) Judgment Against David Kideckel, Exhibit M). Plaintiff followed up with a retaliatory action on May 9, 2024. The suit, also filed in the Superior Court of Ontario, is against many of the same defendants named in the instant action, including D. Kideckel; Ms. Saibil, his wife; and his

---

[3] When counsel for the Province of Ontario informed Plaintiff that he did not have jurisdiction to commence a lawsuit against Canada in the United States, he referred to that information as "false legal advice". ECF 1, ¶ 135.

[4] Plaintiff's attempt to file a report with the Toronto Police was unsuccessful. ECF 48-2 at 78. Plaintiff has stated that he filed a police report against D. Kideckel in San Diego and Sarasota, Florida. *See* Declaration of Jeffrey Robinson ("Robinson Decl.") ¶ 3, Exh. A.

legal team, Gary Caplan and Mr. Simovonian. ECF 48-2 at ¶ 11. Plaintiff's Canadian lawsuit alleges many of the same claims asserted here: harassment, negligence, malicious prosecution, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* at ¶ 12. In his pleading in Canada, Plaintiff took aim at D. Kideckel's legal team. He alleged, without basis, that Mr. Simovonian was fired and reported to the Law Society of Ontario, and that Mr. Simovonian's former employer, Gary Caplan, is vicariously liable for Mr. Simovonian's actions. ECF 48-2 at 97, 103, 104 (requesting that Mr. Simovonian be reported to the Law Society "for disbarment or other appropriate disciplinary action"); ECF 1 at 188 (alleging Mr. Caplan "has vicarious liability for the actions of his employee"). Plaintiff continues to make such baseless allegations about D. Kideckel's Canadian counsel in the instant action. *Id.* at ¶¶ 10, 46, 96-99, 187; ECF 39 at 6 (Plaintiff's Motion for Default Judgment as to David Kideckel); ECF 51 (Plaintiff's Notice of Intent to Oppose Aram Simovonian's Motion to Dismiss).

The suits in Ontario are still pending, and Plaintiff has become increasingly non-cooperative and antagonistic in his dealings with D. Kideckel, his counsel, and now his counsel's counsel, Ian Sinke. After defaulting in D. Kideckel's lawsuit against him, Plaintiff refused to cooperate with a court-mandated cross-examination to address service in the matter. Simovonian Decl. ¶ 6. He appeared for less than an hour on two consecutive days, refused to answer Mr. Simovonian's questions, and unilaterally ended the cross-examination early, claiming the questions "were not relevant." *Id.*  The Superior Court of Ontario has ordered Plaintiff to pay $12,500 to defendants, including Mr. Simovonian and D. Kideckel, which he has not paid. *Id.* ¶7, Exhs. B and C. Throughout the proceedings, Plaintiff has continued to threatened Mr. Simovonian and his counsel, Ian Sinke, with reports to the Law Society of Ontario.  *Id.*¶ 5.

**B.  <u>Plaintiff's Conduct in This Proceeding</u>**

This matter is proceeding down the same path, with Plaintiff using litigation to harass his targets and threaten their counsel. On October 15, 2024, Plaintiff commenced this suit against eleven defendants (and "John Doe 1-15"), including D. Kideckel; Ms. Saibil; D. Kideckel's attorney, Mr. Simovonian; Mr. Simovonian's former employer, Gary Caplan; and Messrs. Caplan and Simovonian's counsel in the Ontario proceeding, Ian Sinke. ECF 1. Approximately two months later, he dismissed Messrs. Caplan and Sinke without explanation, although he now appears to be seeking declaratory relief against Mr. Caplan's firm. ECF 10 (Notice of Partial Dismissal of Defendants Ian Sinke and Gary Caplan), 59 (Plaintiff's Motion for Declaratory Relief). Plaintiff also named the United States Citizenship and Immigration Services ("USCIS") as a defendant, not because of any wrongdoing on USCIS's part, but to seek the "extraordinary" relief of citizenship. ECF 18 (USCIS's Motion to Dismiss), 28 at 1-2 (Plaintiff's Memorandum of Law in Opposition of USCIS's Motion to Dismiss). Two months after USCIS expended the time and resources to move to dismiss, Plaintiff voluntarily dismissed the agency. ECF 45 (Plaintiff's Notice of Voluntary Partial Dismissal of USCIS).

