IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL | ) |
|     Plaintiff | ) CASE NO.:  1:24-cv-02907-CJN |
| V. | ) |
| | ) |
| THE FOREIGN NATION OF CANADA, et al. | ) |
|     Defendants. | ) |
| _____ | ) |

# **<u>PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY JEFFREY ROBINSON</u>**

## I. Defendants' Opposition Papers Confirm the Taint and Ethical Breaches They Deny

The opposition papers submitted by Defendants—including the recently filed declarations—only reinforce the need for immediate judicial intervention. The central theme of Defendants' response is not a genuine refutation of the allegations of perjury, fraud, and procedural abuse. Rather, it is a carefully constructed evasion of responsibility built upon half-truths, selective silence, and false denials. Crucially, neither Aram Simovonian nor Jeffrey Robinson has disavowed the filings at issue. Instead, they continue to rely on pleadings and affidavits that are demonstrably false, filed in violation of ethical obligations, and created during periods of undisclosed conflict.

Defendants offer no plausible explanation for Robinson's quiet substitution during the pendency of a motion to disqualify, nor do they deny that he previously represented both defendants while submitting joint strategy filings that now form the foundation of their litigation posture. That silence is deafening. The Court is not obligated to ignore the obvious: Robinson's sudden withdrawal from representing Aram was not coincidental—it was damage control. The attempt to



MAR 27 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

preserve those same tainted filings in defense of David, a defaulted party, is improper and indefensible.

Moreover, approximately half of the opposition's substance relies on a filing that is not just procedurally improper—it is unauthorized, conflicted, and destined to be either disavowed or stricken. This document was submitted by Mr. Robinson during a period of active disqualification proceedings, while he was simultaneously withdrawing from representing Aram Simovonian and repositioning himself solely as counsel for David Kideckel. Matter of fact, it was filed within the hour of Mr, Breen making his substitute appearance for Aram Simovonian. The filing is infected with ethical violations and appears to have been strategically crafted to preserve tainted arguments while insulating Robinson's defaulted client. It contains representations that could not have been ethically made by any attorney with a duty of loyalty to Mr. Simovonian. It is precisely the kind of filing that cannot be relied on in good faith by this Court or any litigant—and its presence in the record further demonstrates the urgency of disqualification and judicial correction.

## II. Procedural Irregularities and Ethical Breaches Mandate Corrective Action

Plaintiff's original motion detailed numerous procedural violations, including reliance on anonymous or fabricated exhibits, and the use of a sworn affidavit containing false statements of material fact. Defendants have not rebutted these allegations. Rather, they have shifted focus to form-over-substance arguments designed to distract from the reality that their case is built on a fraudulent foundation.

Moreover, Defendants' refusal to address the conflicts of interest underpinning Robinson's dual representation only further highlights the urgency of disqualification. Under the D.C. Rules of Professional Conduct, Rule 1.9(a) prohibits representation adverse to a former client in the same or substantially related matter without informed consent. No such consent has been produced. Robinson's attempt to distance himself from Aram while remaining in control of the tainted filings in David's name creates an irreconcilable ethical breach.

The record reflects a coordinated effort to weaponize judicial procedures through perjured filings, strategic silence, and misrepresentation. These are not isolated procedural defects—they are systemic abuses that demand judicial response. Left uncorrected, they erode the integrity of

this Court's docket and send the dangerous message that litigants and their counsel may engage in deception with impunity.

## III. Disqualification and Sanctions Against Jeffrey Robinson Are Warranted

Jeffrey Robinson's continued representation of David Kideckel—after being forced to withdraw from representing Aram Simovonian due to serious ethical conflicts—is a flagrant violation of the duties owed to this Court and to the adversarial process. As a former Assistant Attorney General, Mr. Robinson is not some inexperienced or unsophisticated litigator unfamiliar with his ethical obligations. His conduct here is not just a breach of legal ethics—it is a deliberate abuse of process. His strategic withdrawal from Aram Simovonian's defense during the pendency of a disqualification motion is an implied concession that his prior dual representation was improper. Yet, he now seeks to remain in the case to continue representing David Kideckel—a defaulted co-defendant—on the back of the very same tainted filings and conflicted strategy that triggered his withdrawal. This is procedurally untenable and ethically indefensible.

