**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRENT KIDECKEL | ) |
| Plaintiff | ) **CASE NO.:   1:24-cv-02907-CJN** |
| V. | ) |
| | ) |
| THE FOREIGN NATION OF CANADA,  et al. | ) |
| Defendants. | ) |
| _____ \_\_\_\_ | ) |

# PLAINTIFF'S NOTICE OF ONGOING PREJUDICE CAUSED BY UNREBUTTED ETHICAL BREACH

Plaintiff Brent Kideckel, appearing pro se, respectfully submits this Notice to place before the Court an indisputable record of institutional misconduct—engineered, directed, and maintained by **Lewis Baach Kaufmann Middlemiss PLLC ("LBKM")**, with the complicity of co-counsel, to bury this case in unethical filings, fraudulent process, and procedural ambiguity. What makes this misconduct so uniquely egregious is not just that it occurred—but that it was deliberately weaponized against a pro se litigant who LBKM plainly believed would be unable to respond.

They were wrong.

LBKM's actions are not mere oversights or good-faith missteps. They represent a systematic, strategic assault on the rights of a self-represented party, calculated to overwhelm, mislead, and erode the integrity of this Court's docket while evading accountability under cover of prestige.



**RECEIVED**

APR 8 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## I. LBKM'S GENERAL COUNSEL LED THE FRAUD—AND DID SO KNOWING PLAINTIFF WAS PRO SE

The architect of this misconduct is not an associate. It is Jeffrey Robinson, General Counsel of LBKM—someone whose institutional role is to enforce conflicts checks, safeguard ethical compliance, and uphold the integrity of the firm. Robinson instead became the very source of ethical collapse by entering this case representing both David Kideckel and Aram Simovonian, despite their adverse interests.

Robinson did this knowingly, and more importantly, while aware Plaintiff was proceeding pro se. It was not a close call. It was a power play. He saw an unrepresented party, assumed he would not be challenged, and used that perceived vulnerability to violate core duties of loyalty, disclosure, and fairness.

The failure was not accidental—it was predatory. It was an abuse of asymmetry, exploiting the very fact that Plaintiff had no lawyer.

## II. LBKM'S RESPONSE TO BEING CAUGHT WAS SMEAR, DISTRACTION, AND RETALIATION—NOT LAW

When Plaintiff filed a disqualification motion supported by factual evidence and binding authority (*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977)), LBKM did not respond with a legal brief. It did not cite a single case. It did not argue that Robinson's dual representation was defensible.

Instead, LBKM filed a declaration from Robinson that:

- Attacked Plaintiff personally;

- Referenced Plaintiff's ex-husband to suggest he must have had help drafting his filings;

- And improperly attempted to tie Robinson's former client, Aram Simovonian, to perjury —without any procedural basis under Rule 11 or otherwise.

It was not a legal defense. It was a smear campaign, built on innuendo and elitist contempt for a litigant who had the audacity to challenge misconduct from a white-shoe firm.

The declaration remains orphaned—never adopted, never certified, never defended. It is not advocacy. It is retaliation to Plaintiff and his former client. The General Counsel of LBKM filed an unauthorized declaration that is now orphaned. Just another example of his contempt for this Court.

## III. PLAINTIFF HAS ALLEGED PERJURY BY ARAM SIMOVONIAN IN TWO COUNTRIES—AND NO ONE HAS DENIED IT

Plaintiff has alleged—under oath and with specificity—that Defendant Aram Simovonian submitted false statements under penalty of perjury in both Canada and the United States. These falsehoods were used to procure judicial relief, effect service, and influence court decisions under fraudulent pretenses.

These allegations are not generalized. They are precise, documented, and filed on the record.

And yet, no denial has ever been filed.
No rebuttal.
No motion to strike.
No sworn declaration.

Why? Because they're true—and because the defense has calculated that ignoring a pro se litigant's claims is easier than answering them.

If Simovonian had nothing to hide, he would welcome discovery. He would demand cross-examination. He would submit a sworn response. But instead, he has chosen silence—because the truth is too dangerous to confront.

## IV. GEORGE BREEN HAS REFUSED TO ADOPT TAINTED FILINGS—BUT THE RECORD REMAINS CONTAMINATED

George Breen now represents Aram Simovonian. Unlike his predecessor, he has not adopted Robinson's declaration or the 650-page motion to dismiss.

That restraint should be acknowledged. But it does not solve the problem.

Breen has not sought to strike the tainted filings.
He has not moved to clarify or correct the record.
He has not addressed the conflict.

Ethical silence is better than unethical advocacy—but silence still leaves the record dirty. And it leaves Plaintiff bearing the burden of cleaning it up.


