**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRENT KIDECKEL,<br><br>                   Plaintiff,<br><br>     v.<br><br>THE FOREIGN NATION OF CANADA, *et al.*,<br><br>                   Defendants. | No. 1:24-cv-02907-CJN |

**DEFENDANT DAHLIA SAIBIL'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

FACTUAL BACKGROUND ............................................................................................. 1

I.    This Action Should be Dismissed for Lack of Subject Matter Jurisdiction ........... 3

II.   This Court Lacks Personal Jurisdiction Over Ms. Saibil ........................................ 5

III.  Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted .................... 8

      A.  The Conflict of Law Analysis Favors Canadian Law ....................................... 9
      B.  Plaintiff Fails to State a Claim for False Imprisonment ................................. 12
      C.  Plaintiff Fails to State a Claim for Intrusion Upon Seclusion ........................ 13
      D.  Plaintiff Fails to State a Claim for Libel and Slander .................................... 15
      E.  Plaintiff Fails to State a Claim for Malicious/False Prosecution .................... 16
      F.  Plaintiff Fails to State a Claim for Fraud ...................................................... 16
      G.  Plaintiff Fails to State a Claim for Telecommunications Harassment ............ 19
      H.  Plaintiff Fails to State a Claim for Complicity ............................................... 19
      I.  Plaintiff Fails to State a Claim for Civil Conspiracy ...................................... 20
      J.  Plaintiff Fails to State a Claim for Abuse of Process...................................... 21
      K.  Plaintiff Fails to State a Claim for Aiding and Abetting ............................... 23
      L.  Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress
          ................................................................................................................. 23

III.  CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Global Sols., Inc. v. MVM, Inc.*,
    552 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................8

*Ashland Hosp. Corp. v. Int'l Broth. Of Elec. Workers Locals 575*,
    807 F.Supp.2d 633 (E.D. Ky. 2011) ..........................................................19

*Benson v. McCarthy Tetrault LLP*,
    2023 ONSC 7527 (Can. Ont. Sup. C.J.) ....................................................23

*Boutis v. The Corporation of Norfolk County et al.*,
    2025 ONSC 542 (Can. Ont. Sup. C.J.) .......................................................13

*Burnett v. Al Baraka Inv. and Dev't Corp.*,
    274 F. Supp. 2d 86 (D.D.C. 2003) ......................................................10, 23

*Caplan v. Atlas*,
    2021 ONSC 670 (Can. Ont. Sup. C.J.) ......................................................19

*Colistro v. Tbaytel*,
    2019 ONCA 197 (Can. Ont. C.A.)..............................................................24

*Corporacion Venezolana de Formento v. Vintero Sales Corp.*,
    629 F.2d 786 (2d Cir. 1980).........................................................................5

*Doe v. Safeway, Inc.*,
    88 A.3d 131 (D.C. 2014) ............................................................................13

*Dunseth v. Eli Lilly and Co.*,
    404 F.Supp.2d 97 (D.D.C. 2005) ...............................................................12

*Econ. Research Servs., Inc. v. Resolution Econ., LLC*,
    208 F.Supp.3d 219 (D.D.C. 2016)..............................................................23

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ...................................................................15

*Ferri v. Root*,
    2006 CanLII 5304 (Can. Ont. Sup. C.J.) ...................................................16

iii

*Filler Depot v. Copart Canada Inc.*,
   2024 ONSC 466 (Can. Ont. Sup. C. J.) ............................................................17, 18

*Findlay v. CitiMortgage, Inc.*,
   813 F.Supp.2d 108 (D.D.C. 2011) ...............................................................................21

*Fritz v. Islamic Republic of Iran*,
   320 F. Supp. 3d 48 (D.D.C. 2018) ...............................................................................10

*Garay v. Liriano*,
   839 F.Supp.2d 138 (D.D.C. 2012) ...............................................................................14

*Gasperini v. Ctr. For Humanities, Inc.*,
   518 U.S. 415 (1996) ......................................................................................................17

*Globe POS Systems v. Visual Information Products Inc.*,
   2022 ONSC 5932 (Can. Ont. Sup. C.J.) .......................................................................22

*GTE News Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.D.C. 2000) ....................................................................................6, 7

*Hamilton v. Osborne*,
   2009 ONCA 684 (Can. Ont. C.A.)................................................................................18

*Harris v. GlaxoSmithKline Inc.*,
   2010 ONCA 872 (Can. Ont. C.A.)................................................................................22

*Hneihen v. Centre for Addiction and Mental Health*,
   2014 ONSC 55 (Can. Ont. Sup. C.J.) ..........................................................................13

*Hosseini v. Gharagozloo*,
   2024 ONSC 1106 (Can. Ont. Sup. C.J.) .......................................................................15

*HTC Corp. v. IPCom GmbH & Co., KG*,
   No. CV 08-1897 (RMC), 2010 WL 11719073 (D.D.C. Nov. 5, 2010) .......................12

*Imholte v. US Bank, Nat'l Assoc.*,
   No. 19-1627, 2020 WL 362790 (D. Minn. Jan. 22, 2020).........................................14

*Jessup v. Progressive Funding*,
   35 F. Supp. 3d 25 (D.D.C. 2014) ..................................................................................9

*Jones v. Tsige*,
   2012 ONCA 32 (Can. Ont. C.A.)..................................................................................14

*Long v. Sears Roebuck & Co.*,
   877 F. Supp. 8 (D.D.C. 1995) .......................................................................................11

*Lyles v. Micenko*,
    404 F.Supp.2d 182 (D.D.C. 2005) ........................................................................24

*Maynard v. Melton*,
    No. 17-02612 2021 WL 6845008 (D.D.C. Apr. 7, 2021) ........................................17

*Meng v. Schwartz*,
    305 F.Supp.2d 49 (D.D.C. 2004) ............................................................................4

*Merrifield v. Canada (AG)*,
    2019 ONCA 205 (Can. Ont. C.A.) ........................................................................19

*Moore v. Motz*,
    437 F. Supp. 2d 88 (D.D.C. 2006) ..........................................................................9

*United States ex rel. Morsell v. Symantec Corp.*,
    130 F. Supp. 3d 106 (D.D.C. 2015) ........................................................................8

*N. Amer. Catholic Edu. Programming Found., Inc. v. Womble, Caryle, Sandridge
    & Rice, PLLC*,
    887 F.Supp.2d 78 (D.D.C. 2012) ..........................................................................20

*Nadar v. Democratic Nat'l Committee*,
    567 F.3d 692 (D.C. Cir. 2009) ..............................................................................21

*Nelles v. Ontario*,
    1989 2 S.C.R. 170 (Can.) ......................................................................................16

*Nwosu v. Four Seasons Hotels Ltd.*,
    No. 24-CV-00025 (CRC), 2024 WL 4332605 (D.D.C. Sept. 27, 2024) ..................5

*Ontario Consumers Home Services v. Enercare Inc.*,
    2014 ONSC 4154 (Can. Ont. C.A.) ..................................................................20, 21

*Owsianik v. Equifax Canada Co.*,
    2022 ONCA 813 (Can. Ont. C.A.) ........................................................................14

*Paavola v. United States*,
    459 F.Supp.3d 21 (D.D.C. 2020) ..........................................................................12

*Estate of Parsons v. Palestinian Authority*,
    651 F.3d 118 (D.C. Cir. 2011) ..............................................................................20

*Paulus v. Fleury*,
    2018 ONCA 1072 (Can. Ont. C.A.) ......................................................................18

*Pittman v. Assurance Trust c/o Pathways to Housing*,
    No. 1:24-CV-02985, 2025 WL 471219 (D.D.C. Feb. 11, 2025) ..............................3

