IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL ) | |
| Plaintiff ) | CASE NO.: 1:24-cv-02907-CJN |
| V. ) | |
| ) | |
| THE FOREIGN NATION OF CANADA, et al. ) | |
| Defendants. ) | |
| _____ ) | |

# **PLAINTIFF'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AGAINST JEFFREY ROBINSON, ANNIKA CONRAD, LEWIS BAACH KAUFMANN MIDDLEMISS PLLC, AND DAHLIA SAIBIL**

## I. INTRODUCTION

This motion seeks sanctions under 28 U.S.C. § 1927 and the Court's inherent authority in response to a campaign of deliberate litigation abuse orchestrated by attorneys Jeffrey Robinson and Annika Conrad; their firm Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"); and Defendant Dahlia Saibil. Their conduct transcends mere negligence. It reflects calculated, sustained efforts to sabotage the judicial process through strategic taint, procedural manipulation, and intentional disregard of ethical obligations.

Despite a live, unrebutted, and facially dispositive disqualification motion, Robinson and LBKM have refused to withdraw, clarify their scope, or remediate the tainted record. Instead, they escalated their misconduct—filing on behalf of non-appearing defendants, preserving conflicted declarations, and multiplying proceedings for strategic gain.



**RECEIVED**

APR 18 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

This Court is now squarely confronted with a question of institutional integrity: whether attorneys may knowingly weaponize ethical violations, obscure liability through partial withdrawal, and manipulate a federal docket to outmaneuver a pro se litigant.

Plaintiff respectfully submits that this conduct demands not just condemnation—but decisive, public sanction.

## II. REQUEST FOR JUDICIAL NOTICE

Pursuant to Fed. R. Evid. 201, Plaintiff respectfully requests that the Court take judicial notice of the following facts, all reflected on the public docket:

1. Plaintiff filed a detailed Motion to Disqualify Robinson and LBKM, identifying unwaivable conflicts of interest, dual representation, and procedural taint;

2. That motion has remained entirely unopposed for over 21 days, with no response from Defendants or their counsel other than an unauthorized perjured declaration;

3. LBKM subsequently filed a partial withdrawal—without disclosing the scope, clarifying affected clients, or addressing the pending disqualification;

4. Despite this, Robinson and LBKM filed a motion to dismiss on behalf of Defendant Saibil;

5. A tainted declaration, submitted under an active conflict, remains on the record and continues to form the basis for opposition briefing and procedural delay.

These facts are not contested. They are judicially noticeable. And they form the foundation for the sanctions requested herein.

## III. LEGAL STANDARD

This Court holds both statutory authority under 28 U.S.C. § 1927 and inherent judicial power to sanction attorneys who abuse the litigation process, burden judicial resources, or act in bad faith to prejudice a party.

**A. 28 U.S.C. § 1927: Statutory Mandate Against Multiplication of Proceedings**

Section 1927 authorizes sanctions against any attorney who "multiplies the proceedings... unreasonably and vexatiously." The standard does not require a finding of subjective bad faith. It is met where counsel's conduct is objectively unreasonable, lacking legitimate purpose, and intended to delay, harass, or obstruct.

Governing precedents make this clear:

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (sanctions appropriate where attorneys exhibit "serious and studied disregard for the orderly process of justice");

- *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) (liability under § 1927 where conduct manifests intentional or reckless disregard for duties to the court);

- *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (affirming sanctions where an attorney pursued arguments "in defiance of logic and well-settled precedent");

- *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (objective unreasonableness is sanctionable, even without subjective bad faith).

Silence in the face of a live conflict is not neutral. It is sanctionable inaction. Repeated filings made after partial withdrawal and during the pendency of a disqualification motion reflect precisely the kind of calculated, strategic misconduct § 1927 was enacted to deter.

**B. Inherent Authority: Judicial Power to Preserve Integrity**

Independent of statutory authority, this Court retains the inherent power to sanction conduct that undermines the dignity and integrity of its proceedings.

