IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL ) | |
| Plaintiff ) | **CASE NO.:** 1:24-cv-02907-CJN |
| V. ) | |
| ) | |
| THE FOREIGN NATION OF CANADA, et al. ) | |
| Defendants. ) | |
| _____ ) | |

# **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TARGETED DISCOVERY INTO FRAUDULENT DECLARATIONS AND MTD EXHIBITS**

Plaintiff Brent Kideckel respectfully submits this reply in support of his motion for limited, targeted discovery into demonstrably false, tainted, and procedurally corrupted declarations and exhibits filed by conflicted counsel in support of a motion to dismiss. That motion—grounded in misrepresentations, authored by disqualified counsel, and defended only by evasion—cannot be resolved without clarity on its fraudulent foundation.

What Defendants have offered in response is not a defense. It is a masterclass in bad faith. The Opposition, filed by a new counsel who refuses to certify the challenged filings, deploys privilege claims like sandbags against rising water—hoping to hold off the inevitable reckoning. The problem is, the flood has already arrived. The record is tainted, the fraud is obvious, and the only question is whether this Court will allow Defendants to conceal it indefinitely.

This is not a situation calling for judicial restraint. This is a textbook example of why courts possess inherent authority to investigate fraud on the court: because unscrupulous litigants will test the limits of procedure until forced into accountability. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).



**RECEIVED**

APR 21 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## I. The Fraudulent Declarations Were Filed by a Conflicted Lawyer, Without Certification—and Are the Very Foundation of the Pending Motion to Dismiss

The audacity of the Opposition cannot be overstated. Defendants simultaneously argue that this Court should dismiss Plaintiff's case based on a declaration that was:

- Filed by Jeffrey Robinson, a lawyer whom Plaintiff had already moved to disqualify for an unwaivable conflict;

- Signed by Aram Simovonian, who falsely claimed to be a "Partner" at Lima Law—a claim disproven by corporate records filed in Ontario;

- Contains a patently false claim that Plaintiff was served via email on May 27, 2024, in direct violation of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

- Attached exhibits of anonymous Canadian phone numbers without attribution, metadata, or any connection to Plaintiff whatsoever; and

- Has never been certified, clarified, or disavowed by any counsel—past or present.

And yet, Defendants would have this Court believe that discovery into these very documents would be burdensome, unreasonable, and unjustified. That's not just incorrect—it's insulting.

The idea that this Court should entertain a dispositive motion while expressly prohibited from examining the truth of the filings that support it is legally grotesque. "When a party submits falsified or misleading documents to the court, the judicial process itself is corrupted, and the court has a duty to act." *Spencer v. Dixon*, 290 F. Supp. 3d 234, 237 (D.D.C. 2018). See also *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457–58 (4th Cir. 1993) ("The court must protect its integrity from conduct that abuses the judicial process.").

To deny discovery here would be to announce that conflict-laced perjury, so long as sealed and unadopted by successor counsel, is beyond review.

That is not the law. That is evasion disguised as advocacy.

## II. The Defendants' Continued Silence on the Record Is a Judicial Red Flag—Not a Defense

Defendants' strategy—if it can be dignified with such a term—is rooted in strategic silence and selective amnesia. Despite being on notice for weeks that Plaintiff identified perjurious statements and tainted exhibits:

- No Defendant has submitted a declaration affirming the truth of the prior filings;

- No lawyer has filed a notice adopting the prior representations;

- No party has moved to correct the record, clarify the misrepresentations, or withdraw the infected materials.

This Court is thus left with a procedurally obscene situation: a motion to dismiss resting on factual claims that no one—not even the submitting parties—will stand behind.

Such silence is not neutrality. It is a red flag. "[A] party's failure to rebut allegations of fraud with countervailing evidence can be a compelling reason to investigate further." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989). As the D.C. Circuit has recognized, "[c]ourts must guard against abuse of their processes, including efforts to influence the outcome through misrepresentation or half-truths." *Shepherd v. ABC*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

If Defendants had evidence that the challenged declarations were accurate, the Court would have seen it by now. If the service was valid, there would be a Hague Certificate, or at the very least- a copy of said email, beyond a sworn declaration by a known perjurer, Aram Simovonian. If the phone numbers were real, they'd be verified by metadata or carrier records. But none of that has appeared.

