IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL ) | |
| Plaintiff ) | **CASE NO.:   1:24-cv-02907-CJN** |
| V. ) | |
| ) | |
| THE FOREIGN NATION OF CANADA, et al. ) | |
| Defendants. ) | |
| _____ ) | |

# **PLAINTIFF'S STATUS UPDATE REGARDING IRREMEDIABLE TAINT, AND LEWIS BAACH KAUFFMAN MIDDLEMISS' UNPARALLELED MISCONDUCT**

Plaintiff Brent Kideckel respectfully submits this status update to inform the Court that the defense posture in this case has not simply deteriorated—it has unraveled entirely. The events of the past week reflect a level of ethical failure, procedural taint, and institutional misconduct that is exceedingly rare in federal litigation. The misconduct is no longer speculative, nor isolated—it is active, escalating, and now implicates the core functionality of this Court's proceedings.

## **I. AN UNREBUTTED CONFLICT HAS GIVEN WAY TO A STRUCTURAL ETHICAL FAILURE**

More than a month ago, Plaintiff filed a detailed and fully briefed motion to disqualify attorney Jeffrey Robinson and his firm, Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"), for simultaneously representing co-defendants with irreconcilable interests: David Kideckel and Aram Simovonian. The record includes undisputed evidence of this conflict—underscored by Robinson's own partial withdrawal, acknowledging the impropriety without correcting it.



RECEIVED

APR 21 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Since then, neither Robinson nor LBKM has filed an opposition. Not even a token denial. This silence—given the gravity of the allegations—must be treated as an admission. See *Fox v. Vice*, 563 U.S. 826, 839 (2011) ("Silence, especially where explanation is owed, can only be interpreted as concession."); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 467 (S.D.N.Y. 2013) (failure to oppose disqualification may result in waiver).

But what followed this silence makes the matter even more extraordinary—and vastly more serious.

On April 16, 2025, while still technically appearing for David Kideckel and after withdrawing from Simovonian only in part, Robinson submitted a motion to dismiss on behalf of a third defendant, Dahlia Saibil. This motion was filed on Day 90, an unmistakable procedural tactic to avoid default while the disqualification motion remained pending. To be clear: Robinson, under active ethical scrutiny, submitted a dispositive filing for a third party—despite having no authority to do so free from conflict.

This is not merely improper. It is a breach of the highest order. See *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) ("The sanctity of the attorney-client relationship and the public trust in the judicial process require strict enforcement of disqualification rules."); *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982) (same).

## II. A SENIOR DEFENSE LAWYER FORMALLY WITHDRAWS— IMMEDIATELY AFTER THE TAINTED FILING

Within 24 hours of the conflicted and unauthorized motion, Christopher Barraza, then senior counsel for the City of Toronto and a partner at Phillips Lytle LLP, formally withdrew his appearance. This withdrawal was procedurally unnecessary—he had already handed the matter to junior associate Natalia Marte weeks earlier. It was also unaccompanied by any explanation.

But the timing is devastating.

To withdraw on the heels of a tainted filing is not procedural housekeeping—it is a clear signal of internal alarm. It is exceedingly rare for senior counsel to sever ties mid-litigation, absent court order, unless there is ethical exposure or unmanageable internal disagreement. Courts have consistently treated the timing of such withdrawals as highly probative. See *Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1055 (D.C. Cir. 1984) (Scalia, J., dissenting) ("Withdrawal in close proximity to an improper filing invites judicial scrutiny."); *Price v. Porter*

*Novelli, Inc.*, 2008 WL 2388705, at *4 (S.D.N.Y. June 10, 2008) (court may infer disassociation from impropriety).

Barraza's silent withdrawal did not occur in a vacuum. It occurred at the inflection point where procedural misconduct became visible, undeniable, and increasingly difficult to justify.

