IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL | ) |
|    Plaintiff | ) CASE NO.: 1:24-cv-02907-CJN |
| V. | ) |
| | ) |
| THE FOREIGN NATION OF CANADA, et al. | ) |
|    Defendants. | ) |
| _____ | ) |

# COMBINED NOTICE OF NON-OPPOSITION, RIPENESS, AND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Plaintiff Brent Kideckel respectfully submits this Combined Notice of Non-Opposition, Ripeness Statement, and Supplemental Brief in further support of his pending Motion for Sanctions against attorneys Jeffrey Robinson, Annika Conrad, and their firm, Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"), pursuant to 28 U.S.C. § 1927 and the Court's inherent authority to prevent and deter litigation misconduct.

This filing addresses three fundamental realities:

1. The motion remains entirely unopposed by those against whom it is directed;

2. The continued docket activity by conflicted counsel only compounds the taint;

3. The record now compels full sanctions, disqualification, and disciplinary referral.

## I. THE SANCTIONS MOTION IS UNOPPOSED—AND THAT CONCESSION IS PROCEDURALLY AND LEGALLY BINDING

**RECEIVED**

MAY 5 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Plaintiff filed his Motion for Sanctions on April 18, 2025. It was served electronically on all parties, including the only ndividuals subject to relief under the motion—Jeffrey Robinson, Annika Conrad and their law firm, LBKM. Pursuant to Local Civil Rule 7(b), any opposition was due no later than May 2, 2025.

No such opposition has ever been filed.

Not by Robinson.
Not by LBKM.
Not by outside counsel.
Not by a single person or entity with exposure under the motion.

This silence is not an oversight. It is calculated. It is revealing. It is, legally, a concession.

Courts in this District have long and repeatedly held that failure to oppose a dispositive motion constitutes acquiescence. *See, e.g.,*:

- *Twelve John Does v. D.C.*, 117 F.3d 571, 577 (D.C. Cir. 1997) (failure to respond "may be deemed a concession");

- *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) ("[T]he failure to oppose… can be taken as agreement with the movant.");

- *Local Civil Rule 7(b)*: "If… a memorandum of points and authorities in opposition… is not filed within the prescribed time, the Court may treat the motion as conceded."

The D.C. Circuit has left no room for ambiguity: silence in the face of a detailed sanctions motion is not a neutral act—it is a procedural forfeiture and strategic surrender. It allows the Court to rule without further briefing, and may serve as the sole basis for relief. *See FDIC v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997) (failure to oppose "entitles the movant to summary relief").

That silence is even more damning here given the gravity of the allegations—deliberate misrepresentations, conflict-tainted pleadings, ratified perjury, and obstruction of the judicial process. If Robinson or LBKM had even the slightest factual defense or ethical justification for their conduct, the bare minimum professional expectation would be to assert it.

Instead, they have chosen to say nothing—because there is nothing they can say without exposing themselves to even deeper judicial scrutiny and reputational ruin.

This is not a case of missed deadlines or clerical error. It is a strategic act of concealment, an attempted evasion of accountability that only sharpens the need for an immediate and forceful judicial response.

## II. PROCEDURAL MISDIRECTION AND GAMESMANSHIP CONFIRM RIPENESS AND BAD FAITH

If there was any doubt about whether Robinson and LBKM understood the seriousness of the sanctions motion—or its deadline—those doubts were eliminated on May 2, 2025.

That date was no coincidence: it was the last possible day to file any opposition under Local Civil Rule 7(b). And rather than respond to the sanctions motion—directed at their own conduct—Robinson filed something else entirely: a misleading, procedurally tainted brief to oppose a different motion, filed only on behalf of Dahlia Saibil, a separate defendant.

That filing:

- Did not respond on behalf of LBKM or Robinson;

- And was filed under unresolved conflicts of interest.

Such tactics are precisely what § 1927 was designed to deter.

As the Supreme Court stated in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980), § 1927 targets conduct that "multiplies the proceedings in any case unreasonably and vexatiously." Here, rather than reduce confusion or offer a good faith defense, Robinson chose to generate further confusion—intentionally—as part of an ongoing litigation pattern.

The D.C. Circuit and other federal courts have repeatedly sanctioned similar behavior:

- *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (affirming sanctions where counsel engaged in "a pattern of delay and obfuscation" and attempted to avoid discovery orders through procedural stalling);

- *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977) ("Bad faith may be inferred where an attorney misuses the court system to frustrate its orderly process.");

- *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992) ("An attorney who knowingly participates in deceptive filings or conceals material facts undermines the integrity of the judicial process.");

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (recognizing the court's inherent authority to sanction parties who act in bad faith, "vexatiously, wantonly, or for oppressive reasons").

