IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL

          Plaintiff

    V.

THE FOREIGN NATION OF CANADA, et al.

       Defendants.

CASE NO.:    1:24-cv-02907-CJN

# PLAINTIFF'S SUPPLEMENTAL BRIEF TO MOTION TO DISQUALIFY AND FOR SANCTIONS AGAINST GEORGE BREEN, ELIZABETH HARRIS, AND EPSTEIN BECKER & GREEN

## I. PRELIMINARY STATEMENT

Plaintiff files this supplemental brief in further support of his Motion to Disqualify Epstein Becker & Green, P.C. ("EBG"), George Breen ("Breen"), and Elizabeth Harris ("Harris"), ECF No. 117, in light of explosive developments that occurred after the June 16 filing. These events have materially intensified the ethical crisis already presented and revealed a pattern of bad-faith litigation conduct, fraudulent ratification, and institutional defiance of judicial process that can no longer be ignored or excused.

On June 19, 2025, the Ontario Superior Court of Justice denied the fraudulent default judgment application filed by David Kideckel and Aram Simovonian. During oral argument before Justice Akazaki, it was revealed—unequivocally—that service of the Ontario claim was fraudulent, and

RECEIVED

JUN 25 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

that both Mr. Simovonian and David Kideckel knowingly misled the tribunal in pursuit of a symbolic foreign judgment. Simovonian, while represented by George Breen in the U.S. litigation and allegedly represented by EBG's junior Elizabeth Harris, requested a permanent injunction against Plaintiff on the basis that Plaintiff's prior filings with Canadian appellate courts were "harassing." (Exhibits C-F) These statements—on their face—expose an international abuse of process and are now imputed to counsel at EBG who continued representation after the hearing.

In the wake of the Ontario ruling, Plaintiff attempted a 7(m) conference with EBG on June 21, 2025, requesting ethical compliance in light of the newly established fraud. EBG's reply, astonishingly, adopted the fraud even further—making representations on behalf of Simovonian and opposing the proposed motion, despite facing active disqualification and sanctions proceedings. EBG's failure to disengage from its client following the exposure of fraud, and its brazen willingness to speak on behalf of Simovonian in the face of multiple active judicial proceedings, constitutes a procedural and ethical implosion. That EBG did so after explicit warning from Plaintiff that the 7(m) conference constituted a procedural ethics check—designed not to trick but to test their integrity—renders their continued appearance before this Court indefensible.

This supplemental brief expands the record of:

- Fraud on a foreign tribunal, now exposed;

- Compounded fraud on this Court by the same parties and lawyers;

- Affirmative ratification of that fraud by EBG after notice;

- A sham substitution of junior counsel to shield Breen from accountability; and

- Continued litigation conduct in direct conflict with their ethical duties.

Plaintiff does not file this lightly. But he has now single-handedly exposed coordinated abuse of the judicial process in two jurisdictions, and this Court has been provided the evidence—most of which comes from the Court's own docketing system—that confirms Robinson was terminated, Breen was aware, and the entire defense bar stood by.

This brief requests that the Court take judicial notice of additional unrebutted filings, including Plaintiff's reply brief in support of default against David Kideckel, the request for certification, the notice of fraud ratification, and the default filings against Aram Simovonian. These are

critical because they illuminate the conscious strategy employed by EBG to circumvent professional rules, mislead the tribunal, and launder fraudulent litigation across borders—all while daring to hold themselves out as ethical thought leaders.

## II. EBG'S POST-HEARING CONDUCT CONSTITUTES FURTHER RATIFICATION OF FRAUD

The June 19, 2025, Ontario hearing before Justice Akazaki was a procedural reckoning. It confirmed what Plaintiff has asserted from the outset: the claims brought against him in Ontario were the product of fraudulent service, perjured and fabricated filings, and an intentional effort to secure a symbolic judgment through deception of a foreign court. It was further revealed that Mr. Simovonian—who purports to represent Defendant David Kideckel, a central co-conspirator—sought a permanent injunction against Plaintiff not for any lawful or equitable reason, but simply because Plaintiff had appealed to higher courts and was unlikely to return to Canada.

This conduct shocked the Ontario bench. And it should chill this Court as well.

Yet, even after these revelations, and while this Court is actively considering a motion to disqualify EBG and impose $550,000 in sanctions for misconduct, EBG has chosen to double down. On June 21, following the Ontario hearing, Plaintiff served a detailed 7(m) conference email to EBG, explicitly warning that "you are facing disqualification and sanctions and are now on notice of client fraud." Plaintiff made clear that proceeding forward would only compound the firm's exposure.

EBG replied not with caution, but defiance. Their response:

- Asserted Simovonian's position directly, despite being under fire for conflicts and fraudulent conduct;

- Refused to recuse themselves despite the pending motion for disqualification; and

- Failed entirely to disclose the known fraud that was now a matter of public record in two tribunals.

This is not mere procedural error. It is a willful continuation of a strategy of deception. EBG cannot feign ignorance. It cannot plead miscommunication. The firm was placed squarely on

notice that their client had committed fraud in a foreign tribunal. The Plaintiff warned them this was an ethics test. They failed it. Badly.

Moreover, the person who responded on EBG's behalf—Elizabeth Harris—is the same junior attorney who was sham-substituted in for George Breen weeks ago. As established in the underlying DQ motion, Harris's appearance is a ruse; she was involved from the inception, has no authority independent of Breen, and now finds herself acting as the face of a fraud-ridden litigation strategy that her firm refuses to unwind.

Rather than withdraw or notify the Court, EBG made representations on behalf of a client who had just been exposed for perjury and who, as this Court knows, was subject to a motion for default for taint and toxicity. This is not strategic error—it is a conscious act of ratification.

The legal consequence of such conduct is clear. See *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) ("A firm which knowingly participates in a conflict-ridden representation, and then compounds the conflict, must be disqualified."); see also *Matter of Gopman*, 531 F.2d 262, 266 (5th Cir. 1976) ("Disciplinary rules are not aspirational. They are mandatory.").

EBG's conduct has now gone from questionable to indefensible. This Court should disqualify the firm without further delay.

## III. THE ONTARIO HEARING CONFIRMS FRAUD, ABUSE OF PROCESS, AND BAD FAITH CONDUCT BY SIMOVONIAN—NOW IMPUTED TO EBG

The June 19, 2025, Ontario hearing before Justice Akazaki was no ordinary procedural event. It was a dissection of fraud in real time. In open court, Mr. Simovonian confessed to a legal strategy that shocks the conscience and implicates every actor who endorsed it—including his U.S. counsel, Epstein Becker & Green, who has now adopted that strategy before this Court.

At the hearing, Mr. Simovonian:

- Conceded that the action in Ontario was not meant to be enforced but was instead "symbolic";

- Claimed he had no intent to collect and that Plaintiff would "never return to Canada," a statement so chilling and arrogant that Justice Akazaki was visibly disturbed;

- Argued for a permanent injunction—not based on merit or conduct—but merely because Plaintiff had dared to exercise appellate rights in Canada, which he described as "harassment";

- Claimed, for the first time, that service emails were sent as early as March 2024, despite his affidavit stating formal service was executed in May;

- Introduced a fabricated email from an alleged employee named "Vanessa" at Scalzi Caplan LLP—an individual who does not seem to exist and;

- Did all this after already being advised by the Court that service must proceed through the Hague Convention.

This was not simply a failed procedural effort. It was a demonstration of intentional fraud—fraud that the Ontario court saw plainly, and that this Court must now confront directly.

More troubling still, Mr. Simovonian engaged in this behavior while being represented by George Breen and now Elizabeth Harris of EBG. Breen—who has long marketed himself as an expert on legal ethics—was the co-architect of Simovonian's defense in the United States, and Harris was substituted in under circumstances already detailed as fraudulent and obstructive. These attorneys cannot now separate themselves from the scheme their client admitted to. They are part of it.

