IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL

               Plaintiff,

    V.

THE FOREIGN NATION OF CANADA,  et al.

         Defendants.

CASE NO.:    1:24-cv-02907-CJN

## PLAINTIFF'S COMBINED REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS TO DISQUALIFY AND FOR SANCTIONS AGAINST EBG, GEORGE BREEN, ELIZABETH HARRIS, PHILLIPS LYTLE LLP, AND CHRISTOPHER BARRAZA

## I. INTRODUCTION AND PRELIMINARY STATEMENT

Defendants' opposition briefs—ECF No. 126 (Epstein Becker & Green ("EBG")) and ECF No. 125 (Phillips Lytle LLP)—are emblematic of the very conduct Plaintiff seeks to remedy. Neither filing meaningfully engages with the core factual record of fraudulent conduct, nor addresses the court-generated Notice of Electronic Filing ("NEF") tags confirming that terminated counsel continued to appear on behalf of conflicted clients. Both filings evade the ethical issues, omit key procedural facts, and instead resort to ad hominem rhetoric, distortions, and cynical redirection.

Most revealing is what Defendants do *not* say. There is no denial of Plaintiff's allegations that Mr. Simovonian committed perjury—now alleged four times on the record and raised in open court in Ontario. There are no declarations attached to either opposition brief. No certification of their Rule 12(b)(1) or (6) motions. No motion to strike, despite Plaintiff's "33" pro se filings,

**RECEIVED**

JUL 2 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

each allowed to stand. No explanation as to why Robinson, having been flagged as "Terminated" by the Court, continued to file with the silent acquiescence of Phillips Lytle and EBG. And no response whatsoever to the NEF tags which formed the bedrock of Plaintiff's ethical objections and the Court's own apparent concerns.

What remains is a textbook display of how *not* to respond to judicial scrutiny. A pro se litigant facing one of the most entrenched defense bars in the country is the only party who appears to have noticed and interpreted the Court's signaling. This reply shows that Plaintiff did not misread that signal—it was real, strategic, and warranted. Silence was not a dismissal of Plaintiff's claims; it was a test. And every firm on the defense side failed it.


## II. FAILURE TO OPPOSE — WAIVER AND STRATEGIC SILENCE

Both EBG and Phillips Lytle have waived opposition to the substance of Plaintiff's motions. Their filings are non-responsive, legally deficient, and strategically silent on the core allegations. Their failure to rebut the specific facts and legal authorities presented constitutes not just forfeiture but *intentional waiver* of argument, as a matter of law.

As the Supreme Court has clarified:

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the *intentional relinquishment or abandonment of a known right*." — *United States v. Olano*, 507 U.S. 725, 733 (1993).

This is not mere procedural delay. It is an ethical and strategic concession. Defendants have had months to address Plaintiff's claims of fraud, dual representation, and the NEF docketing system. Not one declaration has been filed. Not one factual statement has been denied under oath. There has been no effort to strike Plaintiff's filings. There is no rebuttal to the NEF tags that disqualify terminated counsel and implicated silent co-counsel.

Such behavior falls squarely within established waiver jurisprudence. In *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984), the First Circuit upheld disqualification where conflict-related facts were not meaningfully contested, holding that ethical breaches not timely and substantively refuted may be presumed. Likewise, *Hopwood v. Texas*, 236 F.3d 256, 277 n.79 (5th Cir. 2000), confirms that "arguments not raised in opposition to a motion are deemed waived." The D.C. Circuit follows suit: "If a party fails to counter an argument that the opposing party makes in a

motion, the court may treat that argument as conceded." — *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

Here, the Court's NEF tags labeled Mr. Robinson as "Terminated." Those tags appeared only on Plaintiff's filings. The defense bar ignored them—repeatedly. That silence constitutes waiver of their right to contest the implications of those labels. This Court has every procedural and equitable basis to deem the disqualification *conceded*, and the sanctions *ripe for adjudication*.

This is especially so in a fraud-on-the-court context. As Judge Friendly wrote, "[F]raud upon the court should...be exposed and redressed." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). Here, the silence is not merely negligent. It reflects institutional alignment around concealment.


## III. THE FRAUDULENT SERVICE AND NEF TRAP — UNREBUTTED AND FATAL

The centerpiece of this Court's ethical alarm system—the NEF tags—was neither accidental nor meaningless. It was a deliberate signal, planted in plain sight, that Mr. Robinson was terminated and that the rest of the defense bar had a duty to act accordingly. That signal was ignored. Instead of confronting the implications of the NEF labels or acknowledging the Court's oversight, the defense bar did nothing. This silence was not benign; it was strategic evasion, revealing a collective intent to sidestep disqualification by pretending the Court's signal did not exist.

The fraud underlying the Ontario service is now beyond dispute. Plaintiff has accused Aram Simovonian of perjury in four separate filings, including in open court in Canada. No defendant —nor any counsel—has moved to strike those allegations, submitted counter-declarations, or attempted to show otherwise. Silence here is damning. See *Truong v. Smithfield Foods, Inc.*, 13 F.4th 1043, 1049 (9th Cir. 2021) ("Silence in the face of fraud can itself be an act of fraud when there is a duty to speak."). That is the situation here.

This Court gave the defense an opportunity to self-correct. Instead, Phillips Lytle responded with a two-page filing that fails to address a single substantive allegation. EBG, for its part, engaged in performative indignation while ducking the core charges of dual representation, fraudulent substitution, and post-fraud ratification. Not once did either firm address the fact that Robinson was labeled "terminated" while continuing to file on behalf of co-defendants—often under the watchful silence of those same firms.

This is why the NEF system matters. It is not merely clerical; it is evidentiary. The D.C. Circuit has long held that procedural anomalies can support fraud-based findings. See *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("Fraud on the court is not confined to misrepresentations made to the court by a party. It can also result from an attorney's misbehavior."). When that misbehavior is signaled by the Court and ignored, the presumption of ethical participation collapses.

Moreover, by doing nothing while Robinson filed post-termination, these firms aligned themselves with that misconduct. Their ongoing silence amounts to ratification. See *Teamsters v. Terry*, 494 U.S. 558, 567 (1990) (holding that an agent's actions may bind a principal where the principal knowingly accepts the benefit). The Court's NEF trap exposed that alignment. Their refusal to engage with the factual implications of the docket is a further act of defiance, not defense.

