**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL

               Plaintiff,

     V.

THE FOREIGN NATION OF CANADA,  et al.

          Defendants.

CASE NO.:    **1:24-cv-02907-CJN**

# PLAINTIFF'S EMERGENCY MOTION FOR ORAL ARGUMENT AND PROTECTIVE SCHEDULING RELIEF

## INTRODUCTION

Plaintiff Brent Kideckel respectfully moves this Court for emergency oral argument and protective scheduling relief following the issuance of a retaliatory and procedurally defective foreign judgment by the Ontario Superior Court of Justice in *David Kideckel v. Brent Richard Kideckel*, 2025 ONSC 4338 (July 25, 2025). That judgment:

1. Entered a default against Plaintiff based on contested and fraudulent service;

2. Awarded $90,000 in damages and imposed a global, permanent gag order against Plaintiff, barring him from making any allegations—including of fraud—"in any forum, past, present, or future"; and

3. Explicitly referenced this U.S. litigation and Plaintiff's filings, in what appears to be a coordinated effort to discredit and silence Plaintiff before this Court.

This judgment represents a foreign attempt to interfere with ongoing U.S. proceedings. Plaintiff respectfully asks this Court to convene oral argument and protective relief to ensure that:

**RECEIVED**

JUL 25 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

- Defendants and their counsel are barred from relying on or invoking the Ontario judgment in this action; and

- The pending motions to compel certification/disavowal, disqualification, and sanctions are addressed with full consideration of the foreign interference now documented on the record.

## FACTUAL BACKGROUND

1. **Fraudulent Service and Procedural Abuse in Ontario**
   Plaintiff has consistently argued—both in this Court and in Ontario—that service in the Ontario proceeding was fraudulent and that the case was advanced in retaliation for the instant U.S. lawsuit. Despite Plaintiff's objections and motions, the Ontario court entered a default without trial or merits adjudication.

2. **Ontario Judgment Issued on July 25, 2025**
   The judgment entered by Justice Akazaki imposed damages and a sweeping injunction, stating:
   "The Plaintiff, Brent Kideckel, shall not publish, speak of, or distribute in any manner whatsoever, including by any written, electronic, or digital means, any statements, allegations, or insinuations… including but not limited to allegations of fraud, dishonesty, or professional misconduct, whether made in connection with this proceeding or any other litigation or forum, past, present, or future."
   (2025 ONSC 4338, ¶41.)

3. **Threat to U.S. Litigation Rights**
   This global gag order, issued by default, directly seeks to chill Plaintiff's right to petition this Court and to assert claims of fraud, including against U.S. defendants and their counsel.

## ARGUMENT

I. The Ontario Judgment Is Not Entitled to Recognition or Deference.

- Under *Hilton v. Guyot*, 159 U.S. 113 (1895), and subsequent comity cases, U.S. courts do not enforce foreign judgments where:

   1. The foreign proceeding lacked due process or personal jurisdiction;

   2. The judgment violates U.S. public policy; or

    3.    It was procured through fraud.

- Here, the Ontario judgment:

      1.    Was entered on default without valid service;

      2.    Contains sweeping prior restraints on speech, contrary to the First Amendment;

      3.    Explicitly references this U.S. case, seeking to undermine federal process.

## II. The Injunction Is Unenforceable and Constitutionally Offensive.

- The Ontario court's permanent gag order cannot and will not be enforced in the United States. See *Yahoo! Inc. v. LICRA*, 433 F.3d 1199 (9th Cir. 2006) (refusing enforcement of foreign injunctions that restrict U.S. speech).

- The judgment is a prior restraint, categorically barred under U.S. constitutional doctrine.

## III. Emergency Oral Argument and Protective Relief Are Necessary.

- Plaintiff's pending motions—including to compel certification/disavowal—are now tied directly to this foreign interference.

- Defendants and their counsel must state clearly whether they ratify or intend to rely upon the Ontario judgment, or whether they disavow its findings and injunction.

