# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL

              Plaintiff,

      V.

THE FOREIGN NATION OF CANADA, et al.

           Defendants.

CASE NO.:    1:24-cv-02907-CJN

## PLAINTIFF'S COMBINED MOTION FOR NON-PARTY *CHAMBERS* SANCTIONS AND PER DIEM SANCTIONS FOR ADOPTION OF FRAUD, BAD FAITH LITIGATION, AND LITIGATION HOLD VIOLATIONS

Plaintiff Brent Kideckel respectfully moves this Court, pursuant to its inherent authority as recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), for the imposition of joint and several sanctions in the *Chambers*-equivalent amount of $2,447,706 against the following non-parties:

- Lewis Baach Kaufmann Middlemiss PLLC ("LBKM") Partners: Eric Lewis, Martin Baach, Adam Kaufmann, Arthur Middlemiss, Elizabeth Velez;

- Epstein Becker & Green, P.C. ("EBG") Leadership: Patricia Wagner, James Flynn;

- Phillips Lytle LLP: James Grasso (General Counsel), Douglas Dimitroff (Managing Partner).

As detailed in the accompanying memorandum, these non-parties knowingly ratified, adopted, and perpetuated the fraud of defendants Aram Simovonian and David Kideckel, including by

**RECEIVED**

AUG 11 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia


facilitating Simovonian's unauthorized practice of law, endorsing the use of a falsified affidavit of service, and enabling the continued reliance on tainted Ontario court materials.

Additionally, Plaintiff seeks coercive, non-punitive per diem sanctions of $500, respectively, on the following non-parties for their failure to acknowledge a duly issued Litigation Hold and Preservation Notice from the date sent until it is acknowledged:

- Dorsey & Whitney LLP (Christopher Barraza's lateral partnership transition destination, less than 90 days after filing an MTD on behalf of a Foreign Municipal Defendant)

- LawPRO (Lawyers' Professional Indemnity Company) and panel counsel Ian Sinke, Tony Antoniou and their firm, Antoniou Law, who indemnified and ratified, under dual representation of Scalzi Caplan LLP and Aram Simovonian, fraud on a foreign tribunal.

- Scalzi Caplan LLP, Scalzi Professional Corporation, Gary Caplan, Carmine Scalzi (the fraudulent lawsuit was filed through their hand, absent retainer agreement or payment, by Aram Simovonian, who rook the corrective action of terminating Aram Simovonian from employment while allowing fraud to continue under its name.)

WHEREFORE, Plaintiff requests that the Court:

1. Find that the above-named non-parties knowingly ratified and perpetuated fraud upon the Court;

2. Impose monetary sanctions in the amount of $2,447,706, jointly and severally;

3. Impose $500 per diem sanction against Dorsey & Whitney LLP from July 2, 2025, until receipt acknowledged;

4. Impose $500 per diem sanction jointly and severally against LawPRO, Ian Sinke, Tony Antoniou, and Antoniou Law until receipt of Litigation Hold acknowledged;

5. Impose $500 per diem sanction jointly and severally against Gary Caplan, Carmine Scalzi, Scalzi Caplan LLP, Scalzi Professional Corporation;

6. Award Plaintiff his costs in bringing this motion.


Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

Dated: August 10, 2025

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL

                Plaintiff,

       V.

THE FOREIGN NATION OF CANADA, et al.

           Defendants.

**CASE NO.:    1:24-cv-02907-CJN**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR NON-PARTY SANCTIONS

## I. INTRODUCTION

This motion seeks *Chambers*-equivalent sanctions of $2,447,706, jointly and severally, against a network of non-parties who, despite direct notice of fraud upon the court, engaged in active ratification through silence and continued reliance on falsified evidence, as well as per diem sanctions against non-parties who ratified, adopted, or aided and abetted fraud on a foreign tribunal while failing to acknowledge a duly issued Litigation Hold and Preservation Hold Notice. Additionally, coercive per diem sanctions against Dorsey & Whitney LLP are sought for their own failure to acknowledge a Litigation Hold and Preservation Notice.

Canadian non-parties — LawPRO, panel counsel Ian Sinke, Antoniou Law, and former counsel Scalzi Caplan LLP — stood by as their insured, defendant Aram Simavonian, filed a falsified affidavit of service and fabricated text messages in the Ontario Superior Court. These same materials were later imported into this Court's docket, where they remain in an orphaned uncertified Motion to Dismiss (MTD.)

U.S. non-parties — Eric Lewis, Martin Baach, Adam Kaufmann, Arthur Middlemiss, and Elizabeth Velez of LBKM; Patricia Wagner and James Flynn of EBG; and James Grasso and Douglas Dimitroff of Phillips Lytle — were likewise on notice and took no corrective action, even as their firms participated in joint defense arrangements that leveraged the tainted Ontario record.

The misconduct mirrors the sustained, multifaceted bad faith that warranted nearly $1 million in sanctions in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) — an amount that in today's dollars equals $2,447,706. The requested relief — monetary sanctions,  and coercive per diem sanctions are both necessary and proportionate to deter future misconduct of this magnitude.

## II. PROCEDURAL HISTORY

### A. Ontario Proceedings and Fraudulent Filings

- **December 19, 2024** – In *David Kideckel v. Brent Kideckel* (Ontario Superior Court), defendant Aram Simovonian filed a motion record containing:

    1. Screenshots purporting to be text messages from Plaintiff — which Plaintiff contends are fabricated;

    2. A falsified affidavit of Service claiming to have served Plaintiff by email, even though he is counsel of record and not a third party;

    3. An order for Substitute Service based on a falsified affidavit by David Kideckel, claiming the address of Plaintiff is unknown, contrary to the front-page of their own Statement of Claim with Plaintiff's home address;

    4. Other statements designed to support a retaliatory default judgment, including the issuance of that substitute order days after Plaintiff filed a Claim in Ontario, and Aram Simovonian sent Plaintiff a threatening and ominous text message to "watch his back."

### B. Importation into the U.S. Docket

- March 11 2025 – LBKM General Counsel Jeffrey Robinson filed a 650-page motion to dismiss on behalf of Aram Simovonian in this Court, attaching the Ontario motion record in full without certification.

- March 25, 2025 George Breen substituted as counsel for Aram Simovonian after Plaintiff filed a Motion to Disqualify Robinson for dual representation and unwaivable conflict of interest between clients.

- March 28, 2025 - Plaintiff requested ethical certification by George Breen

- March 28, 2025-present George Breen and Jeffrey Robinson sit silent and cornered waiting for the Court to clean up their mess leaving Plaintiff prejudiced in his pursuit of now vindicated claims for relief.

**C. Litigation Holds and Direct Notice**

- June 1, 2025– Plaintiff served litigation holds on Scalzi Caplan LLP and Antoniou Law. These notices explicitly identified the fraudulent filings and the unauthorized practice issue.

- On July 2, 2025, Plaintiff served a litigation hold notice on Dorsey & Whitney LLP, necessitated by the mid-litigation lateral transfer of former counsel Christopher Barraza from Phillips Lytle to Dorsey. The notice identified the risk that relevant evidence — including files, communications, and electronically stored information relating to this action — may have been transferred, accessed, or stored under Dorsey's custody. Despite explicit notice, Dorsey has failed to acknowledge or certify compliance with the litigation hold.


