## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL,

*Plaintiff*

v.

FOREIGN NATION OF CANADA, et. al.,

*Defendants*.

Civil Action No. 1: 24-cv-02907 (CJN)

## ORDER

Plaintiff Brent Kideckel is a serial plaintiff who has been listed as a vexatious litigant in multiple states.[1]  In this frivolous suit, he has filed 32 motions in less than a year.  For the reasons that follow, the Court will grant each of the three motions to dismiss filed by Defendants and deny all of Kideckel's motions.  The Court will also order Kideckel to show cause as to why his patently meritless motions do not constitute vexatious harassment under Rule 11(b).

## I.        Background

Kideckel is Canadian, but has been "permanently domicil[ed]" in the United States since 2012.  ECF 1 at 14.  As presently relevant, his Complaint asserts sixteen counts against five main defendants:   his brother David Kideckel, David's wife Dahlia Saibil, David's lawyer Aram

---

[1] Kideckel has filed at least 15 lawsuits in multiple states. *See, e.g., Kideckel v. Wells Fargo Bank*, No. 3:20-cv-0681- DMS-JLB (S.D. Cal.); Kideckel v. Lyft, No. CGC19574331 (Cal. Super. Ct., San Francisco Cnty); *Kideckel v. City of New York*, No. 152358/2017 (N.Y. Sup. Ct., N.Y. Cnty.); *Kideckel v. Mid-Century Ins.*, No. 2:19-cv-00515-APGBNW (D. Nev.). Plaintiff has also been formally listed as a vexatious litigant in Nevada and California. *See* Nevada Administrative Office of the Courts, Vexatious Litigant List (updated Nov. 20,2024), https://nvcourts.gov/__data/assets/pdf_file/0023/13496/Vexatious_Litigant_11.20.24_4.pdf; Judicial Council of California, Vexatious Litigant List (updated Dec. 2, 2024) https://courts.ca.gov/sites/default/files/courts/default/2024-12/vexlit_0.pdf.

Simovonian, the City of Toronto, and a Toronto police detective named David J.N. Wilson.[2] *See generally id.* The factual allegations are difficult to follow; his bedrock claim seems to be that David was "sending messages purporting to be from Plaintiff in an elaborate, albeit criminal, and ill-thought out plot of misappropriation and defamation." *Id.* at 17. Indeed, he alleges that David "started sending himself threats of bodily harm" as though they had come from Plaintiff. David, perhaps not surprisingly, asserts that the Plaintiff himself was the one sending the harassing and threatening messages. ECF 48 at 2–3.

David acted on that belief in January 2024 when he secured a warrant for Plaintiff's arrest— one apparently conveyed to Plaintiff via a phone call from Detective Wilson. ECF 25 at 2. The next month, David sued Plaintiff in Ontario regarding the alleged harassing messages. ECF 48 at 4. Plaintiff responded to that lawsuit with one of his own, also filed in Ontario, against David and David's lawyer Simovonian. *Id.* Six months later, Plaintiff filed this suit. The sixteen counts he alleges include false imprisonment, intrusion upon seclusion, defamation, malicious prosecution, fraud, complicity, negligence, negligent *hiring* (presumably of Detective Wilson—the complaint does not specify), aiding and abetting, and abuse of process. ECF 1. For relief, he requests $75,000 against David, Saibil, and the Government Defendants; $2,000 from Simovian; punitive damages against David and Saibil; and a public apology "in the newspapers of record for Canada and the United States (Toronto Star, and New York Times, respectively)" printed as a "1/8 page broadsheet ad in the Sunday Editions."

Plaintiff's Ontario suit was resolved, in David's favor, on July 25, 2025. ECF 134.

---

[2] At the start of this litigation, three private parties and the United States Citizenship and Immigration Services were also Defendants. By this point, each has been terminated from the case.

## II.    Analysis

It is apparent that Plaintiff fails to adequately plead the merits any of his claims.  The Court need not reach those issues, however, because it lacks subject matter jurisdiction over all of his claims.

### A.    The Government Defendants

It is well established that the Foreign Sovereign Immunities Act (FSIA) "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).  It provides that "foreign states shall be immune from the jurisdiction of the courts of the United States and of the States," subject to specific, narrow exceptions.  28 U.S.C. § 1604.  The term "foreign state" is defined to include "a political subdivision of a foreign state," like Toronto.  28 U.S.C. § 1604.  "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Mwani v. bin Laden*, 417 F.3d 1, 15 (D.C. Cir. 2005) (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127 (D.C.Cir.2004)). "'[J]urisdiction will not obtain,' and the court may dismiss a complaint on that basis, 'if the cause of action is based on a sovereign activity.'" *Rong v. Liaoning Province Gov't*, 452 F.3d - 4 - 883, 888 (D.C. Cir. 2006) (*quoting Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988)).

