IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL<br><br>        Plaintiff,<br>V.<br><br><br><br>THE FOREIGN NATION OF CANADA, et al.<br>        Defendants. | CASE NO.: 1:24-cv-02907-CJN |

# **PLAINTIFF'S COMBINED MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e), OR IN THE ALTERNATIVE FOR RELIEF UNDER RULE 60(b), WITH LEAVE TO AMEND COMPLAINT, AND OSC RESPONSE**

## **I. INTRODUCTION AND RELIEF REQUESTED**

Plaintiff respectfully moves under Rule 59(e) and Rule 15(a) to alter or amend the judgment of dismissal and for leave to file the attached First Amended Complaint. The dismissal order rested on a misapprehension of the parties and overlooked filings that directly addressed jurisdiction and conflicts of representation. Those errors cannot sustain a finding of frivolousness or support sanctions. Rule 59(e) exists to allow courts to correct clear factual and procedural errors before appellate review.

The attached Amended Complaint eliminates the Foreign Sovereign Immunities Act defendants and asserts only federal claims—RICO, conspiracy under 42 U.S.C. § 1985(2), and related common-law causes of action—against private actors and their counsel. It cures the jurisdictional defects identified in the dismissal order, sets forth detailed predicate acts including unauthorized

RECEIVED
AUG 25 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

practice of law and litigation fraud, and is ready to proceed in the ordinary adversarial process. If leave is denied, Plaintiff reserves the right to refile the same pleading as a new action, at which point it will necessarily be subject to testing through Rule 12 motions rather than sua sponte dismissal. Correcting the record here avoids unnecessary appellate involvement and preserves institutional integrity.

Relief is warranted because:

1. Plaintiff timely filed a supplemental complaint [ECF 69] (Exhibit A) invoking a federal question while the motions to dismiss were pending, but judgment entered without adjudicating it, resulting in manifest injustice.

2. New evidence — including Plaintiff's sworn declaration submitted herewith — further demonstrates fraud, misconduct, and conflicts that tainted the prior record.

3. Judicial economy and controlling precedent (*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004); *Foman v. Davis*, 371 U.S. 178 (1962)) compel reopening rather than forcing duplicative re-filing.

For these reasons, Plaintiff requests that the Court reopen judgment and permit the Amended Complaint (Exhibit B) to be filed.

## II. PROCEDURAL BACKGROUND

1. **Original Complaint.** Plaintiff filed this action on October 15, 2024 against multiple defendants, including sovereign entities, invoking FSIA jurisdiction.

2. **Motions to Dismiss.** Defendants moved to dismiss on FSIA and other grounds. Certain filings were submitted by counsel laboring under unwaivable conflicts, introducing prejudicial material such as a vexatious-litigant designation from unrelated litigation.

3. **Supplemental Complaint.** Before judgment, Plaintiff filed a supplemental complaint [ECF No. 69] by way of a cross-motion in opposition to Defendants' dismissal papers. That pleading asserted federal-question claims under RICO (18 U.S.C. § 1962(c)) and 42 U.S.C. § 1985(2), supplying an independent basis for jurisdiction. The Court never ruled on it.

4. **Disqualification and Sanctions Motions.** Plaintiff also moved to disqualify conflicted counsel and for sanctions based on dual representation of adverse clients and the

submission of fabricated evidence. The Court described these motions as "theoretically survivable," but denied them upon dismissal for pleading insufficiency.

5. **Dismissal.** On August 12, 2025, the Court dismissed the action without prejudice under FSIA. Judgment entered, closing the case without resolving the supplemental complaint, disqualification, or sanctions motions, as a result of misapprehension of the conflicted parties.

6. **Current Motion.** Plaintiff now moves under Rules 59(e) and 60(b) to vacate judgment, correct clear errors, and prevent manifest injustice, and to file the attached Amended Complaint curing all jurisdictional defects.

## III. LEGAL STANDARD

**Rule 59(e).** Relief may be granted to correct clear error, account for new evidence, or prevent manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). When judgment has been entered, amendment may only be considered after relief under Rule 59(e) or 60(b). *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004).

**Rule 60(b).** Relief is available for fraud, misrepresentation, or misconduct (Rule 60(b)(3)), or for "any other reason that justifies relief" in extraordinary circumstances (Rule 60(b)(6)). Such circumstances exist when the integrity of judicial proceedings is compromised. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988).

