# TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Supplemental Complaint (Docket No. 69, March 22, 2025) |
| B | Proposed Amended Complaint |
| C | Sworn Declaration of Brent Richard Kideckel (Aug. 25, 2025) |
| D | News Article on Immunity re: Canada and India |
| E | NEF showing Robinson representing David Kideckel and Aram Simovonian |
| F | Substitution of Counsel (First) |
| G | Substitution of Counsel (Second) |
| H | Notice of Appeal to Canada |
| I | Email from David Kideckel to Plaintiff's Husband (Extortionate/Coercive) |
| J | Threatening Text Message from Aram Simovonian |

# EXHIBIT "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF COLUMBIA

BRENT KIDECKEL                                     )
       Plaintiff                              ) CASE NO.:1:24-cv-02907-CJN
    V.                                         )  **SUPPLEMENTAL**
                              )  **COMPLAINT**

THE FOREIGN NATION OF CANADA,  et al.           )
       Defendants.                            )  DOCKET/ECF: 69
_____ )  MARCH.22, 2025

# TABLE OF CONTENTS

1. INTRODUCTION
2. JURISDICTION AND VENUE
3. PARTIES
4. NO IMMUNITY UNDER FSIA
5. STATEMENT OF FACTS
6. COUNT I – CIVIL CONSPIRACY
7. COUNT II – ABUSE OF PROCESS
8. COUNT III  INTRUSION UPON SECLUSION
9. COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
10. COUNT V – FRAUD AND MISREPRESENTATION
11. COUNT VI – MALICIOUS PROSECUTION
12. COUNT VII – RETALIATORY INTIMIDATION
13. COUNT VIII – JUDICIAL STALKING
14. COUNT IX – WITNESS INTIMIDATION
15. WHEREFORE CLAUSE (PRAYER FOR RELIEF)
16. JURY DEMAND

# INTRODUCTION

This action arises from a malicious, calculated, and ongoing conspiracy carried out by the above-named Defendants to weaponize the Canadian judicial and law enforcement systems against Plaintiff, a United States resident of over 12 years. The scheme involves a fraudulent lawsuit filed in Ontario, supported by perjured affidavits, fabricated evidence, and unlawful procedural tactics; a baseless arrest warrant issued in bad faith; and the willful refusal by police authorities to investigate or act on formal complaints.

The campaign is retaliatory and coordinated. It escalated  when Plaintiff followed through on filing a civil suit and then even further after Plaintiff began asserting legal rights in connection with his late father's estate, in real-time as this filing, with new developments almost daily. Defendant Aram Simovonian, a disgraced former law firm associate, sent Plaintiff a threatening message just six days before submitting knowingly perjured evidence to the Ontario court. Defendant David Wilson issued a non-prosecutorial warrant. Defendant Tyron D'Souza then took over the investigation and obstructed it completely, refusing to act for over a year and rubber-stamping false evidence.

The conspiracy remains ongoing as of March 19, 2025, when Simovonian served a frivolous motion to strike seeking costs and vexatious litigant order, less than 24 hours after Plaintiff inquired into the estate of his late father, who died less than two weeks before the forced, abusive, and intrusive Cross-Examination that took place at Las Vegas, Nevasa. Plaintiff was never properly served under the Hague Convention. The conduct violates international law, due process, and basic principles of justice. Yet it remains ongoing.

This Supplemental Complaint covers only what is known until now. The Defendants have continued their abuse of process with the blessing of the Province of Ontario, and its Superior Court with Defendant being the spouse of an AGO employee, co-defendant and co-conspirator Dahlia Saibil.

# JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

2. This Court further has subject-matter jurisdiction pursuant to 28 U.S.C. § 1330(a).

3.   Personal jurisdiction is proper under 28 U.S.C. § 1330(b), and under the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984).

4.   Venue is proper under 28 U.S.C. § 1391 because the acts alleged had intended and actual effects within the United States.

## PARTIES

5.   Plaintiff is a U.S resident, married to a US-born Citizen, residing in California.

6.   Defendant Aram Simovonian is a Canadian lawyer who submitted false affidavits, perjured filings, and threatened Plaintiff prior to submitting false evidence to a foreign court.

7.   Defendant David Wilson is a Toronto police officer who initiated a baseless warrant with no prosecutorial oversight.

8.   Defendant City of Toronto is vicariously and directly liable for the actions of Wilson.

9.   Defendants Wilson and the City of Toronto are a foreign municipal entity/employee ordinarily protected by FSIA. However, Plaintiff asserts that their conduct, as alleged herein, falls within the tortious conduct exception of 28 U.S.C. § 1605(a)(5) and is thus not immune from suit.

10.  Plaintiff acknowledges that the City of Toronto and its subdivisions, including the Toronto Police Services Board (TPSB), are presumptively protected under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1604.

## NO IMMUNITY UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT (FSIA)

11.  This suit qualifies for an exception under 28 U.S.C. § 1605(a)(5), which removes immunity for tortious acts or omissions causing personal injury, death, or property damage in the United States.

12. The City of Toronto and its agents, including law enforcement, committed numerous torts — including abuse of process, intentional infliction of emotional distress (IIED), and obstruction of justice — through a retaliatory campaign that intentionally and foreseeably caused harm to Plaintiff, a U.S. resident, on U.S. soil.

13. Plaintiff alleges that the ongoing misuse of Canadian legal process — including false affidavits, an extraterritorial warrant, and cross-border harassment — has interfered with Plaintiff's liberty, emotional well-being, and constitutional rights within the United States, including in connection with this Court's jurisdiction.

14. Moreover, any claim to immunity is void where the officials acted with gross negligence, malice, or flagrant disregard for legal standards. Immunity does not shield the plainly incompetent or those who knowingly violate the law. The City and its agents acted not merely with incompetence but with coordinated, deliberate intent to obstruct justice and retaliate against Plaintiff's lawful conduct in this District.

15. Accordingly, Plaintiff asserts that FSIA immunity does not apply, and respectfully requests jurisdictional discovery if the issue is contested.

## STATEMENT OF FACTS

16. Simovonian filed a fraudulent civil action in Ontario Superior Court in 2024. It was based on false, redacted, and unauthenticated materials as part of a coordinated campaign with his client, well beyond any semblance of zealous advocacy, but instead a tacit acknowledgement of criminal acts and willful participation.

17. Plaintiff was never served under the Hague Convention. Instead, Simovonian submitted a false affidavit of service, committing perjury, and disregarding the Rules of the court he's an officer of.

18. On May 9, 2024, Simovonian sent Plaintiff a threatening message, due to attempts to locate him for Service of Process as he was terminated from his employer, Scalzi Caplan LLP, indication of their negligent hiring and supervision. Six days later, he knowingly submitted perjured evidence in his fraudulent lawsuit wherein David Kideckel falsely states to not know where Plaintiff resides *(See Plaintiff's Reply to Memo of Opposition to Entry of Default)*.

19. Counter to what would be expected of a competent court, being faced with a Statement of Claim clearly stating Plaintiff's address in the United States (albeit in a fraudulent suit based on manufactured evidence rooted in deceit and retaliation), the newly appointed judge disregarded The Hague Convention, its own Rule 17, and the sovereignty of the United States, permitting "Service by email/" (This should shock this Court as it did every lawyer presented with this.)

20. Simovonian then proceeded to file a false affidavit stating Plaintiff was served by email, contained in an affidavit with verifiable proof of deceit, and which will be proven with subpoena. Not only was Plaintiff never "Served" by email, but it's simply not permitted.

21. Plaintiff retained counsel immediately upon being served with a Motion for Default Judgement on November 29, 2024, after the filing of Plaintiff's Initial Pleading.

22. Advised that Service was not effected in accordance with numerous provincial, international and US laws, Simovonian proceeded to demand, repeatedly, to Plaintiff's counsel to "pack a bag and make travel arrangements because he was going to cross-examine Plaintiff on his motion to set-aside default in-person."

23. This was designed to have multiple chilling results;

    1. Prohibit Plaintiff from defending himself against a fraudulent lawsuit;

    2. Forced in to the jurisdiction that maintains a fraudulent arrest-warrant, clearly shown to prefer retaliation and suppression over public safety and truth-finding (when a Police Officer is unionized, they have no reason to work competently or diligently, as they are themselves protected.)

24. Simovonian demanded two days of cross-examination to pry into irrelevant and deeply personal matters. The intent was harassment, not discovery and under no circumstances had any relevance to my being in the United States and not being Served with process.

25. The transcripts of these cross-examinations were then withheld by the transcriber, Victory Verbatim. It is presumed that Simovonian intimidated them in to not releasing them upon Plaintiff's multiple requests.

26. Upon notice to the CEO of Victory Verbatim that it appears the transcriptions were being withheld due to external pressure and intimidation (from Simovonian) they immediately

provided the transcripts, which are as incriminating of Simovonian as they are intruding on Plaintiff's privacy.

27. My participation was, as was advised by family counsel, a courtesy to that court that lacks jurisdiction.

28. All of this is timed with David Kideckel's newly-realized false claims of being a Chairman of the Board for pharmadrug.ca (where David Kideckel falsely stated to the company founder that Plaintiff was sending him messages.)

29. Not only is this implausible and farcical, but the company exists in name-only, currently trading as a penny stock, whose value has not risen over $1 in over 12 months.

30. Simovonian is acting in-concert with David Kideckel to advance these fraudulent schemes, with the blessing of the Law Society of Ontario, who after being presented with ample evidence of fraud and perjury, still permits Aram Simovonian to practice law, even though he is under active investigation and was terminated by his employer.

31. Given the extremely slow pace of socialist bureaucracy, with a duty to protect their own interests than those of the public, Simovonian feels free to continue on his campaign as though it is open-season for fraud and perjury in Ontario.

32. **Judge Akazaki (the daily motion judge) and Plaintiff's own counsel Daniel Freudman advised that "all the lawyers lie" to the court in Ontario, and are permitted to do so.**

33. David Wilson, as outlined in the original Complaint, issued a non-prosecutorial warrant without proper basis. Plaintiff was told he would be arrested if he entered Canada, even though no charges exist beyond an 80 km radius of Toronto, a proven corrupted and incompetent municipality, with their refusing to allow me to appear remotely; in Winnipeg by and through dear friends who are Law Enforcement, or even in Kenora, Ontario, the same provincial jurisdiction.

34. This is no longer sovereign acts this is retaliation and state-abuse, compounded by their anger that President Trump accurately portrays them as incompetent. (This Court, Plaintiff presumes, concurs that President Trump *got it right* naming this Court to the bench; President Trump has it right about Canada too.)

35. Wilson was later demoted and disciplined with a two week suspension. His misconduct remains uncorrected.

36. The City of Toronto allowed this to happen and did nothing to correct it.

37. On November 29, 2024, Plaintiff discovered for the first time that Simovonian had secretly attempted to secure default by submitting false service affidavits. This came after the original U.S. complaint.

38. The conspiracy remains active. On March 19, 2025, Simovonian served a motion to strike riddled with falsehoods, timed less than 24 hours after Plaintiff inquired into the estate of his father, for which Simovonian's co-conspirator is the Executor and which still hasn't been presented to Plaintiff.

39. Plaintiff sent a letter Demanding accounting of the Estate pending legal action in Manitoba, beyond the corrupted Simovonian's reach.

40. This was met with a coercive email to my husband (See Emergency Motion for TRO) from David Kideckel for which we advised that he Cease and Desist.

41. Simovonian, having already scheduled a hearing for a frivolous Motion to Strike seeking remarkable and ludicrous Orders, was intended to abuse process for the sole purpose of preventing Plaintiff from exercising his legal rights to his father's estate.

42. Simovonian was requested that he allow Plaintiff's participant in the unilaterally scheduled hearing, and after confirming receipt of the Cease and Desist and an acknowledgement that Plaintiff's spouse may take legal action for coercion, intimidation, etc, he said "No."

43. This is a tacit ratification of the tortious and criminal acts, cementing his role as a co-conspirator. This cannot be portrayed as zealous advocacy in any context. It is active participation in fraud.

44. Aram Simovonian, it should be noted, is in his early 20s. For a lawyer to commit such egregious, manipulative, abusive, and fraudulent acts towards a tribunal he is an officer of is worth serious reprimand and reproach.

45. These acts are emblematic of the systemic incompetence and regulatory failure of both the Ontario Superior Court and its legal licensing bodies, which continue to enable

Simovonian's misconduct despite notice of his perjury, misconduct, and procedural abuse.

# COUNT I – CIVIL CONSPIRACY- RICO

(All Defendants)

26. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

27. Defendants agreed to act unlawfully and took overt acts to retaliate against Plaintiff.

28. These acts included false filings, misuse of process, issuance of a baseless warrant, suppression of investigation, and procedural fraud.

29. Plaintiff suffered direct harm.

**There Was an Agreement Between Defendant and Co-Conspirators**

• Defendant Simovonian knowingly conspired with his client and others to use fraudulent litigation in Canada to harm Plaintiff in the U.S.

• Under *Halberstam v. Welch*, an agreement need not be formal—an implicit understanding to engage in wrongful conduct is sufficient.

**An Unlawful Act Was Committed in Furtherance of the Conspiracy**

• Defendant knowingly participated in filing a fraudulent lawsuit and knowingly submitting perjured statements, and making his own false sworn declarations in Canada to target and harm Plaintiff in the U.S.

• Courts have repeatedly held that filing fraudulent lawsuits as a pretext for harming another party is abuse of process and fraud on the court (*Jones v. Wells Fargo Bank*).

**Defendant Had Knowledge of the Fraudulent Scheme and Acted to Further It**

- Defendant's role in fabricating fraudulent claims, submitting false affidavits, and abusing the Canadian legal system was not incidental—it was central to the conspiracy.

- Under *Schmitz v. Smentowski*, a lawyer who knowingly drafts fraudulent legal documents and aids in litigation fraud is liable for conspiracy.

**The Conspiracy Had a Direct Impact on a U.S. Resident, Establishing Jurisdiction**

- Defendant knew that the fraudulent legal actions would harm Plaintiff in the U.S., making the *Calder* effects test applicable.

- Under *Republic of Panama v. BCCI Holdings*, when a conspiracy's effects are felt in the U.S., jurisdiction and liability are proper.

# COUNT II – ABUSE OF PROCESS

(Defendants Aram Simovonian, David Wilson)

29. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

30. Defendants misused judicial and police processes for ulterior, retaliatory purposes.

31. Simovonian filed perjured affidavits, initiated a default proceeding without proper service, and served a frivolous motion to strike on March 19, 2025, timed to Plaintiff's estate inquiry.

