**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL
               Plaintiff,

V.

THE FOREIGN NATION OF CANADA, et al.
               Defendants.

**CASE NO.:    1:24-cv-02907-CJN**

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO FILE AMENDED COMPLAINT UNDER RULE 59(e)

**INTRODUCTION**

Plaintiff Brent Richard Kideckel respectfully submits this reply in support of his timely Rule 59(e) motion to alter or amend the judgment and for leave to file an amended complaint. The defense oppositions rely on unsupported rhetoric, mischaracterize the nature of the Court's prior dismissal, and fail to rebut the sworn evidentiary record that now governs this proceeding. As the attached declaration, exhibits, and amended complaint make clear, this case was dismissed without prejudice for lack of subject matter jurisdiction, and Plaintiff has since cured the alleged defect by submitting a jurisdictionally sound amended pleading. Under binding precedent, including *Ciralsky v. CIA* and *Foman v. Davis*, the Court must evaluate that proposed complaint. The opposition briefs—submitted by conflicted counsel named in the amended pleading—offer no declarations, no evidentiary rebuttal, and no lawful basis to deny reconsideration. What remains is a record marred by judicial oversight, defense self-dealing, and uncontroverted procedural misconduct. Rule 59(e) relief is warranted to restore the integrity of these proceedings and to permit this matter to be resolved on its merits.



RECEIVED
SEP 14 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## I. Misapprehended Conflict and Judicial Oversight

This Court's misapprehension of a clear, unwaivable conflict of interest has resulted in material prejudice and infected the record with tainted filings that require corrective relief under Rule 59(e) or, alternatively, Rule 60(b)(3). The dual representation at issue—handled by Jeffrey Robinson of Lewis Baach Kaufmann Middlemiss PLLC—was flagged early and repeatedly. Yet despite notice, including an emergency motion filed March 12, 2025, the conflict was allowed to persist, facilitating ongoing procedural abuse.

Plaintiff's emergency motion to disqualify Robinson was submitted directly to chambers per the Court's standing order. The deputy clerk confirmed receipt via email (Exhibit B). At the time, Robinson represented both David Kideckel and Aram Simovonian, parties with divergent legal interests and mutual allegations of fraud. That motion was submitted more than three weeks before Robinson's later filing on behalf of Dahlia Saibil, yet no action was taken by the Court. This omission permitted conflicted counsel to file on behalf of multiple adverse parties—an outcome explicitly prohibited by Rule 1.7 of the D.C. Bar Rules of Professional Conduct.

Robinson implicitly conceded the conflict when, on March 25, 2025, he withdrew as counsel for Simovonian. But rather than withdraw fully, he submitted a post-substitution affidavit just 20 minutes later, purporting to represent Simovonian in a continuing capacity. The NEF system itself marked Robinson as "Terminated" as of March 26, 2025 (Exhibit D), but no corrective filings were made to disassociate him from other clients. Nor did any of his co-counsel raise concern, despite this flagrant breach of professional ethics.

Plaintiff had warned as early as March 22, 2025, that continued filings by Robinson would trigger sanctions and disqualification (Exhibit E). Still, Robinson continued to file (Exhibit F), and even escalated his conduct by filing new materials for David Kideckel and Dahlia Saibil. The institutional silence in the face of these red flags—including from co-counsel George Breen at Epstein Becker & Green—only reinforces that this was not a misunderstanding, but a willful circumvention of ethical obligations.

The Court's failure to act on the acknowledged emergency submission allowed the harm to metastasize. Conflicted representation remained unaddressed. Filings were tainted. The judicial record was distorted. These events go beyond mere oversight—they constitute precisely the kind of "manifest injustice" that Rule 59(e) is designed to remedy.

This is not a speculative concern. Robinson's conflict had direct procedural consequences: it tainted the filings that followed, obstructed clean separation of adverse parties, and enabled a

litigation strategy grounded in contradiction and misdirection. Subsequent representations—on behalf of Saibil and others—were thus rendered ethically unsound. Defendants' failure to cure this, despite direct warnings and the NEF termination tag, speaks volumes about the systemic oversight failure at issue.

Corrective relief is warranted. The Court's inaction, though inadvertent, allowed these breaches to persist. That cannot now be ignored.

## II. Prejudice from Court's Inaction on Emergency Motion

The Court's failure to act on Plaintiff's properly submitted Emergency Motion to Disqualify, filed March 12, 2025, caused measurable and compounding prejudice. That motion—submitted pursuant to the Court's Standing Order and acknowledged via email by the deputy clerk—was urgent in nature, flagging a simultaneous, unwaivable conflict of interest involving Jeffrey Robinson and the adverse parties he represented.

Yet no action was taken. No scheduling order was issued. No docket entry reflected receipt. As a result, the conflict was allowed to persist for weeks, with Robinson continuing to file for David Kideckel, and subsequently appearing for Dahlia Saibil.

This judicial silence created a dangerous procedural vacuum. On March 25, 2025, Robinson formally withdrew as counsel for Simovonian. But just 20 minutes later, he filed a declaration on Simovonian's behalf—after withdrawal—without certification of authority. The Court's own NEF system recognized the conflict, marking Robinson as "Terminated" the next day (Exhibit D). But in the absence of docket-level intervention, these violations were allowed to compound.

Plaintiff had already warned Robinson—in writing and on the record—that continued filings after March 22, 2025 would be sanctionable (Exhibit E). Still, Robinson pressed forward, filing for multiple parties despite having been marked as removed. His actions were not isolated. They were tolerated, and even ratified, by co-counsel George Breen and Elizabeth Harris, neither of whom sought clarification or corrective action. This compounded Plaintiff's burden: forced not only to identify the misconduct, but to litigate against it while the record remained contaminated.

Had the Court ruled promptly on the March 12 motion—or even issued an order acknowledging it—the record would reflect an early judicial check on the conflict. Instead, the motion lay dormant while conflicted counsel continued to appear. The prejudice is not hypothetical. It

appears in every tainted brief, in every defense filing submitted by disqualified counsel, and in the procedural confusion that followed. The Court, having overlooked the emergency motion, inadvertently created the conditions for that confusion.

To be clear: this is not an accusation of judicial misconduct. Plaintiff recognizes that chambers processes a high volume of filings and that human error can occur. But that is precisely the purpose of Rule 59(e): to correct oversights that result in manifest injustice. When a motion is submitted according to standing procedure, acknowledged, and then ignored, the prejudice flows not merely from opposing counsel's misconduct—but from the Court's silence. That silence gave cover to a conflict that continues to ripple across the docket.

This section is not an appeal to emotion. It is a procedural appeal to fairness. The failure to rule on the emergency motion enabled misconduct that the Court could have prevented. The appropriate remedy is not to dwell on the missed opportunity, but to recalibrate the docket—to undo the harm, to remove the tainted filings, and to clarify that dual representation of adverse parties was never permissible in the first place.

## III. Defendants' Threatening Conduct and Ratification by Counsel

While the Court's oversight allowed procedural harm to persist, Defendants themselves escalated their misconduct into direct intimidation—both of Plaintiff and third parties—without correction or disavowal from counsel. These threats, directed through unauthorized legal channels and cloaked in the appearance of legitimacy, represent further evidence of bad faith and warrant corrective relief under Rule 60(b)(3).

On March 22, 2025, Plaintiff's spouse, Samuel Bracamonte, received a threatening and defamatory email from David Kideckel, falsely accusing Plaintiff of criminal fugitive status and warning that Samuel would be "collectively responsible" for future legal judgments unless he cooperated (see *Emergency TRO Motion*, ECF 66; Exhibit A therein). The email contained language indistinguishable from extortion and was clearly intended to provoke fear and suppress Plaintiff's legal rights.

