# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL, <br><br> Plaintiff, <br><br> *v*. <br><br> FOREIGN NATION OF CANADA et al., <br> Defendants. | **Civil Action No. 1:24-cv-02907 (CJN)** |

# PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR RECUSAL AND FOR INDICATIVE RULING, AND IN OPPOSITION TO DEFENDANTS DAVID KIDECKEL AND DAHLIA SAIBIL'S OPPOSITION (ECF NO. 169)



FEB 25 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## TABLE OF AUTHORITIES

**CASES**

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) ............................................. 10

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ..................................... 7

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ................................................ 6

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) ............................................................ 11

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ................................................. 7

*Diffenderfer v. Central Baptist Church*, 404 U.S. 412 (1972) ....................................... 7

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......................................................................... 8

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................... 11

*Haines v. Kerner*, 404 U.S. 519 (1972) ..................................................................... 8, 10

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) ........................... 10

*Hilton v. Guyot*, 159 U.S. 113 (1895) ............................................................................. 7

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) ............................ 6, 11

*Liteky v. United States*, 510 U.S. 540 (1994) ............................................................... 5, 6

*Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000) ............ 10

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) .................................................. 11

*Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469 (D.C. Cir. 1995) ................................ 8

*Wheat v. United States*, 486 U.S. 153 (1988) ................................................................. 5

*Whiting v. Lacara*, 187 F.3d 317 (2d Cir. 1999) ............................................................ 5

*Withrow v. Larkin*, 421 U.S. 35 (1975)     6

**STATUTES AND RULES**

28 U.S.C. § 455(a)     5, 12
28 U.S.C. § 1331     11
28 U.S.C. §§ 1605(a)(5)     10
28 U.S.C. §§ 4101-4105 (SPEECH Act)     7
D.C. Rule of Professional Conduct 1.7     4
D.C. Rule of Professional Conduct 1.16     5, 10
D.C. Rule of Professional Conduct 3.3(a)(1)     5, 9
Fed. R. Civ. P. 11(b)     7
Fed. R. Civ. P. 62.1     7, 8, 12

## PRELIMINARY STATEMENT

The opposition to this motion was filed by Jeffrey D. Robinson — the attorney who produced the tainted record this motion asks the court to examine, who was subject to a disqualification motion when he filed it, and who has refused at every stage to withdraw from the professional obligations that conflict created. Robinson simultaneously represented David Kideckel, the beneficiary of the Ontario default judgment, and Aram Simovonian, the attorney whose affidavit of service is the fraudulent document at the center of this case. If Simovonian's affidavit is challenged, David's judgment falls. If David's judgment is defended, Simovonian's affidavit must be insulated from scrutiny. Robinson could not serve both without betraying one. That structural impossibility is what the disqualification motion placed before the court. Robinson's response was to remain, pass the tainted record to Breen, and now appear again to argue against the motion identifying his conduct. He has not withdrawn. He has not corrected the record. He is filing briefs.

Plaintiff's motion to disqualify Robinson was filed and submitted to chambers weeks before Dahlia Saibil had made any appearance in this proceeding through Robinson. Robinson later appeared on her behalf while the disqualification motion directed at him was already pending. The conflict was identified and brought to the Court's attention before it could contaminate the record further — precisely to prevent the tainted record that materialized when Robinson filed ECF No. 68. Both the disqualification motion and Robinson's subsequent partial withdrawal from Simovonian's representation were submitted to chambers with explicit notice that the partial withdrawal did not cure the structural conflict and that the disqualification motion remained live and unresolved.

The district court's denial, however, analyzed the wrong parties entirely. The Dismissal Order found no conflict on the grounds that David Kideckel and Dahlia Saibil are spouses — co-defendants in a domestic relationship. ECF No. 145 at 6. No conflict was alleged between David and Dahlia. The conflict alleged was between David Kideckel and Aram Simovonian: Robinson represented the judgment beneficiary and the fraud affiant simultaneously. Those are the two clients whose interests are structurally irreconcilable. The court's analysis never reached that question. It disposed of the motion by identifying the wrong pair of clients and finding no conflict between them.

