IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENT KIDECKEL,<br><br>Plaintiff,<br><br>v.<br><br>FOREIGN NATION OF CANADA, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-02907-CJN |

**DEFENDANT ARAM SIMOVONIAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY ENFORCEMENT OF THE AUGUST 25, 2026 JUDGMENT PENDING APPEAL**

## TABLE OF CONTENTS

ARGUMENT .......... 1

I. There Is No Basis to Stay Enforcement of the Court's Order. .......... 1

A. Plaintiff Has Not Demonstrated He Is Likely to Succeed on the Merits. .......... 2

B. Plaintiff Has Not Demonstrated He Will Be Irreparably Injured Absent a Stay. .......... 8

C. Issuance of a Stay Would Substantially Injure Defendant. .......... 8

D. The Public Interest Does Not Support a Stay. .......... 9

II. There Is No Basis to Waive the Supersedeas Bond. .......... 10

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................3, 5

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*,
904 F.3d 1014 (D.C. Cir. 2018)....................2

*Cobell v. Norton*,
211 F.R.D. 7 (D.D.C. 2002)....................4

*Doraleh Container Terminal SA v. Republic of Djibouti*,
No. 20-CV-2571 (BAH), 2023 WL 12004450 (D.D.C. Apr. 24, 2023)....................11

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980)....................10

*Geller v. Randi*,
40 F.3d 1300 (D.C. Cir. 1994)....................3

*Gomez v. Aragon*,
705 F. Supp. 2d 21 (D.D.C. 2010)....................3

*Hilton v. Braunskill*,
481 U.S. 770 (1987)....................2

*Hollis-Arrington v. Fannie Mae, et al*.,
No. 04-5068, 2004 WL 2595891 (D.C. Cir. Nov. 15, 2004)....................2

*Hutchinson v. Pfeil*,
208 F.3d 1180 (10th Cir. 2000)....................7

*John Akridge Co. v. Travelers Cos.*,
944 F. Supp. 33 (D.D.C. 1996), *aff'd,* 997 WL 411654 (D.C. Cir. June 30, 1997)....................3

*Kideckel v. Epstein Becker & Green, P.C., et al*.,
Index No. 159649/2026 (N.Y. Sup. Ct. 2026)....................6

*Kideckel v. Foreign Nation of Canada, et al*.,
No. 26-7172 (D.C. Cir. Aug. 28, 2026), Doc. No. 2190343....................1, 2

*Klayman v. Jud. Watch, Inc.*,
No. CV 06-670 (CKK), 2019 WL 4260380 (D.D.C. Sept. 9, 2019)....................10

*Lowery v. Armstrong World Industries, Inc.*,
1991 WL 126022 (D.D.C. 1991) ....................9

*Marlin v. Moody Nat. Bank, N.A.*,
533 F.3d 374 (5th Cir. 2008) ....................7

*McCreary v. Heath*,
No. 04-cv-00623, 2005 WL 975736 (D.D.C. Apr. 22, 2005)....................4

*Nken v. Holder*,
556 U.S. 418 (2009)....................2, 8

*Oak Grove Technologies, LLC v. United States*,
116 F.4th 1364 (Fed. Cir. 2024) ....................7

*Parsi v. Daioleslam*,
778 F.3d 116 (D.C. Cir. 2015)....................3, 5

*Shea v. Donohoe Const. Co. Inc.*,
795 F.2d 1071 (D.C. Cir. 1986)....................9

*Shepherd v. Am. Broadcasting Cos., Inc.*,
62 F.3d 1469 (D.C. Cir. 1995)....................3

*Taxpayers Watchdog, Inc. v. Stanley*,
819 F.2d 294 (D.C. Cir. 1987) (per curiam)....................2

*Thornton v. General Motors Corp.*,
136 F.3d 450 (5th Cir. 1998) ....................7

*Walker v. Washington*,
627 F.2d 541 (D.C. Cir. 1980)....................2

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)....................8

*Wisconsin Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985)....................8