Two months after commencing this action, Plaintiff claimed that D. Kideckel agreed to accept service via email. ECF 7 (Return of Service/Affidavit as to David Kideckel). Plaintiff moved for entry of default (ECF 7, 8 (Affidavit for Default as to David Kideckel), 13 (Motion for Entry of Default as to David Kideckel)), which was subsequently opposed by D. Kideckel. (ECF 23, 23-1). In Plaintiff's untimely reply, filed on January 11, 2025, he admitted he "[had] not read [D. Kideckel's] Affidavit or his counsel's Memorandum." ECF 29 at 2. While awaiting resolution of his motion for entry of default, Plaintiff filed a procedurally improper "Motion for Summary (or Default) Judgment against David Kideckel," which also depicted D. Kideckel's Canadian counsel as "rogue

and unethical." ECF 39 at 2-3.[5] On March 11, 2025, claiming that references to "D. Kideckel" and "Mr. Kideckel" (as well as Plaintiff's own references to "Dr. Kideckel") were designed to mislead the Court, Plaintiff filed a notice seeking clarification of how to address D. Kideckel. ECF 50. Though Plaintiff's request was not contemplated by the Federal Rules of Civil Procedure, D. Kideckel responded on March 19, 2025, to clarify that each prefix referenced Defendant David Kideckel. ECF 58 (Plaintiff's Notice Seeking Clarification). That response was unacceptable to Plaintiff. On March 21, 2025, Plaintiff filed a motion to compel "consistent, accurate, and legally recognizable party identification" (ECF 63) and threatened to move for sanctions against Mr. Robinson for his "intentional use of aliases and inconsistent names" for his client. Robinson Decl. ¶ 4, Exh. B.

Plaintiff has approached Ms. Saibil with equal vitriol. After various failed attempts to serve Ms. Saibil, on January 19, 2025, Plaintiff threatened to serve her while she would be sitting shiva for D. Kideckel and Plaintiff's recently deceased father. *Id.* ¶ 5, Exh. C. To avoid this threatened harassment during such a trying time, Ms. Saibil agreed to waive service on January 24, 2025. *Id.* As reflected on the docket, her response will not be due until April 16, 2025. ECF 41 (Waiver of Service for Dahlia Saibil). Plaintiff, however, claimed to the Court on March 18, 2025 that Ms. Saibil's failure to "file a responsive pleading" and "prolonged silence" should be construed as "an intentional strategy to evade accountability," an "[obstruction of] the fair and efficient resolution of this case," and an "implicit admission of wrongdoing." ECF 61 (Plaintiff's Notice of Attempt to Confer).

---

[5] On January 23, 2025, D. Kideckel submitted a praecipe notifying the Court of the procedural impropriety of this motion. ECF 40.

When Mr. Robinson was engaged by Mr. Simovonian and moved to dismiss the Complaint on his behalf on March 10, 2025, Plaintiff attacked Mr. Robinson. On March 11, Plaintiff demanded an "immediate meet and confer" to discuss Mr. Robinson's so-called conflict of interest resulting from his "simultaneous representation of co-conspirators in a fraud and conspiracy case." Robinson Decl. ¶ 6, Exh. D. Though Plaintiff "required" a response no later than 4:00 pm the following day, he did not wait; he contacted the Court three and a half hours later to request an emergency hearing on the Motion to Disqualify. *Id.* ¶ 7, Exh. E. The following day, Plaintiff threatened to report Mr. Robinson to "the appropriate regulatory body" in an email copying leaders in Mr. Robinson's firm. *Id.* ¶ 8, Exh. F. Plaintiff followed up with another letter to the leaders of Mr. Robinson's firm on March 21, 2025, wherein he threatened "further legal and disciplinary consequences, including sanctions, referral to the D.C. Office of Disciplinary Counsel, and motions for relief based on compromised proceedings." *Id.* ¶ 9, Exh. G.