Robinson's actions directly violate Rule 1.7(a)(2) of the D.C. Rules of Professional Conduct, which bars a lawyer from continuing representation where "there is a significant risk that the lawyer's professional judgment… will be adversely affected by the lawyer's own interests." Robinson's personal interest in shielding himself from sanctions, discipline, and reputational harm now outweighs any duty he purports to owe to David. His filings are contaminated by prior misconduct, including the submission of perjured affidavits and arguments made in reckless disregard of the truth. He cannot ethically continue in this case when his principal goal is to preserve the procedural artifacts of his own wrongdoing.

This case presents the rare situation where the record itself is corrupted by an attorney's misconduct. The U.S. Supreme Court has repeatedly held that courts possess inherent authority to disqualify counsel and impose sanctions to protect the integrity of the judicial process. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (courts may "fashion appropriate sanction[s] for conduct which abuses the judicial process"); *Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (sanctions are appropriate for bad faith or abuse of judicial procedures). The D.C. Circuit has similarly recognized that disqualification is required where a conflict of interest "impairs the ability of a lawyer to represent his client with undivided

loyalty." *Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1055 (D.C. Cir. 1984), vacated on other grounds, 472 U.S. 424 (1985).

Mr. Robinson's conduct meets and exceeds those thresholds. His filings were not simply sloppy or aggressive—they were fraudulent and strategically abusive. His sudden substitution—while already under threat of disqualification—does not mitigate the damage, but rather underscores the severity of the taint. Even after stepping away from representing Mr, Simovonian, Robinson has taken no steps to disavow or correct the misconduct. Instead, he clings to the defense of David Kideckel, a defaulted defendant, as a backdoor means to preserve the contaminated filings and shield himself from the fallout.

The Court should disqualify Mr. Robinson from further representation of any party in this matter and strike all filings submitted under his name, including all affidavits, motions, and memoranda that bear the mark of his conflicted and unethical conduct. Courts have routinely exercised this authority where an attorney's misconduct threatens the fairness of the proceeding. See *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (dual representation creates an "irreconcilable conflict" warranting disqualification); *In re Gatti*, 8 P.3d 966, 974 (Or. 2000) (attorney misconduct can warrant exclusion of evidence and sanctions).

In addition, Plaintiff respectfully requests that the Court consider a modest, non-compensatory sanction payable not to Plaintiff, but to a neutral public interest entity. This case is not about enriching the undersigned at the expense of another party—it is about safeguarding the integrity of the judicial process. The egregious nature of Mr. Robinson's conduct—particularly in light of his prior public office—demands accountability. A monetary sanction in an amount the Court deems appropriate, payable to the Advancement Project, the NAACP Legal Defense Fund, or Legal Aid DC, would serve the interests of justice, deter similar conduct, and affirm the Court's commitment to honest and ethical proceedings without providing any personal gain to Plaintiff.

This Court has the inherent authority to impose such a sanction. See *Chambers*, 501 U.S. at 44–45 (inherent power includes the ability to sanction "willful disobedience of a court order" or "bad-faith conduct"); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1324 (11th Cir. 2002) (court has "inherent power to police its docket and to sanction bad-faith conduct"). This is not a close call. Mr. Robinson has crossed a bright ethical line. His continued involvement is untenable. The Court should disqualify him, strike the filings he submitted, and enter an appropriate sanction to ensure the record—and the system—are no longer contaminated by his misconduct.

## IV. The Filings at Issue Are Fraudulent, and No Court Can Rely on Them in Good Faith

The filings submitted under the direction of Mr. Robinson—many of which remain uncorrected—are not merely flawed; they are fraudulent. This Court cannot and should not be asked to adjudicate any issue based on documents that are known to contain false statements, misrepresented service, fabricated exhibits, or are derived from procedurally improper filings. The rule of law demands more.

The D.C. Circuit has consistently held that courts have not only the authority but the duty to strike and disregard filings that were procured through deceit. In *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989), the court emphasized:

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter."

That is precisely what occurred here. The procedural history is marred by a verified affidavit from Aram Simovonian that is provably false and a series of filings that rely on redacted and unverifiable messages.. The Court cannot simply overlook these facts or allow the litigation to proceed under the guise of formality. Doing so would convert the courtroom into a venue for procedural manipulation, rather than truth-seeking.