## V. THE 650-PAGE MOTION TO DISMISS IS A PROCEDURAL CLUB—NOT A LEGAL ARGUMENT, AND LBKM NEVER BOTHERED TO SERVE CHAMBERS A COPY BECAUSE  IT WAS TOO LARGE

Perhaps the most egregious example of bad faith was LBKM's filing of a 650-page motion to dismiss—a filing made during the period of dual representation, so procedurally defective and ethically suspect that no current counsel will touch it.

It is a kitchen-sink motion, packed with bloated argument and irrelevant content, serving no legitimate legal purpose other than to drown a pro se litigant under volume and create the illusion of legal weight through length.

But even worse—LBKM didn't bother to provide chambers with a courtesy copy.

Plaintiff, a pro se party with no institutional resources, printed and mailed a 100+ page courtesy copy of his own motion to chambers.
LBKM, a full-service litigation firm, couldn't even be bothered to send over the filing they expected the Court to read.

That is not diligence. That is contempt.

It is contempt for the Court's time.
Contempt for Plaintiff's right to meaningful access.
Contempt for the rules of fairness in litigation.

This is how LBKM practices law when it believes the opposing party has no voice.

## VI. PHILLIPS LYTLE QUIETLY REPLACED COUNSEL—BUT NEVER CONFRONTED THE FRAUD

Phillips Lytle LLP, counsel for the City of Toronto, replaced partner Christopher Barraza with an associate after Plaintiff raised serious allegations of fraud and misconduct. But the firm never explained the substitution. It never withdrew. It never moved to strike or clarify its role.

It simply retreated—quietly, strategically, and without accountability.

This is not ethical distancing. This is cowardice disguised as neutrality, hiding behind the unconstitutional immunity they claim to be entitled to.

## VII. JEFFREY ROBINSON STILL REFUSES TO FULLY WITHDRAW—BECAUSE HE GOT CAUGHT AND WON'T FACE THE CONSEQUENCES

Robinson remains listed on the docket. He has never fully withdrawn from the case. He has not corrected the record. He has not disavowed the tainted filings. He remains—lurking behind the scenes, unwilling to take responsibility for the ethical crisis he created.

This is not neglect. It is deliberate defiance. It is the behavior of a lawyer who believes he is above consequences because of where he works and who he knows.

Robinson got caught—and instead of stepping back, he is trying to outlast the consequences.

This Court must immediately Disqualify Jeffrey Robinson, refer LBKM to the bar, and impose appropriate sanctions payable to charity to restore the integrity of the proceedings LBKM set ablaze.

## VIII. LBKM'S STRATEGY HAS BEEN TO ABUSE A PRO SE LITIGANT—AND IT MUST END HERE

What makes this all so deeply offensive is not just the misconduct—it's that it was tailored to target a pro se litigant. LBKM thought they could get away with it. They assumed Plaintiff would be confused, disorganized, or too intimidated to fight back.

But Plaintiff fought back.
He did the research.
He cited the law.
He brought the truth forward—alone.


## IX. PLAINTIFF HAS SERVED LITIGATION HOLDS—AND IF LBKM ACTED WITH INTENT, THEY ARE NO LONGER JUST CONFLICTED, BUT CO-CONSPIRATORS

Plaintiff has served formal litigation hold notices to multiple defense firms, including LBKM, Epstein Becker, and Phillips Lytle. These notices made clear that parties and counsel are under a duty to preserve all communications, documents, drafts, billing records, and metadata relevant to the conduct at issue in this litigation—including but not limited to:

- Communications involving dual representation;

- Knowledge of or coordination regarding fraudulent affidavits;

- Internal awareness of perjury or falsified declarations;

- Any effort to mislead U.S. or Canadian courts.


Plaintiff is committed to uncovering the truth—and discovery will reveal whether LBKM's participation was limited to a conflict of interest, or whether it rose to something far more serious: knowing involvement in a coordinated effort to defraud this Court and obstruct justice.

If discovery shows that LBKM acted with intent, knowledge, or willful blindness—then it is not merely a conflicted law firm. It is a participant in the conspiracy, and it must be held accountable as such.

LBKM's institutional status does not shield it from liability. If it crossed the line from advocate to actor, the line must be redrawn by this Court—and enforced through expanded claims, revised pleadings, and the full measure of civil accountability.

# X. ARAM SIMOVONIAN STILL REPRESENTS DAVID KIDECKEL IN CANADA—AND BREEN'S DENIAL OF A CONFLICT DEFIES CONTROLLING LAW

To this day, Defendant Aram Simovonian continues to represent Defendant David Kideckel in the related Ontario proceedings and continues to attempt to secure default judgement by way of a a fraudulent affidavit that doesn't even comport with international law—a fact that is not speculative but confirmed by filings, sworn declarations, and public record. While Simovonian appears as a party in the U.S. litigation, he simultaneously serves as legal counsel for his co-defendant in Canada.

This is not merely an appearance of impropriety. It is a textbook, ongoing conflict of interest.