*Raflo v. U.S.*,
    157 F. Supp. 2d 1 (D.D.C. 2001) ...................................................................11

*Rockwell Capital Partners, Inc. v. CD Int'l Enterprises, Inc.*,
    311 F.Supp.3d 52 (D.D.C. 2018) ..............................................................22, 23

*Saddeh v. Farouki*,
    107 F.3d 52 (D.C. Cir. 1997) .......................................................................5

*Sibley v. Bryer*,
    456 F.Supp.2d 43 (D.D.C. 2006) ...................................................................3

*Smith v. United States*,
    121 F.Supp.3d 112 (D.D.C. 2015) ................................................................24

*Stack v. Lobo*,
    903 F. Supp. 1361 (N.D. Cal 1995) .............................................................17

*Stovell v. James*,
    810 F.Supp.2d 237 (D.D.C. 2011) ................................................................18

*Tagger v. Strauss Group Ltd.*,
    951 F.3d 124 (2d Cir. 2020) .........................................................................5

*Turner v. Abbott*,
    53 F. Supp. 3d 61 (D.D.C. 2014) ..............................................................6, 7

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) .......................................................................................4

*Wach v. Byrne, Goldenberg & Hamilton, PLLC*,
    910 F.Supp.2d 162 (D.D.C. 2012) .................................................................5

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
    893 F. Supp. 2d 258 (D.D.C. 2012) ..............................................................6

*WIC Premium Ltd. v. General Instrument Corp.*,
    1999 ABQB 804 (Can. Alta. Q.B.) ..........................................................11, 23

## Statutes

28 U.S.C. § 1330(a) .............................................................................................3

28 U.S.C. §§ 1330(a), 1331, and 1332.................................................................3

28 U.S.C. § 1391(b)(1) and (2) ...........................................................................8

28 U.S.C. § 1391(b)(3) .........................................................................................8

D.C. Code § 13-423(a) .......................................................................................... 6

Fla. Stat. ch. 934.03 ............................................................................................. 5

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ............................................................. 17, 18

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 1, 5

Federal Rule of Civil Procedure 12(b)(2) ........................................................ 1, 5

Federal Rule of Civil Procedure 12(b)(3) ........................................................ 1, 8

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 1, 3, 8

Plaintiff Brent Kideckel ("Plaintiff") brings this case to address his perceived grievances with the Canadian legal system and various Canadian individuals, including movant Dahlia Saibil, a lawyer for the Attorney General of the Province of Ontario, Canada and the wife of Defendant David Kideckel ("D. Kideckel"), Plaintiff's estranged brother. Plaintiff's suit is not diverse in nature, does not raise a federal question, and does not belong before this Court. Ms. Saibil, a Canadian citizen and resident of Ontario, whose alleged conduct occurred in Ontario, Canada, should not be required to litigate here. The Court's lack of subject matter over the claims and personal jurisdiction over Ms. Saibil are dispositive, requiring her dismissal from this matter. The Court need not address the substance of Plaintiff's meritless claims in order to grant Ms. Saibil's motion.

However, should the Court decide to address the substance of Plaintiff's claims, it is clear that Plaintiff's sparse allegations against Ms. Saibil fail to allege that she has done anything even remotely actionable. Ms. Saibil has never met Plaintiff, and Plaintiff has not alleged that she responded to his threats and harassment, or otherwise communicated with him. Plaintiff nevertheless alleges—without basis, much less any factual assertions—that Ms. Saibil colluded with her husband in Canada to create multiple phone numbers, which they purportedly used to send themselves threatening messages while posing as Plaintiff. His sparse allegations, devoid of fact, fail to state any claim upon which relief can be granted.

Plaintiff's Complaint is a patchwork of conclusory allegations and inapplicable law, and it should be dismissed outright. Accordingly, Ms. Saibil respectfully brings this motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), (2), and (6).

## FACTUAL BACKGROUND

Plaintiff's Complaint arises out of a long-running feud with D. Kideckel. Plaintiff alleges

1

that D. Kideckel engaged in a "harassment campaign" against Plaintiff and filed a false police report against Plaintiff in Ontario, Canada. Compl. ¶¶ 2, 5. Though he has never met her, Plaintiff alleges that Ms. Saibil, D. Kideckel's wife, was instrumental in this endeavor. *Id.* ¶¶ 4, 5, 57, 73, 186. However, despite the Complaint's length, details of Ms. Saibil's involvement are scarce, and the allegations do not demonstrate any actionable conduct by her.

The Complaint alleges that D. Kideckel obtained Canadian phone numbers, sent himself threatening text messages from those numbers, and claimed that they were from Plaintiff. *Id.* ¶¶ 5, 6, 74. Plaintiff then concludes that D. Kideckel and Ms. Saibil used those "fraudulently created text messages misappropriating Plaintiff's identity to secure false arrest warrants against Plaintiff" in Toronto, although he never alleges how Ms. Saibil was involved. *Id.* ¶¶ 4-5, 7, 73, 108; *see also id.* ¶¶ 4, 6, 68-70, 74, 78-79, 110 (alleging only D. Kideckel created and sent the alleged text messages). The Complaint assumes, without providing any factual basis, that Ms. Saibil assisted in those actions and "misused public resources" to obtain the warrants (*id.* ¶ 7)—namely, that Ms. Saibil abused her position as a Canadian government attorney to carry out this alleged offense (*id.* ¶¶ 4, 44). Plaintiff allegedly filed a report with the Province of Ontario against Ms. Saibil. *Id.* ¶ 128. The Province of Ontario refused to take any action against her. *Id.*

The Complaint also summarily and incorrectly alleges that D. Kideckel and Ms. Saibil commenced a lawsuit against Plaintiff in Ontario, Canada, in February 2023. *Id.* ¶ 206. The lawsuit, which details Plaintiff's pattern of sending harassing messages to D. Kideckel, D. Kideckel's colleagues and professional contacts, Ms. Saibil, and D. Kideckel's minor daughter, was filed only by D. Kideckel and not Ms. Saibil.[1] *See* ECF 48-2. Plaintiff, however, commenced

---

[1] The Court may take judicial notice of D. Kideckel's Canadian proceeding in resolving the instant

2

a lawsuit against Ms. Saibil and others in the same Ontario court. *See id.* at ¶¶ 11-12. That suit names many of the same defendants and asserts nearly identical causes of action as the instant proceeding. *Compare id.* at 89-159 (Plaintiff's complaint in his Canadian case) *with* Compl. at 1, 36-56.

## I.    This Action Should be Dismissed for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is lacking in this action, which involves common law claims brought by Plaintiff, a Canadian citizen, against various Canadian defendants, including Ms. Saibil. Subject matter jurisdiction of the federal district courts is limited, per 28 U.S.C. §§ 1330(a), 1331, and 1332, to nonjury civil actions against foreign states "not entitled to immunity," "federal questions," and claims exceeding $75,000 between parties of diverse citizenship. *See generally Pittman v. Assurance Trust c/o Pathways to Housing*, No. 1:24-CV-02985, 2025 WL 471219, at *2 (D.D.C. Feb. 11, 2025) (denying *pro se* plaintiff's complaint for lack of subject matter jurisdiction). This suit, and Plaintiff's claims, do not fall into any of those categories.