As the Supreme Court affirmed in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980):

"Courts of justice are universally acknowledged to be vested... with power to impose silence, respect, and decorum... and to require submission to their lawful mandates."

Where an attorney defies those mandates—whether through silence, strategic delay, or the weaponization of unethical filings—the Court is empowered to strike pleadings, refer for discipline, and impose monetary penalties.

See also:

- *Chambers*, 501 U.S. at 46 (inherent power "extends to a full range of litigation abuses");

- *Gregg v. Am. Quasar Petroleum Co.*, 840 F. Supp. 1394, 1403 (D. Colo. 1991) (court has duty to penalize attorneys obstructing justice through procedural abuse);

- *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003) (sanctions serve both remedial and deterrent purposes).

**C. This Court's Own Jurisprudence Demands Ethical Accountability**

This Court has consistently held that procedural fairness, ethical adherence, and respect for adversarial integrity are not optional. They are expected. In *Trump v. Thompson*, 570 F. Supp. 3d 49 (D.D.C. 2021), this Court reaffirmed its commitment to principled adjudication and institutional integrity.

Robinson's ongoing silence, coupled with tainted filings and manipulation of docket deadlines, violates those standards and requires sanction to preserve judicial credibility.

**D. Statutory and Inherent Powers Together Mandate Relief**

The combined power of § 1927 and the Court's inherent authority compels action in this case. Where an attorney:

- Files under a pending disqualification motion;

- Withdraws partially but continues filing without scope clarification;

- Maintains tainted evidence on the record;

- Ignores explicit warnings—

this Court not only may—but must—sanction such conduct. To do otherwise would signal that ethical violations and procedural sabotage can be tolerated so long as no ruling has issued.

## IV. ARGUMENT

The disqualification motion filed by Plaintiff sets forth uncontested, supported evidence of non-waivable conflict and procedural fraud. It remains unrebutted. And yet Robinson continued to file—on behalf of Saibil—after:

- Failing to strike or address a known tainted declaration;

- Partially withdrawing without clarifying the scope or curing the conflict;

- Being explicitly warned that further filings would trigger sanctions.

This was not a mistake. It was a deliberate decision to preserve procedural leverage through unethical means. Robinson's continued litigation activity served no purpose but to:

- Delay adjudication;

- Avoid default;

- Exploit the presence of tainted evidence;

- And complicate the docket to outlast a pro se opponent.

Every post-withdrawal filing by LBKM and Robinson was designed to multiply proceedings and obstruct justice. That is the very definition of vexatious litigation under § 1927. It is intentional, egregious, and warrants immediate sanction.

## V. LBKM'S LITIGATION STRATEGY IS NOT DEFENSIBLE—IT IS DELIBERATE SABOTAGE

LBKM's refusal to correct the record is not the product of negligence. It is intentional litigation strategy. At no point has the firm:

- Disavowed tainted declarations;

- Moved to strike improper filings;

- Sought clarification of scope post-withdrawal;

- Or taken remedial action to mitigate the ongoing prejudice to Plaintiff.

Instead, LBKM has adopted a strategy of silence and concealment—exploiting the lack of a disqualification ruling to continue acting under a conflict, burden the Plaintiff, and expand the docket with filings they know to be tainted.

This is not zealous advocacy. It is willful misconduct. It reflects a belief that, absent formal court intervention, ethical rules are optional and tainted filings can be weaponized without consequence.

Section 1927 was designed to deter this precise abuse.

## VI. THE COMBINED AUTHORITY OF § 1927 AND INHERENT POWER COMPELS SANCTION

The conduct here is not isolated. It is systemic, calculated, and executed with knowledge of its ethical and procedural consequences. Where an attorney:

- Ignores an unrebutted disqualification motion;

- Maintains representation after withdrawal without limitation;

- Files on behalf of parties who have not independently appeared;

- And uses prior tainted filings to delay adjudication—

both statutory and inherent powers authorize—and demand—judicial sanctions.

See *Gregg*, 840 F. Supp. at 1403 (court may penalize attorneys for abusive procedural conduct); *Whitehead*, 332 F.3d at 803 (sanctions required to protect process and deter future obstruction).