Instead, all that has emerged is a parade of stall tactics: privilege assertions, "burden" complaints, and procedural technicalities. These are not the behaviors of parties confident in their position. These are the behaviors of litigants terrified of discovery.

And no amount of posturing can obscure the central truth: not one of them has dared to stand by the very declarations they submitted to this Court. That tells this Court everything it needs to know.

As the Supreme Court stated in *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945), "The preservation of the integrity of the judicial process requires that

courts vigilantly prevent fraud or deception from influencing their decisions." The vigilant response here is not discretion—it is action.

## III. Discovery Is Not a Favor to Plaintiff—It Is the Judiciary's Core Mechanism for Truth-Finding

One would think—given their professions as licensed attorneys—that Defendants would understand that discovery is not a privilege afforded to the deserving. It is the judicial system's tool to uncover truth and ensure that justice is not built on deception.

Yet Defendants—lawyers all—would have this Court believe that seeking discovery into declarations they filed, exhibits they attached, and representations they made is somehow unreasonable, burdensome, or unnecessary.

That position would be comical if it weren't so grotesque.

It is not Plaintiff who has asked this Court for special indulgence. It is Defendants who, astonishingly, demand that this Court dismiss the case without examining whether the evidence they submitted was a fraud. The judiciary was not designed to function on blind trust, and certainly not when a fraud on the court is credibly alleged.

It cannot be overstated that Plaintiff has credibly accused Lewis Baach Kauffman Middlemiss PLLC, Annika Conrad, and Jeffrey Robinson, of fraud on the court in the Motion for Disqualification reply brief, and it has bot been challenged whatsoever.

"[T]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). See also *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) ("Modern instruments of discovery serve a useful purpose, as they together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest.").

And more pointedly, in *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 493 (D. Kan. 1997), the court held that "[w]hen the integrity of the judicial process is questioned by serious allegations of fraud, it is not only appropriate but necessary for the court to order discovery to determine the truth." That is precisely the situation here.

Plaintiff does not seek discovery into general background, irrelevant hearsay, or speculative grievances. He seeks:

- Authorship and transmission of two declarations containing facially false statements;

- Clarification of a procedural representation that violated international service law;

- Identification of anonymous Canadian phone numbers falsely attributed to him—by the same parties now desperate to avoid subpoenaing the actual telecom providers.

Defendants seek to insulate their misconduct by hiding behind the cloak of "privilege," hoping this Court forgets what discovery is for. But this Court will not forget—and it will not permit falsehoods to serve as the foundation for any dispositive ruling.

## IV. Privilege Cannot Shield Perjury, Conflicted Drafting, or Fabricated Exhibits

Defendants' assertion of attorney-client privilege and the work-product doctrine to block discovery into their own false declarations is as disingenuous as it is legally bankrupt. Courts have long and emphatically rejected any notion that privilege can be weaponized to conceal fraud.

The law is clear: there is no privilege for communications in furtherance of fraud, perjury, or misconduct. As the Supreme Court held in *Clark v. United States*, 289 U.S. 1, 15 (1933), "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." And in *United States v. Zolin*, 491 U.S. 554, 563 (1989), the Court reaffirmed the principle that "[t]he attorney-client privilege must yield when the communications are made in furtherance of a crime or fraud."

This includes the so-called "work-product doctrine," which—while broader in scope—is equally penetrable when used to mask litigation abuse. "[A]ttorney work-product is not immune from discovery when the very legitimacy of the document is in question." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 145 (D. Mass. 2004); see also *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982) (crime-fraud exception applies to attorney work product).

Here, Plaintiff has alleged—supported by exhibits and public records—that:

- Declarations were prepared under an unwaivable conflict of interest;

- Those declarations contain material falsehoods, including a fabricated professional title and unlawful service assertion;

- Exhibits purporting to identify Plaintiff through anonymous phone records are completely unverified and potentially falsified.