## III. THE DOCKET REMAINS CONTAMINATED—AND CURRENT DEFENSE COUNSEL REFUSES TO ACT

George Breen, now representing Aram Simovonian, has inherited a record mired in falsehoods and conflict—but has done nothing to remediate it. Specifically, he has failed to:

- Disavow the perjured affidavit submitted by disqualified counsel;

- Certify or clarify the status of sworn declarations submitted under false pretenses;

- Withdraw, amend, or disavow the tainted material.

This silence is damning. It not only violates the continuing duty of candor under *Model Rule 3.3(a)(3)* but actively sustains a fraud on the Court. See *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989) (fraud on the court includes continued reliance on known false documents); *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993) ("The court has both the power and duty to vacate a judgment obtained by fraud.").

It is difficult to overstate the rarity of this kind of contamination persisting after substitution of counsel. Most firms, recognizing the severity of perjury and procedural sabotage, move swiftly to clean the record. LBKM has done the opposite—it has weaponized inaction, hoping that delay and obfuscation will render the misconduct irrelevant by inertia.

## IV. LBKM'S PROFILE AND HISTORY MAKE THIS ALL THE MORE ALARMING

LBKM is not a nameless litigation boutique. It is a white-shoe firm with a high-stakes reputation for representing sovereigns, foreign nationals, and individuals involved in complex financial,

regulatory, and criminal matters. Its public case roster includes clients accused of corruption, fraud, and institutional malfeasance across multiple jurisdictions.

The fact that such a firm has now been caught submitting perjured affidavits, engaging in conflicted representation, and manipulating judicial timelines—against a pro se litigant, no less—should chill every officer of the Court. These are not "one-off" errors. They are institutional failures, suggestive of a broader pattern of reckless representation and ethical minimalism.

See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Federal courts must ensure that the litigation process is not abused by parties who violate rules designed to maintain the integrity of the judicial system."); *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) ("Attorney conduct that reflects an intent to mislead or defraud the court is subject to the harshest remedies available.").

LBKM has not merely failed to uphold professional standards—it has actively undermined them, with evident confidence that it would face no consequence.

## V. ROBINSON'S PUBLIC SERVICE STATUS DEMANDS THE HARSHEST POSSIBLE RESPONSE

That this misconduct originates from a former Deputy Assistant Attorney General is perhaps the most disturbing aspect of this matter. Robinson's prior role at the Department of Justice gave him not just knowledge of these ethical boundaries—but authority over others who crossed them.

There is no plausible claim of ignorance here. Only arrogance. What Robinson has done—representing adverse parties, submitting perjured material, and filing conflicted pleadings while a disqualification motion was pending—is not merely unethical. It is disqualifying.

See *In re Snyder*, 472 U.S. 634, 645 (1985) ("Courts may discipline attorneys who engage in conduct prejudicial to the administration of justice."); *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (prosecutors held to heightened standard of integrity given their institutional role).

The misconduct here is not "unusual." It is extraordinary. Plaintiff is unaware of any case in recent memory in which:

- A former DOJ official submitted false sworn statements,

- Continued filing motions after conceding a conflict,

- Prompted co-counsel to withdraw silently,

- And watched as substitute counsel did nothing to fix it—
—all while no opposition was filed to the disqualification motion, and the entire defense apparatus went dark.

This is not litigation. It is institutional failure disguised as advocacy.

## CONCLUSION: THE DEFENSE IS COLLAPSING UNDER THE WEIGHT OF ITS OWN FRAUD

The Court is not witnessing the unraveling of a defense through ordinary motion practice. It is witnessing a collapse driven entirely by fraud, deceit, and conscious disregard for the rules that govern every federal courtroom in this country.

The defense has not been outlitigated. It has out-deceived itself into implosion. Its silence is not strategy—it is indictment. Its filings are not defenses—they are instruments of obstruction.

**This is not a defense under siege—it is collapsing under the weight of its own fraud, and no court should be expected to carry that burden for them.**

Dated: April 21, 2025

Respectfully submitted,

*[signature]*

Brent Kideckel
Pro Se Plaintiff