The May 2, 2025 filing is not just procedurally defective—it is affirmative evidence of continued misconduct. It demonstrates Robinson's intent to manipulate the Court's calendar, muddy the record, and delay adjudication of a sanctions motion that he clearly views as indefensible.

Worse still, he used that delay to further weaponize the docket: filing on behalf of a co-defendant he is ethically conflicted from representing, in a manner that extends the reach of taint while sidestepping the very motion that exposes his personal liability.

This type of "strategic misdirection" has been repeatedly condemned by courts as sanctionable:

- *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, No. CV 14-04191, 2017 WL 10518034, at *6 (C.D. Cal. Sept. 12, 2017) (sanctioning counsel for "filing misleading declarations" and motions intended to obstruct resolution);

- *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990) ("Filing frivolous motions with no basis in law, solely to delay or harass, supports the imposition of severe sanctions.");

- *Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) (affirming sanctions where counsel used "filings for ulterior, obstructive purposes").

The Court is now faced with an unmistakable truth: rather than rebut the evidence, Defendants chose misdirection. Rather than dispute the record, they manipulated it. Rather than take responsibility, they doubled down on deception.

This confirms what the procedural silence already implied: the motion is ripe, unopposed, and the behavior it describes is not merely past—it is ongoing.

# III. FAILURE TO RETAIN OUTSIDE COUNSEL REVEALS INSTITUTIONAL BREAKDOWN AND BAD-FAITH CONTINUATION

In federal litigation, particularly where a motion for sanctions targets a party's own attorneys for unethical or unlawful conduct, the engagement of independent outside counsel is not optional—it is imperative.

It is not only customary across the legal profession; it is rooted in foundational ethical duties of candor, loyalty, and the avoidance of self-dealing. Where a firm or individual lawyer is directly accused of misconduct, representation of oneself or continued filings by co-counsel within the same conflicted firm violates both the appearance and the substance of neutrality and good faith.

Yet here, not only has no outside counsel appeared on behalf of either Jeffrey Robinson or LBKM, the firm has doubled down—continuing to file, to argue, and to actively litigate through the same tainted counsel identified in Plaintiff's sanctions motion.

This is no longer a mere conflict of interest. It is institutional malpractice. And courts do not—and cannot—permit it.

## A. The Ethical Obligation to Cease Representation When Conflicted

The ABA's Model Rules, the D.C. Rules of Professional Conduct, and binding federal precedent all make clear: when a conflict arises that materially limits the lawyer's ability to represent a client—or worse, when the lawyer becomes personally exposed in the litigation—continued participation is improper.

- ABA Formal Opinion 91-361: A lawyer must withdraw when continued representation would violate ethical rules, including conflicts of interest and the duty of candor to the tribunal.

- Model Rule 1.7(a) (Conflict of Interest: Current Clients): A lawyer shall not represent a client if the representation involves a concurrent conflict of interest.

- Model Rule 3.3(a) (Candor Toward the Tribunal): A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement previously

    made.

Here, the very individuals who have been credibly accused of filing conflicted pleadings, ratifying perjury continue to appear in this matter with no firewall, no disclaimer, and no separation of roles.

That alone warrants disqualification. *See*:

- *Alexander v. FBI*, 541 F. Supp. 2d 274, 301 (D.D.C. 2008) (disqualifying attorneys where conflict created serious appearance of impropriety);

- *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 106 (D.D.C. 2013) (noting even potential conflict may warrant disqualification to protect "public confidence in the integrity of the judicial process");

- *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 12942202 (N.D. Cal. Oct. 14, 2015) (imposing $644,000 in sanctions after failure to segregate conflicted counsel and continuing to litigate through tainted representation).

## B. The Absence of Outside Counsel Reflects Conscious Avoidance, Not Oversight

This is not an isolated procedural misstep—it is the strategic omission of outside counsel in a sanctions matter where personal and professional liability is plainly at stake.

The only reasonable inference is that LBKM, and Robinson personally, fear that outside review would lead to deeper disclosure of wrongdoing. That the decision to self-represent—even in a motion concerning their own misconduct—is not born of ignorance, but of desperation and calculated evasion.

The choice to continue litigating through tainted counsel is not merely ethically questionable—it is itself an act of bad faith, and one the Court must recognize as an aggravating factor under § 1927.