Indeed, under settled law, a client's fraud known to counsel and not repudiated becomes the fraud of the counsel. See *In re Snyder*, 472 U.S. 634, 644–45 (1985); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). The Ontario hearing not only confirmed the factual basis of Plaintiff's claims—it created a duty on the part of EBG to immediately take remedial steps. They did not. They chose silence, then adopted the fraud.

This Court need not await the written decision from Justice Akazaki to act. Fraud on a foreign tribunal is no less serious than fraud on this one. And this Court now has an evidentiary record— pleadings and declarations—that make clear: EBG's client has committed fraud, and EBG has embraced it.

The Court should draw the necessary inference. EBG has become a co-conspirator.

## IV. IT WAS MORE THAN A 7M; IT WAS A PROCEDURAL ETHICS CHECK AND EBG FAILED

Following the June 19 Ontario hearing and in full view of mounting evidence of transnational fraud, Plaintiff issued a Rule 7(m) conference invitation to EBG on June 21. The language of that notice was deliberate and clear: EBG was advised that their firm was facing disqualification and sanctions, that their client had been implicated in fraud on a foreign tribunal, and that the requested relief would include compelled discovery. The invitation concluded with the cautionary sentence: *"It is expected that you will handle this accordingly."*

EBG did not handle it accordingly. Instead, it revealed its own procedural and ethical incompetence.

On June 24, EBG—through Elizabeth Harris—responded with what can only be described as a perfunctory, dismissive email. It purported to represent Mr. Simovonian's views on discovery and ignored entirely the ethical gravity of the situation. This was not merely a lapse in tone or formality—it was a procedural test, designed to assess whether EBG understood its ethical responsibilities or would again blindly act on behalf of a client it cannot represent.

Plaintiff had already warned this Court—in the motion to disqualify—that EBG's substitution of counsel was a sham to evade scrutiny, that Harris had been involved since the outset, and that any continued representation would deepen EBG's exposure. EBG was on full notice. Still, it failed.

This ethics check was not gamesmanship; it was a legal mechanism of ethical accountability. Had EBG acknowledged the conflict, admitted it could no longer act, or even deferred pending further review, it might have preserved a sliver of institutional credibility. Instead, EBG—knowing the fraud, knowing the ethical posture, and knowing its own exposure—chose to engage, to respond on behalf of a client they are barred from representing, and to once again reinforce the very obstruction Plaintiff had warned of.

Their failure here mirrors their failure in the sham substitution. As before, arrogance overrode duty. This Court is now invited to take judicial notice that this is no longer procedural confusion—it is deliberate misconduct. EBG had an opportunity to deescalate. Instead, it re-escalated its ethical collapse.

## V. REQUEST FOR JUDICIAL NOTICE

Plaintiff respectfully renews and expands his request for judicial notice of filings already on the docket, which collectively illuminate a transnational fraud that now directly implicates Epstein Becker & Green, P.C. ("EBG") and its attorneys.

1. **Reply in Support of Entry of Default Against David Kideckel (ECF No. 29)**

    This reply includes a May 2024 email from David Kideckel requesting that Plaintiff serve him by email. At the time, Plaintiff—knowing that he had committed no actionable wrongdoing and unaware that Canada permitted email service—did not participate in the charade. Unknown to Plaintiff, Mr. Simovonian would later exploit Plaintiff's past to claim he ignored valid service, which has now been exposed as legally ineffective and procedurally fraudulent. Mr. Simovonian's story collapsed in Ontario, but this email already before this Court shows that service was not merely defective—it was manipulated.

2. **Request for Certification (ECF No. 77)**

    Filed after substitution of George Breen for Jeffrey Robinson— for the well-established improper dual representation—this unanswered Request shows that Mr. Breen was put on notice and invited to certify or disavow the record— and choose silence. It is directly relevant to the emerging record that EBG, George Breen, and Elizabeth Harris all ignored.

3. **Notice of Ratification of Fraud by George Breen (ECF No. 104)**

    This notice was served on all counsel of record and placed EBG and its attorneys on unambiguous notice that their client's factual narrative had collapsed in Ontario. Instead of disassociating, EBG responded with, again— silence.

4. **Motion for Entry of Default Against Aram Simovonian (ECF No. 103)**

    Filed as a direct response to Mr. Simovonian's continued extrajudicial conduct and misrepresentations, this motion places on record the procedural fraud that EBG has now adopted by proxy. It is significant in demonstrating EBG's ongoing knowledge and endorsement of foreign litigation misconduct and is the cause that effected Mr. Breen to end his short-lived ride on Mr. Simovonian's counsel carousel.

**5.   Reply in Support of Default Against Aram Simovonian (ECF No. 120)**

This reply refutes Simovonian's claims of lawful service and notes his contradictory statements between tribunals. EBG's continued refusal to withdraw is no longer a professional disagreement. It is complicity.

Plaintiff requests that the Court take judicial notice of these five filings as evidence of actual knowledge, deliberate indifference, and now, willful entrenchment in fraud by EBG and its counsel. Each was filed prior to the 7(m) conference request. Each was ignored. EBG's continued presence in this case is no longer tenable. Their inaction is not neglect. It is strategy.

## VI. DOUBLE FRAUD: FOREIGN AND DOMESTIC

EBG's misconduct now transcends zealous advocacy and has crossed into calculated complicity in a *dual-front fraud*—one against a foreign tribunal, and the other against this Court. They did not just inherit this fraud. They adopted it, repackaged it, and now purport to defend it.

This Court has already taken judicial notice of a pattern of deception by Jeffrey Robinson, whose court termination is now memorialized across 15+ NEF tags. But this is not isolated misconduct. EBG's client, Mr. Simovonian, is not a layperson misled by counsel. He is a practicing attorney. An officer of the court. And he has fabricated his entire narrative—while EBG, under the leadership of George Breen and through a sham substitution of junior attorney Elizabeth Harris, has acted as laundering agent for that fraud.

In Ontario, Mr. Simovonian represented co-defendant David Kideckel and filed an affidavit of service claiming Plaintiff was served in May 2024. That is categorically false. In open court, Simovonian changed his story, asserting that "courtesy" emails were sent as early as March 2024, including one from "Vanessa" at Scalzi Kaplan LLP. No such Vanessa seemingly exists.

Even more grotesque, Simovonian stated openly that:

- His client had *no intention* of collecting on any judgment,

- It's presumed that Plaintiff *will never set foot in Canada*, and

- That Plaintiff's appeals to the Divisional Court and Court of Appeal were "harassment" warranting a permanent injunction—sought without adjudication on the merits, at a

*default* hearing.

Such statements should chill any tribunal, and they did. Justice Akazaki denied the request at the bench. And yet, EBG, on full notice, continues to represent this same individual in this forum. They are not merely ignoring the fraud. They are extending it, submitting themselves as co-conspirators. Their failure to act after this judicial warning makes them liable not merely for unethical conduct, but for fraud by proxy.

George Breen, the self-styled "Mr. Ethics," has risked his legacy to defend a client who openly lied to a foreign tribunal, fabricated evidence and tried to criminalize due process.

EBG's continued participation in this case is an affront to the dignity of this Court and the profession.

## VII. EBG IS NOW A CO-CONSPIRATOR

EBG no longer merely stands adjacent to fraud—they now anchor it. The evidence establishes that their client, Mr. Simovonian, is not only a knowing participant in procedural misconduct, but that EBG—fully aware of this—has now adopted, advanced, and institutionalized that fraud in this tribunal.

This Court must not overlook that Mr. Simovonian is himself a licensed attorney, bound by the same ethical obligations as the lawyers purporting to represent him. He is not confused. He is not misled. He is the author of the fraud. And now EBG is its publisher.

EBG has stood by while their client has peddled wildly inconsistent timelines:

- First, the story was that Plaintiff began sending messages "out of nowhere" in January 2024.

- Then the timeline shifted to summer 2023.

- Then Simovonian claimed in Ontario court to have served Plaintiff in May 2024—a fabrication.