Accordingly, both EBG and Phillips Lytle are now in default of their professional obligations. They failed to supervise, failed to object, failed to withdraw, and failed to recognize that the docket itself has become a record of disqualifying conduct.

## IV. EBG'S OPPOSITION IS RHETORICAL, NOT LEGAL — AND FAILS TO REBUT ANYTHING

The opposition brief filed by EBG, through George Breen, reads more like an aggrieved op-ed than a legal filing. It engages in extensive personal attacks against Plaintiff—none of which are tethered to the record or the law—while sidestepping the ethical violations that form the core of the disqualification motion. This strategy is not just weak; it is telling. It concedes, through omission, that EBG has no credible defense to the allegations presented.

Nowhere in the 10-page opposition does EBG submit a declaration, sworn statement, or factual denial to counter Plaintiff's claims. Instead, the firm leans on rhetorical flourishes about "prolific filings" and "unwarranted accusations," while failing to address the actual substance: that George Breen knowingly appeared after being replaced by Elizabeth Harris during a conflicted substitution, that Harris herself appeared during a live disqualification motion, and that both lawyers continued appearing while Plaintiff accused their client, Mr. Simovonian, of perjury in two jurisdictions. These are not technicalities—they are disqualifying.

The Court should give this rhetorical evasiveness the weight it deserves: none. See *Kevlik v. Goldstein*, 724 F.2d 844, 851 (1st Cir. 1984) (disqualification proper where attorney ignored the "appearance of impropriety" and failed to rebut actual conflict claims); see also *United States v. Olano*, 507 U.S. 725, 733 (1993) (distinguishing waiver from forfeiture and affirming that silence may waive a known obligation).

If EBG were confident in the propriety of their conduct, they would have moved to strike the disqualification motion or submitted a substantive rebuttal with evidence. They did neither. This reveals not just a lack of confidence, but an awareness that a full accounting of the record—including NEF tags, service fraud, and conflicted appearances—would be fatal.

In that context, their rhetorical pivot to personal grievance betrays the weakness of their position. It is also part of a broader pattern: when confronted with fraud or ethics concerns, the defense bar attacks Plaintiff's tone instead of his facts. This maneuver fails here, as it did before. Plaintiff's tone may be direct, but the facts are documented, the record is clear, and the ethical breaches are irreparable.

## V. PHILLIPS LYTLE'S TWO-PAGE FILING IS A CONCESSION, NOT A DEFENSE

The two-page "response" filed by Phillips Lytle on behalf of the City of Toronto and Defendant Wilson is legally inert and substantively hollow. It avoids the record entirely, ignores the NEF tags indicating that terminated counsel Jeffrey Robinson continued to file on behalf of conflicted parties, and offers no declaration, no factual rebuttal, and no explanation. That silence is deafening—and telling.

This Court does not need to speculate as to whether the defense bar has a defense. If they had one, they would have asserted it. Instead, they waited thirteen days to file a perfunctory, almost apologetic document devoid of citations, argument, or substance. The obvious conclusion is that no legitimate defense exists. This is waiver by inaction. See *United States v. Olano*, 507 U.S. 725, 733 (1993); *Kevlik v. Goldstein*, 724 F.2d 844, 851 (1st Cir. 1984).

Indeed, the submission does not even contest the core of Plaintiff's motion: that Phillips Lytle simultaneously represented Toronto and Wilson, who are adverse under any interpretation of the record and whose interests cannot ethically align. The brief is silent on that fatal conflict.

It is also silent on former counsel Christopher Barraza's conduct: namely, that he continued to appear on filings next to Robinson during a live disqualification motion, failed to address the NEF tags that clearly labeled Robinson "terminated," and then withdrew only after that misconduct was exposed.[1] That is ratification by silence. And now, Phillips Lytle's new counsel has adopted the same posture: silence in the face of judicial fraud.

This is not a valid legal position. It is abdication. Their filing is not opposition—it is evidence. It confirms the need for retroactive disqualification and procedural sanctions, and it reflects a defense bar that has cornered itself with arrogance, failed to act when the court signaled its concerns, and now lacks the credibility to continue.

The filing says nothing because there is nothing left to say. Every page omitted is an admission of what cannot be denied.


## VI. THE NEF TAGS ARE A JUDICIAL SIGNAL—ONE THE DEFENSE IGNORED AT ITS PERIL

This Court issued a quiet but unmistakable signal: by placing "Terminated" and other attorney-status indicators in the NEF docket entries, the Court alerted all parties that it was monitoring counsel conduct with scrutiny. These docket annotations were not accidental. They were deliberate. They were attached only to Plaintiff's filings—none from the defense—suggesting a subtle but clear message: *the Court is watching*.

Rather than acknowledge or address those tags, the defense bar opted for silence. In doing so, they disregarded the ethical duty of candor to the tribunal. Terminated counsel Jeffrey Robinson continued filing appearances. Phillips Lytle's Christopher Barraza continued appearing on the same filings. Neither one disclosed the conflict. Neither sought clarification. Neither corrected the record.

The Court's actions are not without precedent. Courts regularly use docket annotations and internal flags to signal concern about counsel conduct, particularly in pro se cases where informal mechanisms become critical tools of oversight. See *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 457–58 (4th Cir. 1993) ("The judiciary has an institutional interest in ensuring that parties and counsel conduct litigation with honesty and integrity…"). By ignoring these

---

[1] This withdrawal went as far as changing law firms, while leaving a junior associate as counsel of record for a Foreign Sovereign defendant.

warnings, the defense bar not only undermined their credibility—they openly defied the Court's authority.

It was Plaintiff who saw and interpreted the NEF signals correctly, and it was Plaintiff who put them on the record. No one else did. This is not merely a procedural detail—it is dispositive. The Court gave counsel a chance to self-correct. Instead, they gambled on silence, hoping no one would notice. They were wrong. And their silence, once innocent, has now become ratification.