- To prevent procedural manipulation, Plaintiff asks for an expedited hearing to address:

  o    The admissibility and impact of the Ontario judgment;

  o    Defendants' silence or complicity in its procurement;

  o    Protective orders ensuring Plaintiff's rights are preserved.

## REQUESTED RELIEF

Plaintiff respectfully requests that this Court:

    **1.**    Set an emergency oral argument as soon as judicially feasible;

2.    Enter a protective order barring Defendants and their counsel from relying on, enforcing, or referencing the Ontario judgment in this action, except as evidence of foreign interference;

3.    Take judicial notice of the Ontario judgment for the limited purpose of recognizing its existence and procedural irregularity (2025 ONSC 4338, attached as Exhibit A);

4.    Coordinate the briefing schedule on all pending motions (including to compel certification, disqualification, and sanctions) to account for this foreign interference.

**CONCLUSION**

The Ontario judgment is not a legitimate adjudication. It is a procedural weapon intended to silence a U.S. litigant and derail ongoing proceedings. This Court should act promptly to ensure that its process remains independent and untainted.

Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637


Dated: July 25, 2025

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL

               Plaintiff,

    V.

THE FOREIGN NATION OF CANADA,  et al.

           Defendants.

CASE NO.:    **1:24-cv-02907-CJN**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR ORAL ARGUMENT AND PROTECTIVE SCHEDULING RELIEF

## PRELIMINARY STATEMENT

Plaintiff respectfully seeks emergency judicial intervention following a sweeping and retaliatory judgment issued by the Ontario Superior Court of Justice on July 25, 2025. In *David Kideckel v. Brent Richard Kideckel*, 2025 ONSC 4338, the Ontario court entered default judgment without a merits hearing, awarded $90,000 in damages, and issued a global, permanent injunction purporting to bar Plaintiff from speaking, publishing, or litigating any statement concerning the Ontario defendant—even in this U.S. federal proceeding.

This judgment—procured through fraudulent service and without opposition—amounts to a foreign attempt to:

- Preclude protected litigation conduct in the United States,

- Interfere with the administration of this Court, and

- Chill protected speech and petitioning rights.

Emergency relief is warranted to prevent irreparable prejudice, reinforce this Court's independence, and safeguard Plaintiff's constitutional rights.

## I. THE ONTARIO JUDGMENT IS NOT ENTITLED TO COMITY AND IS PROCEDURALLY DEFECTIVE

The doctrine of international comity permits U.S. courts to recognize foreign judgments when the foreign proceedings are fundamentally fair, impartial, and compatible with due process. *Hilton v. Guyot*, 159 U.S. 113, 202 (1895). However, recognition is discretionary and inappropriate where:

- The foreign proceeding lacked jurisdiction,

- Was obtained by fraud,

- Denied due process,

- Or violates public policy. See *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 138 (2d Cir. 2000); *Ackermann v. Levine*, 788 F.2d 830, 843 (2d Cir. 1986).

Here:

- The Ontario judgment was entered on default, with no evidentiary hearing and no valid service;

- The court relied on a disputed, fabricated affidavit of email service that was never actually effected;

- The judgment contains language that is not impartial, but retaliatory—designed to humiliate and silence a U.S. litigant;

- **The judgment refers to this very action, revealing an intent to interfere with a U.S. federal proceeding.**

Such circumstances bar recognition and warrant protective relief.

## II. THE GAG ORDER IS UNCONSTITUTIONAL AND UNENFORCEABLE IN THE UNITED STATES

The permanent injunction issued by the Ontario court is plainly repugnant to First Amendment principles. It provides:

"The Defendant shall be prohibited from publishing, speaking of, or distributing in any manner whatsoever, whether verbally or in writing, directly or indirectly, including by republication or re-posting, any of the statements referred to in this action, or any statements substantially similar in nature or effect, in any forum or litigation, past, present, or future."