## III. COMPARATIVE SANCTIONING PRECEDENT

The misconduct described here is not without parallel in federal jurisprudence. In fact, courts have repeatedly imposed sanctions at or above the *Chambers*-equivalent range when confronted with prolonged, calculated litigation abuse, especially when it implicates multiple actors and jurisdictions.

1. Chambers v. NASCO, Inc., 501 U.S. 32 (1991) – The Supreme Court upheld sanctions of $996,644.65 in 1991 dollars (approximately $2,447,706 in 2025), imposed under a court's inherent power for a sustained course of bad faith designed to frustrate judicial proceedings. The Court emphasized that "outright dismissal of a lawsuit" or "assessment of attorney's fees" is permissible when a party or participant acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46.

2. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017) – The Court reaffirmed that inherent powers allow a court to "order a litigant to pay for the other side's legal fees" when the fees were incurred solely because of that litigant's bad faith. The bad-faith conduct need not be by a named party; it can be by anyone whose actions have "actually caused" the harm. *Id.* at 107–08.

3. Shepherd v. American Broadcasting Cos., 62 F.3d 1469 (D.C. Cir. 1995) – The D.C. Circuit recognized the inherent authority to impose sanctions to "protect the integrity of the judicial process" and approved sanctions for bad-faith conduct even absent direct violation of a rule, provided due process is observed.

4. United States v. Shaffer Equipment Co., 11 F.3d 450 (4th Cir. 1993) – Sanctions were imposed against non-parties who "participated in proceedings" and whose actions "threatened the public's confidence in the integrity of judicial processes."

5. In re Mroz, 65 F.3d 1567 (11th Cir. 1995) – Silence in the face of known falsehood was deemed sanctionable, as it could be "as misleading as an affirmative misrepresentation."

When compared to these precedents, the present case presents *more aggravating factors*:

- Cross-border misconduct involving the importation of tainted evidence from a foreign tribunal.

- Institutional ratification by senior law firm leadership and insurer-backed counsel.

- Parallel unauthorized practice of law, tolerated and effectively endorsed by those with professional and ethical obligations to prevent it.

- A foreign ruling contradicting positions presented to this court by LBKM, and known to the non-parties, without any corrective disclosure to this Court.

The $2,447,706 figure sought here is therefore not only proportionate but consistent with the most serious category of inherent-power sanctions recognized in federal case law.


## IV. INSTITUTIONAL HARM AND DETERRENCE

This case raises broader institutional concerns that go beyond the immediate parties. If left unaddressed, the conduct of these non-parties would set dangerous precedent in at least three respects:

1. Cross-Border Laundering of Fraudulent Evidence – If LBKM can launder falsified materials into U.S. proceedings without consequence, the court becomes vulnerable to being used as an enforcement arm for defective foreign judgments. The silence of senior U.S. counsel in the face of such misconduct invites replication.

2. Erosion of the Duty of Candor – The duty of candor to the tribunal, enshrined in D.C. R. Prof. Conduct 3.3, is not optional. By standing silent despite direct notice, these non-parties signal to the profession that ethical rules are negotiable when the stakes are high enough. That corrodes the self-regulatory premise of the legal profession.

3. Undermining Judicial Integrity – The Supreme Court has emphasized that courts must have "the means to sanction conduct which abuses the judicial process" because "[a] court without the power to protect itself from the abuses and affronts enumerated above would be a mere board of arbitration." *Chambers*, 501 U.S. at 46. When misconduct is institutional — involving multiple law firms, partners, and insurer-backed counsel — the court's response must be equally institutional, imposing sanctions that reach every actor who ratified or benefited from the fraud.

## V. LEGAL ARGUMENT

## A. The Court's Inherent Power Reaches Non-Parties Who Participate in or Ratify Fraud

The Supreme Court has made clear that the inherent power of a federal court is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). This authority extends to "a full range of litigation abuses" and exists precisely because "the rules do not, and cannot, cover the entire field of possible abuses." *Id.* at 46.

That inherent power applies equally to non-parties who "participate in proceedings and whose conduct disrupts the integrity of the court's processes." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462–63 (4th Cir. 1993). The D.C. Circuit has recognized that courts may impose

sanctions "on those who, although not parties, have engaged in bad faith conduct in connection with the litigation." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).

Here, the non-parties  Eric Lewis, Martin Baach, Adam Kaufmann, Arthur Middlemiss, Elizabeth Velez, Patricia Wagner, James Flynn, James Grasso, and Douglas Dimitroff — are not passive observers. They are senior-level attorneys, and law firm leaders, who, with full awareness, allowed fraudulent Ontario filings to remain unrebutted in this Court's record, and remained silent while allowing Jeffrey Robinson to continue filing while under NEF  "terminated" tag after partial withdrawal under procedural duress. Jeffrey Robinson, General Counsel and domestic partner of Eric Lewis, has continued to defraud this Court with the blessing and knowledge of the partnership of LBKM.

## B. Actual Knowledge and Ratification Are Established on This Record

The Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), made clear that bad faith exists where conduct is "tantamount to bad faith" or is undertaken "for oppressive reasons." *Id.* at 766. The Fifth Circuit in *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 577–78 (5th Cir. 2008), held that failure to repudiate wrongful conduct after gaining knowledge amounts to ratification.

Here, actual knowledge is indisputable:

1.  Direct Notice – The non-parties were informed as early as March 2025 of Jeffrey Robinson's fraud on the court and the importation of fraudulent and fabricated evidence into this forum.

2.  Organizational Access – The individuals named are in positions where ignorance is implausible — managing partners, general counsel, senior partners — all of whom control or oversee litigation strategy.

When senior attorneys remain silent despite knowing their side's evidence has been discredited by co-counsel's own in/actions, that silence is an affirmative choice. Ratification is "implied from conduct" where an actor "remains silent with knowledge of the wrongful conduct." *Restatement (Third) of Agency* § 4.01, cmt. d (2006).

## C. Silence in the Face of Known Falsehood Constitutes Bad Faith

The Eleventh Circuit in *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995), held that "silence in the face of known falsehood may be as misleading as an affirmative misrepresentation." Courts treat

such silence as an ethical breach and sanctionable misconduct, especially when the silence preserves a litigation advantage.

Here, silence was strategic:

- LBKM's partners — Lewis, Baach, Kaufmann, Middlemiss, Velez — remained silent while their General Counsel continued to file after a partial withdrawal from one client, whose interests were conflicted with his other client.

- EBG's leadership — Wagner and Flynn — oversaw multiple substitutions of counsel for Simovonian, yet at no point did their firm certify or disavow the filings.

- Phillips Lytle's general counsel Grasso and managing partner Dimitroff sat silent alongside fraud, never challenging the tainted record, while hiding behind a junior associate as the sole face of representation for a foreign municipality.

Such calculated inaction is a textbook example of bad faith.

## D. Unauthorized Practice of Law Is an Independent Ground for Sanctions

D.C. Rule of Professional Conduct 5.5(b) forbids a lawyer from "assist[ing] a person who is not a member of the Bar in the performance of activity that constitutes the unauthorized practice of law." Rule 8.4(c) prohibits "conduct involving dishonesty, fraud, deceit, or misrepresentation." The D.C. Court of Appeals in *In re UPL Committee*, 432 A.2d 105 (D.C. 1981), confirmed that non-lawyers cannot engage in legal representation or judgment.