The Complaint does not identify any FSIA exception that might cover Plaintiff's claims against Toronto, nor do his many other filings.  Indeed, the only reference contained in the Complaint to an FSIA exception is Plaintiff's assertion that 28 U.S.C. § 1605(a)(5)(B)—which excludes from the scope of the non-commercial tort exception "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"—is unconstitutional. ECF 1 at 5.  But Plaintiff provides no reasoned argument in support of this argument,

3

electing instead to cite law review articles that criticize sovereign immunity on policy grounds.  ECF

1 at 6–7.  The FSIA thus remains operative and bars suit against Toronto here.

That leaves Detective Wilson.  Although the FSIA does not apply to officials of foreign states,

the Court agrees with the Government Defendants that Wilson is protected by the common law

doctrine of foreign-official immunity.  Conduct-based foreign-official immunity "is available to 'any

public minister, official, or agent of the foreign state with respect to acts performed in his official

capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state.'"

*Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 230 (D.D.C. 2018), aff'd, 792 F. App'x 6 (D.C. Cir. 2019)

*(quoting Lewis v. Mutond*, 258 F. Supp. 3d 168, 172 (D.D.C. 2017)).  That is the case here.  Plaintiff

alleges that Wilson was acting in his official capacity as an employee of Toronto.  *Id.* at 23–24, 26,

135; *see Buratai,* 318 F. Supp. 3d at 232 ("plaintiff's concession that defendant was at all relevant

times an employee and agent of the defendant Spanish Government sufficed to dispose of the claim").

Permitting Plaintiff's claims against Wilson to proceed would have the effect of enforcing a rule of

law against Toronto.  The Court therefore also lacks jurisdiction over those claims.[3]

## B.    The Nongovernment Defendants

The Court also lacks subject matter jurisdiction over Plaintiff's claims against the remaining

three Defendants (David, David's wife Dahlia Saibil, and David's lawyer Aram Simovonian).  With

respect to federal question jurisdiction, 28 U.S.C. § 1331, Plaintiff does not actually assert a federal

claim against any of these Defendants.  Instead, he argues that this case presents a federal question

because he "anticipates the Foreign Nation of Canada, its sub political [sic] divisions, and its

employees, will assert a defense of immunity under the FSIA on Plaintiff's pleading giving rise to The

---

[3] "Foreign-official immunity is a question of subject-matter jurisdiction." *Broidy Cap. Mgmt. LLC v. Muzin,* No. 19-CV-0150 (DLF), 2020 WL 1536350, at *4 (D.D.C. Mar. 31, 2020), aff'd, 12 F.4th 789 (D.C. Cir. 2021).

Federal Question aforementioned." ECF 1 at 5. But "[f]ederal jurisdiction cannot be predicated on an actual anticipated defense." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

The Court also lacks diversity jurisdiction under 28 U.S.C. § 1332 because foreign parties are on both sides of the dispute. *See Nwosu v. Four Seasons Hotels Ltd.*, No. 24-CV-00025(CRC), 2024 WL 4332605, at *4 (D.D.C. Sept. 27, 2024) ("[D]iversity jurisdiction does not apply to suits between noncitizens regardless of whether they reside in the United States."). The fact that Plaintiff currently resides in the United States (as a temporary, permanent resident or anything less than a full citizen), does not alter this conclusion. *Saadeh v. Farouki*, 107 F.3d 52, 58 (D.C. Cir. 1997).

## C. Plaintiff's Numerous Motions for Sanctions

For those reasons, the Court lacks subject-matter jurisdiction over this entire case. That would typically suffice to terminate this action, but Plaintiff has filed several motions for sanctions and disqualification—which could in theory remain operative notwithstanding this dismissal. The Court will therefore address them briefly.

The statute on which Plaintiff relies, 28 U.S.C.§ 1927, provides that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Though the Court of Appeals "has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be recklessness or the more stringent bad faith, an attorney's behavior must be at least reckless to be sanctionable." *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. CV 20-1558 (JDB), 2022 WL 4182223, at *15 (D.D.C. Sept. 13, 2022). This is a "high threshold," *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir.1992), granted "only in instances of a serious and studied disregard for the orderly process of justice" and upon a showing of "clear and convincing evidence." *Cowtown Found., Inc. v. U.S. Dep't of Agric.*, No. CV 22-1258 (RC), 2023 WL 5507280, at *6 (D.D.C. Aug. 25, 2023).