## IV. ARGUMENT

### A. Relief Is Warranted to Correct Clear Error of Fact and Law

Rule 59(e) authorizes relief where the Court's judgment rests on a misapprehension of law or fact. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Here, multiple clear errors warrant reopening:

1. **Misapprehension of the Actual Conflict of Interest.**
   The dismissal order referenced a supposed dual representation between Dahlia Saibil and David Kideckel. That is incorrect. The conflict documented in Plaintiff's original disqualification motion (ECF 52) was the simultaneous representation of David Kideckel and Aram Simovonian by Jeffrey Robinson of LBKM. This is not a trivial error. The

distinction goes to the heart of Plaintiff's ethics motions, because Robinson attempted to represent two adverse parties — a client (David Kideckel) and his counsel (Simovonian) accused of fraud, which is an unwaivable conflict. This conflict is substantiated by Jeffrey Robinson's withdrawal from representing of Simovonian under procedural duress of a Disqualification motion (Exhibits E-G). Respectfully, the Court's mischaracterization obscured the seriousness of the misconduct and tainted the analysis, and thereby negates any assertion that Plaintiff's motion practice was frivolous.

2. **Overlooking the Supplemental Complaint.**
Before judgment, Plaintiff filed a supplemental complaint in the form of a cross-motion in opposition to Defendant Simovonian's dismissal papers (ECF 69) (Exhibit A). That filing added federal-question claims under RICO (18 U.S.C. § 1962(c)) and 42 U.S.C. § 1985(2), supplying an independent jurisdictional basis. The Court's dismissal order did not acknowledge or adjudicate that supplemental complaint. Failing to consider a live motion on the docket is a correctable error under Rule 59(e).

3. **Failure to Address Court-Generated NEF Signals.**
The docket contained NEF tags marking Jeffrey Robinson as "Terminated," which Plaintiff placed into the record to demonstrate that conflicted counsel continued to appear in defiance of Court signaling. The dismissal order did not address these judicial signals, nor their implications for the conflict analysis. That silence constitutes clear error, as it left unresolved evidence directly tied to fraud and attorney misconduct.

4. **Failure to Provide Adversarial Testing**

In its dismissal order, the Court appeared to credit Defendants' motions to dismiss and supporting affidavits at face value, adopting their assertions (including those relating to service and fabricated communications) as if they were established fact. That procedure deprived Plaintiff of adversarial testing. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's well-pleaded allegations as true and may not resolve disputed facts in Defendants' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). And where a court considers matters outside the pleadings, Rule 12(d) requires conversion to summary judgment, which in turn requires discovery and an opportunity to respond.

The Court's order did neither: it treated Defendants' factual assertions as dispositive while disregarding Plaintiff's allegations and filings. That approach denied Plaintiff the basic adversarial process guaranteed by the Federal Rules, and it directly compounded

the misapprehension of the record described above. Even if the Court adheres to its jurisdictional ruling, any commentary relying on untested defense submissions must be vacated as procedurally improper.

For these reasons, the judgment must be reopened to correct factual and legal errors central to the dismissal.

## B. Relief Is Necessary to Prevent Manifest Injustice

Rule 59(e) further authorizes relief to prevent "manifest injustice." See *Firestone*, 76 F.3d at 1208; *Ciralsky v. CIA*, 355 F.3d 661, 673–74 (D.C. Cir. 2004). Manifest injustice exists where judgment moots curative filings or rests on a tainted record. That is precisely the posture here.

1. **Timely Efforts to Cure Jurisdiction.**
   Plaintiff diligently sought to supplement the complaint before judgment, tendering claims that independently satisfied federal-question jurisdiction. The Court nevertheless entered dismissal without considering that filing. Denying relief now would punish diligence and reward delay — the definition of manifest injustice.

2. **Prejudice from Conflicted and Improper Filings.**
   The dismissal was influenced by motions filed by conflicted counsel who simultaneously represented adverse parties (David Kideckel and Simovonian) and introduced prejudicial material unrelated to jurisdiction, including a vexatious-litigant designation from unrelated litigation. That record was procedurally and ethically tainted. It would be manifestly unjust to preserve a judgment influenced by such misconduct.

3. **Unresolved Motions the Court Found "Theoretically Survivable."**
   Plaintiff's disqualification and sanctions motions were acknowledged by the Court as "theoretically survivable," but were denied on pleading insufficiency.. Those motions implicate the Court's own integrity, as they concern fraud, conflicts, and fabricated evidence. Leaving them unresolved perpetuates manifest injustice.

In *Ciralsky*, the D.C. Circuit reversed where the district court denied leave to amend after a without-prejudice dismissal, holding that it would be unjust to block claims that could be cured. The same reasoning applies here.

## C. New Evidence Confirms the Judgment Cannot Stand

Even if Rule 59(e) did not apply, relief is warranted under Rule 60(b)(3) and (6). Plaintiff now submits a new sworn declaration (Exhibit C), which was not available at the time judgment entered, and which provides additional evidence of fraud, conflicts, and prejudice:

- The Ontario Superior Court's July 25, 2025 ruling confirms that fabricated service and false text evidence underpinned the foreign judgment relied upon by Defendants.