## A. Defendant's Cross-Examination Was a Sham Proceeding Designed to Further a Fraudulent Legal Scheme

Defendant Simovonian did not use the legal process to seek truth or advance a legitimate claim —he weaponized the court system to harass, intimidate, and obstruct Plaintiff's rights in a parallel fraudulent lawsuit in Ontario.

1. Tool of coercion and manipulation – Simovonian threatened Plaintiff that if he did not submit to intrusive and irrelevant cross-examination in Las Vegas, his Motion to Set

Aside Default in Ontario would be blocked, while simultaneously seeking a fraudulent default judgment.

**2.**  Pretext to invade privacy – Questions were not relevant to the underlying litigation but focused on irrelevant and highly personal matters intended to intimidate and harass.

**3.**  Manufacturing a false record – The legal system was exploited to generate a record for use in a bad faith litigation campaign.

Case: *McCarty v. Heritage Senior Living, LLC*, 2020 WL 7081495 (E.D. Pa. 2020)

## B. The Cross-Examination Had No Legitimate Legal Purpose

• Not a single relevant question was asked.

• The proceeding was used purely to gather personal information.

• Simovonian exploited procedural vulnerability to gain an unfair advantage.

Case: *Bell v. Mizell*, 716 F.2d 1046 (5th Cir. 1983)

## C. Defendant's Procedural Threats Constituted Coercion and Manipulation

• Plaintiff was placed in a procedural stranglehold.

• Refusal to comply would be used to justify default; compliance meant enduring abusive questioning.

• This constituted coercive misuse of legal procedures.

Case: *Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977)

## D. The Fraudulent Lawsuit in Ontario Was Engineered to Target Plaintiff in the U.S.

- Legal filings were knowingly submitted against a U.S. resident unable to fairly defend himself.

- Cross-examination in Las Vegas was orchestrated to create a misleading record.

- Ontario procedures were manipulated to bar Plaintiff's participation.

Case: *Republic of Panama v. BCCI Holdings*, 119 F.3d 935 (11th Cir. 1997)


### E. Fraud on the Court – The Ultimate Violation of the Judicial Process

- Simovonian knowingly submitted false documents in Ontario.

- Submitted his own falsified Sworn Declarations.

- Misled courts to block Plaintiff's defenses to a fraudulent claim.

Case: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)
Case: *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989)


# COUNT III – INTRUSION UPON SECLUSION

(All Defendants)

35. Plaintiff repeats and realleges all prior paragraphs.

36. Simovonian deliberately used a cross-border cross-examination and legal proceedings to intrude on Plaintiff's privacy in a way that was intentional, offensive, and unrelated to any legitimate litigation purpose.


### A. Defendant's Cross-Examination Was an Intentional and Unjustifiable Intrusion

- The examination in Las Vegas was used to extract irrelevant, highly personal information.

- Plaintiff was under threat: failure to appear would result in adverse consequences in Ontario.

- This coercion undermines any claim of voluntary participation.

Case: *Sackett v. Spindler*, 248 Cal. App. 2d 220 (1967)


## B. Questions Were Irrelevant and Private

- The questions asked had no connection to the legal matter.

- They served only to harass and embarrass Plaintiff.

- This behavior exploited Ontario procedures to abuse Plaintiff's rights.

Case: *Miller v. NBC*, 187 Cal. App. 3d 1463 (1986)


## C. Highly Offensive to a Reasonable Person

- A reasonable person would be shocked by such questioning.

- Plaintiff's emotional well-being and dignity were deliberately violated.

Case: *Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973)


## D. Resulting Harm

- Plaintiff suffered emotional distress and extreme loss of privacy.


# COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(All Defendants)

37.  Plaintiff incorporates all prior paragraphs by reference.

## A. Extreme and Outrageous Conduct

- Filing knowingly fraudulent claims.

- Threatening messages.

- Coordinated abuse of Canadian and U.S. court systems.

Case: *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011)

## B. Defendants Intended to Cause Emotional Distress

- Plaintiff was deliberately targeted.

- Legal tools were used to intimidate and retaliate.

- Abuse escalated after Plaintiff inquired into his father's estate.

Case: *Kotsch v. District of Columbia*, 924 A.2d 1040 (D.C. 2007)

## C. Actual Harm

- Plaintiff suffered severe emotional anguish, humiliation, and fear of retaliation.

- These actions exceeded the bounds of ordinary litigation conduct.

# COUNT V – FRAUD AND MISREPRESENTATION

(Defendants Aram Simovonian)

38.    Plaintiff incorporates all prior allegations.

## A. False Affidavits

- Simovonian falsely swore under penalty of perjury that he was a "partner" at Lima Law Professional Corporation.

- Ontario business records contradict this.

- Simovonian claimed on this same affidavit to have "Served" process with an Initial Pleading by email to the United States.

## B. Broader Strategy of Fraud

- Fraudulent affidavit of service.

- Redacted and unauthenticated "evidence."

- Attempts to suppress release of transcripts (Victory Verbatim).

## C. Elements of Fraud Met:

1.    Material false statement

2.    Knowledge of falsity

3.    Intent to deceive

4.    Plaintiff relied on the falsehood

5.    Damages resulted

Case: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

Case: *United States v. Gaudin*, 515 U.S. 506 (1995)

## D. Damages

- Loss of procedural rights.

- Emotional distress and litigation expenses.

- Distortion of legal process.

# COUNT VI – MALICIOUS PROSECUTION

**(Defendants David Wilson, City of Toronto)**

39. Plaintiff incorporates all preceding paragraphs.

## A. Malicious Legal Proceedings Without Probable Cause

- Toronto officials and police pursued a retaliatory, baseless warrant without prosecutorial oversight.

- Simovonian's filings relied on false affidavits and fabricated service claims.

## B. Lack of Legal Foundation

- No valid basis for civil or criminal proceedings

- Actions timed to suppress Plaintiff's U.S. rights and estate inquiry.

- Coordination between Defendants to obtain a fraudulent default, not justice.

Legal Standard:

1. Legal action initiated/continued

2. Without probable cause

3. With malice

4. Harm to Plaintiff

5.  Favorable outcome or ongoing injury

Case: *Albright v. Oliver*, 510 U.S. 266 (1994)

Case: *Larsen v. Leer*, 2013 WL 1314781 (D. Minn. 2013)

## C. Damages

- Emotional and reputational harm.

- Loss of access to justice.

- Chilling of protected conduct and legal advocacy.

# COUNT VII – RETALIATORY INTIMIDATION / THREATENING COMMUNICATIONS

**(Defendant Aram Simovonian)**

40.  Plaintiff repeats and realleges prior allegations.

## A. Threatening Messages

- Simovonian sent Plaintiff a threatening text after Plaintiff filed a legal complaint.

- The message conveyed retaliation if Plaintiff continued lawful actions and we now know what he is capable of; fraud, conspiracy, and perjury.

## B. Coordinated Pattern

- Followed by March 19 motion to strike, shortly after estate inquiry.

- Cease and desist sent; Simovonian acknowledged but refused to stand down.

Statutory Support:

- 18 U.S.C. § 1512(b) – Witness Tampering

- *Crawford-El v. Britton*, 523 U.S. 574 (1998)

## C. Harm

- Emotional distress and fear.

- Delays in evidence access.

- Suppression of protected legal activity.

# COUNT VIII – JUDICIAL STALKING / SYSTEMATIC LEGAL HARASSMENT

**(Defendant Aram Simovonian)**

41. Plaintiff realleges all prior content.

## A. Repeated Procedural Harassment

- Cross-border subpoena to Las Vegas with no relevant purpose.

- Frivolous filings including March 19 motion served hours after estate inquiry.

- Abuse of court procedures to monitor and harass Plaintiff.

Case: *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019)
Case: *McDonald v. Smith*, 472 U.S. 479 (1985)

## B. Cumulative Effect

- Litigation abuse used like surveillance.

- Created a constant state of threat and anxiety for Plaintiff.

- Legal process was used as a weapon, not for justice.

# COUNT IX – WITNESS INTIMIDATION

**(Defendant Aram Simovonian)**

42. Plaintiff incorporates all above paragraphs.

## A. Interference With Transcript Access

- Simovonian pressured Victory Verbatim (court reporting agency) not to release transcripts.

- Transcripts pertained to cross-examination critical to Plaintiff's defense.

## B. Intent to Obstruct

- Efforts had no legitimate basis and were designed to suppress material evidence.

- Prevented Plaintiff from building record or challenging default.

Case: *United States v. Aguilar*, 515 U.S. 593 (1995)
Case: *Hylton v. Anytime Towing*, 2017 WL 5900116 (D. Nev.)

## C. Civil Liability

- Even though 18 U.S.C. § 1512 is criminal, the conduct supports civil claims under obstruction and tortious interference.

- Defendant's bad faith tactics prejudiced Plaintiff and delayed justice.

-

# WHEREFORE CLAUSE (PRAYER FOR RELIEF)

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory damages for emotional, financial, and reputational harm caused by Defendants' unlawful acts, in an amount to be determined at trial, not less than $75,000 and believed to be between $4,000,000 and $10,000,000, through joint and several liability.

2. Punitive damages to deter future abuse of legal process and retaliatory harassment;

3. A declaratory judgment that the conduct of the City of Toronto and its agents is not immune under the FSIA, as it falls within the statutory exceptions of 28 U.S.C. § 1605(a)(5) and exceeds the bounds of competent official conduct;

4. Injunctive relief preventing further retaliatory filings or contact by Defendants, including court-authorized protective measures;

5. Costs and reasonable attorneys' fees as allowed by law; and

6. Any such further relief as the Court deems just and proper in the interest of justice.

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 21, 2025

Respectfully submitted,

Brent Kideckel
Plaintiff, pro se

(917)634-0637

# EXHIBIT "B"

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

BRENT KIDECKEL
P.O. Box 20901
Floral Park, NY 11002
      Plaintiff,

    V.

ARAM SIMOVONIAN, an individual and attorney     **Case No. 24-2907-CJN**
17 Turnberry Lane
Barrie, Ontario L4N 2S7
Canada,

DAVID KIDECKEL, an individual,        **FIRST AMENDED COMPLAINT**
23 Peverll Hill South
Toronto, Ontario M6C 3A9        **JURY TRIAL DEMANDED**
Canada,

DAHLIA SAIBIL, an individual,
23 Peverll Hill South
Toronto, Ontario M6C 3A9
Canada,

JEFFREY ROBINSON, in his personal capacity
and as General Counsel of
Lewis Baach Kaufmann Middlemiss PLLC,
c/o Lewis Baach Kaufmann Middlemiss PLLC
1050 K Street NW, Suite 400
Washington, DC 20001,

GEORGE BREEN, in his personal capacity and as
Senior Partner of Epstein Becker & Green, P.C.,
c/o Epstein Becker & Green, P.C.
1227 25th Street NW, Suite 700
Washington, DC 20037,

IAN SINKE, in his personal capacity and as
panel counsel for LawPRO
c/o Antoniou Law

2525 Old Bronte Road, Suite 545
Oakville, Ontario L6M 4J2
Canada,

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC,
a DC professional limited liability company,
1050 K Street NW, Suite 400
Washington, DC 20001,

EPSTEIN BECKER & GREEN, P.C.,
a NY professional corporation with offices in DC,
1227 25th Street NW, Suite 700
Washington, DC 20037,

PHILLIPS LYTLE LLP,
a New York limited liability partnership,
One Canalside, 125 Main Street
Buffalo, NY 14203,

SCALZI CAPLAN LLP, an Ontario law firm,
20 Caldari Road, Unit 2
Vaughan, Ontario L4K 4N8
Canada,

               Defendants.

# PRELIMINARY STATEMENT

1. This is an action to redress a coordinated scheme of fraud, abuse of process, malicious prosecution, civil conspiracy, and racketeering activity spanning both Ontario, Canada, and the United States.

2. Plaintiff Brent Kideckel brings this action against his estranged brother, David Kideckel; his Canadian counsel, Aram Simovonian; his spouse, Dahlia Saibil; and law firms in Canada and the US that have either adopted, ratified, or participated directly in fraud.

3. Beginning in late 2023, Defendants fabricated text messages falsely attributed to Plaintiff, swore false affidavits to Canadian courts and police, and obtained non-prosecutorial

warrants. These fabricated materials were later imported into the United States through conflicted U.S. counsel and ratified by major law firms and insurers.

4.   Defendants' misconduct was not isolated or accidental. It was a deliberate, coordinated campaign to silence Plaintiff, and weaponize foreign and domestic courts to intimidate and financially exhaust him

5.   This Complaint seeks damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, Obstruction of Justice 42 U.S.C. § 1985(2), as well as common law claims for fraud, abuse of process, malicious prosecution, civil conspiracy, aiding and abetting, willful complicity, intentional and negligent infliction of emotional distress, tortious interference, and related torts.

6.   Plaintiff further seeks declaratory, injunctive, and equitable relief to prevent Defendants from continuing to rely on fraudulent Ontario judgments, to compel conflicted counsel to withdraw or disavow, and to preserve the integrity of judicial proceedings in this Court.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and Obstruction of Justice, 42 U.S.C. § 1985(2).

8.   This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

9.   This Court has jurisdiction over Defendants as individuals and entities who purposefully directed fraudulent filings, threats, and retaliatory litigation into the United States, and specifically into this District. Defendants Robinson, Breen, Lewis Baach Kaufmann Middlemiss PLLC, Epstein Becker & Green, and Phillips Lytle LLP reside or regularly conduct business in the District of Columbia, thereby submitting to jurisdiction.

10.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the filing and perpetuation of fraudulent pleadings in this Court.

11. Venue is further proper under 28 U.S.C. § 1391(c) because multiple Defendants are law firms and entities subject to personal jurisdiction in this District by virtue of their business activities and filings before this Court.

## PARTIES

### Plaintiff

12. **Plaintiff Brent Kideckel** is an individual domiciled in the State of California. Plaintiff appears pro se. He has been the target of a coordinated campaign of fraud, abuse of process, and harassment carried out by Defendants across Ontario, Canada, and the United States. Plaintiff's husband is also a victim of violent crime (*Oregon v. Guzek*, 546 U.S. 517 (2006).)

### Individual Defendants

13. **Defendant David Kideckel** is an individual domiciled in Ontario, Canada. He is Plaintiff's estranged brother and the originator of fabricated communications, false affidavits, extortionate communications to Plaintiff's spouse, and retaliatory lawsuits that underpin this action.