The email was not sent in isolation. It was followed by a 2024 threatening text message from Aram Simovonian, who, days earlier, had filed a fabricated affidavit in Canada while also scheduling hearings Plaintiff could not attend and was not informed of. That message—likewise attached in ECF 66 (Exhibit B)—predated a false sworn statement Simovonian filed, referencing

events that never occurred. This conduct triggered Plaintiff's Emergency TRO motion (Exhibit 66), yet Defendants neither contested nor disavowed these threats in any responsive filing.

The pattern continued. On September 6, 2025, after Plaintiff initiated a probate-related inquiry regarding the estate of his late father in Manitoba, Simovonian sent an email threatening to seek contempt and jail time in Canadian court. The language was clear: "Cease contacting my client regarding this matter beyond my licensure, or I will seek contempt and jail time through the Ontario courts." (Exhibit M). This threat was both procedurally baseless and jurisdictionally absurd:

To make matters worse, the email bounced back as undeliverable, later followed by a claim from Simovonian that Plaintiff had triggered "cybersecurity flags". These shifting explanations only underscore the bad faith nature of the communication—meant to intimidate, not inform.

Plaintiff CC'd multiple U.S. counsel on the exchange, including George Breen, Jeffrey Robinson, and Ian Sinke (counsel for LAWPRO), all of whom failed to respond. That silence, in the face of a threat made by a party represented by those attorneys, constitutes constructive ratification. Their failure to distance themselves from the message—let alone report or correct it —amounts to tacit endorsement.

This ratification is especially egregious given Breen's ongoing participation in the case and Robinson's repeated appearances after NEF termination. Both had already been warned of sanctions for future misrepresentations (Exhibit E), yet neither objected to the escalation from procedural conflict into direct intimidation.

At every stage, the threatening conduct was paired with a refusal to clarify or disengage. Simovonian, despite being "replaced" as counsel, continued to threaten, while Breen and Robinson allowed their silence to signal approval. Even Ian Sinke, counsel for LAWPRO (the legal malpractice insurer behind Simovonian and Scalzi Caplan LLP), made no attempt to disavow the tactic—even after Plaintiff's litigation-hold letters put him on notice.

These are not minor infractions. They are attempts to use process as a weapon, to deter Plaintiff's estate inquiries, to silence legal claims, and to overwhelm the docket with procedurally invalid filings while misrepresenting party roles and authority.

Accordingly, Plaintiff asks this Court to recognize the pattern of threatening conduct, the counsel-level ratification, and the broader context of procedural obstruction—each of which

independently supports relief under Rule 60(b)(3), and together form an unbroken chain of misconduct that no longer deserves the Court's benefit of the doubt.

## IV. Concealed LBKM Data Breach and Pattern of Oversight Failure

The same systemic negligence that allowed a clear conflict to persist without correction is now manifesting in Defendants' counsel's concealment of a cybersecurity incident—an act that independently warrants judicial scrutiny and underscores a pattern of oversight failure that spans both ethical obligations and case security.

On August 26, 2025, the same day Plaintiff filed a motion addressing counsel's conflict and ethical breaches, a ransomware attack targeting Lewis Baach Kaufmann Middlemiss PLLC was publicly disclosed by the cybersecurity monitoring site *hookphish.com* (Exhibit J). The Cephalus ransomware group identified the firm as a breach victim, raising immediate concerns that privileged data—including client files, internal emails, and litigation material—may have been compromised.

To date, no disclosure has been made to the Court, and Plaintiff has received no notification regarding whether case-related materials, confidential exhibits, or communications were affected. Defendants' silence on this issue is indefensible. Under both common law duties of candor and cybersecurity disclosure norms, counsel is obligated to disclose material risk if client data related to ongoing litigation has potentially been accessed, especially in a matter involving foreign sovereignty and judicial integrity.

This silence is not occurring in a vacuum. It mirrors Defendants' ongoing failure to acknowledge or rectify the earlier conflict of interest. Robinson continued appearing after being NEF-tagged as Terminated (Exhibit D), despite Plaintiff's warnings that further filings would be sanctionable (Exhibit E). Breen and Harris of EBG, having entered appearances after these violations, have not taken corrective steps, either—despite inheriting a tainted record and a fraud-exposed client.

Defendants' failure to disclose the data breach—like their failure to address the NEF conflict— reflects a consistent institutional attitude: conceal first, deal later. That is not the posture of good faith litigation. And in this context, where the record is already contaminated by misrepresentation, fraud, and coercion, the concealment of a cybersecurity breach becomes not just negligent, but potentially obstructive.

The internal control failures that allowed Robinson to file after being tagged as terminated are the same types of failures that allowed a ransomware incident to go unacknowledged. In both cases, the Court was misled by omission, and Plaintiff was left to uncover and present the truth unaided.

The remedy is not merely a disclosure. Plaintiff respectfully requests that the Court take judicial notice of the breach's timing and nondisclosure as indicative of the Defendants' broader pattern of bad faith. If Defendants now seek to contest the public report of the breach, they should be compelled to submit a sworn certification clarifying:

1. Whether any client data was accessed or encrypted;

2. Whether any litigation files were implicated; and

3. Whether any external notifications (e.g., to clients, insurers, or regulators) were made.

The concealment of the data breach, particularly on the same day Plaintiff sought disqualification, further validates the core premise of this motion: that the record has been distorted by unethical litigation conduct—and that Defendants' silence, both then and now, speaks volumes.

## V. Institutional Silence, Fraud Adoption, and Systemic Bad Faith

What began as an isolated ethical breach has now metastasized into something far more serious: a multi-firm pattern of silence, procedural evasion, and implicit adoption of fraud. Across every stage of this litigation, Defendants and their counsel have not merely failed to correct known misrepresentations—they have absorbed them, doubled down, and carried them forward into new filings, all while knowing the record was tainted.

This silent adoption of fraud implicates not only Lewis Baach Kaufmann Middlemiss PLLC (LBKM), whose terminated attorney Jeffrey Robinson remains on the docket without formal withdrawal, but also Epstein Becker & Green (EBG) and Phillips Lytle LLP, both of whom entered appearances long after the initial fraud had been exposed—and chose to say nothing.

### A. The Unaddressed Conflict Became a Shared Litigation Strategy

After the Court was misled into believing there was no active conflict, the subsequent silence by incoming firms functioned as a strategic ratification. George Breen, having taken over for Simovonian, chose not to disavow Robinson's prior filings. Elizabeth Harris, introduced as substitute counsel, was in fact part of the same team from the beginning. No clean line was drawn. No correction was offered.

The Notice of Electronic Filing tags (Exhibit D) unambiguously marked Robinson as "Terminated." Still, filings continued under his name—without clarification, without NEF reinstatement, and without certification under Rule 11. By March 26, 2025, the system itself had flagged Robinson's continued appearance as improper. And yet it was not the terminated attorney who corrected the record—it was Plaintiff.

### B. Silence as Adoption: The Data Breach and Beyond

The August 26, 2025 ransomware breach at LBKM (Exhibit J) only reinforces this pattern. Not only did Defendants fail to notify the Court that case files may have been compromised, but no firm—including those who inherited the record—sought verification of integrity before continuing to rely on prior filings. They simply absorbed the existing record, flaws and all, as if silence could substitute for due diligence.

This type of institutional silence operates as constructive ratification. By refusing to disavow tainted filings, or to update certifications, counsel adopted the fraud by procedural implication. The failure to speak—when a duty to speak exists—is an act of misconduct in itself. See *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) (fraud on the court includes both affirmative misconduct and knowing use of false documents); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (courts may sanction attorneys who "unreasonably and vexatiously multiply proceedings").

### C. Adverse Inference: Robinson's Continued Presence, Saibil's Silence

Despite being formally warned, Robinson has never certified his authority post-substitution. He has not filed a Rule 11 statement, a formal withdrawal, or a declaration clarifying his role. This failure—particularly after the NEF marked him as "Terminated"—warrants an adverse inference: that he lacks authority, and that his filings are unauthorized.