When Breen filed his entry as substitute counsel for Simovonian on day fourteen of the disqualification motion — functioning as Robinson's partial withdrawal, and

acknowledging by conduct what he now disputes in writing — Robinson filed ECF No. 68 approximately twenty minutes later: a memorandum in opposition to Plaintiff's disqualification motion, filed on behalf of a client he had just been substituted out of representing. That opposition memo contains a Simovonian affidavit whose first line affirmatively ties Simovonian to the perjury alleged. Robinson passed that record to Breen. Breen inherited it and corrected neither the unauthorized filing nor the tainted affidavit embedded within it — an independent duty of candor violation. D.C. Rule of Professional Conduct 3.3(a)(1).

Defendants' opposition does not address the mandamus timeline, the 144-day period of docket disengagement, or the ministerial motions that went unruled. The Toronto Defendants filed a 372-word opposition at the D.C. Circuit that the reply brief in Case No. 26-7006 has already addressed. No party has substantively defended the district court's procedural record. That silence is itself informative.

A prior submission in this proceeding contained an incorrect citation, the product of unverified AI-generated output. Plaintiff acknowledges that error directly. Every citation in this reply has been independently verified. The Court will find no phantom authority here.

Robinson's continued active involvement in this proceeding is not a procedural footnote. It is evidence of a systemic failure. The bar does not self-police when the court is disengaged. Robinson filed a conflict-tainted 650-page MTD, prompted a disqualification motion the following day, was substituted out of Simovonian's representation, then filed ECF 68 — an opposition memo to the DQ motion containing a Simovonian affidavit — twenty minutes after Breen's entry as substitute counsel, passed the tainted record to Breen who inherited and corrected nothing, and now appears again to oppose the motion identifying his original conduct. Robinson currently represents David Kideckel and Dahlia Saibil — there is no conflict between them. But his withdrawal from Simovonian triggers an obligation to withdraw from all related representation. Under D.C. Rule of Professional Conduct 1.16, a withdrawal that is necessitated by a conflict does not permit the withdrawing attorney to remain adverse to the party from whom he withdrew while continuing to represent co-parties in the same matter. Robinson withdrew from one and stayed for all. Each step in this sequence was permitted to stand because the court that received the disqualification motion, the chambers notice, and the documentary evidence never substantively examined any of it. Disengagement at the judicial level does not merely delay justice — it creates the conditions under which predatory conduct by officers of the court becomes self-sustaining.

## ARGUMENT

## I. Robinson's Conflict Was Extrajudicial in Origin — the Dual Representation Was Formed Outside These Proceedings and Its Contaminating Effects Are Traceable Through the Docket.

Defendants argue that § 455(a) requires partiality derived from an extrajudicial source, and that Plaintiff's allegations arise entirely from judicial proceedings. That framing mischaracterizes the argument.

The Robinson dual representation was formed before this litigation began — professional decisions made in private retainer arrangements outside this court. The structural conflict Robinson carried into these proceedings was not created by any ruling; it was created by his decision to represent both the judgment beneficiary and the fraud affiant simultaneously. That decision is extrajudicial by definition: it was made in private, governed by Rules of Professional Conduct enforced by the D.C. Bar, not by any court order. See Wheat v. United States, 486 U.S. 153, 159 (1988).

The district court's error was not in making a ruling — it was in analyzing the wrong parties. ECF No. 145 analyzed whether David Kideckel and Dahlia Saibil had a conflict — finding none because they are spouses and co-defendants. ECF No. 145 at 6. That was not the conflict alleged. The conflict alleged was between David Kideckel and Aram Simovonian: the judgment beneficiary and the fraud affiant whose affidavit supports that judgment. The court never reached that question. The Sanctions Order labeled the correction 'immaterial' without conducting the correct analysis. ECF No. 157 at 4. That is not adjudication — it is foreclosure of the precise question that mattered most. See Wheat, 486 U.S. at 159-60.