**Other Authorities**

Fed. R. Civ. P. 11 ....................3, 4, 6, 7

Fed. R. Civ. P. 11(b) ....................3, 5, 6, 7

Fed. R. Civ. P. 11(b)(1)....................5

Fed. R. Civ. P. 11(b)(2)....................5

Fed. R. Civ. P. 11(c)(2) ........................................ 6

Fed. R. Civ. P. 11(c)(3) ........................................ 6

Fed. R. Civ. P. 11(c)(4) ........................................ 2

Fed. R. Civ. P. 62(b) ........................................ 10

Fed. R. App. P. 27 ........................................ 2

Defendant Aram Simovonian ("Defendant"), by counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Stay Enforcement of the August 25, 2026 Judgment Pending Appeal filed by Plaintiff Brent Kideckel ("Plaintiff") [Dkt. 185] ("Motion")[1] in accordance with the Court's September 3, 2026 Minute Order.[2] Plaintiff seeks to stay enforcement of the Court's August 25, 2026 Order finding that the attorneys' fees requested by the three groups of Defendants[3] were reasonable and ordering that Plaintiff pay attorneys' fees as follows: $89,915 to Defendant; $37,972.50 to the Toronto Defendants; and $138,530 to D. Kideckel and Ms. Saibil. *See* Dkt. 177. Plaintiff also seeks waiver of the supersedeas bond. Not only did Plaintiff fail to object to the reasonableness of the fees submitted by Defendant before the Court ordered Plaintiff to pay the fees (*see id*. at 4), there is no basis to grant any of the relief requested, and Plaintiff's Motion should be denied in its entirety.

## <u>ARGUMENT</u>

### I. There Is No Basis to Stay Enforcement of the Court's Order.

In deciding whether to grant the "extraordinary" remedy of a stay pending appeal, the court considers four factors:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

[1] This Motion is duplicative of the premature relief he also seeks from the United States Court of Appeals for the District of Columbia Circuit. *See* Appellant's Mot. for Summary Reversal, or in the Alt. for a Stay of Enf't Pending Appeal, with Expedited Consideration and Leave to File App. A Under Seal, *Kideckel v. Foreign Nation of Canada, et al*., No. 26-7172 (D.C. Cir. Aug. 28, 2026), Doc. No. 2190343 ("Plaintiff's Motion for Summary Reversal").

[2] Plaintiff's Motion was first made available on the public docket approximately two days ago, on September 8, 2026, which was the first time Defendants had access to it.

[3] The three groups of Defendants include: Defendant; the City of Toronto and David J.N. Wilson (separately "Toronto" and "Detective Wilson"; collectively the "Toronto Defendants"); and David Kideckel ("D. Kideckel") and Dahlia Saibil ("Ms. Saibil").

> will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken v. Holder*, 556 U.S. 418, 428, 434 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *see also Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (noting that "a stay pending appeal" constitutes "extraordinary relief"). Plaintiff has not and cannot demonstrate that any of these four factors support a stay, and his Motion should be denied.

**A. *Plaintiff Has Not Demonstrated He Is Likely to Succeed on the Merits.***

Plaintiff has not made any showing—let alone the strong showing required—that he is likely to succeed on the merits. This factor "requires more than a mere possibility that relief will be granted." *Nken*, 556 U.S. at 420. In support of his Motion, Plaintiff recycles arguments from his Motion for Summary Reversal (*see* n. 1, *supra*, at 1) and, without arguing that this Court erred, claims that the "serious question" of whether the District Court properly imposed monetary sanctions *sua sponte* pursuant to Federal Rule of Civil Procedure 11(c)(4) must be resolved before the August 25, 2026 Order can be enforced. *See* Motion at 2. Plaintiff's arguments, which are addressed and rebutted in Defendants' cross-motion seeking summary relief under Federal Rule of Appellate Procedure 27,[4] rest on the misconception that this Court's fee award was made only