Since March 11, 2025, Plaintiff has made fourteen submissions on the docket, including the Motion to Disqualify, a request for declaratory relief against individuals who are not parties to the proceeding, a demand for "clarification" of D. Kideckel's identity, a request for "early discovery," an unmeritorious commentary on Ms. Saibil's failure to file responsive papers early, and a request for a temporary restraining order against D. Kideckel and Mr. Simovonian. ECF 50-54, 57, 59-66. He continually threatened to file a supplemental complaint naming additional defendants and adding more claims, which he served on March 24, 2025. Robinson Decl. ¶ 13, Exh. K. And, when an associate from the firm representing the City of Toronto and David Wilson entered an appearance (ECF 56), Plaintiff accused them of engaging in "procedural delay tactics." Robinson Decl. ¶ 11, Exh. I; ECF 60 (Plaintiff's Motion to Take Judicial Notice).

**C.  <u>Plaintiff's Conduct in Past Proceedings</u>**

Plaintiff's behavior in this proceeding and in the Canadian proceedings is not new. He has commenced fifteen cases across different U.S. courts and was deemed a vexatious litigant in the states of California and Nevada.[6] Plaintiff's actions in one of his California cases, *Kideckel v. Wells Fargo Bank, N.A.*, 3:20-cv-00681-DMS-JLB, illustrate his pattern of characterizing counterarguments as "fraud" and subjecting opposing counsel to threats of disciplinary action. In that case, Plaintiff attacked opposing counsel with racist and sexist remarks,[7] threatened to file—and allegedly did file—a California state bar complaint against the attorney and threatened to seek counsel's disqualification from the case. *Id.* at ECF 13-1.[8] Admonishment from the court did not stop Plaintiff's racist remarks and threats, as he continued to threaten to "supplement" his complaint to the State Bar. *Id.*

Plaintiff's actions in a Nevada case followed the same pattern. There, the court found that Plaintiff had "transformed a simple auto case into extensive litigation in which [he] filed dozens of motions many of which were completely frivolous" including "numerous frivolous disqualifications

---

[6] *See* ECF 48-1 at 8; *Nevada Administrative Office of the Courts, Vexatious Litigant List* (updated March 18, 2025), https://nvcourts.gov/__data/assets/pdf_file/0023/13496/Vexatious_Litigant_03.18.25.pdf; *Judicial Council of California, Vexatious Litigant List* (updated March 4, 2025) https://courts.ca.gov/system/files/file/vexlit.pdf.

[7] Plaintiff's specific statements include: ". . . your affirmative-action-hire Chinaman colleague not be in attendance . . . they are a coronavirus carrier and danger to my health"; "Chinamen are responsible for the China Virus . . . your colleague can and will be presumed to have the China Virus and is recklessly spreading it throughout this country . . . keep your Chinese colleague far far away"; "While not surprising given it came from your affirmative-action hire,". *Id.*

[8] Examples of Plaintiff's threats to report the associate to the California Bar include: "I hope I do not need to file a State Bar complaint against Mr [sic] An"; "If I do not get clarity by the end of the day, I'll . . . move forward with a State Bar complaint against Mr [sic] An."; "You're more than welcome to advice the court that I have filed a Complaint with the State Bar"; "I will be using this to support my complaint against Mr [sic] An to t[h]e State Bar of California . . . and will see Mr [sic] An's disqualification from this case.".

and sanctions motions, all of which were denied." *See Kideckel v. Michael Rowe, et al.*, Clark

County, Nevada, Case No. 19C-027549 (attached to *Kideckel v. Wells Fargo Bank, N.A.*, 3:20-cv-