Moreover, continued reliance on these tainted filings—without corrective action—amounts to an endorsement of fraud. That outcome is intolerable. Every day these filings remain on the docket unstruck, they serve as precedent for improper conduct and burden the judicial process with the stench of illegitimacy.

Plaintiff respectfully urges the Court to exercise its inherent power not only to disqualify conflicted counsel, but to strike the contaminated filings and declare them void ab initio. The Court's power to act in defense of its own integrity is not merely discretionary—it is obligatory.

## V. Robinson's Attempt to Shift Blame to Aram Simovonian Deepens the Conflict and Highlights a Bad-Faith Strategy

Jeffrey Robinson's conduct reflects not just ethical failure, but a calculated and unethical litigation strategy designed to deflect accountability from his defaulted client, David Kideckel, by shifting blame onto co-defendant Aram Simovonian—a defendant from whom he was recently forced to withdraw. This is not conjecture; it is plain from the face of the filings.

Robinson submitted an unauthorized and procedurally improper filing that affirmatively tied Aram to a perjured affidavit, in what appears to be a deliberate effort to distance David Kideckel from the misconduct and lay the foundation to argue that all wrongdoing flowed through Aram Simovonian. This is both ethically unconscionable and legally impermissible. An attorney who previously represented both parties cannot ethically pin perjury, fraud, or abuse of process on a former client in order to rescue the reputation or procedural standing of another. See *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233 n.10 (2d Cir. 1977) (noting that a lawyer may not later attack the credibility or integrity of a former client in the same or substantially related matter).

Robinson's actions, in essence, created a direct and irreparable adversarial relationship between his current client (David) and his former client (Aram). The conflict is not theoretical—it is active, material, and central to the litigation. He used court filings to shift the burden of misconduct, not to clarify the record or present a legitimate defense, but to shield a party in default while throwing another under the bus. This not only violates the duties of loyalty and confidentiality owed to Mr. Simovonian, but also highlights how deeply the litigation is tainted by strategic deception and conflicted decision-making.

Such conduct constitutes a gross breach of Rule 1.9(b) of the D.C. Rules of Professional Conduct, which bars a lawyer from using information relating to a former representation "to the disadvantage of the former client" in the same or a substantially related matter. That is precisely what Robinson has done here—and his silence on the matter is telling. Nowhere in Defendants' opposition do they offer justification, informed consent, or a waiver. There is none.

This betrayal of Aram Simovonian for the benefit of David Kideckel is more than just unethical —it is disqualifying. It renders Robinson's continued involvement legally impossible, and it further supports Plaintiff's call to strike all filings tainted by this impermissible conflict, procedural abuse, and strategic misconduct. The Court cannot allow counsel to switch allegiances midstream and sacrifice one defendant to protect another while acting under a veil of silence.

## VI. Defendants' Opposition Is Hollow, Misleading, and Designed Solely to Shift Blame Through Procedural Deception

The opposition filed in response to Plaintiff's disqualification motion lacks any meaningful rebuttal. It contains no legal argument, no substantive defense of the ethical breaches alleged, and no refutation of the material facts presented. Instead, it is a scattershot collection of irrelevant grievances, character attacks, and misleading narratives, none of which excuse or even address the procedural violations and conflicts of interest at the heart of this case.

Far from exonerating anyone, the opposition reads more like an airing of grievances than a legal defense. It demonstrates how the defense has no coherent theory of the case, only a desperate strategy to distract the Court from misconduct by impugning the character of Plaintiff. In doing so, Defendants unwittingly affirm Plaintiff's position: they have no rebuttal to the charge of fraud, perjury, or unethical representation. They simply resort to personal attacks because they have no substantive ground to stand on.

And yet, what is most telling is the purpose the opposition actually serves. The brief was not written to defend Aram Simovonian, the party whom Robinson just withdrew from representing. It was written to sacrifice him. The memo's only unifying theme is a blatant attempt to pin the procedural failures, false affidavits, and litigation taint on Mr. Simovonian—while shielding David Kideckel, who remains in default and whose filings Robinson still controls.