And yet, George Breen, who now represents Simovonian in this Court, has taken the position that this is not a conflict.

That assertion is flatly wrong.

"An attorney may not represent one client in a matter and simultaneously represent another client whose interests are directly adverse in a substantially related matter."
— *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976)

"The simultaneous representation of clients with differing interests... even in unrelated matters, raises an irrebuttable presumption of conflict."
— *United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983)

"Even if a lawyer is not directly adverse to a client, the lawyer's duty of loyalty may be compromised where the lawyer is advocating for someone who controls or directs the litigation interests of another party."
— *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987)

Here, Simovonian is not just advocating for a co-defendant—he is the legal representative of that co-defendant in overlapping litigation. Their interests are not merely related—they are entangled, and Simovonian is personally invested in insulating David Kideckel from liability, as doing so also insulates himself.

For Breen to deny this is a conflict is not just legally indefensible—it is dangerous.

This Court is now asked to accept that a defendant can represent his co-defendant in parallel litigation, while also defending himself here through separate counsel, and that somehow no conflict arises. That is a proposition unsupported by any rule, precedent, or principle of ethics.

Until this conflict is resolved, Plaintiff remains procedurally disadvantaged. And until Breen acknowledges what the law already makes clear, every motion, filing, and strategy on behalf of Aram Simovonian is tainted by divided loyalty and ethical compromise.

# XI. ROBINSON'S REFERENCE TO PLAINTIFF'S EX-HUSBAND WAS A BASELESS SMEAR—MADE TO DEFLECT FROM HIS OWN ETHICAL COLLAPSE

Among the most revealing indicators of how rattled Jeffrey Robinson was by Plaintiff's disqualification motion is buried not in his legal reasoning—because there was none—but in his wholly irrelevant reference to Plaintiff's ex-husband.

In the document submitted by LBKM in purported opposition to disqualification (a declaration, not a memorandum of law), Robinson referenced Plaintiff's prior relationship in an effort to insinuate that Plaintiff could not have possibly prepared his filings without outside help. He offered no evidence, no affidavit, no explanation—just the thin suggestion that someone else must have done the work.

This was not advocacy. It was a projection—Robinson projecting his disbelief that someone without a prestigious legal pedigree could catch him in such a blatant, disqualifying conflict of interest.

But what Robinson refuses to accept—and what the record makes undeniable—is that Plaintiff did uncover it. Alone. Without assistance. Without resources. Without institutional backing.

That reality clearly unsettled Robinson, who responded not with law or fact, but with personal insinuation, character smears, and an embarrassingly misplaced attack that has no place in a federal court filing.

The truth is simple: the conflict was obvious to anyone who bothered to look. The reason no one else raised it is not because it was invisible—it's because no one else had the courage or interest to expose it.

And that is what Robinson, in all his institutional privilege, cannot admit. That he—General Counsel of a white-shoe law firm—was outmatched, outmaneuvered, and exposed by a pro se litigant armed only with facts, procedural rules, and integrity.

His reference to Plaintiff's ex-husband says nothing about Plaintiff. It says everything about Robinson.

# CONCLUSION

What emerges from the record is not a close question. It is not a disagreement about tactics, strategy, or interpretation of the rules. It is a sustained and coordinated pattern of abuse, committed by elite law firms who viewed this litigation not as a search for the truth, but as a battlefield where institutional power could be used to bully, drown, and silence a pro se litigant. From LBKM's deliberate conflict of interest—engineered and executed by its own General Counsel—to the fraudulent affidavits, retaliatory declarations, orphaned filings, and kitchen-sink motion designed to overwhelm rather than persuade, this case has been hijacked by attorneys who believed their prestige placed them above ethics. Robinson's refusal to fully withdraw, Simovonian's undisputed dual roles as party and counsel, Breen's tactical silence, Phillips Lytle's strategic retreat, and the universal refusal to correct the poisoned record all tell the same story: fraud on this Court was not a bug in this case—it was the feature. It was the plan.

And yet, despite that plan, Plaintiff uncovered it all—without counsel, without access, and without institutional protection. Plaintiff has litigated in good faith, complied with the rules, served litigation holds, and warned all involved that discovery will reveal who acted knowingly and with intent. If it is shown that LBKM's actions were not just unethical, but coordinated with or for the benefit of defendants, then Plaintiff reserves the right to amend the complaint and name them as what they will have clearly become: co-conspirators.

Plaintiff has the utmost respect for this Court, its authority, and the process of adjudication. But respect for the Court must also include speaking plainly when the process has been hijacked by lawyers abusing their role. This Court has before it not merely a set of flawed filings, but a test of whether truth and fairness are still available to litigants who do not come armed with firms and titles. Plaintiff stands alone—but the facts are with him.

Dated: April 7, 2025

Respectfully submitted,

Brent Kideckel
Plaintiff, Pro Se