*First,* the Complaint's assertion that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1330(a) (Compl. ¶ 25) is incorrect. That section provides that district courts shall have original jurisdiction "of any nonjury civil action against a foreign state" where the foreign state "is not entitled to immunity." Those criteria are plainly not met in the instant action. Plaintiff has explicitly requested a jury trial in this proceeding. Compl. at 1; *see also* ECF 69 at 27 (Plaintiff's Cross-Motion to Supplemental Complaint and Memorandum in Opposition to Defendant Aram Simovonian's Motion to Dismiss). Moreover, the foreign states and their instrumentalities that

---

Federal Rule of Civil Procedure 12(b)(6) motion because it is a public record from another proceeding. *Sibley v. Bryer*, 456 F.Supp.2d 43, 45 (D.D.C. 2006).

have been named as defendants in this action are entitled to sovereign immunity. Indeed, the City of Toronto has moved to dismiss on the basis of sovereign immunity, and Plaintiff has failed to refute its argument. ECF 25 at 11-14.[2]

*Second*, the Complaint does not pose any claims under federal law or contend the United States has violated his Constitutional rights. Rather, it erroneously argues that there is federal question jurisdiction because he "anticipates the Foreign Nation of Canada, its sub political [sic] divisions, and its employees, will assert a defense of immunity under the [Foreign Sovereign Immunities Act] on Plaintiff's pleading giving rise to The Federal Question aforementioned." Compl. ¶¶ 14, 18. Plaintiff's attempt to establish jurisdiction on this basis fails because "[f]ederal jurisdiction cannot be predicated on an actual anticipated defense." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). His reliance on a defendant's Foreign Sovereign Immunities Act ("FSIA") argument cannot serve as the basis for federal question jurisdiction.

*Third*, federal jurisdiction cannot rest upon diversity. Plaintiff, a Canadian citizen, brings claims against the Foreign Nation of Canada and its political subdivisions, Canadian citizens (including Ms. Saibil), and 15 John Does.[3] The law in the District of Columbia is clear that diversity jurisdiction is defeated where, as here, foreign parties are on both sides of the dispute.[4]

---

[2] Canada and the Province of Ontario, which would also be entitled to sovereign immunity, were voluntarily dismissed by Plaintiff from this proceeding. *See* ECF 43.

[3] Plaintiff does not mention these John Does throughout the Complaint except in paragraph 52, where he "reserves the right to substitute John Doe I with Canadian law firm Scalzi Caplan LLP if it is warranted and appropriate" pending the resolution of his Canadian case against the firm. Plaintiff's failure to plead the citizenship of the remaining John Does defeats diversity jurisdiction. *See Meng v. Schwartz*, 305 F.Supp.2d 49, 55-56 (D.D.C. 2004).

[4] The Complaint also names a single domestic party—the United States Citizenship and Immigration Services ("USCIS")—as a defendant. The inclusion of USCIS, which has since been dismissed from this proceeding (ECF 45), does not create diversity jurisdiction because Plaintiff

*See Nwosu v. Four Seasons Hotels Ltd.*, No. 24-CV-00025 (CRC), 2024 WL 4332605, at *4 (D.D.C. Sept. 27, 2024) ("[D]iversity jurisdiction does not apply to suits between noncitizens regardless of whether they reside in the United States."). That Plaintiff currently resides in California (*see* ECF 28 at 3), as either a temporary or permanent resident, does not alter this conclusion. *See Tagger v. Strauss Group Ltd.*, 951 F.3d 124, 126-27 (2d Cir. 2020) (a foreign citizen who is a permanent resident of the United States is "an alien for the purposes of diversity jurisdiction"); *Corporacion Venezolana de Formento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) ("the presence of aliens on two sides of a case destroys diversity jurisdiction").

    Because there is no subject matter jurisdiction over this proceeding, the matter should be dismissed pursuant to Rule 12(b)(1).

## II.    <u>This Court Lacks Personal Jurisdiction Over Ms. Saibil</u>

    Even if there was subject matter jurisdiction, the Complaint does not allege that Ms. Saibil, a resident of Toronto, in the Province of Ontario, Canada, took any actions in, maintains any contacts with, or otherwise purposefully availed herself of the benefits of the District of Columbia. Accordingly, she should be dismissed from this action for lack of personal jurisdiction pursuant to Rule 12(b)(2).

    To establish personal jurisdiction over a non-resident, courts in the District of Columbia

---

and every other defendant are nondiverse. *See Saddeh v. Farouki*, 107 F.3d 52, 61 (D.C. Cir. 1997) (28 U.S.C. § 1332 does not "create federal diversity jurisdiction over a lawsuit between an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens"); *Wach v. Byrne, Goldenberg & Hamilton, PLLC*, 910 F.Supp.2d 162, 166 (D.D.C. 2012) (where plaintiff was an alien and defendant was U.S. citizen, joinder of an alien defendant "would destroy the diversity jurisdiction . . . as the federal diversity statute . . . does not confer federal jurisdiction when aliens are aligned on opposing sides of a lawsuit").

engage in a two-part inquiry: first, "whether jurisdiction is applicable under the … long-arm statute" and second, "whether finding of jurisdiction satisfies the constitutional requirements of due process." *GTE News Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.D.C. 2000). The plaintiff bears the burden on both inquiries and must "establish[] a factual basis for the exercise of personal jurisdiction over the defendant" to avoid dismissal. *Turner v. Abbott*, 53 F. Supp. 3d 61, 65-66 (D.D.C. 2014). To successfully carry this burden, a plaintiff must make a *prima facie* showing of jurisdictional facts—allegations that "demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws." *Id.* at 66 (citing *Helmer v. Doletskaya*, 20 F. Supp. 2d 61, 66 (D.D.C. 2003)). Plaintiff utterly fails to carry this burden. The Complaint contains no allegations related to Ms. Saibil's contacts with the District of Columbia.

The District of Columbia's long-arm statute permits the exercise of jurisdiction over a nonresident defendant on several bases, including transacting business in or causing tortious injury in the District of Columbia. D.C. Code § 13-423(a). Here, the Complaint does not allege that Ms. Saibil cultivated any contacts with the District of Columbia. Rather, Plaintiff alleges that Ms. Saibil is a Canadian citizen who resides in Toronto, Province of Ontario, Canada (Compl. ¶¶ 44-45) and, notably, he suggests that Ms. Saibil acted at all times therein. *See id.* ¶ 4 (alleging Ms. Saibil conspired with her employer, the Attorney General of Ontario); *id.* ¶ 214 (alleging Ms. Saibil abused her role with the Attorney General's office); *id.* ¶¶ 5, 156, 176, 177, 214 (alleging Ms. Saibil filed a police report and engaged in malicious prosecution in Toronto); *id.* ¶¶ 7, 108 (alleging Ms. Saibil used Canadian phone numbers). Moreover, Plaintiff, a California resident, has not alleged that Ms. Saibil caused him injury in the District of Columbia or otherwise directed her actions toward the forum. ECF 28 at 3 (conceding Plaintiff resides in the Southern District of

California, "from where [he] has been traveling to the District monthly to prosecute this case").

Having failed to allege any contacts with the District of Columbia, much less any from which this

matter arises, Plaintiff fails to satisfy the statutory prong of the jurisdictional inquiry.

"Even when the literal terms of the long-arm statute have been satisfied" (here, they have

not), a plaintiff "must still show that the exercise of personal jurisdiction is within the permissible

bounds of the Due Process Clause." *GTE News Media Servs., Inc.*, 199 F.3d at 1347. Plaintiff also

fails in this endeavor. The Due Process inquiry "focuses on the reasonableness of pursuing the

litigation in the forum," and requires assurance that "the defendant's conduct and connection with

the forum 'are such that he should reasonably anticipate being hauled into court there.'" *Turner*,

53 F. Supp. 3d at 68 (quoting *Marshal v. Labor & Indus., State of Washington*, 89 F. Supp. 2d 4,

9 (D.D.C. 2000)). This inquiry requires a plaintiff to sufficiently allege and demonstrate "minimum

contacts between the defendant and the forum." *GTE News Media Servs., Inc.*, 199 F.3d 1347.