This is not the time for hesitation. The integrity of these proceedings depends on the Court's willingness to act.

## VII. ROBINSON, CONRAD, AND LBKM HAVE CROSSED FROM ETHICAL BREACH TO PROCEDURAL CONSPIRACY

This is no longer a matter of mere conflict. Robinson and LBKM are now active participants in the very conspiracy this lawsuit seeks to expose. They have:

- Filed on behalf of Saibil;

- Deliberately delayed default through strategic timing;

- Preserved fraudulent declarations and avoided correction;

- And refused to oppose disqualification—despite full awareness of their conflict.

This pattern is not defensive—it is affirmative misconduct. It reflects knowing participation in a litigation strategy designed to:

- Confuse the docket;

- Obstruct default;

- Preserve the taint;

- And isolate Plaintiff from due process.

As the Supreme Court held in *Dennis v. Sparks*, 449 U.S. 24, 28 (1980), private actors who join state officials in abusing the legal process may be held liable under § 1983 and comparable doctrines. The D.C. District has similarly affirmed that when attorneys knowingly further procedural abuse, they may not shield themselves behind client representation. See *Kanu v. U.S. Dep't of Justice*, 648 F. Supp. 2d 84, 90 (D.D.C. 2009).

Robinson's repeated misconduct—despite notice, disqualification, and formal warnings—satisfies the threshold for participation in a broader conspiracy.

He has not simply failed to uphold his duties to the Court. He has become a procedural co-conspirator.

This Court has the power—and the obligation—to sanction that conduct and restore the integrity of the record.

## VIII. SANCTIONS ARE NECESSARY TO DETER FUTURE MISCONDUCT AND PROTECT THIS COURT'S INTEGRITY

This case is no longer about conflict—it is about calculated procedural sabotage executed by experienced attorneys who know exactly what they are doing.

If this Court does not impose sanctions now, it sends a dangerous message: that conflicted counsel may continue filing under known ethical violations, preserve procedural advantage through strategic withdrawal, and exploit judicial inaction to undermine adversaries—particularly pro se litigants.

That outcome cannot be tolerated.

Federal courts have consistently held that sanctions serve not just to punish, but to deter:

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Courts have the inherent power to sanction misconduct in order to preserve the integrity of the judicial process.");

- *Gregg*, 840 F. Supp. at 1403 (sanctions protect judicial legitimacy and deter abuse);

- *Schlaifer Nance*, 194 F.3d at 336 (sanctions are proper even without subjective bad faith if conduct is objectively unreasonable).

This Court's docket has been compromised by:

- Unopposed disqualification proceedings;

- Conflicted filings made after partial withdrawal;

- Tainted declarations left on the record;

- A coordinated effort to delay and deny Plaintiff fair adjudication.

This is not an isolated incident. It is a pattern. And unless firmly rebuked, it will be repeated—here and elsewhere.

## IX. THE TIMING OF DEFENDANTS' FILINGS REVEALS A STRATEGIC CONSPIRACY TO OBSTRUCT JUSTICE

LBKM's most recent filing—submitted on the 90th day following service, the last day before default—was no coincidence. It was a surgical move, executed to prevent default, preserve control of the docket, and maintain tainted leverage. Saibil, a government lawyer and officer of the court, waited 89 days without entering an appearance—then surfaced through conflicted counsel on the eve of sanction.

This is not good-faith litigation. It is procedural fraud.

Robinson and LBKM:

- Ignored the disqualification motion;
- Never clarified withdrawal scope;
- Preserved an unauthorized declaration;
- Filed again on behalf of a party who never retained them post-conflict;
- Timed everything to shield their client from default while evading the Court's authority.

This conduct is textbook litigation abuse under *Thomas*, 836 F.2d at 878 (sanctions appropriate when conduct reflects intentional or reckless disregard for legal duties).

No Court should tolerate this kind of manipulation.

It is precisely the kind of calculated misconduct that § 1927 and the Court's inherent powers were designed to address.