And yet, rather than answer these allegations, Defendants cite *Clemmons v. Acad. for Educ. Dev.*, 300 F.R.D. 6 (D.D.C. 2013), which only strengthens Plaintiff's position. There, the court emphasized that the protection afforded to drafts and attorney impressions does not extend to efforts to mislead or deceive the court. When the declaration's very origin is in dispute—and potentially fraudulent—there is no protection.

Indeed, courts have repeatedly held that communications involving the evolution of an affidavit, where fraud is alleged, are discoverable. *See U.S. ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 186 (D.D.C. 2014) ("The need to detect potential fraud outweighs work-product protection where the fraud infects the judicial process itself.").

It is both absurd and alarming that multiple attorneys—including one who practices "legal ethics"—are asserting privilege to avoid answering whether they submitted truthful documents to a federal court. Such conduct is not protected—it is precisely why discovery exists.

## V. The City of Toronto Has Already Acknowledged the Conflict on the Record—and Robinson's Conduct Has Forced Strategic Retreat

While Defendants continue to feign ignorance of the obvious, the City of Toronto and its counsel, Phillips Lytle LLP, have already done the one thing Defendants now refuse to do: acknowledge that Jeffrey Robinson, Annika Conrad, and LBKM created an unresolvable conflict that tainted the record and forced a strategic retreat.

After the tainted motion to dismiss was filed for Dahlia Saibil—prepared by Robinson, who was concurrently representing Aram and Dahlia Saibil while Aram himself was representing David Kideckel in related Canadian proceedings—Phillips Lytle acted swiftly. They removed their senior litigator Christopher Barraza from public filings and communications, and replaced him with junior associate Natalia Marte. This quiet but unmistakable substitution occurred *after* the

Court had already received the declarations at issue, and *after* Plaintiff moved to disqualify Robinson.

Barraza's ultimate formal withdrawal, filed only after the April 16, 2025, motion to dismiss for Dahlia Saibil, completed the retreat. That sequence was not routine. It was surgical damage control. And while the City of Toronto never formally filed a motion to join Plaintiff's disqualification request, it never filed a defense of Robinson's actions either—a telling omission.

The message was clear: the City wanted nothing to do with Robinson's conflict-ridden filings and would not go on record defending them. They knew the damage had been done and chose to walk away rather than dig deeper.

This is more than professional discomfort. It is on-the-record recognition by a co-defendant that the LBKM filings were unsustainable and procedurally hazardous. Indeed, where one co-defendant sees enough institutional risk to retreat, yet others press forward without disavowal or correction, the Court is presented with not a close call—but a judicial imperative.

Courts across circuits have emphasized that once a conflict of interest contaminates a filing, that taint cannot be retroactively cured by silence or substitution. See *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) ("An attorney may not represent a client if the representation involves a concurrent conflict of interest... even with consent where the conflict is unwaivable."); *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984) ("It is the potential for conflict that requires disqualification.").

It is not Plaintiff's burden to prove malice or conspiracy. The docket already reflects that:

- Robinson filed under conflict.

- LBKM has not certified or disavowed the declarations.

- The City of Toronto withdrew its senior litigator from the case immediately thereafter.

If that does not demand targeted discovery, it is unclear what possibly could.

## VI. Lawyers Opposing Truth-Finding Is a National Embarrassment, Not a Litigation Strategy

There is no way to politely phrase this: it is a national disgrace that a group of attorneys—licensed officers of the court—are actively fighting against truth-finding in federal court. Every named Defendant at the center of this scheme is a lawyer or adjacent to dirty lawyers:

- Aram Simovonian: a practicing attorney in Ontario, who submitted a declaration riddled with demonstrable falsehoods;

- David Kideckel: currently in default, whose silence is as strategic as it is damning;

- Dahlia Saibil: an attorney for the Ontario Ministry of the Attorney General, who has found herself represented by *two* dirty lawyers in two counties.