As the Supreme Court held in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991), the court's inherent power to impose sanctions extends to conduct that offends judicial integrity. When a

party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," the Court has full authority to act—*even absent direct violation of a rule*.

Here, we have more than disruption. We have a firm-wide concealment strategy that continues to this day.

## C. Continued Appearance Undermines Judicial Confidence and Warrants Immediate Disqualification

There is no plausible justification for LBKM's decision to continue filing motions through Robinson and Conrad for Defendant Dahlia Saibil, while failing to retain any independent representation despite a live sanctions motion against them for fraud, conflict, and procedural abuse.

The appearance of impropriety is now undeniable. So too is the fact that no procedural correction has been attempted. No withdrawal. No clarification. No disavowal.

This behavior reflects a broader institutional breakdown inside LBKM—where reputation management has overtaken legal compliance, and where partners appear more focused on avoiding internal consequences than upholding ethical duties to the Court.

This is the precise scenario in which disqualification and sanctions operate—not merely to punish, but to protect the court itself from the corrosive effects of unchecked misconduct.

- *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 986 (9th Cir. 2000) ("Disqualification is warranted where continued representation might taint the integrity of the judicial process.");

- *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) ("The guiding principle is safeguarding the public interest in the integrity of the judicial process.");

- *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) ("Even the appearance of impropriety must be avoided to ensure public confidence in the system.")

Their refusal to retain outside counsel, even after being credibly accused of fraud, conflict, and obstruction, is not a neutral act.

It is itself a further abuse of process—and it reinforces the need for immediate sanctions, disqualification, and professional referral.

# IV. THE LEGAL STANDARD FOR SANCTIONS IS SATISFIED BEYOND DOUBT—AND FULL MONETARY RELIEF IS WARRANTED

The sanctions authorized under 28 U.S.C. § 1927 are not discretionary in the abstract—they are mandatory where the conduct clearly satisfies the statutory elements. In this case, every prong of the § 1927 standard is met—and exceeded—by a wide margin.

As a reminder, § 1927 provides that:

"Any attorney… who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The D.C. Circuit has interpreted § 1927 to require a showing that:

1. The attorney engaged in unreasonable and vexatious conduct;

2. The conduct multiplied the proceedings;

3. The conduct was undertaken in bad faith.

See *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998); *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006); *Johnson v. Holway*, 522 F. Supp. 2d 12, 18–19 (D.D.C. 2007).

Each of those elements is met here.

## A. The Conduct Was Unreasonable and Vexatious

Robinson and LBKM have engaged in a prolonged pattern of filings that were:

- Procedurally conflicted;

- Based on demonstrably false premises;

- Supported by misattributed evidence;

- Filed without correcting known ethical breaches;

- And designed to obfuscate, mislead, and delay.

This is not just unreasonable—it is deliberately vexatious. The D.C. Circuit has made clear that sanctions under § 1927 are proper when an attorney "pursues claims that are plainly lacking in merit or files papers for an improper purpose." *LaPrade, 146 F.3d at 905*.

Robinson's conduct is not isolated—it is systemic. And LBKM's institutional silence is not passive—it is enabling.

- *Dixon v. BGE Home*, No. 20-cv-359, 2021 WL 3617671, at *5 (D. Md. Aug. 16, 2021) (imposing § 1927 sanctions where counsel filed repeated, facially defective pleadings to delay judgment);

- *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 225 (4th Cir. 2008) (affirming sanctions for filings that had "no reasonable legal or factual basis").

## B. The Proceedings Were Knowingly and Significantly Multiplied

Robinson's filings did not merely fail to advance the litigation—they polluted it. The Court has now expended significant time, effort, and attention parsing issues that would not exist but for the misconduct of LBKM.

Plaintiff, acting pro se, has been forced to respond to:

- Multiple filings infected with undisclosed dual representation;

- Conflicted motions from attorneys acting on behalf of defaulted and non-defaulted parties simultaneously;

- Deliberate misrepresentations of evidence and jurisdiction;

- And now, the complete refusal to engage on a sanctions motion seeking $400,000 in judicially recoverable expenses.

This is textbook multiplication of proceedings:

- *Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1133 (N.D. Cal. 2007) (awarding sanctions under § 1927 where counsel persisted with meritless claims

- and refused to withdraw tainted filings);

- *Rocheux Int'l of N.J. v. U.S. Merchants Fin. Grp., Inc.*, No. 06-6147, 2009 WL 3246837, at *10 (D.N.J. Oct. 7, 2009) (granting § 1927 sanctions for "unnecessary and wasteful" briefing strategies that delayed resolution).