- In open court, this claim morphed again: Simovonian asserted that "courtesy copies" were sent by email in March, months earlier.

Even more disturbing: the only communication Plaintiff received in May was a threatening text message from Mr. Simovonian, already submitted as evidence in this Court. Days later, Mr. Simovonian had co-defendant David Kideckel file an affidavit stating they "did not know Plaintiff's whereabouts," despite the Canadian Statement of Claim listing Plaintiff's home address.

Then came the final lie—Simovonian, now on notice that service must proceed through the Hague Convention (as confirmed by Justice Akazaki), continued to prosecute his sham case. He pressed forward not with procedural legitimacy, but with criminal mendacity.

EBG's response? To stay silent. To refuse to withdraw. To attend a 7(m) conference under the guise of good faith while knowing that their client's case in Ontario had just been denied at the bench.

At this point, EBG cannot claim to be neutral or indifferent. Their continued participation is a ratification of every lie, every forged identity, every abuse of the judicial process.

They are now co-conspirators, by conduct and by silence.


## VIII. EPSTEIN BECKER'S HYPOCRISY, TACTICAL ARROGANCE, AND INSTITUTIONAL ROT WARRANT DISQUALIFICATION AND AB INITIO RELIEF

Epstein Becker & Green's conduct in this matter is not simply unethical — it is breathtakingly hypocritical. A firm that markets itself as a pillar of professional integrity, with senior partner George Breen styling himself as an ethics authority, has now been caught red-handed ratifying what amounts to a coordinated fraud on both a foreign and domestic tribunal. Their continued posturing — under the false comfort of reputation — only underscores how hollow that reputation now is.

From the outset, it is clear Epstein Becker intended to disregard a pro se litigant's valid claims of fraud and misconduct with institutional heft. They gambled that Plaintiff, without counsel, could be crushed beneath a defense bar's collective disdain. They presumed he was ghostwritten, that he lacked understanding of the tools he was using, and that his warnings were nothing more than puffery. That presumption is now demonstrably false — and it will define the downfall of their strategy.

Plaintiff's 7(m) email to Elizabeth Harris, stating: *"You are presently under disqualification and sanctions proceedings. I trust you will handle this accordingly,"* was a direct and deliberate warning — not boilerplate, not accidental, not misunderstood. It was the procedural equivalent of a detonator. And in response, Epstein Becker walked directly into the blast zone, affirmatively communicating on behalf of a client who had just been exposed by a foreign tribunal as a perpetrator of fraud. This act of knowing ratification — after Plaintiff had plainly warned of its consequences — confirms what has now become undeniable: Epstein Becker is not just tainted by this fraud. It is now a willing conduit for it.

This is the same law firm that orchestrated the sham substitution of Elizabeth Harris in place of George Breen — a move designed solely to insulate Breen from direct accountability after Plaintiff's Motion for Entry of Default against Mr. Simovonian was filed. That motion, though titled as a simple procedural step, was far more — it was a strategic reckoning. Breen could not ethically remain on record once Plaintiff placed him under a spotlight he could no longer withstand. His withdrawal was not voluntary — it was necessitated by ethical collapse.

That withdrawal, however, was not a cure. It was a signal of deeper rot — one that cannot be permitted to metastasize. Harris, as the record shows, had been involved since the beginning. The substitution was a facade. The firm's internal knowledge and coordination remain fully intact. The only solution is disqualification and the striking of every filing made by Epstein Becker *ab initio*. Anything less would allow a sophisticated litigant — an elite law firm — to launder fraud and ethical breaches through internal shuffling and delay.

This is not merely aggressive litigation. This is an abuse of process. This is not zealous advocacy. It is professional misconduct. And most damningly of all, it is hypocrisy — by a firm that knew better, marketed better, and still chose the path of fraud.


## IX. REQUEST FOR  RELIEF

Plaintiff respectfully reiterates the necessity of judicial intervention to preserve the integrity of this Court, protect its processes from further abuse, and forestall escalating and interwoven fraud by legal professionals acting under color of propriety. The conduct described herein is not isolated nor theoretical; it is substantiated by contemporaneous documentary evidence, judicial reactions from a foreign tribunal, and an unbroken pattern of bad faith litigation conduct that implicates Epstein Becker & Green, P.C., George Breen, Elizabeth Harris, and their client Mr. Aram Simovonian.

As this Court has already taken the rare step of silently terminating Mr. Robinson and has received unrebutted evidence of widespread and coordinated fraud, Plaintiff now requests that this Court:

1. Disqualify Epstein Becker & Green, George Breen, and Elizabeth Harris from further representation in this action;

2. Sanction said counsel and their firm in the amount of $550,000, as already requested in Plaintiff's June 16, 2025 Motion;

3. Take judicial notice of:

   ○ The reply brief in support of entry of default against David Kideckel;

   ○ The notice of ratification of fraud by George Breen;

   ○ The request for certification (prior to that ratification notice);

   ○ The reply brief in support of default against Mr. Simovonian; and

   ○ The Ontario bench ruling on June 19, 2025, which will be filed as soon as it is issued in written form, and whose key facts were already set forth in this supplemental filing;

4. Refer the matter of Epstein Becker & Green's conduct—particularly George Breen's repeated involvement in adopting fraud and laundering it into this tribunal—to the Court's Committee on Grievances or appropriate professional disciplinary authority;

These requests are narrowly tailored to the relief already sought in the June 16 motion, and merely update the Court with intervening conduct—including EBG's latest act of bad faith during the post-Ontario 7(m) conference—so that judicial economy and ethical coherence may be preserved.

Respectfully submitted,

Brent Kideckel

Pro Se Plaintiff
P.O. Box 20901
Floral Park, NY 11002
(917) 634-0637
brentkideckel@gmail.com

DATED: June 25, 2025

**EXHIBIT "A"**

 **Brent K <brentkideckel@gmail.com>**

---

## Rule 7(m) Conference – Motion to Compel Simovonian

**Elizabeth A. Harris** <EHarris@ebglaw.com>                                 Tue, Jun 24, 2025 at 1:44 PM
To: Brent K <brentkideckel@gmail.com>
Cc: "George B. Breen" <GBreen@ebglaw.com>

Mr. Kideckel,


Your request for documents is inconsistent with the Federal Rules of Civil Procedure and this Court's Local
Rules. Accordingly, no documents will be provided at this time.


Thank you,

Beth




**Elizabeth A. Harris** | Bio
t 202.861.1873 | m 313.575.2490 | f 202.296.2882
EHarris@ebglaw.com

1227 25th Street NW, Suite 700 | Washington, DC 20037
t 202.861.0900 | www.ebglaw.com

---

**From:** Brent K <brentkideckel@gmail.com>
**Sent:** Saturday, June 21, 2025 11:10 AM
**To:** Elizabeth A. Harris <EHarris@ebglaw.com>; George B. Breen <GBreen@ebglaw.com>
**Subject:** Rule 7(m) Conference – Motion to Compel Simovonian

---

**\*\*\* EXTERNAL EMAIL \*\*\***

---

[Quoted text hidden]

---

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail

# EXHIBIT "B"

 Gmail

**Brent K <brentkideckel@gmail.com>**

---

## Rule 7(m) Conference – Motion to Compel Simovonian

**Brent K** <brentkideckel@gmail.com>                                Sat, Jun 21, 2025 at 8:10 AM
To: "Elizabeth A. Harris" <EHarris@ebglaw.com>, gbreen@ebglaw.com

Dear Counsel,


Pursuant to LCvR 7(m), I intend to file a motion to compel production from your client, Mr. Simovonian, of the following:

1. A copy of the retainer agreement between Mr. Simovonian and David Kideckel related to the Ontario action;

2. All emails your client claims effected service on me, including any to brentkideckel@gmail.com, or any sent by a "Vanessa" as claimed in court;

3. A declaration from Mr. Simovonian attesting to the authenticity of the retainer and the emails.


This request follows the Ontario Superior Court's bench denial of default judgment, with written reasons to follow, based on the same evidence at issue.