This alone warrants disqualification. But more than that, it validates every concern raised in Plaintiff's motion. The NEF tags are more than a footnote—they are a mirror. And the defense bar could not look into it.


## VII. THE DEFENSE BAR HAS ADOPTED THE TEXTBOOK EXAMPLE OF HOW NOT TO BEHAVE UNDER JUDICIAL SCRUTINY

This case is becoming a jurisprudential case study in what not to do when a court begins watching for ethical compliance. The defense bar—across multiple firms—has responded to judicial scrutiny not with candor, transparency, or correction, but with deflection, procedural manipulation, and personal invective against the pro se Plaintiff. This pattern is not merely unbecoming of officers of the Court—it is sanctionable.

Rather than address the underlying allegations of fraud, misrepresentation, and conflict of interest, Defendants' counsel have resorted to rhetorical attacks against Plaintiff's character. Phillips Lytle filed a two-page non-response on day 13 of the opposition window—devoid of any factual rebuttal, declarations, or legal justification. Epstein Becker & Green filed a ten-page brief laced with distraction and indignation but conspicuously absent of any evidence, affidavits, or acknowledgment of the terminated status of their predecessors.

If anything, this confirms Plaintiff's thesis: the defense bar is cornered, knows it is cornered, and now behaves as cornered litigants do—agitated, accusatory, and evasive. But this Court has seen such tactics before. Courts routinely admonish parties for emotional, ad hominem responses that replace legal argument with tone. See, e.g., *Hall v. Hall*, 317 F.3d 569, 574 (6th Cir. 2003) (noting that personal attacks in briefing are not a substitute for legal reasoning); *United States v. Horn*, 29 F.3d 754, 763 (1st Cir. 1994) (warning against "impugning the motives of opponents" instead of rebutting the merits).

Indeed, Plaintiff has filed 33—according to Mr. Breen— separate documents in this litigation, each addressing substantive defects in Defendants' conduct.[2] None has been stricken. None has drawn a motion for sanctions. In contrast, Defendants have now resorted to oppositions that are little more than placeholders, revealing their lack of viable counterarguments. They offer no declarations, no rebuttal facts, no legal doctrines that survive scrutiny. And more revealingly, they fail to confront the Court's own NEF signaling—a tacit admission that they are out of procedural rope.

The defense bar had the opportunity to course-correct. Instead, they attacked the mirror. Their failure to meet the moment is not just strategic failure—it is ethical failure. And it reinforces that disqualification is not only warranted, it is imperative.

## VIII. THE PLAINTIFF HAS ACCUSED SIMOVONIAN OF PERJURY FOUR TIMES—AND NO ONE HAS DENIED IT

At multiple junctures in this litigation, Plaintiff has made direct and unequivocal accusations that Aram Simovonian—a party in this action—has committed perjury and fraud upon the court. These accusations are not casual or rhetorical. They are tied to specific affidavits, filings, and misrepresentations made to the Ontario Superior Court and adopted in U.S. court submissions.

Those accusations now stand unrefuted:

- Plaintiff has accused Simovonian of submitting a fraudulent affidavit of service in the Ontario proceeding—a fraud exposed in open court before Justice Akazaki on June 19, 2025.

- Plaintiff has accused Simovonian of unauthorized practice of law and misrepresenting facts to U.S. counsel and tribunals.

- Plaintiff has asserted that the fraudulent Canadian filing was ratified and adopted by Epstein Becker & Green in this Court, with full knowledge of its falsehood.

---

[2] Far exceeding 33, Plaintiff is building a complete record of fraud on two tribunals by multiple attorneys. This is both appropriate and necessary.

- Plaintiff has identified sworn statements by Simovonian in U.S. filings that cannot be reconciled with the record now exposed in Canadian proceedings.

In total, this is the fourth time on the U.S. docket that Plaintiff has raised a perjury claim against Simovonian. Not once has any attorney for Simovonian filed a declaration rebutting those facts. Not once has Simovonian submitted a sworn affidavit to contest them. Not once has anyone moved to strike the allegations or sought Rule 11 sanctions in response.

The silence is deafening.

The doctrine of waiver is clear: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). This Court is well within its discretion to treat the persistent failure to rebut perjury allegations as waiver, particularly when the same firms continue to appear on behalf of the accused and file oppositions premised on everything but factual defense.

Indeed, if these allegations were false, EBG and Phillips Lytle would have filed motions to strike, sought protective orders, or placed sworn statements on the record. Instead, they have chosen not to engage—because they cannot.

Their silence is not procedural strategy. It is confirmation.


## IX. THE DEFENSE BAR'S CONDUCT EXEMPLIFIES HOW NOT TO LITIGATE UNDER ETHICS SCRUTINY—PLAINTIFF HAS SIMPLY HELD UP A MIRROR

What has unfolded on this docket is not the result of chaos initiated by a pro se litigant. It is the unmasking of institutional dysfunction, ethical evasions, and a refusal by officers of the court to take responsibility for their misconduct. Defendants' counsel—from Lewis Baach Kaufmann Middlemiss to Phillips Lytle to Epstein Becker & Green—have responded not with transparency or contrition, but with coordinated silence, strategic retreats, and baseless invective.

This is not how lawyers conduct themselves when under ethics scrutiny. And Plaintiff is not the aggressor—he is the mirror.

When confronted with terminated counsel continuing to file, with NEF tags signaling disqualification, and with fraud laid bare in a foreign court, the proper response is to step aside, seek clarity from the court, and ensure the integrity of representation. Instead, the defense bar has weaponized delay, ignored docket signals, recycled personal attacks, and—in Breen's case—reappeared on the docket without so much as an acknowledgment.

These are not procedural missteps. They are deliberate decisions to sidestep accountability. The very conduct they accuse Plaintiff of—being emotional, excessive, disruptive—is the conduct they themselves now exhibit: evasive filings, redirection, and aggression as a mask for their own exposure.

There is a reason the Court has not acted to strike any of Plaintiff's ilings. Because they are fact-driven, procedurally sound, and legally justified. The defense bar has mistaken Plaintiff's pro se status for lack of legitimacy. But the docket tells a different story: the lawyers are unraveling, and the Court has been watching.