This constitutes a global prior restraint—a judicial ban on speech across all fora, including federal courts in the United States.

Such restraints are presumptively unconstitutional under U.S. law. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Alexander v. United States*, 509 U.S. 544, 550 (1993). Even orders barring speech about private individuals are subject to strict scrutiny and are rarely upheld. *Tory v. Cochran*, 544 U.S. 734, 738 (2005).

Further, U.S. courts have consistently rejected enforcement of foreign judgments that infringe on First Amendment values. See:

- *Yahoo! Inc. v. LICRA*, 433 F.3d 1199 (9th Cir. 2006),

- *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009),

- *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 489 F.3d 474, 478 (2d Cir. 2007).

This Court cannot and should not give effect to a foreign gag order that would prevent Plaintiff from:

- Litigating claims of fraud and misconduct in this forum;

- Submitting evidence to this Court;

- Exercising his right to petition the judiciary.


## III. THE ONTARIO JUDGMENT CONFIRMS THE FRAUD AND COLLUSION PLAINTIFF HAS ALLEGED SINCE THE OUTSET

For months, Plaintiff has warned that Defendants and their Canadian counterparts were:

- Submitting fraudulent affidavits of service in Ontario;

- Coordinating filings in both forums to create conflicting judgments;

- Attempting to procure retaliatory rulings abroad to preempt accountability here.

The Ontario judgment proves those warnings correct.

By allowing entry of a fraud-laced, default-based judgment that is openly hostile, referencing this litigation, and barring Plaintiff from defending himself, Ontario has:

- Confirmed institutional misconduct;

- Undermined the credibility of the Canadian defendants and institutions;

- Created a record that supports the pending motions for disqualification, sanctions, and adverse inferences.

If Defendants do not now disavow the Ontario judgment, they ratify it. And that ratification justifies procedural sanctions and bars any further reliance on comity or privilege.

## IV. THIS COURT HAS INHERENT POWER TO PROTECT ITS PROCEEDINGS FROM FOREIGN INTERFERENCE

Federal courts possess inherent authority to protect the integrity of their proceedings and to prevent litigants or counsel from undermining justice through extrajudicial acts. See:

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991);

- *Dietz v. Bouldin*, 579 U.S. 40, 45–46 (2016);

- *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992).

Where a foreign court enters a judgment that seeks to interfere with pending U.S. litigation—particularly by attempting to suppress evidence, testimony, or speech—this Court has authority to:

- Declare that judgment unenforceable;

- Enjoin any reliance on it in these proceedings;

- Grant scheduling relief or sanctions to ensure fair adjudication.

The Ontario judgment crosses that line. It is not merely foreign—it is foreign interference.

## V. PLAINTIFF HAS SHOWN GOOD CAUSE FOR EMERGENCY RELIEF

Plaintiff promptly notified Chambers with the Ontario ruling once received, including all defense counsel. This was received within the hour of docketing of Plaintiff's Motions, including to Compel Certification or Disavowal.

Emergency relief is warranted because:

- The judgment purports to prohibit Plaintiff from continuing to litigate his claims;

- It may be cited or exploited by Defendants in this forum;

- The harm from inaction now will taint the pending motions and preempt meaningful remedy.

This Court must assert control over its docket and provide clarity that the Ontario Judgment has no preclusive, evidentiary, or procedural effect.


## CONCLUSION

The Ontario judgment is not a triumph for Defendants—it is evidence of coordinated procedural fraud, foreign interference, and an effort to gag a U.S. litigant. Plaintiff respectfully requests that this Court:

- Hold oral argument on this motion and related motions for disqualification and sanctions;

- Enter a protective order neutralizing the Ontario judgment;

- Direct counsel to state their position on whether they intend to rely on that judgment;

- Provide any other relief the Court deems necessary to protect its jurisdiction and the rights of the Plaintiff.


Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

Date: July 25, 2025

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL

                Plaintiff,

       V.

THE FOREIGN NATION OF CANADA,  et al.