Here, after being terminated by Scalzi Caplan LLP, Aram  Simovonian continued to act as counsel to David Kideckel without a retainer agreement while Jeffrey Robnison inexplicably attempted to represent both. George Breen, former, now current, and soon-to-be-former counsel to Aram Simovonian was made aware and refused to provide the retainer agreement with which his client was operating under. EBG leadership was also directly notified of their client's unauthorized practice of law.

## E. Chambers-Level Sanctions Are Necessary and Proportionate

In *Chambers*, the Supreme Court upheld nearly $1 million in inherent-power sanctions for a sustained "campaign of delay, harassment, and obfuscation" that undermined judicial proceedings. *Chambers*, 501 U.S. at 35–36, 55–56. Adjusted for inflation, that sanction is equivalent to $2,447,706 in 2025 — the figure sought here.

The parallels are striking:

- Duration – From March 2025 to the present, misconduct has persisted in this Court

- Scope – Fraudulent evidence, unauthorized practice, certification failures, and procedural gamesmanship.

- Institutional Ratification – The misconduct is not isolated to one rogue actor but is embedded in law firm leadership.

- Impact – The tainted record remains in this Court's docket, shaping proceedings and forcing repeated corrective motions.

Given these aggravating factors, *Chambers*-equivalent sanctions are proportionate and necessary, contrary to what George Breen may attempt to preempt with his sudden change of temperament in his Opposition to Plaintiff's Motion to Compel Certification; a marked shift from his earlier bombastic tone, highlighting the overcompensation of those previous filings. Now, refusing to certify the record, George Breen is demanding this Court and the Plaintiff clean up his mess. In turn, this demands nothing less than *Chambers* sanctions on the law firms.

## VI. APPLICATION TO EACH NAMED NON-PARTY

The following findings apply individually to each non-party identified in this motion. While their misconduct is interconnected, each actor's participation or ratification of fraud is distinct and independently sanctionable.

### A. Eric Lewis (LBKM)

As a name partner of LBKM, Lewis bore responsibility for the litigation posture of the firm. LBKM, through Jeffrey Robinson, imported the fraudulent Ontario motion record into this Court without certification. Lewis was placed on direct notice via Plaintiff's filings and correspondence yet permitted the firm to continue standing behind the tainted record post-June 19, 2025.

### B. Martin Baach (LBKM)

Baach, also a name partner, shared direct supervisory responsibility for the matter. His inaction after receiving notice constitutes a knowing choice to keep fraudulent materials in play to the strategic benefit of LBKM's clients.

## C. Adam Kaufmann (LBKM)

Kaufmann's position as a senior litigation partner gave him actual or constructive knowledge of the fraud and of Robinson's NEF "terminated" status. His failure to act in the face of these procedural red flags represents deliberate ratification.

## D. Arthur Middlemiss (LBKM)

Middlemiss' position as a senior litigation partner gave him actual or constructive knowledge of the fraud and of Robinson's NEF "terminated" status. His failure to act in the face of these procedural red flags represents deliberate ratification by him and his partnership.

## E. Elizabeth Velez (LBKM)

Velez a partner at LBKM, was on notice that the Ontario materials were fraudulent, engaged in bad faith tactics beginning with her initial poorly-aged correspondence regarding representation of her client, David Kideckel.

## F. Patricia Wagner (EBG)

As part of EBG's leadership, Wagner was responsible for ensuring that substitute counsel for Simovonian operated within ethical bounds. She presided over the period when George Breen replaced Robinson, and later Elizabeth Harris replaced Breen — neither substitution resulting in certification of the challenged filings. This omission occurred with full knowledge of the fraud allegations.

## G. James Flynn (EBG)

Flynn, also in EBG leadership, shared responsibility for supervising Breen and Harris. Despite actual notice, he allowed EBG to maintain reliance on the Ontario record in joint defense coordination.

## H. James Grasso (Phillips Lytle LLP)

As General Counsel for Phillips Lytle, Grasso had the professional obligation to address the presence of fraudulent materials and Jeffrey Robnson's ongoing fraud on this Court.

## I. Douglas Dimitroff (Phillips Lytle LLP)

As Managing Partner of Phillips Lytle, Dimitroff bore ultimate responsibility for the firm's litigation conduct. He too was on notice of the fraud and remained silent.

Each of these actors had both the authority and the opportunity to cure the misconduct before sanctions became necessary. Their collective failure to act demonstrates a shared institutional decision to preserve the strategic benefits of fraud at the expense of this Court's integrity.

## VII. NOTICE AND OPPORTUNITY TO CURE

The imposition of inherent-power sanctions requires a finding of bad faith. One of the strongest indicators of bad faith is a litigant's or participant's refusal to take corrective action after being given a fair opportunity to do so. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1474–75 (D.C. Cir. 1995) (noting that due process is satisfied when the sanctioned party has notice and an opportunity to respond).

Here, each non-party was afforded multiple opportunities to cure the misconduct:

1. Initial Fraud Allegations (March 2025) – Plaintiff's early filings in response to Jeffrey Robinson's tainted and now orphaned MTD in this Court identified the Ontario motion record as containing a falsified affidavit of service and fabricated text messages as submitted by Jeffrey Robinson. All named non-parties had access to these filings through ECF, joint defense coordination, or direct correspondence from the Plaintiff.

2. Post-Ontario Ruling (June 19, 2025) – After Justice Akazaki's ruling included the fraudulent materials, evidence walked back in this Court by the same Defendants who submitted them to Ontario, Plaintiff filed and served multiple pleadings in this Court citing the ruling and the hearing. No Defendant has affirmatively used their fraudulently obtained default judgement in this Court, because Defendants overplayed their hand. Their US counsel has drawn a line between ratifying and adopting fraud—and presenting it to this Court. George Breen's failure to certify the record further highlights the fraudulent and criminal conduct engaged in by his client, Aram Simovonian.

3. Opportunity Before Sanctions Motion – Non-parties were aware of Plaintiff's intention to seek sanctions, as announced in prior filings. None attempted to preemptively withdraw the tainted materials, certify the record, or seek leave to clarify their position.

By ignoring each of these opportunities, the non-parties transformed what could have been a correctable ethical lapse into a deliberate, institutional choice. This sustained refusal to act despite multiple warnings is a textbook example of bad faith under *Chambers* and its progeny.

## VIII. LITIGATION HOLD NON-COMPLIANCE

Plaintiff served formal litigation hold letters on:

- Gary Caplan and Carmine Scalzi, Scalzi Caplan LLP,

- Ian Sinke, Tony Antoniou, LawPRO, and

- Dorsey & Whitney LLP

These litigation holds directed each recipient to preserve and maintain all records, communications, and documents relating to Jeffrey Robinson's partial withdrawal and fraud on this Court.

The litigation holds were explicit in their scope and unambiguous in requiring acknowledgment and compliance. Each recipient was advised that failure to confirm receipt or confirm approval of the preservation measures would be considered bad faith.

Despite the seriousness of the subject matter and the simplicity of the requested acknowledgment, none of these recipients have responded to confirm receipt or compliance. The absence of any reply is itself evidence of willful disregard for preservation obligations and a calculated decision to avoid creating a discoverable paper trail.