Plaintiff first seeks sanctions against lawyers Jeffrey Robinson and Annika Conrad (counsel for David Kideckel and Dahlia Saibel), their law firm Lewis Baach Kaufmann Middlemiss, and Defendant Saibil herself. ECF 52 (repeated a second time as ECF 96). Plaintiff seeks $678,000 for "serial misconduct," *id.* at 5, which he calls "a campaign of deliberate litigation abuse orchestrated by [Lewis Baach]" against Plaintiff—claiming that the firm "has made tainted declarations" and caused "ongoing prejudice." ECF 96 at 1. How so exactly? It's hard to say. As best the Court can decipher, the brunt of the claim is that Lewis Baach represents both David Kideckel and Saibil in the same case. But Plaintiff has failed to establish that there is any conflict between those Defendants, and he has thus failed to demonstrate that there is any prohibition on Lewis Baach (and its lawyers) representing both. *See* District of Columbia Rules of Professional Conduct, Rule 1.7.[4]

Plaintiff also seeks to sanction and disqualify Christopher Barraza and his firm, Phillips Lytle LLP, who represent the City of Toronto and Detective Wilson. ECF 116 (repeated a second time in a motion to compel, ECF 131). Plaintiff requests $250,000 for what he calls "conflicted and deceptive dual representation" and the failure to disclose "material ethical violations." ECF 116 at 1, 7. But Plaintiff has again failed to demonstrate any conflict of interest between the Toronto and Wilson.

With respect to George Breen and Elizabeth Harris and their firm, Epstein Becker & Green (counsel for Defendant Simovonian), ECF 117 at 9 (repeated a second time in a motion to compel, ECF 132), Plaintiff argues first that "Epstein Becker allowed [Simovonian] to serve as legal counsel for co-defendant David Kideckel" in the still-pending Ontario matters. But without more that does not demonstrate any conflict. Plaintiff also argues that Epstein Becker attorneys made two allegedly false statements in the Ontario action: that Simovonian is a "partner of the Law firm Lima Law

---

[4] Plaintiff later moved to force the withdrawal of Robinson and for *trebled* sanctions on top of the original request (bringing the total sum to $2,034,000). ECF 128 at 2. That later motion raises all the same arguments as the original Lewis Baach motion; for all the same reasons, it fails.

Professional Corporation" and that Defendant served Plaintiff with the Statement of Claim in that case via email. ECF 111 at 3–4. The Court has no idea whether these were falsehoods; Plaintiff simply states that they were so without any explanation. There is no evidence that Plaintiff did not receive email notice in the Ontario action, nor is there any evidence in the record—for or against—Simovonian's employment with "Lima Law." Simovonian states that "from Plaintiff's filings, it is difficult to discern which aspect of Defendant's statement about service Plaintiff alleges is false, particularly given the inconsistencies between the Ontario Action and the instant case." *Id.* at 5. The Court has the same view. In any event, Plaintiff fails to demonstrate how those actions in a different case would warrant sanctions here.[5]

### III.    Conclusion

For the foregoing reasons, it is ORDERED that each Motion to Dismiss—ECF 25, 48, and 94—is GRANTED. It is FURTHER ORDERED that Plaintiffs' various sanction/disqualification motions and related motions to compel—ECF 52, 96, 116, 117, 122, 131, 132, and 144—are all DENIED. All of Plaintiff's remaining motions—ECF 12, 13, 14, 19, 20, 39, 53, 54, 57, 59, 60, 62, 63, 66, 69, 78, 80, 81, 97, 103, and 134—are DENIED as moot.

That, however, is not enough. Plaintiff has presented cartoonishly frivolous claims that have mired Defendants in pointless motions practice for nearly a year; they present exactly the kinds of "baseless filings… not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings" that Rule 11 is designed to neutralize. *Cobell v. Norton,* 211 F.R.D. 7, 10 (D.D.C. 2002). It's true that "Rule 11 sanctions are an extreme punishment" the imposition of which "is not something courts take lightly"—particularly when the vexations litigant is proceeding

---

[5] Just yesterday, Plaintiff filed yet another motion for sanctions, this time against the three law firms representing the Defendants. ECF 144. This motion is meritless for the same reasons as Plaintiff's other motions, and is also denied.

*pro se. Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005). But the Court cannot imagine a clearer-cut example of judicial frustration. To that end, the Court "has the authority to impose Rule 11 sanctions *sua sponte*" under FRCP 11(c)(5)(B) on the condition that, pursuant to FRCP 11(c)(3), it first orders the offending party to show cause why the conduct at issue has not violated Rule 11(b). Accordingly, Plaintiff is ORDERED to SHOW CAUSE by no later than September 5, 2025, why his conduct in this case has not violated Rule 11(b).

This is a final and appealable order. The Clerk of Court is directed to terminate this case.


DATE: August 12, 2025

CARL J. NICHOLS
United States District Judge