- Robinson has since acknowledged in his declaration that NEF entries labeled him as "(Terminated)" while he continued to appear.

- Plaintiff's later sanctions motions (e.g., ECF 129 and 144) further document that multiple law firms and non-parties ratified fraud on the court.

This evidence could not have been considered at the time of dismissal. It confirms that the prior judgment rests on a materially incomplete and tainted record, warranting relief under Rule 60(b)(3) (fraud/misconduct) and 60(b)(6) (extraordinary circumstances).

## D. Judicial Economy Strongly Supports Reopening

Judicial economy is an independent basis for relief. The D.C. Circuit has cautioned that when a complaint is dismissed without prejudice for curable defects, the better course is to permit amendment in the same action rather than force duplicative litigation. See *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("[W]here a complaint is dismissed without prejudice for failure to state a claim, courts generally should give the plaintiff leave to file an amended complaint, unless amendment would be inequitable or futile.").

Here, denying relief would not advance efficiency or finality. Plaintiff could simply refile the amended complaint as a new action, restarting the litigation from scratch. That would waste judicial resources, duplicate briefing, and risk inconsistent outcomes. Reopening this case, by contrast, allows the Court to proceed directly to the merits on a clean jurisdictional footing.

This is precisely why Rule 59(e) relief exists: to allow a court to correct its own judgment and avoid unnecessary relitigation. See *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("The purpose of a Rule 59(e) motion is to permit the court to correct errors of law or fact, or to consider newly discovered evidence."). Judicial economy therefore strongly favors vacating the judgment and allowing Plaintiff's Amended Complaint to proceed.

## E. *Ciralsky* and *Foman* Together Compel Reopening and Amendment

Taken together, the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), and the D.C. Circuit's decision in *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004), leave no doubt that relief must be granted here.

In *Foman*, the Supreme Court held that leave to amend must be "freely given when justice so requires," and that outright refusal absent a stated reason such as undue delay, bad faith, prejudice, or futility is an abuse of discretion. *Id.* at 182. The Court explained that the "spirit of the Federal Rules" requires decisions on the merits where possible, rather than foreclosing claims on technical grounds, or conflating jurisdiction and merits, with untested findings.

In *Ciralsky*, the D.C. Circuit applied these principles in the precise Rule 59(e) context. There, the district court dismissed a complaint without prejudice, then denied a Rule 59(e) motion and leave to amend, reasoning that plaintiff had already had opportunities to plead. The D.C. Circuit reversed, holding that: (1) dismissal without prejudice is not a final adjudication on the merits; (2) a properly tailored amendment can cure defects; and (3) refusing amendment under those circumstances creates "manifest injustice." *355 F.3d at 673–74*.

This case mirrors that posture exactly. Plaintiff's complaint was dismissed **without prejudice** for jurisdictional defects. Before judgment, Plaintiff filed a supplemental complaint that cured those defects, and now tenders an Amended Complaint that eliminates FSIA defendants, pleads federal-question jurisdiction, and preserves viable claims. There is no undue delay, bad faith, prejudice, or futility.

Under *Foman*, denying leave to amend here would itself be an abuse of discretion. Under *Ciralsky*, denying Rule 59(e) relief would create manifest injustice by locking Plaintiff out despite a curative pleading already before the Court. Together, these cases establish that the proper course is to reopen judgment and allow amendment so that claims may be adjudicated on the merits.

## F. The Judgment Was Prejudiced by a Tainted Record Created by Conflicted Counsel

Relief is also required because the judgment was influenced by filings made under an unwaivable conflict of interest that introduced false and prejudicial material into the record.

1. **Robinson's Conflicted Role.**
    Jeffrey Robinson of LBKM appeared while simultaneously representing David Kideckel and Aram Simovonian — clients whose interests are directly adverse. This is an

unwaivable conflict under D.C. Rule of Professional Conduct 1.7(a). A judgment reached on the basis of submissions filed under such a conflict is inherently suspect and cannot be allowed to stand. See *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984) (conflicted filings "taint the proceedings" and require disqualification).

2. **Importation of a Vexatious-Litigant Label.**
   While operating under this conflict, Robinson imported into his motion to dismiss a vexatious-litigant designation from unrelated California litigation. That label was wholly irrelevant to the jurisdictional question before this Court, yet the dismissal order expressly referenced it. Reliance on such material, injected through a tainted filing, compounded the prejudice to Plaintiff. Courts have recognized that "irrelevant, inflammatory" submissions that shape a dismissal constitute prejudice warranting relief. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on the court occurs where judgments are procured on the basis of tainted filings).