14. **Defendant Aram Simovonian** is an individual domiciled in Ontario, Canada. He is a lawyer, terminated from employment at Scalzi Caplan LLP for initiating a fraudulent action against Plaintiff in Ontario without retainer, who swore a perjured affidavit of service, engaged in the unauthorized practice of law in the United States, and transmitted threats directly to Plaintiff.

15. **Defendant Dahlia Saibil** is an individual domiciled in Ontario, Canada. She is the spouse of David Kideckel and is employed as an attorney with the Ontario Ministry of the Attorney General. She swore false affidavits to police, procured non-prosecutorial warrants against Plaintiff, and engaged in forum manipulation across jurisdictions.

16. **Defendant Jeffrey Robinson** is an attorney domiciled in the District of Columbia and General Counsel of Lewis Baach Kaufmann Middlemiss PLLC ("LBKM"). Robinson filed a 650-page Motion to Dismiss in this Court importing fraudulent Ontario records, and partially withdrew from representation of Aram Simovonian under procedural duress from a Motion to Disqualify LBKM for dual representation (David Kideckel and Simovonian.)

17. **Defendant George Breen** is an attorney domiciled in the District of Columbia and a partner at Epstein Becker & Green ("EBG"). Breen substituted in for Simovonian after Robinson's partial withdrawal, engaged in sham substitution of junior counsel, and refused to certify or disavow fraudulent filings and adopted fraud on two tribunals.

18. **Defendant Ian Sinke** is an attorney domiciled in Ontario, Canada, who served as panel counsel for LawPRO and Antoniou Law. He ratified fraudulent defenses and advanced fraudulent evidence to the Ontario Superior Court while laboring under an unwaivable conflict of interest, representing both Scalzi Caplan LLP, and the employee it terminated, Simovonian.

## Entity Defendants

19. **Defendant Lewis Baach Kaufmann Middlemiss PLLC ("LBKM")** is a law firm organized under the laws of the District of Columbia with its principal office in Washington, D.C. Jeffrey Robinson is General Counsel and domestic partner to Eric Lewis, name partner of the firm.

20. **Defendant Epstein Becker & Green, P.C. ("EBG")** is a law firm organized under the laws of New York with offices in Washington, D.C. EBG employed Breen, and ratified his conflicted and fraudulent conduct.

21. **Defendant Phillips Lytle LLP** is a law firm organized under the laws of New York, with offices in Washington, D.C. Phillips Lytle represented the City of Toronto and David Wilson, ratified fraudulent filings and sat silent beside dual representation and fraud on the court.

22. **Defendant Scalzi Caplan LLP** is a law firm organized under the laws of Ontario, Canada, with its principal office in Richmond, Ontario. It employed Simovonian prior to his termination and allowed its name and letterhead to be used for fraudulent filings.

## THE ENTERPRISE

23. The **Simovonian-Saibil-Robinson Fraud Enterprise** (hereinafter, the "Enterprise"), is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

24.   The Enterprise was not a legal entity, but a group of individuals and institutions associated in fact, who coordinated across jurisdictions to retaliate against Plaintiff, to weaponize courts in Ontario and the United States, and to conceal fraud through conflicted representation and silence.

25.   The Enterprise included the following participants:

•   Primary wrongdoers: Aram Simovonian, who swore perjured affidavits, fabricated service records, and transmitted threats; Dahlia Saibil, who swore false affidavits to police and manipulated forum positions; and David Kideckel, the originator of fabricated text messages and central figure of the fraud on two tribunals.

•   Conflicted counsel: Jeffrey Robinson of LBKM, who imported fraudulent Ontario records into this Court; and George Breen of EBG, who perpetuated sham substitutions and refused certification.

•   Law firm leadership: Eric Lewis, Martin Baach, Adam Kaufmann, and Arthur Middlemiss of LBKM; Patricia Wagner and James Flynn of EBG; James Grasso and Douglas Dimitroff of Phillips Lytle; and Gary Caplan and Carmine Scalzi of Scalzi Caplan, each of whom exercised managerial authority and ratified misconduct.

•   Insurer and panel counsel: LawPRO, through its panel counsel Ian Sinke, who indemnified and funded defenses despite actual notice of fraud.

26.   The Enterprise had a common purpose:

•   To retaliate against Plaintiff for pursuing redress over false arrest warrants through litigation in Canada and the United States;

•   To silence and intimidate Plaintiff through threats, extortion, defamation, and coercion,

•   To shield law firms, partners, and insurers from liability by ratifying fraud and concealing conflicts;

•   To weaponize courts on both sides of the border to exhaust Plaintiff financially and procedurally.

27.   The Enterprise had an organizational structure, with members assuming distinct roles:

- Originators of fraud: Simovonian, Saibil, and Kideckel, who fabricated communications and swore false affidavits.

- Importers of fraud: Robinson and LBKM, Breen at EBG, who placed fraudulent records before this Court.

- Institutional ratifiers: Phillips Lytle,  and Scalzi Caplan, which ratified, funded, or perpetuated misconduct despite notice.

28. The Enterprise engaged in and affected interstate and foreign commerce by:

- Using interstate wires and mails to transmit fraudulent affidavits, fabricated messages, and court filings;

- Importing fraudulent Ontario materials and records into U.S. federal court;

- Funding litigation through insurance proceeds moving in interstate and international commerce;

- Directing threats and extortionate communications across borders to Plaintiff and his spouse.

29. The Enterprise was ongoing and continuous from November 2023 through the present. Its misconduct spanned nearly two years, involved multiple jurisdictions, and continues to prejudice Plaintiff while posing a threat of future repetition unless enjoined.

30. Each Defendant was employed by, or associated with, the Enterprise and conducted or participated, directly or indirectly, in its affairs through a pattern of racketeering activity, as set forth herein.


## STATEMENT OF FACTS

### I. Background and Escalation

31. In November 2023, Plaintiff's cousin, Lynn Burton, began receiving messages from Defendant David Kideckel purporting to show inflammatory text messages allegedly authored by Plaintiff. These messages, which were sent from Canadian VoIP numbers not

associated with Plaintiff, were fabricated for the purpose of discrediting Plaintiff and manufacturing a pretext for legal action.

32. Around the same period, Defendant David Kideckel reconnected with attorney Mara Koven, counsel to Vicker Automotive of Winnipeg, Canada, following a social encounter with Burton. During that interaction, Koven relayed remarks including "David is serious" and "Lynn is very close with Plaintiff," which David interpreted as threats to his loyalties. These remarks further escalated David's hostility toward Plaintiff, who haven't spoken in 15+ years.

33. On January 22, 2024, while visiting Sarasota, Florida, Plaintiff recorded a call between Burton and David. In that call, David accused Plaintiff of defamation, reiterated the fabricated text messages, and invoked his desire to "protect his mother." David also referenced Plaintiff's prior litigation against his mother concerning a misappropriated trust account. This recording confirmed that David was relying on fabricated communications as the basis for his escalating conduct, with intent to cause harm to Plaintiff and Burton.

## II. The February 1, 2024 Ontario Suit

34. On February 1, 2024, while still employed at Scalzi Caplan LLP, attorney Aram Simovonian, acting jointly with David Kideckel, filed a civil action against Plaintiff in the Ontario Superior Court of Justice. The claim was predicated on the same fabricated text messages that David had been circulating.

35. Service in that action was attempted at Plaintiff's residence in San Marcos, California in February 2024, with Plaintiff's address listed on the Ontario Statement of Claim.

36. With no emotional response from Plaintiff to this improperly initiated action, as Service was not effected,  Defendants escalated matters. On February 22, 2024, Plaintiff was contacted by Toronto police and warned that he would be arrested if he entered Canada. This threat of arrest was based on non-prosecutorial warrants sworn by David Kideckel and his spouse, Defendant Dahlia Saibil. These warrants were never reviewed or authorized by a Crown prosecutor. By design, they precluded Plaintiff from retaining counsel in Ontario or otherwise defending himself against the fabricated allegations.

## III. Plaintiff's May 2024 Ontario Suit and Retaliation

37. In response to these threats and in order to protect his rights, Plaintiff commenced his own civil action in Ontario Superior Court in May 2024. That action named as defendants

those responsible for the fraudulent accusations, malicious prosecution, and harassment campaign, including Simovonian, David Kideckel, and the Toronto Police Service/s Board.

38. Shortly thereafter, Plaintiff received a threatening text message directly from Simovonian stating, "watch your back."

39. Within days, Defendants reactivated their dormant February action. At that time, Simovonian was no longer at Scalzi Caplan LLP but instead presented himself as operating under "Lima Law." Despite his lack of proper retainer authority, Simovonian continued to act as counsel of record while simultaneously serving as a party with direct interests in the matter having been terminated from Scalzi Caplan LLP after a complaint to the Law Society of Ontario.

40. To advance their revived case, Defendants claimed they were unable to locate Plaintiff, notwithstanding that Plaintiff's residential address was printed on the face of their own Statement of Claim and had previously been used in their service attempts. On this false premise, they obtained an order for substitute service by email.

41. In July 2024, Simovonian swore an affidavit of service stating that he had effected service on Plaintiff by email. This affidavit was facially improper. As counsel of record, Simovonian was barred from acting as his own process server, and in any event, Plaintiff never received the alleged email service and has been contested from the onset.

42. The purpose of this reactivated suit was not to litigate the merits of any dispute but to retaliate against Plaintiff's May filing and to create fraudulent leverage for Defendants in both jurisdictions, as Simovonian, through the unlicensed practice of law, attempted to negotiate a global resolution to all actions including the D.C. action.

## IV. Summary of the Scheme

43. Taken together, Defendants' conduct illustrates a coordinated and intentional scheme of harassment and abuse of process. Their acts included: (a) fabricating text messages to serve as false evidence; (b) initiating a retaliatory Ontario lawsuit based on those fabrications; (c) procuring fraudulent service through perjured affidavits; (d) obtaining non-prosecutorial warrants to weaponize the criminal process; and (e) directly threatening Plaintiff with physical harm.

44. These acts were not isolated missteps. They were coordinated steps in a broader conspiracy to silence, intimidate, and financially exhaust Plaintiff. They directly support

claims for fraud, extortion, abuse of process, malicious prosecution, civil conspiracy, and RICO predicate acts under federal law.

## V. Sinke's Role in Aiding and Abetting

45. Following Plaintiff's May 2024 Ontario action, attorney Ian Sinke entered an appearance on behalf of both Scalzi Caplan LLP and Simovonian. This dual representation raised an obvious conflict of interest but, more critically, placed Sinke in the position of ratifying and advancing known falsehoods.

46. Plaintiff's Ontario claim specifically alleged that a fraudulent cease-and-desist letter had been issued under Scalzi Caplan LLP's letterhead at Simovonian's direction. Although Plaintiff knew that a claim had been filed, he had never been validly served.

47. Despite this, Sinke relied upon the fabricated text messages generated by David Kideckel and introduced them in support of a motion to strike Plaintiff's claims. In doing so, Sinke knowingly perpetuated the fraud and directly assisted in concealing the misconduct of both Simovonian and his former firm.

48. As a result of Sinke's filings, the Ontario court dismissed Plaintiff's claims against Scalzi Caplan LLP on the narrow basis that the firm could not be held vicariously liable for Simovonian's acts as he was voluntarily dismissed. In so holding, the court did not address the firm's direct liability for allowing its name and letterhead to be misused to issue a fraudulent demand and for failing to supervise or disavow Simovonian's actions.

49. Sinke's conduct, in advancing fabricated evidence and leveraging it for dismissal, constitutes aiding and abetting fraud, conspiracy, and obstruction of justice.

## VI. U.S. Litigation and the NEF "Termination" Trap

50. In March 2025, Plaintiff moved to disqualify Jeffrey Robinson for dual representation of David Kideckel, and Aram Simovonian—clients with irreconcilable conflicts of interest. Plaintiff highlighted Robinson's continued reliance on fabricated Ontario materials in his 650-page Motion to Dismiss.

51. On March 25, 2025, Robinson partially withdrew from representing Simovonian, and George Breen of Epstein Becker & Green ("EBG") filed a Notice of Substitution. Minutes later, Robinson filed an unauthorized declaration on behalf of his former client affirmatively tying him to perjury, while advancing arguments for his other client, David Kideckel, that placed blame for wrongful acts on his counsel, Simovonian. Within days of

this substitution,  the Court's CM/ECF docket began tagging Robinson as "Terminated" on NEF notices associated with Plaintiff's filings.

52. These NEF annotations functioned as a judicial signal: Robinson was terminated as counsel of record, yet he continued to file on behalf of David and Saibil, with the silent acquiescence of co-counsel. Neither EBG nor Phillips Lytle acted to clarify or object. Their silence constituted waiver and ratification. The conflict was unwaivable thereby requiring withdrawal from *all* clients, not just Simovonian.

53. On March 28, 2025, Plaintiff expressly requested certification from Breen regarding the adoption of Simovonian's filings. No certification was ever provided. This silence, against the backdrop of NEF-termination tags, revealed institutional complicity.

## VII. Sham Substitution and Silent Ratification

54. In June 2025, as Plaintiff pressed for default against Simovonian and certification from Breen, EBG engaged in a sham substitution: Breen replaced himself with his junior colleague Elizabeth Harris—despite Harris's involvement in the matter from the outset.

55. When Plaintiff filed a motion to disqualify EBG based on sitting silently beside Jeffrey Robinson's fraud on the court, Breen re-appeared, confirming that Harris's substitution was illusory and designed to create the appearance of clean hands.

56. Phillips Lytle engaged in similar gamesmanship. Its senior attorney, Christopher Barraza, withdrew in April 2025 after receiving NEFs showing terminated counsel Robinson who continued to file. He laterally transferred to Dorsey & Whitney, leaving only a junior associate to represent the City of Toronto and David Wilson.

57. Neither firm ever filed declarations rebutting Plaintiff's allegations. No certifications of their Rule 12 motions were submitted. Silence persisted—a textbook ratification of fraud.

## VIII. Ontario Hearings and Contradictory Records

58. On June 19, 2025, Plaintiff appeared in Ontario Superior Court to contest the fraudulent affidavit of service sworn by Simovonian. Justice Akazaki acknowledged procedural irregularities, yet entered default against Plainttff.

59. On July 25, 2025, the Ontario court issued a published opinion imposing a permanent injunction against Plaintiff. That judgment relied upon the same fabricated text messages

already discredited in the U.S. filings—materials Robinson himself had walked back in this Court.

60. The judgment also referenced Simovonian's improper commentary about Plaintiff using "AI to draft appeals and long emails," further demonstrating its retaliatory character.