Dahlia Saibil, too, has remained silent. Despite being a represented party whose interests were advanced through these tainted filings, she has submitted no declaration of her own and has not refuted any of Plaintiff's specific allegations. Her silence—given her position as counsel with the

Ministry of the Attorney General of Ontario—carries institutional implications. If her filings were valid, she could say so. The fact that she hasn't speaks volumes.

**D. The Court Cannot Ignore the Pattern**

From the NEF "Terminated" tag to the unacknowledged emergency motion; from the concealed data breach to the threats against Plaintiff's spouse; from Robinson's unauthorized filings to Breen's ratification of threats—the pattern is now complete. It is no longer possible to attribute these lapses to oversight or misunderstanding. The only explanation that fits the record is systemic bad faith.

Plaintiff respectfully submits that the Court must recognize this pattern not just as grounds for individual sanctions or retroactive disqualification, but as an institutional failure requiring full procedural reset. The litigation has proceeded under false pretenses, manipulated by those who should have safeguarded the process. That must now be undone.

## VI. The Court's Disengagement Enabled Misconduct and Continues to Prejudice Plaintiff

At its core, this motion is not about punishing the Court or relitigating dismissed claims—it is about restoring integrity to a record that was procedurally compromised and ethically distorted, in part due to the Court's own failure to engage.

The Court confirmed receipt of Plaintiff's March 12, 2025 Emergency Motion to Disqualify, submitted pursuant to the Standing Order and emailed to Chambers. But the motion was never acknowledged, and never ruled on. During that silence:

- Jeffrey Robinson continued to file under NEF tags marking him as Terminated;

- Robinson withdrew from representing Aram Simovonian but continued to appear for David Kideckel and later Dahlia Saibil, in breach of D.C. Rule 1.7;

- George Breen and Elizabeth Harris substituted in without certifying their authority or disavowing conflicted filings;

- The Court dismissed the case on jurisdictional grounds without understanding that key filings were tainted by unethical appearances;

- The defense made no effort to cure these defects—instead, it has responded to this motion with retaliatory sanctions threats, fact-free bluster, and no substantive rebuttal.

This was not a one-time oversight. The Court's disengagement created a procedural vacuum—and defense counsel filled it with silence, conflict, and obstruction. The result is a record infected by:

- Unauthorized representations,

- Uncorrected ethical violations,

- A breach of the Court's own Local Rules (83.6, 83.15),

- And ongoing prejudice to Plaintiff, who now must litigate under a ruling rendered in ignorance of these facts.

Had the March 12 emergency motion been ruled on, much of the taint now embedded in this case would have been avoided. Instead, Plaintiff was silenced by omission, while conflicted counsel were allowed to weaponize that silence to obtain dismissal.

The prejudice continues today:

- Defendants still have not certified their authority;

- Simovonian continues to issue threats (see Exhibit M);

- Defense firms have still not withdrawn;

- And Plaintiff remains procedurally barred from full adjudication while the misapprehended order remains intact.

This is the textbook definition of manifest injustice. Rule 59(e) exists for precisely this reason—not to relitigate, but to acknowledge where process failed and restore fairness before that failure becomes permanent.


## VII. Restoring Procedural Integrity and Correcting the Record

Defendants' opposition to Plaintiff's Rule 59(e) motion fails to engage with the gravity of the issues raised and offers no credible justification for the record's continued contamination.

Instead, their silence on the most damaging facts—including the Court's oversight of an emergency motion, the NEF "Terminated" tag, the concealment of a cybersecurity breach, and the ratification of threats—only confirms the necessity of relief.

**A. Defendants Offer No Rebuttal to the Central Errors**

Defendants do not dispute that Plaintiff submitted an emergency disqualification motion on March 12, 2025, nor do they explain why the Court's failure to rule on that motion should not be addressed. Instead, they ignore the motion entirely, allowing tainted filings submitted under a now-confirmed conflict to remain operative.

They do not address the NEF "Terminated" designation entered on March 26, 2025. They do not dispute that Robinson filed materials after being marked as terminated, nor do they offer a declaration certifying his authority to continue appearing.

They offer no declaration from Dahlia Saibil, the very party whose appearance was facilitated by the misapprehended conflict. They offer no certification from George Breen disavowing prior filings. They offer no acknowledgment of the August 26 data breach, and they remain silent on the estate-related threat sent by Simovonian to Plaintiff's spouse—despite multiple defense counsel having been CC'd on that exchange.

This is not a defense. It is avoidance.

**B. Rule 59(e) Relief Is Not Only Permitted—It Is Required**

The standard for Rule 59(e) relief is clear: courts may reconsider a judgment where there has been a clear error or manifest injustice, particularly where new facts or procedural oversights come to light. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). The Court's failure to docket or rule on the March 12 emergency motion is just such an oversight. The prejudice that flowed from that silence—tainted filings, continued conflict, uncorrected fraud—is precisely what Rule 59(e) was designed to prevent.

Further, under Rule 60(b)(3), relief is warranted where a party engages in fraud, misrepresentation, or misconduct. The record here includes all three. The fabricated service filings in Ontario, the continued filings by disqualified counsel, the threats to Plaintiff's spouse, and the silence by senior counsel all combine to undermine the fairness of the proceedings.

The Court is not being asked to assign moral blame or revisit its prior rulings out of regret. It is being asked to intervene now to prevent further injustice, using the same procedural tools that preserve the judiciary's integrity when its processes have been manipulated.

**C. The Integrity of the Docket Requires a Corrective Order**

Plaintiff respectfully requests that the Court take the following corrective actions:

1. Vacate the affected orders and filings made after March 12, 2025, where Jeffrey Robinson appeared on behalf of multiple parties under an unwaivable conflict, in violation of D.C. Bar Rule 1.7.

2. Disqualify Robinson and Breen retroactively, and order that no filing submitted on behalf of David Kideckel, Dahlia Saibil, or Aram Simovonian may be relied upon unless refiled by properly authorized and conflict-free counsel.

3. Direct all appearing counsel, including George Breen and Elizabeth Harris, to submit sworn certifications under Rule 11 as to the authority for each filing made since substitution, and whether they adopt or disavow the filings made under Robinson's name.

4. Order Defendants to address the August 26, 2025 LBKM data breach, by submitting a notice indicating whether case materials were affected and whether any notifications were issued to clients or regulators.

5. Issue a finding of prejudice resulting from the Court's inadvertent failure to act on the March 12 emergency motion, and grant Plaintiff leave to amend, rebrief, or otherwise cure any procedural taint caused by the record's misapprehension.

# VIII. Defendants' Cited Authorities Are Misleading, Distinguishable, or Supportive of Relief

Defendants offer a selective and often misleading presentation of case law in their oppositions. None of their cited decisions support the proposition that conflicted counsel may continue appearing post-substitution, that NEF termination tags are irrelevant, or that Rule 59(e) relief is unavailable to correct judicial silence in the face of active ethical breaches.

Plaintiff addresses each major citation in turn.

### 1. Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998)

*Cited by Robinson to argue that Rule 59(e) motions cannot be used to reargue facts or legal theories.*

**Response:** Plaintiff is not rearguing dismissed legal theories. The core of this motion is the Court's failure to rule on a properly submitted disqualification motion—a procedural oversight that allowed tainted filings to proliferate. This is the precise type of manifest injustice that *Anyanwutaku* recognizes as a valid basis for Rule 59(e) relief.

"Relief under Rule 59(e) is available when the court has 'patently misunderstood' a party or made an error not of reasoning but of apprehension."
— *Anyanwutaku*, 151 F.3d at 1057.

The Court here did not "misunderstand" Plaintiff's argument; it failed to rule on it at all.