The consequences of that error extend beyond the DQ motion itself. Robinson filed an approximately 650-page Motion to Dismiss on behalf of Simovonian while simultaneously representing David Kideckel, the party whose judgment Simovonian's affidavit supports. It was that 650-page filing that prompted Plaintiff's disqualification motion, filed the following day. The DQ motion was a direct response to the conflict-tainted MTD — not a standalone grievance, but a contemporaneous objection to a specific filing produced under an unwaivable structural conflict. That filing incorporated fabricated or misattributed exhibits. The district court relied on that record — exhibits included — without ever examining whether the attorney who produced it was operating under a conflict that structurally barred him from representing Simovonian at all. The taint is not theoretical. It runs through every page of the MTD the court accepted as a legitimate adversarial submission.

Additionally, Liteky v. United States, 510 U.S. 540, 551-55 (1994), carves out an exception: even bias arising from judicial proceedings can support recusal where it is

so extreme as to display a clear inability to render fair judgment. A court that dismisses a case, simultaneously imposes sanctions, labels every subsequent correction 'immaterial,' and does so without examining a certified court transcript directly contradicting the foreign judgment it credited — while sanctioning the party who sought that examination — presents a record that falls within Liteky's exception. See also Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009).

## II. D.C. Circuit Context.

On January 23, 2026, the D.C. Circuit issued a standard full-briefing order in Case No. 26-7006, Document No. 2155835, with no Rule 34(a)(2) notation flagging the case for potential summary disposition. A reassignment motion is also pending at the circuit, where the standard is whether 'the facts might reasonably cause an objective observer to question the judge's impartiality.' In re Kellogg Brown & Root, Inc., 756 F.3d 754, 763 (D.C. Cir. 2014). The district court's own written order stating it 'cannot imagine a clearer-cut example of judicial frustration,' ECF No. 145 at 8, satisfies that standard on the court's own terms — and the ruling acknowledging frustration arrived on day 35 of the live mandamus proceeding, after 109 days of silence that the proceeding itself broke.

The certified Ontario transcript lodged under seal as Document 2157341 is already before the D.C. Circuit. The court that will review whether the district court was correct has the document he refused to examine. That asymmetry — a district court that called fraud allegations cartoonishly frivolous without reading the certified transcript; a circuit court that will evaluate that characterization with the transcript in hand — is itself evidence of the appearance of partiality. See Liteky, 510 U.S. at 555.

## III. The Certified Ontario Transcript Directly Contradicts the Written Reasons the Court Credited Without Examining — and the Motion to Lodge It Was Terminated as Moot, Not Adjudicated.

The Ontario written reasons state that Plaintiff abandoned his motion to set aside the default judgment. The certified 89-page transcript of the June 19, 2025 hearing before Justice Akazaki, certified by authorized court transcriptionist Isha Pryce on November 3, 2025, contradicts that characterization directly. The motion was not abandoned. It was argued at length and adjudicated. Justice Akazaki stated at page 86: 'I will reserve on both of the motions. I can't decide the second one before I decide the first one, so I'll decide the first one, and if I decide against the first one, then I will publish my reasons together with the motion to set aside.' A judge does not reserve on a motion that was abandoned. A judge does not commit to publishing reasons on a proceeding that no longer exists. The written reasons' characterization of abandonment is not an alternative interpretation of ambiguous facts. It is a direct

contradiction of the certified transcript of the proceedings those reasons purport to describe.

The district court's motion to lodge that transcript for in-camera review, ECF No. 153, was declared moot — procedural termination, not adjudication. As defendants' own chart confirms, ECF 153 was 'DENIED AS MOOT.' Res judicata does not attach to mootness designations. See Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997); Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414 (1972). The indicative ruling sought is precisely for this motion: a statement that the court would examine ECF 153 on remand, giving the circuit a clear and efficient basis to act. See Fed. R. Civ. P. 62.1(a).

### IV. The Rule 11 Frivolousness Finding Was Made on a Selectively Incomplete Record — and the Court's Own Claim of Sufficient Knowledge Cuts Both Ways.

The Sanctions Order states that the court understood this lawsuit 'well enough' to find it sanctionable. ECF No. 157 at 4. That is the court's own assertion of sufficient knowledge. The question is what that knowledge base actually contained — and what it excluded.