---

[4] *See* Appellees' Cross-Mot. for Summary Affirmance and Combined Joint Response in Opposition to Appellants' Mot. for Summary Reversal, or in the Alt. for a Stay of Enf't Pending Appeal, with Expedited Consideration and Leave to File App. A Under Seal, *Kideckel v. Foreign Nation of Canada, et al*., No. 26-7172 (D.C. Cir. Sept. 8, 2026), Doc. No. 2191938 (hereinafter "Defendants' Cross-Motion for Summary Affirmance"). The basis for Defendants' Cross-Motion for Summary Affirmance is that "the merits of [the] case are so clear that expedited action is justified" and "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987) (per curiam) (citations omitted); *see also Walker v. Washington*, 627 F.2d 541, 542 (D.C. Cir. 1980); *Hollis-Arrington v. Fannie Mae, et al*., No. 04-5068, 2004 WL 2595891, at *1 (D.C. Cir. Nov. 15, 2004).

pursuant to Rule 11. Instead, these monetary sanctions were appropriately imposed in accordance with this Court's common law inherent authority to sanction vexatious conduct ***and*** with Rule 11. *See* Dkt. 157 at 5 (citations omitted) (noting both the Court's authority to impose "an 'appropriate sanction' on any party that violated Rule 11(b)" and its "inherent power" to sanction).

It is well established that the district courts' inherent power grants them the broad discretion "to 'protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, [and] awards of attorneys' fees…'" *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (quoting *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). "[S]uch sanctions may be imposed against pro se plaintiffs, [and] the district court is accorded wide discretion in determining whether sanctions are appropriate." *Gomez v. Aragon,* 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (citations and internal quotation marks omitted). This inherent power "is consistent with, and not displaced by…the specific procedures for imposing sanctions" set forth in other rules and statutes, including Rule 11. *John Akridge Co. v. Travelers Cos.*, 944 F. Supp. 33, 34 (D.D.C. 1996), *aff'd*, 997 WL 411654 (D.C. Cir. June 30, 1997) (citations omitted). Thus, a court "may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).

Here, this Court did not abuse its discretion by imposing monetary sanctions[5] against Plaintiff. *See Geller v. Randi*, 40 F.3d 1300, 1303 (D.C. Cir. 1994) (holding that abuse of discretion standard applies to review of a district court's imposition of Rule 11 sanctions); *Chambers v.*

---

[5] Although this Court also imposed injunctive sanctions and Plaintiff's pending appeal purports to include the portion of the Court's Order concerning these sanctions (*see* Dkt. 183 at 2), Plaintiff does not appear to seek a stay of this order, nor does he identify any portion of Rule 11 that would preclude *sua sponte* filing restrictions. Regardless, the Court's imposition of filing restrictions against Plaintiff was appropriate here.

*NASCO*, *Inc.*, 501 U.S. 32, 55 (1991) (same as to inherent power sanctions). After issuing a show-cause order to Plaintiff (*see* Dkt. 145 at 7-8), the Court appropriately concluded that Plaintiff had committed multiple Rule 11 violations over the course of the litigation.

*First*, the District Court correctly found that Plaintiff had "'flooded the judicial system with duplicative, unduly voluminous, and hyperbolic filings.'" Dkt. 157 at 5 (quoting *McCreary v. Heath,* No. 04-cv-00623, 2005 WL 975736, at *1 (D.D.C. Apr. 22, 2005)). Plaintiff's filings, which became increasingly far-fetched and erratic as the litigation progressed, accused the Ontario courts of "egregious due process violation" (Dkt. 135), accused multiple parties and non-parties of committing wire fraud (*see* Dkt. 137), and provided notice of his intent to seek per diem sanctions against Defendant and his counsel "for their refusal to certify or disavow tainted filings" (Dkt. 143), to name only a few examples. He also sought varying forms of procedurally inappropriate and factually unsupported relief, including a judicial declaration that Plaintiff was never served with the complaint in the case filed by D. Kideckel against Plaintiff in Ontario, Canada (the "D. Kideckel Ontario Action") (*see* Dkt. 59), entry of default against a party who was not in default (*see* Dkt. 103, 111), and emergency "protective scheduling relief" attempting to bar Defendants from relying on an order issued in the D. Kideckel Ontario Action (Dkt. 134). The Court appropriately characterized these filings as "cartoonishly frivolous[,]" "patently meritless[,]" and precisely "the kinds of 'baseless filings…not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings' that Rule 11 is designed to neutralize." Dkt. 145 at 1, 7 (quoting *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002)).