00681-DMS-JLB, ECF 42-1). In his four motions to disqualify opposing counsel, Plaintiff alleged

that he "filed misconduct/ethics complaint to the State Bar of Nevada" (which never took any action)

and alleged that opposing counsel "blur[red] the lines of ethics and responsibility," "lied to the

court," and "confused" him.[9] *Id.* All of these motions, as well as the subsequent motions for sanctions

filed by Plaintiff, were denied as frivolous. *Id.* Plaintiff also threatened to "file a federal complaint

under the ADA" and threatened to sue opposing counsel "in the Ninth Circuit," neither of which

came to fruition. The Nevada court concluded that Plaintiff's actions demonstrated his clear intent

"to use the justice system. . . to harass and badger anyone who crosses him—regardless of the

merits." *Id.*

## ARGUMENT

When viewed in the context of this case, the related proceedings in Canada, and Plaintiff's

earlier practices, it is clear that the Motion to Disqualify is a "procedural weapon[] to advance purely

tactical purposes" (*Ambush v. Engelberg*, 282 F.Supp.3d 58, 62 (D.D.C. 2017))—here, to harass D.

Kideckel and his legal team. As addressed below, the Motion to Disqualify is completely lacking in

merit.

### A.  Standard for Attorney Disqualification

Disqualification of an attorney "is a drastic measure that is disfavored by the courts, and

disqualification motions should be subject to particularly strict judicial scrutiny." *In re Rail Freight*

---

[9] Plaintiff also made sexist, abusive, and offensive comments to opposing counsel and his female staff. *Id.* ("[I]s Ms. Malin a real paralegal or a Burger King cashier you enlisted to prepare the filings?"; "Perhaps you're more comfortable in the laundry room or kitchen."; "[Did] you get in to [sic] college by affirmative action?").

*Fuel Surcharge Antitrust Litig.*, 965 F.Supp.2d 104, 110 (D.D.C. 2013) (internal citations and quotations omitted). When considering a motion to disqualify, the Court, in its discretion, "must consider two questions in turn: first, whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification." *Id.*

Disqualification is granted only "rarely in cases where there is a serious question as to counsel's ability to act as a zealous and effective advocate for the client or the substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party." *Ambush v. Engelberg*, 282 F. Supp. 3d 58, 62 (D.D.C. 2017). Where, as here, a motion to disqualify is brought by an individual who has never been represented by the attorney he seeks to disqualify, the movant must "clear[] a high bar by, for example, showing that the conflict is so glaring that it 'undermines the Court's confidence in the vigor of the attorney's representation of his or her client,' or 'threatens the non-client with immediate and actual harm by creating the substantial risk to her right to a fair and just determination of her claims.'" *Ambush*, 282 F.Supp.3d at 64 (internal citations and quotations omitted).

**B.** <u>**Plaintiff Fails to Allege Any Conflict of Interest that Warrants Disqualification**</u>

There are no circumstances here that warrant Mr. Robinson's disqualification. First, Mr. Robinson's representation of D. Kideckel, Ms. Saibil, and Mr. Simovonian did not violate any Rules of Professional Conduct.[10] Plaintiff is not now represented, nor has he ever been represented by Mr. Robinson or his firm, so Mr. Robinson has not gained any "unfair advantage" in his representation

---

[10] Plaintiff does not identify the Professional Rule of Conduct that were allegedly violated by Mr. Robinson. The Motion to Disqualify attacks Mr. Robinson for representing parties with supposedly adverse interests, suggesting a violation of District of Columbia Professional Rule of Conduct 1.7(a)-(b), which generally provide that a lawyer may not advance two or more adverse positions or represent a client if doing so would be adverse to the interests of another client.