This is not just a legal conflict—it is an exploitative betrayal. Aram is, in truth, a young, foreign defendant in his early 20s with limited understanding of the legal system and, it now appears, no genuine legal representation throughout the course of these proceedings until now. Robinson leveraged that vulnerability for tactical advantage. He used privileged information, procured during the period of dual representation, to build a false narrative against Aram while preserving David's procedural posture. It could further be inferred that after being retained by David Kideckel (in default) and Dahlia Saibil (non-responsive) and having had no significant billable hours, that representing Mr. Simovonian allowed Mr. Robinson to simultaneously bill the clients for a 650+ page tainted Motion to Dismiss, while gaining valuable and privileged information from Mr. Simovonian in the "unlikely" event the pro se or the Court don't catch it, and it minimum, can withdraw from Mr. Simovonian and continue representing David Kideckel when their defense strategy

This strategy is not clever—it is corrupt. It weaponizes the attorney-client relationship and exploits a young co-defendant's lack of legal sophistication to protect a party who has already

defaulted. Courts have repeatedly condemned such tactics. See *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233 n.10 (2d Cir. 1977); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). A lawyer cannot withdraw from representing one client, only to use that client as a scapegoat for the benefit of another he continues to serve. That is precisely what Robinson has done—and this opposition brief is his roadmap.

This Court should not permit such conduct to stand. The opposition does not defeat Plaintiff's motion; it proves it. The absence of substantive rebuttal, the misuse of confidential insights, and the deliberate targeting of a former client all confirm the need for disqualification, striking of tainted filings, and appropriate sanctions. Anything less would reward deception and institutionalize betrayal as a legitimate litigation strategy.

## VII. The Court Must Close the Door on Strategic Betrayal and Procedural Weaponization

This case is no longer just about false service, improper filings, or conflicted representation—it is about whether this Court will permit its procedures to be twisted into tools for private vengeance, cover-up, and betrayal. What began as a coordinated defense collapsed the moment Mr. Robinson chose to preserve the procedural standing of his defaulted client by sacrificing his own former client in open court. This was not a misunderstanding. It was not carelessness. It was a deliberate, ethically indefensible strategy executed under the pretense of advocacy.

If such conduct is allowed to persist—if counsel can abandon one client, turn against him, use privileged information to discredit him, and then remain in the case to protect another—the legal profession loses its meaning. The rules become optional. Trust in the process collapses. And most critically, the Court becomes a silent party to institutionalized betrayal.

This Court is not powerless in the face of such manipulation. It has the inherent authority—and indeed the solemn duty—to prevent its docket from becoming a battleground for dishonest litigation tactics. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980) (affirming the court's inherent power to impose sanctions to protect its integrity); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). This is not about zealotry. It is about honesty, fairness, and the limits of advocacy. What Robinson did is beyond that limit.

If this Court permits such conduct to go unchecked, it sends a signal to litigants and lawyers alike: conflicts don't matter, perjury is a strategy, and loyalty to the truth is negotiable. That message would be devastating—not only to Plaintiff, but to the rule of law itself.

Plaintiff respectfully urges the Court to reaffirm that lawyers are officers of the court, not architects of betrayal, and that procedure is a pathway to justice, not a weapon to silence truth.

## VIII. Robinson Is Begging This Court to Sanction Him

Jeffrey Robinson's opposition filing does more than fail to defend his conduct—it brazenly invites sanctions by showing utter disregard for the Court's rules, the clarity required in adversarial proceedings, and the basic principle that parties must be properly and consistently identified. While Plaintiff's motion to compel consistent name usage remains pending before this Court, Robinson has gone further in defiance: he uses all three known variations of Defendant David Kideckel's name within the same document, in a transparent effort to obscure his client's identity, confuse the record, and distort the procedural posture of this case.

This is not accidental. This is not harmless. It is a strategic abuse of process, and Robinson knows exactly what he is doing.

When multiple parties in litigation share the same last name—as is the case here—clarity in naming is essential to due process and judicial accuracy. Courts have consistently recognized the importance of using the correct legal name to avoid fraud and misrepresentation. See, e.g., *United States v. Glover*, 372 F.3d 1147, 1151 (9th Cir. 2004) ("Using false or inconsistent names may serve as evidence of intent to defraud."); *In re Marriage of Combs*, 608 N.E.2d 1061, 1065 (Ill. App. Ct. 1993) (inconsistent names used to "manipulate legal obligations"). Robinson's conduct here mirrors this concern. The three variations are not innocent—they are tools of evasion.