Here, the Complaint highlights Ms. Saibil's ties to Ontario (Compl. ¶¶ 4, 7, 44-45, 5, 108, 156,

176, 214) and does not allege any contacts between Ms. Saibil and the forum. No such contacts

exist. Plaintiff concedes that this case was filed in the District of Columbia because of his

misguided and erroneous conclusion that it is the appropriate venue for relief under the FSIA (ECF

28 at 3)—not because of any factual connection to the forum. Having failed to allege any contact

between Ms. Saibil and the District of Columbia, Plaintiff fails to satisfy the Due Process prong

of the jurisdictional inquiry.

Because Plaintiff has not and cannot carry his burden of making a *prima facie* showing of

the necessary jurisdictional facts, the Court lacks personal jurisdiction over Ms. Saibil. The

Complaint must be dismissed against her. *See, e.g.*, *Turner*, 53 F. Supp. 3d at 67-68.[5]

### III.     Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

The Court need not address the substance of Plaintiff's claims against Ms. Saibil, given its lack of subject matter jurisdiction and personal jurisdiction over Ms. Saibil. However, should the Court consider Plaintiff's claims, it is clear that the Complaint fails to state any claims against Ms. Saibil.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 117 (D.D.C. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's factual allegations 'must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'" *Symantec Corp.*, 130 F. Supp. 3d at 116-17 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "mere conclusory statements" are not enough

---

[5] Separately, this matter should also be dismissed for improper venue. Venue in the District of Columbia is improper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Plaintiff concedes that he does not reside here and because the Complaint does not allege that any events giving rise to this matter occurred here. *See* ECF 28 at 3 (Plaintiff resides in California and filed in the District of Columbia only because it is "the appropriate venue for the specific relief sought as aforementioned under the FSIA"). It is also improper pursuant to 28 U.S.C. § 1391(b)(3) because the Court lacks personal jurisdiction not only over Ms. Saibil, but the other defendants, as well. *See* ECF 25 at 7-8 (City of Toronto and Detective David Wilson move to dismiss for lack of personal jurisdiction); ECF 48-1 at 6-9 (Aram Simovonian moves to dismiss for lack of personal jurisdiction); ECF 23 at 1 n.1 ("The Complaint does not allege that D. Kideckel maintains minimum contacts with the forum or purposefully availed himself of the privilege of conducting activities within the forum, nor can it, as neither D. Kideckel nor this matter have any ties to the District of Columbia."). Therefore, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). *See also* ECF 18 at 9-10 (USCIS moves to dismiss for improper venue).

8

to establish a plausible claim, and "threadbare recitals of the elements of cause of action supported by" such statements are insufficient to withstand a motion to dismiss. *Symantec Corp.*, 130 F. Supp. 3d at 117 (quoting *Iqbal*, 556 U.S. at 678).

While Plaintiff is a *pro se* party whose pleading is held to a "less stringent standard[] than formal pleadings drafted by lawyers," he does not receive a "license to ignore the Federal Rules of Civil Procedure." *Jessup v. Progressive Funding,* 35 F. Supp. 3d 25, 31 (D.D.C. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "[T]he Court need not accept factual inferences suggested by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the complaint's legal conclusions." *Moore v. Motz,* 437 F. Supp. 2d 88, 90 (D.D.C. 2006).

As detailed below, and giving Plaintiff's pleading every possible benefit, the Complaint fails to state a single claim against Ms. Saibil, and the Court should dismiss her from this proceeding.[6]

## A.  *The Conflict of Law Analysis Favors Canadian Law*

Before delving into the claims themselves, the Court must first determine what law applies. Here, Canadian law governs Plaintiff's claims.[7]

---

[6] When opposing Aram Simovonian's Motion to Dismiss, Plaintiff cross-moved for leave to file a supplemental complaint. ECF 69. As the request was styled as a cross-motion directed to another defendant, it is procedurally unclear whether Plaintiff's new allegations are directed to Ms. Saibil. Even if they were, the proposed supplemental complaint is procedurally improper and does not remedy the jurisdictional defects of Plaintiff's claims. *See* ECF 82 at 10-11, 13-14. In light of these circumstances, and the fact that the Court has not granted Plaintiff leave to file the supplemental pleading, Ms. Saibil does not address the claims in the proposed supplemental complaint in the instant motion. Should the Court grant Plaintiff's request to file the supplemental complaint, Ms. Saibil reserves the right to address Plaintiff's new allegations.

[7] For the Court's ease of reference, the Canadian legal decisions and authority referenced herein

9

Various locales and their laws are implicated in this matter. Plaintiff, a Canadian citizen, claims that he resides in California but uses a New York P.O. Box in this litigation. ECF 23 at 3; Compl. at 57; *id.* ¶ 31 (asserting that he is "domiciled in the United States"). Ms. Saibil and her husband, D. Kideckel, live in and are alleged to have acted only in Canada. *Id.* ¶¶ 43-45. The Complaint mentions an alleged phone call that was received in Florida. *Id.* ¶¶ 88-90. The matter is pending before the District of Columbia, and the Complaint cites a collection of state and federal statutes and caselaw.[8] Plaintiff, however, provides no guidance as to what law this court should apply.

Treating this matter as one sounding in diversity (even though, as noted above, diversity jurisdiction is lacking), the Court follows the choice of law rules of the forum state—in this case, the combined "governmental interest" and "most significant relationship" approach applied by courts in the District of Columbia.[9] *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 89

---

are available on the docket at ECF 48-3 or attached hereto as Exhibit 1. Each legal decision is also publicly available on CanLII, the Canadian Legal Information Institute database, available at https://www.canlii.org/en/.

[8] In addition to citing the federal regulations and Supreme Court caselaw, Plaintiff cites for support for his causes of action New York's Penal Law (Counts I, II, V, VI, VII, VIII); New York's Civil Rights Law (Count IV), Criminal Procedure Law (Count VIII), and Civil Practice Law and Rules (Count XII); the Restatement of Law (Second) of Torts and The American Law Institute's 1977 Summary of Torts (Counts II, XVI); caselaw from the states of Georgia (Counts II, II), Illinois (Counts II, VII), Ohio (Count IV), Virginia (Count IV), New York (Counts V, VI, VIII, VIIII (*sic*), X, XI, XII, XV, XVI), Michigan (Count VI), Connecticut (Count VI), Maryland (Counts VI, XVI), Arizona (Count VII), California (Count VIIII (*sic*)), Louisiana (Count XVI), and Missouri (Count XVI); and federal caselaw from the Federal Bankruptcy Court for the Southern District of Texas (Count IV), the District of Colorado (Count IV), the Southern District of New York (Counts IV, V), the Eastern District of Pennsylvania (Count XIII), the District of Massachusetts (Count XIII), the District of Rhode Island (Count XIIII (*sic*)), the Eighth Circuit (Count XII), Fifth Circuit (Counts XIIII (*sic*), XVI), Ninth Circuit (Count XIIII (*sic*)), and the Tenth Circuit (Count XIIII (*sic*)).

[9] Before reaching these tests, the Court must determine whether there is a genuine conflict between

(D.D.C. 2018). Under the governmental interest analysis, the Court evaluates "the governmental policies underlying the applicable laws" and determines "which state's policy would be most advanced by having its laws apply to the facts of this case." *Raflo v. U.S.*, 157 F. Supp. 2d 1, 5 (D.D.C. 2001). Under the "most significant relationship test," the Court weighs four factors: "1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 4) the place where the relationship is centered." *Id.* at 5.