## X. SANCTIONS ROUTINELY FOLLOW DISQUALIFICATION—AND ARE WARRANTED HERE

Courts have not hesitated to impose monetary sanctions when attorneys use conflicted representation, procedural gamesmanship, or tainted filings to distort justice. Examples abound:

1. Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989)
   – Fraud upon the court justified dismissal of entire case.

2. Erikson v. Painter, 2011 WL 4344012 (W.D. Tex. Sept. 14, 2011)
   – $142,000 in sanctions imposed for refusing to withdraw despite conflict.

3. GSI Tech. v. United Memories, Inc., 2015 WL 12942201 (N.D. Cal. Oct. 14, 2015)
   – Court barred filings by conflicted firm and referred for discipline.

4. Int'l Business Machines Corp. v. Levin, 579 F.2d 271 (3d Cir. 1978)
   – Court warned that delayed disqualification raises fee-shifting liability.

5. In re Marriage of Zimmerman, 765 N.E.2d 304 (Ill. App. Ct. 2002)
   – $50,000 sanction for filings by disqualified attorney that "corrupted the record."

The common theme: disqualification alone is not enough. Without sanctions, there is no deterrent—only an invitation to repeat.

Here, LBKM and Robinson:

- Filed despite pending disqualification;

- Preserved a tainted declaration;

- Timed a critical filing for tactical gain;

- Never certified representation authority;

- And ignored every warning and ethical duty.

Their conduct justifies the highest level of sanction. Monetary penalties ranging from $100,000 to $400,000 have been imposed in cases involving comparable—or less egregious—conduct.

The record here more than supports Plaintiff's request.

## XI. MONETARY SANCTIONS ARE NECESSARY TO COMPENSATE PLAINTIFF FOR DELIBERATE LITIGATION ABUSE

Plaintiff respectfully requests compensatory sanctions of $400,000, jointly and severally against Jeffrey Robinson, Annika Conrad, LBKM, and, if warranted, Dahlia Saibil, under 28 U.S.C. § 1927 and this Court's inherent authority.

This amount reflects:

- The direct cost of delay, obstruction, and tainted filings;

- The time and effort expended by Plaintiff—a pro se litigant—for tasks defense counsel intentionally multiplied;

- The prejudice to Plaintiff's ability to seek default, discovery, or a clean adjudication;

- The reputational harm caused by false filings and unsupported declarations left to linger on the record.

This is not speculative. It is grounded in real litigation cost, real harm, and real misconduct.

Federal courts have imposed comparable or greater sanctions where:

- Counsel refused to withdraw despite ethical violations (*Erikson*, $142,000);

- Attorneys filed knowing falsehoods (*Aoude*, dismissal of entire action);

- Firms preserved tainted declarations after disqualification warnings (*GSI*, remedial sanctions and potential fee shifting).

Here, Defendants did all three—knowingly, strategically, and with impunity.

## XII. LBKM'S STRATEGIC TAINT OF THE RECORD EXPOSES ITS BAD FAITH, ADVERSE INTERESTS, AND FINANCIAL MOTIVE

LBKM's conduct is not just unethical—it is profitable. The firm filed hundreds of pages of tainted pleadings after disqualification notice, refused to clarify its role, and continued filing on behalf of non-appearing parties. This was not defense—it was billable-hour preservation cloaked as advocacy.

LBKM:

- Partially withdrew but never stopped filing;

- Filed a 650-page brief under conflict;

- Filed again for a party (Saibil) still under conflict;

- Continued billing for work it knew might be struck.

This is not zealous representation. It is monetized obstruction, and it violates every principle of ethical advocacy. The longer LBKM remained on record—despite the live disqualification motion—the more it billed. The more it billed, the more its clients (and insurer) were forced to subsidize a defense structurally doomed by conflict.