Each of them has benefitted—procedurally, strategically, and substantively—from false filings made by conflicted counsel, in a transparent attempt to dismiss this action before discovery could unravel their misconduct. And now, when asked to answer for those declarations, they invoke "privilege," "burden," and "prematurity" as if those terms absolve them from basic standards of integrity.

This is not a legal defense. It is institutional rot.

These are not pro se litigants struggling to navigate civil procedure. These are not foreign nationals confused by jurisdictional nuance. These are experienced, credentialed, and deliberate actors who are using the courts not to vindicate rights—but to bury evidence.

And that should chill the Court to its core.

"Litigation is not a game of hide-the-ball," the Supreme Court famously declared in *Hickman v. Taylor*, 329 U.S. 495, 516 (1947). It is a system built upon adversarial honesty and procedural fairness. That system collapses when lawyers submit fraudulent documents and then weaponize privilege to protect them from scrutiny.

Even more egregiously, Defendants have tried to paint this motion for discovery as somehow excessive, when it is nothing more than a request to examine the documents they themselves have already submitted to this Court.

The Court should reject this hypocrisy outright. It should not only allow discovery—it should question why lawyers, who claim to uphold justice, are so determined to prevent this Court from ever reaching it.

As *Gonzalez v. Spencer*, 336 F.3d 832, 839 (9th Cir. 2003), teaches: "When lawyers misuse the judicial process... the court has an obligation to protect itself and the public." The obligation here is not optional. It is overdue.

## VII. Third-Party Subpoenas Would Instantly Reveal the Truth That Defendants Are Desperate to Avoid

It is impossible to overlook the cruel irony at play: Defendants attached mysterious, unattributed Canadian phone numbers to their motion to dismiss, labeled them "Brent alias," and then object to Plaintiff's attempt to issue third-party subpoenas to verify whether he ever owned them.

Let that sink in.

These Defendants—again, lawyers—submitted digital messages from anonymous numbers as evidence to justify dismissal. They:

- Provided no metadata;

- Gave no indication of phone ownership;

- Offered no proof that these numbers were linked to Plaintiff;

- And still demand that this Court accept the validity of those messages as gospel.


Then, when Plaintiff requested the narrowest imaginable discovery—third-party subpoenas to neutral U.S. telecom providers—Defendants objected. Why? Because that discovery would do the one thing they fear most: settle the issue conclusively.

Either the numbers were Plaintiff's, or they weren't. Either the texts originated from Plaintiff's device, or they didn't. And if they didn't, the entire evidentiary spine of their motion to dismiss collapses.

This is why courts routinely authorize subpoenas early in proceedings where identity and authorship are contested. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (upholding early subpoenas to ISPs to verify authorship of infringing content); *Sony Music Ent. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) (permitting expedited subpoenas where factual identity was essential to resolving the claims); *UMG Recordings, Inc. v. Doe*, 2008 WL

4104207, at *4 (N.D. Cal. 2008) (approving early discovery because "without the identifying information, plaintiffs cannot serve the defendants or move forward").

This isn't overreach. It's basic procedural hygiene.

And yet Defendants—those same lawyers who voluntarily submitted the unauthenticated phone records—now claim that verifying the records is "premature," "burdensome," or "irrelevant." That is not legal advocacy. That is procedural sabotage.

**They don't want the Court to know who owned the phone numbers because they already do. And the truth is inconvenient.**

## VIII. Even the City of Toronto Knew Better Than to Oppose This Motion on the Record

Defendants may be willing to posture and protest this discovery motion, but at least one institutional defendant knew better. The City of Toronto, through its counsel at Phillips Lytle LLP, never formally opposed Plaintiff's motion for limited discovery—because doing so would have been utterly indefensible.

Instead, what the City did was even more revealing: it opposed discovery in the LCvR 7m conference privately, in backchannel communications, while refusing to file any objection on the docket. That silence was not passive. It was calculated self-preservation.

Why didn't the City of Toronto oppose discovery publicly? Because even they understood that objecting—on the record—to a targeted motion aimed at uncovering fraudulent declarations, improper service, and tainted filings would signal to the Court that they were complicit in those very acts.