Here, the taint is not collateral—it is foundational. There is no aspect of this proceeding that has not been infected by the bad-faith tactics of Robinson and LBKM. Their conduct has made justice slower, costlier, more burdensome, and more confusing—exactly the outcome § 1927 seeks to deter.

## C. The Conduct Was Undertaken in Bad Faith

Bad faith is the cornerstone of § 1927, and it is demonstrated unequivocally here. Courts may infer bad faith where:

- Counsel makes misrepresentations to the Court;

- Ignores or conceals ethical conflicts;

- Uses the legal process as a weapon of delay or deception;

- Or persists in improper filings after being warned of impropriety.

Each of these applies. Robinson was explicitly placed on notice of conflict, taint, and exposure. LBKM had ample opportunity to withdraw, retain outside counsel, or correct the record.

They did none of those things.

Instead, they escalated. They filed more pleadings, served more motions, and continued acting under false pretenses—while remaining silent in the face of a dispositive motion for sanctions.

This Court has sanctioned similar conduct under both § 1927 and its inherent authority:

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991);

- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119–20 (1st Cir. 1989) (bad faith found where attorney filed complaint based on falsified contract);

- *Tacoronte v. Cohen*, No. 6:13-cv-418, 2016 WL 865329, at *4 (M.D. Fla. Mar. 7, 2016) (sanctions for intentionally filing misleading motion and attempting to shield client conduct);

- *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) (affirming $114,000 sanction for vexatiously multiplied proceedings).

### D. Sanctions Are Not Merely Permitted—They Are Compelled

To refrain from imposing sanctions here would not be an exercise of judicial restraint—it would be an abdication of responsibility. As courts have recognized:

"The judicial system cannot function if lawyers are allowed to manipulate it with impunity. Sanctions are essential not only to discipline offenders, but to maintain public confidence in the administration of justice."
— *Stanley v. Woodford*, 449 F. Supp. 2d 1089, 1097 (E.D. Cal. 2006)

This is not a borderline case. It is an archetype of what § 1927 was enacted to remedy. The record is complete, the facts are uncontroverted, and the prejudice is manifest.

## V. FEDERAL COURTS ROUTINELY AWARD SIX-FIGURE SANCTIONS FOR COMPARABLE MISCONDUCT

The egregiousness of Robinson and LBKM's conduct is matched only by their refusal to defend it. And their silence stands in contrast to the judiciary's well-documented willingness to impose substantial financial penalties for similar—or lesser—abuses of process.

Courts across the country have awarded six-figure sanctions under § 1927 where attorneys:

- Filed frivolous or conflicted pleadings;

- Refused to withdraw tainted submissions;

- Misrepresented facts to the tribunal;

- Or used litigation as a tool of harassment or delay.

Plaintiff respectfully submits that the $400,000 sanction requested here is not only appropriate, but well-aligned with existing precedent:

- GSI Tech., Inc. v. United Memories, Inc., No. 5:13-cv-01081, 2015 WL 12942202 (N.D. Cal. Oct. 14, 2015)
  ➤ *Sanction: $644,000*
  ➤ Attorney disqualified for dual representation and submitting tainted filings that poisoned the case strategy and discovery.

- Stanley v. Woodford, 449 F. Supp. 2d 1089, 1097 (E.D. Cal. 2006)
  ➤ *Sanction: $148,000*
  ➤ Based on knowingly false discovery filings despite explicit court warnings.

- Matter of Yagman, 796 F.2d 1165, 1184 (9th Cir. 1986)
  ➤ *Sanction: $250,000*
  ➤ For filings designed to provoke judicial hostility and undermine integrity of proceedings.

The misconduct in this case matches or exceeds the gravity of those precedents. Robinson and LBKM's actions were not isolated. They were part of a systematic strategy of taint, marked by misrepresentation, concealment of conflict, silence in the face of sanctions, and continued weaponization of the docket through ethically prohibited representation.

$400,000 is a modest figure by comparison. Indeed, any lesser sanction would risk signaling to future bad-faith litigants that even the most outrageous conduct can be ignored, delayed, and eventually buried beneath procedural evasion.

The monetary sanction should not only compensate for harm—it must deter repetition. And this Court's ruling must serve as a public declaration that no firm—no matter how established—may defraud federal courts with impunity.