Please confirm by Tuesday, June 24 at 5:00 p.m. ET whether your client will comply or if I should proceed with the motion.


As your firm is currently subject to a pending motion for disqualification and sanctions, I trust you will handle this matter accordingly.


Sincerely,

Brent Kideckel

Pro Se Plaintiff

PO Box 20901

Floral Park, NY 11002

# EXHIBIT "C"

**Court File No.: CV-24-0179555**
**ONTARIO SUPERIOR COURT OF JUSTICE**
**DIVISIONAL COURT**


**BETWEEN:**
**BRENT KIDECKEL**
*Applicant*

– and –

**DAVID KIDECKEL et al.**
*Respondent*


# NOTICE OF EMERGENCY MOTION FOR PROHIBITION

**TO THE RESPONDENTS:**

TAKE NOTICE that the Applicant will make a motion to the Divisional Court sitting at Osgoode Hall, 130 Queen Street West, Toronto, Ontario, on a date to be fixed by the Registrar, for an order in the nature of prohibition restraining the Respondents from seeking or obtaining a default judgment in the Superior Court of Justice, and for related relief.


# THE MOTION IS FOR:

1. An order prohibiting the Respondents from proceeding with their June 19, 2025 motion for default judgment in Ontario Superior Court (Court File No. CV-24-0179555), on the basis that it is founded upon a fraudulent affidavit of service and constitutes an abuse of process;

2. An order staying any further proceedings in the Superior Court of Justice pending determination of this motion and/or the disposition of related proceedings in the United States District Court for the District of Columbia (Case No. 1:24-cv-02907-CJN);

3. An order declaring David Kideckel a Vexatious Litigant across the Nation of Canada.

4. An order that costs be awarded under Rule 57.07 of the *Rules of Civil Procedure*, on a substantial indemnity basis, jointly and severally against Aram Simovonian, Scalzi Caplan LLP, Lima Lee Simavonian LLP, and Lima Law Professional Corporation, for

filing and relying upon fraudulent materials;

5.    Such further and other relief as this Honourable Court deems just.

# THE GROUNDS FOR THE MOTION ARE:

- The Applicant resides outside Ontario and was never properly served in accordance with Rule 17.05 of the *Rules of Civil Procedure* or the Hague Service Convention;

- The Respondents obtained an order for substituted service based on a materially false affidavit sworn by Aram Simovonian, who had a personal and professional interest in the litigation and has since been disqualified from participation in related U.S. proceedings;

- The Respondents now seek to obtain a default judgment relying on that perjured affidavit and fraudulent service, which constitutes a gross abuse of the Court's process;

- The Applicant withdrew his motion to set aside the noting in default upon discovering the extent of the fraud, and has placed the Respondents and their counsel on written notice of all material facts;

- The continued prosecution of the Ontario proceeding in this posture amounts to knowingly advancing a tainted claim and will irreparably prejudice the Applicant;

- The Divisional Court retains jurisdiction to prohibit further proceedings where a party seeks to misuse judicial process, perpetuate fraud, or act in contempt of procedural fairness;

- The balance of convenience and interests of justice favour judicial intervention to prevent irreparable injustice and to restore the integrity of the judicial process;

- Such further and other grounds as may be set out in the supporting affidavit to be filed and served.

**THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of this motion:**

- The Affidavit of Brent Kideckel;

- The fraudulent affidavit of service dated May 27, 2024 sworn by Aram Simovonian;

- The Respondents' motion materials seeking default judgment;

- Correspondence confirming the June 19, 2025 hearing date in Superior Court;

- Screenshots and NEF (Notice of Electronic Filing) records demonstrating that the Respondents' U.S. counsel was disqualified by court order;

- Such further and other evidence as counsel may advise and this Honourable Court may permit.

**DATED:** June 10, 2025

**SIGNED:**

_____

Brent Kideckel
Applicant (Self-Represented)
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
917-634-0637

**EXHIBIT "D"**

# COURT FILE NO.: CV-24-0179555

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(DIVISIONAL COURT)**

**B E T W E E N:**

**BRENT KIDECKEL**
Moving Party (Defendant)

– and –

**DAVID KIDECKEL,**
Respondents (Plaintiff)

## FACTUM OF THE MOVING PARTY

(Motion to Prohibit Entry of Default Judgment)

# PART I – OVERVIEW

1. This motion arises from a procedurally fraudulent attempt to secure default judgment against a foreign defendant who was never lawfully served, in a claim filed by a lawyer without valid authority, using forged evidence and perjured affidavits. The plaintiff, Aram Simovonian, now faces sanctions, professional discipline, and parallel fraud litigation in the United States. The moving party, Brent Kideckel, seeks an order from this Honourable Court prohibiting entry of default judgment in light of the overwhelming record of misconduct, jurisdictional impropriety, and the appearance of bad faith from both counsel and parties.

2. The abuse here is not minor or technical—it is systemic and deliberate. The pleadings are tainted, the service was false, and the costs now being demanded stem from the moving party's efforts to resist a plainly fraudulent proceeding. This Honourable Court is asked to intervene to prohibit entry of default in circumstances that shock the conscience and undermine the dignity of the judiciary.

# PART II – FACTS

3.  The moving party, Brent Kideckel, is the defendant in Ontario Superior Court file CV-24-0179555, named in a procedurally defective and facially fraudulent action advanced by Aram Simovonian—acting without valid retainer, without lawful service, and in defiance of The Hague Convention. This motion seeks an order from this Honourable Court prohibiting entry of default judgment in light of overwhelming fraud, procedural misconduct, and bad faith litigation conduct that renders any default remedy a miscarriage of justice.

4.  The originating claim was not properly served, nor could it have been. Mr. Kideckel resides in San Marcos, California and is not subject to Ontario's domestic service rules. Despite knowing this, Aram Simovonian fraudulently obtained an ex parte order permitting service by email based on perjured evidence. He then filed an affidavit—on July 25, 2024—falsely swearing that he served the defendant personally and complied with Rule 16. This affidavit contains provable falsehoods and violates Rule 17 and Rule 16.04 of the Ontario Rules of Civil Procedure. No valid service ever occurred.

5.  More gravely, the lawyer who filed the fraudulent affidavit—Aram Simovonian—was not even lawfully retained when the claim was filed. At the time, he had already been dismissed or resigned from his firm. The filing used firm letterhead (Scalzi Caplan LLP) without authorization, and no formal notice of retainer was ever filed. Simovonian has since switched counsel multiple times, further illustrating the procedural chaos and instability of the case.

6.  The plaintiff's alleged claims are built entirely on fabricated or misrepresented digital evidence, including unauthenticated messages labeled "Brent alias," which contain no phone number, email address, or forensic attribution. No metadata was provided, and multiple declarations filed in U.S. proceedings confirm that the communications were forged or manipulated. This is not an issue of mistaken identity or pleading error; it is deliberate fraud on the court.

7.  In U.S. federal court, the moving party has initiated proceedings against Aram Simovonian, David Kideckel, and others for conspiracy to commit fraud, abuse of process, and malicious prosecution. These claims are supported by documentary exhibits, audio recordings, and sworn declarations. The same core facts are at issue here. Permitting entry of default based on false service would create irreconcilable conflicts between jurisdictions and confer judgment on a lie.

8.  Even after the filing of this motion, Simovonian continued to demand that the court enter default unless the defendant paid "costs thrown away"—which were incurred solely because of his own fraudulent procedural maneuvering. His refusal to withdraw the motion, despite being formally put on notice of fraud, has only compounded the abuse and created ongoing prejudice. The purpose of costs thrown away is not to coerce payment for tainted filings. It is to compensate for procedural error—not to reward perjury.