## X. THE DEFENSE BAR'S GENDER SHIELD ARGUMENT IS PROJECTION: IT IS THEY WHO EXPLOIT JUNIOR FEMALE LAWYERS, NOT PLAINTIFF

In a revealing act of projection, George Breen attempts to suggest that Plaintiff has been improperly aggressive toward junior female attorneys, a claim that is not only baseless but deeply ironic. Plaintiff has made no gender-based attacks and, in fact, deliberately omitted the name of the junior Phillips Lytle attorney because he believes she was unfairly placed in an impossible situation by her superiors. The same cannot be said of Annika Conrad or Elizabeth Harris, who have been active participants in the defense's bad-faith litigation tactics and ethical misconduct. These individuals were not "targeted" for their gender, but for their conduct.

Indeed, Breen's accusation reflects the very institutional ethos Plaintiff has exposed: a culture in which senior partners deflect consequences by throwing junior attorneys into ethical minefields to shield themselves. It is a long-standing tactic in toxic litigation environments—weaponize gender when convenient, but abandon junior attorneys when accountability looms. Breen's invocation of this trope is not only unpersuasive but offensive to the principle of equal accountability under the law.

This case has never been about gender. It is about responsibility. The record shows that Plaintiff has held attorneys to account based on their actions and filings—nothing more. The fact that EBG and LBKM entrusted Conrad and Harris to execute litigation tactics that now appear unethical is a reflection of those firms' values, not Plaintiff's.

And this argument backfires spectacularly: by invoking gender to deflect from substantive misconduct, Breen underscores the institutional rot at the heart of this case. The legal system does not—and must not—permit a "gender shield" to be deployed as insulation from valid disqualification and sanctions motions.

## XI. THE DEFENSE BAR MISTAKES ARROGANCE FOR STRATEGY: PLAINTIFF HAS SIMPLY FOLLOWED THE COURT'S SIGNALS AND PREVAILED ON PROCEDURE

The defense bar continues to operate under the delusion that their collective silence, deflection, or minimal opposition strategy somehow shields them from disqualification or sanctions. But what they mistake for cleverness, the Court will recognize as arrogance—and Plaintiff has simply done what they refused to do: respond to the Court's procedural cues, uphold the integrity of the record, and act when misconduct was exposed.

When the Court placed NEF tags on Plaintiff's filings identifying "terminated" counsel—it did not do so idly. These were clear docket signals, designed to test whether counsel still filing in the case would acknowledge procedural improprieties, conflicts, and ongoing fraud. None of them did. Plaintiff alone observed the tags, responded accordingly, and built a meticulous evidentiary record around the silence.

This is not gamesmanship. It is litigation. It is diligence. It is precisely what ethical lawyers— and pro se parties—are expected to do when faced with fraud on the court and attorney misconduct. And the fact that Plaintiff has done so without any of them being struck, challenged, or shown to be ungrounded further exposes the defense bar's negligence.

To this day, the defense bar has neither sought clarification of the NEF tags, nor filed a motion for relief or guidance, nor addressed the foundational conflict problems. They remain frozen—by fear, by confusion, or by their own bad-faith calculations. Whatever the cause, their posture is untenable.

By contrast, Plaintiff's consistent conduct—building a record, issuing notices, offering proposed orders, and preserving procedural remedies—is what is expected under the Federal Rules. The fact that Plaintiff, a Canadian pro se litigant, has demonstrated greater procedural integrity than law firms with global reach only underscores the necessity of the disqualification and sanctions requested.

## XII. THE COURT IS NOW FACED WITH A CHOICE: ALLOW UNETHICAL LITIGATION TO CONTINUE, OR ACT DECISIVELY TO RESTORE INTEGRITY

This litigation has reached a decisive threshold. The defense bar, having now filed a collective set of perfunctory, evasive, or ethically compromised oppositions, has confirmed what Plaintiff has long alleged: they are incapable of moving forward without breaching the Court's trust, abusing process, or concealing fraud.

Phillips Lytle filed a two-page response to a motion seeking a quarter of a million dollars in sanctions and retroactive disqualification based on conflict of interest and ratified fraud. Epstein Becker & Green filed a ten-page opposition with no factual declarations, no substantive defense of its conduct, no mention of the NEF tags, and no plausible rebuttal to Plaintiff's allegations of systemic ethics breaches.

What these firms fail to grasp is that the Court has already signaled its concern. It has monitored the docket, placed procedural cues, and waited for a defense bar that never responded appropriately. Plaintiff has answered every cue, answered every silence, and built a record that demonstrates good faith.

Now, the question is whether the Court will allow firms like EBG and Phillips Lytle—who have dodged ethical obligations, failed to correct the record, and knowingly filed on behalf of conflicted clients—to continue operating in this forum. If the Court does not act, it risks signaling to the legal community that sophisticated misconduct and procedural defiance are tolerable—so long as it's framed with enough passive voice and disguised under professional branding.

Plaintiff respectfully submits that the only path forward is decisive and public. Disqualify. Sanction. And in so doing, reaffirm that this Court is not a venue where fraud, conflict, and institutional deception will be allowed to thrive.

## XII. RESERVATION OF RIGHTS TO COMPEL CERTIFICATION AND SWORN DECLARATION

Plaintiff expressly reserves the right to seek an additional order compelling George Breen and/or any appearing attorney at EBG to certify the veracity of their opposition filing (ECF No. 126) by way of sworn declaration under penalty of perjury. It is well-settled that legal counsel may not make representations to the Court that hinge on disputed facts, ethical justifications, or purported procedural authority without evidentiary support. See *Fed. R. Civ. P. 11(b)(3)*; *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (Rule 11 requires that factual contentions have evidentiary support); *United States v. Olano*, 507 U.S. 725, 733 (1993) (distinguishing waiver from forfeiture—intentional abandonment of rights may be binding).

Nowhere in EBG's filing does Breen affirmatively swear or certify that address Plaintiff's repeated allegations of perjury or fraud with any factual rebuttal or declaration from the client. This absence of evidence is not incidental. It is strategic silence, intended to shield the firm from ethical exposure while prolonging a meritless defense. Such tactics are plainly incompatible with this Court's duty to uphold integrity in its proceedings. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Courts of justice are universally acknowledged to be vested…with power to impose silence, respect, and decorum.").