             Defendants.

CASE NO.:    **1:24-cv-02907-CJN**

# [PROPOSED] ORDER GRANTING EMERGENCY MOTION FOR ORAL ARGUMENT AND PROTECTIVE SCHEDULING RELIEF

Upon consideration of Plaintiff's Emergency Motion for Oral Argument and Protective Scheduling Relief, and the entire record herein, it is hereby:

**ORDERED** that the motion is GRANTED; and it is further

**ORDERED** that the Court will hold oral argument on Plaintiff's emergency motion and all pending motions for disqualification and sanctions on a date to be set by the Court; and it is further

**ORDERED** that the foreign judgment issued on July 25, 2025 by the Ontario Superior Court of Justice in *David Kideckel v. Brent Richard Kideckel*, 2025 ONSC 4338, shall have no preclusive, evidentiary, or procedural effect in this proceeding; and it is further

**ORDERED** that Defendants and their counsel shall, within seven (7) days of the entry of this Order, file a notice with the Court stating whether they intend to rely on the Ontario judgment in

any filing, argument, or defense in this matter, and whether they ratify or disavow the underlying service and procedural conduct that gave rise to that judgment; and it is further

SO ORDERED.

Dated: _____
Washington, D.C.


Carl J. Nichols
United States District Judge

# EXHIBIT "A"

**CITATION:** David Kideckel v. Brent Richard Kideckel, 2025 ONSC 4338
**COURT FILE NO.:** CV-24-00713955-0000
**DATE:** 20250725

### ONTARIO

### SUPERIOR COURT OF JUSTICE

| | | |
|---|---|---|
| **BETWEEN:** | ) | |
| | ) | |
| DAVID KIDECKEL | ) | |
| | ) | Aram Simovonian, for the Plaintiff |
| Plaintiff | ) | |
| | ) | |
| – and – | ) | |
| | ) | |
| BRENT RICHARD KIDECKEL | ) | Brent Kideckel, Self-Represented |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **HEARD:** June 19, 2025 |

### REASONS FOR JUDGMENT

**AKAZAKI J.**

**OVERVIEW**

[1]     The parties are brothers.

[2]     David Kideckel holds a Ph.D. in neuroscience and an MBA, both from the University of Toronto. He is the principal of his own consultancy firm in the field of financial and capital markets analysis catering to the life sciences industry. He serves as Chairman of the Board of a publicly listed biotech company. He is married to a lawyer employed by the Ministry of the Attorney General of Ontario. Together, they have three children.

[3]     The record discloses little biographical information about Brent Kideckel, beyond his address for service at a post office box in Floral Park, New York, despite his residence in San Marcos, California. His name appears on the vexatious litigant lists of the courts of California and Nevada. He is currently working up litigation in the District of Columbia.

[4]     In late 2023, David Kideckel, his corporate associates, his ex-wife, and the brothers' parents started receiving texts and emails describing David as a cheating husband, a "loser," a violent parent, a vexatious litigant, someone with "mental health issues that

percolate to the surface quite often," "barred for life from the United States," and "arrested and charged and convicted of drunk driving and driving under the influence."

[5]     On January 23, 2024, uniformed Toronto Police officers attended at his home to perform a wellness check arising from Brent Kideckel's report that David's children were in danger. In the face of a cease-and-desist letter from David's lawyer, Brent said he welcomed a lawsuit. Despite that response, Brent Kideckel did not defend the lawsuit. He did hire a Toronto lawyer to bring a motion to set aside the noting in default, but he dismissed the lawyer and withdrew the motion.

[6]     The hearing before me was David Kideckel's motion for default judgment. Before dealing with that motion, I will deal with Brent Kideckel's procedural objections.