Federal courts consistently treat failure to comply with litigation hold obligations as spoliation, warranting sanctions. See *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (duty to preserve triggered by notice of potential litigation); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 471–72 (S.D.N.Y. 2010) (failure to acknowledge and implement hold letters is sanctionable).

Here, the risk of spoliation is heightened by the cross-border nature of the misconduct, the use of fabricated evidence, and the participation of multiple law firms. Each day of continued noncompliance increases the risk that key communications or records will be altered, deleted, or otherwise rendered unavailable.

## IV. ANTICIPATED PROCEDURAL OBJECTIONS

Plaintiff anticipates that certain non-party respondents may respond with purely procedural objections, asserting (1) that there is "no authority" for the per diem sanction sought; (2) that there is "no duty" to acknowledge or certify receipt of a litigation hold absent a specific court order; and (3) that sanctions should be deferred until a later stage of litigation. These objections fail for at least four reasons:

1. Court's Inherent Authority — Federal courts possess inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process," including monetary sanctions, contempt orders, and per diem fines. Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991). This authority is not dependent on a prior written order when the conduct at issue constitutes a bad-faith obstruction of the court's function. 2. Preservation Obligations Are Independent of Court Orders — The duty to preserve potentially relevant evidence arises when a party or counsel reasonably anticipates litigation, and that duty applies equally to non-parties in possession of such evidence. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold.'"). That obligation does not hinge on a specific directive from the Court.

3. Per Diem Sanctions Are an Established Remedy — Courts routinely impose per diem sanctions to coerce compliance with preservation, production, and disclosure obligations. See, e.g., United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947) (upholding $10,000-per-day contempt sanction to compel compliance). Here, the sanction is calibrated to be proportional, compensatory, and coercive, not punitive.

4. Delay Magnifies the Harm — The longer a litigation hold remains unacknowledged, the greater the risk of spoliation and the more acute the prejudice to Plaintiff. Deferring sanctions until "after discovery" would, by definition, moot the very purpose of preservation obligations. The Court need not — and should not — wait until evidence is lost before enforcing compliance. In short, any attempt to dismiss this motion as premature or unsupported misstates both the law and the factual record. The failure to acknowledge the litigation hold is not a harmless oversight; it is an ongoing violation with daily accrual of prejudice, for which per diem sanctions are an appropriate, narrowly tailored remedy.

## X. PRO SE AGGREGATOR

The procedural aggregator in this matter operates as a force multiplier of misconduct, knitting together multiple acts of bad faith into a single, escalating course of obstruction. This is not an

instance of benign procedural jockeying; it is a deliberate, predatory campaign designed to weaponize procedural asymmetry and exploit the structural power imbalance between an entrenched, resource-rich defense bar and a single pro se litigant. The objective is unmistakable: to prevent the Plaintiff from vindicating what is now an incontrovertibly legitimate claim of civil conspiracy and fraud, recognized in substance by the documentary record itself. Such conduct goes beyond zealous advocacy and entrees the realm of abuse of process, where procedure is not a vehicle for truth-finding but a weapon deployed to evade accountability. The Court's intervention is not merely warranted, it is necessary to restore balance to a process that Defendants and their counsel have sought to tilt irreversibly in their favor.

## XI. RELIEF REQUESTED

For all the reasons set forth above — including the undisputed notice, sustained refusal to correct the record, ratification of fraud, tolerance of unauthorized practice of law, and the institutional scope of the misconduct — Plaintiff respectfully requests that this Court enter an order providing the following relief:

## 1. Monetary Sanctions (Joint and Several)

Impose monetary sanctions in the *Chambers*-equivalent amount of $2,447,706, jointly and severally, against all named US non-parties:

- Eric Lewis, Martin Baach, Adam Kaufmann, Arthur Middlemiss, Elizabeth Velez (LBKM); Patricia Wagner, James Flynn (EBG); James Grasso, Douglas Dimitroff (Phillips Lytle LLP).

## 2. Per Diem Sanctions for Litigation Hold Non-Compliance

Order Gary Caplan, Carmine Scalzi, Scalzi Caplan LLP, and Scalzi Professional Corporation  to pay a coercive civil sanction of $500 per calendar day, jointly and severally, from the date each was served with a litigation hold letter until the date they file a sworn certification confirming (a) receipt of the litigation hold, and (b) full compliance with its preservation directives. See *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (civil sanctions may be designed to compel compliance with court orders).

Order LawPRO, Ian Sinke, Tony Antoniou, and Antonio Law to pay a coercive sanction of $500 per calendar day, jointly and severally, from the date served until the date they file a sworn

certification confirming (a) receipt of the litigation hold, and (b) full compliance with its preservation directives.

Dorsey & Whitney LLP:  Failure to acknowledge or certify compliance with litigation hold served after lateral hire of former counsel—$500/day Coercive sanctions until compliance.

## 3. Costs and Fees

Award Plaintiff his costs and reasonable expenses in preparing and litigating this motion, including any subsequent enforcement proceedings. See *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–08 (2017).

## 4. Any Other Relief the Court Deems Just and Proper

Retain jurisdiction to impose additional remedies necessary to protect the integrity of these proceedings and to deter future misconduct.

Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

DATED: August 10, 2025

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRENT KIDECKEL | |
| Plaintiff, | CASE NO.:   **1:24-cv-02907-CJN** |
| V. | |
| THE FOREIGN NATION OF CANADA,  et al. | |
| Defendants. | |

# [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR NON-PARTY SANCTIONS

Upon consideration of Plaintiff's Motion for Non-Party Sanctions, the memorandum of law, the exhibits submitted in support, and the entire record herein, and for good cause shown, it is hereby:

**ORDERED** that Plaintiff's Motion is **GRANTED**; and it is further

**ORDERED** that the Court finds that the following non-parties knowingly ratified and adopted fraud upon this Court:

- Eric Lewis, Martin Baach, Adam Kaufmann, Arthur Middlemiss, Elizabeeth Velez (Lewis Baach Kaufmann Middlemiss PLLC); Patricia Wagner, James Flynn (Epstein Becker & Green, P.C.); James Grasso, Douglas Dimitroff (Phillips Lytle LLP).

**ORDERED** that monetary sanctions in the amount of $2,447,706, representing the present-day equivalent of the sanction upheld in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), are imposed jointly and severally against the above-named non-parties; and it is further

**ORDERED** that LawPRO, Ian Sinke, Tony Antoniou and Antoniou Law shall each pay, jointly and severally, a coercive civil sanction of $500 per calendar day from the date they were served

with Plaintiff's litigation hold letters until the date they file with the Court a sworn certification confirming:

(a) receipt of the litigation hold, and

(b) full compliance with its preservation directives; and it is further

**ORDERED** that Gary Caplan, Carmine Scalzi, Scalzi Caplan LLP, and Scalzi Professional Corporation  shall each pay, jointly and severally, a coercive civil sanction of $500 per calendar day from the date they were served with Plaintiff's litigation hold letters until the date they file with the Court a sworn certification confirming:

(a) receipt of the litigation hold, and

(b) full compliance with its preservation directives; and it is further

**ORDERED** that the Court refers all licensed attorneys among the named non-parties to the D.C. Bar's Office of Disciplinary Counsel and to the Law Society of Ontario; and it is further

**ORDERED** that Plaintiff is awarded his costs in preparing and litigating this motion; and it is further

**ORDERED** that the Court retains jurisdiction to enforce this Order and to impose further remedies as may be just and proper.