3. **Fabricated Evidence.**
   Robinson's motion also relied on fabricated evidence imported from Ontario proceedings — including a falsified affidavit of service and text messages falsely attributed to Plaintiff. These materials were later exposed before the Ontario Superior Court as fraudulent. Yet they remain in this Court's docket through Robinson's conflicted filing. A judgment influenced by fabricated evidence is voidable under both Rule 59(e) and Rule 60(b)(3). See *Shepherd v. ABC*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) (fraud or misconduct that prevents fair presentation warrants relief).

4. **Prejudice and Institutional Integrity.**
   This tainted record prejudiced Plaintiff in two ways: (1) it improperly colored the Court's view of Plaintiff by importing irrelevant and stigmatizing material (the vexatious-litigant label); and (2) it obscured the true nature of the conflicts and fraud infecting the defense, which the Court itself acknowledged were "theoretically survivable." Preserving a judgment built on conflicted advocacy and fabricated evidence would compromise institutional integrity and amount to manifest injustice.

For these reasons, the judgment should be vacated.

## G. Relief Is Warranted Under Rule 60(b)(3) Because Defendants' Misconduct Substantially Interfered With Plaintiff's Ability to Litigate

Rule 60(b)(3) permits relief where "fraud, misrepresentation, or misconduct by an opposing party" has impaired the moving party's opportunity to present his case fairly. The D.C. Circuit has explained that Rule 60(b)(3) is satisfied when the adverse party's actions "substantially interfered" with the movant's ability to litigate. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995).

That standard is met here.

1. **Conflicted Representation.**
   Jeffrey Robinson appeared while simultaneously representing David Kideckel and Aram Simovonian, an unwaivable conflict. Filings made under such a conflict are inherently unreliable and deprived Plaintiff of a fair opportunity to litigate on a clean record.

2. **Injection of Irrelevant and Prejudicial Material.**
   Robinson's conflicted motion to dismiss imported a vexatious-litigant label from unrelated California litigation. This label had no relevance to FSIA jurisdiction, yet the dismissal order referenced it. That reliance was only possible because the defense injected it through a conflicted filing.

3. **Fabricated Evidence.**
   The same filing incorporated fraudulent materials from Ontario proceedings, including falsified service and fabricated text messages. These false materials, remain uncertified by substitute counsel George Breen, but their presence in this Court's record prejudiced Plaintiff's ability to litigate fairly.

4. **Substantial Interference.**
   Together, these acts "substantially interfered" with Plaintiff's ability to present his case, as they shifted the focus from curable jurisdictional issues to irrelevant stigma and fabricated narratives. As in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), the proceedings were tainted by misconduct that undermined the truth-seeking function of the Court.

Rule 60(b)(3) relief is therefore warranted. The Court should vacate the judgment to ensure Plaintiff's claims are adjudicated free from the prejudice caused by conflicted filings, irrelevant labels, and fabricated evidence.

## H. Extraordinary Circumstances Under Rule 60(b)(6) Also Require Relief

Even if the Court concluded that Defendants' misconduct does not squarely fit within Rule 60(b)(3), relief is independently warranted under Rule 60(b)(6). That provision serves as a "catchall" for "any other reason that justifies relief," but is available only in "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199 (1950). Relief is proper where necessary "to accomplish justice" or to protect "the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988).

This case presents extraordinary circumstances:

1. **Unresolved Motions Acknowledged as Viable.**
   The Court expressly noted that Plaintiff's collateral disqualification and sanctions motions were "theoretically survivable," but declined to address them after dismissing the case on jurisdictional grounds, while still offering dicta, conflating jurisdiction with merits Those motions concern fraud on the court, conflicts of interest, and fabricated evidence — issues that go to institutional integrity. Allowing the judgment to stand without ever reaching them would ensure serious allegations of attorney misconduct remain unexamined.

2. **Dismissal Without Prejudice Yet Final in Effect.**
   Although the Court dismissed the complaint "without prejudice" in lacking subject-matter jurisdiction, it simultaneously denied amendment by closing the case outright. This posture is precisely what the D.C. Circuit condemned in *Ciralsky v. CIA*, 355 F.3d 661, 673–74 (D.C. Cir. 2004): locking a plaintiff out despite curable defects creates manifest injustice and warrants reversal.

3. **Tainted Record Imported from a Foreign Tribunal.**
   The record contains fraudulent Ontario filings — including a falsified affidavit of service and fabricated text messages — imported into this Court through conflicted counsel's motion. As the Supreme Court held in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), judgments built on fraud and falsity must not stand, lest the judicial process itself be compromised.