61. At the time of that ruling, Robinson, Breen, and Phillips Lytle had already been placed on notice in this Court of the fraud underlying those very materials. None disavowed them. Instead, they remained silent while their clients weaponized the foreign judgment, as seen in the Order.

62. It is Plaintiff, not the Defendants, who brought the Ontario adverse ruling to the Court's attention, and it had not been raised affirmatively by the Defense, their so called *trophy*, as Simovonian stated to the Ontario Superior Court that they wish only to "have a piece of paper to waive around", presumably regarding David Kideckel's numerous NDAs and employment separations he himself advised Burton.

## IX. Threats and Intimidation

63. During the briefing window for Plaintiff's Motion to Disqualify Jeffrey Robinson, Defendant David Kideckel, Robinson's client, escalated his campaign of threats. In March 2025, David sent an extortionate email to Plaintiff's spouse, Samuel Bracamonte, warning he would be "collectively responsible" for judgments unless he cooperated.

64. Simovonian compounded this with threats to Plaintiff directly, including a text message instructing him to "watch your back" just days before asking the Ontario Court to Order Substitute Service by email.

65. Defendant Simovonian also engaged in procedural harassment: scheduling Ontario hearings without consulting Plaintiff, blocking Plaintiff's email— repeatedly—while acting as opposing counsel, and then responding with one-line Latin phrases after being exposed.

## X. Adoption of Fraud by Counsel and Firms

66. By July 30, 2025, Plaintiff filed a Notice of Adoption of Fraud, formally identifying the senior partners and general counsel at LBKM, EBG, and Phillips Lytle who—by silence or constructive acquiescence—had adopted the fraud of their clients.

67. Plaintiff further moved for Chambers-level sanctions, seeking $2.4 million jointly and severally against these firms and their leadership, citing their ratification of unauthorized practice, perjured affidavits, and fraudulent Ontario filings.

68. These motions detailed how each firm had:

- Failed to disavow Robinson's tainted Motion to Dismiss;

- Ignored the Court's NEF-termination signals;

- Engaged in sham substitutions to obscure conflicts;

- Remained silent beside ongoing fraud on two tribunals.

69. The result is an institutional adoption of fraud. Partners at LBKM, EBG, and Phillips Lytle all knowingly allowed fraudulent materials to remain unrebutted in this Court's record.

## XI. Institutional Stakes

70. This misconduct does not merely prejudice Plaintiff. It threatens the institutional integrity of the federal judiciary. The Court itself placed NEF "termination" tags on the docket. When counsel ignored those signals, they defied the Court's supervisory authority.

71. By laundering fabricated evidence from Ontario into the U.S. record, defense counsel attempted to transform this Court into an enforcement arm of a defective foreign judgment.

72. Silence in the face of such fraud constitutes bad faith as surely as affirmative misrepresentation. Courts across circuits have held that "silence in the face of fraud can itself be an act of fraud when there is a duty to speak."

73. Here, that duty fell on the law firms and their leaders. Their choice to remain silent confirms Plaintiff's thesis: the fraud was not an accident of procedure, but an institutional strategy to suppress, intimidate, and overwhelm a pro se litigant.

74. This remained post-jurisdictional-dismissal, with Robinson, Breen, and Phillips Lytle allowing the Court to misapprehend the conflicted parties raised in its Order, a breach of candor.

## XII. Unauthorized Practice of Law by Defendant Aram Simovonian

75.    Defendant Aram Simovonian is a lawyer licensed in Ontario, Canada, but he is not admitted to practice law in the United States, is not admitted before the District of Columbia Bar, and has never sought or received admission pro hac vice in this Court.

76.    Despite this, Simovonian attempted to act as counsel in this U.S. action by proposing to negotiate a "global" settlement of both the Canadian proceeding and the present federal case, in December, 2024.  In doing so, he held himself out as capable of resolving claims pending in this Court and attempted to exercise rights reserved to licensed practitioners admitted to practice before it.

77.    Such conduct constitutes the unauthorized practice of law under D.C. Code § 11-2502 and violates Local Civil Rule 83.2, which requires that only attorneys admitted to this Court may represent parties or negotiate the resolution of claims in pending federal litigation.

78.    Simovonian's attempt to leverage his position as counsel in Canada into a negotiating role in the District of Columbia proceeding is further evidence of Defendants' pattern of procedural abuse. It shows deliberate disregard of this Court's rules and jurisdiction, and it underscores Plaintiff's claims that Defendants engaged in fraudulent and improper tactics to interfere with U.S. proceedings.

## XIII. Conclusion

79.    The foregoing facts demonstrate a continuous pattern of cross-border misconduct, beginning with fabricated evidence in Ontario, escalating through retaliatory suits, threats, and sham procedures, and culminating in the importation and ratification of that fraud in this Court.

80.    The scheme was not confined to rogue individuals. It was facilitated and perpetuated by law firms, insurers, and institutional actors who chose silence over candor. By refusing to withdraw, disavow, or certify, these actors adopted and amplified the fraud.

81.    This conduct directly supports Plaintiff's claims for fraud, abuse of process, malicious prosecution, conspiracy, aiding and abetting, willful complicity, intentional and negligent infliction of emotional distress, tortious interference, and racketeering under federal law.

## COUNT I

**Racketeer Influenced and Corrupt Organizations Act (RICO) – 18 U.S.C. § 1962(c)**
(Against Defendants David Kideckel, Aram Simovonian, Dahlia Saibil, Jeffrey Robinson)

## A. Statutory Basis

82. Plaintiff realleges and incorporates by reference all preceding paragraphs.

83. This claim is brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, specifically § 1962(c).

84. Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

## B. The RICO Enterprise

85. The Defendants named above, together with their affiliated firms and insurer (LawPRO), constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

86. The enterprise was an association-in-fact consisting of individuals and entities operating across jurisdictions — in Ontario and in the United States — whose purpose was to harass, intimidate, defraud, and obstruct Plaintiff's access to courts, while shielding themselves and their clients from liability.

87. The enterprise functioned through coordination between Canadian actors (David Kideckel, Simovonian, Saibil, Sinke, Scalzi Caplan LLP) and U.S. actors (Robinson, Breen, LBKM, EBG, Phillips Lytle LLP, and their partners/managing attorneys).

88. The enterprise affected interstate and foreign commerce because its conduct relied on cross-border communications, filings in U.S. federal court, fraudulent service of process across borders, and coordinated use of fabricated evidence to influence judicial proceedings in both the United States and Canada.

## C. Pattern of Racketeering Activity

89. Defendants engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5), consisting of multiple predicate acts of mail fraud, wire fraud, obstruction of

justice, witness intimidation, and extortion, each of which occurred within the last ten years and formed part of a continuous course of conduct.

90. Predicate acts include, but are not limited to:

91. **Wire Fraud (18 U.S.C. § 1343):**

a. Transmission of fabricated VoIP text messages by David Kideckel to Plaintiff's cousin and others to create false evidence.

b. Use of email service to file and circulate perjured affidavits of service (Simovonian, July 2024).

c. Robinson's filing of a 650-page Motion to Dismiss attaching fabricated Ontario records into the U.S. docket.

d. Threatening emails sent by David Kideckel to Plaintiff's spouse on March 22, 2025, warning of collective liability.

92. **Mail Fraud (18 U.S.C. § 1341):**

e. Use of postal and courier services to circulate fraudulent pleadings and cease-and-desist letters on Scalzi Caplan LLP letterhead.

f. Phillips Lytle's continued filings on behalf of the City of Toronto while concealing conflicts and fraud.

93. **Extortion (18 U.S.C. § 1951 – Hobbs Act):**

g. Threats by Simovonian ("watch your back") designed to deter Plaintiff from pursuing claims.

h. Threats by David Kideckel to Plaintiff's spouse, attempting to coerce Plaintiff into abandoning litigation.

94. **Obstruction of Justice (18 U.S.C. §§ 1503, 1512):**

i. Simovonian's perjury in swearing service affidavits when he was counsel of record.

j. Blocking Plaintiff's participation in Ontario hearings and denying him transcripts until threatened with consequences.

k. Defense counsel's refusal to certify or disavow fraudulent filings in the U.S. docket.

95. **Witness Intimidation (18 U.S.C. § 1512):**

l. Threats to Plaintiff's spouse to deter Plaintiff's testimony.

m. Attempts to block transcripts and discovery materials from release (Victory Verbatim incident).

96. These predicate acts were related and continuous. They were not isolated incidents but coordinated steps in a common scheme: fabricating evidence, weaponizing foreign courts, laundering fraud into the U.S. docket, and intimidating Plaintiff and his family to chill pursuit of valid claims.

**D. Conduct of the Enterprise**

97. Each Defendant participated in the conduct of the enterprise's affairs.

   A. David Kideckel: Originator of fabricated texts, sworn false affidavits, and threats.

   B. Aram Simovonian: Filed perjured affidavits of service, engaged in UPL in the U.S., issued threats, imported tainted evidence.

   C. Dahlia Saibil: Assisted in swearing fraudulent warrants, forum-shopped between jurisdictions, ratified fraudulent filings while employed by Ontario's Attorney General.

   D. Jeffrey Robinson / LBKM: Imported fraudulent Ontario record into U.S. filings, continued representing conflicted clients after NEF termination.

**E. Injury to Plaintiff**

98. As a direct and proximate result of Defendants' racketeering activities, Plaintiff has suffered:

   A. Emotional distress from threats, intimidation, and false filings.

   B. Financial damages exceeding $30,000 in direct litigation costs, plus additional consequential damages.

   C. Loss of reputation, interference with employment opportunities, and reputational damage from false publications and police reports.

   D. Ongoing legal prejudice due to fraudulent judgments entered abroad and their attempted importation into U.S. proceedings.

99. Plaintiff's injuries are precisely the type of harm RICO was designed to redress — damages to person, property, and business through a pattern of fraud, extortion, and obstruction across borders.

# COUNT II

**RICO Conspiracy – 18 U.S.C. § 1962(d)**
(Against the same Defendants named in Count I and George Breen, LBKM, EBG Phillips Lytle LLP, Ian Sinke, and Scalzi Caplan LLP)

## A. Statutory Basis

100. Plaintiff realleges and incorporates by reference all preceding paragraphs.

101. This claim is brought under 18 U.S.C. § 1962(d), which makes it unlawful for any person to conspire to violate the provisions of § 1962(c).

102. A defendant need not commit the predicate acts himself to be liable under § 1962(d); it is sufficient that he knowingly agreed that another member of the conspiracy would commit at least two predicate acts of racketeering in furtherance of the enterprise.

## B. Existence of the Conspiracy

103. The Defendants named in Count I entered into a tacit and express agreement to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity.

104. The conspiracy existed to achieve a common purpose: to harass, defraud, intimidate, and silence Plaintiff by fabricating evidence, procuring fraudulent foreign judgments, importing tainted records into U.S. proceedings, and obstructing Plaintiff's access to due process.

105. The conspiratorial agreement is evidenced by coordinated conduct across firms and jurisdictions, including:

   A. Simovonian and David's initiation of the February 2024 Ontario suit based on fabricated texts.

   B. Saibil's assistance in procuring non-prosecutorial warrants.

   C. Robinson's wholesale filing of fraudulent Ontario records in this Court.

   D. Breen's sham substitution to perpetuate representation while avoiding disqualification.

    E.   Phillips Lytle's concealment of conflicts and strategic withdrawal of senior counsel.

    F.   Scalzi Caplan LLP's termination of Simovonian without correcting the fraud committed in its name.

## C. Overt Acts and Participation

106. Each Defendant played a role in furtherance of the conspiracy:

    A.   David Kideckel fabricated texts and used them to launch false claims.

    B.   Simovonian swore perjured affidavits, threatened Plaintiff, and imported tainted filings.

    C.   Saibil filed fraudulent warrants and engaged in forum manipulation.

    D.   Robinson / LBKM knowingly filed fraudulent records in D.C. and represented conflicted clients.

    E.   Breen / EBG perpetuated fraud via sham substitution and refusal to certify.

    F.   Phillips Lytle LLP  concealed conflicts and ratified fraud by silence.

    G.   Scalzi Caplan LLP allowed its name to be used in a fraudulent cease-and-desist and subsequent suit, without a retainer agreement, and protecting itself through the termination of Simovonian.

    H.   LawPRO / Sinke  funded and ratified litigation premised on fraud.

107. Each of these acts was foreseeable to the other participants, and each knowingly agreed to the overall objective of using judicial systems as a weapon to harm Plaintiff.

## D. Injury to Plaintiff

108. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered the same injuries detailed in Count I: emotional distress, reputational damage, financial losses exceeding $30,000, and the continued prejudice of fraudulent judgments and filings.

109. These injuries were the intended result of the conspiracy — to coerce Plaintiff into abandoning his claims and to protect Defendants from liability through intimidation and fraud.

# COUNT III

**Racketeer Influenced and Corrupt Organizations Act (RICO) – 18 U.S.C. § 1962(a)**
(Against all Defendants)

## A. Statutory Basis

110. Plaintiff realleges and incorporates by reference all preceding paragraphs.

111. This claim is brought pursuant to 18 U.S.C. § 1962(a), which prohibits any person who has received income derived, directly or indirectly, from a pattern of racketeering activity from using or investing such income in the establishment or operation of any enterprise engaged in interstate or foreign commerce.

112. Each Defendant named above has received, directly or indirectly, income derived from racketeering acts as described in Counts I and II.

## B. Racketeering Income

113. David Kideckel received monetary and strategic benefit from fabricated texts and fraudulent pleadings — using them to retaliate against Plaintiff, to protect his inheritance interests, to evade accountability for misappropriated funds, and to sever his employment with NDAs and buyouts.

114. Aram Simovonian received income through his unlawful practice of law, billing clients or benefitting from indemnification by insurers and firms despite being terminated by Scalzi Caplan LLP and lacking a valid retainer.

115. Dahlia Saibil benefitted by leveraging her employment with the Ontario Ministry of the Attorney General to shield herself and her spouse, while delaying appearances and forum-shopping to maximize defense funding and avoid liability.

116. Jeffrey Robinson and LBKM received fees and billings for their conflicted representation, including payment for drafting and filing the tainted 650-page Motion to Dismiss, despite NEF "terminated" status.

117. George Breen and EBG received fees and institutional support to perpetuate a sham substitution, oppose motions to certify or disavow fraud, and sustain fraudulent defenses after notice of misconduct..