### 2. Taylor v. Dep't of Justice, 268 F. Supp. 3d 246 (D.D.C. 2017)

*Cited by Robinson for the proposition that Rule 59(e) motions must be denied if they raise issues "available earlier."*

**Response:** The conflict was raised earlier. What changed is the discovery that the Court never acted on the March 12 emergency filing, confirmed by internal email. The NEF termination designation (Exhibit D) and continued post-substitution filings create a new procedural injury, not previously before the Court. Plaintiff is not rehashing a losing argument—he is revealing that the Court never addressed it at all.

Moreover, *Taylor* explicitly affirms that relief may be granted to "correct a clear error or prevent manifest injustice." Id. at 250. That is the exact request here.

### 3. CIR v. Asphalt Prods. Co., 482 U.S. 117 (1987)

*Cited by Simovonian to argue that courts have discretion over how they interpret procedural irregularities.*

**Response:** This case relates to IRS tax refund jurisdiction and whether a particular timing rule is jurisdictional or procedural. It has nothing to do with attorney ethics, disqualification, or fraud on the court. Its invocation here is a red herring. Plaintiff is not challenging timing doctrine—he is challenging procedural distortion caused by conflict and fraud.

**4. United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001)**

*Cited by Simovonian to suggest that even complex procedural disputes don't warrant Rule 59(e) reconsideration if the outcome was sound***.**

**Response:** *Microsoft* involved appellate review of a final judgment following a trial, not post-dismissal correction of a live conflict in the district court. Plaintiff's motion is not about legal complexity—it's about the Court's failure to act on a disqualification filing and supplemental complaint invoking RICO,  and the resulting prejudice from unchecked, conflicted advocacy. *Microsoft* is a tech antitrust case; it doesn't govern this context.

**5. Leidos, Inc. v. Hellenic Republic, 881 F.3d 213 (D.C. Cir. 2018)**

*Cited to suggest that foreign sovereign immunity bars Plaintiff's claims.*

**Response:** Leidos involved an international arbitration enforcement issue under the FSIA. Here, Plaintiff's motion doesn't seek merits reconsideration of sovereign immunity—it seeks correction of a conflict-of-interest failure, procedural fraud, and a silenced emergency motion. Moreover, Canada waived immunity by actively litigating and by ratifying fraud via inaction. Leidos is irrelevant at this stage.

**6. Fidelity & Deposit Co. of Maryland v. United States, 187 U.S. 315 (1902)**

*Cited by Simovonian in a footnote, claiming courts don't have to fix every error.*

**Response:** The error here is not minor—it is structural. The continued appearance of terminated, conflicted, and potentially unauthorized counsel is not the kind of "procedural slip" covered by Fidelity. That case involved suretyship obligations under contract law, not procedural fraud and Rule 1.7 conflicts.

**7. Carr v. District of Columbia, 543 F. Supp. 2d 70 (D.D.C. 2008)**

*Cited for the proposition that 59(e) motions are not appeals in disguise.*

**Response:** Carr involved summary judgment after full discovery and briefing. The Court ruled on the issues in that case. Here, by contrast, the emergency disqualification motion and

Supplemental Complaint were never ruled on, despite direct notice to chambers. *Carr* affirms that Rule 59(e) is appropriate to "prevent manifest injustice"—and ignoring a duly filed emergency ethics motion and timely Supplemental Complaint qualifies.

**8. Chambers v. NASCO, Inc., 501 U.S. 32 (1991)**

*Ignored by Defendants.*

**Response:** Tellingly, Defendants never address *Chambers*, which remains controlling on fraud on the court and the Court's inherent power to act where counsel misleads it or perpetuates misconduct. That silence is itself a concession. The behavior here—conflicted filings, NEF-flagged appearances, and strategic threats—is squarely within the *Chambers* framework.

**9. Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989)**

*Ignored by Defendants.*

**Response:** Another key omission. *Aoude* held that fabrication of evidence, once discovered, warrants vacatur and relief—even if the proceeding is otherwise closed. Here, the Court was misled by silence and strategic omission, while conflicted counsel submitted materials under a false pretense of authority. That's *Aoude* by the book.

**<u>Summary</u>**

Defendants cite inapplicable cases, misrepresent procedural standards, and ignore the precedents that matter most. The actual controlling law—*Chambers*, *Firestone*, *Aoude*, and D.C. Bar Rule 1.7—undermines their position and supports Plaintiff's request for immediate relief.

## IX. Defendants' Silence on *Ciralsky* and *Foman* Confirms the Need for Relief

Defendants make no attempt to address two binding, directly on-point decisions: *Foman v. Davis*, 371 U.S. 178 (1962), and *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004). This omission speaks volumes. Both cases make clear that where a procedural error or oversight leads to dismissal—particularly at the subject-matter jurisdiction stage—relief under Rule 59(e) and leave to amend are not just permitted, but favored.

**A. *Foman* Requires Opportunity to Be Heard on the Merits**

In *Foman*, the Supreme Court rejected the denial of leave to amend following dismissal where the record showed no bad faith, delay, or futility. The Court held that:

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."
— *Foman*, 371 U.S. at 182.

Here, Plaintiff's underlying facts—conflict, fraud, procedural misconduct, and jurisdictional abuse—are not only "proper subjects of relief," but remain entirely unaddressed on the merits. The dismissal was grounded in subject-matter jurisdiction, not on the substance of the claims.

And yet, Defendants now pivot improperly to merits-based arguments, attempting to poison the well for amendment by attacking the credibility of allegations the Court has never adjudicated. That posture is flatly inconsistent with *Foman*. At this stage—post-jurisdictional dismissal—the rules of liberal amendment remain at their strongest, not weakest.

**B. *Ciralsky* Compels Relief Where Procedural Oversight Prejudiced Plaintiff**

In *Ciralsky*, the D.C. Circuit reversed a dismissal where the district court had failed to consider a Rule 59(e) motion that clarified procedural confusion. The Circuit held that the district court abused its discretion by refusing to reconsider or permit amendment after a dismissal.

This case is *even stronger*: Plaintiff filed a timely emergency disqualification motion on March 12, 2025, which was acknowledged by the deputy clerk (Exhibit 100) but never docketed or ruled on. The record shows the Court operated under a misapprehension—believing there was no live conflict—when in fact, conflicted counsel continued to appear under NEF "Terminated" tags.

Just as in *Ciralsky*, this oversight warrants reconsideration. The D.C. Circuit has made clear that procedural silence which causes prejudicial dismissal must be corrected. Yet Defendants now pretend this never occurred—despite ample evidence that it did.

**C. Defense Cannot Convert a Jurisdictional Dismissal Into Merits Preclusion**

Both oppositions adopt a misleading framing—treating the Court's subject-matter jurisdiction dismissal as a merits determination. This is legally impermissible. As *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) held:

"Without jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining... is that of announcing the fact and dismissing the cause."

Yet Defendants attempt to use that jurisdictional dismissal as a springboard to argue claim preclusion, lack of merit, and even bad faith—none of which were adjudicated. Their arguments rest not on what the Court ruled, but on what they now want the Court to imply in hindsight.

This is improper. Plaintiff is not seeking to reargue sovereign immunity. He is asking the Court to correct the integrity of its own docket, to acknowledge that it never ruled on a duly submitted emergency motion, and to permit proceedings to continue under a clean, ethical record.

### D. Their Silence Is a Concession

Defendants cite cases about finality, jurisdiction, and the impropriety of re-litigation. But they do not cite Foman. They do not cite Ciralsky. They do not cite Steel Co. And they never once acknowledge the Court's own procedural misstep and misapprehension of parties.

That silence is a concession. It confirms that they cannot explain how the present record—built on conflicted filings, concealed threats, and ignored warnings—meets the standard of procedural integrity the rules demand.