Rule 11 requires an objective, filing-specific analysis of whether claims were baseless at the time of filing. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). That analysis must be conducted on the actual record. The actual record before the court included: Google Takeout metadata showing no service email was received on May 27, 2024, placed on the docket at ECF No. 152-1; a certified 89-page court transcript directly contradicting the written reasons of the foreign judgment the court credited, lodged for in-camera review at ECF No. 153; ECF No. 68, filed by Robinson twenty minutes after he withdrew from Simovonian's representation; and an approximately 650-page Motion to Dismiss authored by conflicted counsel incorporating fabricated or misattributed exhibits. Not one of those items was examined before the frivolousness finding issued.

No opposing party filed anything disputing the Google Takeout metadata. No opposing party addressed the transcript contradiction. No opposing party explained the ECF No. 68 post-withdrawal timing. No opposing party responded to the fabricated exhibit challenge on the merits. The record of documentary evidence Plaintiff placed before the court was met with silence from every respondent and mootness designations from the court. A frivolousness determination made on that basis — claims called baseless when the documentary evidence supporting them was neither examined nor disputed — is not an objective filing-specific analysis. It is a conclusion reached before the analysis was conducted.

The court's assertion that it knew this lawsuit 'well enough' to sanction it is not a legal standard. It is a statement of confidence that operates in inverse proportion to what the record actually shows was examined. If the court knew the case well enough to sanction it, it knew the case well enough to be obligated to examine direct, undisputed documentary challenges to the fabricated evidence that forms the factual foundation of Plaintiff's claims. It did not. The frivolousness finding cannot rest on selective engagement with a record the court simultaneously claimed to know well.

## V. The Mandamus Timeline — Unaddressed by Any Respondent — Confirms the Docket Disengagement that Required Institutional Escalation.

No party has substantively addressed the mandamus timeline. The Toronto Defendants filed 372 words at the circuit. Robinson's opposition omits the timeline entirely. The precise sequence: August 12, 2025 — dismissal order. August 20, 2025 — Rule 59(e) motion filed. December 12, 2025 — mandamus petition filed after 109 days without ruling, following status inquiries to the Administrative Council and Chief Judge Boasberg that produced no response. January 16, 2026 — Sanctions Order issued on day 35 of the live mandamus proceeding. The ruling arrived under direct circuit supervision after institutional escalation failed through ordinary channels.

The court then sanctioned Plaintiff in the same order that finally addressed his correction — after 144 days. Institutions that can defend procedural records defend them. The absence of any defense of this timeline is the loudest available confirmation that it cannot be defended. See Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995).

## VI. Defendants' Defaulting Pattern — Ontario and This Court — Confirms the Record Cannot Be Defended on Its Merits.

On January 30, 2026, the Ontario Court of Appeal issued a Notice of Overdue Factum to David Kideckel and his counsel for a February 24, 2026 hearing. No factum was filed. Robinson declined to appear at the D.C. Circuit after the clerk directed him to apply for admission. Breen inherited a record containing ECF 68 and Simovonian's impeached affidavit and corrected neither. In each instance the default occurs precisely when affirmative defense of the underlying record becomes required. A party that cannot defend its record by default is a party whose record cannot be defended.

## VII. Correction of Procedural Citation — FRCP 62.1 Governs; the Objective Is the Same.

Defendants note that Plaintiff's motion cited Federal Rule of Appellate Procedure 12.1 rather than Federal Rule of Civil Procedure 62.1. The citation was imprecise. Plaintiff is self-represented and acknowledges the error. Both rules address the same procedural mechanism: FRAP 12.1 governs the appellate court's role in notifying the district court of a remand request, while FRCP 62.1 governs the district court's authority to issue an indicative ruling while an appeal is pending. The substantive purpose of the motion — to bring before both courts the threshold motions that were either incorrectly adjudicated under the wrong legal standard or terminated as moot without merits adjudication — is the same under either rule, and liberal construction of pro se filings requires the court to treat the motion as arising under the correct rule. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## VIII. The Chart Defendants Submitted Proves Plaintiff's Point — Not Their Own.