*Second*, the Court found that Plaintiff had misused generative artificial intelligence in his filings by citing to non-existent legal authority and purporting to directly quote language from case law that did not exist. *See* Dkt. 157 at 5 (quoting Dkt. 11 at 3 n. 4 [citing examples]). The Court

further found that even Plaintiff's response to the show-cause order misquoted a case. *See id.* (noting that quoted language did not exist).

*Third*, the District Court appropriately determined that Plaintiff's response to the Court's show-cause order, which directed him to "show cause as to why his patently meritless motions do not constitute vexatious harassment under Rule 11(b)" (Dkt. 145 at 1), was inadequate. *See* Dkt. 157 at 7. Instead of providing any legal or factual support for his numerous, frivolous assertions, Plaintiff merely cited "hornbook examples of FSIA exceptions" (*id.*) and pointed to irrelevant subsequent actions in the D. Kideckel Ontario Action. *Id*. at 7-8. Plaintiff also attempted to provide "context" around his numerous previous lawsuits and determinations that he is a vexatious litigant, but only addressed a handful of his prior cases. *Id.* at 7. Ironically, this attempt to repair his reputation was immediately followed by a statement of intent to re-file the same pleading as a new action if leave were denied. *See id*. at 8.

Further, although a district court need not "invoke the magic words 'bad faith'—or 'clear and convincing'" to appropriately impose attorneys' fees as a sanction pursuant to its inherent powers (*Parsi*, 778 F.3d at 132), the Court's findings that Plaintiff "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (*Chambers*, 501 U.S. at 45-46) were plainly established by clear and convincing evidence. In addition to the conduct detailed above, the Court found that:

- Plaintiff's "dozens of meritless motions in a matter of months demonstrate[d] that he 'ha[d] no regard for [the] judicial system or the drain on its resources caused by his actions'" (Dkt. 157 at 7) (citation omitted);

- Plaintiff's "countless motions and other filings have done little more than 'harass, cause unnecessary delay, [and] needlessly increase the cost of litigation,' and his legal contentions are seldom 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'" (*id*. at 7-8) (quoting Fed. R. Civ. P. 11(b)(1), (2));

- Plaintiff's "stated intention to revive his claims if the Court [did] not grant his motions by launching a new action against Defendants and other parties, based solely on their

involvement in defending their clients in this litigation, further evinces [Plaintiff's] bad faith" and "'would constitute harassment of the defendants and would amount to a waste of resources both for the defendants and for this Court'" (*id*. at 7) (citation omitted);[6]

- Declaring Plaintiff a vexatious litigant and imposing filing restrictions "is reasonable and constitutes an 'appropriate sanction' under Rule 11" (*id*. at 8);
- Plaintiff's "conduct has 'so multiplie[d] the proceedings…unreasonably and vexatiously…'" (*id*.); and
- Plaintiff "has harassed Defendants in this case with over 100 meritless and vexatious filings since this action began" (Dkt. 177 at 10).

Based on Plaintiff's conduct throughout the course of litigation, the Court concluded that it "cannot imagine a clearer-cut example of judicial frustration" (Dkt. 145 at 8) and appropriately imposed monetary sanctions.

In addition, Plaintiff's vague arguments that he should be granted a stay because Rule 11(c)(3) only permits *sua sponte* sanctions when the show-cause order specifically describes the sanctioned conduct and because the Court imposed a blanket award of all fees should be disregarded. As to the first argument, Plaintiff clearly received sufficient notice of the basis for the show-cause order. Not only did the Court's August 12, 2025 Order describe Plaintiff's "cartoonishly frivolous claims" in detail, the Court gave Plaintiff until September 5, 2025 (i.e., more than the 21 days to respond contemplated by Rule 11(c)(2)) to demonstrate why his conduct had not violated Rule 11(b). *Id.* at 7-8. Regarding the second argument, the Court correctly determined that "a blanket award" of attorneys' fees was appropriate because such an award is

---

[6] Plaintiff has now attempted to initiate a new lawsuit in the Supreme Court of the State of New York, County of New York against Defendants, their counsel, and other defendants based on the same alleged claims asserted here. *See Kideckel v. Epstein Becker & Green, P.C., et al.*, Index No. 159649/2026 (N.Y. Sup. Ct. 2026).

proper where, as "is the case here[,]" "'a plaintiff initiates a case in complete bad faith . . .'" Dkt. 177 at 4 (citations omitted). Thus, neither argument supports Plaintiff's Motion.