of D. Kideckel against Plaintiff.[11] Moreover, Plaintiff does not raise a "serious question" as to whether Mr. Robinson can be an effective advocate for D. Kideckel and Ms. Saibil (or previously for Mr. Simovonian). At most, the Motion to Disqualify takes issue with Mr. Robinson's "simultaneous[] representation of multiple defendants with inherently conflicting defenses," but does not articulate what the defenses are or how they "inherently" conflict. ECF 52 at 3 (original emphasis omitted). They do not conflict; D. Kideckel, Ms. Saibil, and Mr. Simovonian's positions are far from antagonistic. *See* ECF 23 at 1 n.1; ECF 48-1;[12] *see, e.g.*, *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61-62 (E.D. Pa. 1986) (rejecting disqualification despite possibility that plaintiffs have cross-claims against each other because plaintiffs "are not obligated to retain separate counsel who will more vigorously pursue cross-claims against each other, rather than joint counsel, who will adequately represent their substantially common interests"); *Como v. Commerce Oil Co., Inc.*, 607 F. Supp. 335, 343 (S.D.N.Y. 1985) (rejecting disqualification in case involving defendant's fraudulent activities in connection with the sale of securities); *see generally Holloway v. Arkansas*, 435 U.S. 475, 482, (1978) ("[I]n some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation.")

---

[11] As Plaintiff was never Mr. Robinson's client, he may also lack standing to bring this motion. *See Fort Myer Constr. Corp. v. Shrensky*, No. 1:23-cv-02275(CJN), 2024 WL 181075, at *5 (D.D.C. Jan. 17, 2024) (where a party was never a client of the firm he sought to disqualify, he "is not impacted by any potential conflict of interest," and "it is not [his] place to step in and assert [another party's] rights.").

[12] Plaintiff cites *Wheat v. United States*, 486 U.S. 153 (1988), for the proposition that attorneys are "routinely" disqualified for the representation of co-defendants in conspiracy cases. This case addressed the issues of joint representation in the criminal context—an analysis guided by Sixth Amendment considerations that are not present in the civil context. *See Douglas v. United States*, 488 A.2d 121, 138 n.18 (D.C. 1985) ("We note that the Code of Professional Responsibility will be relevant to a trial court's determination of whether an attorney should be disqualified in criminal, as well as civil, cases. In criminal cases, however, the court's decision must focus on, and be guided by, the defendant's Sixth Amendment rights.") (internal citations omitted).

11

More importantly, even if the interests of D. Kideckel and Ms. Saibil conflicted with those of Mr. Simovonian, they do not, such conflict does not lay the groundwork for disqualification. "[T]he mere claim of a conflict is not enough" (*Laker Airways Ltd. v. Pan Amer. World Airways*, 103 F.R.D. 22, 27 (D.D.C. 1984)), and it certainly does not clear Plaintiff's "high bar" to show that Mr. Robinson, who has never represented Plaintiff, faces such a "glaring" conflict so as to impact his representation of D. Kideckel and Ms. Saibil, or to threaten Plaintiff. *See, e.g., Ambush*, 282 F.Supp.3d at 64 (plaintiff, who was not represented by attorney in question, failed to clear "high bar" to have attorney disqualified on basis of purported conflict); *Pigford v. Veneman*, 355 F.Supp.2d 148, 166-67 (D.D.C. 2005) (denying motion to disqualify opposing counsel); *Cauderlier & Assocs., Inc. v. Zambrana*, No. CIVA 05-1653 ESHJMF, 2006 WL 3445493, at *3 (D.D.C. Oct. 6, 2006) (denying motion to disqualify where movant "[could] not possibly claim that his right to a fair resolution of his claims w[ould] be affected by what law firm represent[ed] his opponents"). Plaintiff has provided no ground for Mr. Robinson's disqualification, and the Motion to Disqualify must therefore be denied.

### C. Plaintiff Fails to Show  Misconduct by Mr. Robinson

Plaintiff mentions various other reasons as grounds for Mr. Robinson's disqualification. None are legally relevant, and they should all be disregarded. They are each addressed in turn.