Robinson's open flouting of these rules—after Plaintiff specifically raised the issue in a pending motion—is not mere sloppiness. It is willful misconduct. It obstructs judicial clarity, misleads the record, and mocks the authority of this Court.

The Court must take note: this is not simply about inconsistent formatting. This is about concealing fraud, blurring accountability, and undermining the adversarial process. And it's being done by a former Assistant Attorney General who is experienced enough to know better.

The importance of clarity in the naming of parties cannot be overstated, especially when the opposing parties share the same last name and are easily distinguishable as Mr. Brent Kideckel and Dr. David Kideckel.. The conflation of identities is as egregious as it is sanctionable, and this Court must send a message that such procedural manipulation will not be tolerated.

## IX. Mooted Motions Upon Granting the Requested Relief

Granting the relief sought in this motion—namely the disqualification of Jeffrey Robinson, the striking of tainted filings, and the issuance of appropriate sanctions—would necessarily moot several motions currently pending before the Court.

First, Plaintiff's Motion to Strike Defendant Aram Simovonian's Motion to Dismiss would be rendered entirely moot upon disqualification and striking of filings. That Motion to Dismiss was submitted during a period in which Aram was represented—at least nominally—by Mr. Robinson, whose conflicted and unauthorized involvement has now been fully briefed. The Motion to Dismiss is part of the same tainted record that must be purged to restore the Court's integrity. It cannot stand independently once the underlying misconduct is addressed.

Second, Plaintiff's Motion to Compel Consistent Name Usage, which is supported by both federal and local rule authority and was filed in good faith, would likewise be mooted upon this Court striking Mr. Robinson's filings. Plaintiff has already served a Rule 11 Safe Harbor Notice in connection with that motion, warning that the intentional use of three distinct variations of Defendant David Kideckel's name—all used within the Opposition Declaration —violates procedural rules and serves no purpose other than to mislead and obscure. The disqualification and sanctions sought here directly remedy that abuse.

If the Court grants the present motion in full, those pending motions will be addressed as a matter of law through the correction and cleansing of the record. To preserve judicial economy, Plaintiff respectfully submits that those matters will not require separate adjudication should the Court grant the instant relief in its entirety.

## CONCLUSION AND PRAYER FOR RELIEF

This Court has been presented with a record that is not merely procedurally defective, but ethically compromised and strategically manipulated. Jeffrey Robinson, a former Assistant Attorney General, has acted in open disregard of his professional duties—submitting tainted filings, representing clients with irreconcilable conflicts, and ultimately throwing one vulnerable co-defendant under the bus in order to shield another who is in default. The opposition brief does not deny these facts; it confirms them. It offers no substantive defense, only distraction, deception, and betrayal.

This is a critical moment not only for the integrity of this case, but for the integrity of the judicial process itself. Plaintiff has not sought monetary enrichment from this motion and does not wish to benefit from fraud. Plaintiff seeks only fairness, accountability, and a record that reflects truth—not manipulation.

Accordingly, Plaintiff respectfully requests that this Court:

1. Disqualify Jeffrey Robinson from further representation of any party in this matter;

2. Strike all filings submitted by Mr. Robinson, including affidavits, motions, and memoranda tainted by conflict, perjury, or abuse of process;

3. Refer Mr. Robinson to the appropriate disciplinary authority for investigation of ethical violations arising from conflicted representation, misuse of privileged information, and perjured filings;

4. **Impose a modest monetary sanction on Mr. Robinson—**not payable to Plaintiff, but to a neutral public interest organization such as the Advancement Project, the NAACP Legal Defense Fund, or Legal Aid DC, in furtherance of justice and deterrence; and

5. Grant such other and further relief as the Court deems just, necessary, and appropriate.

The record is compromised. The process has been weaponized. The Court has the power—and the obligation—to set it right.

March 27, 2025

Respectfully submitted,

*[signature]*

Brent Kideckel
Pro Se Plaintiff