Here, despite the many of sources of law invoked in the Complaint, both analyses point to the application of Canadian law. As an initial matter, Canada has an undeniable interest in claims brought by a Canadian plaintiff against a number of Canadian defendants (including Ms. Saibil) involving acts that allegedly were performed in Canada and, notably, involving Canadian law enforcement and its courts. Compl. ¶¶ 100-128, 135, 139-149. Moreover, the balance of the

---

the laws involved. Such a conflict exists here. For example, the civil concept of "aiding and abetting" (Count XIII) applied by courts in the District of Columbia is recognized only as a criminal concept under Canadian law. *Compare Burnett v. Al Baraka Inv. and Dev't Corp.*, 274 F. Supp. 2d 86, 104-05 (D.D.C. 2003) (describing elements of aiding and abetting as means of establishing vicarious civil liability), *with WIC Premium Ltd. v. General Instrument Corp.*, 1999 ABQB 804 (Can. Alta. Q.B.) (aiding and abetting is criminal concept not recognized by Canada as a claim in law). Plaintiff does not dispute this, as he justifies having brought this action in addition to his proceeding in Toronto because "Canadian law does not provide for equitable relief." Compl. ¶ 140. (As addressed below, causes of action are available in Canada but Plaintiff's claims are not meritorious.) However, even if a "false conflict" exists—if the laws at issue are the same or produce the same result—Canadian law is still applicable to this matter. In the event of a false conflict, "the Court may apply the law of the state whose policy would be advanced by application of its laws." *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995). The District of Columbia has no interest in this matter, and its policy is unaffected by the progression of this proceeding. In fact, Plaintiff has conceded that there is no nexus with the forum state. ECF 28 at 3. By contrast, because the parties involved are Canadian and the alleged acts took place there, Canadian policy would be furthered by application of its law. *See, e.g., Sears*, 877 F. Supp. at 11-12 (where no true conflict exists, applying law of state where alleged conduct occurred and where defendants do business).

11

"significant relationship" factors tips decidedly in favor of Canada. The alleged conduct causing the injury occurred in Canada: Ms. Saibil and her husband, D. Kideckel, are residents of Canada and the Complaint alleges that they performed the alleged tortious activity in Canada. Compl. ¶¶ 150-193, 203-218, 225-230. The domicile, nationality, and/or location of most of the parties is also Canada; both Ms. Saibil and Plaintiff are Canadian citizens, and the majority of the defendants (including Ms. Saibil) reside in or are located in Ontario. *Id.* ¶¶ 33-52. Lastly, the parties' relationship is centered in Toronto, as Plaintiff admits that he "brings this action . . . for the root issue of having false arrest warrants issued in Toronto" and does not allege Ms. Saibil took any action outside of Toronto. *Id.* ¶¶ 1, 4, 7, 57-58, 108, 127-128, 139-193, 203-218, 225-230.[10]

Accordingly, Plaintiff's claims against Ms. Saibil will be analyzed under Canadian law in this memorandum.[11]

**B.  *Plaintiff Fails to State a Claim for False Imprisonment***

Plaintiff alleges that by purportedly filing a police report to the Toronto Police, resulting

---

[10] It is unclear where the alleged injuries occurred. As Plaintiff travels often, it is unclear whether he felt his injuries in California, New York, Florida, or another state. *See* Compl. at 57 (listing a New York P.O. Box); ¶ 31 (asserting that Plaintiff is "domiciled in the United States"); ¶ 88 (recording the phone call in Florida); ECF 28 at 3 (asserting Plaintiff resides in California and travels to Washington, D.C. for this litigation). Where, as here, claims are based on actions that occurred elsewhere "it is not the place of the injury that necessarily determines which law is to be applied because that location may be a mere 'fortuity' in light of the fact that the relationship of the parties to the litigation is centered elsewhere." *Paavola v. United States*, 459 F.Supp.3d 21, 31 (D.D.C. 2020) (internal quotation and citation omitted); *see also HTC Corp. v. IPCom GmbH & Co., KG*, No. CV 08-1897 (RMC), 2010 WL 11719073, at *3 (D.D.C. Nov. 5, 2010) (applying German law because the key events and relationship was centered in Germany); *Dunseth v. Eli Lilly and Co.*, 404 F.Supp.2d 97, 102 (D.D.C. 2005) (holding Illinois law should be applied because the injury, conduct causing the injury, and relationship of the parties was in Illinois).

[11] As noted below, Plaintiff's claims against Ms. Saibil would also fail if analyzed under the law of the District of Columbia.

in an arrest warrant for Plaintiff, Ms. Saibil has "acted willingly to restrain [him]," making him "effectively a prisoner and with having outstanding arrest warrants is unable to leave the United States." Compl. ¶¶ 150-152. Under Canadian law, the elements of the tort of false imprisonment are as follows: (i) the plaintiff has been totally deprived of their liberty; (ii) the deprivation was against the plaintiff's will; and (iii) the deprivation was directly caused by the defendant. *See Hneihen v. Centre for Addiction and Mental Health*, 2014 ONSC 55 (Can. Ont. Sup. C.J.), at ¶ 77. Even if Ms. Saibil filed the police report, Plaintiff's claim fails, as he is not "totally deprived" of his liberty; he can travel freely throughout what he describes as "the greatest country in the world," (Compl. ¶ 151), and he can still return to Canada to address his outstanding arrest warrant.[12]

### C. *Plaintiff Fails to State a Claim for Intrusion Upon Seclusion*

Plaintiff alleges that Ms. Saibil intruded upon his seclusion "in the most offensive way possible; malicious prosecution." Compl. ¶ 156. Under Canadian law, the elements of the tort of intrusion upon seclusion are: (i) the defendant must have invaded or intruded upon the plaintiff's private affairs or concerns, without lawful excuse; (ii) the conduct which constitutes the intrusion or invasion must have been done intentionally or recklessly; and (iii) a reasonable person would

---

[12] Plaintiff's claim for false imprisonment also fails under District of Columbia law, which requires a plaintiff to establish "(1) the detention or restraint of one against his will and (2) the unlawfulness of the detention or restraint." *Doe v. Safeway, Inc.*, 88 A.3d 131, 132 (D.C. 2014). Plaintiff concludes that he is "effectively a prisoner," but has not been detained or restrained, as he concedes that he can freely travel within the United States. Compl. ¶ 151. Moreover, "[w]hen an individual or private entity that called the police regarding a person is sued for false imprisonment, the making of the call is 'not enough to sustain a claim of false arrest so long as the decision whether to make the arrest remains with the police officer and is without the persuasion or influence of the accuser.'" *Id.* (internal citation omitted). Here, Plaintiff alleges, in conclusory terms, that D. Kideckel and Ms. Saibil filed a police report, but attributes the issuance of the warrant solely to the purported "incompetence" of the Toronto police. Compl. ¶¶ 108, 119-20, 129.

regard this invasion of privacy as highly offensive, causing distress, humiliation, or anguish. *See Boutis v. The Corporation of Norfolk County et al.,* 2025 ONSC 542 (Can. Ont. Sup. C.J.), ¶ 35: *Owsianik v. Equifax Canada Co.*, 2022 ONCA 813 (Can. Ont. C.A.); *Jones v. Tsige*, 2012 ONCA 32 (Can. Ont. C.A.).