LBKM must not be allowed to profit from its own violation. Plaintiff respectfully asks the Court to:

1. Hold LBKM personally liable for defense costs incurred by its clients and former clients due to tainted filings;

2. Bar LBKM from recovering any fees related to post-withdrawal or post-disqualification work;

3. Award Plaintiff the full value of time spent responding to pleadings that should never have been filed.

Otherwise, the message will be clear: disqualified firms may remain in the case, rack up hours, and offload the fallout to their insurer. That outcome would erode public trust and embolden unethical litigation strategies.

## XIII. LBKM'S INVOCATION OF CANADIAN LAW IN A U.S. FEDERAL COURT DEMONSTRATES PROCEDURAL ABUSE AND TACTICAL MISDIRECTION

Perhaps the most absurd display of bad faith came when LBKM—filing under a live conflict—submitted a U.S. motion to dismiss based on Canadian law. This is not just irrelevant. It is indefensible.

Plaintiff is a U.S. citizen. This case arises under U.S. law. No party has invoked the Hague Convention. No foreign law governs this Court.

Yet LBKM:

- Cited Canadian tort doctrines and procedural rules;

- Offered no authority for why Ontario law governs federal jurisdiction.

This filing is not a mistake. It is a tactic—a deliberate attempt to burden Plaintiff, confuse the Court, and delay default while flooding the record with inapplicable authorities.

This is litigation by exhaustion. And it is sanctionable under every standard applicable to this Court.

See:

- *Nuwesra v. Merrill Lynch*, 174 F.3d 87 (2d Cir. 1999) (sanctions for irrelevant and burdensome filings);

- *LaPrade*, 146 F.3d 899 (D.C. Cir. 1998) (use of misleading complexity may constitute bad faith);

- *Chambers*, 501 U.S. at 45–46 (courts must intervene where parties demonstrate "serious and studied disregard" for judicial process).

The motion to dismiss filed by Robinson on Day 90 was a power move—one grounded in procedural manipulation and executed under taint. It demonstrates intent, not oversight. And it deepens the need for decisive sanctions.

## XIV. DEFENDANTS' COORDINATED MISCONDUCT VALIDATES PLAINTIFF'S CONSPIRACY ALLEGATIONS

This is a conspiracy case—and the procedural record confirms that the Defendants are acting in concert to obstruct justice, suppress discovery, and escape accountability.

Each Defendant plays a role:

- **David Kideckel** defaulted, knowing that any appearance would expose perjured evidence and retaliatory motives. His silence is strategic.

- **Dahlia Saibil**, a government attorney, waited until the 90th day to appear—only through tainted counsel, using irrelevant Canadian law, and without curing any of the conflict.

- **Aram Simovonian** continues to represent David Kideckel in Canada ratifying the criminal acts and cementing his role as a willing co-conspirator—despite facing perjury allegations in both countries. He has never disavowed a single false statement.

This is not independent conduct. It is synchronized obstruction.

Their common denominator is LBKM—a conflicted firm that:

- Filed on behalf of all Defendants under conflict;

- Refused to oppose disqualification;

- Filed a tainted 650-page brief knowing it would be challenged;

- Continues to file under partial withdrawal without authorization.


The silence on the merits—the absence of rebuttal, explanation, or ethical remediation—speaks volumes. Not a single Defendant has contested the fraud, denied the perjury, or cured the conflict. This is not negligence. It is deliberate alignment.

"Conspiracy by omission is still conspiracy."
– *Kanu v. U.S. DOJ*, 648 F. Supp. 2d 84, 90 (D.D.C. 2009)

When co-defendants default, delay, or deflect in lockstep—while benefiting from the same tainted counsel and procedural leverage—it is fair to infer coordination.

This litigation is no longer a dispute. It is a cover-up.


## XV. BARAZZA'S WITHDRAWAL IS A WARNING SIGN—AND A CONFIRMATION

On April 17, 2025—one day after Robinson submitted another tainted filing on behalf of a defaulted defendant—senior partner Christopher Barraza of Phillips Lytle LLP formally withdrew as counsel for the City of Toronto.

That timing is no coincidence.