Indeed, the City's strategic silence confirms what is already plain: the filings at issue are so facially compromised that any attempt to defend them openly would itself be sanctionable.

Courts have long recognized that institutional silence in the face of procedural misconduct is often more revealing than overt denial. *See Int'l Union, UAW v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1149 (D.C. Cir. 1978) (where a party refrains from defending statements or conduct publicly, the court may "consider silence as an evidentiary admission");

*Glover v. United States*, 531 U.S. 198, 205 (2001) (noting that failure to challenge improper conduct may itself amount to a constitutional injury).

Here, Toronto's failure to speak was its own confession. It knew that the declarations were tainted, the conflict was real, and the motion for discovery was inevitable. So it chose the safest option available: it got out of the way.

If the City of Toronto—a sovereign defendant advised by sophisticated outside counsel—recognized that opposing this motion would be judicial suicide, then what does that say about the other Defendants still clinging to privilege and procedural evasion?

## IX. Fraud on the Court Is Not a Technicality—It Is a Death Knell

Defendants would have this Court treat their misconduct as though it were some minor, procedural irregularity—perhaps the result of oversight, ambiguity, or "disputed facts." But this is not a harmless error. It is fraud on the court, and it strikes at the very heart of judicial legitimacy.

The Supreme Court has long held that "[f]raud upon the court is fraud which seriously affects the integrity of the normal process of adjudication." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). When it occurs, it is not just voidable—it is void. The proceedings built upon it are irreparably corrupted.

The doctrine has been reaffirmed again and again across circuits:

- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme... to interfere with the court's ability to impartially adjudicate.")

- *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005) ("Fraud on the court occurs where a party... intentionally sets in motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate.")

- *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (holding that misrepresentations in discovery responses alone can constitute fraud on the court where

material to the litigation).

Here, the record is not potentially fraudulent—it is demonstrably so:

- False statements about partnership status;

- False statements about service;

- A motion filed by a lawyer under dual representation without certification;

- Tainted exhibits with no sourcing, verification, or attribution;

- Followed by silence, evasion, and procedural weaponization.

If this is not fraud on the court, then the term has no meaning.

The D.C. Circuit does not require that a party prove intent to deceive for the Court to act. "Even gross negligence that results in misleading the court may suffice where the misconduct causes prejudice to the judicial process." *Shepherd v. ABC*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).

Prejudice here is not hypothetical. It is ongoing. The motion to dismiss remains pending. The fraud remains unresolved. And Plaintiff remains forced to litigate on terrain poisoned by misconduct.

It is the obligation—not the discretion—of this Court to correct it.

## CONCLUSION

The Record Is Rotten. The Remedy Is Discovery.

This Court is not being asked to choose sides. It is being asked to uphold the basic integrity of its own docket.

At present, the Court is in possession of:

- A dispositive motion drafted under an unwaivable conflict;

- Sworn declarations that contain verifiable falsehoods;

- Exhibits of fabricated origin;

- A record no one has adopted, certified, defended, or withdrawn;

- And procedural silence from every party best positioned to clarify.

The situation is untenable. The judiciary does not operate on untested declarations filed under conflict. It does not adjudicate based on ghost-written exhibits and anonymous screenshots. And it most certainly does not turn a blind eye when every institutional signal—retreat, withdrawal, refusal to certify—indicates that a fraud has been committed.

Defendants have made a mockery of this Court's processes, then demanded deference. They filed declarations while knowing they were conflicted. They invoked privilege while refusing to disavow perjury. They oppose third-party subpoenas not to protect confidentiality—but to obstruct authentication.

And they do all this while bearing the titles of "lawyer," "officer of the court," and "employee of the minister of justice."

If the rules mean anything, if truth still matters in federal court, and if fraud on the court is still an existential threat to judicial legitimacy, then this motion must be granted.

**Let the subpoenas issue. Let the declarations be examined. Let the silence finally end.**

Dated: April 21, 2025

Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637