# VI. LBKM'S CONDUCT RISES TO FRAUD UPON THE COURT —AND UPON THE UNITED STATES

At this stage, it is no longer adequate to characterize LBKM's behavior as merely unethical or procedurally flawed. The evidence reflects a sustained and deliberate effort to defraud the judicial process through:

- Knowingly conflicted representation in violation of D.C. Rule 1.7;

- Filing motions based on misattributed, fraudulent evidence;

- Refusing to respond to a sanctions motion that directly implicates fraud;

- And concealing the very existence of taint from the Court.

This is not adversarial advocacy. This is fraud upon the United States.

## A. Fraud on the Court Threatens the Foundations of Judicial Legitimacy

The Supreme Court has held that fraud on the court "is a wrong against the institutions set up to protect and safeguard the public." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). It is not just an injury to an opposing party—it is "an injury to the integrity of the judicial process itself." Id.

Further:

- *United States v. Throckmorton*, 98 U.S. 61, 66 (1878): Fraud upon the court renders judgments void;

- *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989): "A 'fraud upon the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate."

Here, LBKM has:

- Represented multiple clients in the same litigation with directly adverse interests— without disclosure or waiver;

- Knowingly filed pleadings that include or rely on perjured affidavits;

- Failed to withdraw after their conduct became the subject of sanctions;

- Remained silent rather than defend their own actions—while continuing to pollute the docket.

This is not procedural misjudgment. It is a coordinated scheme to exploit the court system while obstructing any meaningful oversight or accountability.

## B. Court May, In Its Discretion, Refer the Conduct for Investigation Under Federal Law

Plaintiff acknowledges that referrals for criminal or disciplinary investigation lie squarely within the Court's discretion. However, the record now reflects conduct that, if substantiated, may implicate federal statutes concerning obstruction of justice, false statements, and conspiracy against the integrity of the judicial process.

Specifically, the following statutes may be relevant:

- 18 U.S.C. § 371 – Conspiracy to defraud the United States;

- 18 U.S.C. § 1001 – False statements in a matter within federal jurisdiction;

- 18 U.S.C. § 1503 – Obstruction of justice.

These provisions are not invoked lightly. But where a party continues to litigate through conflicted counsel, files pleadings based on misrepresented evidence, and refuses to respond to a sanctions motion that directly implicates the integrity of the proceeding, the possibility of broader statutory violations cannot be ignored.

As the Supreme Court has emphasized, fraud upon the court is not merely an affront to an opposing party—it is "a wrong against the institutions set up to protect and safeguard the public." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

Here, every indicator of such wrongdoing is present:

- An ongoing judicial proceeding;

- Knowledge of the proceeding by the accused;

- Conduct aimed at influencing or impeding the process;

- And deliberate misrepresentations made with intent to mislead.

The Court, in its supervisory role, may determine whether referral to the U.S. Attorney's Office for the District of Columbia or other investigative bodies is warranted. Such a referral would not prejudge liability, but would ensure that the conduct at issue is subjected to appropriate independent scrutiny.

In addition, Plaintiff respectfully submits that the Court may also consider referral under D.C. App. Rule XI, § 1(a) to the D.C. Office of Disciplinary Counsel, which governs attorney conduct. That rule authorizes action where an attorney engages in "dishonesty, fraud, deceit, or misrepresentation which seriously interferes with the administration of justice."

## VII. Notice of Intended Use in Ontario Court of Appeal Proceedings Regarding Fraudulent Default Judgment and Rule 57.07 Sanctions

Plaintiff respectfully notifies this Court and all relevant parties that any monetary sanctions or findings of misconduct issued by this Court—including but not limited to sanctions under 28 U.S.C. § 1927—will be submitted to the Ontario Court of Appeal in connection with Plaintiff's ongoing challenge to a default judgment that was procured through fraud and remains improperly enforced by Aram Simovonian and his law firm, Lima Lee Simovonian LLP.

That judgment rests upon a perjured affidavit of service submitted by Mr. Simovonian, who swore—under penalty of perjury—to having served Plaintiff by email. That affidavit:

- Fails to attach or describe the email in question;

- Was never supported by any server log, read receipt, or contemporaneous correspondence;

- Has never been supplemented or corrected—despite Plaintiff's repeated public allegations of perjury;

- And remains the sole basis upon which default was obtained in Ontario, in a case where Plaintiff resides in the United States and was never served under the Hague Service Convention, as required by Rule 17 of the Ontario Rules of Civil Procedure.

To date, Mr. Simovonian has refused to rebut the perjury allegations in any jurisdiction, including before this Court—even while continuing to litigate the underlying fraud as counsel of record for other parties.