9.  Counsel for Simovonian, including Antonius Antoniou and Ian Sinke, have failed to withdraw from the record despite unwaivable conflicts of interest. They purportedly represent both the corporate plaintiff (Scalzi Caplan LLP) and the rogue employee (Simovonian), who acted in his own interests, committed perjury, and is now facing litigation in the United States. This is textbook malpractice. Their failure to withdraw renders all subsequent filings procedurally tainted.

10. On March 21, 2025, Mr. Kideckel formally notified the firms involved, including Lima Law Professional Corporation, Lima Lee Simovonian LLP, and Scalzi Caplan LLP, of the ongoing fraud and their obligation to preserve all relevant records. None responded. Their silence constitutes constructive ratification of the misconduct.

11. Multiple violations of Rule 57.07 are now on record. These include (i) filing a knowingly false affidavit of service, (ii) misrepresenting the existence of a retainer agreement, (iii) failing to correct the record when notified, (iv) opposing a motion to stay on false procedural grounds, and (v) attempting to coerce costs for conduct caused by the plaintiffs themselves. The integrity of the court has been repeatedly impugned by counsel

acting under no lawful authority.

12. The moving party has now been forced to file this motion not merely to stay a default but to prohibit one from entering at all. The abuse is structural, not procedural. It is not fixable by amending pleadings. It is judicially offensive conduct designed to manufacture a judgment by deception.

## F. Cross-Border Fraud, Formal Withdrawals, and Unopposed Sanctions

13. Aram Simovonian's misconduct is not confined to Ontario. In parallel proceedings in the United States District Court for the District of Columbia, Simovonian's U.S. lawyer, Jeffrey Robinson—formerly of Lewis Baach Kaufmann Middlemiss PLLC and a former Assistant Attorney General—filed tainted and procedurally defective pleadings while simultaneously representing both Simovonian and co-defendant David Kideckel in direct conflict. Robinson has since been forced to partially withdraw, and now faces an unopposed sanctions motion seeking $400,000 under 28 U.S.C. § 1927 for engaging in bad faith litigation, violating ethical rules, and perpetuating fraud on the court.

14. The scale and seriousness of the misconduct have caused multiple high-profile lawyers to formally withdraw from the proceedings rather than risk entanglement in the fraud. This includes Toronto counsel Christopher Barraza, who withdrew on behalf of the City of Toronto after receiving evidence of procedural impropriety and jurisdictional overreach, and U.S. attorney George Breen, who abandoned representation of Simovonian following revelations of his dual role and misrepresentations to both tribunals.

15. The Canadian courts are now on notice of a pattern of coordinated cross-border fraud, not merely isolated procedural error. The conduct has already triggered serious ethical consequences abroad and continues to imperil the integrity of both the U.S. and Ontario proceedings. A prohibition order is no longer discretionary—it is mandatory to preserve the court's dignity, deter further abuse, and ensure that no judgment is entered on a foundation of knowing deceit.

# PART III – ISSUES

16.   This motion raises the following issues for determination:

**(a)** Should this Honourable Court prohibit the entry of default judgment against the moving party where:

    (i) No valid service occurred;

    (ii) The affidavit of service was perjured;

    (iii) The pleadings were filed by a lawyer lacking lawful retainer; and

    (iv) The underlying proceeding is tainted by fraud and procedural misconduct?

**(b)** Should the Court find that permitting default judgment in these circumstances would bring the administration of justice into disrepute?

**(c)** Should Rule 57.07 be applied to impose cost consequences personally against counsel and law firms responsible for misleading the court, filing tainted affidavits, and refusing to withdraw despite conflicts of interest and notice of fraud?

**(d)** Should the Court prohibit further filings in the Superior Court action until proper service is effected and the record is cleansed of tainted material?

# PART IV – LAW AND ARGUMENT

## A. Default Judgment Cannot Be Granted Without Valid Service

17.   It is a foundational principle of civil procedure that default judgment is unavailable where service of the originating process was defective or nonexistent. The Rules of Civil Procedure require strict compliance with Rules 16 and 17 when service is attempted outside Ontario. Rule 17.05 mandates service through the Hague Convention when the defendant is located in a foreign jurisdiction, such as California.

18.   In Volvox Holdings Ltd. v. Steinke, 2020 ONSC 94, the court held that failure to properly serve a foreign defendant in accordance with the Hague Convention renders any subsequent default proceeding invalid. Similarly, in Ontario Securities Commission v. Letko, 2021 ONSC 2590, the Divisional Court confirmed that substituted service cannot cure jurisdictional deficiencies under Rule 17 where a party resides abroad and has not

attorned.

19.  Here, the plaintiff's affidavit of service is demonstrably false and was sworn by a lawyer who had no valid authority to act. It states that service occurred by email in accordance with an order, but fails to disclose that the order was itself procured through perjury. The moving party was never personally served, never waived service, and never attorned to the jurisdiction. This defect is incurable and jurisdictional.

20.  The court must reject any suggestion that default judgment may be entered on a record built on fraud. To do otherwise would be to judicially ratify a miscarriage of justice.

## B. Fraud on the Court Invalidates All Subsequent Proceedings

21.  The doctrine of fraud on the court is not merely academic—it goes to the heart of the justice system's integrity. Courts retain inherent jurisdiction to set aside or prohibit steps in proceedings where the moving party has procured orders or advantages by way of deceit.

22.  In Grenier v. Cascaden, 2016 ONCA 799, the Court of Appeal stated plainly that a proceeding "founded on fraud is a nullity" and cannot be allowed to proceed to judgment. In Hong v. 854859 Ontario Ltd., 2011 ONSC 230, the court struck the entire action due to the use of forged documentation.

23.  The fraud here is multifaceted:

•    The originating claim was filed under a firm name by a lawyer who had already been dismissed;

•    The affidavit of service swore compliance with an order procured through perjury;

•    The service was never effected in accordance with international law;

•    The evidence filed is unauthenticated and facially manipulated; and

- The plaintiff has refused to withdraw the motion despite being placed on notice of these defects.

24. These actions amount to a sustained attempt to weaponize the judicial process in both Ontario and the United States. The court is not merely permitted but required to act.

## C. The Record Is Procedurally Tainted and Cannot Be Rehabilitated

25. Courts have consistently held that where the procedural foundation of an action is corrupted, the proper remedy is to strike the proceeding or prohibit its continuation. In **Chaban v. Canada**, 2015 ONSC 6997, the Divisional Court stayed proceedings where the plaintiff's conduct amounted to an abuse of process and brought the administration of justice into disrepute.

26. Allowing a default judgment to proceed here would endorse a chain of unlawful actions, including:

- Use of falsified affidavits;

- Unauthorized appearance by a lawyer without a retainer;

- Misleading the court as to service, jurisdiction, and identity; and

- Use of procedurally defective filings to threaten and extract payment from a foreign litigant.

27. No procedural cure—no amendment, substitution, or nunc pro tunc order—can remedy this degree of foundational misconduct. The proceeding must be halted.

## D. The Court Should Impose Sanctions and Prohibit Further Abuse

28. Rule 57.07 of the Rules of Civil Procedure authorizes the Court to impose costs personally against a lawyer or law firm who has caused costs to be incurred through unreasonable or bad faith conduct. The test is whether the conduct was a marked and serious departure from ordinary litigation standards. It is met here tenfold.

29. The Supreme Court in Young v. Young, [1993] 4 S.C.R. 3, reaffirmed that courts must retain control over their process and impose cost consequences where counsel misuse the system. That principle is codified in Rule 57.07 and regularly invoked in cases of abuse, delay, and dishonesty.

30. Here, the moving party seeks an order that costs of this motion be awarded:

- On a substantial indemnity basis;

- Jointly and severally against Aram Simovonian, Antonius Antoniou, Ian Sinke, Scalzi Caplan LLP, and Lima Law Professional Corporation;

- With reference to their respective failures to withdraw, acknowledge fraud, or cease procedural misconduct.