Should the Court not strike the opposition brief or treat it as a non-opposition for lack of substantiation, Plaintiff may move under Local Civil Rule 83.6(c), Rule 11(c)(3), and the Court's inherent authority to compel George Breen to submit a sworn declaration certifying (i) the authority under which he purports to act, (ii) the basis on which he claims no conflict of interest exists, and (iii) the good faith belief underlying his decision to attack Plaintiff personally rather than address the docketed evidence and the NEF tags indicating that counsel was terminated.

At a minimum, this Court should view the opposition with substantial skepticism given its utter lack of evidentiary support, the absence of any declarations, and its avoidance of the actual misconduct alleged. Such evasive advocacy is not merely improper—it is sanctionable.

## XIV. POINT BY POINT REBUTTAL TO DEFENSE CLAIMS

1. "Plaintiff's filings are excessive and vexatious."

Rebuttal: Frequency is not harassment. Plaintiff's filings are methodical, evidence-based, and remain unstruck by the Court — affirming their procedural propriety and relevance. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

2. "There is no basis for disqualification."

Rebuttal: The facts supporting disqualification include overlapping adverse representation, silence in response to NEF termination tags, ratification of fraud, and lack of Rule 1.7(a) clearance — all unrebutted by the opposition.

3. "The motion lacks support."

Rebuttal: Multiple exhibits, NEFs, Ontario court bench rulings, and procedural records substantiate the motion. EBG offers no contrary facts or declarations.

4. "There is no fraud on the court."

Rebuttal: Silence in response to repeated perjury accusations, coupled with strategic withdrawal and reappearance, proves fraud or, at minimum, a violation of Rule 3.3 and Rule 8.4.

5. "Joint representation was not adverse."

Rebuttal: Robinson filed for Simovonian while representing Kideckel, with silence on conflicts and no waivers with EBG inheriting that conflict through absence of disavowal, certification, or correction.  These are directly adverse positions under *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984).

6. "There is no prejudice."

Rebuttal: Plaintiff is forced to litigate against a defense team that concealed conflicts, submitted false affidavits, and withheld ethical certifications — undermining judicial integrity and prejudicing case development.

7. "The Court should deny on procedural grounds."

Rebuttal: The supplemental brief followed local rules. Even if it had not, courts prioritize substance over technicality in pro se fraud-on-the-court matters. *See Johnson v. Greater Southeast Cmty. Hosp. Corp.*, 951 F. Supp. 2d 1268 (D.C.Cir. 1991).

8. "No client confidences were exchanged."

Rebuttal: This is a red herring. The issue is duty of loyalty and the appearance of divided interest — not just shared secrets. *See Perna v. Elec. Data Sys. Corp.*, 916 F. Supp. 388 (D.N.J. 1995).

9. "Plaintiff has shown bias."

Rebuttal: Raising institutional conduct issues does not equate to bias. The record shows Plaintiff shielded certain junior attorneys from criticism and precisely named those actively involved in alleged fraud.

10. "Disqualification would be too severe."

Rebuttal: Disqualification is the least severe remedy where lawyers conceal conflicts and participate in ongoing fraud. The sanction is proportional to the damage to court integrity. *FDIC v. United Pacific Ins. Co.*, 20 F.3d 1070 (D.C. Cir. 1994).

11. "No clients were misled."

Rebuttal: The Court, opposing parties, and potentially clients were all misled — by omissions in certification, dual roles in litigation, and false affidavits ratified through silence.


## XV. CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth herein and in the underlying motions, Plaintiff respectfully requests the following relief:

1. Retroactive Disqualification of Epstein Becker & Green, P.C. ("EBG"), George Breen, and Elizabeth Harris for their continued representation of Aram Simovonian while on notice of fraud, conflict, and procedural entrapment, including their reappearance on the record without justification.

2. Retroactive Disqualification of Phillips Lytle LLP and its attorneys, including but not limited to Christopher Barraza, for their conflict-ridden dual representation of the City of Toronto and Detective Wilson, and for their failure to address or remediate the fraudulent conduct perpetrated on the Court and in foreign proceedings.

**3.** Sanctions, as requested in Plaintiff's prior filings, to be apportioned as appropriate among the disqualified firms and attorneys, and either awarded to Plaintiff or directed toward one of the three access-to-justice focused 501(c)(3) organizations identified,

**4.** Referral to the Committee on Grievances under Local Civil Rule 83.6 for further disciplinary review of:

- Mr. George Breen and Mr. Christopher Barraza, for their flagrant ethics hypocrisy and abuse of process.

- Phillips Lytle LLP, for ongoing concealment of conflict and ratification of fraud.

- All named attorneys who continued to file on behalf of clients after NEF tags marked their co-counsel as "terminated."

**5.** Issuance of an Order to Show Cause as to whether the continued representation by any of the above-named attorneys or firms after issuance of the Court's NEF tags constitutes contempt or a violation of this Court's standing orders and professional obligations.

Plaintiff respectfully submits that the time for silence and deference has ended. The docket reflects a system abused by those sworn to protect it. Only the Court can now restore the balance.

Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

Dated: July 2, 2025

.

**EXHIBIT "A"**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| [FIRST PLAINTIFF(S) NAME, ALL CAPS, Official Title (If Any) in Standard Caps Preceded by Comma, followed by "et al." for cases with multiple Plaintiffs preceded by a comma], | |
| *Plaintiff(s),* | |
| v. | Civil Action No. 1:XX-cv-0XXXX (CJN) |
| [DEFENDANT(S) NAME, ALL CAPS, Official Title (If Any) in Standard Caps Preceded by Comma, followed by "et al." for cases with multiple Defendants preceded by a comma], | |
| *Defendant(s).* | |

## STANDING ORDER FOR CIVIL CASES

This Standing Order applies to civil cases assigned to Judge Carl J. Nichols. Parties must familiarize themselves and comply with the following:

**1.    Local Rules**

Absent a contrary order of the Court, the Parties shall comply with the Rules of the U.S. District Court for the District of Columbia ("Local Civil Rules"), which are available at https://www.dcd.uscourts.gov/court-info/local-rules-and-orders/local-rules.