## BRENT KIDECKEL'S "PROHIBITION" MOTION

[7]     The motion for default judgment was originally set up to be heard in conjunction with Brent Kideckel's motion to set aside the noting in default. The plaintiff had noted him in default, based on service by email pursuant to Associate Justice La Horey's May 22, 2024, order for substituted service by email and validation of service by email. In her scheduling endorsement for these two motions of January 17, 2025, Akbarali J. observed that the email address was the same used for coordinating that day's hearing.

[8]     On May 20, 2025, Brent Kideckel formally abandoned the motion to set aside the noting in default. Instead, on June 12, 2025, he brought a "motion for prohibition."

[9]     Ordinarily, motions to set aside a noting in default entails a combination of procedural issues and the existence of an arguable defence on the merits: *Franchetti v. Huggins*, 2022 ONCA 111, at para. 9. Brent Kideckel did not argue these points, because he withdrew the motion. His "prohibition motion" sought:

    a.   prohibition of the default judgment motion

    b.   stay of the plaintiff's action pending a case in the U.S. District Court for the District of District of Columbia

    c.   declaration of David Kideckel as a vexatious litigant "across the Nation of Canada"

    d.   costs against the plaintiff's lawyers

[10]   Under subrule 19.02(1), Brent Kideckel's only available step was to bring a motion to set aside the noting in default. This meant I should have proceeded directly to the default judgment motion.

[11]   Because Brent Kideckel was self-represented and may not have understood the consequence of his election to withdraw the motion to set aside the default, I considered

the "prohibition" motion to determine whether hearing the default judgment motion would result in unfairness to him. If he presented credible evidence that he had not been served, I would have been inclined to allow him to relaunch his motion. For the following reasons, I could not give effect to the arguments in his "prohibition" motion for that purpose. The court has equitable jurisdiction to relieve against unfairness, but not to give into strategic obstruction of process.

[12]    In his "prohibition" motion, Brent Kideckel submitted that the plaintiff did not serve the statement of claim in accordance with rule 17.05 or the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, because he did not consent to service by email, and service by email is not allowed in the United States. He also submitted that the affidavit of service by email was fraudulent, because he never received it.

### Objections to Email as Method of Service

[13]    The objection to non-observance of the Convention and service contrary to U.S. law is problematic in four ways:

    a.  The Convention itself excludes situations where the service address is unknown.

    b.  The Convention is silent on email service.

    c.  Contrary to Brent Kideckel's submission, U.S. courts recognize service by email for its judicial documents served in other jurisdictions.

    d.  He himself proposed service by email for his countersuit.

[14]    In her endorsement of May 22, 2024, ordering the service by email, Associate Justice La Horey referred to the difficulties encountered by counsel for David Kideckel in serving Brent and Brent's statement of claim in his own pending Ontario suit "withholding actual US address to protect the physical safety of his family." Thus, at the time of the order permitting service by email, the Convention did not apply, because Art. 1 excluded its application "where the address of the person to be served with the document is not known." Citing *Del Giudice v. Thompson*, 2021 ONSC 903, at para. 8, she interpreted the Convention as containing a permission to employ local service rules of the suit-issuing court to order an alternate method of service.

[15]    The Convention, a 1965 treaty, obviously preceded email. Its two key features are that objecting states can require service through official central authorities and that, in the absence of objection or prohibition, the local laws of the issuing and receiving state courts are permissive. The first feature of the Convention was tested here in *Khan Resources Inc. v. Atomredmetzoloto JSC*, 2013 ONCA 189, where the Russian central authorities' decision to block service meant the plaintiff could not sue the defendants while on Russian soil. More recently, the Alberta Court of Appeal held in *Osadchuk v Kidd*, 2025 ABCA 125, at para. 46, the Convention does not bar the use of methods of service that it does not prohibit.