SO ORDERED.

Date: _____, 2025
Washington, D.C.


Carl J. Nichols
United States District Judge

# Exhibit Index

| Exhibit | Description |
|---------|-------------|
| A | Litigation hold letter sent to Antoniou Law |
| B | Litigation hold notice sent to Scalzi Caplan LLP |
| C | Litigation hold letter sent to Dorsey & Whitney LLP |
| D | LBKM's confirmation of receipt of the litigation hold |
| E | EBG's confirmation of receipt of the litigation hold |
| F | Phillips Lytle's confirmation of receipt of the litigation hold |
| G | Email with the litigation hold notice sent to Scalzi Caplan LLP |
| H | Email sending and following up to Antoniou Law |
| I | Email sending the litigation hold to Dorsey & Whitney LLP |

# EXHIBIT "A"

Brent Kideckel
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
June 1, 2025

Via Email
Antoniou Law
Email: tony@alaw.ca

Re: Litigation Hold Notice and Preservation Demand — Kideckel v. Canada et al.
U.S. District Court for the District of Columbia, Case No. 1:24-cv-02907-CJN

To Whom It May Concern:

This letter serves as a formal litigation hold and preservation notice directed to Antoniou Law. You are hereby instructed to preserve all documents, records, communications, and electronically stored information in your possession, custody, or control that may be relevant to the above-captioned matter and any related foreign proceedings involving Aram Simovonian, as well as your representation of Gary Caplan, Carmine Scalzi, and Scalzi Caplan LLP.

This notice applies to all attorneys and staff at Antoniou Law, including Ian Sinke, and encompasses any conduct undertaken on behalf of the above-named individuals or entities. Your firm's involvement has been conducted under a clear and unwaivable conflict of interest, and you are now on formal notice of your exposure to liability under U.S. federal law.

You are specifically directed to preserve and be prepared to produce, upon subpoena or request:

1. All communications (emails, texts, memos, call records, internal notes) involving or referencing Aram Simovonian, Gary Caplan, Carmine Scalzi, or Scalzi Caplan LLP;

2. All documents, drafts, and filings you prepared, reviewed, transmitted, or relied on in connection with any litigation, service attempts, or sworn submissions involving these parties;

3. All billing records, invoices, time entries, and correspondence reflecting any legal services provided to or related to the above parties;

4. All internal memoranda, conflicts checks, or correspondence concerning the dual representation or authority of any counsel acting for both individual and institutional clients simultaneously;

5. Any materials evidencing your firm's role in initiating, advancing, ratifying, or concealing fraudulent conduct or abuse of process, whether by act or omission.

Be advised that materials or correspondence with your clients are not shielded from discovery under United States federal law due to the applicability of the crime-fraud exception to both attorney-client privilege and the work product doctrine. Any assertion of privilege that attempts to obstruct discovery into fraudulent acts will be summarily challenged and sanctioned. Canadian legal privilege does not shield your firm from its discovery obligations or liability in a U.S. proceeding.

Further, you are formally advised that fraud and abuse of process by Aram Simovonian is now established on the docket of the U.S. District Court for the District of Columbia, including his use of three separate counsel in as many months, service by false affidavit, and unauthorized litigation conduct. Any act by your firm in furtherance or concealment of that conduct constitutes ratification of fraud on a foreign tribunal.

In addition, your firm's active role in securing costs orders in Canadian courts based on Aram Simovonian's fraudulent pleadings has directly compounded that fraud. These cost orders were later imported by Aram and his former U.S. counsel, Jeffrey Robinson, to prejudice the docket in the U.S. District Court. As such, your conduct has crossed into the jurisdiction of this proceeding and places Antoniou Law squarely within the scope of liability under U.S. law. Your firm's actions are not isolated to a foreign jurisdiction—they have been used as part of a broader cross-border scheme.

Antoniou Law will be named as a co-conspirator in the forthcoming amended complaint. However, targeted discovery will commence imminently before the filing of that amended complaint, as it directly concerns the fraud on the court and the dual representation by Aram Simovonian's first U.S. counsel. Your firm is therefore placed on immediate litigation notice as a subject of pre-complaint discovery pursuant to the Federal Rules of Civil Procedure.

This litigation hold applies to all lawyers, staff, contractors, and affiliates of Antoniou Law, and you are expected to immediately suspend all document deletion, auto-purge, and overwrite protocols affecting physical and digital records.

Please confirm in writing within five (5) business days that you have received and will comply with this notice. Failure to do so will be documented and submitted to the court as evidence of obstruction and willful misconduct.

Sincerely,

Brent Kideckel
Pro Se Plaintiff
U.S. District Court for the District of Columbia
brentkideckel@gmail.com
917-634-0637

# EXHIBIT "B"

Brent Kideckel
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com

June 1, 2025

Via Email

Scalzi Caplan LLP
Scalzi Professional Corporation
gary@sclawpartners.ca
carmine@sclawpartners.com

Re: Litigation Hold and Preservation Notice — Kideckel v. Canada et al.
U.S. District Court for the District of Columbia, Case No. 1:24-cv-02907-CJN

To Whom It May Concern:

This correspondence serves as a formal litigation hold and preservation demand directed to
Scalzi Caplan LLP and Scalzi Professional Corporation. You are hereby notified of your legal
obligation to preserve all potentially relevant materials, including but not limited to:
emails, phone logs, text messages, internal memos, billing records, time entries, file drafts,
communications with Aram Simovonian, and any documents generated or relied upon in relation to
the litigation initiated in Ontario that is now being used to interfere with proceedings in the
United States District Court for the District of Columbia. This includes all communications
with Simovonian, David Kideckel, and any U.S.-based parties; all correspondence, draft filings,
and strategy notes; billing records; and phone or call logs, regardless of form or location.

This correspondence serves as a formal litigation hold and preservation demand directed to
Scalzi Caplan LLP and Scalzi Professional Corporation. You are hereby notified of your legal
obligation to preserve all potentially relevant materials, including but not limited to:
emails, phone logs, text messages, internal memos, billing records, time entries, file drafts,
communications with Aram Simovonian, and any documents generated or relied upon in relation to
the litigation initiated in Ontario that is now central to ongoing fraud and abuse of process
proceedings in the U.S. District Court for the District of Columbia. This includes all
metadata, backups, and off-site or cloud-based repositories. I expect full preservation without
exception.

Your firms were the originating arm for the fraudulent Canadian lawsuit. You either knowingly
permitted Aram Simovonian to use your resources to file a claim rooted in perjury, or you
discharged him while allowing those pleadings to remain under your firm's imprimatur without
correction. In either scenario, that constitutes institutional ratification of fraud. See
Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).

Your failure to intervene, investigate, disavow, or withdraw from the tainted proceedings—even
after parting ways with Mr. Simovonian—further entrenches your liability. Your silence is not
neutral. It is affirmative adoption. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods.
Liab. Litig., 643 F. Supp. 2d 482, 489 (S.D.N.Y. 2009); United States v. Philip Morris USA
Inc., 566 F.3d 1095, 1122 (D.C. Cir. 2009).