4. **Institutional Stakes.**
   The misconduct documented here is not isolated to one party; it involves senior attorneys across multiple firms and, by adoption, foreign tribunals. As the D.C. Circuit emphasized in *Shepherd v. ABC*, 62 F.3d 1469, 1477 (D.C. Cir. 1995), federal courts have both the inherent power and the duty to protect their proceedings from bad-faith conduct that undermines their legitimacy.

These extraordinary circumstances distinguish this case from the "ordinary" Rule 59(e) or 60(b)(3) scenario. Denying relief would entrench a tainted record, immunize misconduct from scrutiny, and contradict the Court's own acknowledgment that parts of Plaintiff's claims were viable. To preserve judicial integrity and ensure justice, Rule 60(b)(6) relief is appropriate.

## I. Ongoing Breach of Duty of Candor Regarding the Court's Recent Misapprehension

In its Order dated August 12, 2025, the Court expressly misapprehended the alignment of parties and the status of conflicted representation. That error was material to the Court's ruling, and it was not corrected by counsel of record.

**Jeffrey Robinson** was the attorney whose conflicted representation gave rise to the misapprehension in the first place. He had long been on notice — through NEF "terminated" tags, Plaintiff's filings, his own partial withdrawal and direct correspondence — that his simultaneous representation of multiple adverse parties was unwaivable. When the Court's Order reflected the misapprehension, Robinson, bound by Rule 3.3, had an obligation to correct the record. He did not.

**George Breen**, by then counsel of record for Simovonian, likewise had a continuing duty of candor once the Court articulated the misapprehension. Breen knew the posture, knew the conflict had been raised, and knew that silence would leave the Court operating under a false premise. Yet he too declined to speak, effectively ratifying the Court's misapprehension.

Both Robinson and Breen thus failed in their ongoing duty of candor. Their silence after the Order issued is not strategy — it is a continuing breach of candor to the tribunal. The Court has now been left to rely on a misstatement that both attorneys knew was false, an error they were ethically required to correct. That failure strengthens the basis for reopening under Rule 59(e) and Rule 60(d)(3), as it implicates not merely client advocacy but the integrity of these proceedings.

## J. Reopening the Case Necessarily Reactivates Plaintiff's Pending Motions for Disqualification and Sanctions

Vacating the judgment not only clears the way for the filing of the Amended Complaint, but also requires reinstatement of Plaintiff's pending motions for disqualification and sanctions that were mooted by the dismissal.

The Court itself acknowledged that those motions were "theoretically survivable," but declined to adjudicate them after dismissing for lack of jurisdiction. Those motions include:

- Plaintiff's Motion to Disqualify Jeffrey Robinson and LBKM, and for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority;

- Plaintiff's Motions to Disqualify Epstein Becker & Green and Phillips Lytle LLP and for sanctions; and

- Plaintiff's subsequent motions documenting additional misconduct, including NEF irregularities and ratification of fraud (e.g., ECF 129, 136, 144).

These motions go to the core integrity of the proceedings. As the Supreme Court has emphasized, federal courts "must have the means to sanction conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Allowing the judgment to stand without reaching them would immunize serious allegations of attorney misconduct from review — an outcome antithetical to both fairness and institutional integrity.

Reopening the case therefore necessarily requires reactivation of these motions, which remain fully briefed and ripe for decision. Doing so will ensure that the Court resolves not only the jurisdictional questions, but also the ethical and procedural issues that have compromised the record to date.

## K. Defense Counsel's Invocation of *Chambers* and Tonal Retreat Confirm Awareness of Exposure

In his most recent opposition, George Breen of Epstein Becker & Green abruptly invoked *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) — the Supreme Court's leading case on inherent-power sanctions. Breen wrote: *"[Plaintiff's request for sanctions under the Court's inherent authority ignores the limits recognized by Chambers v. NASCO, Inc., 501 U.S. 32 (1991).]"*.

This invocation is remarkable not because *Chambers* is obscure — it is well known — but because Breen is now positioning himself defensively in relation to it. In earlier filings, Breen's rhetoric was combative and dismissive, branding Plaintiff's motions as "harassing," "frivolous," or "procedural abuse." By contrast, his latest opposition is noticeably muted, its tone subdued, and its central argument aimed at limiting sanction exposure under *Chambers*.

This shift is significant for three reasons:

1. **Implicit Recognition of Sanction Exposure.** By invoking *Chambers* preemptively, Breen tacitly concedes that sanctions under inherent powers are now a live possibility. *Chambers* upheld nearly $1 million in sanctions (equivalent to $2.4 million today) for pervasive bad faith. Counsel would not invoke it unless he perceived parallel risks in this case.