118. Scalzi Caplan LLP benefitted by continuing to appear as firm of record in Ontario filings after Simovonian's fraudulent conduct under their letterhead, while avoiding disavowal and preserving insurance coverage.

119. Ian Sinke ratified fraudulent defenses, thereby directly benefitting from racketeering activity underwritten by its insurance scheme.

## C. Use and Investment of Racketeering Income

120. Each Defendant used or invested racketeering income to perpetuate the enterprise's objectives, including:

   A. David Kideckel and Saibil: Used fraudulent pleadings and judgments as leverage to block Plaintiff's inheritance and to entrench their personal financial advantage and employment separation agreements.

   B. Simovonian: Used fees and indemnification from LawPRO and affiliated firms to continue unauthorized practice, fund threats, and prolong litigation.

   C. LBKM invested racketeering-derived income into continued litigation expenses, salaries, and firm profits while ignoring NEF-termination tags and certification obligations.

   D. EBG: Reinvested racketeering proceeds into sham substitutions and oppositions, preserving their role in the enterprise and sustaining the fraudulent defense.

   E. Phillips Lytle: Used firm resources derived from racketeering activity to shield senior partners, assign junior counsel, and continue filings for a conflicted municipal client.

   F. Scalzi Caplan LLP: Continued to benefit from its name being used in fraudulent cease-and-desist and litigation filings while leaving Simovonian's misconduct uncorrected.

121. The use and investment of racketeering income by each Defendant furthered the enterprise's affairs, perpetuated the scheme, and caused ongoing harm to Plaintiff.

## D. Injury to Plaintiff

122. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(a), Plaintiff has suffered injury to his property and business, including:

   A.  Loss of inheritance rights through fraudulent interference.

   B.  Litigation costs exceeding $30,000 in defending against fraudulent claims and judgments.

   C.  Damage to reputation and ability to pursue professional opportunities.

   D.  Continuing prejudice from Defendants' reinvestment of racketeering proceeds into sustaining fraudulent defenses across jurisdictions.

123. These injuries are concrete, quantifiable, and directly attributable to Defendants' investment of racketeering income to maintain and expand the enterprise.

# COUNT IV

**Racketeer Influenced and Corrupt Organizations Act (RICO) – 18 U.S.C. § 1962(b)**
(Against all Defendants)

**A. Statutory Basis**

124. Plaintiff realleges and incorporates by reference all preceding paragraphs.

125. This claim is brought under 18 U.S.C. § 1962(b), which makes it unlawful for any person "through a pattern of racketeering activity or through collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise" engaged in interstate or foreign commerce.

**B. Acquisition or Maintenance of Control**

126. Defendants collectively used racketeering acts — including fraud, extortion, obstruction of justice, and witness intimidation — to acquire and maintain control over the litigation enterprise spanning Ontario and the United States.

127. David Kideckel maintained control over inheritance rights by fabricating text messages, procuring fraudulent police warrants, and initiating retaliatory suits that intimidated Plaintiff and chilled his claims.

128. Aram Simovonian acquired and maintained control of litigation in Ontario despite being terminated by Scalzi Caplan LLP. By swearing perjured affidavits of service and issuing threats, Simovonian kept himself in control of the fraudulent Ontario suit and leveraged that control into U.S. proceedings.

129. Dahlia Saibil maintained control of the conspiracy through her dual role as both a defendant and an employee of the Ontario Ministry of the Attorney General, forum-shopping between Ontario and the U.S. to obstruct Plaintiff's claims.

130. Jeffrey Robinson and LBKM maintained control of the U.S. defense after NEF "termination" by continuing to file on behalf of conflicted clients. Robinson's role as General Counsel ensured that control over the defense remained centralized in LBKM despite procedural signals from the Court.

131. George Breen and EBG maintained control of the representation of Simovonian through sham substitution. By alternating appearances, they kept control of the defense while avoiding judicial scrutiny. Firm leadership endorsed this maneuver and maintained institutional control.

132. Phillips Lytle LLP maintained control of the City of Toronto's defense while concealing conflicts and strategically substituting junior counsel, thereby insulating senior partners from liability while preserving the enterprise's litigation advantage.

133. Scalzi Caplan LLP allowed their firm's name and letterhead to be used to initiate fraud, then terminated Simovonian but deliberately avoided disavowing his misconduct. This maintained control of the enterprise by keeping open the litigation front in Ontario without accountability.

134. LawPRO, and Ian Sinke maintained financial and strategic control over the enterprise by indemnifying fraud, funding conflicted defenses, and refusing to acknowledge litigation hold notices. This allowed fraudulent pleadings to remain active in both Ontario and the U.S. without correction.

## C. Effect on the Enterprise

135. Through these acts, Defendants acquired and maintained control of the enterprise's key objective: weaponizing judicial systems in Ontario and the U.S. to harass, silence, and financially exhaust Plaintiff while protecting themselves from liability.

136. The enterprise could not have functioned without these mechanisms of control. Each Defendant used racketeering acts not merely to participate in the enterprise, but to secure dominance over its operation:

    A.  Controlling the narrative (fabricated evidence, false affidavits).

    B.  Controlling procedure (sham substitutions, ignoring NEF terminations).

    C.  Controlling outcomes (fraudulent default judgment in Ontario, blocking service and certifications in D.C.).

**D. Injury to Plaintiff**

137. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(b), Plaintiff has suffered injury to his business and property, including:

    A.  Financial damages from defending against improperly controlled proceedings.

    B.  Prejudice in U.S. federal court due to Defendants' continued control over fraudulent filings.

    C.  Ongoing reputational and professional harm tied to Defendants' maintenance of control through racketeering acts.

138. Plaintiff's injuries stem directly from Defendants' unlawful acquisition and maintenance of control over the litigation enterprise.

**RICO REMEDIES AND DAMAGES**

139. Plaintiff realleges and incorporates by reference all preceding paragraphs.

140. Pursuant to 18 U.S.C. § 1964(c), any person injured in his business or property by reason of a violation of 18 U.S.C. §§ 1962(a)–(d) may sue and shall recover threefold the damages sustained, together with the costs of the suit, including reasonable attorneys' fees.

141. As set forth in Counts I–IV, Plaintiff has been directly and proximately injured in his business and property by Defendants' coordinated racketeering activity.

142. Plaintiff's injuries include, but are not limited to:

A.  Over $30,000 in litigation costs and expenditures defending against fraudulent and retaliatory proceedings in Ontario and the United States;

B.  Loss of inheritance and financial expectancy as a result of David Kideckel's and Saibil's fraudulent interference;

C.  Loss of professional and personal opportunities due to reputational harm arising from fraudulent police reports, fabricated evidence, and defamatory statements;

D.  Procedural prejudice in U.S. federal court caused by the importation of fraudulent filings and concealment of conflicts; and

E.  Ongoing costs incurred as Defendants continue to rely on fraudulent Ontario judgments and concealment tactics.

143. Plaintiff's damages are continuing and open-ended, as Defendants have demonstrated intent to persist in their racketeering enterprise through ongoing silence, ratification, and sham procedures.

144. Treble damages are therefore mandated under RICO, to deter continued misconduct and to make Plaintiff whole.

145. Plaintiff also seeks injunctive relief barring Defendants from:

A.  Importing or relying on the fraudulent Ontario judgment in U.S. proceedings;

B.  Continuing to represent conflicted clients without certification or disavowal of fraud;

C.  Maintaining sham substitutions or concealment of firm-level conflicts; and

D.  Using racketeering-derived income to perpetuate further misconduct.

146. Plaintiff further seeks declaratory relief recognizing that Defendants' conduct — including fabrication of evidence, perjury, obstruction of justice, and unauthorized practice of law — constitutes racketeering activity under 18 U.S.C. §§ 1961–1962.

147. Finally, Plaintiff requests that this Court impose equitable remedies consistent with its broad authority under RICO, including but not limited to:

A.  Forfeiture of proceeds obtained through racketeering activity;

B.  Disgorgement of funds received by law firms and insurers as a result of fraudulent litigation conduct; and

C.  Any additional relief necessary to restore the integrity of this Court's proceedings.

# COUNT V

**Conspiracy to Obstruct Justice and Intimidate a Party, Witness, or Litigant**
(42 U.S.C. § 1985(2))
(Against Defendants David Kideckel, Dahlia Saibil, Aram Simovonian, Jeffrey Robinson and George Breen)

**A. Statutory Basis**

148.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

149. This claim arises under 42 U.S.C. § 1985(2), which prohibits conspiracies to deter, intimidate, or threaten a party or witness in federal proceedings, or to obstruct the due course of justice with intent to deny equal protection of the laws.

**B. Agreement and Conspiracy**

150. Defendants conspired to obstruct justice and intimidate Plaintiff in connection with proceedings in this Court by importing fraudulent materials from Ontario, making direct threats, and engaging in perjury, sham substitutions, and procedural harassment.

151. The conspiracy included:

A.  Fabricated evidence: false VoIP text messages created and introduced by David Kideckel;

B.  Perjured affidavits of service: sworn by Aram Simovonian in Ontario;

C.  Fraudulent warrants: procured by David Kideckel and Dahlia Saibil without prosecutorial review;

D.  Importation of fraud into U.S. court: Robinson filed a 650-page Motion to Dismiss containing fabricated Ontario records;

E.  Sham substitutions and silence: Breen and Harris at EBG perpetuated fraudulent filings without certification;

F.  Institutional ratification: LBKM, EBG, Phillips Lytle, and Scalzi Caplan allowed conflicted appearances and fraudulent materials to remain active.

## C. Acts of Obstruction and Intimidation

**Direct threats:**

- Simovonian texted Plaintiff to "watch your back."

- David Kideckel sent an extortionate email to Plaintiff's spouse regarding liability.

**Procedural harassment:**

- Simovonian demanded abusive cross-examinations and scheduled hearings without consulting Plaintiff- admitted in emails to the Ontario Superior Court, while also repeatedly blocking Plaintiff's email address while acting as opposing counsel

- Defendants obstructed transcript access and unilaterally scheduled proceedings to exclude Plaintiff.

**Fraudulent filings in this Court:**

- Robinson and LBKM filed tainted Ontario records;

- Breen and EBG opposed certification motions and perpetuated sham substitutions;

- Phillips Lytle remained silent despite notice of fraud.

## D. Intent

152.  Defendants acted with intent to deter and intimidate Plaintiff from prosecuting his claims, to obstruct judicial proceedings in this Court, and to retaliate against Plaintiff for exercising his right of access to the courts.

## E. Injury

153.  As a direct and proximate result of Defendants' conspiracy in violation of 42 U.S.C. § 1985(2), Plaintiff has suffered:

A.  Emotional distress from threats and intimidation;

B.  Financial injury exceeding $30,000 in litigation costs;

C.  Loss of inheritance and economic expectancy;

D.  Procedural prejudice in this Court from fraudulent filings and obstruction.

# COUNT VI

**Neglect to Prevent Conspiracy**

(42 U.S.C. § 1986)

(Against Defendants Lewis Baach Kaufmann Middlemiss PLLC, Epstein Becker & Green, Phillips Lytle LLP, and Scalzi Caplan LLP)

## A. Statutory Basis

154. Plaintiff realleges and incorporates by reference all preceding paragraphs.

155. This claim arises under 42 U.S.C. § 1986, which imposes liability upon any person or entity who, having knowledge of a § 1985 conspiracy and possessing the power to prevent or aid in preventing its commission, neglects or refuses so to do.

## B. Knowledge of the Conspiracy

156. Each Defendant law firm had actual or constructive knowledge of the conspiracy to obstruct justice and intimidate Plaintiff in violation of 42 U.S.C. § 1985(2).

A.  LBKM was on notice through NEF "termination" tags, motions to disqualify, and Plaintiff's filings that Robinson's conflicted appearances imported fraud into this Court.

B.  EBG knew Breen's sham substitution perpetuated conflicts and fraudulent filings, and received multiple certification demands.

C.  Phillips Lytle was aware of Robinson's withdrawal under a cloud of fraud, Plaintiff's filings identifying conflicts, and its continued role in ratifying fraudulent materials.

    D.  Scalzi Caplan LLP knew its firm name and letterhead had been used for a fraudulent demand, and that Simovonian had been terminated for misconduct, yet failed to disavow.

## C. Power to Prevent or Aid in Prevention

157. Each Defendant had the ability and authority to prevent or mitigate the conspiracy, including by:

    A.  Withdrawing conflicted counsel;

    B.  Disavowing fraudulent filings;

    C.  Instructing attorneys to correct the record;

    D.  Implementing ethical oversight to prevent sham substitutions.

    E.  Instead, each chose silence, permitting the conspiracy to continue.

## D. Neglect to Act

158. Despite repeated opportunities and clear judicial signals, Defendants took no corrective action. Their inaction ratified the misconduct and allowed fabricated evidence and fraudulent filings to remain before this Court, leaving Plaintiff to litigate under false premises.

## E. Injury

159. As a direct and proximate result of Defendants' neglect to prevent the conspiracy, Plaintiff has suffered:

    A.  Litigation expenses exceeding $30,000;

    B.  Loss of inheritance and financial expectancy;

    C.  Severe emotional distress and reputational harm;

    D.  Prejudice in this Court from reliance on fraudulent materials.

# COUNT VII

**Fraud**

(Against all  Defendants)

**A. Elements**

160. Plaintiff realleges and incorporates by reference all preceding paragraphs.

161. Under common law, fraud requires: (1) a material misrepresentation or omission; (2) made with knowledge of its falsity; (3) intent to induce reliance; (4) actual reliance by the victim; and (5) damages resulting from that reliance.

**B. Fraudulent Conduct**

162. Fabricated Text Messages: Defendant David Kideckel created and disseminated fabricated VoIP text messages purporting to be from Plaintiff. These were introduced into Ontario proceedings, shared with family members, and used as the foundation for false police reports and lawsuits.

163. Perjured Affidavits: Defendant Aram Simovonian swore an affidavit of service in Ontario attesting that Plaintiff had been served by email, when no such service was ever effected and he, as counsel of record, could not lawfully serve.

164. False Warrants: Defendants David Kideckel and Dahlia Saibil swore false affidavits to Toronto Police, leading to improperly issued arrest warrants unsupported by prosecutorial review.

165. Fraudulent Filings in U.S. Court: Defendant Jeffrey Robinson, as General Counsel of LBKM, knowingly filed a 650-page Motion to Dismiss in this Court that included the fabricated Ontario record, without certification, verification, or disclosure of its fraudulent nature.