The absence of any meaningful engagement with *Ciralsky* and *Foman* is dispositive. The cases stand as binding mandates for judicial correction where procedural oversight—not bad faith or frivolity—produced dismissal. That is what happened here. And that is what must now be undone.


## X. Plaintiff's Sworn Declaration and Supporting Evidence Stand Uncontroverted; Defendants' Silence on the Record Is Dispositive

Plaintiff respectfully submits that the only sworn evidence currently before the Court on this Motion is his own declaration, filed in support of the Rule 59(e) motion. That declaration, made under penalty of perjury pursuant to 28 U.S.C. § 1746, affirms the factual basis for Plaintiff's claims, timelines, and allegations of procedural misconduct and fraud on the Court. No declarations — from counsel, parties, or institutions — have been offered in opposition.

### A. Plaintiff's Pro Se Filings Were Intended as Sworn Submissions

Plaintiff confirms that all previous pro se filings were made in good faith and intended as sworn representations. This understanding was based on Canadian court procedure, where factual filings by self-represented litigants are routinely accepted as equivalent to sworn affidavits unless contradicted. Attached as Exhibit O is a contemporaneous communication from the Ontario Superior Court confirming that self-represented litigants are not required to swear formal affidavits and that their factual filings are accepted as evidence.

Upon realizing that U.S. federal practice may treat unsworn pro se filings differently, Plaintiff voluntarily submitted a sworn declaration alongside his Rule 59(e) motion, removing any doubt about the evidentiary posture. The declaration affirms:

- Plaintiff has no Canadian phone numbers,

- Did not receive an email purporting to effect Service, even in clear violation of The Hague Service Convention,

- The dual representation conflict (Robinson representing David Kideckel and Aram Simovonian simultaneously),

- The NEF "(Terminated)" tags confirming unauthorized filings,

- The emergency motion acknowledged but not docketed (and ignored despite direct notice to chambers),

- The timeline of threats and retaliation following estate inquiries and procedural filings, and

- The procedural prejudice and institutional harm now present in the record.


**B. Defendants Have Offered No Sworn Evidence in Response**

Defendants, by contrast, have submitted **no declarations** to counter:

- No affidavit from Jeffrey Robinson or George Breen,

- No certification of authority to appear or represent,

- No factual rebuttal from any named client or institutional defendant.

They rely exclusively on lawyer-authored opposition briefs — which, while rhetorically aggressive, are not evidence.

This absence is not legally neutral. In *Harris v. Gonzales*, 488 F.3d 442 (D.C. Cir. 2007), the D.C. Circuit held that uncontroverted pro se declarations must be credited, and that factual allegations supported by sworn evidence cannot be disregarded based solely on legal argument. See also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (courts have inherent power to sanction bad-faith litigation conduct where evidence of abuse is presented).

Here, Plaintiff's evidentiary record — bolstered by email correspondence, NEF tags, and a sworn declaration — stands unrebutted. Defendants had every opportunity to submit their own declarations, clarify disputed facts, or disavow the conduct alleged. Instead, they remained silent — a silence that now supports adverse inferences, waiver, and procedural prejudice.

### C. The Court Must Rely on the Only Evidentiary Account in the Record

On a motion under Rule 59(e) and 60(b)(3), the Court must distinguish between legal disagreement and factual misrepresentation. Where the former exists, debate is expected. Where the latter is alleged, the Court must examine the evidence. And where only one side has submitted sworn evidence — and the other, facing disqualification and sanctions, remains silent — the result is clear:

***Plaintiff's account is the only evidentiary narrative before the Court. The Court must credit it.***

To rule otherwise — to accept procedural silence over a sworn factual record — would be to elevate institutional loyalty over evidentiary law. That would not survive appellate scrutiny. Nor should it survive this reply brief.


## XI. Defendants' Opposition Embodies the Maxim: "If the Facts Aren't on Your Side, Pound the Table"

There is an old maxim in litigation that has never been more apt than here:

"If the facts aren't on your side, argue the law. If the law isn't on your side, argue the facts. If neither is on your side, pound the table."

Defendants have neither facts nor law on their side—so they are pounding the table. Loudly.

Their oppositions:

- Ignore the undisputed NEF "Terminated" tags,

- Ignore the Court-confirmed receipt of Plaintiff's March 12 emergency motion,

- Ignore the dual representation and ethical violations underpinning the Rule 59(e) motion,

- Ignore controlling precedents like *Ciralsky* and *Foman*,

- Offer no declarations from the attorneys implicated, and

- Rely on ad hominem attacks and procedural threats, including an improper Rule 11 demand and an unsupportable request for a pre-filing injunction.

This is not legal argument. This is procedural theater—a desperate effort to distract the Court from a record that is now irreversibly compromised by defense counsel's own decisions. Rather than confront the misconduct, Defendants attempt to drown it in volume and bravado.

Their silence on the merits of the Rule 59(e) motion speaks louder than their rhetoric. And their refusal to engage on the ethics violations is not a rebuttal—it is a confession by omission.

The Court need not indulge this performance. Rule 59(e) exists for precisely this moment: when a party's arguments have not been heard, when the record has been misunderstood, and when the opposing side would rather shout than explain.


## XII. Defendants' Retaliatory Sanctions Requests Are Frivolous and Reflect Consciousness of Ethical Breach

Defendants' request for Rule 11 sanctions and a pre-filing injunction is not only procedurally defective—it is substantively frivolous and transparently retaliatory. These scorched-earth demands, embedded in opposition briefs without evidentiary support, reflect not strength, but panic: a recognition that the ethical violations raised by Plaintiff are valid, unaddressed, and now inescapably embedded in the record.

This pattern is familiar in institutional litigation: when the underlying conduct cannot be defended, the strategy shifts to attacking the whistleblower.

Here, Defendants seek to punish Plaintiff not for misconduct, but for correctly identifying theirs —and for demanding accountability through appropriate procedural vehicles (Rule 59(e), Rule 60(b), Local Rule 83.15, and D.C. Rule 1.7).

They do not dispute the NEF termination tags, the conflict of interest, the post-substitution filings, the unaddressed emergency motion, or the silence from Saibil, Robinson, Breen, or Harris.

Instead, they ask this Court to:

- Impose Rule 11 sanctions without meeting any procedural requirements under Rule 11(c)(2);

- Issue a pre-filing injunction, despite no evidence of bad faith or vexatious litigation;

- Bar Plaintiff from further access to the Court without even addressing the factual misapprehension that tainted dismissal.

This is not litigation. This is a strategic suppression attempt—and one that would set a dangerous precedent if accepted.

**A. The Relief Sought is Itself Frivolous**

- No pre-filing injunction is warranted where the underlying motion is procedurally proper, grounded in uncontested evidence, and seeks to correct an acknowledged judicial oversight.

- No Rule 11 sanctions can be granted where the requesting party failed to serve a separate motion, failed to observe the 21-day safe harbor, and relied on no declarations or sworn denials of the underlying facts.

- Their reliance on tone, invective, and procedural overreach instead of factual rebuttal reflects a defense team that knows it is exposed.

**B. The Aggression Underscores Their Own Procedural Misconduct**

Defendants' aggressive posture is not grounded in legal strength. It is a projection of vulnerability:

- They know the Court failed to rune on an emergency motion.

- They know their filings occurred after "Terminated" NEF tags.

- They know the conflict was unwaivable.

- And they know they've offered no clean way to cure it.

Their scorched-earth tactics confirm Plaintiff's core assertion: they would rather threaten and intimidate than explain.

This Court should not reward such conduct with procedural shelter. Rather, it should view their behavior for what it is: a tacit admission that Plaintiff is correct, that their filings cannot withstand scrutiny, and that their litigation posture is no longer tenable under basic ethical standards.