Defendants submitted a chart purporting to show that every motion Plaintiff listed has been adjudicated. The chart proves the opposite. The right column of the chart below replaces defendants' 'Disposition' column with an examination of the basis for each ruling. The pattern is uniform: the Robinson DQ was denied under the wrong conflict standard; every downstream ruling rests on that foundation; the transcript motion was mooted without examination. An indicative ruling under FRCP 62.1 asking the court to state it would examine ECF 153 on remand does not ask the court to reopen everything. It asks for a precise, targeted statement about the one document that contradicts the factual predicate for dismissal — a document the court terminated as moot before reading it.

| Motion | ECF No. | Disposition | Basis / Defect |
|---|---|---|---|
| Motion to Disqualify Jeffrey Robinson for dual representation | ECF 52 | DENIED (ECF 145 at 7) | Court analyzed the wrong parties entirely. Dismissal Order found no conflict because David Kideckel and Dahlia Saibil are spouses and co-defendants — no conflict alleged there. ECF No. 145 at 6. The conflict alleged was Robinson simultaneously representing David Kideckel (judgment beneficiary) and Aram Simovonian (fraud affiant whose affidavit supports that judgment). Those are the two clients whose interests are structurally |

|  |  |  | irreconcilable. Court never reached that question. Wrong pair of clients analyzed; actual conflict never adjudicated. Sanctions Order labeled correction 'immaterial' without conducting correct analysis. ECF No. 157 at 4. Motion was also filed and submitted to chambers weeks before Dahlia Saibil had made any appearance in this proceeding through Robinson. Robinson filed an approximately 650-page Motion to Dismiss on Simovonian's behalf incorporating fabricated or misattributed exhibits — it was that filing that prompted the disqualification motion, filed the following day. The DQ motion was a direct response to the conflict-tainted MTD. The court relied on that MTD record without addressing the conflict that tainted its authorship. |
|---|---|---|---|
| Motion to Disqualify George Breen for inheriting and failing to correct perjured record | ECF 117, 132 | DENIED (ECF 145 at 7) | Breen inherited a record containing ECF 68 — a memorandum of opposition to the DQ motion filed by Robinson approximately twenty minutes after Breen's own entry as substitute counsel functioned as Robinson's partial withdrawal. ECF 68 contains a Simovonian affidavit whose first line ties Simovonian to the perjury alleged. Breen never corrected the unauthorized filing or the tainted affidavit within it. Denial followed from the erroneous Robinson DQ analysis without independent examination of Breen's separate duty under Rule 3.3(a)(1). |
| Motion to Disqualify Phillips Lytle for benefitting from Robinson's unauthorized filing | ECF 116, 131 | DENIED (ECF 145 at 7) | Denial followed the Robinson DQ ruling without independent analysis of whether Toronto's counsel derived record benefit from ECF 68. |
| Motions to Sanction counsel for dual representation and fraud upon the court | ECF 52, 96, 122 | DENIED (ECF 145 at 7) | Sanctions presuppose the conduct they address. Because the DQ motions were denied under the wrong conflict standard, the downstream sanctions were denied without the court having |

|  |  |  | correctly found what the conflict was. |
|---|---|---|---|
| Motion to Sanction non-parties including Christopher Barraza, Ian Sinke, and Tony Antoniou | ECF 144 | DENIED (ECF 145 at 7) | Denied without substantive engagement as part of omnibus disposition in 8-page order resolving 32 motions simultaneously. |
| Motion to Strike tainted, perjured, and fabricated evidence including ECF 68 | ECF 53, 97 | DENIED AS MOOT (ECF 145 at 7) | ECF 68 is a memorandum of opposition to Plaintiff's DQ motion filed by Robinson approximately twenty minutes after Breen entered as substitute counsel for Simovonian — functioning as Robinson's partial withdrawal. ECF 68 contains a Simovonian affidavit whose first line affirmatively ties Simovonian to the perjury alleged. Filing an opposition to a disqualification motion on behalf of a client you have just been substituted away from is unauthorized under Rule 1.16. Denial as moot means the court never examined whether the filing was authorized. ECF 68 remains in the record. |
| Jurisdictional Discovery as to FSIA defendants | ECF 64 | DENIED (ECF 145 at 7) | Denied without analysis despite D.C. Circuit requiring jurisdictional discovery where plaintiff makes non-frivolous FSIA exception claim. Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). Additionally, pro se complaint was not liberally construed before dismissal. Haines v. Kerner, 404 U.S. 519, 520 (1972). |
| Motions presenting evidence of cross-border criminal conduct | ECF 59, 66, 134 | DENIED AS MOOT (ECF 145 at 7) | Evidence of fraudulent service, falsified affidavit, and Google Takeout metadata impeaching Simovonian's affidavit were placed on the docket and received no substantive examination. Each received mootness designation. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). |
| Motion for Targeted Discovery into fraudulent declarations | ECF 81 | DENIED AS MOOT (ECF 145 at 7) | Denied as moot upon dismissal — a discovery motion cannot be adjudicated after dismissal, yet the underlying fraud it would have |