Finally, Plaintiff relies on three cases—*Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374 (5th Cir. 2008), *Hutchinson v. Pfeil*, 208 F.3d 1180 (10th Cir. 2000), and *Thornton v. General Motors Corp.*, 136 F.3d 450 (5th Cir. 1998)—none of which is binding authority and all of which are distinguishable. Not only has at least one court expressly rejected the limitations set forth in *Hutchinson* (*see Oak Grove Technologies, LLC v. United States*, 116 F.4th 1364, 1385 (Fed. Cir. 2024)), *Marlin* and *Hutchinson* concerned sanctions issued without adequate notice. Because the Court appropriately issued a show-cause order before imposing monetary sanctions here (*see* Dkt. 145 at 8), the due process concerns present in those cases are not present here. *See Marlin*, 533 F.3d at 378; *Hutchinson*, 208 F.3d at 1184, 1185.

At issue in *Thornton* was whether the party sanctioned pursuant to Rule 11 received appropriate notice of the specific conduct at issue before sanctions were imposed. *Thornton*, 136 F.3d at 451. *Thornton* concluded that the lower court's "lack of precision in the show cause order" did not provide sufficient notice of the conduct for which sanctions were ultimately imposed. *Id.* at 454. By contrast, the Court here explained in detail the specific conduct that led to its show-cause order before it imposed monetary sanctions. *See, e.g.*, Dkt. 145 at 1, 7-8 (ordering Plaintiff "to show cause as to why his patently meritless motions do not constitute vexatious harassment under Rule 11(b)" after noting that Plaintiff "filed 32 motions in less than a year" and "presented cartoonishly frivolous claims that have mired Defendants in pointless motions practice for nearly a year").

Accordingly, Plaintiff has not made the requisite showing that he is likely to succeed on the merits—nor can he do so—and his Motion must be denied.

### *B. Plaintiff Has Not Demonstrated He Will Be Irreparably Injured Absent a Stay.*

As to the second factor, Plaintiff has not established he will suffer any irreparable injury. Similar to the first factor, "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 420 (citing *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008)).

Plaintiff offers no argument or authority in support of this factor beyond a vague claim that "[a]bsent a stay, collection may proceed, and sums collected from a self-represented individual are unlikely to be recoverable if the judgment is vacated." Mot. at 5. Plaintiff's status as a self-represented litigant does nothing to tip the balance of equities in his favor. Not only is it the case that, in general, "economic loss does not, in and of itself, constitute irreparable harm" (*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)), Plaintiff has failed to demonstrate any potential injury to himself—irreparable or otherwise—that would result absent the stay.

### *C. Issuance of a Stay Would Substantially Injure Defendant.*

Regarding the third factor, far from injuring Plaintiff, a stay would substantially injure Defendant. As this Court has noted in its various orders, Plaintiff's "cartoonishly frivolous claims…have mired Defendants in pointless motions practice for nearly a year" (Dkt. 145 at 7), and his "countless motions and other filings have done little more than 'harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" (Dkt. 157 at 7). Indeed, the Court concluded that "[t]his case has been 'cartoonishly frivolous' from the beginning and seems to have been initiated and prosecuted with the primary intent of harassing the defendants." Dkt. 177 at 7 (citing Dkt. 145 at 7 and Dkt. 157 at 4-7). As a result of Plaintiff's conduct, Defendant was forced to incur significant legal fees responding to and defending against Plaintiff's more than "100 meritless and vexatious filings." *Id*. at 10. Although Defendant could have "request[ed] compensation for all his fees from the start of the litigation" in light of "the bad-faith nature of th[e] entire action[,]" the

Court determined that Defendant's claimed fees of $89,915.00—which were only a fraction of Defendant's total fees—were reasonable. *Id*. at 8.