*First*, there is no contradiction between assertions that Plaintiff sent the harassing messages, as D. Kideckel has argued in the Ontario proceedings (ECF 52 at 3), and the statements in Mr. Simovonian's affirmation in support of his motion dismiss that D. Kideckel *believed* that the harassing messages came from Plaintiff. Indeed, it was D. Kideckel's belief that led him to send the cease-and-desist letter, file the police report, and commence a lawsuit against Plaintiff in Ontario. *See* ECF 48-2 at 46 (in cease-and-desist letter, stating "*[i]t is our understanding* that you have

chosen to defame and harass our client . . .") (emphasis added); ECF 48-2 at 16-17 (in D. Kideckel's

affidavit, stating "*[i]t is my opinion* that Brent has engaged in a vicious, carefully orchestrated and

unlawful campaign of defamation against me") (emphasis added). These statements are consistent,

and they have no bearing on Mr. Robinson's ability to represent D. Kideckel, Ms. Sabil (or

previously, Mr. Simovonian).

     *Second*, Plaintiff does not specify what "[d]eliberate misrepresentations" Mr. Robinson

purportedly made "to this Court regarding key factual matters."[13] ECF 52 at 3. Such bald allegations

are presumed to be related to Mr. Robinson's purported use of "varying forms of addresses to

deceive the Court and create procedural confusion"—Plaintiff's unfounded complaint about

references to "Dr. Kideckel," "D. Kideckel" and "Mr. Kideckel" to refer to Defendant David

Kideckel.[14] ECF 50. D. Kideckel has addressed this issue, and this, too, does not impact Mr.

Robinson's ability to represent him.

     *Lastly*, just as in his Complaint, Plaintiff is attempting to use this forum to litigate Canadian

matters—the "fraudulent allegations" in the Canadian proceedings that are the crux of the instant

suit. ECF 52 at 3; ECF 48-2 at 15-59. Plaintiff alleges that Mr. Robinson engaged in "egregious

misconduct," by "[p]ursuing a fraudulent claim in a foreign tribunal based on perjured affidavits."[15]

---

[13] Plaintiff's legal authority provides no additional guidance. Plaintiff cites *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333 (4th Cir. 2005), in support of the principle that false statements may be grounds for attorney disqualification. That case, however, addressed the issue of attorney-client relationships and did not discuss attorney disqualification or "[d]eliberate misrepresentations."

[14] Plaintiff cites *United States v. O'Keefe*, 252 F.3d 626, 630 (2d Cir. 2001) in support of his argument. A search using the name and citation provided was unable to locate any such case.

[15] Plaintiff cites *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) for the premise that an attorney may be disqualified for obstructing justice. *Chambers,* which resolved whether a federal statute usurped the inherent power of a court to issue sanctions, addresses none of these points. To the extent Plaintiff relies on this case to show sanctionable conduct in a foreign tribunal, *Chambers*

ECF 52 at 3 (emphasis omitted). Mr. Robinson, however, is not pursuing any claims in the Ontario proceedings, and he has been clear in his communications with Plaintiff that he represents D. Kideckel and Ms. Saibil only in connection with the instant suit. *See* Robinson Decl. ¶ 12, Exh. J.

## **CONCLUSION**

For the foregoing reasons, David Kideckel and Dahlia Saibil respectfully request that this Court deny Plaintiff's Motion to Disqualify.

Dated: March 25, 2025                     Respectfully submitted,


                                          __  */s/ Jeffrey D. Robinson*  __

                                          Jeffrey D. Robinson, D.C. Bar No. 376037
                                          LEWIS BAACH KAUFMANN
                                          MIDDLEMISS PLLC
                                          1050 K Street NW, Suite 400
                                          Washington, DC 20001
                                          Telephone: (202) 833-8900
                                          Facsimile: (202) 466-5738
                                          Jeffrey.Robinson@lbkmlaw.com


                                          *Counsel for Defendant David Kideckel and*
                                          *Dahlia Saibil*

---

does not involve a foreign tribunal, but rather a claim originating in the Western District of Louisiana for the sale of a radio tower in Louisiana. *Id.* at 35-36.