    This claim against Ms. Saibil fails because the Complaint does not allege that she intended or recklessly invaded Plaintiff's private affairs without lawful excuse. As an initial matter, Ms. Saibil did not commit the purported act at the root of Plaintiff's claim: malicious prosecution. *See* Section III.E, *infra.* Moreover, affording the Complaint a generous reading and treating the issuance of an arrest warrant as the offending action, the claim still fails. The Complaint demonstrates via an email from the Toronto Police that the "warrant for [Plaintiff's] arrest … for 'harassment and uttering death threat'" was issued after D. Kideckel "expressed safety concerns" and reported "on-going harassment." Compl. ¶ 116. This report was properly investigated by the police (*id.*), and Plaintiff points to no facts that would suggest that it was "meant … to embarrass" or "[intrude] on the most private of Plaintiff's personal affairs." *Id.* ¶ 157. The claim should be dismissed.[13]

_____

[13] Should the Court apply the law of the forum, the outcome is the same. Under District of Columbia law, the tort of intrusion upon seclusion is established upon a showing of "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Garay v. Liriano*, 839 F.Supp.2d 138, 144 (D.D.C. 2012). Here, the purported "invasion" arises out of the commencement of a case against Plaintiff. Compl. ¶ 156. Ms. Saibil did not file a lawsuit against Plaintiff, but even if she had, the claim would still fail because filing a lawsuit and service of process are insufficiently substantial or offensive to sustain a claim for inclusion upon seclusion. *See, e.g. Imholte v. US Bank, Nat'l Assoc.*, No. 19-1627 (DWF/DTS), 2020 WL 362790, at *3 (D. Minn. Jan. 22, 2020) (dismissing claim for intrusion upon seclusion premised on filing of lawsuit because "no reasonable person could find [defendant's] actions sufficiently offensive") (applying the same test for intrusion upon seclusion).

### D. *Plaintiff Fails to State a Claim for Libel and Slander*

Plaintiff asserts a claim against Ms. Saibil for "Defamation (Libel and Slander)" arising out of statements made on a phone call between D. Kideckel and Ms. Lynn Burton in Sarasota, Florida. Compl. ¶¶ 168-172. Under Canadian law, the elements of the tort of defamation are: (i) the defendant makes a statement; (ii) the words of the statement are defamatory, *i.e.*, the words would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (iii) the statement refers to the plaintiff; and (iv) the statement is published. *Hosseini v. Gharagozloo*, 2024 ONSC 1106 (Can. Ont. Sup. C.J.) at ¶ 56.

The claim is entirely misapplied to Ms. Saibil. As Plaintiff alleges (and attaches a transcript to illustrate), D. Kideckel made the statements at issue. Compl. ¶¶ 86-88, 90, Appendix 2 (Transcript of Telephone Call Between David Kideckel and Lynn Burton). Plaintiff does not allege that Ms. Saibil participated in the purported phone call, let alone that she made any of the allegedly defamatory statements.[14] This claim fails for that reason alone.[15]

---

[14] Plaintiff recorded the call in Florida, a two-party consent state that deems it illegal to record a conversation unless all parties to the communication have consented. *See* Fla. Stat. ch. 934.03. Plaintiff does not allege (and the transcript does not suggest) that he sought D. Kideckel's consent to record the conversation, or that he informed D. Kideckel that the call between him and Mrs. Burton was being recorded. In fact, Plaintiff alleges that only he and Mrs. Burton (next to whom Plaintiff was sitting during the call) were aware that the call was being recorded. Compl. ¶ 88.

[15] The claim fails under the law of the District of Columbia for the same reason—that Ms. Saibil is not alleged to have made any statements, much less defamatory ones. To prove defamation under District of Columbia law, a plaintiff must prove "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533-34 (D.C. Cir. 2013) (dismissing defamation-based claims). Plaintiff has failed to allege that Ms. Saibil made any statements, let alone false ones, about him.

### E.  *Plaintiff Fails to State a Claim for Malicious/False Prosecution*

Even though Ms. Saibil never initiated any legal proceedings against him, Plaintiff alleges that she, D. Kideckel, an officer of the Toronto Police, and the Province of Ontario engaged in a conspiracy to issue a false warrant for Plaintiff's arrest. Compl. ¶ 176. Under Canadian law, to allege a claim for malicious (false) prosecution, Plaintiff must show that: (i) the proceeding must have been initiated or continued by the defendant; (ii) the proceeding must have terminated in favour [sic] of the plaintiff; (iii) there must have been an absence of reasonable and probable cause for the prosecution; and (iv) the proceeding must have been actuated by malice or a primary purpose other than that of enforcing the law. *Ferri v. Root*, 2006 CanLII 5304, ¶ 27 (Can. Ont. Sup. C.J.); *Nelles v. Ontario*, 1989 2 S.C.R. 170, 192-93 (Can.). Plaintiff's claim fails as Ms. Saibil has never initiated *any* proceeding against Plaintiff, and the criminal proceeding initiated by the Province of Ontario against Plaintiff is ongoing. *See* ECF 48-2 at 52-69 *and* 68-2 at 8-18 (documents from D. Kideckel's Canadian case against Plaintiff); ECF 39 at ¶¶ 82-31, 10 n. 27. As such, Plaintiff's claim for malicious/false prosecution must be dismissed.[16]

### F.  *Plaintiff Fails to State a Claim for Fraud*

Plaintiff alleges a claim against Ms. Saibil for fraud, alleging she "sought financial gain in

---

[16] Under District of Columbia law, a plaintiff must prove four elements for a claim of malicious prosecution: "(1) that the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the plaintiff as the result of the original action." *See U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 266 (D.D.C. 2012). Because Ms. Saibil did not commence an action against Plaintiff and because criminal proceedings against Plaintiff have not terminated in his favor, the claim fails under the law of the District of Columbia. *See, e.g.*, *id* (dismissing malicious prosecution claim because the underlying suit had not yet terminated in plaintiff's favor).

sending a fraudulent Cease-and-desist [sic] letter" with the "sole intention . . . to induce Plaintiff to tender $1000" and that Plaintiff "suffered economic loss through the single-item retention of a Civil [sic] attorney in Canada for consult and over $5,000 (to date) in litigation expenses." Compl. ¶¶ 180-82. Plaintiff's allegation is refuted by his own evidence, which demonstrates that the cease-and-desist letter at issue was sent on behalf of D. Kideckel (not Ms. Saibil). Compl. ¶ 92, Appendix 1 (cease-and-desist letter sent by "litigation counsel to Dr. David Kideckel").

Initially, Plaintiff's claim for fraud fails as a procedural matter.[17] Claims for fraud must be pleaded with particularity, specifying the 'who, what, when, where, why and how' concerning the circumstances of the fraud.'"[18] *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996) (internal citation omitted). The Complaint fails to meet this burden because it does not allege how the contents of the letter, which addresses the harassing communications sent to D. Kideckel, Ms. Saibil, and their family, are fraudulent or somehow connected to a fraud. *See gen. Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal 1995) ("Merely making general conclusory allegations of fraud, and then reciting a list of neutral facts, is not sufficient.").

Plaintiff's fraud claim fails substantively, as well. Canadian courts apply the same test for

---

[17] Federal courts apply federal procedural law "to determine the standard for dismissing a fraud claim but must apply state substantive law to determine the elements that must be pleaded." *Maynard v. Melton*, No. 17-02612 (KBJ/RMM) 2021 WL 6845008, at *10 (D.D.C. Apr. 7, 2021). Among the procedural law applied is the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).