Although Plaintiff seeks no sanctions against Mr. Barraza, his formal withdrawal—after weeks of silence and just after a fraudulent filing—speaks volumes. It is an unmistakable attempt to distance himself from Robinson's ongoing misconduct and the collapsing ethical posture of this case.

Barraza's withdrawal confirms what Plaintiff has long alleged:

- That this litigation is compromised by fraud on the court;

- That senior lawyers are now repositioning themselves to avoid collateral exposure;

- That Robinson remains the epicenter of procedural corruption—filing under conflict, misrepresenting authority, and manipulating the docket.

Barraza's move is self-preservation. Robinson's continued presence is willful abuse.

This Court should treat Barraza's withdrawal not as a footnote—but as real-time corroboration that even seasoned defense counsel are unwilling to remain aligned with the taint.

## CONCLUSION

This is no longer a question of disqualification—it is a test of this Court's willingness to defend its own integrity.

Robinson and LBKM have:

- Multiplied these proceedings under conflict;

- Filed knowingly tainted pleadings;

- Manipulated deadlines to prevent default;

- Weaponized silence and complexity to obstruct justice;

- And coordinated filings on behalf of non-appearing defendants while evading ethical accountability.

Their conduct is not simply sanctionable. It is dangerous. It threatens the credibility of this Court and the right of every litigant—especially pro se plaintiffs—to a fair forum free from deception, conflict, and procedural sabotage.

For these reasons, Plaintiff respectfully requests that this Court:

1. Impose monetary sanctions of $400,000, jointly and severally against Jeffrey Robinson and LBKM;

2. Strike all post-disqualification filings made by Robinson or LBKM;

3. Refer Robinson and LBKM to the D.C. Office of Disciplinary Counsel;

4. Order Defendant Saibil to retain new, independent counsel within seven (7) days or face entry of default;

5. Grant such further relief as this Court deems necessary to restore procedural integrity, deter future misconduct, and protect this Court's institutional credibility.

Anything less would reward calculated fraud, embolden unethical litigation strategies, and abandon the judicial responsibility to ensure that justice is not just done—but seen to be done.

DATED: April 18, 2025

Respectfully submitted,

*[signature]*

Brent Kideckel
Pro Se Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL ) | |
| Plaintiff ) | CASE NO.:   1:24-cv-02907-CJN |
| V. ) | |
| ) | |
| THE FOREIGN NATION OF CANADA, et al. ) | |
| Defendants. ) | |
| _____ ) | |

# [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Upon consideration of Plaintiff Brent Kideckel's Motion for Sanctions pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, the record herein, and for good cause shown, it is hereby:

ORDERED that Plaintiff's Motion is GRANTED;

FURTHER ORDERED that monetary sanctions in the amount of $400,000 are imposed jointly and severally against Attorneys Jeffrey Robinson, Annika Conrad, and the law firm Lewis Baach Kaufmann Middlemiss PLLC, payable to Plaintiff Brent Kideckel, as compensation for the litigation costs, delay, and procedural harm caused by Defendants' vexatious and unethical conduct;

FURTHER ORDERED that all filings made by Jeffrey Robinson, Annika Conrad or Lewis Baach Kaufmann Middlemiss PLLC shall be stricken from the record as tainted and procedurally unauthorized;

FURTHER ORDERED that Jeffrey Robinson, Annika Conrad, and Lewis Baach Kaufmann Middlemiss PLLC shall be referred to the D.C. Office of Disciplinary Counsel for investigation

into violations of ethical duties to the Court and participation in litigation conduct inconsistent with the standards of professional responsibility;

FURTHER ORDERED that Defendant Dahlia Saibil shall retain new, independent counsel within seven (7) days of the entry of this Order, and that failure to do so shall result in the entry of default against her pursuant to Federal Rule of Civil Procedure 55(a);

FURTHER ORDERED that this Court may issue such additional relief as is necessary to restore the integrity of the proceedings, deter future misconduct, and protect the orderly administration of justice.

SO ORDERED.

Dated: _____, 2025

_____

HON. CARL J. NICHOLS
United States District Judge