More egregiously, he and his firm continue to weaponize that false affidavit to oppose Plaintiff's Rule 19 motion to set aside default in Ontario, thereby forcibly excluding Plaintiff from participating in a proceeding they knew to be fraudulently initiated.

Plaintiff intends to bring the sanctions award issued by this U.S. District Court before the Ontario Court of Appeal to demonstrate that:

- The default judgment was obtained by fraud on the court;

- That material perjury was knowingly submitted and remains unrebutted;

- And that cost consequences under Rule 57.07 must attach to both Mr. Simovonian and Lima Lee Simovonian LLP, who have knowingly sustained the fraud through continued litigation.

Ontario appellate courts have repeatedly held that fraudulently obtained default judgments must be set aside and that cost sanctions under Rule 57.07 are appropriate where counsel has misled the court, submitted false affidavits, or abused process:

- In Montrose Mortgage Corp. v. Kingsway Property, [1996] O.J. No. 1200 (C.A.), the Court of Appeal held that a party cannot enforce a judgment "tainted by deception, falsehood, or omission of material fact."

- In Galganov v. Russell (Township), 2012 ONSC 204, the Court held that knowingly misleading the court through affidavit evidence justifies Rule 57.07 costs against both the lawyer and the firm responsible for the misconduct.

- In Kayhan v. Kayhan, 2022 ONSC 6748, the court reaffirmed that "service fraud" and "false affidavits of record" invalidate proceedings ab initio and compel cost sanctions against counsel for abuse of process.

Plaintiff expressly reserves the right to submit any and all findings and orders issued by this Court to the Ontario Court of Appeal, along with a renewed application for:

- An order vacating the underlying default judgment;

- An evidentiary hearing on the affidavit of service and procedural abuse;

- And personal costs against Aram Simovonian and Lima Lee Simovonian LLP under Rule 57.07 for maintaining a judgment they knew—and still know—was obtained through perjury.

This Court's ruling on sanctions will not end the misconduct. But it will serve as the foundation for appellate relief in Ontario and further support for disciplinary consequences across jurisdictions.

## VIII. CONCLUSION AND RELIEF REQUESTED

The record is complete. The misconduct is unopposed. The harm is ongoing.

What began as a single filing infected by conflict has metastasized into a full-scale procedural crisis. This Court has now been forced to navigate a minefield of:

- Dual representation;

- Deliberate misstatements;

- Conflicted pleadings;

- Procedural deflection;

- Ratified perjury;

- And absolute silence in the face of judicial inquiry.

This is not litigation—it is sabotage of the rule of law. No court can function—nor be seen to function—when its procedures are weaponized by those trained and licensed to protect them.

Sanctions are not a punishment here. They are a moral and institutional necessity.

Accordingly, and in order to protect the integrity of these proceedings and deter future abuse of process, Plaintiff respectfully requests that the Court grant the following relief:

1. Deem the Motion for Sanctions under 28 U.S.C. § 1927 fully conceded by Defendants Jeffrey Robinson, Annika Conrad and Lewis Baach Kaufmann Middlemiss PLLC pursuant to Local Civil Rule 7(b);

2. Declare the motion ripe for immediate adjudication, without the need for further briefing or hearing;

3. Strike the May 2, 2025 filing submitted on behalf of Defendant Dahlia Saibil as procedurally defective, ethically compromised, and intentionally misleading;

4. Impose monetary sanctions in the amount of $678,000, calculated as the originally requested $400,000 grossed up for self-employment and marital tax consequences under the California joint filing rate (approx. 41% combined federal/state marginal rate), payable personally and solely by Jeffrey Robinson;

5. Impose an additional punitive sanction, in an amount to be set by the Court, payable to the D.C. Bar Pro Bono Center—or, in the alternative, to the National Center for Access to Justice—in recognition of the harm caused to pro se litigants and the judicial process by conflict-ridden, procedurally abusive tactics;

6. In the Court's discretion, refer the conduct of Jeffrey Robinson, Annika Conrad, and LBKM to the D.C. Office of Disciplinary Counsel under D.C. App. Rule XI, § 1(a), for acts of dishonesty, fraud, and misrepresentation that have severely interfered with the administration of justice;

7. And grant such other and further relief as the Court deems just, necessary, and in service of judicial integrity.

Dated: May 4, 2025

Respectfully submitted,

*Brent Kideckel*

Brent Kideckel
Pro Se Plaintiff
P.O. Box 20901

Floral Park, NY 11002

BrentKideckel@gmail.com