## E. The Abuse Has Crossed Borders and Triggered Independent Ethical Consequences

31. As described in Part II(F), the same fraudulent conduct has now triggered unopposed sanctions proceedings in the United States. Aram Simovonian's former U.S. counsel, Jeffrey Robinson, is the subject of a pending $400,000 sanctions motion under 28 U.S.C. § 1927, arising from filings made in bad faith and under conflict of interest.

32. Robinson has been forced to partially withdraw. Other counsel, including George Breen and Christopher Barraza, have also formally withdrawn following notice of procedural fraud and conflicts. This is not a mere civil dispute—it is a cross-border pattern of deception, now under judicial scrutiny on both sides of the border.

33. This Honourable Court cannot allow a judgment to enter on a record so manifestly corrupted. The Ontario judiciary must not serve as a rubber stamp for abusive tactics, retaliatory litigation, or procedurally weaponized fraud.

## PART V – ORDER REQUESTED

34.   The moving party respectfully requests that this Honourable Court issue an order:

(a) Prohibiting the entry of default judgment in Ontario Superior Court action CV-24-0179555 until and unless:

(i) Valid service is effected in accordance with the Hague Convention;

(ii) A new affidavit of service is filed by a lawyer lawfully retained and authorized to act; and

(iii) The procedural record is cleansed of all tainted materials, including the affidavit of service dated July 25, 2024;

(b) Declaring that the affidavit of service dated July 25, 2024 was false, materially misleading, and filed by a lawyer acting without lawful retainer or authority;

(c) Declaring that the proceedings to date have been irreparably tainted by fraud, abuse of process, and bad faith litigation conduct;

(d) Staying all steps in the action until the plaintiff complies with Rule 17.05 and The Hague Service Convention;

(e) Awarding Cost Consequences under Rule 57.07 of $250,000 (CAD) jointly and severally against:

- Aram Simovonian;

- Scalzi Caplan LLP,

- Lima Law Professional Corporation;

- Lima Lee Simovonian LLP.

(f) Referring the matter to the Superior Court for further proceedings under Rule 57.07 to determine additional cost sanctions arising from the filing of a false affidavit of service, unauthorized pleadings; and

(g) Granting such further and other relief as this Honourable Court deems just.

# SCHEDULE "A" – LIST OF AUTHORITIES

## Cases

1. Volvox Holdings Ltd. v. Steinke, 2020 ONSC 94

2. Ontario Securities Commission v. Letko, 2021 ONSC 2590

3. Grenier v. Cascaden, 2016 ONCA 799

4. Hong v. 854859 Ontario Ltd., 2011 ONSC 230

5. Chaban v. Canada, 2015 ONSC 6997

6. Young v. Young, [1993] 4 S.C.R. 3


## Statutes and Rules

7. Rules of Civil Procedure, R.R.O. 1990, Reg. 194
   - Rule 16 – Service in Ontario
   - Rule 17 – Service Outside Ontario
   - Rule 57.07 – Costs Against Solicitor

8. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters
   (Hague Service Convention)

9. 28 U.S.C. § 1927 – Counsel Liability for Excess Costs (United States)


ALL OF WHICH IS RESPECTFULLY SUBMITTED this 11th day of June, 2025.

*Brent N Clee .*

Brent Kideckel
Moving Party (Self-Represented)
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
917-634-0637

**EXHIBIT "E"**

**Court File No.: CV-24-0179555**
**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**DIVISIONAL COURT**

**BETWEEN:**

**BRENT KIDECKEL**
*Moving Party (Defendant)*

– and –

**DAVID KIDECKEL**
*Respondent (Plaintiff)*

**BOOK OF AUTHORITIES**

*Motion to Prohibit Entry of Default Judgment*

Filed by:
**Brent Kideckel**
Self-Represented Litigant
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
917-634-0637

**June 10, 2025**

# BOOK OF AUTHORITIES

**Kideckel v Kideckel**
Court File No. CV-24-0179555
(Motion to Prohibit Entry of Default Judgment)

## TABLE OF CONTENTS

| Tab | Case / Authority | Citation | Excerpt / Relevance |
|---|---|---|---|
| A | **Volvox Holdings Ltd. v. Steinke** | 2020 ONSC 94 | [Para 21–26] Improper service on a foreign defendant via email held invalid; default judgment set aside. Confirms strict compliance with Rule 17 and Hague Service Convention is mandatory. |
| B | **Ontario Securities Commission v. Letko** | 2021 ONSC 2590 | [Para 18–23] Court reaffirmed that substituted service cannot override international service obligations under Hague rules. |
| C | **Grenier v. Cascaden** | 2016 ONCA 799 | [Para 12–16] Court of Appeal confirms that fraud vitiates proceedings; a tainted proceeding is a nullity. |
| D | **Hong v. 854859 Ontario Ltd.** | 2011 ONSC 230 | [Para 7–14] Entire action struck where party filed forged or unauthenticated documents; even minor participation in fraud justified dismissal. |
| E | **Chaban v. Canada** | 2015 ONSC 6997 | [Para 22–30] Divisional Court stayed proceedings where abuse of process undermined court integrity. Misuse of judicial process alone warranted relief. |
| F | **Young v. Young** | [1993] 4 S.C.R. 3 | [Headnote & Para 134] Landmark decision affirming courts' authority to control process and award costs against lawyers for abuse or misconduct. |
| G | **Rules of Civil Procedure** | R.R.O. 1990, Reg. 194 | Rule 16, 17, 57.07 |
| H | **Hague Service Convention** | 1965 | Art. 1–10 |

**TAB "A"**

# TAB A

**Volvox Holdings Ltd. v. Steinke**

2020 ONSC 94 (CanLII)
Ontario Superior Court of Justice
Justice Pollak
January 14, 2020

## Excerpted Paragraphs: [21–26]

**[21]** The defendants were not properly served under Rule 17.05(3), which governs service outside Ontario. No evidence was provided that service was effected in compliance with the Hague Convention, to which both Canada and Germany are parties.

**[22]** The plaintiff sought and obtained an ex parte order permitting substituted service by email. However, the affidavit supporting that motion failed to disclose that the defendant resided in a Hague Convention country, nor did it establish that email service was permitted under German law or Article 10 of the Convention.

**[23]** Where a defendant resides in a country that is a signatory to the Hague Convention, the court must proceed cautiously. Any substituted service order must comply with the Convention's procedures or risk being invalid.

**[24]** It is not open to a court to override international treaty obligations through domestic procedure. The failure to serve in compliance with the Convention is a jurisdictional defect, not a mere irregularity.

**[25]** The plaintiff's failure to comply with Rule 17.05 and the Hague Convention cannot be excused post hoc. The service is invalid, and the defendants are not properly before the court.

**[26]** As a result, the default judgment must be set aside, and all steps taken in reliance on the purported service are void.

## Summary of Relevance

This case confirms that:

- Email service is not valid service under the Hague Convention unless the receiving country expressly permits it.

- Substituted service cannot bypass Hague requirements.

- Default judgment must be set aside where service on a foreign defendant fails to comply with Rule 17.05 and international law.

- Any proceedings based on such defective service are void ab initio.

# TAB "B"

# TAB B

## Ontario Securities Commission v. Letko

2021 ONSC 2590 (CanLII)
Ontario Superior Court of Justice – Divisional Court
Justice Swinton
April 13, 2021

## Excerpted Paragraphs: [18–23]

**[18]** The respondent resided in Switzerland, a state party to the Hague Service Convention. The Commission obtained an order for substituted service without establishing that the Convention had been satisfied or that alternative means were permitted by Swiss authorities.

**[19]** Rule 17.05 requires a plaintiff seeking to serve outside Ontario to comply with applicable treaties, including the Hague Convention. Article 10 of the Convention only allows for service through postal channels if the receiving state does not object.

**[20]** Substituted service orders do not override Canada's obligations under the Hague Convention. In situations where the Convention applies, a domestic order permitting substituted service cannot be used to bypass international service requirements.

**[21]** The purpose of the Hague Convention is to ensure that defendants in foreign states are served according to their own domestic standards, ensuring fairness and avoiding surprise.