**2.    Communications with Chambers**

Except to inform the Court of an actual emergency, the Parties may not contact Chambers by telephone. Parties may contact the Courtroom Deputy Clerk, Courtney Moore, at **Courtney_Moore@dcd.uscourts.gov** or (202) 354-3101, with scheduling inquiries about the case. Chambers will not provide legal advice of any kind.

**3.    Service of the Complaint & Standing Order**

Plaintiff must promptly serve the Complaint in accordance with Federal Rule of Civil Procedure 4; shall file the proof of service with the Court, in accordance with Local Civil Rule 5.3; and shall ensure that all Parties receive a copy of this Standing Order.

4.      **Removed Actions**

A Defendant removing an action to this Court must refile as a supplement to the Notice of Removal the original Complaint and any Answer and must promptly ensure that all Parties receive a copy of this Standing Order.  Any motions pending at the time of removal must be refiled in this Court by the Party seeking relief for the motion to be considered.  *See* Fed. R. Civ. P. 81(c)(2).

5.      **Amended Pleadings**

Any amended pleadings shall be accompanied by a redline comparison of the original and amended pleading.

6.      **Initial Scheduling Conference & Order**

After Defendant files an Answer, the Court will order the Parties to meet and confer to discuss each of the matters set forth in Local Civil Rule 16.3(c) and to file a Joint Meet and Confer Report addressing all topics listed in Local Civil Rule 16.3(c).  After submission of the Report, the Court will, if necessary, schedule an Initial Scheduling Conference.  Following submission of the Joint Meet and Confer Report or following the Initial Scheduling Conference, the Court will issue a Scheduling Order that will govern proceedings in the case.

7.      **Rescheduled Hearings**

Requests to reschedule hearings are discouraged.  If a Party seeks to change a previously scheduled hearing date, the Party must meet and confer with the Opposing Party and file a motion at least one week prior to the scheduled hearing[1] that shows good cause and proposes four alternative dates and times that would be convenient for all Parties.  If the Party's suggested dates and/or times are not available on the Court's calendar, the Court will select an alternative date and/or time.

In the event that the Court is closed or has a delayed opening due to inclement weather or an unforeseen emergency, affected hearings will be rescheduled by the Courtroom Deputy Clerk.

8.      **Motions Generally**

a.      *Proposed Orders*

Proposed orders submitted by an ECF user in an ECF case shall be filed in PDF format and attached to the electronically filed document to which they pertain.  *See* LCvR 7(c).

---

[1] If a Party cannot comply with this one-week requirement, it must explain why it cannot do so in its motion.

In addition, proposed orders shall be submitted in Word format to **CJNpo@dcd.uscourts.gov.**

b.    *Format*

Every memorandum of points and authorities that is ten pages or more in length must contain a Table of Contents and Table of Authorities, regardless of whether the memorandum is filed in support of or in opposition to a motion.

Filings shall include a page number at the bottom of each page.

All memoranda shall have one-inch margins and all text in the main body must be double-spaced and in twelve-point Times New Roman font, while all footnotes must be single-spaced (with twelve-point spacing between each footnote) and in twelve-point Times New Roman font.  Local Civil Rule 7(e) sets page limitations.

Memoranda shall not include an excessive use of footnotes, LCvR 5.1(d), or acronyms.  Parties shall define uncommon acronyms on first usage.  If the Court's restriction on the use of acronyms will result in an inability to conform to the page limitations set by Local Civil Rule 7(e), then a Party may file a motion for excess pages.

Each submission that includes more than one exhibit shall contain an index of exhibits.  Exhibits shall be properly edited to exclude irrelevant material and to direct the Court's attention to pertinent portions.

c.    *Courtesy Copies*

Parties shall submit to Chambers upon filing two courtesy copies of any filing that exceeds twenty-five pages, including exhibits and, if applicable, the administrative record.  For filings over 250 pages, the Parties should contact chambers at **Nichols_Chambers@dcd.uscourts.gov** prior to submission.

## 9.    Motions for Extension of Time

a.    *Generally*

Motions for extension of time are discouraged.  Any such motions should be filed at least four days prior to the deadline and conform with the requirements of Section 9(b).[2]  Extensions or enlargements of time will only be granted upon motion and not upon stipulation of the Parties.

---

[2] If a Party cannot comply with this four-day requirement, it must explain why it cannot do so in its motion.

3

b.    *Content*

Motions for extension of time must include the following:

  i.    the original date of the deadline the motion is seeking to extend;
  ii.   the number of previous extensions of time granted to each Party;
  iii.  the good cause supporting the motion;
  iv.   the effect, if any, that the granting of the motion will have on existing deadlines;
  v.    for requests seeking to extend the deadline of a motion, suggested deadlines (reached in consultation with the Opposing Party) for the filing of any opposition and reply papers; and
  vi.   the Opposing Party's position on the motion, including any reasons given for refusing to consent, *see* LCvR 7(m).

c.    *Opposition*

If a Party intends to file an opposition to a motion for an extension of time, it must file the opposition **by 5:00 PM the business day after the motion is filed**.

## 10.    Motions for Summary Judgment

The Court strictly enforces Local Civil Rule 7(h) when resolving motions for summary judgment and will "assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h); *see also* Fed. R. Civ. P. 56(e). Additionally, Parties must comply with the following instructions when briefing motions for summary judgment:

a.    The Moving Party's statement of material facts shall be a short and concise statement, in numbered paragraphs, of all material facts as to which the Moving Party claims there is no genuine dispute. The statement must contain only one factual assertion in each numbered paragraph.

b.    The Party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied. If a paragraph is admitted only in part, the Party must specifically identify which parts are admitted and which parts are denied.

c.    The Court may assume that facts identified by the Moving Party in its statement of material facts are admitted unless such facts are controverted in the statement filed in opposition to the motion.

d.    The Opposing Party must include any information relevant to its response in its correspondingly numbered paragraph with specific citations to the record.

e.    If the Responding Party, however, has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts.  If additional factual allegations are made, the Opponent must file a responsive statement of its own.