Page: 4

[16]    As a means of relieving against the authority of objecting states to bar service by mail under Art. 10(a), American Courts have relied on the Convention's absence of reference to email to permit the validation of service of process by email and by social media accounts, while denying the ability to serve by regular mail to the resident of an objecting state: *Sulzer Mixpac AG v. Medenstar Industries Co., Ltd*., No. 1:2015cv01668 – Document 9 (S.D.N.Y. 2015); *Rio Properties, Inc., v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002); and *Mattel, Inc. v. AnimeFun Store*, 2020 U.S. Dist. LEXIS 77660 (SDNY, 1 May 2020). In *Rio Properties*, the court observed:

> Applying this proper construction of [Federal] Rule 4(f)(3) and its predecessor, trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email.

[17]    I therefore decline to give effect to his lead argument, that service by email violated the Convention and U.S. law. American courts have applied rules like our rules for alternative or substituted service, in instances where the defendant has evaded service or cannot be located.

[18]    Finally, as I will describe below, Brent Kideckel "welcomed" his brother's action and proposed service by email for his own "countersuit."

*Brent Kideckel's Denial of Receipt*

[19]    Brent Kideckel's submission about the fraudulent affidavit of service differed from the statement in his affidavit of December 19, 2024, from the abandoned motion to set aside the noting in default (italics mine):

> 9. Furthermore, apropos the service via email, I never received same. While I am not alleging the [*sic*] Mr. Simovorian swore a false affidavit of service, it is *distinctly possible* that the said email was automatically diverted into my Spam/Junk folder, unbeknownst to me. In any event, despite regularly checking the relevant email addresses, I never received the Claim.

[20]    The evidence fell short of the email landing in the junk folder, and Brent Kideckel never checked to see if that had occurred. One can appreciate the importance of this omission from his evidence, because the original cease-and-desist letter from Mr. Simovonian of January 26, 2024, evidently did land in his Gmail inbox. Brent Kideckel responded to the email attaching the letter with a threat of a countersuit and of reporting counsel "to the Ontario Bar Association – actually I may do that anyway." Before wishing counsel a good weekend, he told him: "I'll be blocking this email so any further contact will need to be addressed to my attorney." However, there was no attorney.

[21]    About a half hour later, he sent a further email to Mr. Simovonian asking: "Will you accept service electronically for my countersuit?" From the attachment, labelled "SC to Brent (26-

Jan-2024).pdf," and from Brent Kideckel's statement: "Let's get going file your complaint and let's open discovery!" it appears he received the draft statement of claim and challenged the plaintiff's lawyer to get is issued. I take judicial notice of the fact that statements of claim are called "complaints" in U.S. courts.

[22]    Plaintiff's counsel then sent a copy of the issued statement of claim to the same email address for Brent Kideckel, on March 5, 2024. On March 7, 2024, a law clerk at counsel's office sent him the statement of claim again.

[23]    On March 12, 2024, Brent Kideckel sent out an email to various persons threatening a lawsuit. He sent that email not only to Mr. Simovonian but also to Annessa Cenerini, the law clerk who had sent him the second March email with the issued statement of claim.

[24]    The associate judge deciding the service motion under rules 16.04 and 16.08 noted in her April 11 and May 22, 2024, endorsements, that Brent Kideckel had used the proposed email address in his own litigation in this court and had used an alternative email address.

[25]    The formal service emails sent to two email addresses provided by Brent Kideckel followed the responding emails that he sent to various individuals including Mr. Simovonian and his law clerk. He knew of the draft statement of claim. If he did block the emails from Mr. Simovonian's firm, that would have been a further act of service evasion. He himself proposed service by email. A person with Brent Kideckel's perspicacity about legal disputes would have been on the lookout for the issued statement of claim. Had he blocked Mr. Simovonian's law firm, he likely would have checked his junk mail regularly. The statement in his affidavit that the email could have been diverted there "unbeknownst to me" bears no credibility, in the face of his stated intent to block the emails from the law firm.

[26]    I therefore find, on a balance of probabilities, that the statement of claim came to the defendant's attention. The decision to abandon the motion to set aside the default in favour of a "prohibition" motion to seek, inter alia, a costs order against plaintiff's counsel, appears to have been a convoluted tactic based on an unfounded allegation of a false affidavit of service.