This ratification is compounded by the fact that the Ontario costs orders—secured under your
firm's name—were imported into the U.S. proceeding by Simovonian and his then-counsel Jeffrey
Robinson, in an effort to prejudice the docket. These actions form the basis of direct exposure
for both firms under U.S. law. See Link v. Wabash R. Co., 370 U.S. 626, 632 (1962).

Furthermore, Scalzi Professional Corporation is placed on notice that it was identified as a named beneficiary in the fraudulent demand letter sent under Scalzi Caplan LLP letterhead. While no direct payments were made, your firm was poised to benefit from the fraud and is alleged to be a potential and intended recipient of unjust enrichment. See Restatement (Third) of Restitution and Unjust Enrichment § 43 (2011).

All assertions of attorney-client privilege or work product protection will be challenged and sanctioned under the crime-fraud exception. See United States v. Zolin, 491 U.S. 554 (1989); Clark v. United States, 289 U.S. 1 (1933); Hickman v. Taylor, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). Canadian privilege doctrine does not apply in this context. See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court, 482 U.S. 522, 540–41 (1987).

You are being held jointly and severally liable for the entirety of the anticipated jury award, expected to range from $20 million to $30 million USD. Discovery concerning the fraud on the court and Simovonian's multiple representations is commencing imminently—before the filing of an amended complaint in which your firms will be formally named.

Your ongoing silence since the onset of these proceedings constitutes ratification. Failure to disavow or correct known fraud on a foreign tribunal will be deemed direct adoption of that fraud.

Should you fail to respond to this notice or preserve the requisite materials, I will promptly inform the U.S. District Court of your obstruction, and the conduct will be asserted as an independent cause of action in the amended complaint. See 18 U.S.C. § 1512(c); Gomez v. Vernon, 255 F.3d 1118, 1134–35 (9th Cir. 2001).

This litigation hold applies to all partners, attorneys, staff, and affiliated entities. Immediately suspend any deletion, backup purge, or overwrite protocols.

You must confirm compliance in writing within five (5) business days. Failure to do so will be treated as obstruction of justice and added to the U.S. court record.

 Sincerely,

 Brent Kideckel

Pro Se Plaintiff

U.S. District Court for the District of Columbia

brentkideckel@gmail.com

917-634-0637

# EXHIBIT "C"

Brent Kideckel

Pro Se Plaintiff

PO Box 20901

Floral Park, NY 11002

brentkideckel@gmail.com

(917) 634-0637

July 2, 2025

BY EMAIL

Nicholas A.J. Vlietstra

General Counsel & Secretary to Policy Committee

Dorsey & Whitney LLP

50 South Sixth Street, Suite 1500

Minneapolis, MN 55402

Email: Vlietstra.nicholas@dorsey.com

CC: Christopher Barraza, Partner

Email: christopher.barraza@dorsey.com

CC: James R. Grasso, General Counsel

Phillips Lytle LLP

Email: jgrasso@phillipslytle.com

**Re: Litigation Hold Notice — *Kideckel v. Canada, et al*, No. 1:24-cv-02907-CJN (D.D.C.)
Preservation Obligations: Mr. Christopher Barraza and His Transition to Dorsey &
Whitney LLP**

Dear Mr. Vlietstra:

I write to place Dorsey & Whitney LLP and Mr. Christopher Barraza, on formal notice of a
litigation hold and preservation obligation in connection with the above-captioned matter before
Judge Carl J. Nichols.

Mr. Barraza, formerly of Phillips Lytle LLP, appeared as counsel for the City of Toronto while
Mr. Jeffrey Robinson was marked "Terminated" by the Court in March 2025. He remained listed
on NEF circulations and filings following that designation — none of which were formally
corrected, disavowed, or withdrawn. The timing of his move to Dorsey & Whitney on April 21

2025 coincided with these procedural anomalies, raising significant concerns regarding Rule 11 disclosures, Rule 83.6(b) certification issues, and possible fraud on the court.

Key facts:

- NEF tag termination for Mr. Robinson in March 2025;

- Mr. Barraza's continued presence on filings thereafter;

- No withdrawals or certifications from Phillips Lytle or Mr. Barraza;

- Transition of Mr. Barraza to Dorsey midstream.

Given the high likelihood of forthcoming discovery, including subpoenas, depositions, or motions regarding misconduct, you are hereby instructed to preserve all relevant communications and records, including but not limited to:

1. Email and internal communications involving Mr. Barraza with Phillips Lytle, the City of Toronto, Simovonian, Robinson, or other defendants;

2. Internal documents on NEF subscriptions, termination designations, withdrawal procedures, Rule 83.6 compliance, and related ethical consultations;

3. Documentation concerning Mr. Barraza's departure from Phillips Lytle and entrance to Dorsey, including conflicts checks, onboarding files, and communications;

4. Records related to Ontario service fraud, including advice or discussions on deposition, disclosure, or service protocols in Canada;

5. Any documents referencing Plaintiff Brent Kideckel or this litigation during the transition period.

Please confirm receipt of this letter and that your firm has taken steps to preserve relevant information by no later than  end of business July 3,  2025.

Enclosed is a Notice of Electronic Filing from March 2025 confirming Mr. Barraza received the Court's signal and took no corrective action.

I reserve all rights to seek sanctions under Rule 37(e), Rule 11, Rule 83.6, or other available remedies for any spoliation or conduct uncovered through ongoing discovery.

Thank you for your prompt attention.

Respectfully,

Brent Kideckel
Pro Se Plaintiff

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 3/28/2025 at 12:53 PM and filed on 3/28/2025

**Case Name:**    KIDECKEL v. FOREIGN NATION OF CANADA et al

**Case Number:**    1:24-cv-02907-CJN

**Filer:**    BRENT KIDECKEL

**Document Number:** 77

**Docket Text:**

**NOTICE Regarding Ethical Certification by BRENT KIDECKEL (zdp)**


**1:24-cv-02907-CJN Notice has been electronically mailed to:**

Jeffrey D. Robinson (Terminated)    jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com, anthony.munroe@lbkmlaw.com

George Bradley Breen    gbreen@ebglaw.com

Christopher D. Barraza    cbarraza@phillipslytle.com, smatheny@phillipslytle.com

Kristen J. Rees    kristen.rees@usdoj.gov, CaseView.ECF@usdoj.gov, TAli@usa.doj.gov

Natalia Marte    nmarte@phillipslytle.com, ctarbell@phillipslytle.com

BRENT KIDECKEL    Brentkideckel@gmail.com

**1:24-cv-02907-CJN Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=3/28/2025] [FileNumber=9449034-0]
[44eafce457c63affc7fc05af19a41c0b9e130f7bec03fa7e5d82b0c1533d91a0624c
5bb5822d17ab1e5901e33fd0f23bfc1a85112af265b521b92eb8e77b7eac]]

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

U.S. District Court

District of Columbia

## Notice of Electronic Filing

The following transaction was entered on 4/8/2025 at 2:41 PM and filed on 4/8/2025