2. **Departure From Prior Rhetoric.** Earlier filings were unrestrained in tone, attempting to intimidate and deflect attention from conflicts and fraud. The latest filing is markedly different — defensive rather than aggressive. Courts have recognized that such tonal retreats reflect counsel's awareness of growing exposure. See *Chambers*, 501 U.S. at 46–47 (describing counsel's shifting tactics as evidence of sanctionable bad faith).

3. **Consistency With Other Evidence of Exposure.** This tonal retreat aligns with broader developments: Robinson's admission regarding NEF "(Terminated)" tags, the Ontario court's exposure of fabricated service, and multiple ratifications of fraud documented in ECF 129, 136, and 144.

Breen's muted invocation of *Chambers* thus underscores that even opposing counsel now recognizes the seriousness of the sanction issues. It is further evidence that the record remains tainted and that the Court should not leave judgment intact without adjudicating the misconduct.

## L. The Court Improperly Conflated Jurisdiction With Merits Findings

The Court's dismissal order stated that this action failed for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act. Once the Court determined that it lacked jurisdiction, it could not properly proceed to adjudicate substantive issues or make findings that presupposed the truth of Defendants' contested allegations. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Yet the dismissal order went further, characterizing Plaintiff's motions as "cartoonishly frivolous," crediting an Ontario *default judgment* as if it were substantive adjudication, and even stating that Defendant David Kideckel "reasonably believed" that fabricated text messages came from Plaintiff. These are merits determinations. They presuppose disputed facts and assign credibility, which is impermissible where the Court has disclaimed jurisdiction. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot pronounce judgment for or against either party.").

This conflation is not a harmless aside. The Court's commentary underpinned its Order to Show Cause and its sanctions posture, branding Plaintiff's filings as frivolous without acknowledging that they were directed at conflicts of representation and procedural defects the Court itself misapprehended. The effect is to foreclose amendment and taint Plaintiff's credibility on grounds that are outside the Court's authority once jurisdiction is denied.

Rule 59(e) relief is warranted to correct this error. Even if the Court adheres to its jurisdictional ruling, it must vacate or withdraw merits commentary that exceeds the proper scope of a jurisdictional dismissal. At minimum, the Court cannot predicate sanctions or findings of frivolousness on misapprehended conflicts or disputed factual allegations once it has disclaimed jurisdiction.

## M. Defendants' Counsel Are Now On Notice of Sanctions Exposure Across the Record

Breen's muted invocation of *Chambers* does not stand alone. It reflects a broader pattern of defense counsel recognizing — if only implicitly — that sanctions exposure is unavoidable. Three converging strands illustrate this point:

1. **Breen's Retreat to *Chambers*.**
   As shown above, George Breen abruptly shifted from deriding Plaintiff's filings as "harassing and procedurally abusive" to invoking *Chambers v. NASCO*, the Supreme Court's flagship sanctions case. This tonal retreat is a tacit admission that inherent-power sanctions are a live risk in this matter.

2. **Robinson's NEF "(Terminated)" Status.**
   Jeffrey Robinson's own declaration now admits that Notices of Electronic Filing repeatedly listed him as "(Terminated)" counsel while he continued to appear. Filing under termination is itself misconduct, but doing so while representing conflicted parties (David Kideckel and Aram Simovonian) compounds the exposure. This is not a procedural quirk; it is a judicial signal that the Court was already tracking misconduct in real time.

3. **Ontario Fraud and Ratification.**
   The Ontario Superior Court's July 25, 2025 ruling exposed fabricated service and false text messages as the foundation of the foreign default judgment. Yet U.S. defense counsel continued to ratify and rely upon those materials in this Court (ECF 136, 144). Ratifying

>fraud in one jurisdiction while contradicting it in another is exactly the kind of duplicity that *Chambers* described as warranting severe sanctions.

Together, these developments show that the defense bar is no longer in denial about the risks they face. The rhetorical retreat to *Chambers*, the NEF-tag admissions, and the exposure of fraud abroad all converge on one conclusion: Defendants and their counsel are acutely aware of their sanctions exposure, and they are now maneuvering to contain it rather than deny it.

This Court should not leave judgment intact on a record that even opposing counsel implicitly acknowledges is compromised. Reopening the case will permit these sanction issues to be adjudicated on the merits, consistent with the Court's inherent duty under *Chambers* to preserve the integrity of its proceedings.

## V. PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Brent Kideckel respectfully responds to this Court's Order to Show Cause regarding the Foreign Sovereign Immunities Act ("FSIA") theory advanced in his original Complaint and "cartoonishly frivolous" motions that rested on the Court's misapprehension of the conflict which the motion practice stemmed from. While the Court has directed Plaintiff to address why sanctions should not issue, the record demonstrates that Plaintiff's invocation of FSIA was made in good faith, was legally colorable, and cannot be deemed frivolous under Rule 11 or the Court's inherent powers.