**C. Ratification by Firms:**

166. Breen (EBG) perpetuated fraudulent filings through sham substitution and refusal to certify the record.

167. Phillips Lytle LLP and its leadership ratified fraud by filing while concealing conflicts and avoiding disavowal of fraudulent materials.

168. Scalzi Caplan LLP allowed its name and letterhead to be used to issue a fraudulent cease-and-desist letter and action then remained silent after terminating Simovonian.

**D. Knowledge and Intent**

169. Each Defendant knew or should have known the falsity of the fabricated texts, perjured affidavits, fraudulent filings, and sham substitutions.

170. Defendants acted with intent to induce reliance by courts in Ontario and the United States, to prejudice Plaintiff, to coerce settlement, and to protect their own liability exposure.

**E. Reliance and Damages**

171. Plaintiff reasonably relied on the integrity of court filings and processes in both Ontario and the United States. Defendants' fraud caused courts to issue orders (including a default judgment and permanent injunction in Ontario) and to entertain fraudulent defenses in this Court.

172. As a direct and proximate result of Defendants' fraud, Plaintiff has suffered damages including: litigation costs exceeding $30,000; loss of inheritance rights; reputational injury; and procedural prejudice in U.S. federal court.

# COUNT VII

**Abuse of Process**

(Against all Defendants)

**A. Elements**

173. Plaintiff realleges and incorporates by reference all preceding paragraphs.

174. Abuse of process under common law occurs when a legal process, although properly issued, is misused for an ulterior purpose, resulting in harm to the opposing party.

**B. Improper Use of Process**

175. Fraudulent Service: Defendants Simovonian and David Kideckel misused Ontario service procedures by swearing false affidavits and securing substitute service orders based on false claims that Plaintiff's address was unknown.

176. Retaliatory Warrants: Defendants David Kideckel and Saibil misused criminal process by swearing false affidavits to Toronto Police, leading to improperly issued arrest warrants designed not to prosecute legitimate crimes but to bar Plaintiff from defending himself.

177. Coercive Cross-Examinations: Simovonian repeatedly demanded that Plaintiff travel to Canada and submit to prolonged cross-examination, even after retaining counsel, as a condition of setting aside fraudulent defaults.

178. Weaponizing Default Motions: Defendants sought default judgment in Ontario and reactivated dormant proceedings after Plaintiff filed his May 2024 suit, showing an ulterior motive of retaliation rather than adjudication on the merits.

179. Sham Substitutions and Procedural Harassment in U.S. Court:

    A. Robinson continued filing after being NEF-terminated, creating procedural confusion to maintain control over the defense.

    B. Breen and Harris perpetuated sham substitutions to avoid certification of fraudulent filings.

    C. Phillips Lytle strategically substituted junior counsel to obscure conflicts.

    D. LawPRO and panel counsel ignored litigation hold notices while funding fraudulent defenses.

**C. Ulterior Purpose**

180. The primary purpose of these acts was not to secure fair adjudication but to:

    A. Intimidate and silence Plaintiff;

    B. Coerce abandonment of valid claims;

    C. Leverage fraudulent proceedings in Ontario as tactical weapons in U.S. litigation;

    D. Shield law firms and insurers from liability exposure.

**D. Harm to Plaintiff**

181. As a direct and proximate result of Defendants' abuse of process, Plaintiff has suffered:

   A.  Financial damages exceeding $30,000 in defending against fraudulent procedures;

   B.  Loss of inheritance and financial expectancy;

   C.  Emotional distress from being forced to miss his father's funeral due to court hearings scheduled as harassment;

   D.  Procedural prejudice in U.S. federal court as fraudulent Ontario rulings were imported to taint the record.

# COUNT VIII

**Malicious Prosecution**

(Against Defendants David Kideckel, Aram Simovonian, Dahlia Saibil)

**A. Elements**

182. Plaintiff realleges and incorporates by reference all preceding paragraphs.

183. Malicious prosecution requires: (1) the initiation of a legal proceeding against the plaintiff; (2) lack of probable cause; (3) malice; (4) termination in the plaintiff's favor (where applicable); and (5) damages.

**B. Malicious Proceedings Initiated**

**Ontario Lawsuits:**

184. On February 1, 2024, David Kideckel and Simovonian initiated a civil action in Ontario Superior Court based on fabricated text messages falsely attributed to Plaintiff.

185. This proceeding was pursued despite knowledge that Plaintiff had never used Canadian VoIP numbers and that service had not been effected.

**Reactivated Ontario Action:**

186. After Plaintiff filed his May 2024 Ontario claim, Defendants reactivated the February action solely as retaliation, obtaining substitute service through Simovonian's perjured affidavit and pushing for default judgment rather than merits adjudication.

**Criminal Warrants:**

187. David Kideckel and Saibil swore false affidavits to Toronto Police, leading to non-prosecutorial warrants barring Plaintiff's free entry into Canada.

188. These warrants were not reviewed by a Crown prosecutor and lacked probable cause.

**U.S. Importation of Fraud:**

189. Robinson and LBKM imported the fraudulent Ontario record into this Court via a 650-page Motion to Dismiss, incorporating perjured affidavits and fabricated texts to gain tactical advantage.

190. EBG and Phillips Lytle ratified this malicious prosecution by silence, refusing to disavow the fraudulent record.

**C. Lack of Probable Cause**

191. The Ontario actions were premised on fabricated texts, false affidavits, and perjured service. No reasonable person could have believed there was probable cause.

192. The criminal warrants lacked any prosecutorial review, further confirming the absence of probable cause.

193. The importation of fraudulent records into U.S. proceedings likewise lacked probable cause, as defense counsel were on notice of their falsity.

**D. Malice**

194. Defendants acted with malice, as shown by:

    A.  David Kideckel creating fraudulent text messages false attributed to Plaintiff to assist in his separation from employers with NDAs;

    B.  Simovonian's retaliatory threats ("watch your back");

    C.  Simovonian's coercive cross-examination demands;

    D.  Saibil's deliberate forum manipulation;

    E.  Robinson's decision to overwhelm Plaintiff with a knowingly tainted 650-page filing;

    F.  The law firms' and insurer's decision to ratify fraud rather than disavow it.

195. These actions were taken not to vindicate legitimate claims, but to harass Plaintiff, protect Defendants from liability, and weaponize courts against him.

## E. Favorable Termination

196. Plaintiff's Ontario action against the conspirators remains pending on appeal, and Plaintiff has contested fraudulent service in Ontario proceedings.

197. In the U.S., Plaintiff has secured multiple judicial signals (NEF "termination" tags) and procedural acknowledgments that Defendants' filings are defective, confirming progress toward favorable adjudication.

198. Plaintiff is not required to show complete termination of every proceeding where the malicious prosecution is ongoing or continues to cause harm; it is sufficient that proceedings were initiated without probable cause and for improper purposes.

## F. Damages

199. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff has suffered:

    A.  Financial damages exceeding $30,000 in legal costs;

    B.  Loss of inheritance due to retaliatory filings timed with estate disputes;

    C.  Emotional distress, including being forced to attend Ontario hearings instead of his father's funeral;

    D.  Reputational harm from false affidavits and criminal warrants branding Plaintiff as a fugitive.

# COUNT IX

**Civil Conspiracy**

(Against all Defendants)

**A. Elements**

200. Plaintiff realleges and incorporates by reference all preceding paragraphs.

201. A claim for civil conspiracy requires: (1) an agreement between two or more parties; (2) to participate in an unlawful act or a lawful act by unlawful means; (3) an overt act in furtherance of the agreement; and (4) resulting damages.

**B. Agreement**

202. Defendants entered into an express and/or tacit agreement to pursue fraudulent litigation, false affidavits, sham substitutions, and retaliatory filings in order to harass, silence, and injure Plaintiff.

    A. This agreement is evidenced by coordinated conduct across borders:

    B. David Kideckel and Simovonian jointly initiated the February 2024 Ontario action based on fabricated texts.

    C. Saibil swore false affidavits to police while manipulating forum positions.

    D. Robinson, LBKM, and EBG imported fraudulent records into the U.S. docket and perpetuated sham substitutions.

    E. Phillips Lytle concealed conflicts while keeping Toronto's defense active.

    F. Scalzi Caplan LLP allowed its letterhead to be used for a fraudulent cease-and-desist letter and later refused to disavow misconduct.

    G. LawPRO, Sinke, and Antoniou indemnified and funded defenses despite being on notice of fraud.

**C. Overt Acts**

203. In furtherance of the conspiracy, Defendants:

    A. Fabricated and circulated fraudulent communications purporting to be from Plaintiff;

B.  Filed perjured affidavits of service in Ontario;

C.  Procured false arrest warrants in Canada;

D.  Imported fraudulent Ontario materials into the U.S. docket;

E.  Pursued sham substitutions and conflicted representation;

F.  Ignored litigation holds and refused to certify or disavow fraud.

## D. Damages

204. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered:

A.  Financial losses exceeding $30,000 in litigation costs;

B.  Loss of inheritance and property expectancy;

C.  Emotional and reputational injury from false filings and warrants;

D.  Procedural prejudice in U.S. federal court caused by reliance on fraudulent materials.

# COUNT X

**Aiding and Abetting**

(Against Defendants Jeffrey Robinson, George Breen, Lewis Baach Kaufmann Middlemiss PLLC, Epstein Becker & Green, Scalzi Caplan LLP, Ian Sinke)

## A. Elements

205. Plaintiff realleges and incorporates by reference all preceding paragraphs.

206. Aiding and abetting liability arises where: (1) a party performs wrongful acts; (2) another defendant knows of those wrongful acts; and (3) the defendant substantially assists or encourages the wrongful conduct.

## B. Wrongful Acts

207. Primary wrongdoers — David Kideckel, Aram Simovonian, and Dahlia Saibil — committed fraud, abuse of process, and malicious prosecution, including fabricated evidence, perjured affidavits, false police reports, and retaliatory suits.

## C. Knowledge

208. The aiding-and-abetting Defendants had actual knowledge, or were willfully blind, to the fraud:

   A. Robinson and LBKM: Knew Ontario records were fraudulent yet filed them in a 650-page Motion to Dismiss; continued conflicted representation despite NEF "termination."

   B. Breen and EBG: Substituted in while on notice of fraud; refused certification of filings; reappeared to oppose sanctions while preserving tainted record.

   C. Scalzi Caplan LLP: Allowed firm letterhead to be used for fraudulent cease-and-desist; terminated Simovonian but never disavowed his misconduct.

   D. LawPRO/Ian Sinke: Received direct notice of fraud and litigation hold letters yet funded, indemnified, and ratified fraudulent defenses.

## D. Substantial Assistance

209. Each aiding-and-abetting Defendant provided substantial assistance by:

   A. Filing fraudulent records in this Court;

   B. Substituting conflicted counsel to obscure responsibility;

   C. Remaining silent in the face of judicial NEF "termination" tags;

   D. Refusing to certify or disavow fraudulent materials;

   E. Funding defenses with insurance resources despite knowledge of misconduct.

210. Their assistance allowed the primary wrongdoers to continue their fraud, obstructed Plaintiff's claims, and gave legitimacy to perjured filings and fabricated evidence.

## E. Damages

211. As a direct and proximate result of Defendants' aiding and abetting, Plaintiff has suffered:

    A.  Financial losses exceeding $30,000 in litigation costs;

    B.  Loss of inheritance and financial expectancy;

    C.  Emotional and reputational harm caused by continued ratification of fraud;

    D.  Procedural prejudice in U.S. federal court from fraudulent records left unrebutted.

# COUNT XI

**Willful Complicity**

(Against Defendants Jeffrey Robinson, George Breen, Lewis Baach Kaufmann Middlemiss PLLC, Epstein Becker & Green, Phillips Lytle LLP, Scalzi Caplan LLP, Ian Sinke,)

## A. Elements

212. Plaintiff realleges and incorporates by reference all preceding paragraphs.

213. Willful complicity arises where actors, though not the direct perpetrators of fraud, knowingly allow wrongful conduct to proceed, benefit from it, and decline to take corrective action despite having both the knowledge and the professional or institutional duty to act.

## B. Knowledge of Wrongdoing

214. Each of the Defendants named in this Count received actual notice of the fraud, conflicts of interest, and perjury underlying both the Ontario and U.S. proceedings:

    A.  NEF "termination" tags placed by the Court signaling Robinson's conflicted role.

    B.  Motions to disqualify, compel certification, and for sanctions expressly identifying fraudulent affidavits, fabricated texts, and sham substitutions.

    C.  Direct litigation hold letters sent to LawPRO, Antoniou Law, and Scalzi Caplan LLP.

    D.  Notices of adoption of fraud and judicial rulings in Ontario confirming procedural irregularities.

215. With this knowledge, Defendants had a duty to correct, disavow, or withdraw fraudulent filings. Instead, they chose to remain silent and continue representation.

## C. Willful Ratification

216. LBKM leadership (Lewis, Baach, Kaufmann, Middlemiss): Ratified Robinson's conflicted filings by continuing to sponsor his appearances and benefiting from firm profits.

217. EBG leadership: Endorsed sham substitutions by Breen and Harris and allowed their firm to continue representing Simovonian without certification.

218. Scalzi Caplan LLP: Terminated Simovonian for misconduct but refused to disavow the fraudulent filings made under their firm's name, leaving the fraud to stand.

219. LawPRO/ Sinke: Ratified fraud by ignoring litigation hold notices, continuing indemnification, and underwriting the defense of fraudulent claims despite clear notice of fabricated evidence.

## D. Institutional Complicity

220. This silence was not passive. It was deliberate — a calculated strategy to avoid direct liability while preserving litigation advantage. By refusing to act, Defendants willfully adopted the misconduct of their colleagues and clients as their own.

221. Courts recognize that silence in the face of known fraud is as misleading and culpable as affirmative misrepresentation. Defendants' willful complicity directly facilitated the continuation of fraudulent proceedings against Plaintiff.

## E. Damages

222. As a direct and proximate result of Defendants' willful complicity, Plaintiff has suffered:

   A.  Financial losses exceeding $30,000;

   B.  Loss of inheritance and financial expectancy;

   C.  Emotional distress and reputational injury from fraudulent warrants and filings;

B.  Procedural prejudice as fraudulent Ontario judgments were imported into the U.S. record.

# COUNT XII

**Intentional Infliction of Emotional Distress (IIED)**
(Against all Defendants)

## A. Elements

223. Plaintiff realleges and incorporates by reference all preceding paragraphs.

224. IIED requires: (1) extreme and outrageous conduct; (2) intentionally or recklessly; (3) causing severe emotional distress.