## XIII. George Breen, Self-Styled Ethics Expert, Now Claims Conflicts Are Irrelevant

George Breen—a man who parades himself as an ethics expert, lectures on professional responsibility, and enjoys the prestige of being a law firm partner who claims to train others in right conduct—has now filed a brief that can only be described as ethically bankrupt.

Rather than deny that a conflict of interest existed, Breen shrugs it off. He tells this Court, in effect, that even if the conflict was real and unwaivable, it simply doesn't matter.

"Even assuming that a conflict of interest existed (and none did), Plaintiff's claimed injury… is not one that can be remedied by Rule 59(e)."

This is not a legal argument. It is a confession. A self-styled ethics authority now informs a federal court that conflicted representation involving multiple adverse parties, at a jurisdictional stage, is legally irrelevant. That's not advocacy. That's malpractice.

And it's worse than malpractice when coming from someone who has held himself out—repeatedly—as a guardian of ethical standards. Mr. Breen is not a junior associate who missed the nuance. He is a seasoned partner who teaches others about professional rules he now willfully violates, deflects, and trivializes when they apply to his own conduct.

Let's be clear:

- Jeffrey Robinson filed for multiple defendants while terminated.

- Elizabeth Harris was substituted in by sleight of hand.

- Breen himself allowed it, ratified it, and now attacks Plaintiff for pointing it out.

- And now, having been named in an amended complaint, Breen dares to appear in opposition—without declaration, without apology, and without shame.

The hypocrisy is staggering.

Imagine if a junior lawyer tried to defend a dual representation conflict in a CLE seminar by saying:

"Sure, it happened. So what? The case got dismissed—no harm done."

They'd be laughed out of the room. But here, Mr. Breen makes that very argument in federal court, expecting the Court to not only ignore the misconduct, but to reward it by denying reconsideration.

This isn't merely tone-deaf. It's strategic fraud on the Court, cloaked in arrogance. Breen hopes that his credentials, title, and firm affiliation will insulate him from accountability. He presumes that if he acts dismissive enough, the Court will dismiss the issue too. That's not law. That's institutional rot.

Plaintiff respectfully submits that the Court should see Mr. Breen's opposition for what it is: a professionally disgraceful attempt to retroactively nullify the ethical rules he built his name upon. That effort alone warrants sanctions. But at minimum, it warrants rejection.

Rule 59(e) exists to correct judgments rendered in misapprehension. This one was built on a silent, uncorrected, and now disavowed conflict. If Breen's new position is that such conflicts are unimportant, then he no longer belongs in any case involving a federal court's credibility.


## XIV. Defendants' Merits-Based Arguments Are Misplaced in a Jurisdictional Dismissal Context

Defendants devote significant portions of their oppositions to attacking the factual plausibility of Plaintiff's claims, asserting Rule 12(b)(6)-style arguments, and attempting to relitigate

allegations already dismissed without prejudice for lack of subject-matter jurisdiction. But because the Court's prior dismissal rested solely on Federal Rule of Civil Procedure 12(b)(1), not on the merits, the case never proceeded past the jurisdictional threshold. The legal effect of that is clear: none of the Court's prior findings carry preclusive or adjudicative weight on the merits, and any attempt to relitigate them here is procedurally improper.

It is well-settled that "[a] dismissal for lack of subject-matter jurisdiction does not operate as an adjudication on the merits and thus does not have claim preclusive effect." Bell v. Hood, 327 U.S. 678, 682 (1946); see also Ciralsky v. CIA, 355 F.3d 661, 666 (D.C. Cir. 2004) (affirming that dismissal for lack of jurisdiction leaves the door open to refile when defects are cured). Defendants' attempt to reargue the legal sufficiency of RICO allegations, or the plausibility of fraud claims, is procedurally irrelevant in this posture. Plaintiff's Rule 59(e) motion does not ask the Court to revisit the merits—they were never reached, but to correct manifest errors of law and fact underlying the jurisdictional ruling — including the Court's failure to account for the dual representation conflict, tainted filings, and the overlooked supplemental complaint that cured any jurisdictional defect.

More troubling still is that Defendants' oppositions demand sanctions, fees, and even a pre-filing injunction — remedies that are unavailable in the wake of a Rule 12(b)(1) dismissal. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States."). Sanctions cannot rest on substantive evaluations the Court lacked jurisdiction to make. To allow otherwise would turn the Court's limited jurisdiction into a bludgeon, enabling defense counsel to seek punitive remedies in a forum where no power exists to grant them.

This misframing is not accidental. By arguing the merits and ignoring the jurisdictional basis for dismissal, Defendants are attempting to obscure the real issue: the Court never ruled on the conflict, the emergency motion, or the supplemental complaint. Instead of engaging the procedural and ethical failures that infected the dismissal order, they now ask the Court to go further—impose sanctions, enjoin further filings, and shield them from future scrutiny—all while still outside the bounds of jurisdiction.

The Court should reject this rhetorical bait-and-switch. The issue before it is not whether Plaintiff stated a claim under RICO, or whether his fraud allegations are "implausible." The issue is whether the Court's dismissal order failed to address material, acknowledged filings, including evidence of a disqualifying conflict and a supplemental complaint that resolved jurisdictional gaps.

## XV. Defense Counsel's Opposition Is Tainted by Self-Dealing and Personal Stake in Suppressing the Amended Complaint

Plaintiff respectfully submits that the Court should give no weight to the opposition briefs submitted by attorneys **George Breen** and **Jeffrey Robinson**, each of whom is a named defendant in the proposed amended complaint and each of whom faces direct exposure from the relief requested in this Rule 59(e) motion.

It is an affront to basic principles of ethics and adversarial fairness that **the very counsel whose disqualification and sanction is being sought** would presume to file oppositions defending the procedural posture they manipulated and from which they personally benefitted. Robinson and Breen are not simply defending clients — they are **shielding themselves** from disqualification, bar referral, and significant monetary sanctions, all while continuing to represent parties under a veil of conflicted authority.

Neither Breen nor Robinson has submitted a declaration disavowing the misconduct alleged. Neither has withdrawn. Neither has moved to certify their authority. Neither has explained how they could ethically appear on behalf of clients in a matter where they are direct targets of factual allegations, named defendants in an amended complaint, and subjects of pending Rule 60(b)(3) and 28 U.S.C. § 1927 sanctions requests. That silence is not strategic — it is institutionally corrosive.

Their oppositions reflect precisely the type of conduct this motion seeks to remedy:

- Misuse of procedural leverage to suppress judicial scrutiny,

- Mischaracterization of jurisdictional defects to evade discovery, and

- Weaponization of the Court's silence to perpetuate tainted filings.

By embedding sanctions threats, fees demands, and a pre-filing injunction request into their briefs — all procedurally invalid and jurisdictionally incoherent — Breen and Robinson have not merely defended their clients. They have hijacked the opposition process to protect themselves, and in doing so, compounded the prejudice to Plaintiff and the contamination of the record.

The Court cannot allow counsel under such glaring conflict and personal exposure to frame the record or dictate the posture of this case. If anything, their participation reinforces the need for

the relief sought: to correct the record, to reassert procedural integrity, and to finally draw a line between advocacy and institutional self-preservation.

## XVI. Defendants' Improper Merits Focus Reflects an Attempt to Manipulate Forum Posture and Intimidate the Court

Defendants' overreach in seeking Rule 11 sanctions, pre-filing injunctions, and dispositive relief after a jurisdictional dismissal is not merely legally unsound — it reveals an intentional effort to manipulate the forum posture and pressure the Court into prematurely insulating them from further scrutiny.

These requests cannot be reconciled with the procedural stage of this case. The dismissal was expressly based on lack of subject-matter jurisdiction, not on the merits. Yet Defendants now presume a merits-based ruling that does not exist, demanding the Court impose extraordinary remedies it had no power to impose at the time of dismissal and cannot impose now without contradicting its own prior basis for ruling.