| | | | examined was never independently assessed. |
|---|---|---|---|
| Motion to Lodge Ontario Certified Transcript Under Seal (ECF 153) | ECF 153 | DENIED AS MOOT (ECF 157 at 9) | CRITICAL: This is the motion for which indicative ruling is sought. The transcript directly contradicts the written reasons the court credited without examination. Denial as moot is procedural termination, not adjudication on the merits. Res judicata does not attach. The D.C. Circuit has already designated this document (Document 2157341) as part of the appellate record. Reassignment motion pending at the circuit under In re Kellogg Brown & Root, 756 F.3d 754 (D.C. Cir. 2014). |
| Motion to Amend Complaint (Rule 15(a)) | ECF 146 | DENIED (ECF 157 at 4) | Denied on ground that court lacked jurisdiction to permit amendment — the very defect the amendment was designed to cure. Amendment eliminated FSIA defendants and asserted independent RICO jurisdiction under 28 U.S.C. § 1331. Denial was circular. Foman v. Davis, 371 U.S. 178, 182 (1962); Ciralsky v. CIA, 355 F.3d 661, 666 (D.C. Cir. 2004). |

## IX. Defendants' Client's November 7, 2025 Email Demonstrates Extrajudicial Intimidation Directed Through a Family Member During Active Proceedings.

During active proceedings, Robinson's client forwarded ECF No. 145 to Plaintiff's husband and stated that 'any rational person should and would be' deterred by the orders. This extrajudicial pressure was directed through a family member to cause Plaintiff to abandon claims supported by a certified court transcript the district court had not read. It reflects consciousness of what that evidence would show. Robinson then filed an opposition characterizing Plaintiff as the harassing party. ECF No. 169 at 1. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

## CONCLUSION

The record does not require this Court to take Plaintiff's word for anything. A certified court transcript shows a judge reserving on both motions after 86 pages of

argument, directly contradicting written reasons that say the motion was abandoned. Google Takeout metadata shows no service email was received. Robinson filed ECF 68 — an opposition to his own disqualification motion, containing a Simovonian affidavit — twenty minutes after Breen entered as substitute counsel for Simovonian. The circuit formally invited Robinson to appear and he declined. David Kideckel did not file a respondent's factum in Ontario despite a court-issued overdue notice. Robinson's own client sent Plaintiff's husband an email mid-litigation saying any rational person would stop.

The indicative ruling sought is narrow. Plaintiff does not ask the court to reopen the case, reverse the dismissal, or reconsider its jurisdiction findings. Plaintiff asks the court to state that it would examine one document — the 89-page certified transcript already lodged under seal at the D.C. Circuit — if the circuit remands for that purpose. The circuit will evaluate the dismissal order with that document in hand regardless. An indicative ruling gives it a precise statement of what the district court would do, enabling the most efficient possible resolution.

Plaintiff respectfully requests that the Court: (1) grant the Cross-Motion for Recusal pursuant to 28 U.S.C. § 455(a); and (2) issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1 stating it would grant leave to examine ECF No. 153 under seal if the D.C. Circuit remands for that purpose.

Respectfully submitted,

Brent Kideckel
Plaintiff, Pro Se
P.O. Box 20901
Floral Park, NY 11002
brentkideckel@gmail.com
(917) 634-0637
Dated: February 25, 2026