Plaintiff has a demonstrated pattern of vexatious, harassing, and bad faith conduct, and a stay of enforcement would only permit Plaintiff to continue abusing the judicial system. Not only has Plaintiff been declared a vexatious litigant in multiple states (*see* Dkt. 177 at 1), even the Court's "closure of his case and the order to show cause as to why he should not be sanctioned" did not deter Plaintiff, who "followed up with still more frivolous filings." Dkt. 177 at 6 (citing Dkt. 157 at 5). As noted above, while seeking relief from the Court's Order in this case, Plaintiff has following through with his threat to initiate a new action against Defendant, his counsel, and others by pursuing his baseless claims in the State of New York, needlessly wasting more judicial and party resources. *See* n. 6, *supra*, at 6. The Court's Order imposing sanctions against Plaintiff provides Defendant with the only possible means to deter his relentless, frivolous, and vexatious litigation practices and to hold him accountable for his actions, and Plaintiff offers no valid grounds for delaying enforcement of the same.

***D. The Public Interest Does Not Support a Stay.***

Finally, for the same reasons discussed above, the public interest does not support Plaintiff's requested relief. In fact, the public interest favors deterrence of similar attempts to abuse the judicial process. *See Lowery v. Armstrong World Industries, Inc.*, 1991 WL 126022, at *4 (D.D.C. 1991) (quoting *Shea v. Donohoe Const. Co. Inc.*, 795 F.2d 1071, 1076 (D.C. Cir. 1986)) (explaining that litigation misconduct "has burdened the judicial process by prejudicing the public's 'interest in expeditious resolution of litigation'"). Accordingly, this factor does not support Plaintiff's request, and his Motion should be denied.

**II. There Is No Basis to Waive the Supersedeas Bond.**

Following entry of a judgment, "a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). As a general rule, a party seeking a stay pending appeal under Rule 62(b) should be required to post the full supersedeas bond, "such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980). However, only "[i]n unusual circumstances" and only "if they do not unduly endanger the judgment creditor's interest in ultimate recovery" should "the district court…order partially secured or unsecured stays." *Id*. at 761. In evaluating whether a stay should be granted without a supersedeas bond, the court considers three factors: "(1) the damage award amount, (2) the net worth of the moving party in relation to the damage award, and (3) the residency status of the moving party." *Klayman v. Jud. Watch, Inc.*, No. CV 06-670 (CKK), 2019 WL 4260380, at *1 (D.D.C. Sept. 9, 2019) (citing *Fed. Prescription Serv.*, 636 F.2d at 761). The party seeking relief from the general rule "has the burden to 'objectively demonstrate the reasons for such a departure.'" *Id.* (citations and internal quotations omitted). None of these factors support Plaintiff's vague request that the Court waive the supersedeas bond.

Despite never seeking *in forma pauperis* status in this litigation, Plaintiff now argues—without providing any authority either factual or legal to support his position—that the supersedeas bond should be waived because he is self-represented and without means to post the security. In fact, Plaintiff's argument, which only serves to demonstrate a "reasonable likelihood" that Plaintiff will be unable or unwilling "to satisfy the judgment in full upon ultimate disposition of the case," coupled with Plaintiff's status as a non-District of Columbia resident, support denial of his Motion. *See id*. at *2 (quoting *Fed. Prescription Serv.*, 636 F.2d at 760-61) (holding that similar facts "heavily weigh[] against granting a stay of enforcement of the judgment without bond"); see also

*Doraleh Container Terminal SA v. Republic of Djibouti*, No. 20-CV-2571 (BAH), 2023 WL 12004450, at *3 (D.D.C. Apr. 24, 2023) (denying foreign sovereign request for a stay without bond in light of movant's non-resident status, significant size of the judgment, and likelihood judgment creditor would be unable to collect on the judgment). Accordingly, Plaintiff's request that the supersedeas bond be waived should be denied.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion.

Dated: September 10, 2026

Respectfully submitted,

*/s/ George B. Breen*

George B. Breen (Bar No. 428665)
Elizabeth A. Harris (Bar No. 1615589)
**Epstein Becker & Green, P.C.**
1227 25th Street, NW, Suite 700
Washington, D.C. 20037
Telephone: (202) 861-1823
Facsimile: (202) 861-3523
GBreen@ebglaw.com
EHarris@ebglaw.com

*Attorneys for Defendant Aram Simovonian*