[18] Canadian courts impose a similar burden. Claims of fraud must contain full particulars, including: (i) the alleged misrepresentation itself; (ii) when, where, how, by whom and to whom it was made; (iii) its falsity; (iv) the inducement; (v) the intention that the plaintiff should rely on it; (vi) the alternation by the plaintiff of their position relaying on the misrepresentation; and (vii) the resulting loss or damage to the plaintiff. *Filler Depot v. Copart Canada Inc.,* 2024 ONSC 466 (Can. Ont. Sup. C. J.), at ¶¶ 40-41.

civil fraud, deceit, and fraudulent misrepresentation. The Plaintiff must show: (i) a false representation of fact by the defendant to the plaintiff; (ii) knowledge that the representation is false, absence of belief in its truth, or recklessness as to its truth; (iii) an intention that the plaintiff act in reliance on the representation; (iv) the plaintiff acting on the representation; and (v) the plaintiff suffering a loss in doing so. *See Filler Depot v. Copart Canada Inc*., 2024 ONSC 466 (Can. Ont. Sup. J.), ¶¶ 40, 41; *Paulus v. Fleury*, 2018 ONCA 1072 (Can. Ont. C.A.) ¶¶ 8-9; *Hamilton v. Osborne*, 2009 ONCA 684 (Can. Ont. C.A.) ¶¶ 34-35. None of these elements are established. The cease-and-desist letter was sent by "litigation counsel to Dr. David Kideckel" and makes no mention of Ms. Saibil. Compl. ¶ 92, Appendix 1. Therefore, Plaintiff has failed to allege that Ms. Saibil made any false representations of fact. Additionally, the cease-and-desist letter preceded ongoing litigation between Plaintiff and D. Kideckel in Canada related to Plaintiff's harassment, in which copies of Plaintiff's harassing text messages are used as exhibits, demonstrating the validity of the assertions in the letter. Finally, Plaintiff concedes that he did *not* act on the representation; to the contrary, he alleges that "[he] did not feel it was necessary … to involve himself; 'not my circus, not my monkeys.'" Compl. ¶ 94.[19] Therefore, the claim of fraud against Dahlia Saibil should be dismissed.[20]

_____

[19] This allegation undermines Plaintiff's claim that he incurred $5,000 in litigation expenses. Compl. ¶ 182. Plaintiff only retained an attorney later in connection with the arrest warrant issued by the Toronto Police. *Id.* ¶ 119.

[20] Likewise, in the District of Columbia, a plaintiff asserting fraud must prove "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *3D Global Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8 (D.D.C. 2008). Plaintiff has failed to allege any of these elements, much less with the level of particularity required by Rule 9(b). *See, e.g.*, *id.* (dismissing fraud claim because "Plaintiff's extremely conclusory allegations do not adequately plead fraud"); *Stovell v. James*, 810 F.Supp.2d 237, 245 (D.D.C. 2011) (being "forced . . . to

### G. *Plaintiff Fails to State a Claim for Telecommunications Harassment*

Plaintiff alleges that Ms. Saibil harassed him via telecommunications service by creating fake numbers and sending messages to people in his network. Compl. ¶¶ 67-88, 108, 184-189.

There is no free-standing tort of harassment in Canada, much less "telecommunication harassment." *See Merrifield v. Canada (AG)*, 2019 ONCA 205 (Can. Ont. C.A.). However, affording Plaintiff every possible benefit, this claim is addressed as one for the newly recognized tort of "internet harassment," which requires a showing that

> the defendant maliciously or recklessly engages in communications conduct so outrageous in character, duration, and extreme in degree, so as to go beyond all possible bounds of decency and tolerance, with the intent to cause fear, anxiety, emotional upset or to impugn the dignity of the plaintiff, and the plaintiff suffers such harm.

*Caplan v. Atlas*, 2021 ONSC 670 (Can. Ont. Sup. C.J.). Plaintiff fails to allege any of the necessary elements for this cause of action and instead proffers two conclusory statements about Ms. Saibil's purported involvement in this alleged act. *See* Compl. ¶¶ 73, 108. These conclusory statements—the assertion that Ms. Saibil harassed Plaintiff with fake telephone numbers, with no factual support—are insufficient to survive a motion to dismiss.[21] *See Iqbal*, 556 U.S. at 678 (conclusory statements insufficient to survive motion to dismiss).

### H. *Plaintiff Fails to State a Claim for Complicity*

Neither the United States nor Canada recognize a civil tort of complicity. *See, e.g., Estate*

---

expend considerable time, effort and expense to evaluate" claims is not sufficient to show reliance).

[21] Plaintiff cites the Communications Decency Act, 47 U.S.C. §223, in support of his claim for telecommunications harassment. Compl. ¶ 189. That statute is criminal in nature and "does not authorize a private right of action." *Ashland Hosp. Corp. v. Int'l Broth. Of Elec. Workers Locals 575*, 807 F.Supp.2d 633, 644-45 (E.D. Ky. 2011). Plaintiff, therefore, is unable to sustain such a claim against Ms. Saibil.

19

*of Parsons v. Palestinian Authority*, 651 F.3d 118, 122, 135 (D.C. Cir. 2011) (acts described as "complicity" brought as a claim for "civil conspiracy"). Assuming Plaintiff means to assert a claim for civil conspiracy, this claim must be dismissed as duplicative of his claim for civil conspiracy. *See, e.g.*, *N. Amer. Catholic Edu. Programming Found., Inc. v. Womble, Caryle, Sandridge & Rice, PLLC*, 887 F.Supp.2d 78, 84 (D.D.C. 2012) (dismissing "breach"-type claims as duplicative of malpractice claim).

### I.    *Plaintiff Fails to State a Claim for Civil Conspiracy*

Plaintiff alleges that Ms. Saibil engaged in civil conspiracy along with the Province of Ontario, the City of Toronto, David Wilson, D. Kideckel, Aram Simovonian, and Ian Sinke "to advance [D. Kideckel and Ms. Saibil's] personal goals of fraud via [D.] Kideckel's misappropriation of Plaintiff's identity." Compl. ¶ 4. The purported result of this conspiracy was that "a false arrest warrant was gobsmackingly [sic] allowed to materialize, with no consideration for the facts or the law, as a matter of sheer and utter Plain Incompetence [sic]." *Id.* at ¶ 176.

There are two types of civil conspiracy under Canadian law: (i) an "unlawful conspiracy," in which the defendant's conduct is unlawful and is directed against the plaintiff, and the defendant knows in the circumstances that the injury to the plaintiff is likely to result; and (ii) a "conspiracy to injure," in which the means used by the defendant may be lawful or unlawful and the predominant purpose of the defendant's conduct is to cause injury to the plaintiff. *See Ontario Consumers Home Services v. Enercare Inc.*, 2014 ONSC 4154 (Can. Ont. C.A.) ¶¶ 19-24. To prove unlawful conspiracy, Plaintiff must demonstrate that: (i) the defendants acted in combination, that is, in concert, by agreement or with a common design; (ii) each of the defendant's conduct must be unlawful and in furtherance of the conspiracy; (iii) the defendants' acts must be directed towards the plaintiff; (iv) the defendants should have known that in the circumstances injury to the plaintiff

20

would likely result; and (v) each defendant's conduct causes injury to the plaintiff. *Id.* The elements of the tort of conspiracy to injure are fairly similar, with the exception that the defendant's conduct need not be unlawful and their predominant purpose must be to inflict harm on the plaintiff. *Id.*

Plaintiff's sparse allegations fail to state either claim. The Complaint is riddled with conclusory allegations regarding Ms. Saibil's involvement in the alleged conspiracy, and while Plaintiff alleges that D. Kideckel's report to the Toronto Police resulted in a warrant for Plaintiff's arrest, he fails to allege how the parties "act[ed] in combination that is, in concert, by agreement or with a common design" or that the conduct central to the conspiracy was unlawful. Compl. ¶ 116. Regarding conspiracy to injure, Plaintiff fails to allege how Ms. Saibil had a "personal goal of fraud[]" or how her predominant purpose was to inflict harm on Plaintiff. *Id.* ¶ 4. Accordingly, Plaintiff's claim for civil conspiracy against Ms. Saibil must be dismissed.[22]

**J.    *Plaintiff Fails to State a Claim for Abuse of Process***

Plaintiff attempts to resolve his grievances with the Canadian judiciary via a claim for abuse of process. The cause of action arises out of a case pending before the Ontario Superior

---

[22] Under District of Columbia law, "civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Nadar v. Democratic Nat'l Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009). "A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Id.* In addition, a plaintiff must also assert that there was "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Findlay v. CitiMortgage, Inc.*, 813 F.Supp.2d 108, 122 (D.D.C. 2011). Here, Plaintiff broadly alleges that Ms. Saibil conspired with D. Kideckel and Mr. Simovonian "to advance their personal goals of fraud" (Compl ¶¶ 4, 203) but fails to clarify the torts underlying the purported conspiracy. Further, Plaintiff has failed to allege the key element to this claim—an agreement amongst the purported co-conspirators.