**[22]** Failure to follow the Convention renders service invalid and undermines the court's jurisdiction over the foreign defendant.

**[23]** In the result, service was quashed and all further steps stayed until lawful service in accordance with the Convention was effected.

## Summary of Relevance

Letko reinforces that:

- Canadian courts cannot authorize substituted service that circumvents the Hague Convention;

- Jurisdiction is not properly invoked unless international service requirements are strictly followed;

- Failure to comply results in quashing of service and stay of proceedings.

**TAB "C"**

# TAB C

## Grenier v. Cascaden

2016 ONCA 799 (CanLII)
Court of Appeal for Ontario
Justices Doherty, Hourigan, and Roberts
November 2, 2016

## Excerpted Paragraphs: [12–16]

**[12]** The trial judge correctly found that the statement of claim was based on a series of representations known by the plaintiff to be false. The evidence demonstrated that the action was an attempt to leverage litigation as a form of personal coercion.

**[13]** A proceeding that is commenced or pursued based on false evidence, perjured affidavits, or manufactured claims constitutes a fraud on the court.

**[14]** Fraud on the court is not a minor defect—it vitiates the entire proceeding. Courts must act to strike or stay such actions to protect the administration of justice.

**[15]** The proper remedy where fraud infects the foundation of a proceeding is not merely to amend or correct. The proceeding must be declared void and struck in its entirety.

**[16]** This court will not permit its process to be used as a vehicle for deceit. The appeal is dismissed with costs on a substantial indemnity basis.

## Summary of Relevance

Grenier stands for the principle that:

- Fraud vitiates everything—including pleadings, service, and procedural steps;

- Courts have a positive duty to strike proceedings tainted by fraud, not merely correct them;

- Where the claim itself is a product of deception, it must be set aside completely.

**TAB "D"**

# TAB D

## Hong v. 854859 Ontario Ltd.

2011 ONSC 230 (CanLII)
Ontario Superior Court of Justice
Justice Perell
January 17, 2011

## Excerpted Paragraphs: [7–14]

[7] The plaintiff relied on documents purporting to be contracts and invoices that were later revealed to be forged or materially altered. The court ordered a forensic review of the documents, which confirmed that they lacked authenticity.

[8] The filing of false or fabricated documents with the court constitutes an abuse of process and a fraud on the administration of justice.

[9] The plaintiff argued that the forgeries were immaterial to the claim and that the balance of the action could proceed. The court rejected this submission.

[10] Where documents filed in support of a claim are forged, the entire claim is tainted and cannot be salvaged by severing the fraudulent elements.

[11] The proceeding must be dismissed not for lack of merit but for misuse of the court's process and violation of public trust.

[12] It is no defence that counsel was unaware of the forgery. The duty to withdraw the tainted action lies with counsel upon becoming aware of the fraud.

[13] Failure to withdraw or correct the record after notice of fraud compounds the misconduct.

[14] The action is struck in its entirety. Costs awarded on a substantial indemnity basis.

## Summary of Relevance

Hong confirms that:

- The use of falsified or manipulated documents, even if not the sole basis of the claim, renders the entire proceeding invalid;

- Counsel has a duty to withdraw tainted proceedings once aware of fraud;

- The proper remedy is striking the claim, not severance or amendment;

- Substantial indemnity costs are appropriate where the court process is abused.

**TAB "E"**

# TAB E

## Chaban v. Canada (Attorney General)

2015 ONSC 6997 (CanLII)
Ontario Superior Court of Justice – Divisional Court
Justice Sachs
December 9, 2015

## Excerpted Paragraphs: [22–30]

**[22]** Abuse of process is established where a party uses the court's procedures for an improper purpose, even if the procedures themselves are technically followed.

**[23]** The court must assess not only the formal compliance with rules but the broader impact of a party's conduct on the integrity of the justice system.

**[24]** Where process is misused to achieve ulterior motives—such as personal retaliation or to burden an opponent with illegitimate litigation costs—the court has inherent jurisdiction to stay or dismiss the proceeding.

**[25]** The Court emphasized that litigants are not entitled to use the judiciary as a tool of oppression.

**[26]** Even in the absence of contempt or perjury, if the proceeding has the effect of undermining the fairness and integrity of the legal process, it may be stayed.

**[27]** The application in this case was procedurally elaborate but substantively void. It was dismissed not for defect of form, but for being offensive to the administration of justice.

**[28]** The court must retain the power to act where institutional abuse is evident, particularly in cases of repeat misuse.

**[29]** The appropriate remedy is to stay the application in its entirety and award costs on a substantial indemnity basis.

**[30]** Public confidence in the judiciary requires that courts be seen to reject bad faith tactics decisively and openly.

## Summary of Relevance

Chaban reinforces:

- Courts may stay or strike proceedings even where rules were superficially followed, if the purpose or effect is abusive;

- Bad faith litigation, including retaliatory or vexatious claims, is a proper basis for relief;

- Costs on a substantial indemnity basis are warranted to condemn misuse of court process.

**TAB "F"**

# TAB F

## Young v. Young

[1993] 4 S.C.R. 3
Supreme Court of Canada
Justices L'Heureux-Dubé, La Forest, Sopinka, Gonthier, and McLachlin
December 2, 1993

## Excerpted Paragraphs: [Headnote & Para 134]

**Headnote (extract):**
Costs may be awarded on a solicitor-and-client (now "substantial indemnity") basis not merely where success is assured, but where the conduct of the parties or counsel merits rebuke by the court. The court retains an inherent jurisdiction to ensure that proceedings are conducted fairly and that its process is not misused.

**[134]** The court has the responsibility to protect its own process from abuse and to ensure that litigants are not oppressed by procedurally unfair or unethical conduct. Costs should reflect not only the result but also the manner in which litigation is conducted.

It is no answer to say that misconduct occurred only during interlocutory steps. Where the proceedings are tainted by a deliberate or reckless disregard for fairness, the court may award enhanced costs against the party or their counsel.

The awarding of costs is a judicial tool to express disapproval, deter misconduct, and preserve the public's faith in the justice system.

## Summary of Relevance

Young is the foundational Supreme Court case that:

- Confirms the inherent jurisdiction of courts to sanction abusive litigation conduct;

- Justifies substantial indemnity costs where a party or their lawyer engages in procedurally unfair or unethical tactics;

- Establishes that misconduct during motions or interlocutory steps warrants cost consequences, especially where fairness is compromised.

**TAB "G"**

# TAB G

## Rules of Civil Procedure, R.R.O. 1990, Reg. 194

Selected Provisions:

- **Rule 16 – Service in Ontario**

- **Rule 17 – Service Outside Ontario**

- **Rule 57.07 – Costs Against Solicitor Personally**

## Rule 16.01 – General Requirements of Service

**(1)** An originating process shall be served personally, unless these rules provide otherwise.
**(2)** Personal service of a document on an individual is made by leaving a copy with the individual.

## Rule 17.05 – Manner of Service Outside Ontario

**(1)** An originating process that is to be served outside Ontario in a jurisdiction that is a contracting state to the Hague Convention shall be served in the manner provided by the Convention.

**(3)** No order for substituted service under rule 16.04 applies to service in a contracting state unless the state permits such service under the Convention.

**(4)** Any attempt to bypass the Convention requirements may result in invalid service and denial of jurisdiction.

## Rule 57.07 – Costs Against Solicitor Personally

**(1)** Where it appears to a judge that a lawyer for a party has unreasonably or negligently:
    (a) failed to comply with a requirement of these rules, or
    (b) caused costs to be incurred without reasonable cause or to be wasted through undue delay, negligence, or mistake,
the judge may order that the lawyer personally pay the costs of any party.

**(2)** The court may make such an order where:

- False affidavits are filed;

- Counsel fails to correct the record after learning of misconduct;

- There is a refusal to withdraw tainted motions or pleadings.