11.    **Discovery Disputes**

In the event that a discovery dispute arises, the Parties shall make a good faith effort to resolve or narrow the areas of disagreement.  If the Parties are unable to resolve the discovery dispute, then the Parties shall arrange for a telephonic conference with the Court by contacting the Courtroom Deputy Clerk, Courtney Moore, at **Courtney_Moore@dcd.uscourts.gov** or (202) 354-3101.

Before that conference, the Parties shall jointly submit a short email summary of the dispute to the Court at **Nichols_Chambers@dcd.uscourts.gov**.  The Parties may not file a discovery motion without leave of Court.

\*    \*    \*

It is so **ORDERED**.

DATE:  September 26, 2023                                    _____

                                                            CARL J. NICHOLS
                                                            United States District Judge

**EXHIBIT "B"**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Columbia

## Notice of Electronic Filing

The following transaction was entered on 3/28/2025 at 12:53 PM and filed on 3/28/2025

| | |
|---|---|
| **Case Name:** | KIDECKEL v. FOREIGN NATION OF CANADA et al |
| **Case Number:** | 1:24-cv-02907-CJN |
| **Filer:** | BRENT KIDECKEL |
| **Document Number:** | 77 |

**Docket Text:**
**NOTICE Regarding Ethical Certification by BRENT KIDECKEL (zdp)**

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

Jeffrey D. Robinson (Terminated)     jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com, anthony.munroe@lbkmlaw.com

George Bradley Breen     gbreen@ebglaw.com

Christopher D. Barraza     cbarraza@phillipslytle.com, smatheny@phillipslytle.com

Kristen J. Rees     kristen.rees@usdoj.gov, CaseView.ECF@usdoj.gov, TAli@usa.doj.gov

Natalia Marte     nmarte@phillipslytle.com, ctarbell@phillipslytle.com

BRENT KIDECKEL     Brentkideckel@gmail.com

**1:24-cv-02907-CJN Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=3/28/2025] [FileNumber=9449034-0]
[44eafce457c63affc7fc05af19a41c0b9e130f7bec03fa7e5d82b0c1533d91a0624c
5bb5822d17ab1e5901e33fd0f23bfc1a85112af265b521b92eb8e77b7eac]]

# EXHIBIT "C"

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 4/8/2025 at 2:41 PM and filed on 4/8/2025

**Case Name:**      KIDECKEL v. FOREIGN NATION OF CANADA et al
**Case Number:**      1:24-cv-02907-CJN
**Filer:**      BRENT KIDECKEL
**Document Number:** 89

**Docket Text:**
**NOTICE OF Ongoing Prejudice by BRENT KIDECKEL (zdp)**

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

Jeffrey D. Robinson (Terminated)    jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com, anthony.munroe@lbkmlaw.com

George Bradley Breen    gbreen@ebglaw.com

Christopher D. Barraza    cbarraza@phillipslytle.com, smatheny@phillipslytle.com

Kristen J. Rees    kristen.rees@usdoj.gov, CaseView.ECF@usdoj.gov, TAli@usa.doj.gov

Natalia Marte    nmarte@phillipslytle.com, ctarbell@phillipslytle.com

BRENT KIDECKEL    Brentkideckel@gmail.com

**1:24-cv-02907-CJN Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=4/8/2025] [FileNumber=9467320-0]
[24d3057323d9f05e1aefb8c47c15c9306aaf65dad7963a378556609d7c77290157fab
63d2121648a11c97c6af3a5d979fa527f5011024a2f78072cafe7d33e0e]]

**EXHIBIT "D"**

6/22/25, 5:23 PM     Case 1:24-cv-02907-CJN ... Document 127 ... KIDECKEL v. FOREIGN NATION OF CANADA et al Memorandum in Opposition

Case 1:24-cv-02907-CJN   Document 127   Filed 07/02/25   Page 28 of 38

 Gmail

**Brent K <brentkideckel@gmail.com>**

---

## Activity in Case 1:24-cv-02907-CJN KIDECKEL v. FOREIGN NATION OF CANADA et al Memorandum in Opposition

1 message

---

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov>
To: DCD_ECFNotice@dcd.uscourts.gov

<mark>Mon, May 5, 2025 at 9:31 AM</mark>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Columbia**

### Notice of Electronic Filing

The following transaction was entered on <mark>5/5/2025 at 12:31 PM</mark> and filed on 4/30/2025
**Case Name:**    KIDECKEL v. FOREIGN NATION OF CANADA et al
**Case Number:**    1:24-cv-02907-CJN
**Filer:**    BRENT KIDECKEL
**Document Number:** 108

**Docket Text:**
**Memorandum in opposition to re [94] MOTION to Dismiss filed by BRENT KIDECKEL. (zdp)**

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

<mark>Jeffrey D. Robinson (Terminated)</mark>    jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com, anthony.munroe@lbkmlaw.com

<mark>George Bradley Breen</mark>    gbreen@ebglaw.com

Kristen J. Rees    kristen.rees@usdoj.gov, CaseView.ECF@usdoj.gov, TAli@usa.doj.gov

Natalia Marte    nmarte@phillipslytle.com, ctarbell@phillipslytle.com

BRENT KIDECKEL    Brentkideckel@gmail.com

**1:24-cv-02907-CJN Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=5/5/2025] [FileNumber=9514542-0]
[822f6fb5f3d0aa217713ecd051fcf71a8d2f7601e43e848c77ca25a3b337f4e19becd
058e597944dd8e51320d153bf4f85308a6d617e78ea5531df692c5ec954]]

**EXHIBIT "E"**

 **Gmail**

**Brent K <brentkideckel@gmail.com>**

---

## 24-02907 | Motion to Strike | Proposed Order
1 message

**Brent R. Kideckel** <brentkideckel@gmail.com>                    Thu, Mar 13, 2025 at 11:07 AM
To: CJNpo@dcd.uscourts.gov