*Conclusion regarding the "Prohibition" Motion*

[27]    Ultimately, what compelled David Kideckel's counsel to obtain the court order for substituted service was Brent Kideckel's refusal to provide an address for service in the lawsuit that he brought against David. Brent Kideckel's treatment of the court process as a kind of playground game required the court to consider closely his basis for the assertion that he did not receive the emails attaching the statement of claim.

[28]    There was also no evidence of a serious intent to defend the case on the merits. Instead of asking for an opportunity to defend and disprove his brother's allegations, he simply sought to have the case wait in line behind a case he brought in the D.C. District Court.

[29]    I therefore find that Brent Kideckel's "prohibition" motion does not provide grounds to relieve him of his withdrawal of the motion to set aside the noting in default. I therefore proceed to the grounds for default judgment. Because default judgment motions proceed as uncontested hearings based on pleadings of liability and assessment of damages, the remainder of this exercise is straightforward.


**MOTION FOR DEFAULT JUDGMENT**

[30]    Pursuant to rule 19.02(1)(a), a defendant who has been noted in default is deemed to have admitted the allegations in the statement of claim. However, under rule 19.06, the facts must legally entitle the plaintiff to judgment. Under rule 19.05(2), the court is expected to assess damages based on affidavit evidence.


*Defendant's Liability in Libel and Slander*

[31]    Not all the pleaded facts in the statement of claim support a viable cause of action in defamation. To be defamatory, the words communicated to a third party must refer to the plaintiff and must tend to lower the plaintiff's reputation in the eyes of a reasonable person: *Bent v. Platnick*, 2020 SCC 23, [2020] 2 SCR 645, at para. 92. The written statements made to David Kideckel's corporate associates and family members were clearly actionable as libel.

[32]    The report to the police was also defamatory. The plaintiff had no means of knowing whether the report was in writing as an online report (libel) or as an oral telephone call (slander). Nothing turns on the distinction, since the report to police caused the police to dispatch officers with a report that the David Kideckel posed a threat to his own family. However, statements made to law enforcement are subject to qualified privilege. That qualified privilege can be defeated if the dominant purpose of the utterance is actual or express malice: *Murphy v. Sutton Group*, 2019 ONSC 2078, at para 76.

[33]    In one of the texts pleaded in the statement of claim, Brent Kideckel threatened to report his brother to the police, to induce them "to show up [at David's family home] to do a welfare check on the physical safety of the children." I therefore find that the communication with the police was not protected by the defence of privilege. By acting out on the threat, Brent Kideckel intended to issue the false report to the police, to hurt his brother. The communication was therefore malicious and not based on any reasonable grounds to contact the police. The report to police was therefore not protected by the defence of qualified privilege.

[34]    The communications by Brent Kideckel to David Kideckel were not actionable in themselves. While one feels sympathy for the verbal campaign directed at the plaintiff, the law of Ontario does not recognize harassment as a stand-alone tort: *Merrifield v. Canada (Attorney General)*, 2019 ONCA 205, at para. 43.

[35]    Counsel for David Kideckel relied on *Gillespie v. Fraser*, 2023 ONSC 537, at para. 44, for the proposition that Brent Kideckel's campaign amounts to a tort of casting a false light on the plaintiff. Examination of the antecedent case law reference in that decision shows that the "new tort" appears to be a fusion of intentional infliction of mental suffering and intrusion on seclusion. The reasoning of the Court of Appeal in *Merrifield* also applies here, in that defamation provides an adequate legal remedy. With respect, I decline to follow the trial-level case law recognizing the new tort. Defamation law is perfectly adequate to address the allegations in the statement of claim.