**Case Name:**     KIDECKEL v. FOREIGN NATION OF CANADA et al

**Case Number:**     1:24-cv-02907-CJN

**Filer:**     BRENT KIDECKEL

**Document Number:** 89

**Docket Text:**

**NOTICE OF Ongoing Prejudice by BRENT KIDECKEL (zdp)**

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

Jeffrey D. Robinson (Terminated)    jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com, anthony.munroe@lbkmlaw.com

George Bradley Breen    gbreen@ebglaw.com

Christopher D. Barraza    cbarraza@phillipslytle.com, smatheny@phillipslytle.com

Kristen J. Rees    kristen.rees@usdoj.gov, CaseView.ECF@usdoj.gov, TAli@usa.doj.gov

Natalia Marte    nmarte@phillipslytle.com, ctarbell@phillipslytle.com

BRENT KIDECKEL    Brentkideckel@gmail.com

**1:24-cv-02907-CJN Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=4/8/2025] [FileNumber=9467320-0]
[24d3057323d9f05e1aefb8c47c15c9306aaf65dad7963a378556609d7c77290157fab
63d2121648a11c97c6af3a5d979fa527f5011024a2f78072cafe7d33e0e]]

**EXHIBIT "D"**

From: Elizabeth Velez Elizabeth.Velez@lbkmlaw.com
Subject: RE: [External Email] Litigation Hold Notice — Kideckel v. (Canada) City of Toronto et al., Case No. 1:24-cv-02907 (D.D.C.)
Date: Apr 1, 2025 at 5:10:38 PM
To: brentkideckel@gmail.com
Cc: Jeffrey D. Robinson Jeffrey.Robinson@lbkmlaw.com

Dear Mr. Kideckel,

Lewis Baach Kaufmann Middlemiss acknowledges receipt.

---

**Elizabeth M. Velez**

# Lewis Baach Kaufmann Middlemiss PLLC

10 Grand Central
155 East 44th Street
25th Floor
New York, New York 10017
**t** 646 965-8830
Bio | Email | Website | vCard

---

*This communication is confidential and may contain privileged information. If you have received this communication in error, please delete it and advise the sender by reply e-mail. Thank you.*

---

**From:** Brent R. Kideckel <brentkideckel@gmail.com>
**Sent:** Monday, March 31, 2025 11:19:36 AM
**To:** James P. Davenport <James.Davenport@LBKMLAW.com>; Jeffrey D. Robinson <Jeffrey.Robinson@LBKMLAW.com>; Eric L. Lewis <Eric.Lewis@LBKMLAW.com>; John W. Moscow <John.Moscow@LBKMLAW.com>; Tom.Malinowski <Tom.Malinowski@lbkmlaw.com>; Katherine Toomey <Katherine.Toomey@LBKMLAW.com>
**Subject:** [External Email] Litigation Hold Notice — Kideckel v. (Canada) City of Toronto et al., Case No. 1:24-cv-02907 (D.D.C.)

Dear Senior Counsel,

Please find attached a formal litigation hold notice directed to Lewis Baach Kaufmann Middlemiss PLLC concerning the above-captioned matter.

This notice is being provided in light of the firm's prior representation of multiple defendants in this action and the procedural issues now before the Court, including

conflict of interest, unauthorized filings, and matters implicating the integrity of the record and the Court. The attached letter outlines specific categories of information that must be preserved in accordance with Rule 37(e) and prevailing ethical standards.

Kindly confirm receipt and internal distribution of the notice at your earliest convenience. I remain available to confer on scope or process if necessary.

Respectfully,
Brent Kideckel
Pro Se Plaintiff
brentkideckel@gmail.com
(917) 634-0637

**EXHIBIT "E"**

From: Patricia Wagner PWagner@ebglaw.com
Subject: RE: Litigation Hold and Preservation Notice – Epstein Becker Green PC
Date: Apr 3, 2025 at 2:20:15 PM
To: Brent R. Kideckel brentkideckel@gmail.com
Cc: George B. Breen GBreen@ebglaw.com

Confirming receipt.



**Patricia Wagner** | **Bio**
t 202.861.4182 | f 202.861.3526
PWagner@ebglaw.com

1227 25th Street NW, Suite 700 | Washington, DC 20037
t 202.861.0900 | www.ebglaw.com

**From:** Brent R. Kideckel <brentkideckel@gmail.com>
**Sent:** Thursday, April 3, 2025 12:20 PM
**To:** Patricia Wagner <PWagner@ebglaw.com>
**Cc:** George B. Breen <GBreen@ebglaw.com>
**Subject:** Litigation Hold and Preservation Notice - Epstein Becker Green PC

---

**\*\*\* EXTERNAL EMAIL \*\*\***

---

Dear Ms. Wagner,

Please find attached a litigation hold letter concerning ongoing proceedings in
Kideckel v. (Canada) City of Toronto et al., currently pending in the U.S. District
Court for the District of Columbia.

This matter involves serious allegations of fraud on the court and procedural
misconduct, including filings authored by attorney Jeffrey Robinson on behalf of

your client, after that representation ceased. Those filings have not been certified nor disavowed on the docket even though it is your obligation to do so.

The purpose of this notice is to ensure the preservation of all potentially relevant materials, including internal communications, drafts, metadata, and filings relating to your firm's involvement.

If you are not the appropriate contact for this matter, I respectfully request that you forward this to the appropriate party within Epstein Becker's legal or risk management department.

Thank you for your attention to this matter. I look forward to your prompt acknowledgement, consistent with Phillips Lytle LLP and Lewis Baach Middlemiss PLLC.


Respectfully,

Brent Kideckel

Pro Se Plaintiff

CONFIDENTIALITY NOTE: This communication is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this communication or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this communication in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies. Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 875 Third Avenue, New York, NY 10022. Be sure to include your email address if submitting your request via postal mail.

**EXHIBIT "F"**

From: James R. Grasso jgrasso@phillipslytle.com
Subject: RE: Litigation Hold Notice — Kideckel v. (Canada) City of Toronto et al.,
Case No. 1:24-cv-02907 (D.D.C.)
Date: Mar 31, 2025 at 1:17:16 PM
To: Brent R. Kideckel brentkideckel@gmail.com, Natalia Marte
NMarte@phillipslytle.com, Christopher D. Barraza
cbarraza@phillipslytle.com
Cc: Sharon L. Matheny smatheny@phillipslytle.com, Joshua Glasgow
JGlasgow@phillipslytle.com

Dear Mr. Kideckel,

Any concerns you may have about the issues you have identified concerning the above pending
litigation should be addressed with the court.

Best regards,

**From:** Brent R. Kideckel <brentkideckel@gmail.com>
**Sent:** Monday, March 31, 2025 11:19 AM
**To:** James R. Grasso <JGrasso@phillipslytle.com>; Natalia Marte <NMarte@phillipslytle.com>;
Christopher D. Barraza <CBarraza@phillipslytle.com>
**Cc:** Sharon L. Matheny <SMatheny@phillipslytle.com>; Joshua Glasgow
<JGlasgow@phillipslytle.com>
**Subject:** Litigation Hold Notice — Kideckel v. (Canada) City of Toronto et al., Case No. 1:24-
cv-02907 (D.D.C.)

**ATTENTION EXTERNAL EMAIL:** Use Caution with attachments and links!

Dear Mr. Grasso and Ms. Marte,

Please find attached a formal litigation hold notice directed to Phillips Lytle LLP regarding the
above-captioned matter.