### I. Context of Litigation History

Defendants may attempt to rely on Plaintiff's prior vexatious-litigant designation in California to argue that his FSIA pleadings here were frivolous. That designation, however, arose from targeted abuse of process by institutional insurers seeking to stigmatize Plaintiff during a period of grave medical vulnerability, when Plaintiff was under the care of specialists at Cedars-Sinai, the Mayo Clinic, and the Cleveland Clinic and was told he had only years to live. Plaintiff did not contest the designation, as survival and treatment for lifelong Crohn's Disease—not litigation—were his focus.

The underlying cases were not frivolous: they involved a personal-injury claim against Farmers Insurance, a fraud dispute with Esserman Volkswagen, and a landlord–tenant insurance coverage conflict triggered by Lemonade Insurance. Each matter presented legitimate, colorable claims. The vexatious designation was a procedural maneuver, not a substantive finding of frivolousness. It should not be weaponized to distort the record here.

**II. FSIA Pleadings Were Colorable and Grounded in Precedent**

Plaintiff's FSIA claims were not conjured out of thin air. They were grounded in case law recognizing exceptions for tortious or commercial acts on U.S. soil. Cases such as *Letelier v. Republic of Chile* (political assassination in Washington, D.C.), *Liu v. Republic of China* (wrongful killing in California), and *Weltover* (commercial debt instruments) all demonstrate that FSIA is neither absolute nor frivolous to invoke. Even where jurisdiction was ultimately denied, courts—including the D.C. Circuit in *Princz* and *Simon v. Republic of Hungary*—treated such claims seriously and required reasoned adjudication.

The Supreme Court has further confirmed in *Samantar v. Yousuf* that the FSIA's reach is contested and evolving. In that context, Plaintiff's invocation of FSIA exceptions to reach Canada's misconduct—especially where Canadian officials and a government attorney (Defendant Saibil) were directly involved—was a reasonable legal position. At minimum, it was "weak but colorable," which defeats any suggestion of frivolousness.

**III. Procedural Developments Since Filing Underscore Good Faith**

Far from being frivolous, Plaintiff's claims have now been vindicated by subsequent events:

- **Fraud in Ontario Proceedings** – Defendant Aram Simovonian procured a default judgment in Ontario through falsified service and fabricated exhibits. Plaintiff objected in real time at the June 19 hearing, but the Ontario court proceeded anyway. This judgment—entered on perjured affidavits and contradicted by the record—is now on appeal (Exhibit H)

- **Adoption and Ratification of Fraud** – Multiple U.S. law firms (Epstein Becker & Green, LBKM, Phillips Lytle) and Canadian entities (LawPRO, Antoniou Law, Scalzi Caplan LLP) have, through silence or active filings, ratified Simovonian's fraud. Plaintiff has preserved this record through Notices of Adoption and Wire Fraud.

- **Robinson's NEF Termination** – This Court itself placed a "(Terminated)" tag on Jeffrey Robinson following his substitution out for Simovonian. Robinson nevertheless continued to file on behalf of conflicted clients, in violation of LCvR 83.6 and Rule 1.16. Plaintiff repeatedly noticed the issue; no corrective action has been taken.

- **Non-Party Ratification** – Plaintiff's pending sanctions motion seeks Chambers-equivalent sanctions against senior partners who knowingly allowed fraudulent filings to persist, including Eric Lewis, Martin Baach, Patricia Wagner, James Flynn, and others.

These developments demonstrate that Plaintiff's filings were not "cartoonishly frivolous," but rather prescient. What began as allegations of foreign sovereign involvement in tortious acts has since been confirmed through foreign rulings and the conduct of Defendants' own counsel.

**IV. Plaintiff's Litigation Conduct Was in Good Faith**

Plaintiff has at every stage:

- Filed motions grounded in precedent and supported by factual evidence including entries on this docket.

- Directed sanctions requests toward institutional misconduct, often asking that monetary awards be directed to D.C. pro bono or public-interest organizations, rather than himself.

- Used court filings, not extrajudicial tactics, to preserve and expose fraud.

This is the opposite of vexatious behavior. It reflects a consistent effort to protect the Court from being misled by foreign judgments and conflicted counsel..

**V. Canada's Inconsistent Position on Sovereign Immunity**

The Foreign Nation of Canada and its municipal defendants cannot in one breath argue for absolute immunity in this Court while simultaneously demanding that other nations be stripped of immunity when misconduct occurs on foreign soil. Canada itself urged the Government of India to revoke diplomatic immunity for its agents accused of extrajudicial conduct abroad. In doing so, Canada acknowledged the principle that when a sovereign's agents commit wrongful acts outside their borders, accountability in the forum state is both proper and necessary.