## B. Extreme and Outrageous Conduct

**David Kideckel:**

225. Fabricated false text messages and disseminated them to family and courts;

226. Swore false affidavits to police, resulting in arrest warrants against Plaintiff;

227. Sent an extortionate email to Plaintiff's spouse accusing him of collective liability for judgments;

228. Viewed Plaintiff's court hearing from a synagogue during Plaintiff's father's memorial lunch, forcing Plaintiff to litigate instead of attending the funeral.

**Aram Simovonian:**

229. Sent Plaintiff a direct threat to "watch yourself […] you don't want this problem";

230. Swore perjured affidavit of service;

231. Blocked Plaintiff from participating in hearings and denied transcripts until threatened with consequences;

232. Demanded Plaintiff appear for multiple days of coercive cross-examination.

**Dahlia Saibil:**

233. Swore false affidavits to police in Ontario to procure fraudulent warrants;

234. Manipulated forum positions, filing motions in Ontario on the merits while moving to dismiss in D.C. for forum non conveniens.

**Robinson, Breen, and their firms (LBKM, EBG):**

235. Imported fabricated evidence into U.S. filings;

236. Perpetuated sham substitutions and conflicted representation;

237. Ratified threats, false filings, and fabricated records by silence.

238. This conduct, individually and collectively, far exceeds all bounds of decency and is intolerable in a civilized society.

**C. Intent or Recklessness**

239. Defendants acted intentionally and, at minimum, recklessly, knowing their misconduct would cause Plaintiff severe distress. The direct threats, extortionate communications, and false warrants were calculated to intimidate, harass, and coerce.

**D. Severe Emotional Distress**

240. Plaintiff has suffered severe emotional distress including:

A.  Trauma from direct threats and extortion;

B.  Emotional injury from being forced to attend Ontario hearings instead of his father's funeral;

C.  Fear for personal safety and for his spouse's safety after receiving threatening communications;

D.  Ongoing anxiety, reputational harm, and distress from fraudulent warrants branding Plaintiff as a fugitive.

**E. Damages**

241. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages including emotional trauma, reputational harm, and consequential financial losses, and is entitled to compensatory and punitive damages.

# COUNT XIII

**Negligent Infliction of Emotional Distress (NIED), Including Negligent Hiring, Supervision, and Retention**

(Against Defendants Lewis Baach Kaufmann Middlemiss PLLC, Epstein Becker & Green, Phillips Lytle LLP, Scalzi Caplan LLP, and Ian Sinke)

**A. Elements**

242. Plaintiff realleges and incorporates by reference all preceding paragraphs.

243. NIED requires: (1) a duty of care owed to Plaintiff; (2) breach of that duty through negligent conduct; (3) foreseeable emotional distress; (4) causation; and (5) damages.

244. In addition, employers may be held liable for negligent hiring, supervision, or retention where they knew or should have known of an employee's unfitness and failed to take corrective action.

**B. Duty of Care**

245. Each Defendant law firm, insurer, and managing partner owed Plaintiff a duty to exercise reasonable care in preventing their attorneys and agents from perpetrating fraud, abuse of process, or threats in the course of litigation.

246. This duty arose from professional ethics rules, fiduciary obligations to the courts, and the foreseeability of harm to Plaintiff as the direct target of the misconduct.

**C. Breach of Duty**

247. LBKM: Continued to employ and sponsor Jeffrey Robinson despite clear conflicts, NEF "termination" tags, and notice of fraudulent filings.

248. EBG: Retained and promoted conflicted counsel, engaged in sham substitution, and failed to correct fraudulent submissions despite actual notice.

249. Phillips Lytle: Permitted conflicted representation of Toronto, allowed withdrawal of senior counsel under a cloud of fraud, and failed to supervise junior counsel's perpetuation of misconduct.

250. Scalzi Caplan LLP: Retained Simovonian despite his unfitness, allowed their firm's letterhead to be used for fraudulent demands, and failed to disavow his perjured affidavits after termination.

251. LawPRO/Sinke: As insurer and panel counsel, ratified fraud and funded defenses while ignoring litigation hold letters and notice of fabricated evidence.

## D. Foreseeability of Harm

252. It was reasonably foreseeable that permitting conflicted counsel, fraudulent affidavits, sham substitutions, and threats to proceed unchecked would cause Plaintiff severe emotional distress.

253. Plaintiff was forced to attend hearings instead of his father's funeral, endured threats against his safety and his spouse's safety, and suffered reputational injury from fraudulent warrants branding him a fugitive.

## E. Causation and Damages

254. Defendants' negligent hiring, supervision, and retention directly and proximately caused Plaintiff severe emotional distress, reputational harm, and financial damages, including:

   A. Emotional trauma from threats, extortion, and interference with family mourning;

   B. Anxiety and reputational harm from fraudulent arrest warrants;

   C. Litigation expenses exceeding $30,000.

# COUNT XIV

**Tortious Interference with Contract and Prospective Economic Advantage**
(Against all Defendants)

## A. Elements

255. Plaintiff realleges and incorporates by reference all preceding paragraphs.

256. Tortious interference requires: (1) existence of a valid contract or prospective economic relationship; (2) knowledge by the defendant; (3) intentional interference causing a breach or disruption; (4) wrongful conduct; and (5) resulting damages.

**B. Interference with Existing Contracts**

257. Defendants interfered with Plaintiff's contractual and business relationships, including:

    A.  Plaintiff's right to inheritance and financial expectancy from his father's estate, disrupted by David Kideckel's retaliatory suits and threats timed with estate demands;

    B.  Plaintiff's attorney-client relationship with Daniel Freudman, disrupted by Simovonian's coercive demands that Plaintiff appear for abusive cross-examinations, forcing Plaintiff to discharge counsel;

    C.  Plaintiff's ability to pursue litigation rights in Ontario and the United States, disrupted by fraudulent filings, sham substitutions, and concealment of conflicts.

**C. Interference with Prospective Economic Advantage**

258. Defendants also interfered with Plaintiff's prospective relationships and opportunities, including:

    A.  Plaintiff's ability to secure legal counsel and pursue legitimate claims, disrupted by threats, fabricated records, and procedural sabotage;

    B.  Plaintiff's professional and reputational standing, disrupted by false filings branding him as a fugitive and a vexatious litigant;

    C.  Plaintiff's ability to pursue settlement or resolution in good faith, undermined by Simovonian's unauthorized settlement overtures and coercive tactics.

**D. Knowledge and Intent**

259. Defendants had actual knowledge of Plaintiff's contractual and prospective relationships and acted with intent to disrupt them.

260. David and Saibil timed retaliatory filings to coincide with Plaintiff's inheritance demands.

261. Simovonian sought to displace Plaintiff's counsel and undermine his litigation rights.

262. Robinson, Breen, Harris, and their firms knew their conflicted representation and fraudulent filings would prejudice Plaintiff's ability to secure relief.

263. LawPRO, Sinke, and Antoniou knowingly funded fraudulent defenses, ensuring continued interference with Plaintiff's rights.

**E. Wrongful Conduct**

264. Defendants' interference was wrongful because it relied on fraud, perjury, threats, conflicts of interest, and abuse of judicial process, rather than lawful competition or advocacy.

**F. Damages**

265. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered:

   A.  Financial losses exceeding $30,000 in litigation costs;

   B.  Loss of inheritance rights and expectancy;

   C.  Emotional and reputational harm;

   D.  Ongoing prejudice in prosecuting legitimate claims.

# COUNT XV

**Equitable and Injunctive Relief**

(Against All Defendants)

**A. Incorporation**

266. Plaintiff realleges and incorporates by reference all preceding paragraphs.

**B. Need for Equitable Relief**

267. In addition to monetary damages, Plaintiff seeks equitable relief to prevent ongoing and future harm caused by Defendants' fraudulent, retaliatory, and conspiratorial conduct.

268. Legal remedies alone are inadequate because Defendants' scheme is ongoing, involves cross-border abuse of judicial process, and threatens to irreparably harm Plaintiff's rights and the integrity of this Court.

269. Equitable relief is necessary to restore Plaintiff's access to fair judicial proceedings, to prevent Defendants from profiting from fraud, and to protect this Court from becoming an enforcement arm of a foreign judgment procured through fraud and denial of due process.

## C. Forms of Relief Requested

270. Plaintiff seeks the following equitable and injunctive relief:

### (a) Injunction Against Reliance on Fraudulent Ontario Judgment

Enjoining Defendants from seeking recognition, enforcement, or reliance on the July 25, 2025 Ontario Superior Court judgment or any derivative rulings, which were procured through fraud, fabricated service, and denial of due process.

### (b) Injunction Compelling Withdrawal and Disavowal

Ordering conflicted counsel (Robinson, Breen) to withdraw or file certifications disavowing fraudulent affidavits, fabricated evidence, and perjured service records.

### (c) Injunction Against Further Unauthorized Practice and Sham Substitutions

Prohibiting Simovonian from engaging in any conduct constituting the unauthorized practice of law in the United States.

Prohibiting law firms from engaging in sham substitutions of counsel designed to obscure conflicts or ratify fraud.

### (d) Declaratory Relief

Declaring that Defendants' conduct — including fabrication of evidence, perjured affidavits, fraudulent warrants, unauthorized practice of law, conflicted representation, and ratification by silence — constitutes fraud, abuse of process, malicious prosecution, conspiracy, and racketeering activity.

### (e) Court Supervision

Granting such supervisory relief as this Court deems necessary to ensure compliance with professional ethics rules, including requiring law firm leadership to certify under oath that they are no longer ratifying fraudulent filings.

**D. Equitable Basis**

271. The balance of equities favors Plaintiff, who faces continuing harm and deprivation of rights if relief is denied, while Defendants would suffer no prejudice from being compelled to refrain from fraud, conflicts, and unauthorized practice.

272. The public interest strongly favors equitable relief to prevent abuse of courts in the United States by foreign judgments procured through fraud and to preserve judicial integrity.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brent Kideckel respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award the following relief:

A. Compensatory Damages — In an amount to be determined at trial,

B. Treble Damages under RICO — Pursuant to 18 U.S.C. § 1964(c), threefold the damages sustained by Plaintiff as a result of Defendants' racketeering activity.

C. Punitive Damages — In an amount sufficient to punish Defendants for willful, malicious, and outrageous misconduct, and to deter similar conduct by others.

D. Declaratory Relief — A declaration by this Court that Defendants' conduct, including fabrication of evidence, perjury, fraudulent service, unauthorized practice of law, conflicted representation, and ratification by silence, constitutes:

- Fraud;

- Abuse of process;

- Malicious prosecution;

- Civil conspiracy;

- Aiding and abetting;

- Willful complicity; and

- Racketeering activity under 18 U.S.C. §§ 1961–1962.

C.  Injunctive Relief — As outlined in Count XV, including:

- Enjoining Defendants from seeking recognition or enforcement of the fraudulent July 25, 2025 Ontario judgment;

- Prohibiting Defendants from engaging in further fraudulent filings, sham substitutions, or unauthorized practice of law;

- Compelling conflicted counsel to withdraw or certify disavowal of fraudulent materials;

- Ordering preservation and production of communications, billing records, and internal correspondence relevant to Defendants' misconduct.

D.  Equitable Remedies — Including but not limited to:

- Forfeiture of proceeds derived from racketeering activity;

- Disgorgement of law firm and insurer profits derived from fraudulent defenses;

- Court supervision to ensure compliance with professional ethics rules.

E.  Costs of Suit — Including filing fees, service costs, and all other recoverable litigation expenses.

F.  Attorneys' Fees — To the extent available under RICO, common law, or this Court's equitable powers, including consideration of Plaintiff's pro se status.

G.  Any Other Relief — Such other and further relief as the Court deems just and proper in law and equity.


Respectfully submitted,

*Brent K. ССССС.*

Brent Kideckel
Pro Se Plaintiff

P.O. Box 20901
Floral Park, NY 11002
Email: brentkideckel@gmail.com
Phone: (917) 634-0637

Dated: August 25, 2025

EXHIBIT "C"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL
               Plaintiff,

V.

THE FOREIGN NATION OF CANADA,  et al.
            Defendants.

**CASE NO.:   1:24-cv-02907-CJN**

# <u>SWORN DECLARATION OF BRENT KIDECKEL</u>

IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT
AND FOR LEAVE TO FILE AMENDED COMPLAINT

I, Brent Richard Kideckel, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I. Background and Purpose

1.  I submit this declaration in support of my Motion to Alter or Amend Judgment under Rule 59(e) and Rule 60(b), and for leave to file the proposed Amended Complaint.

2.  This declaration provides sworn factual support for the allegations already briefed, ensuring the Court has an evidentiary basis to consider misconduct, conflicts of interest, and fraud that tainted the record.

3.  All facts herein are based on my personal knowledge, records in my possession, and my direct involvement in the events described.

## II. Fabricated Communications and My Denials

4.  I have had the same U.S. cellular phone number since 2012. I have never possessed, used, or registered a Canadian phone number in that time.

5.  I have never maintained or used any Canadian VoIP accounts.

6.  I never sent any text messages to Defendant Dahlia Saibil, or to any of David Kideckel's employers, including Rob from the defunct Pharmadrug.

7.  The VoIP text messages circulated by Defendant David Kideckel in late 2023 and in 2024, including those to Toronto Police, were fabricated. They do not originate from me or my devices.

## III. Ontario Proceedings and Procedural Fraud

8.  On February 1, 2024, while employed at Scalzi Caplan LLP, Defendant Aram Simovonian initiated a fraudulent lawsuit against me in Ontario Superior Court using the fabricated texts.

9.  Service was never effected under the Hague Convention. Instead, Simovonian swore a false affidavit of service by email in July 2024, even though:
    a. Counsel of record cannot serve his own client's process; and
    b. I never received any such email.

10. On May 9, 2024, Simovonian personally sent me a threatening text message: "watch yourself […] you don't want this problem."

11. Defendants David Kideckel and Saibil swore false affidavits to Toronto Police, procuring non-prosecutorial warrants that were never reviewed by a Crown prosecutor and that were used to bar my access to Ontario courts.

12. In November 2024, Simovonian pursued a default judgment against me in Ontario based on his perjured affidavit of service.

13. In December 2024, while unlicensed in the U.S., Simovonian attempted to negotiate a "global resolution" of this federal case, constituting unauthorized practice of law.

14. In June 2025, I appeared before Justice Akazaki of the Ontario Superior Court to contest the fraudulent service affidavit. Despite acknowledging irregularities, the court proceeded against me.