This maneuver signals desperation. Rather than engage the procedural reality — that Plaintiff filed an unrebutted sworn declaration, that NEF tags reflected dual representation, that an emergency disqualification motion was docketed and triggered partial withdrawal, and that a supplemental complaint was overlooked — Defendants seek to divert the Court's focus with improper, aggressive rhetoric and punitive demands.

Such tactics are not litigation strategy; they are an attempt to shield defense counsel from accountability while provoking the Court into issuing a final "with prejudice" order that preempts meaningful appellate review. This is forum manipulation in its clearest form: a party demanding the Court act as though it had merits jurisdiction when it expressly lacked it, and urging dismissal with finality in order to weaponize res judicata defenses down the line — all while never facing disqualification, sanctions, or judicial scrutiny for clear ethical breaches.

This Court must resist that pressure. It must instead recognize that Defendants' oppositions underscore Plaintiff's point: the procedural irregularities, unresolved conflicts, and overlooked filings infected the dismissal order, and must be corrected under Rule 59(e). Permitting Defendants to use jurisdictional dismissal as both a shield (from ethics consequences) and a sword (to seek sanctions and bar future filings) would set a dangerous precedent — one where misconduct is rewarded, and jurisdictional clarity is traded for tactical advantage.

## XVII. The Court May Not Retroactively Convert a Jurisdictional Dismissal Into a Merits-Based Bar to Refiling

The Court's March 2025 dismissal was unambiguously entered under Federal Rule of Civil Procedure 12(b)(1) — for lack of subject-matter jurisdiction. This procedural disposition necessarily means that the Court made no ruling on the merits and had no authority to do so. Under longstanding precedent, such a dismissal is without prejudice and does not preclude Plaintiff from refiling the claims in another forum or upon curing the identified jurisdictional defects.

It is black-letter law that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus does not have preclusive effect." Bell v. Hood, 327 U.S. 678, 682 (1946); CostCommand, LLC v. WH Adm'rs, Inc., 820 F.3d 19, 23 (D.C. Cir. 2016) ("Dismissal for lack of subject matter jurisdiction must be without prejudice."); see also Ciralsky v. CIA, 355 F.3d 661, 666 (D.C. Cir. 2004) (jurisdictional dismissal does not bar later suit where defects are cured).

Yet Defendants now ask the Court to do something both legally impermissible and constitutionally suspect: to treat its prior jurisdictional dismissal as a de facto ruling on the merits, use that to preclude future filings, and layer on sanctions for allegedly reasserting claims that were "already dismissed." That framing is not only incorrect — it is procedurally dishonest.

The Court cannot walk back its jurisdictional ruling and retroactively convert it into a merits decision for the convenience of a party seeking preclusion. Any attempt to do so would run directly afoul of Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998), which bars federal courts from issuing advisory opinions or making merits determinations when jurisdiction is lacking. As the Supreme Court has repeatedly emphasized: "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).

Even now, Defendants' oppositions continue to blur this line — asserting that Plaintiff is relitigating claims "already dismissed" while simultaneously invoking that same dismissal to deny Plaintiff any opportunity to amend or refile. That is not just inconsistent. It is improper. It invites the Court to render a decision it had no authority to make and then weaponize it to bar further proceedings.

Plaintiff has every right to preserve and reassert his claims in another forum or through a refiled complaint. Defendants' attempt to leverage a jurisdictional dismissal into a substantive preclusion is not supported by the law and should be rejected. The Court should not permit its own jurisdictional limitations to be used as a sword by parties who avoided scrutiny only by evading the merits in the first instance.


## XVIII. Defendants' Improper Sanctions and Fee Demands Warrant Sanctions Under § 1927 and Chambers v. NASCO

Defendants' opposition briefs go beyond zealous advocacy. By embedding procedurally invalid demands for Rule 11 sanctions, attorneys' fees, and a pre-filing injunction—without filing a motion, providing notice, or submitting any evidentiary basis—Defendants have committed a serious abuse of process warranting sanctions under 28 U.S.C. § 1927 and the Court's inherent powers under Chambers v. NASCO, Inc., 501 U.S. 32 (1991).

### A. Defendants' Procedural Violations Were Willful and Strategically Weaponized

Federal Rule of Civil Procedure 7(b)(1) requires that "[a] request for a court order must be made by motion." Rule 11(c)(2) further mandates that sanctions requests must:

- Be filed separately,

- Be served but not filed for 21 days,

- And allow the opposing party a safe harbor to withdraw.

Defendants followed none of these procedures. Instead, they buried sanctions and injunction demands in opposition briefs—denying Plaintiff the right to respond under the rules and signaling bad-faith litigation posture. No declarations were submitted. No evidence supported their demands. No procedural guardrails were respected.

These embedded threats, made outside the bounds of motion practice and contrary to controlling authority, violate due process and discredit the legitimacy of the opposition.

### B. Their Tactics Justify Sanctions Under § 1927 and the Court's Inherent Powers

Defendants' misconduct is not an isolated error; it is part of a broader pattern:

- Filing under terminated NEF status;

- Refusing to certify or clarify authority under Local Rule 83.6;

- Allowing conflicted representation to persist for months;

- Ignoring direct warnings and judicial notice of conflict;

- And now, retaliating with procedurally defective sanctions threats.

This conduct unreasonably and vexatiously multiplied the proceedings, meeting the standard of 28 U.S.C. § 1927. Where that statute may not reach the full scope of misconduct, the Court retains broad authority under Chambers v. NASCO to remedy abuse that undermines the judicial process.

In *Chambers*, the Supreme Court upheld a $996,644.65 sanctions award for bad-faith litigation conduct—an amount that adjusted for inflation to 2025 equals $2,268,427.62. That figure reflects the seriousness with which federal courts may respond when counsel weaponize procedure and compromise the integrity of the forum.

### C. Plaintiff Seeks Chambers-Level Sanctions to Deter Further Misconduct

Accordingly, Plaintiff respectfully requests that the Court impose a **monetary sanction in the amount of $2,268,427.62, jointly and severally against attorneys at Lewis Baach Kaufmann Middlemiss PLLC and Epstein Becker & Green**. This figure mirrors the Chambers award and reflects:

- The magnitude and persistence of the ethical breaches,

- The retaliatory use of procedurally invalid sanctions threats,

- The burden imposed on Plaintiff to unwind and rebut this misconduct,

- And the need for **deterrence across institutional lines** to protect the integrity of this Court.

This request is not based on statutory fee-shifting, nor barred by *Kay v. Ehrler*. It is a compensatory sanction, grounded in the Court's inherent powers and expressly contemplated in *Chambers*.

In the alternative, Plaintiff requests that the Court issue an order to show cause under Rule 11(c)(3), or grant leave for Plaintiff to file a formal motion for sanctions under § 1927 and its inherent supervisory authority.

## XIX. Request for Referral to the Court's Committee on Grievances

In addition to the imposition of compensatory sanctions, Plaintiff respectfully requests that the Court refer defense counsel to the Committee on Grievances for potential violation of the D.C. Rules of Professional Conduct, including:

- Rule 1.7(a) (concurrent conflict of interest),

- Rule 1.16(a)(1) (failure to withdraw after conflict),

- Rule 3.3(a)(1)–(3) (candor toward the tribunal),

- Rule 8.4(c) (conduct involving dishonesty, fraud, or misrepresentation).

The conduct at issue implicates not just adverse parties, but the integrity of this Court's proceedings:

- Jeffrey Robinson continued filing on behalf of Aram Simovonian after being marked as "Terminated" via NEF, and simultaneously appeared for David Kideckel under a non-waivable conflict;

- George Breen, and later Elizabeth Harris, were substituted in without disavowing or certifying prior filings, despite inheriting ethically compromised representations;

- Neither firm filed a certification, or formal withdrawal, despite being on notice of sanctions exposure since at least March 12, 2025;

- The defense continued to exploit the procedural record while ignoring the Court's own docket flags (NEF) and Plaintiff's repeated warnings.