Court filed by "[D.] Kideckel and his attorney Aram Simovonian" (notably, not Ms. Saibil) and details Plaintiff's disagreements with that court's decisions. Compl. ¶¶ 205-212. All of the actions underlying this claim occurred in Canada, the defendants against whom Plaintiff brings this claim are all Canadian, and the litigation in which Plaintiff alleges an abuse of process is pending in the courts of Ontario.

These conclusory allegations do not amount to a claim for abuse of process. Under Canadian law, such a claim requires a showing that: (i) the plaintiff is a party to a legal process initiated by the defendant; (ii) the legal process was initiated for the predominant purpose of furthering some indirect, collateral and improper objective; (iii) the defendant took or made a definite act of threat in furtherance of the improper purpose; and (iv) some measure of special damage has resulted. *See Globe POS Systems v. Visual Information Products Inc*., 2022 ONSC 5932 (Can. Ont. Sup. C.J.), ¶ 16; *Harris v. GlaxoSmithKline Inc.*, 2010 ONCA 872 (Can. Ont. C.A.) ¶ 27. Ms. Saibil is not a party to the lawsuit in Canada underlying this claim, which is solely between D. Kideckel and Plaintiff. *See* Compl. ¶ 206; ECF 48-2 at 6. As Plaintiff has failed to allege any actionable wrongdoing by Ms. Saibil, this claim must fail.[23]

---

[23] To prevail on a claim of abuse of process under District of Columbia law, "the moving party must demonstrate a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge…. Stated differently, they must allege, in addition to an ulterior motive, some act or threat directed to an immediate objective not legitimate in the use of process." *Rockwell Capital Partners, Inc. v. CD Int'l Enterprises, Inc.*, 311 F.Supp.3d 52, 55 (D.D.C. 2018). Plaintiff does not allege, much less suggest, that Ms. Saibil took any of these actions, let alone that she filed any legal action against him. Compl. ¶ 206. Even if she had, the filing of a "baseless" lawsuit and motions is not actionable, regardless of a litigant's ulterior motive; "the gist of the action lies in the improper use after issuance." *Rockwell*, 311 F. Supp. 3d at 55 (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). Here, Plaintiff has "allege[d] nothing to suggest that [D. Kideckel's lawsuit was] anything but good faith … efforts to obtain relief" and his claim therefore does not amount to a claim for malicious prosecution. *Rockwell*,

### K. *Plaintiff Fails to State a Claim for Aiding and Abetting*

Plaintiff claims that, "[i]n abusing her role with the Attorney General's office, Dahlia Saibil not only directly engaged in tortious acts against Plaintiff, but further aided and abetted David Kideckel in additional tortious acts including telecommunications harassment, defamation, abuse of process, and intentional infliction of emotional distress." Compl. ¶ 214. In Canada, aiding and abetting is a criminal concept and not recognized as a civil claim. *See WIC Premium Ltd. v. General Instrument Corp.*, 1999 ABQB 804 (Can. Alta. Q.B.); *Benson v. McCarthy Tetrault LLP*, 2023 ONSC 7527 (Can. Ont. Sup. C.J.). Were this Court to interpret this claim (and the facts underlying it) as being more properly considered a claim for civil conspiracy, that claim should be dismissed for the reasons argued above.[24] *See* Section III.I, *supra*.

### L. *Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress*

Plaintiff claims that Ms. Saibil should be held liable for intentional infliction of emotional distress because her actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

---

311 F. Supp. 3d at 55-56 (plaintiff failed to state abuse of process claim).

[24] Under District of Columbia law, Plaintiff's claim would fare no better. Like conspiracy, aiding and abetting is not a standalone tort, but "a means of establishing vicarious liability." *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F.Supp.3d 219, 236 (D.D.C. 2016). The claim, therefore, is "not independently actionable in the absence of an underlying tort." *Plummer*, 934 F. Supp. 2d at 198. Further, a claim for aiding and abetting must show that "(1) the party whom the defendant aids [performed] a wrongful act that causes an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; (3) the defendant … knowingly and substantially assist[ed] the principal violation." *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F.Supp.2d 86, 104 (D.D.C. 2003). Here, Plaintiff does not identify an underlying tort or "wrongful act," makes no allegation that Ms. Saibil was "aware" of her role, and provides no insight as to how Ms. Saibil was part of any unlawful scheme.

civilized community," and because her "actions were intentional and willful; as filing a police report inherently is." Compl. ¶¶ 226-227. Presumably, the only action underlying this claim is the filing of a police report.

Under Canadian law, the elements of intentional infliction of mental suffering (emotional distress) are: (i) flagrant or outrageous conduct; (ii) calculated to produce harm; and (iii) resulting in a visible and provable illness. *Colistro v. Tbaytel*, 2019 ONCA 197 (Can. Ont. C.A.). Even if Ms. Saibil filed a police report after receiving harassing messages from Plaintiff—including one sent to D. Kideckel threatening to kill him—such action is not flagrant or outrageous conduct or calculated to harm Plaintiff. *See* ECF 48-2 ¶ 3. As such, Plaintiff's claim of Intentional Infliction of Emotional Distress against Ms. Saibil should be dismissed.[25]

IV.    **Conclusion**

For the foregoing reasons, Dahlia Saibil respectfully requests that this Court dismiss Plaintiff's claims with prejudice.

---

[25] Plaintiff's claim should also be dismissed under District of Columbia law. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Smith v. United States*, 121 F.Supp.3d 112, 124 (D.D.C. 2015). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* District of Columbia courts have held that police reports, even if falsified to justify an allegedly illegal arrest, is "patently insufficient to give rise to liability for intentional infliction of emotional distress." *Id.* at 125 (denying a claim of intentional infliction of emotional distress where plaintiff alleged officers falsified their police reports); *see also Lyles v. Micenko*, 404 F.Supp.2d 182, 187 (D.D.C. 2005) ("initiating a complaint with the police …, even if false, is not conduct that rises to the level of 'outrageousness' as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society").

Dated:  April 16, 2025

Respectfully submitted,

   /s/  *Jeffrey D. Robinson*

Jeffrey D. Robinson, D.C. Bar No. 376037
LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC
1050 K Street NW, Suite 400
Washington, DC 20001
Telephone: (202) 833-8900
Facsimile: (202) 466-5738
Jeffrey.Robinson@lbkmlaw.com

Elizabeth Velez
LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC
115 E. 44th Street, 25th Floor
New York, NY 10017
Telephone: (212) 826-7001
Facsimile: (212) 826-7146
Elizabeth.Velez@lbkmlaw.com

*Counsel for Defendant Dahlia Saibil*