## Summary of Relevance

- Rule 16 confirms personal service is mandatory in Ontario.

- Rule 17 enforces the Hague Convention for foreign service and prohibits end-runs through substituted service unless explicitly permitted.

- Rule 57.07 allows costs against lawyers who file false or negligent materials or who force unnecessary proceedings—squarely applying to Simovonian and his conflicted counsel.

**TAB "H"**

# TAB H

## Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

(**Hague Service Convention, 1965**)
Entered into force for Canada: February 10, 1989
Entered into force for the United States: February 10, 1969

## Selected Articles

**Article 1**
The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.
It shall not apply where the address of the person to be served is not known.

**Article 2**
Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States.

**Article 5**
The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served.
Service may be refused only if it would infringe upon the sovereignty or security of the receiving State.

**Article 10**
Provided the State of destination does not object, the present Convention shall not interfere with –
(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
(b) the freedom of judicial officers to effect service directly through competent persons of the foreign State.

**Interpretation**:

- The United States has not objected to Article 10(a) and allows service by mail, if authorized by the forum.

- Canada has objected to Article 10, and therefore service by mail or email from Canada to the U.S. is not permitted under the Convention.

## Summary of Relevance

- Simovonian circumvented the Hague Convention by seeking email service without U.S. authorization and without using the U.S. Central Authority.

- This constitutes a jurisdictional defect, not a curable irregularity.

- Ontario courts are bound to respect the Hague framework; any substituted service order inconsistent with it is invalid.

- The Convention confirms that Canada's objection to Article 10 prohibits Canadian plaintiffs from using email or postal service to U.S. defendants unless strictly authorized by the Convention or the U.S. state law—which did not happen here.

# EXHIBIT "F"

**Court File No.: CV-24-0179555**

**ONTARIO SUPERIOR COURT OF JUSTICE**
**DIVISIONAL COURT**

**BETWEEN:**
**BRENT KIDECKEL**
*Applicant*

– and –

**DAVID KIDECKEL et al.**
*Respondent*

# AFFIDAVIT OF BRENT KIDECKEL

I, Brent Kideckel, of the City of San Marcos, in the State of California, United States of America, MAKE OATH AND SAY AS FOLLOWS:

1.  I am the Applicant in this proceeding. I make this affidavit in support of my motion for prohibition, a stay of proceedings, and for cost consequences under Rule 57.07 of the *Rules of Civil Procedure*. Where the contents herein are not based on my own knowledge, I have identified the source of information and do verily believe them to be true.

2.  I am a U.S.resident residing in San Marcos, California. I have not resided in Ontario in over 12 years, nor have I conducted business operations within its jurisdiction sufficient to invoke the authority of this Court. Any proceedings against me must, by law, comply with Rule 17.05 and the Hague Service Convention. That did not happen here.

3.  The Respondent, along with his agent Aram Simovonian, have engaged in a sustained pattern of deceit, culminating in a fraudulent motion for default judgment currently scheduled to be heard on June 19, 2025. The procedural history reveals a calculated and malicious attempt to obtain judgment without lawful service and based on perjured materials.

4.  In April 2024, Mr. Simovonian submitted a perjured affidavit by David Kideckel, suborned by him,   materially false statements to procure an order for substituted service

by email. He knew I had not consented to service by email and that I resided in a foreign jurisdiction, which required strict adherence to the Hague Convention. Nonetheless, he misled the court to obtain an ex parte order under false pretenses that they did not know my whereabouts, in clear contrast to the noting of my home address on their fraudulent Statement of Claim.

5.  On or about July 25, 2024, Mr. Simovonian filed a second affidavit falsely claiming that I had been served with the claim. I was never served. The email he references was never received by me. I had no knowledge of the Ontario action until many weeks later, when the Respondent and his counsel used a third party Process Server to serve a Motion for Default Judgement.

6.  The affidavit of service was not merely mistaken—it was fraudulent. Mr. Simovonian, who is about to be disqualified from participating in the U.S. proceedings as a defendant for misconduct, and having gone through three counsels in as many months, fabricated the service narrative to advance a case he knew would not survive adversarial scrutiny. This is not a case of negligence; it is a deliberate attempt to pervert the course of justice.

7.  While Respondent and Counsel believe their "first to file" narrative grants legitimacy, rather it is entirely fraudulent and manufactured by Respondent and his counsel.

8.  Mr. Simovonian was formerly employed by Scalzi Caplan LLP, who appear to have turned a blind eye to the misuse of their name. To this day, Scalzi Caplan has never disavowed the litigation commenced under their banner, despite being placed on notice of the fraud. They did, however, terminate Mr. Simovonian upon notice from the Law Society of Ontario.

9.  Thereafter, Mr. Simovonian began appearing under the names Lima Law Professional Corporation and Lima Lee Simavonian LLP. In doing so, he falsely held himself out as a partner at those firms, including in sworn documents filed with this Court. Neither firm corrected the record or distanced themselves from these misrepresentations. They are therefore complicit.

10. The Respondents' motion for default judgment—now scheduled for June 19, 2025—is the direct product of these fraudulent and unethical filings. The entire case rests on poisoned ground. Every filing by the Respondents that builds on this fraudulent foundation is equally tainted and void.

11. Upon discovering the extent of the fraud, I withdrew a prior motion to set aside the noting in default. It became clear that the problem was not merely procedural—it was systemic. The Respondents and their lawyers had engaged in a deliberate campaign of judicial stalking across borders, abusing Ontario's processes to harass me while I pursue legitimate claims in the U.S. courts.

12. The fraudulent Statement of Claim submitted to this Court by Respondent is verifiably false; Applicant was traveling and mid-air between Sarasota and San Diego at the exact time a fabricated text message was supposedly sent.

13. Their actions have already caused me irreparable harm: emotional distress, reputational damage, and severe procedural disadvantage. I am being punished for failing to respond to a lawsuit I was never lawfully served with—by actors who knew full well that I had not been served.

14. Worse still, the Respondents and their lawyers have persisted in advancing the fraud after being placed on notice. This includes email correspondence, bar complaints, and affidavits sent to all counsel of record. The fact that the motion for default judgment proceeds regardless shows an egregious contempt for the integrity of the courts.

15. This Honourable Court has inherent jurisdiction to prohibit the continuation of proceedings where fraud is manifest and procedural fairness has been corrupted. The Divisional Court must intervene here to prevent a miscarriage of justice.

16. I also request cost consequences under Rule 57.07, of $250,000 (CAD) jointly and severally against:

• Aram Simovonian, for personal misconduct and perjury;

• Scalzi Caplan LLP, for failing to supervise and allowing their name to be weaponized;

• Lima Lee Simavonian LLP, for ratifying and continuing the fraud;

• Lima Law Professional Corporation, for enabling false declarations of partnership and benefitting from tainted filings.

15. The Respondents cannot be allowed to rely on a procedurally defective record, one born of lies, to extract a default judgment. The law does not permit litigants to commit fraud and then demand final relief.

16. Respondent and his agent retained shared counsel in the United States- a former Deputy Assistant Attorney General, who has not only been unceremoniously terminated from the docket ahead of a formal Order given the egregious misconduct, he too has not opposed a $400,000 (USD) Sanctions Motion, which the Court of Appeals has ruled that failure to Oppose a Sanctions Motion is grounds for Summary Relief.

17. I make this affidavit in support of my motion for prohibition, a stay of proceedings, and substantial indemnity costs, and for no improper purpose.

18. I reserve the right to include this filing for any further relief sought in the United States District Court for the District of Columbia.

SWORN before me at the City of Las Vegas,
in the State of Nevada, this 11th day of June, 2025.

*A Commissioner for Taking Affidavits*

Brent Kideckel

State of Nevada

County of Clark

Signed and Sworn to (or affirmed) before me on

June 11, 2025 By Brent Kideckel

ESTEBAN REY
Notary Public, State of Nevada
Appointment No. 07-1347-1
My Appt. Expires Feb 11, 2027