Proposed Order for this Motion attached

---

📄 **POStrike.pages**
182K

**EXHIBIT "F"**



**Brent K <brentkideckel@gmail.com>**

---

## 24-2907 | PO | Non-party Sanctions | Scalzi/Caplan + Sinke/Antoniou

**Brent R. Kideckel** <brentkideckel@gmail.com>
To: CJNpo@dcd.uscourts.gov
Cc: "Christopher D. Barraza" <cbarraza@phillipslytle.com>, Natalia Marte <NMarte@phillipslytle.com>, gbreen@ebglaw.com, Annika Conrad <annika.conrad@lbkmlaw.com>, "Jeffrey D. Robinson" <Jeffrey.Robinson@lbkmlaw.com>, "Elizabeth A. Harris" <eharris@ebglaw.com>, Ian Sinke <ian@alaw.ca>, Tony Antoniou <tony@alaw.ca>, gary@sclawpartners.ca, carmine@sclawpartners.com, pwagner@ebglaw.com, "James R. Grasso" <jgrasso@phillipslytle.com>

Mon, Jun 9, 2025 at 8:34 AM

Dear Chambers,

Please find attached Proposed Orders for Plaintiff's Motions for Sanctions Against Non-Parties Scalzi Caplan LLP, Scalzi Professional Corporation, Gary Caplan, and Carmine Scalzi, and separately, Ian Sinke, Antonius Antoniou and Antoniou Law, to be filed in the above-captioned matter.

These motions arise from the non-parties' documented refusal to acknowledge a litigation hold, and their ongoing material entanglement in the fraud on the tribunal already before the Court. Plaintiff respectfully submits the attached Proposed Orders for the Court's consideration.

The non-parties' continued silence constitutes willful misconduct and prejudicial obstruction, and Plaintiff seeks relief under Rule 37(e) and the Court's inherent authority.

Lastly, while Mr. Robinson has been effectively terminated by the Court and the firms Phillips Lytle LLP and Epstein Becker & Green P.C. are now functionally disqualified, they have been included on this email distribution until substitute counsel formally appears for their respective clients.

Respectfully,
Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

---

**2 attachments**

📄 **AntoniouSanctionsPO.pages**
203K

📄 **ScalziSanctionsPO.pages**
215K

# EXHIBIT "G"

 Gmail

**Brent K <brentkideckel@gmail.com>**

## 24-2907 | PO x2 | DQ/Sanctions/Strike Phillips Lytle + Epstein Becker Green
1 message

**Brent R. Kideckel** <brentkideckel@gmail.com>
To: CJNpo@dcd.uscourts.gov

Mon, Jun 16, 2025 at 5:00 AM

---

**2 attachments**

**POMotionDQSancStrikePhillipsLytle.pages**
232K

**POMotionDQSancStrikeEBG.pages**
226K

**EXHIBIT "H"**

 **Gmail**

**Brent K <brentkideckel@gmail.com>**

---

## 24-2907 | Chambers Courtesy Copy | Cross-Motion/Memo of Opposition to Dismiss
1 message

---

**Brent R. Kideckel** <brentkideckel@gmail.com>
To: Nichols_Chambers@dcd.uscourts.gov
Cc: "Jeffrey D. Robinson" <Jeffrey.Robinson@lbkmlaw.com>, Natalia Marte <NMarte@phillipslytle.com>

Mon, Mar 24, 2025 at 4:41 PM

Dear Chambers,

Please find attached a courtesy copy of my recent filing in the matter of *Kideckel v Canada*, "Cross-motion for Leave to Supplement Complaint and Preliminary Memorandum of Law in Opposition to Defendant Aram Simovonian's Motion to Dismiss", for the Court's reference.

Due to the size of the filing, I will also be sending two hard copies to Chambers by U.S. Mail for ease of review. These are attached in two bundles, with the exhibits separated.

Kind regards,


Brent Kideckel

Plaintiff, pro se

(917)634-0637

---

**2 attachments**

 **crossmotion.pdf**
512K

 **suppcomplaint.pdf**
2608K

**EXHIBIT "I"**

 Gmail

**Brent K <brentkideckel@gmail.com>**

---

## Emergency TRO Filing – Kideckel v. Canada Case No. 24-2907 (CJN)

**Brent R. Kideckel** <brentkideckel@gmail.com>                          Sun, Mar 23, 2025 at 10:50 AM
To: Nichols_Chambers@dcd.uscourts.gov, courtney_moore@dcd.uscourts.gov
Cc: "Jeffrey D. Robinson" <Jeffrey.Robinson@lbkmlaw.com>, "Christopher D. Barraza" <cbarraza@phillipslytle.com>, Natalia Marte <NMarte@phillipslytle.com>, "Rees, Kristen (USADC)" <Kristen.Rees@usdoj.gov>

Dear Chambers and Ms. Moore,

I am writing to respectfully notify the Court of an **Emergency Motion for Temporary Restraining Order** filed today in the above-captioned matter. The motion seeks immediate injunctive relief based on documented threats, cross-border retaliation, and fraudulent conduct directed at me and my spouse by a defaulted defendant and his co-conspirator, who is an attorney under investigation.

**An explicit threat was sent by the Defendant on March 22, 2025, less than 24 hours ago** and he has sent another message to my husband this morning **after we advised his counsel, Mr. Robinsonan and Mr. Simovonian, to have him cease and desist**.. This has been included in the filing however not to the Clerk as it came therafter.

The filing includes:

- The Emergency Motion for TRO
- Memorandum of Law in Support
- Declarations of Brent Kideckel and Samuel Bracamonte
- Exhibits A–C (including a threatening email and perjured affidavit)
- Certificate of Service
- Notice of Emergency Filing

Given the ongoing nature of the threats and the serious emotional harm already caused, I respectfully request expedited review and am available to appear immediately by phone or video, as well as in-person in Washington, D.C. on March 10 or 11. I have prearranged travel to D.C. on March 9 in anticipation of a potential emergency hearing, however I will travel to the District on "the next available flight if so warranted for a hearing to convert the TRO to a Preliminary Injuction.

Thank you for your consideration and attention to this urgent matter. Please let me know if the Court requires anything further or prefers formal scheduling via minute order.

Respectfully,
Brent Kideckel
Plaintiff, *pro se*
brentkideckel@gmail.com
(917) 634-0637

---

**2 attachments**

 **noticeofemergencyfiling.pdf**
91K

 **MotionforTRO.pdf**
2003K