### General Damages

[36]    The plaintiff submitted that the damages should be assessed at a high amount, because defamation commands damages at large: *Hill v. Church of Scientology of Toronto*, 1995 CanLII 59 (SCC), [1995] 2 SCR 1130, at para. 164. While this principle is correct, I would differentiate this case from *Hill* in that the defendant in that case was a prominent Toronto lawyer whose word would have commanded much respect and credibility. Any recipient of Brent Kideckel's communications would quickly doubt them as the writings of an individual whose verbal attacks against his highly successful brother originate from jealousy and propensity for unfounded grievance. Because the communications by Brent Kideckel were narrowly cast and lacked credibility, the damage to David Kideckel was contained. I therefore award $50,000 in general damages.

### Aggravated Damages

[37]    Aggravated damages may be awarded in defamation cases, where the defendant's conduct is motivated by an intent to injure the plaintiff: *Hill*, at para. 183. The messages sent to David Kideckel are not actionable in themselves, but they are an aggravating factor in the overall campaign of communications to parties other than David. I therefore award aggravated damages of $20,000.

### Punitive Damages

[38]    Defamation committed in circumstances of malicious, oppressive, and high-handed conduct offends the court's sense of decency. Such defamation attracts an award of punitive damages because it is akin to a civil fine: *Hill*, at paras. 196-203. In *Hill*, the Supreme Court upheld a jury award of $800,000 in punitive damages because the general and aggravated damages was insufficient to deter the Church of Scientology from continuing its campaign against the plaintiff.

[39]    While this decision was under reserve, Brent Kideckel ordered the motion transcript with a view to providing it to a judge in his District of Columbia case. I know nothing about the suit and can only speculate that he chose D.C. because the courts of his home state of

California and his home-away-from-home of Nevada have barred him. Although the amount of $20,000 is unlikely to deter him from continuing his campaign against his brother in some form, that is all David Kideckel pleaded in the statement of claim.

*Injunction*

[40]    An injunction against future conduct is justified where the monetary award is unlikely to deter future defamation: *Hill*, at para. 201. By bringing his own lawsuit in Ontario, Brent Kideckel has attorned to the jurisdiction. The default judgment here will therefore likely be enforceable in his home state, if David Kideckel wishes to swallow the bait and pursue his brother in California or other location where there might be exigible assets. Because a reasonable person would likely think twice about pursuing a vexatious foreign litigant in his home jurisdiction, the court must provide some remedy that provides some solace beyond a paper money judgment.

[41]    I therefore grant a permanent injunction restraining Brent Kideckel from making, publishing, or causing to be published, any false or defamatory statements relating to the plaintiff, whether oral, written, or published electronically, and distributed by way of internet, or otherwise. Based on his comments about Canada, the court can reduce the likelihood that he will come to Canada or to mobilize Canadian law enforcement to hurt his brother, if he were ordered to stop by a Canadian court.

**CONCLUSION**

[42]    I therefore find that the plaintiff is entitled to general damages for defamation in the amount of $50,000.00, aggravated damages of $20,000, and punitive damages in the amount of $20,000.00. He is also entitled to a permanent injunction in the form stated in paragraph 41 above.

[43]    The plaintiff is entitled to an award of costs on a substantial indemnity basis. To arrive at this conclusion, I have considered the intentional and malicious motive for the defamation and the defendant's attempt at a collateral attack against the proceeding instead of presenting a legitimate defence. I direct counsel for the plaintiff to provide a bill of costs.

[44]    Because this is an order under rule 19, the approval of the defendant of the form of the formal order is dispensed with. I direct counsel to provide a draft judgment incorporating the relief set out immediately above.

_____

Akazaki J.

**Released:** July 25, 2025

**CITATION:** David Kideckel v. Brent Richard Kideckel, 2025 ONSC 4338
**COURT FILE NO.:** CV-24-00713955-0000
**DATE:** 20250725

## ONTARIO

## SUPERIOR COURT OF JUSTICE

**BETWEEN:**

DAVID KIDECKEL

**– and –**

BRENT RICHARD KIDECKEL

---
**REASONS FOR JUDGMENT**
---

Akazaki, J.

**Released:** July 25, 2025