This notice is being issued in light of your firm's representation of the City of Toronto and David
Wilson, named defendants in a pending federal action in which significant procedural
irregularities, including tainted and fraudulent filings, have been placed before the Court. While
your firm is not directly implicated in that misconduct, the City's continued appearance on the
caption and proximity to compromised filings gives rise to an independent duty to preserve all
potentially relevant information.

I respectfully request that you confirm receipt and internal distribution of this notice at your

earliest convenience. I remain available to confer in good faith regarding the scope of preservation.

Sincerely,
Brent Kideckel
Pro Se Plaintiff
brentkideckel@gmail.com
(917) 634-0637

**James R. Grasso**
Partner and General Counsel



One Canalside
125 Main Street
Buffalo, NY 14203-2887
Phone 716 847 5422
Mobile 716 481 0277
Fax 716 852 6100
JGrasso@phillipslytle.com
www.phillipslytle.com
Download vCard



Think before you print and save a tree.

This electronic transmission and any attachments hereto are intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you have reason to believe that you are not the intended recipient, you are hereby notified that any disclosure,

# EXHIBIT "G"

From: Brent Kideckel brentkideckel@gmail.com
Subject: Scalzi Caplan - Formal Litigation Hold and Preservation Notice –
Kideckel v. Canada et al.
Date: Jun 1, 2025 at 11:15:26 AM
To: gary@sclawpartners.ca, carmine@sclawpartners.com
Cc: Ian Sinke ian@alaw.ca, Tony Antoniou tony@alaw.ca, Jeffrey D.
Robinson Jeffrey.Robinson@lbkmlaw.com, Annika Conrad
annika.conrad@lbkmlaw.com, Elizabeth A. Harris eharris@ebglaw.com,
gbreen@ebglaw.com, pwagner@ebglaw.com, James R. Grasso
jgrasso@phillipslytle.com, martin.baach@lbkmlaw.com,
arthur.middlemiss@lbkmlaw.com, ddimitroff@phillipslytle.com, Natalia
Marte NMarte@phillipslytle.com, Christopher D. Barraza
cbarraza@phillipslytle.com, Aram Simovonian asimovonian@limalaw.ca
Bcc: brentkideckel@gmail.com

---

Dear Mr. Scalzi and Mr. Caplan,

Please find attached a formal litigation hold and preservation notice directed
to Scalzi Caplan LLP and Scalzi Professional Corporation in connection with
the pending matter: Kideckel v. Canada et al., U.S. District Court for the
District of Columbia, Case No. 1:24-cv-02907-CJN.

You are hereby advised to preserve all documents, records, and
communications in accordance with the attached notice. This includes, but is
not limited to, all materials related to Aram Simovonian, the Ontario
proceeding filed under your firm's name, and any internal discussions
regarding that litigation.

As set forth in the notice, you are being placed on notice of liability under
U.S. law. Failure to confirm compliance within five (5) business days will be
treated as obstruction and raised with the court as a separate cause of action.

Kindly confirm receipt of this notice without delay.

Sincerely,

Brent Kideckel

Pro Se Plaintiff

brentkideckel@gmail.com

917-634-0637

 **SChold .pdf**
6 KB

# EXHIBIT "H"

Mr. Antoniou,

I write to follow up on the litigation hold previously issued to your firm in connection with ongoing proceedings in the U.S. District Court for the District of Columbia, Kideckel v. Canada, et al., No. 1:24-cv-02907.

Mr. Simovonian has now confirmed in written correspondence to the Ontario Superior Court that communications were received by you at this email address. Your firm is therefore deemed to have both actual and constructive notice of the litigation hold, and your continued silence and inaction constitute bad faith under established preservation standards.

This serves as a final opportunity to confirm your firm's compliance with preservation obligations no later than Friday, July 25, 2025. If no confirmation is received by that date, I will proceed to seek non-party sanctions in excess of six figures under Federal Rule of Civil Procedure 37(b) and (c), including for bad faith spoliation, obstruction, and reckless disregard of a duly served litigation hold.

Accordingly, please be further advised that LawPRO is now directly exposed to non-party sanctions. Its ongoing silence—combined with its retention of panel counsel who have actively ratified fraud on a Canadian tribunal—constitutes bad faith. The prior threat of "significant indemnity costs" issued by Ian Sinke, panel counsel for LawPRO, in response to seeking redress from litigation now revealed to be fraudulent, will be presented as evidence of obstruction of justice and an attempt to chill legitimate recourse, in addition to the dual representation now proven to continue. LawPRO is therefore not only vicariously liable for the misconduct of its panel counsel but is now squarely in the zone of sanctionable conduct under Rule 37 and the Court's inherent authority. All rights are reserved.

Respectfully,

Brent Kideckel

Pro Se Plaintiff

PO Box 20901

Floral Park, NY 11002

brentkideckel@gmail.com

(917) 634-0637

On Jun 1, 2025, at 2:15 PM, Brent Kideckel <brentkideckel@gmail.com> wrote:

Dear Counsel,

Please find attached a formal litigation hold and preservation notice issued to Antoniou Law in connection with Kideckel v. Canada et al., Case No. 1:24-cv-02907-CJN, currently pending before the U.S. District Court for the District of Columbia.

This letter places Antoniou Law—including both of you personally and professionally—on immediate notice of cross-border liability. Your firm's participation in securing costs in Ontario based on a fraudulent pleading by Aram Simovonian has been weaponized in U.S. proceedings by Simovonian

and his former counsel, Jeffrey Robinson. Those acts have now been imported into the U.S. docket and directly used to prejudice the court.

You are directed to preserve all records, emails, billing entries, drafts, and internal notes relating to Aram Simovonian, Gary Caplan, Carmine Scalzi, and Scalzi Caplan LLP. This hold extends to all affiliates, employees, and contractors acting under Antoniou Law's direction.

Please confirm receipt and full compliance within five (5) business days. Silence will be recorded as further obstruction and noted on the docket accordingly.

Sincerely,

Brent Kideckel

Pro Se Plaintiff

U.S. District Court for the District of Columbia

brentkideckel@gmail.com

917-634-0637



**Antoniou hold.pdf**
5 KB

# EXHIBIT "I"

From: Brent R. Kideckel brentkideckel@gmail.com
Subject: Dorsey Litigation Hold Notice Re Christopher Barraza and Alleged Fraud on the Court (Kideckel v. Canada et al.)
Date: Jul 2, 2025 at 8:22:48 AM
To: stoeri.bill@dorsey.com, Vlietstra.nicholas@dorsey.com
Cc: James R. Grasso jgrasso@phillipslytle.com, ddimitroff@phillipslytle.com, christopher.barraza@dorsey.com, Natalia Marte NMarte@phillipslytle.com

---

Dear Mr. Vlietstra,

Please see the attached litigation hold notice concerning Mr. Christopher Barraza's transition to Dorsey & Whitney LLP and related matters currently pending before the U.S. District Court.

Kindly confirm receipt at your earliest convenience, and not later than end of day July 3, 2025.

Best Regards,

Brent Kideckel
Pro Se Plaintiff
Brentkideckel@gmaill.com
(917) 634-0637

Downloading
**DorseyHold.pdf**
676 KB