That position is irreconcilable with Toronto's defense here. If Canada insists that foreign immunity should not shield India for conduct occurring in Canada, then Canada cannot reasonably claim that its own immunity is absolute when acts—including perjury, fraud, and harassment—are directed at a U.S. litigant and imported into a U.S. court. Exhibit D demonstrates that Canada itself has embraced the principle that FSIA exceptions must be enforced to prevent immunity from becoming impunity. This Court should weigh that inconsistency in rejecting any suggestion that Plaintiff's FSIA pleadings were frivolous.

## VI. Plaintiff Invoked Colorable Doctrines, Though Inartfully Pled

Plaintiff also relied on established doctrines that, while not presented with perfect articulation in the initial Complaint, were nonetheless valid and colorable under FSIA. Plaintiff cited the Motley Rule (see *Motley v. United States*, 71 U.S. 237 (1866)), which requires a Complaint fully brief a federal question anticipated in a Motion to Dismiss, and the principle of Plain Incompetence, exemplified by *Marvin v. Briggs*, 475 U.S. 335 (1986), holding that immunity does not extend to conduct that is plainly incompetent or in knowing violation of the law.

Though phrased in layman's terms, these authorities reflected a legitimate attempt to frame Canada's misconduct as falling within FSIA's recognized exceptions. Courts have consistently held that pro se litigants should not be penalized for imperfect phrasing when the underlying legal theory is valid. At bottom, Plaintiff's FSIA claims were an attempt to test a jurisdictional statute in a novel context involving cross-border fraud and abuse of process—exactly the sort of boundary-testing that courts have deemed "weak but colorable," and not sanctionable.

## VII. Clarification Regarding Motion Practice

Plaintiff respectfully notes that the "motion practice" referenced by the Court has, for the entirety of the active litigation period beginning March 2025, centered on one issue alone: Jeffrey Robinson's dual representation and the resulting conflicts that infected these proceedings. All of the substantive motions Plaintiff filed—whether styled as disqualification or sanctions—arose from that single conflict and from defense counsel's continuation of filings despite it. No other ancillary or collateral motion practice was pursued, notwithstanding those tied to direct threats from Defendants. Moreover, subject matter jurisdiction was invoked before those motions were filed, meaning that the Court's docket activity during the past months was not a product of jurisdictional gamesmanship, but of legitimate efforts to address what the Court itself recognized as a "theoretically survivable" conflict claim.

## VIII. Conclusion

The Court unquestionably has authority to sanction improper filings. But here, the Order to Show Cause rests on a misapprehension of the record. The Court stated that there was no conflict, when in fact Mr. Robinson simultaneously represented both David Kideckel and Aram Simovonian before only partially withdrawing. Plaintiff's motions challenging that dual representation were not "cartoonishly frivolous"; they were aimed at an unwaivable conflict that opposing counsel themselves did not correct. To brand such motions frivolous is to conflate jurisdictional dismissal with merits commentary, exceeding the proper scope once jurisdiction is

disclaimed. Sanctions cannot be predicated on the Court's own misunderstanding of the parties and issue.

## VI. CONCLUSION

For all of the reasons set forth above — including correction of clear factual error, prevention of manifest injustice, the presentation of new evidence, and the extraordinary circumstances documented— Plaintiff respectfully submits that the judgment entered on August 12 cannot stand.

Relief is proper under Rule 59(e) because the Court misapprehended the nature of the conflicts at issue, overlooked Plaintiff's supplemental complaint [ECF No.69], and dismissed without considering an amended pleading that cures all jurisdictional defects. Relief is independently warranted under Rule 60(b)(3) and (6) because the record was tainted by conflicted filings, fabricated evidence, and misconduct that substantially interfered with Plaintiff's ability to litigate, and because leaving the judgment intact would undermine the integrity of these proceedings.

Accordingly, Plaintiff respectfully requests that the Court:

1. Vacate or amend the judgment entered on August 12, 2025, pursuant to Rule 59(e) or, in the alternative, Rule 60(b)(3) and (6);

2. Grant leave to file the Amended Complaint attached hereto as Exhibit A;

3. Reinstate and adjudicate Plaintiff's pending motions for disqualification and sanctions,

4. Discharge the Court's pending Order to Show Cause in light of the record and arguments set forth herein.

Granting this relief will correct clear error, prevent manifest injustice, discharge the OSC, and ensure that this matter is resolved on its merits rather than through procedural missteps or tainted filings.

Respectfully submitted,

*[signature]*

Brent Richard Kideckel
Pro Se Plaintiff
P.O. Box 20901
Floral Park, NY 11002
(917) 634-0637
brentkideckel@gmail.com

Dated: August 24, 2025