15. On July 25, 2025, the Ontario court entered default judgment and a permanent injunction, expressly relying on fabricated texts and fraudulent service. That judgment is now on appeal (Exhibit H).

## IV. U.S. Proceedings and Conflicted Representation

16. In March 2025, Jeffrey Robinson of LBKM filed a 650-page Motion to Dismiss on behalf of both David Kideckel and Simovonian, importing fabricated Ontario materials.

17. Robinson simultaneously represented David and Simovonian—clients with irreconcilable interests—an unwaivable conflict.

18. After I moved to disqualify him, Robinson partially withdrew from representing Simovonian, and George Breen of EBG filed a substitution. Despite this, Robinson continued filing on behalf of David while NEF notices marked him "(Terminated)."

19. Neither Breen nor Phillips Lytle objected or disavowed. Their silence ratified Robinson's conflicted filings.

20. In June 2025, EBG engaged in a sham substitution, with Breen replacing himself with junior lawyer Elizabeth Harris, despite Harris's prior involvement. Breen later re-appeared, confirming the substitution was illusory.

21. No defense firm—LBKM, EBG, or Phillips Lytle—has filed certifications disavowing fraudulent materials despite repeated requests.

## V. Threats and Intimidation

22. On March 22, 2025, Defendant David Kideckel sent my husband, Samuel Bracamonte, an extortionate email, warning that he would be "collectively responsible" for judgments unless he cooperated (Exhibit I).

23. Defendant Simovonian transmitted a direct threat to me—"watch your back"—shortly before seeking fraudulent substitute service.

24. Both threats were timed to ongoing litigation activity and intended to intimidate me from asserting my rights.

## VI. Institutional Adoption of Fraud

25. By July 30, 2025, I was compelled to file a Notice of Adoption of Fraud identifying senior partners of LBKM, EBG, and Phillips Lytle who, through silence, ratified fraud on two tribunals.

26. LawPRO and its panel counsel, Ian Sinke, likewise ratified fraud by funding defenses despite notice of fabricated evidence.

27. These acts demonstrate that fraud was not isolated misconduct but was institutionally adopted by multiple law firms and insurers.

## VII. Manifest Injustice and Prejudice

28. The Ontario judgment is tainted by perjured service and fabricated evidence. Yet it was imported into this Court's record by conflicted counsel.

29. Judicial NEF signals marked Robinson "(Terminated)," yet filings continued, compounding prejudice.

30. Defense counsel refused to correct the Court's misapprehension of the actual conflicted parties (David and Simovonian), breaching their duty of candor.

31. I have been forced to expend over $30,000 in litigation costs, endured reputational injury, and was prevented from attending my father's funeral due to retaliatory scheduling of Ontario hearings.

## VIII. Conclusion

32. I swear to the truth of all factual assertions set forth in my Rule 59(e)/60(b) motion, supplemental complaint, and amended complaint.

33. These facts confirm that judgment rests on a tainted record created through fraud, conflicts of interest, unauthorized practice, and intimidation. Relief is necessary to correct clear error, prevent manifest injustice, and preserve the integrity of these proceedings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2025.

Brent Richard Kideckel

# EXHIBIT "D"


OVER 1,000 VEHICLES AVAILABLE!

KNIGHT
Sunrise Ford
Open

WORLD • INDIA

# Canada accuses India of criminal activity on its soil

**The diplomatic crisis that began with the 2023 murder of a Sikh separatist in Vancouver has intensified, with the reciprocal expulsion of high-ranking diplomats.**

By Carole Dieterich (New Delhi (India) correspondent) and Sophie Landrin (N...

Published on October 17, 2024, at 3:33 am (Paris), updated on October 17, 2024, at 8:31 am · 3 min read

Subscribers only


✕  M  Click to read this article in Le Monde's app    Open



Canadian prime minister Justin Trudeau in Ottawa, Canada on October 14, 2024. JUSTIN TANG / AP

The diplomatic crisis between Canada and India, which began over a year ago, entered an acute phase on Monday, October 14 with the reciprocal expulsion of senior diplomats. This spectacular escalation came just hours after the Canadian federal police announced that they had credible and irrefutable evidence of the involvement of agents of the Government of India in serious criminal activities in Canada, clandestine activities such as intelligence gathering and interference in democratic processes.

KEEP READING BELOW THE AD

Canada's foreign affairs minister, Mélanie Joly, said in a statement that she had asked New Delhi to waive the diplomatic immunity of six of her officials, including the ambassador, so that they could be questioned regarding a number of violent incidents targeting members of the South Asian community, in particular the Sikh community, in many cities across the country. When New Delhi refused, they received an expulsion notice. India claims they have been recalled.

The charges are extremely serious and follow the assassination in June 2023 of a Sikh separatist leader on Canadian soil. Hardeep Singh Nijjar was shot dead in the parking lot of the Sikh temple he ran in Surrey, a suburb of Vancouver, British Columbia. This Canadian citizen had been campaigning

# EXHIBIT "E"

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Columbia

**Notice of Electronic Filing**

The following transaction was entered by Robinson, Jeffrey on 3/10/2025 at 9:32 PM and filed on 3/10/2025

| | |
|---|---|
| **Case Name:** | KIDECKEL v. FOREIGN NATION OF CANADA et al |
| **Case Number:** | 1:24-cv-02907-CJN |
| **Filer:** | DAVID KIDECKEL |
| | ARAM SIMOVONIAN |
| **Document Number:** | 48 |

**Docket Text:**
**MOTION to Dismiss by DAVID KIDECKEL, ARAM SIMOVONIAN. (Attachments: # (1) Memorandum in Support Memorandum of Points and Authorities in Support of Aram Simovonian's Motion to Dismiss, # (2) Exhibit Aram Simovonian's Motion to Dismiss, # (3) Exhibit Canadian Case Law)(Robinson, Jeffrey)**

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

BRENT KIDECKEL    Brentkideckel@gmail.com

Christopher D. Barraza    cbarraza@phillipslytle.com, smatheny@phillipslytle.com

EXHIBIT "F"

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of Columbia

**Notice of Electronic Filing**

The following transaction was entered by Breen, George on 3/25/2025 at 8:32 PM and filed on 3/25/2025

**Case Name:**      KIDECKEL v. FOREIGN NATION OF CANADA et al
**Case Number:**     1:24-cv-02907-CJN
**Filer:**          ARAM SIMOVONIAN
**Document Number:** 67

**Docket Text:**
NOTICE OF SUBSTITUTION OF COUNSEL by George Bradley Breen on behalf of ARAM SIMOVONIAN Substituting for attorney Jeffrey D. Robinson (Breen, George)

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

BRENT KIDECKEL     Brentkideckel@gmail.com

Christopher D. Barraza     cbarraza@phillipslytle.com, smatheny@phillipslytle.com

George Bradley Breen     gbreen@ebglaw.com

**EXHIBIT "G"**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Columbia

**Notice of Electronic Filing**

The following transaction was entered by Harris, Elizabeth on 5/9/2025 at 4:37 PM and filed on 5/9/2025

| | |
|---|---|
| **Case Name:** | KIDECKEL v. FOREIGN NATION OF CANADA et al |
| **Case Number:** | 1:24-cv-02907-CJN |
| **Filer:** | ARAM SIMOVONIAN |
| **Document Number:** | 110 |

**Docket Text:**
NOTICE of Appearance by Elizabeth Harris on behalf of ARAM SIMOVONIAN (Harris, Elizabeth)

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

BRENT KIDECKEL    Brentkideckel@gmail.com

Elizabeth Harris    eharris@ebglaw.com

George Bradley Breen    gbreen@ebglaw.com

# EXHIBIT "H"

**COURT OF APPEAL FOR ONTARIO**

BETWEEN:

Brent Richard Kideckel

(Appellant)

– and –

David Kideckel

(Respondent)


Court File No.: CV-24-00713955

Ontario Superior Court of Justice


# NOTICE OF APPEAL

(Pursuant to Rules 61.03 and 61.04 of the Rules of Civil Procedure)


THE APPELLANT, Brent Richard Kideckel, appeals to the Court of Appeal for Ontario from the final judgment of the Honourable Justice Akazaki of the Superior Court of Justice dated July 25, 2025, which:

     1.     Entered default judgment against the Appellant;

     2.     Granted a permanent injunction prohibiting the Appellant from publishing, repeating, or disseminating any statements concerning the Respondent and related parties;

     3.     Reserved jurisdiction to determine costs;

     4.     Dismissed or purported to deny the Appellant's prior request to set aside the noting in default.


**THE APPELLANT ASKS THAT:**


     1.     The judgment be struck in its entirety as obtained by fraud on the court;

     2.     The action be remitted for determination on the merits, with procedural fairness afforded to the Appellant;

     3.     The injunction be vacated as overbroad, punitive, and in violation of constitutional principles and natural justice;

4.       Any costs award or entitlement be set aside or stayed;

5.       Costs of this appeal and of the underlying proceedings be awarded to the
Appellant on a substantial indemnity basis, jointly and severally against:

- •       David Kideckel (Respondent);

- •       Aram Simovonian (counsel of record);

- •       Scalzi Caplan LLP (former firm of record);

- •       Lima Law Professional Corporation (former firm of record);

- •       Lima Lee Simovonian LLP (current firm of record);

- •       Simovonian Professional Corporation (current proprietorship of Aram
        Simovonian's equity of Lima Lee Simovonian LLP partnership.)

- •       Any other lawyer, firm, or non-party who aided or benefited from the procedural
misconduct, including costs for abuse of process, fraud on the court, and reputational harm
caused to the Appellant, including Andrew Lima, Gary Caplan, Carmine Scalzi, Ian Sinke, and
Antonious Antoniou.)

6.       Such further and other relief as this Honourable Court may deem just.


**GROUNDS OF APPEAL:**


1.       **Fraud on the court:** The underlying affidavit of service was falsified, the record
included fabricated or unserved evidence, and the judgment was obtained through material
misrepresentations to the Court.

2.       **Denial of natural justice**: The Appellant was not properly served, and the motion
proceeded without affording him a fair opportunity to be heard. The presiding judge
acknowledged during oral argument that the Appellant was unaware of his right to contest the
authenticity or admissibility of the alleged service email, and then refused to allow such
examination.

3.       **Improper entry of default judgment:** The record did not justify default. The
judgment relied on defective service, an improper court order obtained by misrepresenting the
Appellant's whereabouts, and included evidence that was never delivered. The Respondent
falsely claimed the Appellant's address was unknown, while simultaneously attaching it to the

originating process. Additionally the Service claimed to have been effected was sworn to and effected by Counsel of Record, Aram Simovonian, an interested party.

4.      **Extraterritorial overreach and unconstitutional restraint**: The permanent injunction purports to restrict expressive activity by the Appellant even outside Canada, including in the United States, without jurisdictional basis or due process. The judgment seeks to silence criticism globally based on untested claims and without evidentiary hearing.

5.      **Disproportionality and bias**: The judgment includes inflammatory, personal language and imposes extraordinary remedies on a procedural default without factual findings or evidentiary testing. It improperly characterizes the Appellant's intelligence and motive in terms that raise a reasonable apprehension of bias and retaliatory overreach.

6.      **Lack of procedural fairness in costs**: The invitation for costs submissions, without a fair trial or merits determination, compounds the prejudice to the Appellant and creates a chilling effect on his ability to pursue judicial review.

7.      **Contradictory forum positions and concealment of parallel litigation**: The Respondent and related parties are actively litigating in the United States District Court for the District of Columbia (Kideckel v. The Foreign Nation of Canada, No. 1:24-cv-02907-CJN), where they have simultaneously argued that Ontario—not D.C.—is the appropriate forum. In Ontario, they assert this action is meritless; in D.C., they assert it belongs here. This contradiction supports judicial estoppel and exposes a pattern of forum manipulation.

8.      **Failure of U.S. counsel to certify the Canadian ruling:** At least three separate U.S. law firms have entered and exited representation of the same parties, and none have certified the legitimacy or propriety of the Ontario default judgment. The failure to stand behind the Canadian ruling—despite using it in U.S. motions—strongly suggests it is tainted by fraud or perjury.

9.      **Evidence of unclean hands and reputational taint**: The Respondent's counsel of record in Canada (Aram Simovonian) has been implicated in procedural misconduct and fraud, and is actively under pressure from parallel motions in the United States. The Respondent has directly benefited from this misconduct. The inability or unwillingness of U.S. counsel to affirm the Canadian record is strong evidence that the default judgment lacks reliability and was obtained improperly.


**JURISDICTION**

This appeal is brought under section 6(1)(b) of the Courts of Justice Act, RSO 1990, c C.43, which provides that an appeal lies to the Court of Appeal from a final order of a judge of the Superior Court of Justice.

The order appealed from is final, as it disposes of the proceeding by granting a permanent injunction and entering default judgement. Accordingly, leave is not required.

**THE APPELLANT'S ADDRESS FOR SERVICE IS:**

PO Box 20901

Floral Park, NY 11002

United States of America

Email: brentkideckel@gmail.com

Tel: (917) 634-0637

**THE RESPONDENT'S COUNSEL IS:**

Aram Simovonian

Lima Lee Simovonian LLP/Simovonian Professional Corporation

17 Turnberry Lane

Barrie, Ontario L9J 0M6

asimovonian@limalaw.ca

(647)677-8009

DATE: August 21, 2025

Brent Kideckel

Self-represented Litigant

# EXHIBIT "I"

Case 1:24-cv-02907-CJN    Document 146-2    Filed 08/25/25    Page 94 of 96
Gmail - Brent Kideckel | Wanted Criminal in Canada

 Gmail

**Brent K <brentkideckel@gmail.com>**

## Re: Brent Kideckel | Wanted Criminal in Canada

**David Kideckel** <kideckel.david@gmail.com>                    Sat, Mar 22, 2025 at 5:00 PM
To: sam.bracamonte@iqvia.com
Cc: "Brent R. Kideckel" <brentkideckel@gmail.com>

Samuel,  we have never met, I don't know anything about you. I wish you all the best.

I simply write because your husband, Brent Kideckel, is criminally harassing me and my family. He's wanted in Canada on an outstanding warrant for criminal harassment and uttering death threat.

I am writing to you to help us comply with outstanding criminal warrants. When we are successful in obtaining an Order against B, and we come to collect, you, Sam, will be collectively responsible in paying that debt, as his legal spouse.

Will you help me/us? If not we will have you implicated in all of Brent's criminal wrongdoings and next steps with property transfers. I, unfortunately, have an army of lawyers ready to take action on Brent and his ownerships.

Thank you.
David Kideckel

# EXHIBIT "J"