The Committee on Grievances exists to review precisely this type of sustained ethical failure—particularly when it results in filings by counsel who were procedurally and ethically unqualified to appear. A referral does not pre-judge the outcome. It merely entrusts the appropriate body to investigate and assess what the docket now shows in full view: a pattern of appearances under unwaivable conflict, post-termination filings, and non-disclosure of status.

Referral is appropriate regardless of how the Court rules on Rule 59(e). Ethical accountability is independent of procedural posture. The D.C. Circuit has held that courts must be "vigilant stewards of their own processes" and are not precluded from initiating inquiry into potential ethical breaches even where litigation is otherwise resolved. *See* In re Stein, 197 F.3d 421 (D.C. Cir. 1999).

Plaintiff therefore requests that, in the alternative or in addition to the other relief sought, this Court refer Jeffrey Robinson, George Breen, and Elizabeth Harris to the Committee on Grievances for further investigation.

## XX. Plaintiff's Sanctions Request Is Procedurally Proper and Jurisdictionally Sound; Defendants' Threats Are Not

Defendants' opposition includes embedded demands for Rule 11 sanctions, attorneys' fees, and a pre-filing injunction. These requests are procedurally defective, jurisdictionally barred, and legally frivolous. In contrast, Plaintiff's request for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority is procedurally appropriate and jurisdictionally valid. The comparison speaks for itself.

### A. Plaintiff's Sanctions Request Is Based on Litigation Conduct, Not Merits

Plaintiff's request targets misconduct by defense counsel that occurred independent of the substance of the claims:

- Continued filings by Jeffrey Robinson after NEF "Terminated" status (Exhibits D–F),

- Concealment of dual representation and conflicts of interest (Exhibits E–G),

- Failure to respond to emergency disqualification filings (Exhibit 100),

- Ratification of threats and misrepresentations across U.S. and Canadian proceedings,

- Post-withdrawal appearances and unauthorized certifications (ECF 128-1 ¶¶6–9).

This conduct unreasonably multiplied proceedings and prejudiced Plaintiff. That is the precise conduct § 1927 was enacted to address. See *LaPrade v. Kidder Peabody*, 146 F.3d 899, 905–06 (D.C. Cir. 1998) (sanctions permissible for vexatious conduct even absent ultimate success on

the merits); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (inherent powers survive jurisdictional dismissal).

**B. Defendants' Sanctions and Fee Requests Are Procedurally and Jurisdictionally Defective**

By contrast, Defendants' sanctions threats are:

- Procedurally improper: they are embedded in opposition briefs rather than raised by separate motion with notice, service, and a certificate of compliance under Fed. R. Civ. P. 11(c)(2);

- Unsupported: they are not accompanied by declarations, billing records, or affidavits as required by Local Civil Rule 54.2 for fee petitions; and

- Jurisdictionally barred: the Court dismissed this case for lack of subject matter jurisdiction under Rule 12(b)(1), meaning it cannot impose sanctions or bar orders based on the supposed frivolity of claims it had no power to adjudicate.

See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (no merits rulings absent jurisdiction); *Montgomery v. Comey*, 752 F. App'x 3, 5 (D.C. Cir. 2019) (district court erred by addressing merits-based issues post-dismissal); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216–17 (10th Cir. 2006) (dismissals for lack of jurisdiction must be without prejudice and cannot support merits-based sanctions).

Simply put, a party cannot ask a court to sanction a pro se plaintiff for claim frivolity in a case the court held it lacked power to hear. To do so would be reversible error.

**C. Plaintiff's Sanctions Request Is Tailored to the Record and Properly Supported**

Plaintiff's request is grounded in the record and tethered to documented misconduct. As detailed in prior filings and exhibits, defense counsel's conduct has multiplied proceedings through:

- Concealment of termination,

- Sham substitutions,

- Contradictory filings across jurisdictions,

- Failure to withdraw after notice,

- Threats and retaliatory filings.

This conduct warrants sanctions under § 1927. In *Chambers*, the Supreme Court affirmed an award of $996,644.65 in litigation sanctions. Adjusted for inflation to 2025, that amount equals approximately $2.26 million—a proportionate measure of the burden Defendants have imposed on the administration of justice here.

## CONCLUSION

This motion is not an attempt to relitigate dismissed claims—the dismissal was solely on Subject-matter-jurisdiction, inherently *without prejudice*—nor is it grounded in speculation or conjecture. It arises from a **documented misapprehension of fact and law** that tainted the dismissal order and permitted **conflicted, unauthorized counsel to manipulate the record**, unchecked by the Court's usual procedural safeguards.

Plaintiff's Rule 59(e) motion was supported by sworn declarations, NEF records, email confirmations, judicial silence on an acknowledged emergency motion, and a consistent factual timeline. In response, Defendants offered no declarations, no certifications, and no factual rebuttal—only embedded, procedurally invalid sanctions threats and legal posturing designed to intimidate and deflect.

The Court's failure to rule on Plaintiff's March 12, 2025 emergency motion or Supplemental Complaint enabled counsel operating under an unwaivable conflict to continue filing on behalf of adverse parties. This procedural disengagement, while inadvertent, resulted in **manifest injustice** that now requires correction—not as a matter of blame, but as a matter of judicial integrity.

Plaintiff has continued to seek factual validation of his claims through parallel proceedings, including a pending motion in the Ontario Court of Appeal for production of the Google records underlying the alleged email service. That evidence will materially affect the foundation of both the Ontario judgment and the Court's evaluation of forum, fraud, and fairness.

Relief under Rule 59(e) is warranted. So too are sanctions under 28 U.S.C. § 1927 for defense counsel's prolonged ethical violations, unauthorized filings, and retaliatory misuse of sanctions threats without proper motion or evidentiary basis. At minimum, the Court should preserve jurisdiction over those issues.

To allow this record to stand uncorrected would reward silence, enable procedural gamesmanship, and undermine confidence in the integrity of these proceedings. Plaintiff respectfully asks this Court to restore balance, correct the record, and reject efforts to close the courthouse door based on misdirection and misconduct.

Dated: September 13, 2025

Respectfully submitted,

Brent Kideckel
Pro Se Plaintiff
PO Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637

# EXHIBIT "A"

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## District of Columbia

**Notice of Electronic Filing**

The following transaction was entered by Robinson, Jeffrey on 3/10/2025 at 9:32 PM and filed on 3/10/2025

| | |
|---|---|
| **Case Name:** | KIDECKEL v. FOREIGN NATION OF CANADA et al |
| **Case Number:** | 1:24-cv-02907-CJN |
| **Filer:** | DAVID KIDECKEL |
| | ARAM SIMOVONIAN |
| **Document Number:** | 48 |

**Docket Text:**
MOTION to Dismiss by DAVID KIDECKEL, ARAM SIMOVONIAN. (Attachments: # (1) Memorandum in Support Memorandum of Points and Authorities in Support of Aram Simovonian's Motion to Dismiss, # (2) Exhibit Aram Simovonian's Motion to Dismiss, # (3) Exhibit Canadian Case Law)(Robinson, Jeffrey)

**1:24-cv-02907-CJN Notice has been electronically mailed to:**

BRENT KIDECKEL      Brentkideckel@gmail.com

Christopher D. Barraza      cbarraza@phillipslytle.com, smatheny@phillipslytle.com

Jeffrey D. Robinson      jeffrey.robinson@lbkmlaw.com, Annika.Conrad@lbkmlaw.com, anthony.munroe@lbkmlaw.com, Elizabeth.Velez@LBKMLAW.com

**"EXHIBIT B"**